# EXHIBIT 2-B

Dockets.Justia.com

ics is the exclusive licensee of the '181 Patent, as the '181 Patent is presently owned by Management Investment and Technology Company, Limited ("MITC"), the parent of Fyrnetics. Pittway contends that these Counts of the Counterclaim should be dismissed because Fyrnetics has failed to join an indispensable party: the owner of the patent. Pittway cites *Water Technologies Corp. v. Calco, Ltd., 576 F.Supp 767, 771 (N.D. Ill. 1983)* to stand for the proposition that a patent owner is a necessary party in an infringement action brought by its exclusive licensee. Pittway asserts that unless MITC is joined, Pittway is at risk of subsequent litigation by MITC. Pittway argues that on similar fact pattern, this court in Water Technologies found a patent owner to be an indispensable party in a lawsuit brought by its licensee and dismissed the action under Rule 19(b). Pittway argues that Fyrnetics will not be prejudiced by dismissal since it may convince MITC to voluntarily submit to the jurisdiction of this court [*22] and thus MITC could be joined as a party to this action or in another separate action.

The first smoke detector that Fyrnetics alleges embodied the '181 patent was partially developed by MITC in Hong Kong and all manufacturing of smoke detectors that allegedly embody the '181 patent is performed by MITC outside the United States. When Pittway requested of Fyrnetics documents maintained or controlled by MITC, such as those relating to the development and manufacture of the detectors covered by the '181 patent, Fyrnetics refused, asserting that Pittway was not entitled to any documents controlled or maintained by [MITC] since [MITC] is not a party to this lawsuit. Thus, Pittway asserts that the absence of MITC severely compromises Pittway's ability to defend against the counterclaim brought by Fyrnetics, since it cannot effectively carry out discovery with respect to the counterclaim of patent infringement.

Fyrnetics asserts that Pittway "collapses" the broad definition of necessary parties under Rule 19(a) into the narrower definition of indispensable parties set forth in Rule 19(b). Fyrnetics admits that a patent owner is a necessary party to an infringement action brought by its [*23] exclusive licensee, but that does not make the patent owner an indispensable party under Rule 19(b). Fyrnetics cites *Erbamont Inc. v. Cetus Corp., 12 U.S.P.Q. 2d 1344 (D. Del. 1989)* to stand for that proposition.

In *Erbamont*, the exclusive licensee of a patent for a drug brought an infringement action against a defendant corporation and its wholly owned subsidiary. Defendants moved to dismiss under *Fed.R.Civ.P. 12(b)(7)* for failure to join necessary parties, the patent owner and its parent corporation. The court found the patent owner to be a necessary party under Rule 19(a) since the patent owner retained an interest in the patent. *12 U.S.P.Q. at 1349.* The court found the parent corporation a necessary party in that the defendant received correspondence from the chief executive officer of the parent corporation alleging that the defendant was using a process that would infringe the process patent-in-suit and that the parent corporation intended to aggressively defend its intellectual property rights. *12 U.S.P.Q. at 1349.*

After determining that both parties were necessary parties, the court next considered whether the action [*24] could proceed in their absence. Since both parties were foreign corporations, neither was subject to service of process by the court, so the court applied the four factors enumerated in Rule 19(b). As regards the first factor, the court failed to see how a judgment rendered in their absence could prejudice the patent owner and its parent corporation, since those two companies were cooperating with one another and the plaintiff in the plaintiff's lawsuit. If either company thought it would be prejudiced, it could voluntarily join the action. The question of prejudice to defendants was more serious, as the possibility of another action brought at a later date would be prejudicial to the defendants. The *Erbamont* court reasoned that there was a strong probability that privity between the licensee and the patent owner, and the licensee and the parent corporation existed, so that the patent owner and the parent corporation would be collaterally estopped from relitigating the patent issues of that case in another action or forum. *12 U.S.P.Q. at 1350.* This factor weighed against the need to make the patent owner and the parent corporation indispensable parties and dismissing [*25] the action.

The second factor to be considered is to what extent any prejudice caused by the absence of the patent owner and the parent corporation could be lessened or avoided. To this end, both the parent corporation and the patent owner volunteered to submit affidavits to the court stating under oath that they would be bound by any judgment rendered in the action, and that they would not subject the defendants to further duplicative litigation as to the validity, enforceability and infringement of the patent-in-suit. Furthermore, to lessen prejudice to the defendant, the patent owner volunteered to cooperate with the licensee in responding to discovery requests relevant to the validity and enforceability of the patent-in-suit. This factor weighed against making the patent owner and the parent corporation indispensable parties and dismissing the action for non-joinder.

The third factor to be considered is whether a judgment rendered in the absence of the patent owner and the parent corporation will be adequate. As described in the Erbamont case, two other related actions had been filed. One was filed by a third party in the same court as the *Erbamont* case, which was a declaratory [*26] judgment action as to the invalidity of the patent-in-suit in the *Er-*

*bamont* action. The other was a declaratory judgment action in another forum by the defendants of the *Erbamont* case. Due to the nature of the other case in the same forum as the *Erbamont* case, the court sought to serve judicial economy and lessen the possibility of inconsistent judgments regarding the patent-in-suit. Given the presence of the other action in the *Erbamont* forum, the *Erbamont* court found that the third factor did not favor dismissal due to the existence of indispensable parties.

The fourth factor is whether the licensee will have an adequate remedy if action is dismissed for nonjoinder of indispensable parties. Because there was the other declaratory action filed by the *Erbamont* defendants in another forum, this court found that even if the present claims were dismissed, the licensee would have an adequate remedy to pursue its charges of infringement.

As in *Erbamont* the four factors may be applied to the present case. As regards the first factor, the question of possible prejudice to Pittway is serious. If there were privity between MITC and Fyrnetics, then Pittway would [*27] be assured of not being subject to further litigation on the infringement of the '181 patent. The *Erbamont* court found a strong likelihood of the existence of privity between the parties to the case and those sought to be joined. The facts there are similar in regards to the privity issue as those before us. Both cases involve licensees, patent owners and parent - subsidiary corporations. However that court merely stated that it found a strong possibility that privity existed because the parties there involved both claimed a concurrent interest in the patent. This conclusion the court found fit neatly into the definition of privity found in *Black's Law Dictionary*, i.e., "mutual or successive relationship to the same rights of property." at 1079. However I am not so sure that this alone is sufficient from which to conclude privity for purposes of res judicata or collateral estoppel. "Privity" has also been defined as "merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Bruszewski v. United States, 181 F.2d 419, 423 (CA 3d 1950)*. In most situations [*28] in which privity has been held to exist between parties for purposes of asserting *res judicata*, one or more of the following relationships have been found to exist: concurrent relationship to the same property right; successive relationship to the same property or right; or representation of the interests of the same person. *1B Moore's Federal Practice*, Par. 0.411, pg. 392. The issue is simplified by the existence in this case, as in *Erbamont* of an affidavit by MITC in which it agrees to be bound by the results of this litigation. This brings us to a consideration of the second factor.

The second factor to be considered is to what extent the prejudice caused by the absence of MITC can be lessened or avoided. To this end, Fyrnetics has obtained from MITC an affidavit which states that MITC will be bound by any final judgment from which no appeal can be taken in this counterclaim for infringement of the '181 Patent. n17 This is analogous to the affidavit submitted in the *Erbamont* case. By agreeing thus, MITC agrees not to bring further action on this issue against Pittway. This clearly alleviates the biggest source of possible prejudice to Pittway, i.e., the possibility [*29] of multiple lawsuits over this same issue.

n17 For a copy of this Affidavit, refer to Exhibit A attached to Fyrnetics' Response to Pittway's Motion to Dismiss.

But this affidavit must be distinguished from the affidavit submitted in the *Erbamont* case in that in *Erbamont*, the affiant also agreed to further lessen prejudice to the defendant by agreeing to cooperate with the plaintiff in responding to discovery requests relevant to the validity and enforceability of the patent-in-suit. In the present case, MITC has not agreed to be so cooperative in its affidavit. Moreover, Pittway contends in its supplemental memorandum that Fyrnetics itself was not being cooperative in facilitating Pittway's obtaining documents related to the development and manufacture of the smoke detector covered by the '181 patent, documents Pittway needs to defend against Fyrnetics' counterclaim. Thus, to this extent, the present case is distinguishable from the Erbamont. In practical terms this distinction is significant. The extra [*30] expense of having to seek documents and discovery materials from MITC abroad, is significant, and although in a technical sense, Pittway still has all of its rights under the discovery rules, Rule 19(b) requires this court to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable". I am therefore recommending that the second factor in the 19(b) analysis favors the joinder of MITC or the dismissal of the claim.

The third factor is whether a judgment rendered in MITC's absence will be adequate. To achieve complete, consistent and efficient settlement of controversies, the *Erbamont* court cites *Tycom Corporation v. Redactron Corporation, 380 F.Supp. 1183 (D. Del. 1974)* to state that it is in the public interest and the interest of the courts that:

Because patent suits most often consume a great amount of court time due to their complexity and because there is

a great public interest in determining the status of a patent once and for all, patent controversies, if possible, should be settled in a single action.

*Tycom, 380 F.Supp. at 1190.* [*31] However, if the MITC has filed an affidavit stating that it will agree to be bound by the decision of this court, then its presence is not necessary in order to obtain a resolution of the issues among all of the interested parties. Nor is there any danger of multiple actions resulting from these same issues. Thus, this third factor does not favor finding MITC an indispensable party.

The fourth factor is whether Fyrnetics will have an adequate remedy if its patent infringement counterclaims are dismissed for non-joinder of MITC. In *Erbamont*, the court found that an adequate remedy would exist because of the existence of the declaratory judgment action which had been filed in another forum by the defendants of that action and which included all of the parties whose absence was being complained of. In the present case, there is no pending action anywhere which includes MITC as one of the parties. Although Fyrnetics could obtain title to the patent upon MITC's total relinquishment of its rights, Fyrnetics could not force such an arrangement. It is therefore entirely possible that Fyrnetics could find itself without any forum in which to assert its rights as the licensee of the patent [*32] it seeks to protect.

Based upon the above considerations I am recommending that the motion to dismiss for non-joinder of an indispensable party be denied. Although the lack of availability of MITC for purposes of discovery is a significant factor in Pittway's favor, the remaining factors favor the retention of the lawsuit. Most notably, the capacity, with the affidavit from MITC, of resolving the issues as to this patent among all of the interested parties in this one lawsuit must be considered of paramount importance. There is no guarantee that in any future proceeding, MITC would be willing to be so bound.

### MOTION TO COMPEL

Fyrnetics moved under *Fed.R.Civ.P. Rule 37(a)(2)* to compel proper responses by Pittway to its First Set of Document Requests and First Set of Requests for Admissions. [HN14] Rule 37 states that "if a party fails to answer a question in a deposition or interrogatory, the discovering party may move to compel an answer. *Fed.R.Civ.P. Rule 37.*

As regards the Requests for Admissions, Fyrnetics argues that the objections put forth by Pittway are baseless and improper. It urges that all of Pittway's qualified answers should be deemed admissions, since under the [*33] annotation to the Advisory Committee on Rules notes, "defective answers bring about admissions just as effectively as if no answer had been served." *Rule 36, Fed.R.Civ.P.*, Notes of Advisory Committee on Rules (1970). Fyrnetics also asserts that Pittway has not provided certain documents which were requested by it and seeks an order directing Pittway to respond to these various document requests.

### REQUEST FOR ADMISSION Nos. 6, 16, 26, 31, 38, 52, 67, 69, AND 71.

Specifically, Fyrnetics contends that in Request Numbers 6, 16, 26, 31, 38, 52, 67, 69, and 71, Fyrnetics identified certain patents and requested Pittway to admit that these patents are "prior art" to the patent-in-suit, Schneider et al., U.S. Patent No. *4,138,670*, ("the '670 Patent"). In response, Pittway objected to the Requests as being vague and ambiguous on the grounds that the term "prior art" is not defined in the Request. For example, the request and response for Request Number 6 goes as follows:

Request No. 6: Admit that Raber U.S. Patent *3,811,122*, (attached as Exhibit C and hereinafter referred to as "Raber") issued on May 14, 1974, and is prior art as to Schneider *4,138,670* under *35 U.S.C. § 102* [*34] and/or *103*.

Response to No. 6: Pittway objects to this Request as being vague and ambiguous in that "prior art" is not defined in the Request. Pittway has made a reasonable inquiry but does not have and cannot readily obtain sufficient information to assess the truth or falsity of this Request and therefore denies it.

Pittway contends that the two referenced sections of the patent statute *(35 U.S.C. § 102* and *103)* in the Request define when a patent cannot be obtained or when an already issued patent is invalid. Pittway continues that because a piece of prior art under one of these sections will be an "invalidating" piece of prior art, Fyrnetics' Requests can be interpreted as requesting an admission that the cited patents invalidate the patent-in-suit. These requests to admit are therefor an effort to seek bald legal conclusions, and cites *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co. Inc., 130 F.R.D. 92 (N.D. Ind. 1990)* to stand for the proposition that requests for admissions seeking bald legal conclusions are improper.

Fyrnetics argues that it is not requesting Pittway to make admissions which would invalidate the patent-in-suit, but is [*35] merely requesting Pittway to admit that these patents were "art" which is "prior" to the Schneider patent. Fyrnetics argues that Pittway's objections are particularly perplexing because Pittway requested Fyrnetics to identify "prior art" in its Document Requests. Thus, it argues that Pittway has a double standard when it comes to understanding the meaning of the term "prior art."

Pittway counters that argument with the response that it used the term prior art in interrogatories, not requests for admissions, and it implies that admissions of prior art in admissions could be more prejudicial than the identification of prior art in response to interrogatories.

I believe that it is improper to compel Pittway to admit that certain art is "prior art" as to the patent-in-suit under 35 U.S.C. § 102 and/or 103. Several admissions that certain art is prior art under 35 U.S.C. § 102 and/or 103 could be taken in combination or alone to show that the patent is invalid under 35 U.S.C. § 102 and/or 103. That is a legal conclusion which is improper to Request in Requests for Admissions. At any rate it would be a simple matter for Fyrnetics to simply define what they intend by the use of the [*36] term "prior art" in their requests for admissions. It would actually be better if the term "prior art" - since it can be in some contexts at least, a term of legal art - not be used at all. Rather, Fyrnetics should simply request an admission as to the facts it wishes to ascertain without the use of conclusory labels.

Fyrnetics is correct in stating that:
[HN15]
in order to invalidate any patent based on another patent, a defendant must prove first that this other patent is "prior art," i e. that it predates the patent-in-suit by a specific time, and second that the prior art anticipates or makes obvious the invention in the patent-in-suit.

Fyrnetics contends that "[it's] requests are directed to the first of these proofs, not the second." Yet, that is not what the requests say. If that is what Fyrnetics was interested in, then Fyrnetics could have gotten that information by listing the patents and the date each patent was issued, and a request for an admission that each of the patents was filed and issued on the dates shown, as was done in Request No. 1. Fyrnetics contends that the '670 Patent is invalid, and it is up to Fyrnetics to sustain its burden of proof in that regard [*37] by establishing the facts from which the conclusions can be drawn. Because the term "prior art" has been and commonly is used loosely to mean both the first and second prongs of the statutory test, its use in demands for admissions can lead to confusion in the ultimate trial of the case. This, of course, is exactly the opposite of what requests for admissions were meant to accomplish. That portion of Fyrnetics Motion to Compel which moves that Requests for Admission Numbers 6, 16, 26, 31, 38, 52, 67, 69, and 71 be deemed admitted is therefore denied. The objections to those Requests for Admission by plaintiff Pittway were proper.

REQUEST FOR ADMISSION NO. 66

Fyrnetics refers to a "particularly egregious" example of the "baseless objection" made by Pittway, which is the response to Request No. 66. That request and response are set forth here:

Request No. 66: Admit that the prior art "conventional technique for monitoring the energy level of a battery" discussed in Conforti, U.S. Patent No. 4, 139, 846, column 1, lines 40-62 (attached as Exhibit L) is the same as the circuitry disclosed in Schneider '670 patent specification as the "means for monitoring the output [*38] voltage of the battery."

Response to No. 66: Pittway objects to this Request as being vague and ambiguous in that "prior art" is not defined in the Request. Pittway has made a reasonable inquiry but does not have and cannot readily obtain sufficient information to assess the truth or falsity of this Request and therefore denies it.

In Footnote 1 in its Memorandum in Opposition to Fyrnetics Motion to Compel, Pittway contends that the characterization of the technique is "argumentative" and makes clear that it doesn't understand whether Fyrnetics is comparing the technique to the '670 Patent or to the Conforti Patent, U.S. Patent No. 4,139,846 referred to in the Request. However it is clear to me that Fyrnetics is asking Pittway to admit that the "technique" discussed in the Conforti Patent, U.S. Patent No. 4,139,846 [specific cite deleted] is the same as the circuitry disclosed in Schneider '670 patent specification as the "means for monitoring the output voltage of the battery." This request seeks an admission as to an opinion of fact. Rule 36 specifically allows this and as such the request is a proper one. The request however, is premised by the term "prior art". By describing [*39] the technique referred to as prior art, Fyrnetics is indirectly asking Pittway to admit this in its response. I have already discussed above the issues pertaining to the use of the term "prior art" in these requests for admission; applying the same reasoning to this Request as to Requests 6, 16, 26, 31, 38, 52, 67, 69, and 71, the motion to compel with respect to Request 66 is denied.

REQUESTS FOR ADMISSION Nos. 2, 10, 11, 15, 18, 21, 25, 34, 37, 44, 45, 46, 47, 48, 49, 50, 54, 57, 59, 60, 61, 62, 63, 65, 73, 74, 76, AND 77.

Fyrnetics contends that Pittway is asserting "obstructionist objections" to these Requests, when in fact, Fyrnetics contents, the objected to terms are well known to Pittway and its counsel based on their use in many of the patents and other references in this field.

Pittway addresses general criticism to the approach of Fyrnetics in its wording of Requests. Pittway contends that Fyrnetics has not met the standard set out in *Dubin v. E.F. Hutton Group, Inc., 125 F.R.D. 372, 375-367*

*(S.D.N.Y. 1989)* and *Johnstone v. Cronlund, 25 F.R.D. 42 (E.D. Pa. 1960)* which is to phrase direct simple facts that can be admitted [*40] or denied without explanation.

Specifically, Pittway contends that some of the undefined terms are "improperly argumentative" and "conclusory." In particular, Pittway is referring to Request Nos. 15, 21, 45, and 73. Pittway cites *Securities and Exchange Commission v. Micro-Moisture Controls, 21 F.R.D. 164 (S.D.N.Y. 1957)* to stand for the proposition that objections to terms such as "substantial purchases" and "direct business relationship" should be sustained. *21 F.R.D. at 166*. That case was an action by the Securities and Exchange Commission under Section 20(b) of the Securities Act of 1933, *15 U.S.C. § 77t(b)*. At issue in the case were requests for admission with respect to contents of certain affidavits filed by defendants. The court held that plaintiff did not adhere to [HN16] the standard under *Fed.R.Civ.P. Rule 36*, that requests for admissions are required to be simple and direct, and should be limited to singular relevant facts. The court held that phrases such as "substantial purchases" and "direct business relationship" were argumentative and conclusory. *21 F.R.D. at 166*. The court concluded by striking requests [*41] with such wording, and gave leave to plaintiff to amend the requests. *21 F.R.D. at 167*.

This court believes that the terms "operative," "similar," "well known," and "substantially" are conclusory. Thus, the motion to compel with respect to Requests 15, 21, 45, and 73 is denied. Even if requests including such terms were to be admitted they would probably do little to narrow and simplify the issues at trial. The parties would undoubtedly find themselves at trial arguing over just what precisely was meant by the requesting party when it used the term "substantially" for example, and what was meant by the answering party when it admitted to the term "substantially". Thus the use of requests to admit of this nature do not accomplish the narrowing and simplifying of the issues for trial. They are therefore of little help to the litigants or the court in disposing of the issues.

Pittway further contends that some of the terms used by Fyrnetics in its Requests are ambiguous or subject to different meanings or connotations. Specifically, Pittway is referring to Request Nos. 18, 25, 34, 54, 74, 76, and 77. For instance, Request No. 18 refers to a "battery standby circuit" [*42] and Request No. 25 refers to a "standby battery power source." Pittway is unclear as to whether these two phrases refer to the same thing or different things.

I find that the phrases in question are ambiguous, and the motion to compel is denied with respect to Request Nos. 18, 25, 34, 54, 74, 76, and 77.

Pittway also contends that many of the requests, including Request Nos. 2, 10, 11, 18, 25, 34, 35, 37, 44-50, 54, 57, 59-63, and 65, are improper in that in combination they request Pittway to admit a legal conclusion, i.e., that the '670 Patent is invalid. For instance the Request No. 10 and Response to No. 10 are as follows:

Request No. 10: Admit that Raber discloses a battery voltage monitoring means "for the purpose of supervising the conditions such as an undervoltage of the battery. . ." (Reference Raber Column 2, lines 21-22).

Response to No. 10: Pittway objects to this Request as being vague and ambiguous in that "battery voltage monitoring means" is not defined in Raber or this Request. Pittway has made a reasonable inquiry but does not have and cannot readily obtain sufficient information to assess the truth or falsity of this Request and therefore denies [*43] it.

Fyrnetics argues that it "tailored these Requests to specifically point out" elements of the claims of the patent in suit that it contends are disclosed by the cited patents. In arguing that this is improper, Pittway relies on *Naxon Telesign Corp. v. Bunker Ramo Corp., 212 U.S.P.Q. 919 (N.D. Ill. 1980)*. In that patent infringement action the defendant moved to compel plaintiff to respond to defendant's first set of Requests for Admission. In that case, defendant's Requests quoted selected language from the patent-in-suit and asked for admission that various elements in the prior art satisfy that quoted language. This court found that in combination those Requests sought to obtain an admission of the ultimate legal conclusion in the case, rather than admissions of "fact or of the application of law to fact." *212 U.S.P.Q. at 920*.

The very same type of requests have been put forth here. Request No. 2 and the others listed are analogous to the requests made by the defendant in the *Naxon* case, and for this reason, I am denying Fyrnetic's Motion to Compel for Request Nos. 2, 10, 11, 15, 18, 21, 25, 34, 37, 44-50, 54, 57, 59-63, 65, 73, 74, [*44] 76, and 77.

**REQUEST FOR ADMISSIONS Nos. 8, 9, 11-14, 18-20, 22, 23, 28-30, 33, 36, 37, 40-44, 46, 51, 55, 56, 58 AND 60.**

In request nos. 8, 9, 11-14, 18-20, 22, 23, 28-30, 33, 36, 3740-44, 46, 51, 55, 56, 58, and 60, Fyrnetics asked Pittway to admit that various patents "disclose" certain elements. Fyrnetics is attempting to show that the elements claimed as novel in the '670 patent were already disclosed in other prior patents. Pittway contends that the

term "disclose" has numerous possible meanings, and therefore is ambiguous. In its responses, Pittway has therefore admitted the language recited in the patent cited, and denied the other parts of the request. For instance, Request No. 8 and Response No. 8 read as follows:

REQUEST NO. 8: Admit that Raber discloses a supervised battery power supply circuit particularly suitable for use in a fire alarm system or the like (Reference Raber column 1, line 1-5).

RESPONSE NO. 8: Admitted that Raber recites at Column 1, line 1-5, "The present invention relates to a supervised battery power supply circuit particularly suitable for use in a fire alarm system or the like." Pittway denies all other parts of this Request. [*45]

Fyrnetics argues that these Requests are proper. While Fyrnetics ultimately seeks to invalidate the Schneider patent, Fyrnetics asserts that "these Requests [for admissions] by themselves will not invalidate the Schneider patent." It asserts that it still has to tie the facts together and prove the '670 Patent is invalid under *35 U.S.C. § 102* or 103.

Pittway argues that it is improper for Fyrnetics to request Pittway to admit that a phrase of a prior patent "discloses" a particular element. In its responses, Pittway is merely reading the patent and stating what it says, since all it knows about the patent is what it describes. Pittway relies on *Naxon Telesign Corp. v. Bunker Ramo Corp., 212 U.S.P.Q. 919 (N.D. Ill. 1980)* to support the proposition that [HN17] a patent speaks for itself.

Pittway asserts that several meanings may be read into the ambiguous language that Fyrnetics uses in its Requests. Pittway relies on *Johnstone v. Cronlund, 25 F.R.D. 42 (E.D. Pa. 1960)* to stand for the proposition that requests that are worded so as to infer a varied conclusion from the fact admitted are objectionable. In that case, plaintiff submitted requests [*46] for admissions which themselves, could have been interpreted more than one way, and the admission to such a request would permit the inference of more than one fact or truth. *25 F.R.D. at 45*. The court objected to such requests, stating that [HN18] "Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation." *25 F.R.D. at 45,* citing *United States v. New Wrinkle, Inc., 16 F.R.D. 35 (S.D. Ohio 1954).* n18

n18 Pittway has supplied a supplemental response to certain of the Requests, including Request No. 2, 4, and 24. See December 20, 1991 otter of Neil Hirshman, Kirkland and Ellis to Thomas C. McDonough, Vedder, Price, Kaufman & Kammholz.

This court believes that *Naxon* supports Pittway's assertions. Because a patent speaks for itself, it is inappropriate for Fyrnetics to try to get Pittway to agree to using different terms for the patented elements. In light of this, the motion to compel [*47] with respect to Request Nos. 8, 9, 11-14, 18-20, 22, 23, 28-30, 33, 36, 37, 40-44, 46, 51, 55, 56, 58, and 60 is denied.

### INTERROGATORY

Fyrnetics has served Pittway with an interrogatory requesting further facts upon which Pittway has based its qualified responses in the responses to the Requests named above. Pittway responded to the interrogatory by indicating that its answer to the interrogatory is included in the respective responses by Pittway to the Requests. This court is satisfied with the responses by Pittway to the Requests discussed above. Thus, this court believes that Pittway has made satisfactory responses to the Interrogatory.

### DOCUMENT REQUESTS

Fyrnetics has made Requests for documents 1-34. Pittway has responded to Request Nos. 11, 12, 13, 16 by objecting to the request and not sending all of the documents that Fyrnetics requested. An example of such request and response follows:

REQUEST NO. 11: All documents and things including, but not limited to any physical samples, prototypes, or parts and components thereof of all AC powered smoke detectors with DC backup, or any other AC powered devices with DC-backup design, manufactured, imported [*48] or sold by Pittway.

RESPONSE NO 11: Pittway objects to Request No. 11 as over broad and unduly burdensome to the extent that it is not limited in time and seeks documents concerning devices developed and sold after the filing date of the '670 Patent and to the extent that it seeks "all" documents and things. Subject to and without waiving the foregoing General and Specific Objections, Pittway will produce responsive non-privileged documents and things sufficient to show the structure and operation of such devices developed before the filing date of the '670 Patent to the extent such documents and things exist.

Thus, Pittway's objection to these particular document requests is that they are "unduly burdensome" and the documents requested are irrelevant to the litigation. Pittway asserts that the documents concerning pricing, manufacture, number of units sold, customers for the products will not lead to the discovery of admissible evi-

dence, and neither will documents dated after the filing date of the '670 Patent.

On the other hand, Fyrnetics argues that its burden in this case is to show invalidity of the patent. To that end, information such as a sale or offer for sale [*49] of the patented device by Pittway more than one year prior to the patent's filing date could be relevant information. Fyrnetics argues that such information would not be shown in documents which show "structure and operation" of Pittway's prior art devices, and thus Fyrnetics' discovery is limited by the fact that Pittway has not provided Fyrnetics with such documents. Pittway stopped selling devices with the monitored battery backup, and eventually came out with an AC/DC detector using a semiconductor chip. Fyrnetics has requested documents which may give reasons for the abandonment of the Schneider circuit. Fyrnetics contends that Pittway may rely on "commercial success" in its effort to defend the validity of the '670 Patent. Fyrnetics argues that documents dated after the filing of the '670 Patent which it has requested are important to its case that the '670 Patent was not a commercial success. Fyrnetics argues that such information may lead to its being able to invalidate the Schneider Patent.

Fyrnetics relies on *Panola Land Buyer's Association v. Shuman*, 762 F.2d 1550 (11th Cir. 1985) in arguing that assertions of burdensomeness cannot sustain a refusal [*50] to provide requested documents. In that case, a nonprofit housing development corporation brought a declaratory judgment action against a government agency seeking review of its preapplication. The government contended that the corporation's requests for production of documents were too long, too broad, irrelevant, and too expensive to complete. The court found that the recitation of burdensomeness was merely conclusory. *762 F.2d at 1559*.

This court finds Fyrnetics' arguments convincing in this case. It has made clear that in order to make out its case of invalidity it may need to rely on evidence such as sales of the patented device or other AC/DC detectors sold by the plaintiff. Because the rules of discovery are liberal in nature, Pittway is ordered to provide Fyrnetics with the documents it requests in Request Nos. 11, 12, 13, 16 and 33, for the time period predating the filing of the '670 Patent, until the present.

### EXPENSES

Fyrnetics has petitioned this court for award of expenses incurred in filing the motion to compel pursuant to Rule 37(a)(4). [HN19] *Fed.R.Civ.P. Rule 37(a)(4)* provides that the court "shall" award the moving party its reasonable expenses, [*51] including attorneys' fees, "incurred in obtaining the order" compelling discovery, unless the opposition to the motion to compel was substantially justified or other circumstances make an award of expenses unjust. In this case, this court believes that plaintiff Pittway substantially justified itself in its arguments, and therefore Fyrnetics request for expenses is denied.

### CONCLUSION

For the foregoing reasons, it is RECOMMENDED the plaintiff Pittway Corporation's (1) Motion to Strike be DENIED, (2) Motion for a More Definite Statement be DENIED, and (3) Motion to Dismiss be DENIED.

It is further ORDERED that defendant Fyrnetics, Inc.'s Motion to Compel be GRANTED in part and DENIED in part as specified above.

Respectfully submitted,

RONALD A. GUZMAN

United States Magistrate Judge

DATE: JUNE 4, 1992