IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                    )
            Plaintiff,              )
                                    )
v.                                  )
                                    )
THEGLOBE.COM, INC.,                 )   Case No. 05-2433-JWL
VOICEGLO HOLDINGS, INC.,            )
VONAGE HOLDINGS CORP.,              )   JURY TRIAL DEMANDED
VONAGE AMERICA, INC.,               )
                                    )
            Defendants.             )
                                    )
                                    )

**PLAINTIFF SPRINT COMMUNICATIONS COMPANY L.P.'S MOTION FOR
PROTECTIVE ORDER AND BRIEF IN SUPPORT**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and D. Kan. Rule 26.2, Sprint Communications Company L.P. ("Sprint") respectfully moves the Court for a Protective Order prohibiting the deposition noticed by Voiceglo Holdings, Inc. ("Voiceglo") of Sprint pursuant to Fed. R. Civ. P. 30(b)(6). *See* Ex. A (Doc. 41). For the reasons described in the attached Brief in Support and for good cause shown, the noticed Rule 30(b)(6) deposition should not go forward.

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

Sprint filed this patent infringement suit asserting that Defendants have willfully infringed, and continue to willfully infringe, one or more claims of U.S. Patent Nos. 6,304,572; 6,633,561; 6,463,052; 6,452,932; 6,473,429; 6,298,064; and 6,665,294 (hereinafter collectively referred to "Sprint's Patents"). *See* Doc. 1. On January 6, 2006, Defendant Voiceglo filed and served a Notice of Deposition of Sprint pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("the Notice"). *See* Ex. A (Doc. 41). The Notice lists eight deposition topics, the first

1

1851557v1

seven of which seek testimony on "[t]he preparation and filing" of each of Sprint's patents. *Id.* The final deposition topic seeks testimony regarding "[t]he preparation and filing of amendments to claims made in the applications" of Sprint's patents. *Id.*

Because the inventor of the technology disclosed and claimed in Sprint's patents is deceased, the only potential designees are former and/or present in-house Sprint attorneys who have extensive involvement in the present litigation. The law is clear that any information an attorney gains in prosecuting a patent that is not explicitly disclosed in the publicly-available patent file history is privileged. Accordingly, it would be highly vexatious to require Sprint's attorneys to undergo inquiry into topics that are protected by privilege and otherwise irrelevant.

## II.    STATEMENT OF QUESTION PRESENTED

Whether a deposition of Sprint, pursuant to Rule 30(b)(6), should go forward when the only possible designees are former and/or present in-house Sprint attorneys who participated in prosecuting Sprint's patents and who also are extensively involved in this lawsuit.

## III.   ARGUMENT

### A.    Legal Standards

In situations such as the present where the potential deponent is a party's attorney who is involved in advising a client as to the underlying litigation, this Court presumptively denies the deposition:

> Courts, therefore *generally prohibit the deposition* of counsel for a party, unless the party seeking the deposition shows that: (1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (emphasis added).  In *Mike*, this Court denied a motion to compel depositions of two attorneys who were involved in prosecuting the asserted patent where one of the attorneys also was involved in the litigation.  *Id.* at 377, 379.

Voiceglo bears the burden to establish the three criteria set forth in *Mike*.  *Id.* at 378.  As to the first requirement, Voiceglo must "identify why interrogatories or other written discovery devices do not suffice" and "must identify the specific unsuccessful measures [it] has taken to obtain the information, why they have failed, and that other resources are also unavailable."  *Id.*  Voiceglo cannot make such a showing because Voiceglo served this deposition notice contemporaneously with its first written discovery.  Furthermore, the information Voiceglo seeks already is contained and fixed in the file histories of Sprint's patents.  Certainly, information obtained from a prosecuting attorney cannot be used to deviate the intrinsic written record of a patent's claims.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).

Nor can Voiceglo establish the last two criteria.  Unlike most situations in which an accused infringer seeks to depose a patentee's attorney, Voiceglo has not alleged or asserted an inequitable conduct defense.  Thus, Voiceglo cannot contend that the information sought is *critical* to the preparation of a defense that it did not plead.  Indeed, the Federal Circuit's recent *en banc* pronouncement that the patent's intrinsic record, which includes the file history of the asserted patents, is "the single best guide to the meaning" of the claims of a patent calls the relevance of the information sought into question.  *Phillips*, 415 F.3d at 1315.  Voiceglo cannot establish that such information is "critical" to its case.  Perhaps most importantly, almost all—if not all—of the information responsive to Voiceglo's deposition topics is privileged and, therefore, not discoverable.

### B. Sprint's Potential Designees for the Noticed Topics Are Or Were In-House Patent Attorneys Who Work on This Matter And Whose Testimony Is Privileged

Mr. Christie, the former Sprint employee who invented the technology described in each of the patents-in-suit, is not available for deposition, as he passed away. *See* Ex. B (excerpt from '572 prosecuting history, listing Joseph Michael Christie as inventor and stating "the applicant is deceased"). Accordingly, the only potential designees with personal knowledge of each of the topics in question are all present or former in-house attorneys who participated in the prosecution of Sprint's patents and have advised Sprint with respect to the current litigation. *See* Ex. C (Ball Decl. ¶¶ 3–4). The propriety of the Notice thus hinges upon whether Voiceglo should be allowed to depose Sprint attorneys, all of whom also are advising Sprint in the present lawsuit. Voiceglo cannot carry its burden to demonstrate that the noticed topics seek information that is non-privileged.[1]

#### 1. The Noticed Topics Seek Information That Is Protected By The Attorney-Client Privilege

The attorney-client privilege precludes Sprint's attorneys who participated in the prosecution of Sprint's patents from divulging any information gained during the prosecution of the patents-in-suit that was not disclosed in the respective patent file histories. Courts readily recognize that "[a]ll aspects of patent prosecution; that is, from patentability determinations to drafting patent applications to amending patent applications, have been held to constitute the practice of law." *Sanofi-Symthelabo v. Apotex Inc.*, 299 F. Supp. 2d 303, 307 (S.D.N.Y. 2004) (citing *Sperry v. State of Florida*, 373 U.S. 379, 383 (1963)) (emphasis added).

---

[1] Very limited categories of non-privileged information may exist, such as testimony that would authenticate certified file histories of the patents-in-suit. To address this type of information in a timely and cost-effective manner, Sprint offered to stipulate to the authenticity and accuracy of certified copies of the patent prosecution file wrappers of the patents-in-suit in lieu of going forward with the depositions, but Voiceglo declined. *See* Ex. D (Jan. 11, 2006 letter offering stipulation); Ex. E (Jan. 12 letter, declining offer).

1851557v1

Thus, the attorney-client privilege covers much more than just the verbal exchange between patent attorneys and the inventor. Absent a defense of inequitable conduct, technical data, prior art, invention records, and any other information submitted to corporate legal counsel for purposes of the preparation of a patent application are protected by privilege. *See ResQNet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578, 2004 WL 1627170 (S.D.N.Y. July 21, 2004) (denying efforts to depose an attorney concerning the prosecution of the patents-in-suit); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) (invention record submitted to corporate legal department protected by attorney-client privilege); *Stowe Woodward, L.L.C. v. Sensor Prods., Inc.*, 230 F.R.D. 463, 469–70 (W.D. Va. 2005) (discussing whether inequitable conduct had been pled to determine whether depositions of prosecuting attorney were available). "The privilege exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Spalding Sports*, 203 F.3d at 805. It is no surprise, then, that in the absence of an inequitable conduct claim, courts recognize "**there [is] little relevant information that the attorney [can] provide**" on the subject of patent prosecution. *Pharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 774 n.3 (N.D. Ill 2005) (citing and analyzing *ResQNet.com*) (emphasis added).

Furthermore, any argument from Voiceglo that it seeks only the factual information underlying the prosecution history must fail. Governing Federal Circuit law recognizes that *factual information*—such as technical information and prior art—that is transmitted to a patent attorney for the purpose of patent prosecution is privileged because "the requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art." *Spalding Sports*,

5

1851557v1

203 F.3d at 806. Citing "an important issue of first impression" in *Spalding Sports*, the Federal Circuit granted the extraordinary remedy of a writ of mandamus and vacated a magistrate's order that erroneously required the patentee to disclose information relating to the prosecution of the patents-in-suit. *See id.* at 802, 804 ("we conclude that the invention record of the [patent-in-suit] is protected by the attorney-client privilege, and the denial of that privilege by the district court is properly remedied by mandamus").

Here, Voiceglo seeks the same privileged information as in *Spalding Sports*—not by seeking document production but by probing the mental thoughts and impressions of the attorneys who prosecuted the patents-in-suit. Not surprisingly, the law does not differentiate between discovery devices when it comes to protecting privilege. In *In re Regents of Univ. of Cal.*, the Federal Circuit granted a writ of mandamus and vacated a motion to compel the deposition of three "in-house attorneys relating to the prosecution of the [patent-in-suit] and its counterparts in foreign countries." 101 F.3d 1386, 1388 (Fed. Cir. 1996). The Federal Circuit unequivocally made clear that the "communications for which discovery is sought are protected by the attorney-client privilege." *Id.* at 1391.

District courts also regularly rebuff attempts to discover communications between inventors and their patent counsel. *See Advanced Cardiovascular Sys. Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 378 (N.D. Cal. 1992) ("the communications from inventor to patent lawyer, even those that are entirely technical, remain presumptively protected by the attorney-client privilege"). Likewise, this Court recently cited *Spalding Sports* with approval and explicitly stated that "documents prepared with the purpose of being sent to counsel for legal advice, legal opinions, legal services, or assistance in a legal proceeding are held to be privileged." *United States v. Ary*, No. 05-10053-01, 2005 WL 2367541, at *7 (D. Kan. Sept. 27, 2005) (citing

6

*Spalding Sports*); *see also Mike*, 169 F.R.D. at 379 (denying a motion to compel deposition of patent attorney regarding the prosecution of the patent-in-suit). Similarly, a Missouri court, in *Ryobi N. Am. v. Union Elec. Co.*, aptly explained the policy underlying the attorney-client privilege as applied to patent prosecution in denying a motion to compel depositions of counsel who drafted patent applications at issue:

> [I]nventors and their patent counsel often engage in quite substantive private dialogue as part of the process of shaping and focusing a patent application and like any other attorney client relationship it is reasonable for them to expect their dialogue to remain confidential. On that basis ***such communication is presumptively protected by the attorney-client privilege***. This analysis extends even to the organization of technical information. To find otherwise is to oversimplify the patent application process and to demean the patent attorney's role to that of a mere scrivener.

7 F. Supp. 2d 1019, 1021 (E.D. Mo. 1998). Even questions directed at an attorney who prosecuted a patent regarding the dates upon which prior art or other factual information became known are privileged and not discoverable because such questions "could only be directed to an inequitable conduct defense, a defense which has not been pled in this case." *ResQNet.com*, 2004 WL 1627170, at *5. Accordingly, the information sought in deposition topics 1–7 is privileged and not discoverable.

Deposition topic 8 also seeks privileged information, as drafts of patent applications and drafts of amendments to patent claims are protected by the attorney-client privilege. *See Rohm & Haas Co. v. Brotech Corp.*, 815 F. Supp. 793, 795–97 (D. Del. 1993) (finding that a rough draft of a patent application submitted from an inventor to his patent attorney is privileged because the inventor is seeking the attorney's "advice on what information should be included and how it should be set out in the application"); *Messagephone, Inc. v. SVI Sys., Inc.*, No. 3-97-1813, 1998 WL 812397, at *3 (N.D. Tex. Nov. 18, 1998) (the portions of

drafts of patent prosecution that ultimately are not submitted to the patent office are privileged). Moreover, the reasons underlying the amendment of patent claims during prosecution of that patent are protected by the attorney-client privilege. *See Sanofi-Symthelabo*, 299 F. Supp. 2d at 307 (analyzing each element of privilege to determine communications addressing why patent claims were amended or cancelled were "clearly a 'privileged communication'").

### 2.     The Noticed Deposition Topics Also Seek Attorney Work Product

Attorney work product provides an independent ground for precluding discovery of the information sought. It has long been the law of this Circuit that "[a]n attorney's work in the patent law field [is] as much his own as it is in other areas of the law." *Natta v. Hogan*, 392 F.2d 686, 693 (10th Cir. 1968). Indeed, "[t]he work product claim cannot be brushed aside on the theory that the documents were not prepared for use in litigation." *Id.* Here, the proposed questioning of Sprint's putative designees is particularly problematic given that these attorneys also advise Sprint in the present litigation. *See* Ex. C (Ball Decl. ¶ 3).

Voiceglo cannot even question Sprint's prosecuting attorneys regarding the attorney's understanding of the publicly-available prosecution histories. In *Rohm & Haas Co. v. Brotech Corp.*, the court considered whether a portion of an affidavit that was filed in connection with the patent application, and later highlighted by an attorney, would be discoverable. *See* 815 F. Supp. 793, 795 (D. Del. 1993). The party seeking discovery in *Rohm & Haas* argued the highlighted document was relevant to certain noninfringement positions. But the court held the document was "protected from discovery under the work-product doctrine" because it revealed the attorney's thought process on the meaning of the prosecution history. *Id.* Here, Voiceglo cannot question Sprint's attorneys as to the meaning or significance of the prosecution history because answering such questions would reveal protected mental impressions.

8

1851557v1

### 3. A Protective Order is a Necessary and Appropriate Measure to Preserve the Attorney-Client Privilege

A protective order is proper when a party seeks to depose a prosecuting attorney. This is particularly true where, due to the absence of inequitable conduct allegations, the vast majority of information sought is protected by privilege. Maintaining the attorney-client privilege for information gained during patent prosecution while defending a prosecuting attorney's deposition is problematic, at best. Sprint will be forced to object and instruct the designee not to answer virtually every question because if a deponent were to disclose even *some* privileged information, courts have held that the attorney-client privilege may be waived as to *all* related information. Essentially, Voiceglo invites Sprint into the same trap laid by the defendant in *Sanofi-Symthelabo*. In *Sanofi-Symthelabo*, the defendant requested a Rule 30(b)(6) deposition of the patentee corporation on topics such as "why Sanofi decided to cancel original claims 6–9 in the prosecution of patent application 07/155,550," and the "amendment dated January 9, 1989 filed in connection with Application No. 07/155,550." 299 F. Supp. 2d at 304–05. Rather than seeking a protective order before the deposition, the patentee attempted to preserve the privilege by objecting on a question-by-question basis. Although counsel for Sanofi instructed the attorney who prosecuted the patent "not to answer numerous questions on grounds of attorney-client privilege" and "not to reveal the substance of any communications between himself and the Sanofi patent department," the Court nevertheless found the patentee had waived a valid attorney-client privilege when Sonofi's Rule 30(b)(6) witness provided speculation and substance-less answers to some seemingly innocuous questions. *Id*. at 305–09.

Sprint should not be required to produce a deponent on topics calling for information that is essentially privileged in its entirety. It is far less burdensome, far more

9

productive, and far more cost effective for the parties to stipulate to the very limited portions of the noticed topics that are not privileged as Sprint has previously offered.

## IV. CONCLUSION

For the foregoing reasons, Sprint requests that the Court enter a Protective Order prohibiting the deposition noticed by Voiceglo Holdings, Inc. of Sprint pursuant to Fed. R. Civ. P. 30(b)(6).

Respectfully Submitted,

Dated:  January 17, 2006                                SHOOK, HARDY & BACON L.L.P.


/s/ Eric A. Buresh
B. Trent Webb, KS Bar No. 15965
Adam P. Seitz, KS Bar No. 21059
Eric A. Buresh, KS Bar No. 19895
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
816-474-6550 Telephone
816-421-5547 Facsimile

ATTORNEYS FOR PLAINTIFF

1851557v1

# CERTIFICATION OF EFFORTS TO RESOLVE THE PRESENT DISPUTE WITHOUT COURT INTERVENTION

Pursuant to D. Kan. Rule 37.2, counsel for Sprint hereby certifies that counsel has made reasonable, good faith efforts to resolve the present dispute prior to the filing of this motion. In support, counsel states it has taken the following particular steps to resolve the issues in dispute:

1. On January 6, 2006, Defendant Voiceglo served and filed the Notice of Deposition, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, now at issue.

2. On January 11, 2006, Sprint sent a letter to counsel for Voiceglo, which reminded Voiceglo that "the vast majority of information pertaining to the prosecution of the patents-in-suit is privileged and, therefore, not discoverable, pursuant to Rule 26." Ex. D. In an attempt to supply Voiceglo with any remaining relevant, non-privileged information, Sprint offered "to stipulate to the authenticity and accuracy of USPTO certified copies of the patent prosecution file wrappers of the patents-in-suit" in lieu of conducting the deposition. Ex. D. Voiceglo rejected that offer. *See* Ex. E.

3. On January 13, 2005, Mr. Eric Buresh, counsel for Sprint, telephoned Mr. Jim Dabney, counsel for Voiceglo, to discuss the matter in greater detail. Mr. Buresh stated Sprint's position that the vast majority of the testimony sought is privileged. Mr. Buresh again offered to stipulate to the authenticity and accuracy of USPTO certified copies of the patent prosecution file wrappers of the patents-in-suit. Mr. Dabney reiterated his belief that the depositions should go forward. Mr. Buresh asked Mr. Dabney to identify some additional relevant, non-privileged information Voiceglo sought beyond those relating to the authenticity and accuracy of the file histories of the patents-in-suit. Mr. Dabney refused to identify any such

1

information and instead asserted that the deposition topics, as contained in the Notice, sought discoverable information.

Case 2:05-cv-02433-JWL   Document 46   Filed 01/17/2006   Page 12 of 13

1851557v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January 2006, a copy of the above and foregoing was e-filed with the Court using the CM/ECF system which sent notification to the following:

James D. Oliver
Scott C. Nehrbass
Foulston Siefkin LLP
40 Corporate Woods Suite 1050
9401 Indian Creek Parkway
Overland Park, Kansas 66210

James W. Dabney
Henry C. Lebowitz
Malcolm J. Duncan
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Attorneys for Defendants
theglobe.com, Inc. and Voiceglo Holdings, Inc.

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608

Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.


/s/ Eric. A. Buresh_____
Attorney for Sprint Communications Company L.P.

3