IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THEGLOBE.COM, INC., VOICEGLO HOLDINGS, INC., VONAGE HOLDINGS CORP., VONAGE AMERICA, INC., | ) ) ) ) ) | 

Case No. 05-2433-JWL

JURY TRIAL DEMANDED

Defendants.

**REPLY IN SUPPORT OF PLAINTIFF SPRINT COMMUNICATIONS COMPANY L.P.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT**

Sprint Communications Company L.P. ("Sprint") respectfully submits this Reply in support of its motion for a Protective Order prohibiting the deposition noticed by Voiceglo Holdings, Inc. ("Voiceglo") of Sprint pursuant to Fed. R. Civ. P. 30(b)(6). *See* Doc. 46 (Sprint's motion); Doc. 54 (Voiceglo's opposition). For the reasons described in Sprint's Motion for Protective Order and the reasons described below, the Court should not allow the noticed Rule 30(b)(6) deposition to proceed.

**I.     VOICEGLO IGNORES BINDING FEDERAL CIRCUIT PRECEDENT AND FAILS TO CARRY ITS BURDEN TO SHOW WHY THE ATTORNEY DEPOSITIONS ARE CRITICAL AND NON-PRIVILEGED**

Voiceglo's Opposition is absolutely silent with respect to the controlling Federal Circuit precedent presented in Sprint's motion. This silence is not surprising given that both *In re Spalding Sports*, 203 F.3d 800 (Fed. Cir. 2000), and *In re Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996), hold that the type of information Voiceglo now seeks is privileged and, therefore, not

1

1878868v2

discoverable.[1]  Sprint's motion for protective order should be granted for this reason alone. Unable to address *In re Spalding Sports* or *In re Regents of Univ. of Cal.*, Voiceglo instead offers a barrage of inapposite district court case law. *See infra* Section II.

In addition, Voiceglo has failed to carry its burden to rebut the presumption that a party's attorney is not subject to deposition. *See Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996).[2]  Voiceglo has made no attempt to show the depositions sought are relevant, much less critical to its case, as required by *Mike*.  Nor has Voiceglo made an effort to show that no other means exist to obtain the desired information besides deposing in-house counsel.[3]

Voiceglo also bears the burden to show that it seeks non-privileged information. *See id*.  Notwithstanding Voiceglo's burden, Sprint's motion establishes the privileged nature of the requested information.  In response, Voiceglo erroneously claims that the death of the inventor eviscerates the attorney-client privilege or otherwise renders the privilege irrelevant to the present action.  Opp'n at 4.  Not surprisingly, Voiceglo's contention is entirely unsupported and without merit.

Sprint's in-house counsel represent Sprint, the corporate entity.  Mr. Christie, the named inventor, was an employee of Sprint acting within the scope of his employment when he

---

[1] As set forth in footnote 1 of Sprint's motion, Sprint offered to stipulate to the authenticity of the public record documentation.  Voiceglo declined Sprint's offer.  Yet, despite numerous opportunities to do so, Voiceglo still has made no attempt to identify any category of non-privileged information that is responsive to the noticed Rule 30(b)(6) topics.

[2] Voiceglo asserts it does not bear the burden to prove the three criteria set forth in *Mike*.  Opp'n. at 2–4 (arguing Sprint's in-house attorneys are neither "opposing counsel" nor "trial counsel").  Voiceglo's distinction, however, is not supported by the law.  In *Mike*, this Court found that the party seeking depositions of two counsel had "not satisfactorily shown" the attorneys' testimony would be relevant or "crucial."  *Mike*, 169 F.R.D. at 379.  Only one of the two attorneys, Mr. Wharton, was an attorney of record in the lawsuit.  *Id.* at 377.  The other attorney who prosecuted the patent, Ms. Herman, was not an attorney of record, but the Court found the party seeking the deposition failed to carry its burden as to Ms. Herman as well.  *See id.* at 377, 379.

[3] Voiceglo has not propounded interrogatories that might answer its questions, nor has Voiceglo identified the specific unsuccessful measures it has taken to obtain the information it seeks.

1878868v2

invented the technology embodied in the patents-in-suit. Accordingly, Sprint owned all rights to the invention, as reflected on the face of each asserted patent. Thus, Sprint's in-house counsel were advising Sprint as to its patent rights during the prosecution of the patents-in-suit.[4] *See Natta v. Hogan*, 392 F.2d 686, 692 n.16 (10th Cir. 1968) (finding privilege applies to in-house attorneys involved in patent prosecution and noting that "house counsel gives advice to one regular client"). Thus, the privilege extends between Sprint and Sprint's in-house counsel. The death of Mr. Christie has no bearing on the continued existence of privilege between Sprint and Sprint's in-house counsel regarding the prosecution of the patents-in-suit.

## II.   EVERY CASE VOICEGLO CITES IS FACTUALLY DISTINGUISHABLE OR IS NO LONGER GOOD LAW

### A.   Voiceglo Has Not Pled Inequitable Conduct, Rendering the Majority of Voiceglo's Cases Irrelevant

In a failed attempt to show that it seeks non-privileged information, Voiceglo relies on the inequitable conduct exception to the general rule that the attorney-client privilege protects communications in the patent prosecution arena. It is black-letter law that an assertion and *prima facie* showing of inequitable conduct in the procurement of a patent can pierce the attorney-client privilege. *See generally*, Donald S. Chisum, CHISUM ON PATENTS, § 19.03[6][h][i] (acknowledging that a charge of inequitable conduct is an exception by which a patentee may lose the benefit of the attorney-client privilege). Voiceglo, however, has not pled inequitable conduct, nor does it have a good faith basis to allege inequitable conduct. *See generally*, Doc. 22 (Voiceglo's Answer to Sprint's First Amended Complaint). Accordingly, the inequitable conduct exception cannot apply. *See* Chisum, § 19.03[6][h][i] ("the exception comes into force only when a party seeking access to documents makes a *prima facie* showing of willful

---

[4] Even if Sprint's in-house counsel were advising Mr. Christie personally, the attorney-client privilege survives his death. *See generally Swidler & Berlin v. United States*, 524 U.S. 399 (1998).

and material misrepresentations or omissions."); *see also In re Spalding Sports*, 203 F.3d at 806–08 (finding the attorney-client privilege applies to patent prosecution, then finding that the privilege was not abrogated by the inequitable conduct exception because defendant failed to make a *prima facie* showing of inequitable conduct).

Nevertheless, Voiceglo disingenuously relies on a plethora of cases in which inequitable conduct *was* at issue and formed the basis for piercing the attorney-client privilege and allowing the deposition to go forward. *See* Voiceglo Opp'n (citing *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687 (D. Kan. 1990); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245 (D. Kan. 1995); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 774 n.3 (N.D. Ill. 2005) (citing *ResQnet.com, Inc.* as "particularly instructive" and noting a different result was appropriate in *aaiPharma* only because "Defendants are asserting inequitable conduct"); *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340 (S.D.N.Y. 2002); *Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer Inc.*, 45 U.S.P.Q. 2d 1775 (S.D.N.Y. 1998);[5] *In re Minebea Co.*, 143 F.R.D. 494 (S.D.N.Y. 1992)). Accordingly, these six cases are factually and legally distinguishable and do not resolve the privilege dispute in this case.

In addition to the cases discussing inequitable conduct, Voiceglo relies on two other cases that are readily distinguishable from the present facts. First, Voiceglo cites *United Phosphorus* for the proposition that "where an attorney has played a role in the underlying facts,

---

[5] Voiceglo fails to mention, however, that the *Alcon Labs.* court recognized that the prosecuting attorney's deposition was only relevant in light of an inequitable conduct claim: "White's mental impressions during the patent prosecution period are at issue in this matter **due to Alcon's inequitable conduct defense**." 225 F. Supp. 2d at 344 (emphasis added); *see also id.* at 344 ("the prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent infringement action"). Furthermore, the Southern District of New York, which decided *Alcon Labs*, later issued a ruling in *Resqnet.com, Inc.* that denied a motion to depose the prosecuting attorney where inequitable conduct had *not* been pled. *See* 2004 WL 1627170 (cited in opening brief).

4

both the attorney and the party have every reason to expect that the attorney's deposition may be requested." Opp'n at 3. In *United Phosphorous*, however, the plaintiff sought to depose defendant's counsel regarding various meetings defendant's counsel attended with *third parties*. *Id.* at 246, 248–49. Thus, unlike here, the party seeking discovery in *United Phosphorous* did not "intend to inquire concerning matters protected by the attorney-client privilege or work product." *Id.* at 249. Voiceglo also cites to *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204 (N.D. Ind. 1990). The *Golden Valley* case, however, is not a privilege case at all. The *Golden Valley* defendants "abandoned attorney-client privilege and work product immunity" and focused instead on "lack of relevancy" in an effort to avoid producing unfiled drafts of patent applications. *Id.* at 212. Neither *United Phosphorous* or *Golden Valley* are applicable to a case such as this, where the attorney-client privilege is at issue.

      **B.**    **Voiceglo's Remaining Cases Rely on the *Jack Winter* Line of Cases, Which The Federal Circuit Has Rejected**

In a last ditch attempt to probe Sprint's privileged information, Voiceglo relies on the now-rejected "conduit theory"[6] originally set forth in *Jack Winter Inc. v. Koratron*, 50 F.R.D. 225 (N.D. Cal. 1970). Under the *Jack Winter* approach,[7] several types of information, including technical information communicated to the patent attorney, were not privileged. *See McNeil-PPC*, 136 F.R.D. at 669 (highlighting six types of information that were not privileged under the *Jack Winter* approach). Voiceglo's reliance on the *Jack Winter* approach is misplaced and

---

[6] Under the now-rejected "conduit theory," most communications with a patent attorney are not privileged because the patent attorney is a mere conduit between the inventor and the patent office.

[7] *In re Gabapentin* provides an excellent history of the evolution of the law of attorney-client privilege in the context of patent prosecution and culminates with the Federal Circuit's rejection of the *Jack Winter* approach. *See In re Gabapentin Patent Litigation*, 214 F.R.D. 178, 181–82 (D.N.J. 2003) (discussing the evolution of attorney-client privilege relating to patent prosecution before concluding that *In re Spalding Sports*, 203 F.3d 800 (Fed. Cir. 2000), set the "standard for the application of the attorney client privilege in patent litigation.").

5

disingenuous—the Federal Circuit explicitly rejected the *Jack Winter* approach, stating "[w]e conclude that the better rule is the one articulated in this case." *Spalding Sports*, 203 F.3d at 806 n.3 (rejecting *Jack Winter* approach); *see also United States v. Ary*, No. 05-10053-01, 2005 WL 2367541, at *7 (D. Kan. Sept. 27, 2005) (citing *Spalding Sports* with approval). It is beyond dispute that this Court must apply *Spalding Sports* and deny Voiceglo's requested deposition.[8]

        Nevertheless, Voiceglo cites extensively to cases that relied upon the *Jack Winter* approach. *See McNeil-PPC*, 136 F.R.D. at 670 (adopting *Jack Winter* line of cases); *see also In re Minebea Co.*, 143 F.R.D. 494, 499, 502 (S.D.N.Y. 1992) (citing *McNeil-PPC* and *Jack Winter*). Voiceglo's shotgun approach to citing legal authority is questionable at best, particularly because one of its own cited cases recognizes that the *Jack Winter* line of cases is no longer good law. *See TeKnowledge Corp. v. Akamai Techs., Inc.*, No. 02-5741, 2004 WL 2480705, at *2 (N.D. Cal. Aug. 10, 2004) (rejecting *Jack Winter* and confirming that *Knogo Corp. v. United States*, 213 U.S.P.Q. 936 (Ct. Cl. 1980) and *Advanced Cardiovascular* represent the proper view); *see also Spalding Sports*, 203 F.3d at 806 (citing *Knogo* with approval). Binding Federal Circuit precedent establishes that the information sought in Voiceglo's Notice is privileged. Voiceglo has made no viable effort to dispute this point and instead advances unsupported arguments and cites inapplicable or bad law. Nor has Voiceglo even made an attempt to identify any single category of relevant, non-privileged information in light of the

---

[8] Several other courts have rejected the *Jack Winter* approach as a "gross mischaracterization of the patent attorney's role in the application process." *Messagephone, Inc. v. SVI Sys., Inc.*, No. 3-97-1813, 1998 WL 812397, at *1 (N.D. Tex. Nov. 18, 1998) (citing six other cases adopting the same view). Indeed, the Northern District of California—the very court that decided *Jack Winter*—has since repudiated that decision in *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, also cited by Sprint: "[H]aving been made aware by counsel for plaintiff of the well-reasoned competing line of authority best reflected in *Knogo, supra*, this court now reverses its earlier opinion that accepted the *Jack Winter* line of authority." 144 F.R.D. at 374.

holding in *Spalding Sports* and the numerous other cases relied upon by Sprint. Accordingly, entry of a protective order precluding the deposition is proper.

**III.   A PROTECTIVE ORDER IS NECESSARY AND APPROPRIATE**

Sprint should not be required to produce a deponent on topics calling for information that is privileged virtually in its entirety. Further, Sprint should not be forced to attend a deposition simply to object and instruct the witness not to answer every question beyond those to which Sprint would have provided stipulated answers in the first instance.

Voiceglo erroneously asserts that *Hay & Forage* requires Sprint to appear for the deposition and object to Voiceglo on a question-by-question basis. Opp'n at 5–6. However, the *Hay & Forage* court only required one attorney to appear and object because he possessed information relevant to an inequitable conduct defense. 132 F.R.D. at 690. By contrast, the *Hay & Forage* court *denied* a motion to compel depositions of four other party-attorneys, two of whom were in-house counsel for defendant, because inequitable conduct was not at issue with respect to these attorneys. Thus, no exception to the attorney-client privilege applied as to these four. *Id.* at 691; *see also id.* at 689 ("Because of the potential for abuse in deposing an opponent's attorney, courts have required the party seeking the deposition to demonstrate its propriety and need. . . . If there are other available sources, the party seeking discovery should explore them first."). Since inequitable conduct is not at issue here, the *Hay & Forage* court's analysis relating to the four attorneys governs the present dispute: "Suffice it to say there appears to be nothing of record to show that attorney opinions are discoverable. . . **there appears to be no need for the depositions**." *Id.* at 691 (emphasis added). Voiceglo cannot show any non-privileged need for the noticed deposition. Accordingly, entry of a protective order precluding the deposition is proper.

7

## IV.    CONCLUSION

For the foregoing reasons and for the reasons set forth in Sprint's motion, Sprint requests that the Court enter a Protective Order prohibiting the deposition noticed by Voiceglo Holdings, Inc. of Sprint pursuant to Fed. R. Civ. P. 30(b)(6).

                                            Respectfully Submitted,

Dated:  February 14, 2006                    SHOOK, HARDY & BACON L.L.P.


                                            /s/ Adam P. Seitz
                                            B. Trent Webb, KS Bar No. 15965
                                            Adam P. Seitz, KS Bar No. 21059
                                            Eric A. Buresh, KS Bar No. 19895
                                            2555 Grand Boulevard
                                            Kansas City, Missouri 64108-2613
                                            816-474-6550 Telephone
                                            816-421-5547 Facsimile

                                            ATTORNEYS FOR PLAINTIFF

1878868v2

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February 2006, a copy of the foregoing REPLY IN SUPPORT OF PLAINTIFF SPRINT COMMUNICATIONS COMPANY L.P.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT was e-filed with the Court using the CM/ECF system which sent notification to the following:

James D. Oliver
Scott C. Nehrbass
Foulston Siefkin LLP
40 Corporate Woods Suite 1050
9401 Indian Creek Parkway
Overland Park, Kansas 66210

James W. Dabney
Henry C. Lebowitz
Malcolm J. Duncan
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Attorneys for Defendants
theglobe.com, Inc. and Voiceglo Holdings, Inc.

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608

Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.


/s/ Adam P. Seitz_____
Attorney for Sprint Communications Company L.P.

1

1878868v2