IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
)
               Plaintiff,     )
)
v. )
)
VONAGE HOLDINGS CORP., )   Case No. 05-2433-JWL
VONAGE AMERICA, INC., )
)
               Defendants.  )
)
)
)
)

### SPRINT'S RESPONSE TO VONAGE'S MOTION TO COMPEL

Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits its response to Defendants Vonage America, Inc. and Vonage Holdings Corp.'s Motion to Compel Sprint to Identify Search Terms Used to Search for Relevant Documents Responsive to Vonage's Document Requests.

### I.    INTRODUCTION

In its Motion to Compel, Defendants Vonage America, Inc. and Vonage Holdings Corp. (collectively "Vonage") ask the Court to compel Sprint's production of all electronic document search terms used by Sprint in relation to the instant litigation. While Vonage's Motion is prefaced with unfounded allegations regarding Sprint's document production, the issue presented by Vonage's Motion is purely legal in nature, i.e., whether Sprint's search terms are protected work product.

Demanding a party's selected search terms is an extraordinary request, because counsel's unilateral selection of terms as part of a case investigation necessarily reveals the

- 1 -

233570v3

attorney's mental impressions regarding potential issues that might arise. As such, search terms undeniably are protected attorney work product.

Vonage does not cite a single case in which a party was compelled to involuntarily provide the search terms it employed in investigating a claim. Instead, Vonage invites the Court to expand the scope of discovery in an unprecedented way. Because this expansion comes at the expense of protected work product, Vonage's Motion must be denied.

## II.    FACTS AND CONFERRAL PROCESS

Instead of focusing on the core legal question, Vonage prefaces its Motion with an irrelevant and demonstrably misguided attack on Sprint's document production. While not relevant to resolution of the pending motion, Sprint must briefly correct the inaccurate factual record propounded by Vonage.

Citing three specific categories of documents, Vonage's Motion portrays Sprint's document production as inadequate. Doc. No. 108 at 2 - 3. Two of the categories listed by Vonage are (i) correspondence between Sprint and Mr. Joseph Christie or his estate and (ii) contracts with third parties, including copies of contracts between Sprint and outside contractors relating to the development of the subject matter of the patents-in-suit. *Id.* With respect to these two categories, Vonage's accusations are premature and misleading. Prior to Vonage filing its Motion, Sprint informed Vonage that it had located documents relevant to these two categories and would be producing them as quickly as possible. *See* Ex. A (1/2/07 email from Adam Seitz to Barry Golob); Ex. B, Declaration of Adam P. Seitz, at ¶ 3.

The final category of documents cited in Vonage's Motion involves documents from 1995 and 1996 related to a project named "JSC2000." JSC2000 was a Sprint project that led to aspects of the technology described and claimed in the patents-in-suit. *See* Doc. No. 108, Ex. 8. Here, Vonage's aspersions rely on a mischaracterization of Sprint's document retention

- 2 -

233570v3

policy. Vonage contends that research and development documents relevant to the JSC2000 project should be retained for twenty-five (25) years. *Id.* at 4. However, Sprint's policy clearly states that the only research and development records subject to a twenty-five year retention period are "**records which apply to tax credit**." Doc. No. 108, Ex. 7 (emphasis added). Sprint is currently investigating whether any JCS2000 project records fall within this "tax credit" limitation, and will produce located documents, if any, as quickly as possible.

Certainly, the relevant JSC2000 project documents would fall under the "Project Files" category, which includes documents such as "Detailed Project Plans," "Network Design Records," and "Network Project Files." *See* Ex. F (SPRp-010-0514). The retention period for "Project Files" documents, subject to certain exceptions, is six (6) years. *Id.* Sprint's search for responsive documents from the 1995-1996 timeframe is ongoing, but it is possible that many of the electronic JSC2000 project documents from 1995 and 1996 no longer exist.

Furthermore, Vonage fails to mention that, prior to filing its Motion, Sprint offered a reasonable resolution that (a) is contemplated by persuasive case law as discussed below, (b) would alleviate any genuine (as opposed to pretextual) production concerns, and (c) would protect the work product developed during Sprint's investigation of its claims. Specifically, Sprint offered to cooperate with Vonage to identify a search term strategy and to implement the resulting strategy to the extent not already done. *See* Ex. C (12/22/06 letter from Buresh to McPhail). This cooperative effort to define a search term strategy, once implemented, would have satisfied any perceived question as to the thoroughness of Sprint's collection efforts without invading counsels' mental impressions.

In addition, on January 18, 2007, Sprint extended yet another offer to Vonage in a further effort to resolve the present motion. Specifically, Sprint offered to identify those search

terms used by Sprint that resulted in the production of documents, without disclosing those terms that did not lead to the production of responsive documents. Ex. B, Declaration of Adam P. Seitz, at ¶ 4.

Vonage rejected both of Sprint's proposals, demonstrating that Vonage's true interest is obtaining Sprint's counsels' mental impressions, rather than cooperating in defining a mutually agreeable search protocol. *See* Exh. D, E-Mail from Golob to Seitz, dated Jan. 18, 2007.

### III.   ARGUMENT

Vonage's Motion to compel Sprint's disclosure of search terms asks the Court to break new ground and ignore the protections traditionally afforded under the work product doctrine. Vonage's Motion does not seek production of documents. Sprint already has produced substantial responsive documents and, as Vonage is aware, is in the process of finalizing its production. Instead, Vonage seeks to compel discovery of all search terms employed by Sprint's counsel in its investigations conducted in the context of this litigation. Vonage's Motion relies on a flawed legal premise, and Vonage has failed to cite a single case in which a court has granted a request such as Vonage's.

**A.   The Cases Cited By Vonage Support an Up-Front Cooperative Approach to Defining a Search Strategy.**

While Vonage seeks after-the-fact discovery of Sprint's search terms, the authority cited by Vonage establishes that the proper resolution of electronic search disputes is for the parties to cooperate in defining an appropriate search strategy. If agreement cannot be reached or the agreement is not implemented by the searching party, then involvement of the Court may be necessary. The present dispute obviously has not reached that point, however, as Vonage has flatly refused to cooperate in any fashion regarding the issue.

The authority relied upon by Vonage does not support the discoverability of unilaterally selected search terms. For instance, Vonage relies on a *Standard for Discovery of Electronic Documents* proposed by the U.S. District Court for the District of Delaware. *See* Doc. No. 108, Ex. 18. This standard requires the parties reach agreement up-front as to the method of searching for relevant documents, including the search terms to be used. *Id*.

Likewise, other cited cases each address search term negotiations that occurred between the parties. *See Quinby v. WestLB AG*, No. Civ. 7406, 2006 U.S. Dist. LEXIS 64531 (S.D.N.Y., Sept. 5, 2006)(describing an impasse reached during search term negotiations); *Boeser v. Sharp,* No. 03-cv-00031, 2006 U.S. Dist. LEXIS 21883 (D. Colo. Apr. 20, 2006); *Tessera, Inc. v. Micron Tec. Inc*., No. C-06-80024, 2006 U.S. Dist. LEXIS 25114 at *23 (N.D. Cal. Mar. 22, 2006) ("the parties discussed a proposed list of search terms to run through electronic document databases"); *Procter & Gamble v. Haugen,* 179 F.R.D. 622 (D. Utah 1998). In contrast to the after-the-fact disclosure Vonage demands, the cited cases uniformly reflect the practice of up-front collaboration between the parties to resolve electronic search disputes.

Consistent with the cited authority, Sprint has proposed the parties collaborate to define strategies going forward to resolve Vonage's purported concerns. More specifically, Sprint is amenable to cooperatively developing a list of search terms selected to lead to responsive documents in light of the present claims, defenses, and document requests. The collaboration proposed by Sprint is precisely the type of up-front cooperative effort suggested by the cases and standards cited in Vonage's Motion.

However, because language is an imprecise means for communication, further explanation may be helpful to the extent Vonage attempts to distort the meaning of an up-front cooperative effort. Where, as here, the producing party is the plaintiff in an action, it is clear that

- 5 -

233570v3

the plaintiff often will not initially be able to cooperate with the requesting party (or defendant) to define a search strategy.  Indeed, plaintiffs typically investigate and take steps to preserve and locate documents well before a lawsuit is filed.  In such circumstances, the up-front cooperative effort would take place, if necessary, only after requests for production have been propounded.  Furthermore, practically speaking, to the extent a plaintiff believes it has assembled all responsive documents as part of its pre-filing investigation, preservation, and collection efforts, the need for an up-front cooperative effort to define a search strategy would not arise until the requesting party perceived production deficiencies.  This is precisely the circumstance in the present case.  By mid-June 2006, Sprint had produced what it believed to be its responsive documents.  Much later, Vonage began to question Sprint's production, and, on or about December 15, 2006, Vonage requested Sprint's search terms.  *See* Ex. E (12/15/2006 letter from McPhail to Seitz).  In response, Sprint promptly proposed a cooperative up-front effort to define a search strategy that would satisfy Vonage's concern.  *See* Ex. C (12/22/2006 letter from Buresh to McPhail).  Vonage was not interested in cooperation.  While cooperating with Sprint to define a search strategy would resolve production deficiencies, if any, Vonage apparently believed that its refusal to cooperate in the discovery process would reap greater benefits.

       Without question, the approach advocated by Vonage results in a disincentive to engaging in the cooperative discovery approach that the Federal Rules and the above-referenced authorities are designed to facilitate.  Vonage's approach incentivizes requesting parties to eschew cooperation.  The requesting party benefits most by refusing to cooperate and then demanding production of unilaterally selected search terms.  Under Vonage's approach, the requesting party's refusal to cooperate is rewarded by forcibly opening a window into opposing counsel's mental impressions.  This outcome is unacceptable.  Sprint's proposal, on the other

233570v3

hand, facilitates cooperation, minimizes the need for judicial involvement, and protects work product.

### B.   Unilaterally Selected Search Terms Are Protected Attorney Work Product.

Unlike cooperatively defined search terms, Vonage seeks after-the-fact disclosure of *all* search terms employed by Sprint and its counsel throughout the litigation, whether used in the context of responsive document searching or not.  Notably, Vonage's broad demand includes search terms unilaterally selected by a Sprint's attorneys to investigate case theories and to develop background understanding of Sprint's claims, whether or not those terms are in any way related to Vonage's requests for production.  Because such search terms reveal the attorneys' investigation and mental impressions, they are work product and must be protected.

Under the work-product doctrine, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3).  As the Tenth Circuit recently stated, "In performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *In re Qwest Communications Intern. Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).  Vonage's request for all of Sprint's search terms represents such an "unnecessary intrusion" into the efforts undertaken by Sprint's attorneys.

During the course of litigation, counsel routinely search their client's hard-copy material and electronic databases to evaluate case theories or claims.  Unlike search terms disclosed during up-front cooperative efforts, which are merely used to identify documents responsive to discovery requests, an attorney's search terms used to perform case investigation or assessment reflect the attorney's mental impressions about the factual story a party might be able to tell or the causes of action it might be able to assert.  For example, an attorney may perceive

- 7 -

an area of particular strength or weakness in their case and perform searches to explore that aspect of the case. Disclosure of these search terms to an adversary would impermissibly expose the attorney's mental impressions, along with the potential strength or weakness.

In a similar context, the Northern District of Georgia recently held that a document retention notice prepared by counsel constituted protected work product because the hold notice included a list of terms to identify documents to be retained and that list reflected the mental impressions of counsel. *See Gibson v. Ford Motor Co.*, 2007 WL 41954, at *6 (N.D.Ga. January 4, 2007). The court held:

> This information is not reasonably calculated to lead to the discovery of admissible evidence. The document Plaintiffs request is simply a description of material employees were instructed not to discard. In the Court's experience, these instructions are often, if not always, drafted by counsel, involve their work product, are often overly inclusive, and the documents they list do not necessarily bear a reasonable relationship to the issues in litigation.

*Id.* Like the list of terms selected by an attorney for inclusion in a hold notice, the list of terms selected by counsel for inclusion in document investigation is protected work product and is not likely to lead to the discovery of admissible evidence.

In another similar case, the Northern District of Illinois found that search terms selected by counsel "provide a window into the attorney's thinking." *U.S. v. Segal*, 2004 WL 830428, at *8 (N.D. Ill. Apr. 16, 2004). Accordingly, the *Segal* court held that the attorney's search terms were protected work product. *Id.* While *Segal* involved searches of case law, not of documents, the court's rationale is equally applicable – an attorney's search terms reveal the issues and subject matter of particular interest to counsel and, thus, are protected work product.

Applying the well-established work product principles, discovery regarding unilaterally selected search terms is impermissible as these search terms reveal the mental impressions of an attorney. *See In re Qwest Communications Intern. Inc.*, 450 F.3d at 1186

233570v3

("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."). Therefore, Vonage's attempt to compel after-the-fact discovery of Sprint's search terms must fail.

### C. Vonage's Motion Lacks Precedential Support.

Vonage does not cite a single case in which a party was compelled to involuntarily provide its unilaterally selected search terms. Vonage cites numerous cases discussing party cooperation in reaching an appropriate search strategy, which, as outlined above, is the proper approach to resolving electronic search disputes. Such case law does not, however, support the proposition that search terms independently selected by counsel are discoverable. In fact, Vonage relies on only two cases that purportedly support compelling a party to produce its search terms. Vonage's reliance, however, is misplaced.

The first case relied upon by Vonage is *Judicial Watch Inc. v. United States Dept. of Justice*, 185 F. Supp. 2d 54 (D.D.C. 2002). In *Judicial Watch,* the plaintiff filed an action under the Freedom of Information Act (FOIA) against the Department of Justice (DOJ), seeking information regarding trade missions by the Department of Commerce. *Id*. at 57. Subsequently, the DOJ moved for partial summary judgment that it had fulfilled its FOIA obligations. *Id*. at 63. To prevail on such a motion in a FOIA case, the DOJ was required to demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents. *Id*.; *see also Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999); *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). To meet this standard (i.e., to demonstrate the adequacy of a search), courts have uniformly required the agency to provide "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched." *Iturralde v.*

*Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C.Cir. 2003) (*citing Valencia-Lucena*, 180 F.3d at 326). Finding that the DOJ failed to carry this burden, the court denied the summary judgment motion. *Judicial Watch Inc.*, 185 F. Supp. 2d at 65 ("Based on the declarations submitted by defendant, the Court is unable to conclude that these searches were adequate and therefore denies defendant's motion for partial summary judgment on this issue."). The very specific FOIA context of *Judicial Watch* renders it inapposite on the present issue. Under the judicially created standards for an award of summary judgment under the FOIA, the disclosure of search terms is a required burden placed on government agencies. The FOIA standards simply do not apply in other civil litigation contexts. Vonage's reliance on *Judicial Watch* is demonstrably misplaced.

The second case advanced by Vonage, *In re CV Therapeutics, Inc., Securities Litigation,* also provides no support for involuntarily compelling a party to produce its search terms. In *In re CV Therapeutics*, the defendant <u>voluntarily agreed</u> to produce its search terms to the plaintiff, subject to a written confidentially agreement. *In re CV Therapeutics, Inc., Securities Litigation,* No. C 03-03709, 2006 U.S. Dist. LEXIS 38909, at *31 (N.D. Cal. Apr. 4, 2006). Therefore, <u>the issue of compelling production of the search terms was not even before the court</u>. *Id*. In light of the defendant's agreement to provide its search terms, the court was asked to rule regarding confidentiality provisions surrounding the defendant's disclosure. *Id*. The court found in favor of the defendant and permitted the disclosure only under the defendant's terms. *Id*. As the defendant provided its search terms voluntarily, *In re CV Therapeutics* does not provide any support for Vonage's attempt to compel production of Sprint's search terms.

None of Vonage's cited cases stand for the proposition that a party's unilaterally selected search terms fall within the scope of allowable discovery. As such, Vonage's Motion

represents a novel effort to expand the scope of permissible discovery. This attempted expansion comes at the expense of protected work product, and, thus, Vonage's Motion must be denied.

## IV.    CONCLUSION

For the reasons stated above, Sprint respectfully requests that the Court deny Vonage's Motion to Compel Sprint to Identify Search Terms Used to Search for Relevant Documents Responsive to Vonage's Document Requests, and that the Court provide Sprint such other relief as may be appropriate and necessary under the circumstances.

Respectfully submitted,

Dated: January 24, 2007

_/s/ Adam P. Seitz_____
B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT COMMUNICATIONS COMPANY L.P.

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of January, 2007, a true and accurate copy of the above and foregoing **SPRINT'S RESPONSE TO VONAGE'S MOTION TO COMPEL SPRINT TO IDENTIFY SEARCH TERMS USED TO SEARCH FOR RELEVANT DOCUMENTS RESPONSIVE TO VONAGE'S DOCUMENT REQUESTS** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608
Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

  /s/  Adam P. Seitz                               
Attorneys for Sprint Communications Company L.P.

- 12 -

233570v3