IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Case No. 05-2433-JWL |
| v. | ) <br> ) |
| THE GLOBE.COM, INC., ET AL | ) <br> ) |
| Defendants. | ) <br> ) |

**VONAGE'S REPLY TO SPRINT'S OPPOSITION
TO VONAGE'S MOTION TO COMPEL**

Vonage America, Inc. and Vonage Holdings Corp. (collectively "Vonage") respectfully submit this reply to Sprint Communications Company L.P.'s ("Sprint's") Response to Vonage's Motion to Compel Sprint to Identify Search Terms Used to Search for Relevant Documents Responsive to Vonage's Documents Requests.

As Vonage explained in its opening brief, Vonage's Motion to Compel was a necessary consequence of Sprint's repeated and unjustified refusals to provide satisfactory responses to long-standing requests for documents that are essential to the claims and issues in this litigation, and to which Vonage is indisputably entitled under the discovery rules. Ignoring this reality, Sprint's Response attempts to characterize Vonage's Motion as some underhanded ploy devised to expose counsel's mental impressions. Such a mischaracterization is outrageous, particularly in view of Sprint's conduct that necessitated Vonage's Motion in the first place, including Sprint's

unequivocal misrepresentations of fact to Vonage and this Court and Sprint's acknowledgment, after Vonage filed its Motion, that additional responsive documents do exist.

Sprint also argues that the precedent cited in Vonage's Motion is somehow inapplicable to this matter because those cases only support "an up-front cooperative approach to defining a search strategy." (Response at 4.) While Vonage agrees that Sprint's approach to discovery in this litigation has been anything but "up-front" and "cooperative," these circumstances do not serve to distinguish the cited precedent. The cited case law clearly supports the disclosure of a party's search terms in instances where that party's full and fair participation in the discovery process has reasonably been questioned.

Vonage is requesting production of the search terms Sprint used to search for documents responsive to Vonage's requests because Sprint has not been able to satisfactorily explain why it has not produced or accounted for responsive, non-privileged documents known to have existed at one time and, in some cases, fortuitously found by Vonage to exist presently in public records or other sources. In view of Sprint's repeated refusals to produce responsive documents, and its misleading assertions regarding the status and results of searches allegedly conducted in response to Vonage's requests, the time for formulating a cooperative search strategy has long passed. It is now time for Sprint to be held accountable for its obfuscatory conduct and be made to demonstrate to Vonage, and to this Court, why it has apparently failed in its discovery obligations. In light of the present circumstances, and in view of relevant law, Vonage is entitled to

2

obtain Sprint's apparently deficient search terms so that Vonage may attempt to remedy the delay and prejudice already caused by Sprint's irresponsible conduct or, in the alternative, Vonage should be given access to Sprint's document storage database so that it can perform its own search for these documents.

I. **The production of the search terms is justified in light of the seriously misleading and contradictory statements regarding the searches Sprint has allegedly performed**

Contrary to Sprint's assertions, Vonage's pending Motion to Compel is not some nefarious, tactical ploy, but rather a necessary reaction to Sprint's demonstrably incredible and unreliable responses to Vonage's document requests thus far. In view of representations Sprint has made to Vonage, and to this Court, regarding the existence *vel non* of certain documents and the results of searches it allegedly performed, that have later proven to be dubious or utterly false, Vonage can no longer rely on unsubstantiated claims that Sprint has completed a full and fair search of available documents. Production of the obviously defective search terms used by Sprint is the only means to conclusively verify that Sprint has not, at any time, met its obligation under the discovery rules to perform a diligent search based on a reasonably comprehensive search strategy.

Tellingly, Sprint's Response completely ignores the relevant series of events that led up to the filing of the Motion and instead meekly focuses on the few recent half-hearted conciliatory proposals Sprint has made to avoid embarrassment and the possible risk of sanctions for its questionable conduct. Sprint, however, has consistently refused

to provide Vonage with any explanation for each category of requested documents that Sprint concedes existed at some point but have not been produced, as to whether the documents still exist but just cannot be located or whether the documents no longer exist because they have been destroyed. Without such basic knowledge, Vonage cannot possibly evaluate the reasonableness of Sprint's search. Moreover, evidence abounds, as discussed in more detail below, that the search terms used by Sprint were not effective in locating documents responsive to Vonage's discovery requests.

### A. Sprint did not produce documents critical to Vonage's defenses and counterclaims until Vonage filed its pending Motion to Compel

Throughout the discovery process, Sprint has engaged in obfuscatory conduct, including asserting that documents could not be located after searching, only to somehow magically located the documents after Vonage filed the pending Motion to Compel. In particular, at least four (4) separate categories of documents have now been located by Sprint, despite its naked assertions in the past that Sprint had searched for these documents and had been unable to locate any of them.

#### 1. Sprint had repeatedly stated that it could not locate documents relating to correspondence between Sprint and the alleged inventor or his estate, only to recently disclose that another search had in fact located such documents

Vonage has been requesting documents related to correspondence between Sprint and Joseph Christie or his estate since at least as early as September, 2006. (*See, e.g.,* Vonage's Br., Ex. 1 (9/20/06 letter from Golob to Seitz).) Vonage repeated this request several times in the following months. (*See, e.g.,* Ex. A, attached (10/12/06 letter from McPhail to Strand); Vonage's Br., Ex. 3 (12/12/06 letter from McPhail to Seitz).)

4

In a series of letters and during a teleconference among counsel in late November and early December, Sprint unequivocally certified that it had thoroughly searched its documents and no document responsive to this request had been found. (Vonage's Br., Ex. 2 (11/30/06 letter from Seitz to McPhail)( "Sprint has conducted a diligent search of its records and is currently unaware of any non-privileged documents relating to correspondence between Sprint or its attorneys and Joseph Christie or his estate.")) Counsel reiterated this position in a letter dated December 7, 2006, stating that "Sprint has not located any documents relating to correspondence between it and Mr. Christie's estate." (Ex. B, attached (12/7/06 letter from Seitz to McPhail).) Finally, in a letter memorializing a "meet and confer" teleconference on December 11, 2006, Vonage confirmed Sprint's position that "[w]ith respect to documents which we have repeatedly requested from Sprint, but which have not been produced, you stated that you have completed your search of documents within Sprint's possession, custody or control and have been unable to locate any of the following documents: (i) correspondence with the estate of Joseph Michael Christie . . . ." (Vonage's Br., Ex. 3 (12/12/06 letter from McPhail to Seitz).)

Notwithstanding Sprint's representations, which Vonage should be able to rely on under the discovery rules, Vonage found documents responsive to this request had in fact existed and, indeed, wee presently available in public records. For example, documents exist showing that Sprint corresponded with Christie's estate regarding, inter alia, the execution of papers relating to pending patent applications filed in Christie's name and

5

were found in the file history for the prosecution of U.S. Patent No. 6,115,380, which is owned by Sprint. (See, e.g., Vonage's Br., Ex. 4 (papers from the file history of the '380 Patent).) According to Sprint's own document retention policy, documents associated with patents, such as these, are to be retained for six (6) years after expiration of the patent. (See, e.g., Vonage's Br., Ex. 5 (SPRp-010-0502).) In fact, in the same November 30 letter in which Sprint averred that it had "conducted a diligent search of its records" and found no non-privileged documents relating to correspondence between Sprint and Christie or his estate, Sprint also confirmed that it had found and "produced the prosecution histories for each of the asserted patents" and that beyond these documents, no other similar documents had been found. (Vonage's Br., Ex. 2 (11/30/06 letter from Seitz to McPhail).)

Given that these documents should have been retained under Sprint's policy, there simply is no justifiable reason why Sprint should not have found and produced these non-privileged, responsive documents as a result the "diligent search" it claims to have performed. Vonage is entitled to know the terms used in that search so that this discrepancy can be resolved.

### 2. Sprint produced documents evidencing ownership of four of the patents in suit only in response to Vonage's recent Requests for Admission

Vonage has been unable to locate any documents filed with the U.S. Patent & Trademark Office that evidence Sprint's ownership of four of the patents-in-suit. Despite repeated requests by Vonage for all ownership documents, Sprint informed Vonage during the teleconference of December 11, 2006, that all ownership documents that

6

Sprint had in its possession had been produced to Vonage. *See* Vonage's Br., Ex. 3 (12/12/06 letter from McPhail to Seitz). These ownership documents did not include any evidence that Sprint had any rights in or to four of the asserted patents.

After filing the pending Motion to Compel, Vonage served Sprint with Requests for Admission that sought, *inter alia*, an admission that Sprint did not have any assignment or other ownership document for four of the patents-in-suit. It was not until after this Request was served that Sprint suddenly found the relevant document and produced it to Vonage. This document clearly should have been produced to Vonage over a year ago, as a part of Sprint's initial disclosures under Rule 26 (as it is the only evidence that Sprint has any standing to bring this action), and Sprint's clear and undeniable failure to locate this document until 2007 is strong evidence that the search terms Sprint has been using were insufficient and so its search was unreasonably limited.

### 3. Sprint produced licenses with third parties only after Vonage filed its Motion to Compel

Vonage has repeatedly requested Sprint to produce licenses and similar such agreements between Sprint and third parties that relate to the technology at issue so that Vonage be able to evaluate the reasonable royalty advanced by Sprint's damages expert. Such documents were requested by Vonage over one (1) year ago and Sprint had repeatedly insisted that it had searched for these documents but had been unable to find them. The fact that Sprint has just recently advised Vonage that it has now located these license agreements and will produce them to Vonage only emphasizes how clearly deficient the original search, and original search terms, must have been.

### 4. Sprint has not explained to Vonage why it cannot locate documents that were created during the development of the technology of the patents-in-suit

Sprint has failed to produce any documents relating or referring to the conception and/or reduction to practice of any invention claimed in the patents-in-suit, including any invention disclosures or reports authored by or under the supervision of the alleged inventor or any correspondence between the alleged inventor and Sprint's patent attorney regarding such invention or any contracts or agreements with outside consultants and/or contractors who worked on the technology that underlies the patents-in-suit. Sprint has repeatedly represented to Vonage that it has searched for such documents, but has been unable to locate any. Although Sprint's 30(b)(6) witness for records retention testified that he was not even sure the relevant division within Sprint had even been contacted to search for responsive documents, Sprint tries to dismiss such documents as not subject to being maintained according to the "Research and Development" standard in its Response to Vonage's Motion. Sprint does not even try to explain why these documents were not maintained as a part of the patent file, which must be retained for six (6) years after expiration (none of the patents-in-suit has expired so far).

Further, that Sprint now represents to this Court that documents relevant to the JSC2000 project may actually have been destroyed as "Project Files" designated to be kept for only six years is highly improper if Sprint does not provide a basis for such belief. Indeed, this is particularly egregious in view of Sprint's confident dismissal of any suggestion by Vonage that responsive documents may have been destroyed as being only "unfounded accusations". If Sprint's conclusion that the documents may have been

8

destroyed is based on Sprint's inability to locate such documents, then Vonage is at least entitled to review the search terms purportedly used so as to ensure that the search was reasonable.

      **B.**    **Notwithstanding the documents Sprint contends it cannot locate, Sprint also has not produced documents that it has represented to this Court were already produced**

Sprint touts its imminently anticipated, but as yet incomplete, production of 45,000 additional pages as a solution to the present dispute and complete exoneration of its conduct, nonchalantly adding that at least one category of documents has probably been completely destroyed and may no longer exist. (Response at 3.) This explanation, following months of dismissing the idea that responsive documents ever existed and after vehemently denying any suggestion that responsive documents could have been destroyed, is outrageous.

Moreover, it borders on sanctionable when one realizes that that Sprint represented to this Court that these 45,000 pages had already been produced to Vonage prior to November, 2006 (*see* Corrected Response to Vonage's Motion to Extend Certain Discovery Deadlines at 4), and has never corrected that misstatement, even after receiving multiple letters from Vonage pointing out that these documents had not been produced. Indeed, Sprint only agreed to finally produce these documents after Vonage announced its intention to file this Motion, but still has not produced them as of the date of this Reply.

9

### C.  Sprint's recent discovery of responsive documents is only a last minute attempt to avoid the effects of Vonage's Motion

Faced with clear, embarrassing evidence that Sprint's search methodologies are severely deficient, Sprint now argues that any claim that its document production has been inadequate is "premature and misleading" because prior to filing the Motion, "Sprint informed Vonage that it had located documents relevant to these two categories and would be producing them as quickly as possible." (Sprint's Response at 2.) This position is completely contradictory to Sprint's prior representations to Vonage, and to this Court, regarding the status of its document production and the non-existence of the crucial, responsive documents that Vonage has repeatedly requested. The basis and timing of Sprint's newest position regarding the subject documents is highly suspect and, quite frankly, offensive considering Sprint's attitude in the previous months.

In support of its new position, Sprint cites an email between counsel dated January 2, 2007 and provides an affidavit of counsel attesting that this email was in reference to Vonage's outstanding request for correspondence between Sprint and Christie or his estate and contracts with third parties related to the patents-in-suit. (See Sprint's Response, Exs. A & B.) The text and timing of the email – which references Vonage's stated intention to file a motion to compel and is dated more than three months after Vonage first requested these documents – is clearly indicative of a frantic effort by Sprint to avoid revealing its shameful conduct and defective search methods to the Court, at the possible risk of sanctions, after months of stonewalling and off-handedly dismissing Vonage's earnest and increasingly urgent inquiries.

Sprint's position is all the more insulting in view of a letter dated <u>the preceding business day</u>, December 29, 2006, in which Sprint brusquely responded to Vonage's request for proof that the requested documents Vonage knew to have existed at one time were destroyed. (*See* Vonage's Br., Ex. 17 (12/29/06 letter from Seitz to McPhail).) At that point, as Vonage had independently verified that non-privileged, responsive documents did in fact exist, faced with Sprint's refusal to explain why the documents were not produced, Vonage could only presume that the documents had been destroyed. (*See* Ex. C, attached (12/27/06 letter from McPhail to Buresh).) In response to Vonage's reasonable requests for information regarding the presumed destruction of these documents, Sprint complained of "unfounded accusations" and again certified that Sprint had conducted "a reasonable search of its records" for these documents, adding that it was in the process of conducting a further search for other documents identified in the December 11 teleconference. (Vonage's Br., Ex. 17.)

For Sprint to completely reverse course over a holiday weekend, from being so confidant for so many months that a full search had been completed and that no responsive documents were to be found and that no responsive documents had been destroyed, to now suddenly acknowledging that, in fact, a recent additional search had turned up responsive documents that would be produced "as quickly as possible," is reprehensible. Indeed, as of the time of the filing of this Reply have, these documents <u>still</u> have not been completely produced.

11

Sprint's conduct is all the more repugnant considering that a month prior, Sprint represented to this Court in opposition to Vonage's motion for extension of certain deadlines that Sprint had produced "nearly 390,000 pages" in response to Vonage's document requests[a] and that an additional "thorough review of its files" had produced "fewer than thirty (30) additional potentially-responsive documents" that had all been produced to Vonage by the December 1 filing of the corrected brief. (*See* Corrected Response to Vonage's Motion to Extend Certain Discovery Deadlines at 4.) To support this statement, Sprint submitted an attached affidavit by counsel attesting that:

> In September 2006, Vonage raised issues regarding alleged deficiencies with Sprint's document production. During September and October, Sprint conducted a thorough review of its files to determine if any additional responsive documents existed. This search yielded fewer than thirty (30) additional potentially responsive documents, all of which have now been produced to Vonage.

(11/17/06 Decl. of Seitz.) Sprint further asserted in its opposition brief that it "has and will continue to diligently pursue discovery" and that it "believes it can complete its necessary fact discovery" by its proposed January 15, 2007 deadline. (*See* Corrected Response to Vonage's Motion to Extend Certain Discovery Deadlines at 3.)

Sprint's current attempt to flippantly explain away the unearthing of substantial additional responsive documents when faced with a motion to compel is telling not only of a disrespect for this Court and its officers, but of the discovery system in general. *See Littlejohn v. BIC Corp.*, 851 F.2d 673, 684 (3d Cir. 1988) ("[O]ur system of discovery

---

[a] A number which was grossly overstated as "700,000 pages" in Sprint's original opposition brief, and only corrected by Sprint after Vonage pointed out the huge discrepancy between the number Sprint claimed and the number actually received by Vonage. Even now, Sprint has failed to produce to Vonage some 45,000 pages of the nearly 390,000 pages that Sprint represents to this Court were produced 3 months ago.

relies on the cooperation and integrity of attorneys operating within the guidelines provided by the Federal Rules of Civil Procedure . . . ."). As described above, examples of such egregious behavior abound.

Sprint's conduct throughout discovery has been, at best, uncooperative and misleading. At this point, its credibility has been completely exhausted. The time for a "cooperative effort to define a search term strategy," as Sprint has now proposed, has long since passed. (Response at 3.) Vonage is entitled to know why Sprint has thus far failed to produce non-privileged, responsive documents that are known to have existed. The only satisfactory means to objectively determine whether Sprint has, as it claims, finally completed a full and fair search of its documents, if it in fact Sprint has been done, is to compel the disclosure of the search terms used by Sprint or, in the alternative, to provide Vonage with access to Sprint's document management system to allow Vonage to conduct its own search.

## II.  Relevant law supports disclosure of Sprint's search terms to Vonage

In its Response, Sprint argues that Vonage's Motion "asks the Court to break new ground" and that "Vonage has failed to cite a single case" supporting its position. (Response at 4.) To the contrary, Vonage's request to compel production of the search terms is necessary to uphold the integrity of the discovery process as provided in the Federal Rules of Civil Procedure ("Rules") and the case law interpreting those Rules, and

13

this request is supported by the cited case law in view of the circumstances from which the Motion arose.

The discovery procedures of the Rules provide the basic framework in which litigants operate to evaluate and resolve the claims and issues underlying their dispute. *Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (explaining that the discovery rules serve "to narrow and clarify the basic issues between the parties" and to "ascertain[] the facts, or information as to the existence or whereabouts of facts, relative to those issues"). The Rules require each party to make a reasonable investigation and effort to assure that all available information and documents that are responsive to a discovery request received from an opposing party are provided to the opposing party. *In re E.I. du Pont de Nemours & Co.*, 918 F. Supp. 1524, 1543 (M.D. Ga. 1995) ("The Federal Rules require that counsel make a reasonable investigation and effort to assure that the client has provided all information and documents available to it which are responsive to the discovery request."). Indeed, the Rules themselves "impose[] an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26(g), Adv. Comm. Notes 1983 Amendments.

Where a party refuses or otherwise fails to honor its discovery obligations, certain consequences must inevitably follow to preserve the reliability of the discovery system. In extreme cases, an uncooperative party may risk sanctions under the Rules, however, this risk can and should be avoided where appropriate remedial measures are available. *See Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145 (N.D. Ill. 1982)

("Once a failure to comply with the discovery rules is established, sanctions are appropriate"). Here, although the circumstances surrounding Sprint's failure to timely and reliably produce non-privileged documents responsive to Vonage's requests suggest that sanctions may not be entirely inappropriate, the production of the search terms Sprint used to perform the flawed searches is a more practical resolution.

Sprint argues that the precedent cited in Vonage's brief is inapplicable to the instant dispute because each case involved voluntary negotiation and agreement upon search terms between litigants before any search was done. Had Sprint made such a proposal to Vonage back in March, 2006, then Sprint's position may have had some merit. Simply put, Sprint has wasted nearly a year of discovery through misstatements and obfuscation, coupled with repeated refusals to produce responsive and discovery in this case closes in less than two (2) months. There simply is insufficient time remaining to try to negotiate suitable search terms with Sprint, even assuming that Sprint would participate in good faith, and then wait for Sprint to search, review and finally produce documents, particularly given its past dalliance in producing responsive documents (e.g., the 45,000 pages that Sprint represented to this Court had already been produced two (2) months, but which still have not yet been produced).

Sprint argues that *Judicial Watch Inc. v. United States Dept. of Justice*, 185 F. Supp. 2d 54 (D.D.C. 2002), is inapplicable because that case involved an action brought under the Freedom of Information Act (FOIA) and involved a standard unique to conducting searches in response to FOIA requests. (Response at 9-10.)

15

Although that case arose in a different factual context, the principal issue – i.e., did the responding party meet its obligation to conduct an adequate search – and the legal principles underlying the court's analysis in that case are wholly applicable to the instant dispute. There, the court started with the premise that the adequacy of a challenged search "is guided by principles of reasonableness." *Judicial Watch*, 185 F. Supp. 2d at 63. The court then acknowledged that a responding party is not required to search every record system, or perform a perfect search, but "the search must be conducted in good faith using methods that are likely to produce the information requested if it exists." *Id.*

These standards are not, as Sprint argues, foreign to a responding party's obligations in a "normal" civil litigation matter. As explained above, the Rules require counsel to make a "<u>reasonable</u> investigation and effort to assure that the client has provided all information and documents available to it which are responsive to the discovery request." *In re E.I. du Pont de Nemours & Co.*, 918 F. Supp. 1524, 1543 (M.D. Ga. 1995) (emphasis added). Both parties must assuredly act in good faith, and the responding party must "conduct a diligent search, which involves developing a reasonably comprehensive search strategy." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Sprint's attempt to distinguish *Judicial Watch* on the basis of it being an FOIA case misses the substantive points for which the case was cited.

Sprint also argues that *In re CV Therapeutics, Inc., Securities Litigation*, No. C 03-03709, 2006 U.S. Dist. LEXIS 38909, at *31 (N.D. Cal. Apr. 4, 2006), is inapplicable because the responding party in that case "voluntarily agreed to produce its search terms to plaintiff." (Response at 10.) This is also a false basis on which to distinguish the case.

Regardless of the allegation that *CV Therapeutics* did not involve the "compelled" production of search terms, the disclosure of search terms in that case was approved and ordered by the court in an effort to resolve a dispute regarding the adequacy of the responding party's previously conducted search – the exact circumstance presented here. Further, that case demonstrates that the disclosure of search terms used in responding to a discovery request can be made under reasonable conditions designed to preserve the responding party's rights while addressing the requesting party's concern that an adequate search may not have been performed.

Vonage proposed there same three conditions to Sprint, *i.e.*: (1) that the production of the search terms will not constitute a waiver of the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or doctrine; (2) that the search terms will be treated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the protective order in place in the case; and (3) that if the requesting party wishes to file the search terms with any court, the requesting party will request that the court file the search terms under seal. Moreover, Vonage has since reiterated this offer to Sprint several times. Notwithstanding this reasonable means of resolving the issue, Sprint has offered no justification for rejecting these conditions and still refuses to disclose its search terms.

Finally, Sprint's Response completely ignores the case of *Tilberg v. Next Mgmt. Co.*, cited in Vonage's opening brief. In *Tilberg*, the court did not compel disclosure of search terms, but rather granted plaintiff Tilberg the right to search defendant Next's

17

computer system using her own expert. The court granted this right because, "[b]ased on uncontroverted statements by Tilberg, it appears that relevant documents exist on Next's e-mail servers, central server and individual workstations. Having failed to produce these documents, Next will be required to allow Tilberg to perform a complete search of the Next computer system." *Tilberg v. Next Mgmt. Co.*, 2005 WL 2759860 (S.D.N.Y. Oct. 24, 2005).

Thus, if this Court agrees with Sprint that Sprint does not have to disclose its search terms to Vonage, Vonage re-iterates its request to search Sprint's computer system itself, as there is plainly evidence in this case that relevant documents exist at Sprint which Sprint has not produced. Sprint cannot have it both ways and continue to frustrate the Rules -- either Sprint must disclose its search terms or Sprint must let Vonage search its computer system. Any other result will simply reward Sprint for its misstatements, omissions and downright falsehoods.

### III.  Conclusion

For at least the foregoing reasons, Vonage respectfully requests that the Court enter an Order granting its Motion to compel discovery and ordering Sprint to identify, within five (5) days of such Order, the search terms used to search for documents responsive to Vonage's requests for documents and things in this litigation.

Respectfully submitted,

/s/ Patrick J. Kaine

Don R. Lolli   KS Dist. #70236
Patrick J. Kaine  KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com


Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com

*Attorneys for Defendants/Counterclaim Plaintiffs Vonage America, Inc. and Vonage Holdings Corp.*

19

## CERTIFICATE OF SERVICE

I hereby certify on this **7th day of February, 2007** that a true copy of the foregoing Reply to Sprint's Response to Vonage's Motion to Compel was filed electronically, with notice of case activity to be generated and sent electronically by the Clerk of the Court to:

B. Trent Webb
Adam P. Seitz
Erick A. Buresh
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
Fax: (816) 421-5547

**ATTORNEYS FOR PLAINTIFF**

/s/ Donald R. McPhail
Donald R. McPhail