IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) ) ) |
| Plaintiff, | ) ) Case No. 05-2433-JWL |
| v. | ) ) |
| VONAGE HOLDINGS CORP. and VONAGE AMERICA, INC., | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM IN SUPPORT OF VONAGE HOLDINGS CORP.
AND VONAGE AMERICA, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS OF JOSEPH MICHAEL CHRISTIE**

Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage"), submit this memorandum of law in support if their Motion to Compel. Since the inception of discovery, Vonage has been seeking documents from the files of the purported inventor of the patents-in-suit, Joseph Michael Christie. Because Mr. Christie died in 1996, these documents are the only direct contemporaneous link to the work that gave rise to the patents-in-suit.

Despite Vonage's repeated requests, Plaintiff Sprint Communications Company, L.P. ("Sprint") has continuously asserted that no such documents exist or could be located. At the March 21, 2007 deposition of former Sprint employee Michael Joseph Gardner, however, Mr. Gardner testified that he personally deposited at the Sprint archives in Kansas City more than one (1) box of documents of Mr. Christie's that he had collected following Mr. Christie's death. Sprint, however, has still failed to produce any of these documents or, indeed, even acknowledge

- 1 -

- 2 -

that they exist.  Accordingly, Vonage brings this motion to compel Sprint to produce Mr. Christie's documents.

I.      **BACKGROUND**

Sprint has sued Vonage for the infringement of seven patents based on the work of a sole inventor, Joseph Michael Christie (the "Asserted Patents").  Indeed, Sprint has continued to file applications to Mr. Christie's purported inventions even after Mr. Christie's death.

Since the opening of discovery in this matter, Vonage has requested that Sprint produce documents of Mr. Christie, who died in February, 1996, while still in Sprint's employ.  Vonage's requests for production have particularly sought any documents written by or under the supervision of Mr. Christie, or addressed or copied to him, that may refer or relate to the design, development, conception and/or reduction to practice of the invention(s) that led to the Asserted Patents.

More specifically, in its First Requests for Production of Documents ("RFPs"), served in February 2006, Vonage requested that Sprint produce, *inter alia*, "notes, memoranda and letters" relating to or referencing the Asserted Patents, and "documents related to the development of the inventions disclosed in the 'Asserted Patents', including but not limited to models, prototypes, production records, notes and designs."  See Vonage's First Requests for Production of Documents, attached as Exhibit A, at Requests Nos. 1 and 2.  The documents sought by these requests therefore include, for example, records authored by, sent to, or created under the supervision of Mr. Christie over the course of the conception, design and development of the purported inventions claimed in the Asserted Patents, and Sprint has never disputed this scope.

By letter dated September 20, 2006, counsel to Vonage noted certain deficiencies in Sprint's response to Vonage's First RFPs, including, but not limited to, the following categories:

>(iv) correspondence between Sprint . . . and Joseph Christie . . . including any correspondence relating or referring to one or more of the patents-in-suit or the preparation or prosecution of any patent application from which such a patent issued or claims priority;
>
>(v) Documents relating to the preparation or prosecution of any patent application from which a patent-in-suit issued or claims priority, including documents that relate to the conception or reduction to practice of any of the alleged inventions claimed in the patents-in-suit, such as invention disclosures, laboratory notebooks, memoranda and the like, and drawings, particularly drawings created by or under the supervision of Joseph Michael Christie . . . .

See Sept. 20, 2006 Ltr. from Golob to Seitz, attached at Exhibit B.

When Sprint eventually responded on October 27, 2006, Sprint represented that "Sprint will produce additional responsive documents [from category (iv)] to the extent they exist. As to item (v), Sprint will produce documents responsive to this request to the extent they have not already been produced and/or do not exist." See Oct. 27, 2006 Ltr. From Seitz to Golob & McPhail, attached as Exhibit C.[1]

Sprint further confirmed in a November 30, 2006 letter from its counsel that "Sprint ha[d] conducted a diligent search of its records and is currently unaware of any non-privileged documents relating to correspondence between Sprint or its attorneys and Joseph Christie . . . ." Nov. 30, 2006 Ltr. from Seitz to McPhail, attached as Exhibit D.[2]

As documented by Mr. McPhail in his letter of December 12, 2006, Sprint confirmed in a December 11, 2006 phone call that Sprint had "completed [its] search of documents within Sprint's possession, custody or control and ha[s] been unable to locate any of the following

---

[1] It should be noted that Sprint's October 27 letter was addressed to a letter from Vonage dated October 20, 2006 which re-iterated the deficiencies set forth in the September 20 letter and referred to them by the same categorical designation.

[2] Nor is Sprint apparently aware of any privileged document relating to correspondence between Sprint or its attorneys and Mr. Christie as no such document is listed on Sprint's privilege log in this matter.

documents: ...(ii) any Research and Development documents authored or created by or under the supervision of Joseph Michael Christie and/or relating to his work at Sprint, including laboratory notebooks, monthly reports, invention disclosures, research protocols, meeting minutes, correspondence, memoranda or the like." See Dec. 12, 2006 Ltr. from McPhail to Seitz, attached as Exhibit E.

Although somewhat skeptical of Sprint's representation that it had so few documents reflecting the prolific work of Mr. Christie, Vonage accepted Sprint's representations in good faith. Still, to ensure it had sought and obtained all documents pertinent to Mr. Christie's work, Vonage issued a Third Set of Requests for Production of Documents seeking, *inter alia*, documents relating to the design and reduction to practice of Mr. Christie's purported inventions; and documents written by or to, or copied to, Mr. Christie regarding these claimed products and services relating to these inventions. See, e.g., Vonage's Third Requests for Production of Documents, and Sprint's Written Responses thereto, attached as Exhibit F, at Requests Nos. 40, 49-54, 64.

In response to each of these requests, despite its answers to previous correspondence, Sprint cryptically responded that it "has produced and/or will produce non-privileged, responsive documents ... in its possession, custody or control." Id. To date, however, Sprint has produced no additional documents, and now, on the eve of the close of discovery, it appears none will be forthcoming.

Notwithstanding Sprint's clear and unequivocal representations that no documents of Mr. Christie's existed or could be found, these representations were soundly rebutted by Mr. Joseph Michael Gardner, an employee of Sprint at the relevant time. In particular, Mr. Gardner testified under oath that Mr. Christie kept written records of his work at Sprint, including work done on

- 5 -

the conception, design and development of the inventions claimed in the Asserted Patents. Mr. Gardner also testified that, following Mr. Christie's death in 1996, Mr. Gardner and others personally went through Mr. Christie's records, removed them from Sprint's Burlingame, California facility where Mr. Christie had worked until he died, and delivered them to Sprint in Kansas City:

> Q. Did Joe Christie keep written records of the work he did?
>
> \* \* \*
>
> A. He kept some records, yes.
>
> \* \* \*
>
> Q. Did he keep written memorandum, invention disclosures or records?
>
> \* \* \*
>
> A. He had records, yes. You know, I don't know exactly what he kept.
>
> Q. Do you know what happened to those records after he died?
>
> A. We brought those records back to Kansas City.
>
> Q. You personally brought those records back to Kansas City?
>
> A. Well, I and others. ... I just remember picking through things that looked like they would be of value going forward.

See Transcript of March 21, 2007 deposition testimony of Mr. Gardner ("Gardner Tr.", excerpts of which are attached as Exhibit G) at p. 53, line 12 to p. 54, line 21.[3] Mr. Gardner further testified that he estimated he and the others gathered and delivered to Sprint's headquarters "a box or two" of Mr. Christie's papers (the "Christie material"). Id.

Having reviewed the documents produced by Sprint in response to Vonage's requests relating to Mr. Christie, his inventions and his records, and addressed this issue repeatedly with

---

[3] Because Sprint has designated this deposition testimony as confidential, Vonage is filing Exhibit G with the Court under seal.

Sprint, it is painfully apparent that Sprint has neither produced the Christie material nor properly claimed it as privileged.

## II.     QUESTION PRESENTED

Whether Sprint must be compelled to produce documents that were written by, addressed to, copied to, or present in the files or the records of the late Joseph Michael Christie, named inventor on the Asserted Patents?

## III.    ARGUMENT

Rule 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The Christie materials are unquestionably relevant to the issues in this case. Indeed, Sprint has never alleged to the contrary or otherwise attempted to assert that these documents are not relevant to the issues here.

As reflected in, at least, Vonage's First and Third Requests for Production of Documents, and the extensive correspondence with Sprint regarding the substance and sufficiency of Sprint's responses to these requests, Vonage has diligently sought these materials throughout the course of discovery. Sprint has not indicated a refusal to respond to any of Vonage's requests for these materials on the basis of privilege or, indeed, any other objection. Sprint has, however, both expressly in its correspondence and implicitly through its lack of production, indicated there is no material responsive to these requests.

Mr. Gardner's testimony last week, however, indicates that this is not the case. Sprint plainly has highly material, responsive documents in its possession, custody or control that it has consistently failed to produce to Vonage. Given Sprint's multiple failures to produce the Christie materials, or to assert that they are somehow privileged, it is apparent that Sprint will not produce this highly pertinent information before the close of discovery without compulsion by the Court, even though these materials should have been identified in Sprint's disclosures pursuant to Rule 26(a) and produced in response to one or more of Vonage's RFP's over the past year. Indeed, Sprint's failure to locate and produce such obviously responsive documents is the reason Vonage filed its earlier motion to compel the search terms used by Sprint to locate documents. (D.I. 107).

### IV.   CONCLUSION

For the foregoing reasons, Vonage respectfully requests that the Court grant its motion and enter an order directing Sprint to produce the Christie materials identified by Mr. Gardner in his March 21, 2007 deposition, and any related materials, forthwith, and award such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

March 30, 2007

/s/ Patrick J. Kaine
Don R. Lolli   KS Dist. #70236
Patrick J. Kaine   KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com
Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP

       1667 K Street N.W.
       Washington, DC 20006-1608
       pdmcpherson@duanemorris.com
       bgolob@duanemorris.com
       drmcphail@duanemorris.com
       *Attorneys for Defendants/Counterclaim Plaintiffs Vonage America, Inc. and Vonage Holdings Corp.*

- 8 -

- 1 -

## CERTIFICATE OF SERVICE

I hereby certify on March 30, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Motion to Compel Production of Documents, and supporting papers, was filed electronically, with a notice of case activity to be generated and sent electronically by the Clerk of Court to:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com
>
> *Attorneys for Plaintiff*
> *Sprint Communications Company L.P.*

         /s/ Donald R. McPhail

- 1 -
DM1\1083697.1