IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Case No. 05-2433-JWL |
| v. | ) <br> ) |
| VONAGE HOLDINGS CORP. and <br> VONAGE AMERICA, INC., | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM IN SUPPORT OF VONAGE HOLDINGS CORP. AND
VONAGE AMERICA, INC.'S MOTION SEEKING LEAVE
TO AMEND THEIR RESPECTIVE ANSWERS, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS PURSUANT TO FED.R. CIV. P. 15**

Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage") submit this memorandum of law in support of its Motion to amend their respective answers, affirmative defenses and counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 15(a). Vonage seeks to add affirmative defenses based on facts and documents only recently revealed by Sprint in discovery. The proposed amended answers, affirmative defenses and counterclaims of Vonage Holdings Corp. and Vonage America, Inc. are attached as Exhibits "A" and "B," respectively.

**I.   BACKGROUND**

On or about October 4, 2005, Sprint Communications Company, L.P. ("Sprint") filed a Complaint against Vonage and other companies, alleging, among other things, that Vonage's internet phone system infringed several of Sprint's patents (the "Asserted Patents"). Vonage has

purchased and continues to purchase a substantial portion of the components of its system from Cisco Systems, Inc. ("Cisco").

On or about October 14, 2005, Sprint filed a First Amended Complaint. On or about November 3, 2005, Vonage filed its Answers and Affirmative Defenses to Sprint's First Amended Complaint, and Counterclaims against Sprint. The Court did not enter a scheduling order which set any deadlines for the amendment of the pleadings. Discovery is to close this week.

On or around January 25 2007, Sprint produced, *for the first time*, a handful of documents relating to, and including, an apparent license between Sprint and Cisco. On their respective faces, these documents (the "License documents") relate to the very technology at issue in this case, and the Asserted Patents that Sprint alleges Vonage has infringed. They likewise contain covenants not to sue Cisco customers, including Vonage, which, alone or together with the express and implied licenses implicated in the License documents, may provide Vonage a complete defense to Sprint's claims of patent infringement. These License documents, and Sprint's conduct in their negotiation, execution, and performance, may similarly constitute a misuse by Sprint of its patent rights, or other inequitable conduct which may, in whole or in part, negate Sprint's rights to recover for any infringement of the Asserted Patents.

Sprint only produced the Licenses in January 2007, and only in part. Despite Vonage's outstanding and subsequent written requests, both in correspondence and in formal supplemental requests for the production of documents, Sprint in mid-March made a further, partial production of documents that is still substantially incomplete.

Based on the information Sprint has disclosed on a piecemeal basis and only upon the close of discovery, Vonage seeks leave to amend its pleadings to add affirmative defenses that arise from these latently and still only partially disclosed materials.

### A.    Vonage Was Diligent in Seeking the License Documents, and Sprint has Resisted throughout the Course of Discovery.

Vonage has diligently sought documents from Sprint regarding any licenses to the technology at issue and the Asserted Patents since the inception of discovery. By way of example, in its initial requests for production, served in February 2006, Vonage requested, among other things,

> 21.   All correspondence to or from third parties related to any potential agreement relating to the "Asserted Patents," including but not limited to licenses, sale, purchase or assignments.
>
> 22.   All correspondence to or from third parties related to any potential agreement relating to any products and/or services marketed by Sprint, which utilize the inventions disclosed in the "Asserted Patents," including but not limited to licenses, sale, purchase or assignments.
>
> 23.   All documents related to the development of sales and/or licenses of the "Asserted Patents" and/or any products and/or services marked by Sprint which utilize and/or derive therefrom, including, but not limited to, business plans, identification of prospective clients, and proposals to prospective customers.
>
> 26.   All communications relating to patent rights by parties other than the Plaintiffs or the Defendants . . . .

See, e.g., Vonage's First Set of requests for Production of Documents and Things, and Sprint's responses thereto, attached as Exhibit "C." In its early 2006 responses to these requests, Sprint contended it had no such documents, other than what limited information it provided with its initial disclosures. Id.

Sprint's representations notwithstanding, Vonage discovered references in Sprint's document production to an extensive set of agreements between Cisco and Sprint, including an apparently fully executed license, relating to Sprint's JCS2000 system and the work of Joseph

Michael Christie, the purported sole inventor of the Asserted Patents. Vonage thus specifically requested Sprint supplement its document production with this information.[1] Despite these references to such documents on the face of its own production, and the gaps in Sprint's production which Vonage brought to its attention in correspondence throughout the fall and winder of 2006, Sprint was slow to respond.

In correspondence and subsequent formal discovery requests, Vonage continued to request that Sprint produce license materials relating to the technology at issue.[2] Beginning in late January 2007, Sprint began to produce a handful of documents relating to its licensing arrangements with Cisco.

On or about January 25, 2007, Sprint produced what appeared to be fully executed agreements between Sprint and Cisco in or around 1998, including a License Agreement by which Sprint agreed to license to Cisco numerous patents relating to the JCS2000 system, and other related agreements reflecting an extensive alliance between Sprint and Cisco for the joint development and ownership of products and intellectual property relating to the Asserted Patents, a Statement of Work detailing extensive obligations between Sprint and Cisco regarding

---

[1] See, e.g., September 20, 2006 Ltr. from Golob to Seitz, attached as Exhibit "D," at ¶viii (requesting Sprint produce "contracts with and licenses from third parties," citing list of agreements identified in documents Bates numbered SPRe-002-01-00188 and -00189) and ¶xi (requesting Sprint produce "correspondence to or from any third-party contractor, vendor or consultant relating to rights under one or more of the patents-in-suit," citing such rights and communications identified in SPRe-002-01-00193).

[2] For example, Vonage issued additional discovery requests in January 2007, seeking, among other things, "[a]ll Sprint license agreements covering the Asserted Patents or other patents related to or regarding VoIP technology," and "documents discussing any Sprint offers, or requests, to license patents covering or relating to [voice over internet] technology." See, e.g., Vonage's Second Set of Requests for Production of Documents and Things, and Sprint's responses thereto, attached as Exhibit "E," at Requests Nos. 39-40.

- 5 -

this joint effort, and a Master Purchase Agreement providing the terms of any sales of products between Cisco and Sprint.

On the face of the License documents, it was similarly plain that Sprint's latent production of these documents was substantially incomplete. Some of the agreements were produced without exhibits, and all referenced other related documents which Sprint still has not produced. As late as March 28, 2007, in its responses to Vonage's Fourth Set of Requests for Production of Documents and Things, Sprint indicated that it still had documents it had yet to produce. Vonage's Fourth Set of Requests for Production of Documents and Things, and Sprint's responses thereto, attached as Exhibit "F," at Request No. 1 ("Sprint further states that it has produced and/or will produce relevant, nonprivileged, responsive documents in its possession, custody or control that can be located following a diligent and reasonable search."). Public records further suggest that similar agreements were reached between Sprint and Cisco in 2001 and again in 2005. Sprint has produced no materials relating to these latter agreements. Given Sprint's recalcitrance and delay in producing these materials, Vonage is also seeking documents from Cisco directly, and has served a subpoena *duces tecum* to that end.

The License documents, and others which Sprint has yet to produce, negate Sprint's patent claims in whole or in part, and may give rise to yet further defenses and claims. In order to protect its interests in light of Sprint's latent productions, and based on this newly uncovered information, Vonage requests leave of this Court to amend its affirmative defenses to include a defense relating to the License documents. Vonage also believes, in light of this newly discovery evidence, that Sprint has misused the Asserted Patents and its rights thereto, and requests leave of this Court to amend its affirmative defenses to include a defense relating to patent misuse.

## II. QUESTIONS PRESENTED

Whether Vonage may amend its answer, affirmative defenses and counterclaim to include additional affirmative defenses based on newly discovered evidence.

## III. ARGUMENT

"Rule 15(a) provides in part that leave to amend the party's pleading shall be freely given when justice so requires." A/R Roofing, L.L.C. v. Certainteed Corp., No. 05-1158, 2006 U.S. Dist. LEXIS 87071, *10 (D. Kan. Nov. 30, 2006). "The purpose of the rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" Id. at * 11 (quoting, *inter alia*, Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006) (allowing amendment of pleading after submission of pretrial order based on newly revealed evidence)) (other citation omitted). Leave to amend should be denied only in cases where there is "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Beach v. Mutual of Omaha Insurance Co., No. 02-2124, 2003 U.S. Dist. LEXIS 715, *6 (D. Kan. Jan. 8, 2003).

Within this liberal framework, this Court has routinely allowed amendments to a pleading to add affirmative defenses, even where the deadline for amending the pleadings, and even for the completion of discovery, has passed. A/R Roofing, 2006 U.S. Dist. LEXIS 87071 (affirming allowance of amendment of answer to add affirmative defense nine months after the deadline to amend the pleadings had passed, and two months after the close of discovery). Courts are particularly lenient in allowing such amendments when they are based on, and supported by, new evidence produced during and even following the close of discovery. Id. at * 11; see also Minter, 451 F.3d at 1207 (affirming allowance of amendment "in response to late disclosures"

made by opposing party).  Even where there had been evidence of record, prior to the discovery of the new evidence, that "could at least point" to the possible defense defendant sought to add to its answer, the Court found that leave to amend was appropriate under Rule 15.  A/R Roofing, 2006 U.S. Dist. LEXIS 87071 at *11.  See also Walls v. International Paper Co., No. 99-2048, 2000 U.S. Dist. LEXIS 4525 *10 (D. Kan. March 13, 2000) (allowing amendment of an answer to add affirmative defenses six months after the deadline to amend had passed, noting that movant adequately explained any delay because it did not come into possession of the factual basis for its affirmative defense until after the deadline had passed); and Beach, 2003 U.S. Dist. LEXIS 715 (allowing an amendment to add affirmative defenses four months after the deadline for amendments had passed).

      A.      **Vonage Has Not Unduly Delayed This Request.**

"Undue delay" is one of the justifications for denying a motion to amend.  Minter, 451 F.3d at 1205.  "Emphasis is on the adjective: Lateness does not of itself justify the denial of the amendment."  Id. (citation, punctuation omitted).

Here, as in A/R Roofing and Walls, there is no undue delay because the evidence that serves as the basis for the proposed amendments was produced only two months ago, and is still being revealed by Sprint on a piecemeal basis.  As such, Vonage was not in possession of the factual basis for its proposed affirmative defenses until recently and could not have, prior to such discovery, have asserted these proposed defenses.  Moreover, *unlike* the parties in the previously these matters, Vonage is not in violation of a Court-imposed deadline for the amendment of the pleadings.  Vonage, therefore, should be allowed to amend its answer to add the affirmative defenses which arise from the newly discovered evidence in this matter.

### B.  Vonage's Request Works No Prejudice on Sprint.

To be "prejudiced" by this motion under Rule 15, Sprint must have an "undue difficulty in prosecuting [or defending] a lawsuit as a result of a change of tactics of theories on the part of the other party." Walls, 2000 U.S. Dist. LEXIS 4525 at *11.  Sprint cannot reasonably argue that Vonage's proposed amendments would prejudice it.  Sprint has known Vonage might pursue a license defense since receiving Vonage's first discovery requests in February 2006.  Sprint has in possession of the very information Vonage relies on to support its proposed amendments for much longer than Vonage (and still apparently has documentation it has yet to disclose to Vonage).  Sprint was a party to these apparent agreements, and Sprint, without justification, delayed production of even a portion of this material until January 2007, and bits more in March 2007, the month that discovery is scheduled to close.  Further, while discovery is to close on March 30, 2007, both parties have noticed and will be conducting depositions for weeks to come.  Sprint therefore will not be prejudiced by Vonage's amendment of its affirmative defenses based on Sprint's own latent production of documents that have apparently been in its possession for years.

### C.  Vonage Has Not Made This Request in Bad Faith or with Dilatory Motive.

Vonage has diligently sought information from Sprint regarding potential licenses to the Asserted Patents and related technology since the inception of this matter, and has persisted diligently when Sprint's responses to its requests were, apparently and on the face of Sprint's production, incomplete and even inaccurate.  Had Sprint fully produced the License documents, which it has yet to do, in response to Vonage's initial requests, Vonage could have sought to amend its pleading over a year ago.

### D. Vonage's Request Is Not Futile.

Sprint's agreements and licenses relating to the Asserted Patents and related technology are highly pertinent to Sprint's claims of infringement and Vonage's defenses thereto. Even from the few pages Sprint belatedly produced, it is apparent that Sprint's claims of infringement may be barred by the licenses (both express, implied and intended), covenants not to sue, and other terms of its agreements with Cisco – Vonage's largest supplier of components or its accused system. See, e.g., Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684 (Fed. Cir. 1986) (implied license is complete defense to infringement).

"[C]ourts seek to decide issues upon the merits rather than technicalities... ." Walls, 2000 U.S. Dist. LEXIS 4525 at *12; see also id. at *4 (citing cases). Pursuant to this preference, together with Vonage's diligence and Sprint's latency, Vonage should be allowed to amend its answer to include affirmative defenses that, until only the last weeks, of which Sprint and only Sprint, has been aware.

### IV. CONCLUSION

For the foregoing reasons, Vonage respectfully requests that the Court grant its motion and grant it leave to amend its answer to include additional affirmative defenses in the proposed form attached.

Respectfully submitted,

March 30, 2007   /s/ Patrick J. Kaine

Don R. Lolli   KS Dist. #70236
Patrick J. Kaine  KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com

        Patrick D. McPherson
        Barry Golob
        Donald R. McPhail
        Duane Morris LLP
        1667 K Street N.W.
        Washington, DC 20006-1608
        202-776-7800
        pdmcpherson@duanemorris.com
        bgolob@duanemorris.com
        drmcphail@duanemorris.com

        *Attorneys for Defendants/Counterclaim Plaintiffs Vonage America, Inc. and Vonage Holdings Corp.*

- 1 -

## CERTIFICATE OF SERVICE

I hereby certify on March 30, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Motion for Leave to Amend their Respective Answers, Affirmative Defenses and Counterclaims Pursuant to Fed. R. Civ. P. 15, and supporting papers, was filed electronically, with a notice of case activity to be generated and sent electronically by the Clerk of Court to:

>B. Trent Webb
>Adam P. Seitz
>Erick A. Buresh
>Shook, Hardy & Bacon LLP
>2555 Grand Boulevard
>Kansas City, MO 64108-2613
>bwebb@shb.com
>aseitz@shb.com
>eburesh@shb.com
>
>*Attorneys for Plaintiff*
>*Sprint Communications Company L.P.*
>
>  /s/ Donald R. McPhail