EXHIBIT "F"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 05-2433-JWL |
| VONAGE HOLDINGS CORP., ) | |
| VONAGE AMERICA, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**SPRINT COMMUNICATIONS COMPANY L.P.'S RESPONSES TO DEFENDANT VONAGE HOLDINGS CORP'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Sprint Communications Company L.P. ("Sprint"), by and through its undersigned counsel, hereby responds and objects to Defendant Vonage Holdings Corp.'s ("Vonage") Fourth Set of Requests for Production of Documents and Things ("the Requests").

2395349v1

## GENERAL OBJECTIONS

Sprint hereby incorporates by reference each General Objection set forth in Sprint's Responses to Vonage Holdings Corp.'s First Set of Requests For Production of Documents and Things as if those general objections were set forth fully herein.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 105:** All documents constituting, referring or relating to, or generated in the course of the negotiation of or performance under any agreement or draft agreement between Sprint and Cisco Technology, Inc. ("Cisco") referring or relating to the Asserted Patents, JCS2000, or any other purported invention of Joseph Michael Christie, including, but not limited to:

    A.    With respect to the **"Sprint/Cisco License Agreement"** (the "License") executed December 12, 1998 (SPRe-12-01-00849 to 872):

        1.    A complete copy of Exhibit A, and all drafts of and amendments thereto, and all other documents sufficient to identify the negotiated and/or agreed list(s) of "Designated Sprint Applications" and "Designated Sprint Component Patents" as defined in the License (see §§1.6, 1.7).

        2.    A complete copy of Exhibit B, and all drafts of and amendments to the same, including each license executed by Sprint and Cisco in the form of Exhibit B for any patent.

        3.    All documents sufficient to identify the negotiated, intended and/or actual Licensed Patents as defined in §1.10.

        4.    All additional licenses granted, or offers of or requests for licenses made, pursuant to §2.7.

        5.    All notifications provided pursuant to the License, and responses thereto, including:

            a.    Notices regarding the issuance of any patent Sprint considered a Cisco-Related Component Patent, as provided in §2.1, and any correspondence relating thereto;

    b.    Notices regarding possible or actual grants of licenses in the Field of Use to third parties, as identified in §2.1;

    c.    All legends and notices for Licensed Patents to be affixed to any Cisco product pursuant to §3.1;

    d.    All notices of and requests relating to any enforcement actions by Sprint or Cisco pursuant to §3.3;

    e.    All notices regarding the invalidity or unenforceability of any Designated Sprint Component Patent pursuant to §5.2(c);

    f.    Any notices of termination made pursuant to §6.2;

    g.    Any notices of disputes not resolved, pursuant to §7; and

    h.    Any other notices sent pursuant to §8.2.

6. Copies of all Prosecution Correspondence provided by Sprint to Cisco pursuant to §3.5.

7. Any options exercised or discussed pursuant to §§2.2-2.4.

8. Any licenses issued by Cisco to Sprint's suppliers pursuant to §2.6.

9  Record of all payments made pursuant to the License, including records of any Designated Sprint Component Patent for which Cisco paid $1,000,000 pursuant to §4.1, and any sublicense for which Cisco paid to Sprint Sublicense Royalties pursuant to §4.3.

10. Documents sufficient to identify "Subsequent Component Patents" as described in §2.2 of the License.

11. Documents sufficient to identify "Cisco or Sprint Patents" as described in §3.4 of the License (§3.4).

12. Documents sufficient to identify "Sprint Designated Component Patents," to the extent different from Designated Sprint Component Patents, as identified in §5.2(b).

13. Documents sufficient to identify the Immunity Period identified in §3.4.

14. Documents sufficient to identify any breach of the agreement pursuant to §6.2.

15. All drafts of, amendments to, and internal and external correspondence regarding, the License.

3

2395349v1

B. As to the "Sprint-Cisco Alliance Agreement" (the "Alliance Agreement"), executed December 17,1998 (SPRe-012-01-00792 to 848):

1. A full and complete copy of all exhibits thereto, and any drafts thereof.

2. The Memorandum of Understanding, dated June 2,1998.

3. The Master System Integrator and Service Provider Agreement, dated December 14,1998.

4. The Patent License Agreement.

5. The Statement of Work Agreement (defined in §1.3).

6. All Projects undertaken pursuant to the Alliance Agreement (§1.2).

7. All Statements of Work negotiated or executed between the parties (§§1.4; 5) and all proposals related thereto, including those relating to the JCS2000 Project and the Fastbreak Project.

8. Any Specific Agreements entered into pursuant to §1.7.

9. All Alliance Committee members and records of committee activities (§4), including those of the Executive, Steering and IP Development Committees.

10. Documents sufficient to identify all "Jointly Developed Intellectual Property," including

    a. Documents sufficient to identify "Jointly Developed Intellectual Property" owned by Sprint pursuant to §7.2.3, and

    b. Documents sufficient to identify "Jointly Developed Intellectual Property" owned by Cisco pursuant to §7.2.3.

11. All notices provided pursuant to §7.2.1 identifying, or referring or relating to, "Jointly Developed Intellectual Property Rights."

12. Documents sufficient to identify all "Custom Developed Intellectual Property."

13. All Requests for Custom Development made pursuant to §9, and all responses thereto, including proposed specifications, charges and delivery schedules pursuant to §9.2.

14. All agreements between Sprint and Cisco regarding Custom Developments, including but not limited to licenses to Cisco to distribute Custom Developments pursuant to §9.5.

4

15. All payments made pursuant to §12 of the Alliance Agreement, whether by credit or otherwise.

16. All Accelerated Developments to which Sprint claims exclusive rights pursuant to §15.2.

17. All extensions and terminations of, or defaults under, the agreement.

18. All documents reflecting actual or potential sublicenses by Cisco, including documents reflecting whether Cisco provided or provides 60% of components in any claimed service or to make the claimed network architecture (§§7.2.3(a); 25).

19. All payments made pursuant to the Alliance Agreement (§12.5).

20. All expenses incurred by Sprint in the performance under the Alliance Agreement, including expenses allocated to any Statement of Work.

21. All drafts of, amendments to, and internal and external correspondence regarding, the Alliance Agreement.

C. As to **Statement of Work #JCS2000-K9497000** (the "SOW"), December 17, 1998 (SPRe-012-01-01022 to 1066):

1. SOW Agreement number CM80491MDL.

2. The Test Plan, referred to in §§1.6.1 and 2.7.1 of the SOW.

3. The Master Purchase Agreement.

4. All Service Level Agreements (§5).

5. All proposed and/or agreed deliverables, milestones, lead role and completion due dates related to the SOW and as identified in §2.1 thereof.

6. Any and all JCS2000 requirements documentation as defined in §2.3 of the SOW, and deliverables related thereto;

7. Any and all Service Designs referred to in §2.4 of the SOW, including:

    a. All Software Specifications;

    b. All Software Design Documents; and

    c. Any deliverables in producing the Service Design, as identified on p. 6 of the SOW.

    d. All software design documents.

5

8. All documents reviewed in the System Requirements Review, as noted in SOW §2.5, and all documents relating to that review.

9. All documents reviewed in the System Specification Review, as noted in SOW §2.5, and all documents relating to that review.

10. All documents reviewed in the Critical Design Review, as noted in SOW §2.5, and all documents relating to that review.

11. The Build Schedule, as referred to in SOW §2.6.

12. All Code Deliverables based on the approved Software design (SOW §2.6).

13. Records of all tests performed according to the Test Plan.

14. Any Production Readiness Review or Field Verification Office Testing performed (§2.7).

15. All Software Deliverables described in §3.0, including all product names and serial numbers, past and present, for all items identified therein, or items which embody the functional deliverables described therein.

16. Documents sufficient to identify all Existing Functionality, Accelerated Functionality, Custom Development and Sprint Developed Functionality of the Virtual Switch Controller or the Virtual Switch Controller program or the CP/SP system (§3).

17. All Joint Document Deliverables and other documentation listed in §5 of the SOW.

18. All Program Schedules generated pursuant to §6.4 of the SOW.

19. The VSC Schedule for JCS2000, and all project updates, monthly detailed and executive status reports (§6.5).

20. All fees, including all software development, JCS development, project management and & License fees paid, and all invoices for the same (¶§§9.1, 11, 12.1)

21. All licenses to the MDL and Execution Environments and all VSC licenses issued from Cisco to Sprint (§§9.4, 11).

22. Any support agreements for JCS2000, as identified in SOW §9.5.

23. Copies and descriptions of all Sprint Licensed Software identified in SOW §11.

6

2395349v1

24. Documents sufficient to identify "Sprint's Intellectual Property Rights" pursuant to SOW §14.1, by name or by patent, application, serial, product or project number.

25. Documents Sufficient to identify "Jointly Owned Intellectual Property Rights" pursuant to SOW §14.2, by name or by patent, application, serial, product or project number.

26. Documents sufficient to identify "Cisco's Intellectual Property Rights" pursuant to SOW §14.3, by name or by patent, application, serial, product or project number.

27. Documents sufficient to identify "Jointly Developed Intellectual Property" owned by Cisco pursuant to §7.2.

28. All notices provided pursuant to the SOW.

29. Exhibit A to the SOW, (Development Service Level Agreement), as further or subsequently negotiated by the parties.

30. All drafts of, amendments to, and internal and external correspondence regarding, the SOW.

D. As to the **"Master Purchase Agreement"** (also known as "Service Provider and Value Added Reseller Agreement") (the "Purchase Agreement"), December 14, 1988 (SPRe-012-01-00897 to 1021):

1. All Special Bids requested by Sprint pursuant to §6.2.

2. All Purchase Orders.

3. Records of all payments made pursuant to the Purchase Agreement.

4. All product forecasts provided by Sprint (§9.1.1).

5. All reports issued by Sprint pursuant to the Purchase Agreement, including "Point-of-Sales" Reports and inventory reports as identified in §9.1.11.

6. Records of all quarterly business meetings between Sprint and Cisco (§9.1.12).

7. Any agreements relating to the operability of Cisco products with Sprint's related products or network systems, as provided in §11.6.

8. Minutes of and documents relating to any executive briefings as proscribed in §14.1.

7

    9.    All sublicenses granted by Sprint to third parties relating to Cisco products purchased pursuant to this agreement.

    10.    All notices provided pursuant to §23 of the agreement.

    11.    All executed Affiliate Participation Agreements (Ex. F).

    12.    All executed Lease Assignment of Purchase Orders (Ex. G).

    13.    All drafts of, amendments to, and internal and external correspondence regarding, the Master Purchase Agreement.

**RESPONSE:** Sprint objects to this Request as overly broad and unduly burdensome as it comprises over 80 separate Requests. Sprint further objects to this Request as vague and ambiguous with respect to the terms "performance" and "sufficient to identify." Sprint further objects to this Request to the extent it seeks information that is not remotely relevant to any claim or defense in this lawsuit. Sprint also objects to this Request to the extent it calls for information protected by the attorney-client privilege, as attorney work product, or by another privilege or protection. Sprint further objects to this Request to the extent that it seeks documents that are already in Vonage's possession. Sprint further objects to this Request as it evidences a failure of Vonage to review documents already produced by Sprint,[1] including documents specifically identified by Bates ranges in the Request, which evidences that this Request is designed solely to harass, oppress and burden Sprint. Sprint also objects to this Request as duplicative and cumulative with respect to numerous other Requests propounded by Vonage. Sprint further objects to this Request to the extent it seeks documents outside the possession, custody, or control of Sprint or that cannot be located following a reasonable search.

---

[1] For example, Vonage has requested "The Patent License Agreement" in B.4 after already specifically acknowledging that Sprint already has produced this same agreement in A (*i.e.*, the "Sprint/Cisco License Agreement" at SPRe-012-01-00849 to 872). Vonage also has requested "The Master Purchase Agreement" in C.3 after it specifically acknowledged that Sprint already purchased this same agreement in D (*i.e.*, the "Master Purchase Agreement" at SPRe-012-01-00897 to 1021). Such Requests evidence Vonage's intent to burden and harass Sprint.

8

2395349v1

Sprint further objects to this Request to the extent that Vonage has failed to make a showing that many of these numerous documents are even likely to exist.

Subject to and without waiver of the foregoing general and specific objections, Sprint states that many of the documents requested have already been produced, such as the Patent License Agreement (SPRe-012-01-00849 to 872), the Master Purchase Agreement (SPRe-012-01-00897 to 1021), the Statement of Work Agreement and SOW Agreement number CM80491MDL (SPRe-012-01-00825 to 833), other Statements of Work between the parties (SPRp-004-01-01546 to 01548), Service Level Agreements (SPRp-004-01-01362 to 1400, SPRp-004-01-01506 to 01544), the Memorandum of Understanding (SPRp-012-01-00280 to 296), a complete copy of Exhibit A (SPRp-012-01-00250) and drafts thereof (SPRp-012-01-00273), the Master System Integrator and Service Provider Agreement (SPRe-012-01-00897 to 1021), terminations (SPRe-012-01-00787 to 00791), and extensive JCS2000 software documentation.  Sprint further states that it has produced and/or will produce relevant, non-privileged, responsive documents in its possession, custody or control that can be located following a diligent and reasonable search.

**REQUEST NO. 106:** All documents reflecting any royalties or fees paid by third parties to Sprint or any affiliate for the sale, manufacture or use of any intellectual property rights under any claim of the Asserted Patents, or any other patent based on any purported invention of Joseph Michael Christie.

**RESPONSE:** Sprint objects to this Request as overly broad and unduly burdensome.  Sprint further objects to this Request as vague and ambiguous with respect to the terms "third parties," "affiliate," "the sale, manufacture or use of any intellectual property rights," and "any other patent based on any purported invention."  Sprint also objects to this Request to the extent it calls

9

2395349v1

for information protected by the attorney-client privilege, as attorney work product, or by another privilege or protection. Sprint further objects to this Request to the extent that it seeks documents not relevant to the Asserted Patents or any claim or defense in this matter. Sprint further objects to this Request to the extent it seeks documents outside the possession, custody, or control of Sprint or that cannot be located following a reasonable search.

Subject to and without waiver of the foregoing general and specific objections, Sprint states that it has produced a settlement agreement responsive to this Request at SPRe-012-01-00694 to 786. Sprint further states that it is unaware of any additional relevant, non-privileged, responsive documents in its possession, custody or control that can be located following a diligent and reasonable search.

**REQUEST NO. 107:** All agreements or draft agreements pursuant to which any royalties or fees were paid, or were to be paid, by third parties to Sprint or any affiliate for the sale, manufacture or use of any intellectual property rights under any claim of the Asserted Patents, or any other patent based on any purported invention of Joseph Michael Christie.

**RESPONSE:** Sprint objects to this Request as overly broad and unduly burdensome. Sprint further objects to this Request as vague and ambiguous with respect to the terms "third parties," "affiliate," "the sale, manufacture or use of any intellectual property rights," and "any other patent based on any purported invention." Sprint also objects to this Request to the extent it calls for information protected by the attorney-client privilege, as attorney work product, or by another privilege or protection. Sprint further objects to this Request to the extent that it seeks documents not relevant to the Asserted Patents or any claim or defense in this matter. Sprint further objects to this Request to the extent it seeks documents outside the possession, custody, or control of Sprint or that cannot be located following a reasonable search.

Subject to and without waiver of the foregoing general and specific objections, Sprint hereby incorporates by reference its response to Request No. 106.

**REQUEST NO. 108:** All documents reflecting, referring or relating to, the porting of customers' telephone numbers to Sprint between January 1, 2002 and the present, including, but not limited to, documents reflecting from which carrier those numbers were ported, how many numbers were ported, and the monetary value of those subscribers' service with Sprint during that period.

**RESPONSE:** Sprint objects to this Request as extremely overbroad and unduly burdensome. Sprint further objects to this Request as seeking information that is not remotely relevant to the Asserted Patents or any claim or defense in this matter in that it Requests documents relating to the porting of customers' telephone numbers from third party carriers. Sprint further objects to this Request as being outside the scope of permissible discovery provided for under the Federal Rules of Civil Procedure as this Request is not reasonably calculated to lead to the discovery of permissible evidence. Sprint further objects to this Request to the extent that it seeks documents that are not in Sprint's possession, custody, or control, and/or that are equally accessible to Vonage.

Subject to and without waiver of the foregoing general and specific objections, Sprint states that it will produce non-privileged, responsive documents in its possession, custody or control that relate to the porting of customers' telephone numbers from Vonage to Sprint and that can be located following a diligent and reasonable search.

**REQUEST NO. 109:** All documents reflecting, referring or relating to, the porting of customers' telephone numbers from Sprint between January 1, 2002 and the present, including,

11

2395349v1

but not limited to, documents reflecting to which carrier those numbers were ported, how many numbers were ported, and the monetary value of those subscribers' lost service with Sprint.

**RESPONSE:**  Sprint objects to this Request as extremely overbroad and unduly burdensome. Sprint further objects to this Request as seeking information that is not remotely relevant to the Asserted Patents or any claim or defense in this matter in that it Requests documents relating to the porting of customers' telephone numbers to third party carriers.  Sprint further objects to this Request as being outside the scope of permissible discovery provided for under the Federal Rules of Civil Procedure as this Request is not reasonably calculated to lead to the discovery of permissible evidence.  Sprint further objects to this Request to the extent that it seeks documents that are not in Sprint's possession, custody, or control, and/or that are equally accessible to Vonage.

Subject to and without waiver of the foregoing general and specific objections, Sprint states that it has already produced documents that relate to the porting of customers' telephone numbers to Vonage from Sprint, including documents produced by Third Party Verification, Inc. ("3PV") pursuant to a subpoena served by Sprint in connection with this matter.

Dated: March 28, 2007  Respectfully submitted,

  /s/ Adam P. Seitz_____
B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
816-474-6550 Telephone
816-474-6550 Facsimile

ATTORNEYS FOR PLAINTIFF SPRINT
COMMUNICATIONS COMPANY L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2007, a copy of SPRINT COMMUNICATIONS COMPANY L.P.'S RESPONSES TO DEFENDANT VONAGE HOLDINGS CORP'S FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS was sent via e-mail to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608

Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

 /s/ Adam P. Seitz\_\_\_\_\_ _____
Attorneys for Sprint Communications Company L.P.