## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                             )
               Plaintiff,        )
                                             )
        v.                    )
                                           )   Case No. 05-2433-JWL
VONAGE HOLDINGS CORP.,         )
VONAGE AMERICA, INC.,           )
                                           )
               Defendants.    )
                                           )

## SPRINT'S OPPOSITION TO VONAGE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS OF JOSEPH MICHAEL CHRISTIE

Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits this Opposition to Defendants Vonage Holdings Corp. and Vonage America, Inc's ("Vonage") Motion to Compel Production of Documents of Joseph Michael Christie.

## I.    INTRODUCTION

In its motion to compel, filed on the final day of discovery in a transparent attempt to manufacture an excuse to extend discovery, Vonage asks the Court to compel Sprint to produce an amorphous set of relatively unidentified documents of the inventor of the Asserted Patents, Joseph Michael Christie. Because Vonage has engaged in a multi-faceted fishing expedition, it is seeking documents which it cannot reasonably describe, cannot show have not already been produced by Sprint and for which Vonage has no basis for alleging even still exist. Despite Vonage's claim that it conferred with counsel for Sprint regarding the subject documents, Vonage can point to no communication in which it conferred with Sprint regarding the specific documents discussed by Mr. Gardner during his recent deposition, which are the subject of Vonage's motion. Had Vonage conferred with counsel for Sprint before hastily filing its motion, Vonage would have learned that Sprint already had produced all of Joe Christie's

2413297v2

documents that it still has in its possession, custody, or control, or that could be located after extensive and repeated searches.  Vonage bases its motion only on the vague and equivocal testimony of Mr. Gardner.  As demonstrated below, Mr. Gardner's testimony does not establish that any additional documents exist beyond those documents of Mr. Christie's that already have been produced by Sprint.  Accordingly, Vonage's motion should be denied as moot.

## II.    ARGUMENT

### A.    Vonage Failed To Meet And Confer.

Both the Federal Rules and the District of Kansas Local Rules require a party to meet and confer with counsel for the opposing party prior to moving to compel discovery.  Fed. R. Civ. P. 37; D. Kan. Rule 37.  Local Rule 37 specifically requires a "reasonable effort to confer," which means the parties must "in good faith converse, confer, compare views, consult and deliberate" and means "more than mailing or faxing a letter to the opposing party."  D. Kan. Rule 37.2.  With complete disregard for this requirement, Vonage filed its motion without even sending Sprint a letter requesting the documents discussed by Mr. Gardner in his recent deposition.  In order to disguise the fact that it did not comply with Local Rule 37.2, Vonage mischaracterizes numerous conversations between Sprint and Vonage relating broadly to "Joe Christie's documents" as its attempts to meet and confer regarding the subject of the instant motion.  However, the subject of Vonage's current motion is the ambiguously identified set of documents discussed by Mr. Gardner in his recent deposition, not the previously discussed "Joe Christie documents."  On this basis alone, Vonage's motion should be denied.  Indeed, had Vonage bothered to meet and confer with Sprint before filing its motion, it would have learned that Sprint has, in fact, already produced the requested documents thus rendering its motion moot.

2413297v2

**B.    Sprint Already Has Produced The Requested Documents.**

Throughout this litigation Vonage has sought a number of documents based on the amorphous and vague definition of "Joe Christie documents."  Though it is entirely unclear as to which documents Vonage is referring, any "Joe Christie documents" relating to the Asserted Patents would have been created in the 1993-1996 timeframe, which is the timeframe in which Mr. Christie was working at Sprint on the Asserted Patents.[1]  These documents were subject to a six-year retention policy[2] and many of these documents likely no longer exist, the fact of which was repeatedly expressed to Vonage.  Despite the fact that many of these documents likely no longer exist, Sprint continued to diligently search for any remaining "Joe Christie documents."  As a result of its repeated searches, Sprint eventually did locate a number of "Joe Christie documents" that related to the Asserted Patents, including a hard copy of the original PowerPoint presentation that embodied Mr. Christie's conception of the inventions disclosed and claimed in the Asserted Patents.  Upon locating these documents, Sprint immediately notified Vonage of their existence and, without waiting for a vendor to process the documents for production, sent them to Vonage via FedEx Priority Overnight.  *See* Exh. A, 3/7/07 Letter from Mr. Seitz to Mr. McPhail regarding SPRp-01-029-00001 to 00104.

As a result of Sprint's repeated searches, Vonage now has the following "Joe Christie documents" in its possession:

- October 15, 1993 Powerpoint Presentation of Joe Christie – "An Intelligent Hybrid Network Architecture" (SPRp-01-029-00001 to 00017)

- 6/25/93 Powerpoint Presentation of Joe Christie, Al Duree, and Bill Wiley – "ANSI Standards Process" (SPRp-01-029-00018 to 00021)

- October 15, 1993 Powerpoint Presentation of Joe Christie – "ATM/B-ISDN Signaling" (SPRp-01-029-00022)

---

[1] Mr. Christie passed away in 1996.

[2] *See* Exh. C, excerpt from Sprint Document Retention Policy evidencing a 6-year retention policy for these types of documents.

- October 15, 1993 Powerpoint Presentation of Joe Chrisite – "ATM/Broadband Call Model and Intelligent Network" (SPRp-01-029-00023)

- October 15, 1993 Powerpoint Presentation of Joe Christie – "An Intelligent Hybrid Network Architecture" (SPR-01-029-00034 to 00049)

- 6/25/93 Powerpoint Presentation of Joe Christie, Al Duree, and Bill Wiley – "ANSI Standards Process" (SPRp-01-029-00050 to 00053)

- October 15, 1993 Powerpoint Presentation of Joe Christie – "ATM/B-ISDN Signaling" (SPRp-01-029-00054 to 00055)

- June 27, 1994 Broadband – Intelligent Network Prototype Project Authorization K4963000, by Joe Christie, originator (SPRp-01-029-00075 to 00104)

- September 29, 1995, Version 3.0, CCM Phase I Architecture III Requirements, by Joe Christie, Al Duree, Joe Gardner, and Bill Wiley (SPRp-007-01-00466 to 00791)[3]

As evidenced by the description of the above documents, many are over 13 years old. Given that these documents were subject to a six-year retention policy, it is understandable that locating such documents has been time-consuming and difficult. It is equally understandable that many of Joe Christie's documents either no longer exist or cannot be located, as Mr. Christie died over 11 years ago. Nonetheless, and in order to address Vonage's baseless accusations, Sprint confirms that it is not withholding any additional documents of Joe Christie—another fact Vonage would have discerned had it bothered to conduct a proper meet and confer.

Sprint's repeated and diligent searches for "Joe Christie documents" have resulted in the production of all documents that are in Sprint's possession, custody or control and that still exist after 13 years. As Sprint has repeatedly informed Vonage, it has no further "Joe Christie documents" responsive to Vonage's vague and amorphous requests. As such, Vonage's motion is moot and should be denied.

---

[3] Given the size of these documents, Sprint has not attached them to this opposition. If the Court finds that a review of these documents is necessary for a resolution of this motion, Sprint will submit such documents at the Court's request.

### C.    Vonage Mischaracterizes Mr. Gardner's Testimony Regarding Mr. Christie's Documents.

While the remainder of Vonage's motion is now moot in light of Sprint's

production, it is necessary to address Vonage's gross exaggeration of Mr. Gardner's testimony.

*See* Vonage's Memorandum in Support, at 5.  In its motion, Vonage mischaracterizes Mr.

Gardner's testimony to support its contention that particular "Joe Christie documents" exist that

have not been produced by Sprint.  Contrary to Vonage's assertions, Mr. Gardner's testimony

does not establish any categories or types of documents that have not already been produced by

Sprint.  Instead, Mr. Gardner simply testified that Mr. Christie "kept some records" and could

offer no further description of these documents.  Transcript of March 21, 2007 Deposition of Mr.

Gardner("Gardner Tr."), at 57:11 and 57:21.[4]  Mr. Gardner further testified that he was **not**

**aware** of any laboratory notebook kept by Mr. Christie and admitted that, in fact, **he did not**

**"know exactly what [Joe] kept."**  *Id*. at 57:12-14 and 57:21-22 (emphasis added).  Mr. Gardner

also added that, **"Joe wasn't real rigorous about writing everything down."**  *Id.* at 58:17-18

(emphasis added).  Additionally, even though Mr. Gardner recalled bringing some of Joe's

documents back to Kansas City in 1996, he testified that he honestly could not remember who

went with him on the trip or what he did with the documents.  *Id.* at 58:3-14 ("Q.  You

personally brought those records back to Kansas City?  A.  Well, yes, I and others.  Q.  Who

else?  A.  I honestly can't remember who went with me.  Q.  Do you recall who you gave the

records to here in Kansas City?  A.  No.  I just remember picking through things that looked like

they would be of value going forward.").  The imprecise and vague nature of this testimony

makes clear that the documents Vonage now seeks were not specifically identified by Mr.

---

[4] Excerpts of this transcript are attached as Exhibit B.

Gardner. Without a specific identification of documents, it is impossible to determine what documents Vonage believes exist that have not already been produced by Sprint.

Moreover, despite having the opportunity, Vonage failed to further inquire as to whether Mr. Gardner thought Sprint would have retained such documents, what types of documents Mr. Gardner would have kept, or even whether Mr. Gardner thought such documents still existed. Instead, Vonage relies on the vague and imprecise testimony of Mr. Gardner as its basis for moving to compel production of documents. Given the lack of clarity and precision from Mr. Gardner regarding the "Joe Christie documents," Vonage's request that the Court order Sprint to produce "the Christie materials identified by Mr. Gardner" is nothing more than another fishing expedition by Vonage. Vonage does not know what "Joe Christie documents" it believes exist beyond those already produced by Sprint. Vonage—despite assurances from Sprint that it has produced, based on scores of additional searches, the "Joe Christie documents" that still exist— simply assumes substantial additional documentation remains outstanding based on imprecise and vague testimony from Mr. Gardner. This "fishing expedition" should not be countenanced and Vonage's motion must be denied.

## III.     SPRINT IS ENTITLED TO ITS COSTS FOR RESPONDING TO THIS MOTION

Had Vonage conducted a proper meet and confer, it would have learned that Sprint already has searched for and produced the "Joe Christie documents" still in existence. Instead, Vonage filed a baseless motion seeking documents Sprint has already produced. Because Sprint was required to respond to a motion that could have been dealt with by way of a simple phone call, the Court should award Sprint its costs and fees in responding to this baseless motion. *See* Fed. R. Civ. P. 37(a)(4)(B); *Hutchinson v. Pfeil*, No. 98-5043, 1999 WL 1015557, at *2 (10th Cir. Nov. 9, 1999) ("Rule 37(a)(4)(B) provides that, if a motion to compel discovery is denied, the court shall, 'after affording an opportunity to be heard,' require the moving party

- 6 -

or the attorney filing the motion, or both of them, to pay the reasonable expenses incurred in opposing the motion 'unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.'").  Accordingly, the Court should order Vonage to pay Sprint's costs in opposing its motion and admonish Vonage for failing to comply with the Local Rules.

## IV.    CONCLUSION

For the reasons stated above, Sprint respectfully requests that the Court deny Vonage's Motion to Compel, and that the Court provide Sprint such other relief as may be appropriate and necessary under the circumstances.

Respectfully submitted,

Dated: April 13, 2007

  /s/ Adam P. Seitz
B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT COMMUNICATIONS COMPANY
L.P.

2413297v2

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2007, a true and accurate copy of the above and foregoing **SPRINT'S OPPOSITION TO VONAGE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS OF JOSEPH MICHAEL CHRISTIE** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608
Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

  /s/   Adam P. Seitz
Attorneys for Sprint Communications Company L.P.