IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Case No. 05-2433-JWL
                                    )
VONAGE HOLDINGS CORP.,              )
VONAGE AMERICA, INC.,               )
                                    )
            Defendants.             )
                                    )

**SPRINT'S MEMORANDUM IN OPPOSITION TO VONAGE'S MOTION SEEKING LEAVE TO AMEND THEIR RESPECTIVE ANSWERS, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 15**

Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits its Memorandum in Opposition to Defendants Vonage Holdings Corp. and Vonage America, Inc's Motion Seeking Leave To Amend Their Respective Answers, Affirmative Defenses And Counterclaims Pursuant To Fed. R. Civ. P.15 (hereinafter "motion for leave to amend"). The motion for leave to amend should be denied because (1) Vonage has failed to establish "good cause" for seeking to amend its answer after the Court-imposed deadline for such amendments; (2) Vonage unduly delayed in filing this motion; (3) Sprint would be significantly prejudiced if Vonage were granted leave to amend at this late stage of the case; and (4) the amendments to add license and misuse defenses are futile.

## I.    INTRODUCTION

Vonage's motion to amend is nothing more than a futile delay tactic. Vonage is attempting to manufacture a rationale to delay trial in this case, as further evidenced by Vonage's motion to amend the scheduling order (Doc. No. 156). The present motion is simply another component in Vonage's scheme to delay Sprint's day in court. However, Vonage does not even

2416627v4

Dockets.Justia.com

contend that it can state a factual basis for the affirmative defenses it seeks to add. Instead, Vonage inexplicably seeks to rely on information that it may discover in the future (notwithstanding the close of discovery). Vonage's attempt to raise affirmative defenses without adequate factual support, however, results in a putative violation of Rule 11. Accordingly, Vonage must not be allowed to amend its Answer and Counterclaims.

Furthermore, Vonage unduly delayed bringing the instant motion as a result of its failure to conduct timely discovery. In addition, Vonage completely disregarded the Scheduling Order deadline for amendments and cannot establish "good cause" for its disregard. Even had Vonage been diligent in conducting its discovery, however, Vonage's motion should be denied because the proposed amendments are altogether futile. Indeed, each of Vonage's proposed amendments is based on a license agreement <u>that does not exist</u>. As will be demonstrated in detail below, the "License documents" to which Vonage refers do not apply in any way to the Asserted Patents in this action. Furthermore, the license agreement on which Vonage seeks to rely expired before Vonage even came into existence, and, thus, would have no application to this action even if the agreement did apply to the Asserted Patents, which it does not. The complete lack of factual foundation for Vonage's proposed amendment demonstrates the pretextual nature of Vonage's motion and establishes that the amendment must be rejected.

## II. VONAGE'S PROPOSED AMENDMENTS DO NOT SATISFY RULE 11

Rule 8(e)(2) makes clear that "[a]ll statements [in a pleading] shall be made subject to the obligations set forth in Rule 11." Fed. R. Civ. P. 8(e)(2). "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not imposed for

any improper purpose." *In re Edmonds*, 924 F.2d 176, 181 (10th Cir. 1991). By Vonage's own admissions, its proposed amendments do not meet this standard.

Vonage's own statements, in its motion for leave to amend, establish that it does not have a sound factual basis for its claim that a license, express or implied, to the Asserted Patents exists. Indeed, Vonage only suggests that "Sprint's claims of infringement **may be barred** by the licenses (both express, implied and intended), covenants not to sue, and other terms of its agreements with Cisco." Vonage's Brf., at 9. *See also*, Vonage's Brf., at 2 ("They likewise contain covenants not to sue Cisco customers, including Vonage, which, alone or together with the express and implied licenses implicated in the License documents, **may provide** Vonage a complete defense to Sprint's claims of patent infringement."). Vonage's motion also makes clear that it does not yet have a factual basis to contend that Sprint actually has committed patent misuse. *Id.* at 2 ("These License documents, and Sprint's conduct in their negotiation, execution, and performance, **may similarly constitute** a misuse by Sprint of its patent rights, or other inequitable conduct which may, in whole or in part, negate Sprint's rights to recover for any infringement of the Asserted Patents."). Indeed, Vonage's proposed amendments are based on speculation as to documents that **may be** produced by Cisco, or that Vonage believes Sprint may have—which it does not. *See* Vonage's Brf., at 5 (making clear that its proposed amendments are based on documents "which Sprint has yet to produce" and documents Vonage is seeking "from Cisco directly."). Such baseless and unfounded pleadings are not "well-grounded in fact [or] legally tenable."

"By including affirmative defenses which are neither warranted by existing law nor supported by evidence, counsel may find himself subject to sanctions under Rule 11." *Ganley v. County of San Mateo*, 2007 WL 902551, *3 (N.D.Cal. March 22, 2007). Vonage's

reliance on information that **may be** discovered simply does not meet Rule 11 requirements and Vonage cannot be allowed to amend its Answer, Affirmative Defenses and Counterclaims at this point. Furthermore, to the extent Vonage contends it currently possesses adequate facts to support its defenses, those facts have been known to Vonage for at least two months as demonstrated below. Accordingly, in this circumstance, the Court should deny Vonage's motion based on Vonage's undue delay and lack of due diligence in seeking to amend.

### III.     GOVERNING LAW REGARDING MOTIONS FOR LEAVE TO AMEND

The Court should deny a motion for leave to amend "upon a showing of undue delay, bad faith or dilatory motive, . . . undue prejudice to the opposing party, or futility of amendment." *Castleglen v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court should deny Vonage's motion pursuant to each of these factors.

Additionally, Vonage must establish "good cause" to amend the Court's scheduling order. Contrary to Vonage's assertions, Vonage is, in fact, "in violation of a Court-imposed deadline for the amendment of the pleadings." Defs.' Br. at 7. Though Vonage stated that "[t]he Court did not enter a scheduling order which set any deadlines for the amendment of the pleadings," the Court did enter just such an order. In its initial Scheduling Order, the Court imposed an April 28, 2006 deadline for "[m]otions to join additional parties or otherwise amend the pleadings." (Doc. No. 48). Thus, Vonage must also establish "good cause" for making its request outside the deadline established by the Court's scheduling order. Fed. R. Civ. P. 16(b); Doc. No. 48. A showing of "good cause" requires the party seeking an amendment must show that despite due diligence it could not have reasonably met the scheduling order deadlines.

*Pfeiffer v. Eagle Mfg. Co.*, 137 F.R.D. 352, 355 (D. Kan.1991). Because Vonage has not established "good cause" to alter the Court's scheduling order, its motion should be denied.

## IV. ARGUMENT

### A. Vonage Has Unduly Delayed in Moving to Amend and Has Not Demonstrated Due Diligence.

Vonage's delay in bringing the instant motion justifies denial on two grounds. First, as mentioned above, Vonage's delay betrays an absence of due diligence and, thus, an absence of "good cause" for Vonage's eleventh-hour request. Second, under Tenth Circuit law, "[u]ntimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1495 (10th Cir. 1995). Vonage has no legitimate explanation for its delay in waiting until the final day of discovery to seek leave to amend.

By Vonage's own tacit admission, it was aware of some potential licensing defense in February 2006.[1] Moreover, Vonage admits it was aware of the existence of alleged agreements between Sprint and Cisco as early as September 2006. *See* Defs.' Br. at 3-4 & n.1. Vonage admits that it had copies of executed agreements between Sprint and Cisco in its possession as of January 25, 2007. *Id.* at 4. At this point (if not well before), Vonage should have promptly moved to formalize its defensive theories.[2] Yet, inexplicably, Vonage delayed its filing of the current motion until the March 30 close of discovery—nearly 60 days after receiving the Sprint/Cisco agreements and nearly **14 months** after tacitly admitting knowledge of its licensing theory. Further, Vonage did not serve its subpoena on Cisco until March 16, 2007,

---

[1] *See* Defs.' Br. at 8 ("Sprint has known that Vonage might pursue a license defense since receiving Vonage's first discovery requests in February 2006.").
[2] To provide a Rule 11 basis, if any, for asserting its purported affirmative defenses, Vonage necessarily relies on agreements that it possessed on January 25, 2007. The fact that Vonage relies on some potential yet unspecified results of a subpoena to Cisco raises significant Rule 11 problems with the timing of Vonage's current motion as further discussed above.

2416627v4

nearly two months after it claims the Cisco agreements became "highly pertinent" to its defense.[3] Vonage's conduct constitutes undue delay and a lack of due diligence.

In *Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, this Court denied a motion to amend where the defendant's delay was less than that exhibited by Vonage. No. 00-2099-CM, 2001 U.S. Dist. LEXIS 5683 (D. Kan. Apr. 23, 2001) (affirming order of Magistrate Judge Waxse). In that case, the defendant delayed 49 days in seeking leave to amend to add compulsory counterclaims arising from newly discovered evidence. *Id.* at *4. The Court denied the defendant's motion because it had failed to take the necessary discovery giving rise to the new claims in a timely manner. *Id.* at *7. Similar to the defendant in *Aerotech*, Vonage should have promptly pursued discovery from the time it first had notice of its theory in September 2006 instead of waiting until two weeks before the close of discovery to issue a subpoena to Cisco. Moreover, when Vonage received the Cisco agreements on which it now relies in January 2007, it should have promptly moved to amend at that point instead of waiting until the close of discovery. Both these delays demonstrate the absence of due diligence as well as undue delay.

Moreover, Vonage's undue delay and lack of diligence cannot be attributed to Sprint. To the extent Vonage took issue with Sprint's production, it should have addressed that dispute with the Court no more than 30 days after the dispute arose.[4] Additionally, Vonage could have served its subpoena on Cisco clear back in September of 2006. Vonage's undue delay is not attributable to Sprint and the Court should deny Vonage's motion.

### B.   Vonage's Delay Would Cause Sprint Significant Prejudice

In addition to undue delay, courts also consider whether the opposing party will suffer prejudice if the moving party is allowed to file an amended pleading. "Prejudice under

---

[3] *See* Ex. 7, Vonage's subpoena of Cisco.
[4] *See* D. Kan. R. 37.1(b).

2416627v4

Rule 15 means undue difficulty in defending a lawsuit because of a change of tactics or theories on the part of the other party." *Welch v. Centex Home Equity Co., L.L.C.*, 323 F. Supp. 2d 1087, 1091 (D. Kan. 2004) (Lungstrum, J.).

In the case at hand, Vonage's proffered amendment should be denied because its late filing would unduly prejudice Sprint. Vonage's Amended Answer contains entirely new affirmative defenses that have no relation to any existing claim or defense in this litigation. Sprint certainly will be subject to undue difficulty in defending against the proposed affirmative defenses because of this change of tactics and theories by Vonage, especially now that discovery is closed.

In the case at hand, significant discovery has been completed, expert reports and rebuttal expert reports have been served, the discovery deadline has passed, and the parties have nearly completed fact depositions. In a nearly identical factual scenario, this Court denied a motion for leave to amend stating that "[a]t this stage in the proceedings—two years after the filing of the initial Complaint and after the completion of significant discovery—this would be the epitome of undue prejudice to Defendants." *See Semsroth v. City of Wichita*, No. 04-1245, 2006 U.S. Dist. LEXIS 63294, at *13 (D. Kan. Sept. 5, 2006). The late nature of Vonage's request would constitute a textbook case of undue prejudice to Sprint and, therefore, must be denied.

Additionally, Sprint's inability to conduct meaningful discovery on these new theories and defenses will subject it to significant prejudice. Recognizing the prejudice such a scenario would inflict on a litigant, this Court denied a similar motion for leave to amend after the close of discovery had passed. *See Welch v. Centex Home Equity Co., L.L.C.*, 323 F. Supp. 2d 1087, 1091 (D. Kan. 2004) (Lungstrum, J.) ("[I]f plaintiff is allowed to amend her complaint,

defendants will suffer prejudice by virtue of not being able to conduct discovery on plaintiff's new theories."). The prejudice noted in *Welch* is the very same prejudice that will be inflicted on Sprint should the motion for leave to amend be granted. By way of specific example, Vonage's proposed defenses hinge entirely on the fact that the sole provider of Vonage's network equipment is now and always has been Cisco. Based on discovery to date, Sprint is generally aware that some Vonage elements were provided by Cisco, some by Sonus, and certain software by DynamicSoft. However, Sprint, to date, has not focused on the identity of Vonage's providers because those identities have not been an issue in the case. At this point, discovery is closed and Sprint's ability to discover this information is limited. Based on this prejudice alone, Vonage's motion must be denied.

Despite the clear prejudice to Sprint, Vonage attempts to argue that Sprint cannot be prejudiced because "Sprint has known Vonage might pursue a license defense since receiving Vonage's first discovery requests in February 2006." Defs.' Br. at 8. As an initial matter, Vonage's statement is a tacit admission that it knew, or should have known, of its amendment over one year ago. Yet, Vonage made no attempt to move for leave to amend within the deadline for such amendments. Instead, Vonage waited to file its motion for leave to amend until **14 months later** on the last day of discovery. In any event, Vonage's argument fails for two reasons. First, Vonage's requests for production relating to licenses of the Asserted Patents did not put Sprint on notice of a license defense. Given that no licenses of the Asserted Patents have ever been offered or granted,[5] Sprint could not reasonably have anticipated a license defense. Second, even assuming Sprint had been placed on notice of the potential amendments, "it would not have been unreasonable for [Sprint] to forgo discovery on these potential claims, as they had

---

[5] The "License documents" referred to by Vonage in its motion for leave to amend are licenses of patents unrelated to the Asserted Patents. *See* Section IV.C.1, *infra*.

2416627v4

not been officially raised during the discovery period." *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099, 2001 U.S. Dist. LEXIS 5683, at *12 (D. Kan. Apr. 23, 2001).

To grant Vonage's motion for leave to amend at this stage of the proceeding would require the re-evaluation of disclosures and witness testimony, additional expert reports, the re-opening of discovery, and likely the delay of trial, which is currently scheduled for September 2007. *See Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099, 2001 U.S. Dist. LEXIS 5683, at *10-*12 (D. Kan. Apr. 23, 2001) (finding plaintiff would be unduly prejudiced where allowing amendment would require reopening discovery and delaying trial).[6] Accordingly, the Court should deny Vonage's motion for leave to amend because allowing Vonage to add defenses after the close of discovery would unduly prejudice Sprint.

### C. Vonage's Proposed Amendments Are Futile

In addition to delay and prejudice, a court may also deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). "Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001). The court will dismiss a cause of action under Rule 12(b)(6) when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). The court accepts as true all well-pleaded facts, as distinguished from

---

[6] Given that no license to the Asserted Patents actually exist, these delays and extensions are, of course, exactly what Vonage wants (*see* Vonage's Motion To Amend Scheduling Order filed as Doc. Nos. 156 and 157) and likely is the reason Vonage delayed filing this motion for leave to amend until the very day discovery closed.

- 9 -

2416627v4

conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Intercon, Inc. v. Bell Atlantic*, 205 F.3d 1244, 1247 (10th Cir. 2000).

As discussed below, Vonage can prove no set of facts in support of its license and misuse defenses that would entitle it to relief. Indeed, Vonage wholly failed to plead sufficient facts to support its proffered amendments, just conclusory allegations that "License documents" relating to the technology at issue in this case "**may** provide Vonage a complete defense to Sprint's claims of patent infringement." Defs.' Br. at 2 (emphasis added). Vonage's inability to affirmatively state that the facts known to it **do** establish an affirmative defense is fatal to the proposed amendments as set forth above. Certainly, this inability also renders the proposed amendments futile.

Vonage does not cite to any particular License documents or otherwise explain how the License documents between Sprint and Cisco create an express or implied license with Vonage, or how those documents support Vonage's new theory that Sprint has "misused the Asserted Patents and its rights thereto." Defs.' Br. at 2, 5. Indeed, Vonage does not even attach the License documents to which it refers.[7] As detailed below, Vonage's failure even to attempt to explain how these documents support its theories is telling.

As a result of Vonage's failure to attach copies of the supporting documents, both Sprint and the Court are left to speculate as to the details of the proffered defenses. *See Burdett v. Harrah's Kan. Casino Corp.*, No. 02-2166, 2003 U.S. Dist. LEXIS 22293, at *10 (D. Kan. Sept. 5, 2003) (overruling plaintiff's motion to amend because plaintiff did not attach a copy of her proposed RICO claim and therefore the Court was "in no position to evaluate the sufficiency

---

[7] Because Vonage failed, mistakenly or intentionally, to attach the License documents to its motion, Sprint attaches three agreements that bear on this issue, though Sprint is unsure to which particular documents Vonage refers in its motion. *See* Ex. 1 (License Agreement), Ex. 2 (Termination Agreement), and Ex. 3 (Alliance Agreement) attached hereto.

of her claim"); *Flake v. Hoskins*, No. 98-2450, 2000 U.S. Dist. LEXIS 6788, at *9-*11 (D. Kan. May 2, 2000) (plaintiff's failure to cite to the new evidence supporting his amendment argument precludes the court from finding that plaintiff's delay was the result of excusable neglect); *Mike v. Dymon, Inc.*, No. 95-2405, 1996 U.S. Dist. LEXIS 13394, at *4 (D. Kan. Sept. 11, 1996) (finding that plaintiff had not shown excusable neglect or good cause for the untimeliness of his motion to amend because he did "not specify what particular discovery enlightened him or what he learned by such discovery which added to what he should already have known").

Notwithstanding the insufficiency of Vonage's motion for leave to amend and the proffered amendments, Sprint will conclusively establish that Vonage's proposed amendments are futile, and thus Vonage's motion should be denied for this reason as well.

### 1.   Vonage's Express/Implied License Defense Is Futile.

Vonage asserts that "License documents" produced by Sprint regarding a license agreement between Sprint and Cisco may bar Sprint's claims of infringement, in whole or in part. Defs.' Br. at 2, 5, 9. Vonage asserts that these "License documents" "relate to the very technology at issue in this case, and the Asserted Patents that Sprint alleges Vonage has infringed." Defs.' Br. at 2. Notwithstanding Vonage's vague and amorphous reference to "License documents," the following facts regarding the license agreements produced by Sprint are undisputed: (1) the agreements do not relate to the Asserted Patents, (2) all of the agreements expired before Vonage even existed, and (3) the agreements expressly state that an express or implied license is not granted to any party other than Cisco. For all of these reasons, Vonage's reliance on these documents is misplaced and its proffered license defense is futile.

2416627v4

### a. The Agreements Do Not Relate to the Asserted Patents.

Fundamental among the numerous problems with Vonage's proposed affirmative defenses is that Vonage cannot point to any document that granted a license to the Asserted Patents in this action. Indeed, no such license exists. Contrary to Vonage's assertions, the Sprint/Cisco License Agreement to which Vonage must be referring in its motion did not give Cisco a license to the Asserted Patents, only the option to license unrelated applications.

The Agreement specifically defines the applications that could be licensed through this agreement—the "Designated Sprint Component Patents"—as "those U.S. Component Patents that are issued or issuing from Designated Sprint Applications," which were attached as Exhibit A to the agreement. *See* Ex. 1 (License Agreement) § 1.7. The definition of "Designated Sprint Applications" states that "[a]ll Designated Sprint Applications shall be listed on Exhibit 'A' attached hereto," *i.e.*, other than those specifically listed in Exhibit A, no other patents or applications were licensed to Cisco. *See* Ex. 1 (License Agreement) § 1.6. The only applications listed on Exhibit A are 1057d, 1148, 1172, and 1189, none of which are the Asserted Patents.[8] *See* Ex. 1 (License Agreement), Exhibit A attached thereto; Ex. 8, Declaration of Adam Seitz, at ¶¶ 3-9. Moreover, none of these applications are parent applications to the Asserted Patents, nor are they continuations or continuations-in-part of the Asserted Patents. *See* Ex. 8, Seitz Decl., at ¶ 10. Simply stated, the option to license the applications listed in Exhibit A cannot, as a matter of law, support a license, implied or otherwise, to the Asserted Patents. In fact, no patent license was ever executed by Cisco. Therefore, Sprint's offer to license the Designated Sprint Component Patents to Cisco does not give Cisco (or any other party) a

---

[8] The "Asserted Patents" are U.S. Patent Nos. 6,304,572, 6,633,561, 6,463,052, 6,452,932, 6,473,429, 6,298,064 and 6,665,294.

license—express, implied or otherwise—to the *Asserted Patents*. For this reason alone, Vonage's amendments are futile and its motion should be denied.

### b. The License Documents Expired Before Vonage Existed.

Even assuming that the License Agreement could be construed to cover the Asserted Patents—which it absolutely cannot—Vonage's license defense is futile because the licenses on which Vonage relies expired before Vonage even came into existence. Sprint and Cisco rescinded the Sprint/Cisco License Agreement in a separate agreement effective April 20, 2000, which was *prior to* Vonage's inception in May 2000. *See* Ex. 2 (Termination Agreement) § 1; Ex. 4 (Citron Dep.) at 65:14-66:8. Therefore, the licenses between Sprint and Cisco cannot provide a basis for Vonage's amendments.

Moreover, Vonage's broad allegation that the License Documents contain covenants not to sue that bar Sprint's claims of infringement also fails. Defs.' Br. at 2, 9. The covenant not to sue contained in the License Agreement and in Amendment No. 2 to the Alliance Agreement between Sprint and Cisco expired "twelve months following the termination of the Alliance Agreement." *See* Ex. 1 (License Agreement) § 3.4; Ex. 2 (Termination Agreement) at SPRe-012-01-00790. The Alliance Agreement terminated on December 17, 2001, 36 months following its effective date. *See* Ex. 3 (Alliance Agreement) at § 20.1. Thus, the covenants not to sue expired on December 17, 2002, well in advance of the filing of this lawsuit. Accordingly, these covenants not to sue cannot provide a basis for Vonage's amendments.[9]

### c. The License Documents Expressly State That An Express or Implied License Is Not Granted.

---

[9] Vonage suggests in its motion that "similar agreements were reached between Sprint and Cisco in 2001 and again in 2005." Defs.' Br. at 5. Beyond rank speculation, Vonage's argument fails because neither of those agreements contains a covenant not to sue or a license to the Asserted Patents. *See* Exs. 5 and 6.

In its motion, Vonage contends that the License Documents expressly or impliedly grant it a license to the Asserted Patents. For the reasons set forth above, this contention fails. Moreover, the express language of the License Agreement refutes Vonage's contention.

Section 2.5 of the Sprint/Cisco License Agreement states that "nothing contained in this Agreement shall be construed as a grant to Cisco of any license or right, expressly, by implication or by estoppel ... to any patents of Sprint other than the Licensed Patents."[10] *See* Ex. 1 (License Agreement) § 2.5. Section 2.5 further states that it is "Cisco's standard practice to include in its sale and license contracts that except for the express license granted by Cisco to its customers or licensees, no other license is granted, by implication or otherwise." *Id.* Finally, Section 5.2(d) specifically states that "[t]his Agreement carries no implied licenses." *See* Ex. 1 (License Agreement) § 5.2(d). The plain language of the License Agreement clearly and indisputably rejects Vonage's contention and, accordingly, Vonage's proposed amendment must be rejected as futile.

### 2.   Vonage's Misuse Defense Lacks Any Legal Foundation And Is Futile.

In addition to its failed license theory, Vonage advances a contrived and confusing misuse defense based on the "License documents." In its motion for leave to amend, Vonage vaguely describes its misuse defense as follows: "[t]hese License documents, and Sprint's conduct in their negotiation, execution, and performance, **may** similarly constitute a misuse by Sprint of its patent rights." Defs.' Br. at 2 (emphasis added). As set forth above, such a conclusory allegation, without more, is insufficient to entitle Vonage to relief. Vonage's motion for leave to amend should be denied on this ground alone.

---

[10] "Licensed Patents" are "the Designated Sprint Component Patents exclusively licensed to Cisco pursuant to this Agreement" (i.e., those listed in Exhibit A). *See* Ex. 1 (License Agreement) § 1.10.

2416627v4

Due to Vonage's failure to articulate its misuse defense, Sprint and the Court are left to guess as to what Vonage's defense really is. The Proposed Second Amended Answer and Counterclaims, which Vonage attached as Exhibits A and B to its motion, provides no guidance. Vonage's proposed eleventh affirmative defense states: "The Complaint and demand for relief are barred, in whole or in part, because Sprint has engaged in misuse of the Patents by licensing those patents to suppliers of components to customers such as Vonage under terms where the use of such components in the intended manner by the customers would subject such customers to liability for patent infringement." *See* Doc. No. 149, Exs. A and B. Vonage's defense is indefensibly vague and Sprint cannot further substantively respond until Vonage identifies the factual basis for its misuse defense. Furthermore, as set forth above, such vague and imprecise pleadings are insufficient and must be stricken. At this point, Vonage has failed to state a claim and, moreover, has not provided the Court with sufficient facts and legal support to evaluate the sufficiency of Vonage's claim. For this reason also, Vonage's motion to add a misuse defense should be denied. *See Burdett v. Harrah's Kan. Casino Corp.*, No. 02-2166, 2003 U.S. Dist. LEXIS 22293, at *10 (D. Kan. Sept. 5, 2003).

## IV. CONCLUSION

For the reasons stated above, Sprint respectfully requests that the Court deny Vonage's motion for leave to amend. First, Vonage cannot affirmatively state the proffered affirmative defenses and, accordingly, Vonage's proposed amendment would result in a Rule 11 violation. Second, Vonage unduly delayed in pursuing its newly proffered affirmative defenses and in filing the instant motion. Third, Vonage's delay has resulted in significant prejudice to Sprint's ability to address its baseless defenses. Finally, Vonage's express and implied license defense is wholly unsupported by the license documents, and Vonage's misuse defense is wholly

2416627v4

unsupported by the law. Accordingly, Vonage's proffered defenses are futile. For all these reasons, Vonage has failed to establish good cause for its proposed amendment and the Court should deny Vonage's motion for leave to amend.

Respectfully submitted,

Dated: April 13, 2007

/s/ Adam P. Seitz
B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT COMMUNICATIONS COMPANY L.P.

2416627v4

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2007, a true and accurate copy of the above and foregoing **SPRINT'S MEMORANDUM IN OPPOSITION TO VONAGE'S MOTION SEEKING LEAVE TO AMEND THEIR RESPECTIVE ANSWERS, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 15** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608
Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

　/s/　Adam P. Seitz_____
Attorneys for Sprint Communications Company L.P.

- 17 -

2416627v4