## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

```
                                        )
SPRINT COMMUNICATIONS COMPANY L.P.,     )
                                        )
                        Plaintiff,      )
                                        )   Case No.  05-2433-JWL
            v.                          )
                                        )
VONAGE HOLDINGS CORP. and               )
VONAGE AMERICA, INC.,                   )
                                        )
                        Defendants.     )
                                        )
```

### REPLY IN SUPPORT OF VONAGE HOLDINGS CORP.
### AND VONAGE AMERICA, INC.'S MOTION TO COMPEL
### PRODUCTION OF DOCUMENTS OF JOSEPH MICHAEL CHRISTIE

Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage"),

submit this reply in support if their Motion to Compel the production of documents belonging to

the alleged sole inventor of the Asserted patents, Joseph Michael Christie, as identified in the

March 27, 2007 deposition of former Sprint employee Michael Gardner.

Since the inception of the litigation, Plaintiff Sprint Communications Company, L.P.

("Sprint") has continuously asserted that no such documents exist or could be located, but that no

such documents had been destroyed.[1]  In its opposition to Vonage's motion, however, Sprint

changes its tune – contending now that it either has produced the box of Christie documents, or

these documents were destroyed at some unidentified point along the way.  Given Sprint's

diametrically opposed representations, Sprint's hollow assurances cannot suffice to avoid a

motion to compel the production of these likely vital documents.

---

[1]  See, e.g., December 29, 2006 Letter from Sprint's counsel, attached as Exhibit "1," denying
that documents responsive to Vonage's requests had been destroyed.

Dockets.Justia.com

**I.     Its Representations Notwithstanding, Sprint Has Not Produced the Christie Documents.**

Sprint contends that it has produced what documents would have been in the box Mr. Gardner identified in his deposition testimony – or, at least, that Vonage "cannot show [the documents] have not already been produced." Sprint's Brief in Opposition to Motion to Compel ("Sprint Br.") at 1.

Firstly, it is not Vonage's responsibility to prove that the Christie documents Mr. Gardner collected, boxed and delivered to Sprint's headquarters have not already been produced. Indeed, even if the documents Mr. Gardner identified were duplicates of those already produced, Sprint is responsible for producing them. Compare Sprint Communications Company L.P.'S First Set of Requests for the Production of Documents and Things to Vonage America, Inc., excerpts of which are attached as Exhibit "2," at Definition No. 5 (defining "Document" as "all non-identical copies of material of every kind... . A draft or nonidentical copy is a separate document within the meaning of this term.").

More compellingly, the documents Mr. Gardner identified are apparently not those Sprint has already produced. For example, Sprint suggests that Vonage's motion is moot because Sprint has already produced the following "Joe Christie documents" in its possession:

1.     October 15, 1993 Powerpoint Presentation of Joe Christie – "An Intelligent Hybrid Network Architecture" (SPRp-01-029-00001 to 00017);

2.     6/25/93 Powerpoint Presentation of Joe Christie, Al Duree, and Bill Wiley – "ANSI Standards Process" (SPRp-01-029-00018 to 00021);

3.     October 15, 1993 Powerpoint Presentation of Joe Christie – "ATM/BISDN Signaling" (SPRp-01-029-00022);

4.     October 15, 1993 Powerpoint Presentation of Joe Chrisite – "ATM/Broadband Call Model and Intelligent Network" (SPRp-01-029- 00023);

5.     October 15, 1993 Powerpoint Presentation of Joe Christie – "An Intelligent Hybrid Network Architecture" (SPRp-01-029-00034 to 00049);

6.  6/25/93 Powerpoint Presentation of Joe Christie, Al Duree, and Bill Wiley –
    "ANSI Standards Process" (SPRp-01-029-00050 to 00053);

7.  October 15, 1993 Powerpoint Presentation of Joe Christie – "ATM/BISDN
    Signaling" (SPRp-01-029-00054 to 00055);

8.  June 27, 1994 Broadband – Intelligent Network Prototype Project
    Authorization K4963000, by Joe Christie, originator (SPRp-01-029-00075 to
    00104); and

9.  September 29, 1995, Version 3.0, CCM Phase I Architecture III
    Requirements, by Joe Christie, Al Duree, Joe Gardner, and Bill Wiley (SPRp-
    007-01-00466 to 00791).

(Sprint Br. at 3-4). Aside from the fact that Sprint produced eight of these nine documents over a
year after Vonage requested them, three weeks before discovery closed, and after Vonage's
expert reports were due, it is apparent on the face of these documents they were not those which
Mr. Gardner retrieved from Mr. Christie's files.

For example, documents 1 -4 above were apparently all from Michael Setter's files, as
they were produced bearing his handwritten notes. Mr. Setter testified at his deposition that the
document 1 above (bearing Bates number SPRp-01-29-00001 to 17, marked as Exhibit 5 to his
deposition) was Mr. Setter's own copy of the document, bearing Mr. Setter's handwritten notes,
maintained in Mr. Setter's files at Sprint's Kansas headquarters. (See, e.g., Setter Tr. at 117:2-
119:11. Excerpts of Mr. Setter's deposition transcript, and Exhibit 5 thereto, are attached as
Exhibit "3.") Document 8 above, SPRp-01-029-00075 to 00104, is apparently from the files of
Harley Ball, as it bears a cover page indicating the document was Mr. Ball's copy. See Exhibit
"4." Both Messrs. Setter and Ball worked at Sprint's headquarters in Kansas. It is most unlikely
that the documents Sprint now identifies were among the materials that Mr. Gardner testified he
gathered from Sprint's Burlingame, California facility thousands of miles away.

**II.    Sprint's Arguments Regarding the Possible Destruction of Relevant Documents are Uncompelling.**

Sprint asserts that the Christie documents "likely no longer exist." Sprint Br. at 3.   In support of this anemic assertion, Sprint offers a single-page document retention policy created in 2001 (see Sprint's Ex. C) that has little facial application to documents created during Mr. Christie's tenure at Sprint, which ended with his death in 1996.

Even if the policy applied to the Christie documents generally, Sprint testified that its document retention policy is not provided to its outside vendors.  Rough Transcript of Nov. 28, 2006 Testimony of Mark McGrory, excerpts of which are attached as Exhibit "5," at 56:16-18. Reason suggests that by 2001, Mr. Christie's documents, including those Mr. Gardner gathered and brought to headquarters, would have been archived according to Sprint's practice.  Based on Sprint's testimony, there is no indication that these archived documents are subject to the retention policy.

Even were this the case, Sprint concedes that the fact that records may be subject to a valid and active retention policy is no evidence that the records have been destroyed:

> Q:   So if a document is not required to be maintained by the document retention policy, then it would not be maintained by Sprint?
>
> A.   It wouldn't be -- it wouldn't be required to be maintained.
>
> Q.   Would the document be maintained?
>
> A.   It -- I -- it wouldn't be required to be maintained.  That does not mean that it is automatically or necessarily not maintained.

Id. at 27:7-15.  Mr. McGrory, Sprint's designated witness to testify on its behalf pursuant to Fed. R. Civ. P. 30(b)(6) on document retention issues, testified that, as far as he knew, the Christie documents had not been destroyed:

> Q.   Were any of Mr. Christie's files destroyed after his death?
>
> A.   Not that I know of.

> Q. Were any of Mr. Christie's files purged after his death?
>
> A. Not that I know of.

Id. at 130:15-20.

## III.    Sprint's Search for and Production of Documents Justifies this Motion and an Order to Compel Production of the Christie Documents.

Sprint's arguments in response to Vonage's motion to compel can be simply summarized: "Sprint has done enough" or, perhaps more accurately, "Vonage has enough." What Sprint considers sufficient is simply not the question. At issue is Sprint's own witness' identification of documents apparently in Sprint's possession and the sufficiency of Sprint's document search and production methods which, as is apparent even on the face of Sprint's brief in opposition to this motion, has been sorely lacking.

As documented in Vonage's Motion, Sprint confirmed in a December 11, 2006 phone call that Sprint had "completed [its] search of documents within Sprint's possession, custody or control and ha[s] been unable to locate any of the following documents: ...(ii) any Research and Development documents authored or created by or under the supervision of Joseph Michael Christie and/or relating to his work at Sprint, including laboratory notebooks, monthly reports, invention disclosures, research protocols, meeting minutes, correspondence, memoranda or the like." See Mot. at Ex. E.

Sprint contends in its opposition that its allegedly hasty production of documents in March 2007 (Sprint Br. at 3, discussing documents located and sent by Federal Express without bates Numbers) is proof that it (1) has searched diligently for the records identified by Mr. Christie and (2) now *really* has no responsive information. To the contrary, it underscores that

even on and after the close of discovery, Sprint has not yet produced, or even sufficiently looked

for, documents responsive to Vonage's requests.[2]

Curiously, Sprint has not represented, either to Vonage in its correspondence or to the

Court in response to this motion, that it has ever looked for these boxes over the course of

discovery or in response to this motion.  As such, a motion to compel is in order.  Compare

School-Link Techs., Inc. v. Applied Res., Inc., No. 05-2088-JWL, 2007 U.S. Dist. LEXIS 14723

(D. Kan. Feb. 28, 2007) (Waxse, U.S.M.J.) (following "damaging testimony" given by party's

employee "that she was not directed by counsel or her employer to gather and preserve

documents relevant to the litigation," which "suggest[ed] that counsel for defendant was not

diligent in overseeing and monitoring to ensure that Defendant was compliant with the litigation

hold and its efforts to retain and produce all relevant documents;" despite responding party's

subsequent production of "every document from every folder" on the witness's computer, its

representation it had produced "all documents and information, including those in the custody of

[the witness]," and its offer of subsequent deposition at its own expense, opposing party was

entitled to further assurances; ordering producing party to provide opponent "with an identical

copy of the 'memory stick' witness provided to Defendant's counsel and that Defendant certify

that it has produced all information within its possession, custody or control related to the claims

and defenses in this litigation.").

---

[2]    Disconcertingly, in its simultaneously-filed opposition to Vonage's Motion to Amend its answer and affirmative defenses, Sprint attached to its brief two documents Vonage had requested at the outset of discovery.  Prior to the close of discovery, Sprint had assured Vonage it had looked for and produced all responsive documents.  That Sprint failed to produce these documents in discovery, but nonchalantly attached them to a court filing after the close of discovery, suggests not only that Sprint is not searching for responsive documents, but callously withholding information it has at its fingertips.

**IV.    Vonage Has Met Rule 37's Meet and Confer Requirements.**

As detailed in its motion, Vonage diligently pursued these documents from Sprint since the inception of discovery, and pushed Sprint at every turn to identify, produce, or admit to the destruction of, any documents authored by or belonging to Mr. Christie. Vonage respectfully submits that its persistent efforts to discuss and resolve these issues with Sprint – all of which were met with flat denials – satisfies Vonage's obligation to attempt in good faith to meet and confer and resolve Sprint's production issues.

Furthermore, Mr. Gardner identified the Christie documents on March 21, literally days before the close of discovery. Given the inexcusably late disclosure of these documents by Sprint on the eve of the close of discovery, and Sprint's insistence in other motions now pending that motions made after a deadline are untimely (see Sprint's Opp'n to Vonage's Motion for Leave to Amend, D.I. No. 167), Sprint denied Vonage any time to entertain yet another round of meeting and conferring – all of which to date have proven futile – and make its timely motion, which, by all accounts, would have been necessary anyway. Sprint's continued insistence that it has no documents, followed by a production, months later, of those very documents, has made even those assurances it makes to the Court in its opposition ring hollow.

Sprint insists that "[h]ad Vonage conferred with counsel for Sprint before hastily filing its motion, Vonage would have learned that Sprint already had produced all of Joe Christie's documents that it still has in its possession, custody, or control, or that could be located after extensive and repeated searches." (Sprint Br. at 1-2). Given the demonstrated, repeated, and persistent misrepresentations by Sprint over the course of discovery as to what documents it does and does not have, and has and has not looked for, and did and did not produce, Vonage would have been foolish to give any weight to Sprint's assurances, and the nth "meet and confer" Sprint insists was necessary on this issue would not, and could not, have avoided this motion.

## V.    Conclusion

Sprint accuses Vonage of filing its motion on the eve of the discovery deadline to "manufacture an excuse to extend discovery." To the contrary, Vonage filed its motion at the end of March because it was at the end of March that Vonage learned of additional crucial documents, plainly identified by Mr. Gardner, which Sprint had never disclosed, much less produced.

For the foregoing reasons, Vonage respectfully requests that the Court grant its motion and enter an order directing Sprint to produce the Christie materials identified by Mr. Gardner in his March 21, 2007 deposition, and any related materials, forthwith, and award such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

April 19, 2007

/s/ Patrick J. Kaine
Don R. Lolli    KS Dist. #70236
Patrick J. Kaine    KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com
Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com
*Attorneys for Defendants/Counterclaim*
*Plaintiffs Vonage America, Inc. and Vonage*
*Holdings Corp.*

## CERTIFICATE OF SERVICE

l hereby certify on April 19, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Reply in Support of their Motion to Compel Production of Documents, and supporting papers, was filed electronically, with a notice of case activity to be generated and sent electronically by the Clerk of Court to:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com
>
> *Attorneys for Plaintiff*
> *Sprint Communications Company L.P.*

> _/s/ Donald R. McPhail__

DM1\1100443.1