IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) <br> ) <br> ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-2433-JWL <br> ) <br> ) |
| VONAGE HOLDINGS CORP. and <br> VONAGE AMERICA, INC., | ) <br> ) |
| Defendants. | ) <br> ) |

**REPLY IN SUPPORT OF VONAGE HOLDINGS CORP. AND
VONAGE AMERICA, INC.'S MOTION SEEKING LEAVE
TO AMEND THEIR RESPECTIVE ANSWERS, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS PURSUANT TO FED.R. CIV. P. 15**

Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage") submit this reply in support of their Motion to amend their respective answers, affirmative defenses and counterclaims.

In its opposition to Vonage's motion, Sprint seeks to shield itself from the consequences of its own actions without legal basis or support. Nowhere among Sprint's colorful discussion of what it divines to be Vonage's case strategy, and its unsubstantiated accusation of an unseemly motive on Vonage's part, does Sprint dispute the facts that are material to Vonage's Motion to amend their complaint based on Sprint's latent and incomplete disclosure of potentially pertinent documents and information. Indeed, Sprint's brief in opposition to the motion confirms, and itself is the latest example of, Sprint's cat-and-mouse discovery tactics which alone demonstrate the good cause for Vonage's motion.

Instead, Sprint argues the legal merits of affirmative defenses Vonage seeks to raise. Because Sprint cannot establish that there is no set of facts under which Vonage's proposed amended claims could state a claim upon which relief may be granted, the Court should grant Vonage's motion to add these claims.

**I.     Vonage has Established Good Cause for Bringing its Motion at this Time.**

As of the Court's April 2006 deadline for making its motions, Sprint contended it had no agreements relating to the patents-in-suit and related technology at issue here. As detailed in Vonage's motion, over the course of discovery, on almost a page by page basis, and only in response to Vonage's repeated requests, Sprint, months after the Court's deadline for amended pleadings,[1] began to begrudgingly dole out proof of such agreements, and, even more slowly, copies of the agreements and supporting documents.

As late as its Fourth requests for Production of Documents, issued in February 2007, Vonage again requested from Sprint all agreements relating to the technology. At Sprint's March 29, 2007 deposition pursuant to Rule 30(b)(6) as to licensing issues, Sprint had not produced, and could provide no meaningful testimony as to, agreements between Cisco and Sprint which public records indicated were executed in 2001 and 2005.

By way of example, Mr. Ball could provide no information regarding more than one publicly acknowledged agreement between Sprint and Cisco. <u>See, e.g.</u>, Ball Tr., excerpts of which are attached as Exhibit "1," at 74 -75 (acknowledging other alliance agreements between Sprint and Cisco but not knowing where they are; testifying he did not look for any alliance

---

[1] While Vonage, in its motion, admittedly overlooked the entry in the Court's January 18, 2006 Scheduling Order setting a date for amended pleadings, Vonage respectfully submits the discussion and recitation of historical fact as set forth in its motion papers establishes the "good cause" required for making its motion past the date set by the Court for such amendments.

agreement other than that identified by Vonage by Bates number in its Notice); see also id. at 98-100 (identifying two other alliance agreements between Sprint and Cisco; unaware of their terms, purpose, subject matter, or whereabouts) and 103-104, 112. Nor could Mr. Ball provide any information as to whether these alliances constituted or were related to the specific agreements identified in Vonage's Notice.

As is plain on the face of separate press releases by Cisco and Sprint in July 2005 (see Ball Tr. Exs. 7, 8, attached as Exhibits "2" and "3," respectively), there was an alliance agreement between Cisco and Sprint formed in December 2001, renewed in 2005 for another three years, related to internet protocol (IP) telephony (to say nothing of other "ties" between the companies also mentioned). As Sprint contends that the Asserted Patents cover, and indeed read on, any system that bridges voice communications between any packet-based network (including IP networks) and a circuit-based network, these agreements fall squarely within Vonage's requests. It was apparent from Mr. Ball's testimony that he did not examine these documents and Sprint did not locate them so as to prepare him to testify on Sprint's behalf on these matters plainly well known to the company.

In its opposition to this motion, Sprint would have the Court believe that, miraculously, Sprint was able to locate and attach these agreements to its papers submitted to the Court weeks later. Given the multiple outstanding requests by Vonage for this information, and Sprint's repeated insistence it had no material other than what it already produced, Sprint's actions suggest that Sprint simply chose to withhold this and possibly other responsive material until after the close of discovery on March 30.

Sprint's opposition to this motion demonstrates in full color the basis for Vonage's motion, and why, Vonage's best efforts notwithstanding, it could not have been brought sooner.

In accusing Vonage of a "futile delay tactic," Sprint ignores its own.  It is notable that Sprint agreed to every other request for extensions of time in this matter, but suddenly now opposes this one.  Sprint's pattern of behavior suggests that it may be Sprint who is trying to get away with something.

Sprint should not be allowed, after failing to make a required production despite numerous requests, to come before this Court seeking to penalize Vonage because Vonage attempted in good faith to resolve disputes relating to the adequacy of Sprint's production prior to filing its motion.[2]  Vonage *sought to discover* whether it may have a license defense in its requests served in February 2006.  As of this filing, Sprint has yet to produce the documents necessary to determine that defense in full.  Sprint produced none of the agreements until well into 2007, produced them only partially, and is still apparently withholding information that would allow Vonage to learn the full scope of their terms.  Sprint's own subpoena of Cisco in March 2007 (attached as Exhibit "4") is indicative of the significance of, and the amount of material still outstanding that is pertinent to, these issues.

Any delay on Vonage's part in asserting the affirmative defenses it seeks to add now derives from the fact that it did not come into possession of the documents that provide the basis for the defenses until January of 2007, and even at that point, the production was incomplete, *as it remains today*.  Courts in this District routinely allow a party to amend and add affirmative defenses under such circumstances, even where the applicable deadline for amendment has passed.  Minter v. Prime Equipment Co., 451 F.3d 1196, 1207 (10th Cir. 2006) (allowing amendment to complaint six months after discovery of evidence because defendant had withheld

---

[2] In its opposition Sprint suggests that even if Sprint is to be blamed for the delay in producing the License documents, Vonage should have filed a motion with the Court seeking to force Sprint to produce documents it initially contended "did not exist." See Sprint's Br. at 6.

material evidence on key fact in the case); A/R Roofing, L.L.C. v. Certainteed Corp., No. 05-1158-WEB, 2006 U.S. Dist. LEXIS 87071 (D. Kan. November 30, 2006) (upholding decision of magistrate to allow amendment eight months after deadline when newly discovered evidence significantly bolstered defenses defendant had been previously aware of but had not asserted); Walls v. International Paper Co., No. 99-2048-CM, 2000 U.S. Dist. LEXIS 4525 (D. Kan. March 13, 2000) (allowing amendment to add affirmative defenses six months after deadline in light of newly discovered evidence).

Sprint's suggestion that Vonage had to definitively amend its pleadings before Sprint produced this information is contrary to law. Sprint's suggestion that, despite its misleading assurances over the course of discovery, Vonage's delay in filing this motion "cannot be attributed to Sprint" is simply untrue.

**II.     Sprint Cannot Reasonably Claim Prejudice By Vonage's Motion.**

Sprint unreasonably claims it will suffer "significant prejudice" if Vonage is permitted to amend its defenses.

Vonage's Proposed Amended Defenses are based on agreements to which Sprint is a party, which Sprint has in its possession, and of which Sprint (unlike Vonage) presumably has full and complete knowledge. Furthermore, unlike the cases on which Sprint would have the Court rely, allowing Vonage's proposed amendment would not require new discovery, but, given Vonage's outstanding document requests, Sprint's standing obligations to supplement its responses thereto under Fed. R. Civ. P. 26, and the outstanding and unanswered subpoenas by both Vonage and Sprint to Cisco, but simply a completion of already pending discovery obligations. Compare Aerotech Res., Inc. v. Dodson Aviation, Inc., No. 00-2099 2001 U.S. Dist. LEXIS 5683 (D. Kan. April 23, 2001) (Sprint Br. at 6); Semsroth v. City of Wichita, No. 04-1245, 2006 U.S. Dist. LEXIS 63294 (D. Kan. Sept. 5, 2006).

Moreover Sprint has been fully aware of Vonage's exploration of a license defense since the inception of discovery. (As Sprint fails to acknowledge, unlike Vonage, Sprint has been fully aware of, and in possession of, and even after the close of discovery still fails to produce, complete information as to the merits of those defenses.) Compare Beach v. Mut. of Omaha Ins. Co., 2003 U.S. Dist. LEXIS 715 (D. Kan. 2003) (finding plaintiff was not prejudiced by motion for leave to amend where there was "evidence that Defendants' written discovery to Plaintiffs and questions posed during depositions focused on" basis of proposed amended pleading.) In suggesting Vonage should have brought its motion sooner, and that Sprint is prejudiced by the delay, Sprint incongruously argues that Vonage had perfect knowledge of documents in Sprint's sole possession while Sprint does not. As a matter of fact, law and logic, Sprint's contention is unsustainable.

**III.  Vonage's Proposed Amendments are Not "Futile."**

"A court may deny a motion to amend as "futile" if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim. Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Sheldon v. Vermonty, 204 F.R.D. 679, 682 (D. Kan. 2002) (citations omitted).

"The court will dismiss a cause of action for failure to state a claim *only when it appears beyond doubt* that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief, or when an issue of law is dispositive. The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence

to support the claims." Lassiter v. Topeka Unified Sch. Dist. No. 501, 347 F. Supp. 2d 1033, 1040 (D. Kan. 2004) (Lungstrum, J.) (internal punctuation, citations omitted; emphasis added).

> A.  **In Opposing this Motion, Sprint Improperly Asks the Court to Consider Facts and Documents Outside the Scope of the Proposed Amended Pleading.**

Sprint's defense of "futility" is judged under the standards of Rule 12(b)(6), which prohibits the Court from considering the materials attached to Sprint's brief:

"It is generally unacceptable for the court to look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss.  If the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment." Id., citing Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001).[3]

Vonage's longstanding and outstanding discovery requests notwithstanding, Sprint did not produce the 2001 and 2005 Alliance Agreements in discovery.  (See Sprint Exs. 5-6, bearing no Bates numbers).  Vonage did not and could not refer to Sprint's Exhibits 5 and 6 in its motion papers because it did not *have* them.  The Court thus *cannot* consider the documents Sprint has refused to produce yet inconceivably attached to its motion (Exs. 5, 6) in deciding Vonage's Motion without converting Sprint's futility argument into a Motion for Summary Judgment and affording Vonage the appropriate discovery thereon:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief may be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and

---

[3] "However, it is 'accepted practice that, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claims, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.'" Id.

      all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b). In the event the Court determines it is appropriate to consider the attachments to Sprint's opposition, Vonage respectfully submits that the "reasonable opportunity" afforded by Rule 12(b) includes awaiting the production of and deposition by Cisco in response to both outstanding subpoenas, and the full and fair response by Sprint to the Court's Order compelling Sprint to perform mutually agreed searches of its records for documents responsive to Vonage's requests. <u>See</u> Order granting in part Motion to Compel Production of Search Terms, D.I. 154. <u>See also</u> Fed. R. Civ. P. 56(f) (allowing for discovery to be had and other such relief as is just).

      **B.    The Covenants Not to Sue on the Agreements Sprint Latently Produced Apparently Relieve Vonage of Liability.**

      Sprint contends Vonage's proposed defenses based on the Cisco contracts are "futile" because (1) the License is not applicable to the Asserted Patents and (2) the license expired long ago. Sprint's arguments are issues of disputed fact that cannot be decided here.

      Notwithstanding the factual disputes Sprint would improperly have the Court decide in this motion, the Cisco license materials produced to date indicate that Vonage may have a license defense to Sprint's claims of infringement – even if the Asserted Patents are not the specific subject of the license. There is also substantive proof that the covenant not to sue contained in these materials is still valid and fully applicable to Vonage and the accused system it has assembled using, among other things, Cisco components.

      Setting aside the issue of an actual express license, on its face, the 1998 License Sprint attaches to its opposition papers contains an express covenant by Sprint not to sue any customer of Cisco for the infringement of any claim of any Sprint patent:

> **Mutual Covenant Not to Sue**.  Both parties covenant not to sue, or bring suit, prosecute, assist or participate in any judicial, administrative or other proceeding of any kind against the other party or its licensees (including distributors and end users) for infringement of Cisco or Sprint Patents (as defined below) which occurs during the Immunity Period as defined below on account of the manufacture, use, sale, offer to sell, importation, promotion or distribution of Cisco or Sprint products or services using or incorporating any claim under such Cisco or Sprint Patents.  For purposes of this Section, "Cisco or Sprint Patents" means (i) all patents throughout the world for inventions conceived of or reduced to practice prior to the termination or expiration of this Agreement, under which patents (or the inventions, ideas or applications therefor)  Cisco or Sprint, or any of their Subsidiaries, now has or hereafter obtains, the ability or right to license or grant immunity from suit; and (ii) all extensions, divisionals, continuations, continuations-in-part, re-examinations and reissue patents of such patents, as well as patent applications thereof, to the extent rights attach to such applications.  The "Immunity Period" shall commence upon the execution of the Sprint/Cisco Alliance Agreement and terminate twelve months following the termination of the Alliance Agreement.  The immunity will be automatically renewed with each renewal of the Alliance Agreement unless either party gives notice of its intent to end the immunity at least 90 days in advance of the expiration of the current Alliance Agreement.

Sprint's Ex. 1, at ¶3.4  Sprint does not dispute that the Asserted Patents are "Cisco or Sprint Patents" as used in this covenant, as Sprint contends the inventions in the asserted Patents were all patents conceived of by Mr. Christie prior to his death in 1996.  Sprint has testified that this covenant covers all Cisco products and services and is an agreement by Sprint not to assert any of its patents against Cisco customers.  Ball Tr., Ex. 1, at 132:10-20.  Importantly, the covenant extends to patents other than the Licensed Patents, and is enforceable even if, as Sprint contends (and has yet to prove), there were no "Licensed Patents."

The covenant is coextensive with the "Sprint/Cisco Alliance Agreement" and is to terminate twelve months following the termination of the alliance.  Evidence shows that Sprint and Cisco renewed their alliance in 2001 and 2005.

Sprint in its papers argues that the alliance agreement, and therefore the immunity period in the covenant not to sue, expired in 2001.  Yet on the face of Sprint's brief it is confirmed that the alliance agreement was renewed, or entered again, in 2001 and in 2005.  See Sprint's Exs. 5-

6. The 2001 Alliance Agreement specifically acknowledges that it is part and parcel of the extensive set of agreements reached in 1998 (see Sprint's Ex. 6 at ¶2.1 "In addition to this agreement, the parties have entered into a Master System Integrator and Service Provider Agreement dated December 14, 1998, as may be amended or superseded (the 'Purchase Agreement'). The Purchase Agreement covers all Sprint purchases of Cisco products and services.")

On the face of the agreements themselves – and even the 2001 and 2005 agreements Vonage has seen for the first time in Sprint's opposition to this motion – it is readily apparent that the license and/or its covenants not to sue provide Vonage a proper defense to Sprint's claims of infringement.

Moreover, while the 2001 and 2005 Alliance Agreements themselves contain no substantive license terms, it is fully reasonable to expect that, as with the 1998 Alliance Agreement, the parties would execute numerous ancillary agreements in connection therewith. For example, in connection with the 1998 Alliance Agreement, Sprint and Cisco executed at least a Master Purchase Agreement, a license agreement, and several statements of work (which, Vonage's demands notwithstanding, Sprint has still not produced in full). See Sprint's Ex. 3 at ¶1.1 (describing concurrent related agreements). Given the extensive nature of the relationship between Cisco and Sprint, it is reasonable to expect that the 2001 and 2005 Alliance Agreements attached by Sprint to its motion are the tip of the iceberg, and that other documents containing information pertinent to Vonage's proposed defenses are readily at hand.

Hardly the Rule 11 violation Sprint would have the Court find (and for which it provides no legal authority), the papers Sprint submits with its opposition only confirm that Vonage's proposed contractual and misuse defenses are grounded in as much fact as Sprint has disclosed.

While Sprint in its opposition to Vonage's Motion insists that the Cisco license does not apply to the Asserted Patents, and that the Alliance Agreement terminated in 2001, such are facts not supported (and even contravened) by the agreements. Even if they did not, Vonage, on this motion under the standards of Rule 12(b)(6), is entitled the benefit of the doubt.

### IV.     Vonage's Proposed Amended Defenses Satisfy Rule 11.

Sprint takes great umbrage with Vonage's contention that the license materials "may" provide Vonage with defenses to Sprint's claims, calling this "speculation" and a violation of Rule 11. Sprint's Br. at 3. There is no basis for Sprint to even suggest such a breach of the rules.

Under Rule 8, Vonage need only plead a "short and plain statement of the claim showing that the pleader is entitled to relief," and "in short and plain terms" its defenses to Sprint's charges. Fed. R. Civ. P. 8(a), (b). Rule 11 requires that the allegations in support of Vonage's proposed affirmative defenses "have evidentiary support or, if specifically so identified, *are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery*." Fed. R. Civ. P. 11. As detailed here, Vonage's proposed amended claims are grounded in fact and on additional facts Vonage expects to uncover through outstanding discovery. The only thing that has caused Vonage to be less than definitive in its language is the substantial material Sprint had not produced before the close of discovery (including those materials Sprint has decided to subpoena from Cisco rather than producing from its own records).

In its opposition to Vonage's Motion for leave to Amend its affirmative defenses, Sprint makes no argument that Vonage's proposed amended pleading is insufficient. Sprint cites no authority stating that Vonage has insufficiently pled its proposed amended affirmative defenses of express or implied license or patent misuse. Cf. Burdett v. Harrah's Kan. Casino Corp., 02-2166, 2003 U.S. Dist. LEXIS 22293 (D. Kan. Sept. 5, 2003) (Sprint Br. at 10) (denying

amendment because movant failed to attach proposed amended pleading to motion papers). Instead, Sprint offers platitudes, distinguishable case law, exhibits it has not produced in discovery, and the factual testimony of its counsel.  See Exs. 5, 6 and 8.

Vonage is not required to prove its case in its proposed pleadings.  Vonage's proposed defenses are grounded in the documents Sprint has partially produced to date.  Because Sprint has yet to produce the documents in its possession regarding its relationship and licenses, with Cisco (and even presently has an outstanding subpoena to Cisco), Vonage's claims are not yet definitive, but will be on further discovery including that which Sprint, with its attachments to its brief, and its outstanding subpoena to Cisco, has yet to provide.

As noted in the very law upon which Sprint relies, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In re Edmonds, 924 F.2d 176, 180 (10th Cir. 1991) (Sprint Br. at 3) (reversing imposition of Rule 11 sanctions).  As in Edmonds, Vonage has advanced a more than colorable argument in support of its proposed amended claims.  Sprint offers no law to the contrary.

To the extent the Court finds Vonage's proposed amended pleadings factually insufficient, the Court should allow Vonage the opportunity to amend them.  See, e.g., Lassiter, 347 F. Supp. 2d at 1049 ("Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." (citing Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1131 (10th Cir. 1994).  "This consideration, combined with the fact that [a moving party] ought to be afforded an opportunity to test her claim on the merits if the underlying facts and circumstances may be a proper subject of relief," should lead leads the Court to conclude that Vonage should be

given an opportunity to amend her complaint.  Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Given the nature of the fact-specific inquiry regarding the life, scope and licenses associated with the multiple and extensive agreements between Sprint and at least one of Vonage's suppliers of components, Vonage respectfully submits that the Court cannot say that it appears beyond a doubt that Vonage can prove no set of facts that would entitle it to a license and misuse defense to Sprint's allegations of patent infringement.  Accordingly, under the law of this Court, Vonage's request for leave to amend its defenses must be allowed.

**V.     Sprint's Arguments, and the Facts and Proofs it Offers in Support Thereof, are Alarming.**

In opposition, Sprint miraculously offers, and asks the Court to consider, testimony and documents that, Vonage's multiple and repeated requests notwithstanding, Sprint has failed (and, given the ease with which Sprint can locate and produce such information when it is apparently in its interest to do so, refused) to produce in discovery.

As detailed in Vonage's motion, Vonage has sought information relating to agreements relating to the patents in suit and related technology at issue here over the course of discovery.

Sprint attached to its brief two documents Vonage requested at the outset of discovery. Prior to the close of discovery, Sprint had assured Vonage it had looked for and produced all responsive documents.  That Sprint failed to produce these documents in discovery, but nonchalantly attached them to a court filing *after* the close of discovery, suggests not only that Sprint is not searching for responsive documents, but callously withholding information it has at its fingertips until it Sprint considers that it is in its interest to do so.  The Court should not countenance such gamesmanship.

**VI.    Conclusion**

For the foregoing reasons, Vonage respectfully requests that the Court grant its motion and grant it leave to amend its answer to include additional affirmative defenses to Sprint's claims of infringement.

Respectfully submitted,

April 19, 2007                             /s/ Patrick J. Kaine

Don R. Lolli    KS Dist. #70236
Patrick J. Kaine  KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com

Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com

*Attorneys for Defendants/Counterclaim Plaintiffs Vonage America, Inc. and Vonage Holdings Corp.*

- 1 -

## CERTIFICATE OF SERVICE

I hereby certify on April 19, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Reply in support of their Motion for Leave to Amend their Respective Answers, Affirmative Defenses and Counterclaims Pursuant to Fed. R. Civ. P. 15, and supporting papers, was filed electronically, with a notice of case activity to be generated and sent electronically by the Clerk of Court to:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com
>
> *Attorneys for Plaintiff*
> *Sprint Communications Company L.P.*
>
>    /s/ Donald R. McPhail

DM1\1100423.1