## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                         )
            Plaintiff,          )
                                         )
       v.                     )
                                       )   Case No. 05-2433-JWL
VONAGE HOLDINGS CORP.,          )
VONAGE AMERICA, INC.,           )
                                       )
           Defendants.      )
                                       )
                                       )
                                       )

## BRIEF IN SUPPORT OF
## SPRINT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Sprint Communications Company L.P., pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby provides the following Brief in Support of Its Motion For Summary Judgment.

2463417v1

Dockets.Justia.com

## TABLE OF CONTENTS

I.    STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................1

II.   INTRODUCTION .....................................................................................................9

    A.    Background of Joe Christie's Inventions.................................................................9

    B.    The Impact Of Mr. Christie's Inventions................................................................9

    C.    Vonage's Infringement of Sprint's Patents............................................................12

III.  LEGAL STANDARDS ...........................................................................................14

IV.   MOTION FOR SUMMARY JUDGMENT REGARDING VONAGE'S
    AFFIRMATIVE DEFENSES, "ADDITIONAL DEFENSES," AND
    COUNTERCLAIMS...............................................................................................15

    A.    Vonage's Second Affirmative Defense is Appropriate for Summary
        Judgment Because Vonage Has No Admissible Evidence To Prove
        Sprint's Patents Fail To Comply With 35 U.S.C. § 112, ¶ 2 ...............................15

    B.    Vonage's Seventh Affirmative Defense Is Duplicative Of Its Second
        Affirmative Defense And Summary Judgment Is Appropriate Because
        Vonage Has No Evidence Supporting Either Defense ..........................................17

    C.    Vonage Has No Proof Supporting Its Claims that the Doctrines of Laches,
        Estoppel, and Acquiescence Bar Sprint's Claims And Summary Judgment
        Is Appropriate On Its Fifth Affirmative Defense...................................................18

        1.    Vonage Has Failed To Put Forth A Scintilla Of Evidence
            Supporting Its Laches Defense .................................................................19

        2.    Vonage Should Be Precluded From Asserting Prosecution Laches
            Because It Has No Proof Supporting Its Claim And This Defense
            Was Raised For The First Time After The Close Of Discovery...............21

        3.    Summary Judgment Is Appropriate On Vonage's Estoppel Claim
            Because It Has No Evidence Supporting This Defense............................23

        4.    Vonage Has Failed To Put Forth Any Evidence Supporting Its
            Acquiescence Defense And, Therefore, Summary Judgment Is
            Proper ......................................................................................................24

    D.    Vonage's Allegations Under the Doctrines of Unclean Hands (Vonage's
        Sixth Affirmative Defense) and Patent Misuse (Vonage's Eighth
        Affirmative Defense) Are Legally Defective ......................................................25

        1.    Vonage's Claims Of Patent Misuse And Unclean Hands Are Not
            Supported By The Law Or The Facts And Summary Judgment Is
            Therefore Appropriate .............................................................................26

i

2.      The Patent Misuse Reform Act of 1988 Eliminated Vonage's
Patent Misuse and Unclean Hands Defenses ..............................................26

E.      Vonage's Allegations Under 35 U.S.C. § 287 (Vonage's Ninth
Affirmative Defense) Are Legally Defective ........................................................28

F.      Summary Judgment Is Appropriate On Vonage's 35 U.S.C. § 101
"Defense" Because Vonage Has No Evidence Supporting Its Claims .................29

G.      Vonage's "Unenforceability" Claims Fail Because Vonage Has Not Pled
Any Facts Supporting Such A  Claim ..................................................................30

H.      Vonage Should Be Precluded From Asserting Any "Additional Defenses" .........31

I.      Vonage's Defense and Counterclaim for Non-Infringement Must Fail
Because Its Expert Is Not Qualified To Provide Testimony On The
Necessary Subjects ................................................................................................31

V.      CONCLUSION ................................................................................................................33

## TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co V. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ........................................................................19, 24

*Advanced Cardiovascular Sys., Inc. V. Scimed Sys., Inc.*,
   No. C-96-0950, 1996 WL 467277 (N.D. Cal. Jul. 24, 1996) ...................................27

*Allied Colloids Inc. V. Am. Cyanamid Co.*,
   64 F.3d 1570 (Fed. Cir. 1995) ...............................................................................30

*Amphenol T&M Antennas, Inc. V. Centurion Int'l, Inc.*,
   No. 00 C 4298, 2002 U.S. Dist. LEXIS 53 (N.D. Ill. Jan. 4, 2002) .........................23

*Anderson V. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................15

*Applied Genetics Int'l, Inc. V. First Affiliated Sec., Inc.*,
   912 F.2d 1238 (10th Cir. 1990) ..............................................................................15

*Aptix Corp. V. Quickturn Design Sys., Inc.*,
   269 F.3d 1369 (Fed. Cir. 2001) ..............................................................................30

*Arlington Indus., Inc. V. Bridgeport Fittings, Inc.*,
   345 F.3d 1318 (Fed. Cir. 2003) ..............................................................................30

*Bio-Technology Gen. Corp. V. Genentech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996) ...............................................................................20

*Blue Circle Cement, Inc. V. Bd. Of County Comm'rs.*,
   27 F.3d 1499 (10th Cir.1994) .................................................................................15

*C.R. Bard, Inc. V. M3 Sys., Inc.*,
   157 F.3d 1340 (Fed. Cir. 1998) .........................................................................27, 28

*Celotex Corp. V. Catrett*,
   477 U.S. 317 (1986)................................................................15, 16, 17, 19, 30, 33

*Competitive Techs., Inc. V. Fujitsu Ltd.*,
   374 F.3d 1098 (Fed. Cir. 2004) ..............................................................................30

*Conaway V. Smith*,
   853 F.2d 789 (10th Cir. 1988) ...............................................................................15

*Ecolab, Inc.  V. Envirochem, Inc.*,
   264 F.3d 1358 (Fed. Cir. 2001) ..............................................................................24

*Freeman V. Gerber Prods. Co.*,
   466 F. Supp. 2d 1242 (D. Kan. 2006)................................................................20, 21

iii

*Garrison V. Gambro, Inc.*
428 F.3d 933 (10th Cir. 2005) ...............................................17, 19, 30, 33

*Gasser Chair Co. V. Infanti Chair Mfg. Corp.*,
60 F.3d 770 (Fed. Cir. 1995) ...........................................................19, 21

*Hamel V. General Motors Corp.*,
No. 86-4388, 1989 U.S. Dist. LEXIS 11790 (D. Kan. Sept. 21, 1989)....................................23

*Health Care & Ret. Corp. Of Am. V. Heartland Home Care, Inc.*,
396 F. Supp. 2d 1262 (D. Kan. 2005)...................................................................25

*Joy Techs., Inc. V. Flakt, Inc.*,
954 F. Supp. 796 (D. Del. 1996).........................................................................20

*Kothmann Enters., Inc. V. Trinity Indus., Inc.*,
455 F.Supp.2d 608 (S.D. Tex. 2006).....................................................................22

*Mckesson Info. Solutions LLC V. Trizetto Group, Inc.*,
426 F. Supp. 2d 203 (D. Del. 2006).....................................................................25

*Nike, Inc. V. Wolverine World Wide, Inc.*,
43 F.3d 644 (Fed. Cir. 1994) ............................................................................14

*R2 Med. Sys., Inc. V. Katecho, Inc.*,
931 F. Supp. 1397 (N.D. Ill. 1996).....................................................................20

*Raines V. Switch Mfg.*,
1997 WL 578547 (N.D. Cal. Jul. 28, 1997).............................................................27

*Recombinant DNA Tech. Patent & Contract Litig.*,
850 F.Supp. 769 (S.D. Ind. 1994).......................................................................30

*Roberts V. Korn*,
420 F. Supp. 2d 1196 (D. Kan. 2006)...................................................................22

*Rohrbaugh V. Celotex Corp.*,
53 F.3d 1181 (10th Cir.1995) ...........................................................................15

*Stambler V. RSA Sec., Inc.*,
243 F. Supp. 2d 74 (D. Del. 2003)......................................................................22

*State Contracting & Eng'g Corp. V. Condotte Am., Inc.*,
346 F.3d 1057 (Fed. Cir. 2003) ........................................................................21

*Tex. Digital Sys., Inc. V. Telegenix, Inc.*,
308 F.3d 1193 (Fed. Cir. 2002) ........................................................................28

*Thom V. Bristol-Myers Squibb Co.*,
353 F.3d 848 (10th Cir. 2003) ...............................................17, 19, 30, 33

*Union Carbide & Carbon Corp. V. Stuart Labs.*,
194 F.2d 823 (3d Cir. 1952) ............................................................................17

iv

*Vaupel Textilmaschinen KG V. Meccanica Euro Italia S.P.A.*,
    944 F.2d 870 (Fed. Cir. 1991) ...................................................................20

*Virginia Panel Corp. V. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1998) ...................................................................27

*Voda V. Cordis Corp.*,
    No. 03-1512, 2007 WL 950365 (W.D. Okla. Mar. 27, 2007) ...................................20

**Statutes**

28 U.S.C. §1391 ............................................................................................2

35 U.S.C. § 101 ................................................................................ ii, 4, 5, 29

35 U.S.C. § 112, ¶ 2 ....................................................................... i, 3, 15, 16, 17

35 U.S.C. § 271(d) ....................................................................................26, 27

35 U.S.C. § 287 ...................................................................................... ii, 28

35 U.S.C. §112 ....................................................................................2, 3, 16

**Rules**

Fed. R. Civ. P. 56(c) ..........................................................................15, 19, 30, 33

Fed. R. Civ. P. 8(c) ...................................................................................22

I.     STATEMENT OF UNDISPUTED MATERIAL FACTS

**The Parties**

1.     Plaintiff Sprint Communications Company L.P. ("Sprint") is a Limited Partnership organized and existing under the laws of Delaware, with its principal place of business at 6500 Sprint Parkway, Overland Park, Kansas 66251.  (Doc. No. 2, Sprint's First Amended Complaint, ¶1; Exh. 1, Pretrial Order, § 4.a. ¶ 1).

2.     Defendant Vonage Holdings Corp. ("Vonage Holdings") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 2147 Route 27, Edison, New Jersey 08817. (Doc. No. 2, Sprint's First Amended Complaint, ¶ 4; Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, ¶ 4; Exh. 1, Pretrial Order, § 4.a. ¶ 2).

3.     Defendant Vonage America, Inc. ("Vonage America") is a wholly owned subsidiary of Vonage Holdings and is a corporation organized and existing under the laws of Delaware, with its principal place of business at 2147 Route 27, Edison, New Jersey 08817. (Doc. No. 2, Sprint's First Amended Complaint, ¶ 5; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, ¶ 5; Exh. 1, Pretrial Order, § 4.a. ¶ 3).

4.     Vonage Holdings Corp. was incorporated in or around May 15, 2000; Vonage America Inc. was incorporated on or around April 29, 2005.  (Exh. 1, Pretrial Order, § 4.a. ¶ 39).

**Jurisdiction**

5.     This Court has personal jurisdiction over the parties.  (Exh. 1, Pretrial Order, § 4.a. ¶ 4).

## Venue

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391. (Exh. 1, Pretrial Order, § 4.a. ¶ 6).

## Sprint's Asserted Patents

7.      Sprint has asserted the following patents against Vonage: United States Patent Nos. 6,304,572; 6,298,064; 6,452,932; 6,463,052; 6,473,429; 6,633,561; and 6,665,294 ("Sprint's Asserted Patents"). (Exh. 1, Pretrial Order, § 4.a. ¶¶ 7-13; 17-27).

## The Present Lawsuit

8.      Sprint, through its counsel, provided notice of its patent rights to Vonage in five separate letters, from July 13, 2004 to July 15, 2005. (Exhs. 2-6, Letters from Sprint's counsel to Vonage's CEO Jeffrey Citron, with proofs of service attached thereto).

9.      Vonage received each of these five letters.  (Exh. 1, Pretrial Order, § 4.a. ¶¶ 29-33; Exhs. 2-6, Letters from Sprint's counsel to Vonage's CEO Jeffrey Citron, with proofs of service attached thereto).

10.      Sprint filed its initial Complaint against Vonage for patent infringement on October 4, 2005 (Doc. No. 1, Sprint's Complaint).

## Vonage's Affirmative Defenses

11.      Vonage's Second Affirmative Defense states that Sprint's Asserted Patents "are invalid under 35 U.S.C. §112 for failing to point out and distinctively claim that part or portion of the subject matter disclosed in the patents' specifications that the named inventor regarded as his 'invention' or improvement over the prior art."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

12.     Vonage's Second Affirmative Defense is a defense for invalidity under the second paragraph of 35 U.S.C. § 112.  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

13.     Vonage's First Supplemental Response to Sprint's Interrogatory No. 5 states:

> Further, Vonage asserts that the apparent scope of the asserted claims as set forth in Mr. Wicker's January 12, 2007 expert report of infringement is sufficiently broad such that . . . one or more of the claims of the asserted patents fail to particularly point out and distinctly claim the subject matter which the applicant regards as the invention pursuant to 35 U.S.C. §112.  Vonage will provide further details of the invalidity of the asserted claims under §§ 101 and 112 in its expert report due on February 23, 2007.

(Exh. 7, Defendants' First Supplemental Response to Plaintiff's Interrogatory No. 5, at 3).  In its Second Supplemental Response, Vonage specifically "incorporates by reference the February 28, 2007 Expert Invalidity Report of Frank R. Koperda and its accompanying exhibits and attachments, which *inter alia* set forth opinions that each asserted claim of the [sic] each of the patents-in-suit is not valid under one or more sections of Title 35 of the U.S. Code."  (Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3).

14.     Vonage's Seventh Affirmative Defense states "[t]he Complaint is barred by 'the doctrine that a patentee may not broaden his claims by describing the product in terms of function.'"  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 7, Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 7).

15.     The Expert Invalidity Report of Frank R. Koperda provides no opinion regarding 35 U.S.C. § 112, paragraph 2 (Vonage's Second Affirmative Defense) and "the doctrine that a patentee may not broaden his claims by describing the product in terms of function" (Vonage's

3

Seventh Affirmative Defense). (*See generally* Exh. 10, Expert Invalidity Report of Frank R. Koperda).

16.    Vonage's Counterclaim II seeks a declaration that Sprint's Asserted Patents "are invalid for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference." (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).

17.    Vonage's affirmative defenses do not set forth 35 U.S.C. § 101 as a basis of invalidity. (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6-7; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6-7).

18.    In its First Supplemental Response to Sprint's Interrogatory No. 5, Vonage stated, in part:

> Further, Vonage asserts that the apparent scope of the asserted claims as set forth in Mr. Wicker's January 12, 2007 expert report of infringement is sufficiently broad such that . . . one or more claims of the asserted patents fail to claim statutory subject matter pursuant to 35 U.S.C. §101. . . .    Vonage will provide further details of the invalidity of the asserted claims under §§ 101 and 112 in its expert report due on February 23, 2007.

(Exh. 7, Defendants' First Supplemental Response to Plaintiff's Interrogatory No. 5, at 3). In its Second Supplemental Response, Vonage specifically "incorporates by reference the February 28, 2007 Expert Invalidity Report of Frank R. Koperda and its accompanying exhibits and attachments, which *inter alia* set forth opinions that each asserted claim of the [sic] each of the patents-in-suit is not valid under one or more sections of Title 35 of the U.S. Code." (Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3).

4

19.    The Expert Invalidity Report of Frank R. Koperda provides no opinion on 35 U.S.C. § 101. (*See generally* Exh. 10, Expert Invalidity Report of Frank R. Koperda).

20.    Vonage's Fifth Affirmative Defense states "[t]he Complaint is barred by the doctrines of laches, estoppel and acquiescence."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

21.    In response to Interrogatory No. 6, which sought the basis for Vonage's contention that Plaintiff's claim is barred by the doctrines of laches, estoppel, and unclean hands, Vonage stated:

> . . . Subject to and without waiving these objections, Vonage Holdings states that Sprint's Asserted Patents issued as early as 2001, and because Sprint was aware of Vonage Holdings and its VoIP activities since that time, its decision to wait until 2005 to initiate the present law suit amounts to inexcusable delay and prejudice to Vonage Holdings.

(Exh. 11, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4-5).   Vonage America provided the same contention. (Exh. 12, Vonage America's Responses and Objections to Sprint's First Set of Interrogatories, at 4-5).

22.    Vonage supplemented its response to Interrogatory No. 6 and provided the following additional details:

> . . . [T]o expand on Vonage's response, with respect to the Affirmative Defense of "laches, estoppel and acquiescence" Vonage states that Sprint knew of Vonage's acitivities [sic] in 2001, at the same time as the Asserted Patents were issuing, yet decided to wait until 2005 to file suit.  Sprint therefore unreasonably and inexcusably delayed in filing suit, and consequently, Sprint is barred from pursuing its claim by the doctrine of laches.

(Exh. 13, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007).

23.    There are seven Asserted Patents altogether in this case.    Two of the seven Asserted Patents were issued in 2001 and the remaining five patents were issued in either 2002 or 2003.  Specifically, the patents issued as follows: The '064 patent issued on October 2, 2001; the '572 patent issued on October 16, 2001; the '932 patent issued on September 17, 2002; the '052 patent issued on October 8, 2002; the '561 patent issued on October 14, 2003; and the '294 patent issued on December 16, 2003.  (Exhs. 14-20, Cover Sheets of Sprint's Asserted Patents).

24.    In response to Sprint's Interrogatory No. 5 regarding Vonage's invalidity contentions, Vonage stated:

> Subject to and without waiving these objections, Vonage Holdings states that it cannot fully respond to this Interrogatory until such time as Vonage Holdings receives Sprint's infringement contentions.  To the extent Vonage Holdings understands the scope of Sprint's Asserted Patents, Vonage Holdings asserts that Sprint's Asserted Patents do not cover VoIP technology.  Thus, **Sprint's overbroad reading of its Asserted Patents to cover VoIP technology constitutes patent misuse**, and further invalidates the Asserted Patents in view of the prior art.

(Exh. 11, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4) (emphasis added).    Vonage America provided the same contention. (Exh. 12, Vonage America's Responses and Objections to Sprint's First Set of Interrogatories, at 4).

25.    By way of further response to Interrogatory No. 6, Vonage stated:

> Finally, with respect to unclean hands, Vonage states that Sprint has impermissibly broadened the "physical or temporal scope" of the patent grant with anticompetitive effect.  That is, Sprint is now asserting a claim scope that is neither supported by the specification of the Asserted Patents nor the language of the claims themselves.  As such, Sprint has impermissibly broadened the scope of its patent grant and, by attempting to enforce these expanded claims against Vonage, Sprint is committing patent misuse and has unclean hands.

(Exh. 13, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007).

6

26.     Sprint is not aware of any product or service made, sold, or offered for sale by Sprint that is within the scope of any claim of Sprint's Asserted Patents.  (Exh. 1, Pretrial Order, § 4.a. ¶ 38).

27.     Vonage's Counterclaim III seeks a declaration that Sprint's Asserted Patents are unenforceable.  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).  Specifically, Counterclaim III states that "[t]he Patents are unenforceable for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).

28.     Vonage has not pled that Sprint committed inequitable conduct.  (*See generally* Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims; Exh. 1, Pretrial Order, §§ 5.b, 7.a).

29.     Vonage sets forth a paragraph entitled "Additional Defenses" in its First Amended Answer and Counterclaims that states:

> As Vonage Holdings' investigation is ongoing and discovery has not yet been taken, Vonage Holdings is without sufficient information regarding the existence or non-existence of other facts or facts that would constitute a defense to Plaintiff's claims of patent infringement or that would establish the invalidity or unenforceability of the claims of the Patents, including additional prior art or related patents.  Vonage Holdings accordingly gives notice that it may assert facts or acts which tend to establish non-infringement, invalidity, unenforceability, or otherwise constitute a defense under Title 35 of the United States Code.

(Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 7; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

7

30.     Vonage first disclosed its prosecution laches defense in the parties' original Preliminary Pretrial Order, which was submitted to the Court on May 7, 2007.  (Exh. 1, Pretrial Order, at 11, 19, and 23).

31.     Vonage did not raise a prosecution laches defense in its Answer, its interrogatory responses, or its expert reports.  Vonage's prior assertions of a laches defense—in its First Amended Answer and interrogatory responses—alleged only the general defense of laches based on an alleged unreasonable and inexcusable delay in filing suit.  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6 (Fifth Affirmative Defense); Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6 (Fifth Affirmative Defense); Exh. 11, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4-5; Exh. 12, Vonage America's Responses and Objections to Sprint's First Set of Interrogatories, at 4-5; Exh. 13, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007).

32.     Sprint produced copies of each of Sprint's Asserted Patents and their prosecution histories on February 10, 2006, as identified in Sprint's Initial Disclosures.  (Exh. 21, Sprint's Initial Disclosures, at 3; Exh. 22, Email dated February 10, 2006 from Sprint's counsel to Vonage's counsel).

33.     Vonage's Fourth Affirmative Defense states that it has "not infringed any valid claims of the Patents."   (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

34.     Vonage's Counterclaim I seeks a declaration of non-infringement of Sprint's Asserted Patents.  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims,

8

at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9). Specifically, Counterclaim I states that "[t]he Patents are not infringed for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference." (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).

35.    Vonage's Second Supplemental Response to Interrogatory No. 7, which seeks the basis for Vonage's non-infringement contentions, incorporates the February 28, 2007 Expert Non-infringement Report of Joel M. Halpern. (Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4). Specifically, Vonage responded:

> Vonage incorporates by reference the February 28, 2007 Expert Non-infringement Report of Joel M. Halpern and its accompanying exhibits and attachments, which inter alia set forth opinions that each asserted claim of the [sic] each of the patents-in-suit is not infringed by Vonage, either literally or under the doctrine of equivalents.

(Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4).

## II.    INTRODUCTION

### A.    Background of Joe Christie's Inventions

In the summer of 1993, Joe Christie invented a pioneering telecommunications system that would dramatically change the industry. At that time, Mr. Christie, an employee at Sprint's Advanced Technology Laboratory, was a unique expert in two very dissimilar disciplines: SS7 signaling and packet networks. SS7 signaling is the language used by

9

conventional telephone networks to set up calls and communicate between telecommunications components in the Public Switched Telephone Network ("PSTN").   In 1993, virtually all voice traffic was carried over the PSTN using switches and other well-established components.  The switches used in the PSTN were highly complex and extremely expensive.  Only a handful of manufacturers made these switches and telephone service providers, like Sprint, were at the mercy of these manufacturers any time they needed to purchase, upgrade or modify the switches in their network.

Packet networks were entirely different.  These networks used "packets" to transport data from point to point.  Packets were digital transport units that included a header and a payload.  The header contained routing information for telling the network where to send the packet.  The payload of a packet held the substantive message or information contained in the packet.  Packet networks, like the Internet, are "asynchronous" in that the transmitting and receiving points acted out of synch with one another, sending and receiving packets within a message without regard to the timing of one another.   By contrast, the PSTN was "synchronous" in that every component along a circuit had to be synchronized in order for communications to successfully cross the network.  Packet networks used relatively "dumb" network components that did little processing and were, as a consequence, fairly inexpensive.  These packet networks were highly efficient but fairly undeveloped in comparison to the common features of the PSTN network that dominated telecommunications.

Joe Christie essentially devised a way to leverage the efficiencies of a packet network to make telephone calls to and from the PSTN.   He invented a series of components and architectures of components that would allow the PSTN to "talk" to packet networks and intelligently set up and route telephones calls across these disparate networks in a seamless and

10

transparent manner.   For example, Mr. Christie's voice-over-packet ("VOP") technology could enable a telephone call that originated from a conventional telephone (a) to be transported through an initial leg of the PSTN, (b) converted from an analog or digital signal into a series of packets at an "interworking" unit, (c) the packets would be sent through a packet network to a point of egress, (d) the packets would then be converted back into an analog or digital signal at another interworking unit, and (e) the call would be sent through a final leg of the PSTN to the receiving party.   These calls were extremely efficient and substantially decreased the need for phone companies to rely on expensive legacy PSTN equipment.

Joe Christie's VOP technology reduced or eliminated the need of service providers to use conventional switches and switch-to-switch call processing.  Mr. Christie instead developed a call processor to orchestrate calls over his new packet system.  The call processor acted like the brains of the network, determining where a call needed to go and then enabling routing it to its destination.  The call processor would communicate with components at the sending and receiving ends of the packet network to establish communications between the two devices without the need for intervening signaling within the packet network.  Once the packets reached the destination device, the packets would be converted back to an analog or digital signal for transmission through the PSTN to a telephone.   This approach was a radical departure from existing technology.

The call processor of Mr. Christie's invention extracted the intelligence of expensive and complicated legacy switches and placed this intelligence on functionally separate computer platforms.  The significance of this aspect of Mr. Christie's invention cannot be overstated.  By extracting call control from the switch manufacturers, Mr. Christie allowed a host of competitors to provide processing equipment and get into the business of telephony.  This

innovation would eventually increase competition, drive down the costs of telephony, and greatly improve efficiency.

**B.    The Impact Of Mr. Christie's Inventions.**

When Mr. Christie presented his innovations to Sprint executives and Sprint technical management, it was met with a combination of disbelief and awe.  Never before had Sprint been presented with such a revolutionary concept.  Mr. Christie's invention had the potential to render obsolete major components within the PSTN and to break the grip switch manufacturers held on service providers.  It could dramatically alter the way telephone calls were made and change the landscape of the relative strength and leverage of the players in the industry.   Mr. Christie's invention represented a sea change in telephony and Sprint immediately realized it.

Within days of Mr. Christie's presentation of his idea to management, Sprint assigned a patent attorney, Mike Setter, to shadow Mr. Christie and to learn as much as possible about the inventive aspects of his new system.  Over the next year, Mr. Setter had multiple daily conversations and meetings with Mr. Christie and drafted a series of patent applications that addressed certain of the fundamental concepts of Mr. Christie's VOP innovations.  Sprint also assigned a team of Sprint's most talented engineers to work for Mr. Christie and to help him develop his concepts into a tangible and manufactureable platform.   Due to the highly sensitive nature of the project, the team was sequestered in a Kansas City facility and instructed to maintain the project in the strictest of confidence.  Few people in Sprint knew of this project.

Before Joe Christie, Sprint had never sought to be manufacturing entity.  Sprint historically was a service provider and looked to vendors to design and manufacture components for use in Sprint's network.  Because of the magnitude of Mr. Christie's invention and the potential for vendors to misappropriate the inventive concepts of Mr. Christie's inventions,

12

Sprint made the bold decision to design, manufacture and implement a platform using Mr. Christie's system. The project was assigned the code name JCS-2000, which stood for "Joe Christie System 2000." At its peak, over 150 people in Sprint were assigned to the JCS-2000 project. Sprint would eventually spend nearly $200 million to commercialize Mr. Christie's system.

In late 1999, within two weeks of full deployment of the JCS-2000 system in the Sprint network, one of Sprint's primary vendors unexpectedly informed Sprint that it would dramatically cut the prices for its switches. It is believed the displacing nature of Mr. Christie's system was a catalyst for this price reduction. Indeed, the reduction was so substantial that Sprint stood to save literally hundreds of millions of dollars over the JCS-2000 deployment and operational costs over the next 5 years. Much to the dismay and disappointment of the Sprint engineers who tirelessly worked to implement Mr. Christie's system, Sprint elected to accept the vendor's offer and terminated the JCS-2000 project.

Joe Christie died unexpectedly in February of 1996. Mr. Christie did not live to see his system grow into a vast patent portfolio or mature into a commercial platform. Though terminated before being fully deployed, Mr. Christie's revolutionary inventions have an enduring legacy. First, because of the JCS-2000 project, Sprint's operational costs were slashed as its vendor dropped its prices to maintain Sprint's business. Second, Mr. Christie's inventions and the related innovations made by people working with Mr. Christie have resulted in a patent portfolio of well over 100 issued United States Patents. This portfolio is one of the largest project portfolios in the United States. Finally, and unfortunately, the innovations of Mr. Christie have been misappropriated and used by companies in the United States without Sprint's permission. It is because of this unauthorized use that this case was filed.

13

### C.    Vonage's Infringement of Sprint's Patents.

In the summer of 2004, Sprint became aware that Vonage was offering residential telephone services that used the Internet to connect calls to and from the PSTN.  After substantial investigation, Sprint sent a letter to Vonage including 43 representative patents from its VOP portfolio and offering Vonage a license under its portfolio.  Vonage did not respond.   Over the next 18 months, Sprint sent a total of five letters to Vonage asking for its position as to whether it infringed these patents and requesting a meeting to negotiate a license under Sprint's VOP patents.  Vonage still did not respond.  Sprint filed this instant case in October of 2005 asserting infringement of seven representative patents from its VOP portfolio.[1]  It has now been learned that Vonage took no steps whatsoever to investigate Sprint's allegations or otherwise avoid infringement of Sprint's VOP patents prior to the initiation of this litigation.

Vonage has denied infringement and asserted a plethora of defenses and counterclaims to Sprint's infringement allegations.  As demonstrated below, these defenses are so lacking in merit or proof that Sprint is entitled to summary judgment on many of Vonage's defenses and counterclaims.  Vonage has thrown roadblock after roadblock into the path of this litigation and has repeatedly attempted to take this litigation off track.  Sprint hopes to remove the underbrush with this motion.  Sprint asks the Court to clear the landscape so the jury will be able to focus on the real issues to be decided in this case.

## III.    LEGAL STANDARDS

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994); *see*

---

[1]    Sprint also sued Voiceglo Holdings and theglobe.com, Inc. for infringement of the same seven patents.  These defendants have since settled this case by taking a license under Sprint's patents.

*also* Fed. R. Civ. P. 56(c). Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

An important function of summary judgment is to eliminate factually unsupported claims. *See Celotex*, 477 U.S. at 322-23. "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir.1995) (*quoting Blue Circle Cement, Inc. v. Bd. of County Comm'rs.*, 27 F.3d 1499, 1503 (10th Cir.1994)).

## IV.   MOTION FOR SUMMARY JUDGMENT REGARDING VONAGE'S AFFIRMATIVE DEFENSES, "ADDITIONAL DEFENSES," AND COUNTERCLAIMS

### A.   Vonage's Second Affirmative Defense is Appropriate for Summary Judgment Because Vonage Has No Admissible Evidence To Prove Sprint's Patents Fail To Comply With 35 U.S.C. § 112, ¶ 2

Vonage's Second Affirmative Defense states that Sprint's Asserted Patents "are invalid under 35 U.S.C. § 112 for failing to point out and distinctively claim that part or portion of the subject matter disclosed in the patents' specifications that the named inventor regarded as his 'invention' or improvement over the prior art." SOF ¶ 11. This defense is a claim that

15

Sprint's Asserted Patents fail to meet the requirements set forth in paragraph 2 of 35 U.S.C. § 112, which are commonly referred to as the "definiteness" and "regards as" requirements.  SOF ¶ 12.  Vonage, however, cannot, as a matter of law, meet its burden of proof for this affirmative defense.

Vonage's only evidence in support of this defense was provided in response to Sprint's interrogatories:

> Further, Vonage asserts that the apparent scope of the asserted claims as set forth in Mr. Wicker's January 12, 2007 expert report of infringement is sufficiently broad such that . . . one or more of the claims of the asserted patents fail to particularly point and distinctly claim the subject matter which the applicant regards as the invention pursuant to 35 U.S.C. §112.  **Vonage will provide further details of the invalidity of the asserted claims under §§ 101 and 112 in its expert report due on February 23, 2007.**

SOF ¶ 13 (emphasis added).  Besides parroting the language of the statute, Vonage's response makes clear that its only contention as to its Second Affirmative Defense would be provided by its expert.  After serving its expert report, Vonage supplemented its interrogatory response to identify and incorporate the expert report of Frank Koperda.  SOF ¶ 13.  Thus, to the extent Vonage has any evidence supporting its Second Affirmative Defense, such evidence must be disclosed in the expert reports of Frank Koperda.

Though Vonage incorporates Mr. Koperda's report as support for its allegations in its Second Affirmative Defense, Mr. Koperda's report provides no factual details supporting Vonage's claim.  Mr. Koperda's report is completely silent as to 35 U.S.C. § 112, ¶ 2, and contains no opinion as to why Vonage contends Sprint's Asserted Patents are invalid under this section.  SOF ¶ 15.  Vonage simply has not adduced any evidence supporting its Second Affirmative Defense—in its expert report or elsewhere—and Sprint is entitled to summary judgment on this claim.  *See Celotex*, 477 U.S. at 322 (holding that Rule 56 requires that

16

summary judgment be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) ("[A summary judgment] movant that will not bear the burden of persuasion at trial need not negate the non-movant's claim.    Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.") (citing *Celotex*); *see also Garrison v. Gambro, Inc*. 428 F.3d 933, 935 (10th Cir. 2005) ("[T]he nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof.  The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine.'").

      **B.**      **Vonage's Seventh Affirmative Defense Is Duplicative Of Its Second Affirmative Defense And Summary Judgment Is Appropriate Because Vonage Has No Evidence Supporting Either Defense**

      Vonage's Seventh Affirmative Defense states "[t]he Complaint is barred by 'the doctrine that a patentee may not broaden his claims by describing the product in terms of function.'"  SOF ¶ 14.  This affirmative defense relies on a series of cases from 1938 that, to the extent the doctrine set forth in those cases are still valid, have universally been recognized as nothing more than a restatement of the "definiteness" requirement, which is now embodied in 35 U.S.C. § 112, ¶ 2.  *See, e.g., Union Carbide & Carbon Corp. v. Stuart Labs.*, 194 F.2d 823 (3d Cir. 1952).  As such, Vonage's Seventh Affirmative Defense is merely a restatement of its Second Affirmative Defense.  For the same reasons set forth in Section IV.A, *supra*, Vonage's Seventh Affirmative should also fail.

Even if the Seventh Affirmative Defense were not identical to the Second Affirmative Defense—which it is—Vonage relies on its experts for the details supporting this contention, and its experts have failed to provide any analysis as to Vonage's contention under this doctrine. SOF ¶ 15. For this additional reason, Vonage has failed to carry its burden of proof with regard to its Seventh Affirmative Defense. Thus, the Court should grant Sprint's motion for summary judgment denying Vonage's Seventh Affirmative Defense.

**C.     Vonage Has No Proof Supporting Its Claims that the Doctrines of Laches, Estoppel, and Acquiescence Bar Sprint's Claims And Summary Judgment Is Appropriate On Its Fifth Affirmative Defense**

Vonage's Fifth Affirmative Defense lists, in true shotgun pleading form, the doctrines of laches, estoppel, and acquiescence. SOF ¶ 20. In response to requests from Sprint to provide further details regarding these defenses, Vonage answered:

> Subject to and without waiving these objections, Vonage Holdings states that Sprint's Asserted Patents issued as early as 2001, and because Sprint was aware of Vonage Holdings and its VoIP activities since that time, **its decision to wait until 2005 to initiate the present law suit amounts to inexcusable delay and prejudice** to Vonage Holdings.

SOF ¶ 21 (emphasis added). Because this response merely recited the language of the legal standard of laches, Sprint requested more detailed information about the bases, if any, of these defenses. In response, Vonage later provided more details as to its contentions:

> . . . [T]o expand on Vonage's response, with respect to the Affirmative Defense of "laches, estoppel and acquiescence" Vonage states that Sprint knew of Vonage's acitivities [sic] in 2001, at the same time as the Asserted Patents were issuing, yet decided to wait until 2005 to file suit. **Sprint therefore unreasonably and inexcusably delayed in filing suit**, and consequently, Sprint is barred from pursuing its claim by the doctrine of laches.

SOF ¶ 22. Vonage's responses make clear that its "laches, estoppel and acquiescence" defenses all rely on the same operative set of facts—the alleged unreasonable and inexcusable delay by

18

Sprint in filing the current lawsuit.  SOF ¶¶ 21-22.  For the reasons set forth below, each of these defenses fails.

> **1.    Vonage Has Failed To Put Forth A Scintilla Of Evidence Supporting Its Laches Defense**

Vonage's responses make clear that its laches defense is based solely on its allegations that Sprint that relates to an "unreasonably and inexcusably" delayed in filing suit. Under this theory of laches, Vonage must prove that: (1) the present suit was delayed for an unreasonable and inexcusable length of time after [Sprint] knew or reasonably should have known of its claims against [Vonage]"; and (2) "the delay resulted in material prejudice or injury" to Vonage.  *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995).  A rebuttable presumption of laches does not arise until there has been **more than a six-year delay** in filing suit; the period of delay, however, does not begin to run until the patent issues. *A.C. Aukerman Co v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1035 (Fed. Cir. 1992). Vonage bears the burden of proof on this affirmative defense at all times.  *Id.* at 1038.  As set forth below, Vonage has failed to carry its burden.

First, Vonage has failed to identify evidence to indicate when Sprint "knew or should have known" of Vonage's infringing activity.  Instead, Vonage makes the unsupported allegation that "Sprint knew of Vonage's activities in 2001, at the same time as the Asserted Patents were issuing."  SOF ¶ 22.[2]  Vonage's failure to cite any proof is fatal to its claim.  *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Thom*, 353 F.3d at 851; *Garrison,* 428 F.3d at 935.

---

[2] Vonage's vague and general allegation in this regard is incorrect with regard to the dates of issuance for the Asserted Patents.  In fact, **five** of the seven Asserted Patents issued in **2002 and 2003**.  SOF ¶ 23.

Second, Sprint did not delay for any length of time (let alone an inexcusable one) before bringing its infringement claims against Vonage. Sprint initiated the current lawsuit on October 4, 2005,[3] which is **less than two years** after the final Asserted Patent issued. SOF ¶¶ 10, 23. Moreover, Sprint initiated the current lawsuit only after sending Vonage five (5) separate letters between July 13, 2004 and July 15, 2005, attempting to amicably resolve this dispute, each of which Vonage received. SOF ¶¶ 8-9. Sprint initiated the current lawsuit only **2 ½ months** after its final letter to Vonage. SOF ¶¶ 8-10. Such a short delay cannot conceivably give rise to laches and no reasonable juror could find otherwise. For example, in *Bio-Technology Gen. Corp. v. Genentech, Inc.*, the Federal Circuit affirmed a finding of no laches where the patentee delayed filing suit for **two** years after the patentee knew of the defendant's infringement. 80 F.3d 1553, 1564 (Fed. Cir. 1996). Similarly, in *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, the Federal Circuit held that "it would have been an abuse of discretion" for the district court to have found laches where the delay was **3 ½ years** after the reissue of the patent." 944 F.2d 870, 878-79 (Fed. Cir. 1991). *See also Freeman v. Gerber Prods. Co.*, 466 F. Supp. 2d 1242, 1247 (D. Kan. 2006) (finding defendant's laches defense "without merit" because it ignored the 6 year presumption); *Voda v. Cordis Corp.*, No. 03-1512, 2007 WL 950365, at *7 (W.D. Okla. Mar. 27, 2007) (rejecting defendant's laches claim when asserted patents both issued less than 6 years before filing suit); *Joy Techs., Inc. v. Flakt, Inc.*, 954 F. Supp. 796, 802 (D. Del. 1996) (denying laches claim in light of one-year delay); *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1408-11 (N.D. Ill. 1996) (denying laches in suit involving multiple patents where delay was at most five years, three years, and four years, respectively).

---

[3] *See* Doc. No. 001.

Third, Vonage's laches defense fails because it has failed to prove any material injury or prejudice—whether evidentiary or economic—that it has suffered as a result of the alleged delay.  *See Aukerman,* 960 F.2d at 1033.  Because Vonage has not produced any evidence to prove the two requisite elements of laches, Vonage cannot carry its burden of proof at trial.  *See id.* at 1038; *see also Gasser Chair*, 60 F.3d at 773.  Moreover, Vonage has not presented any evidence establishing a nexus between Sprint's alleged delay and the alleged prejudice suffered by Vonage.  *See Freeman*, 466 F. Supp. 2d at 1248 ("The Federal Circuit has repeatedly emphasized the importance of the fact that the alleged infringer must have changed its position "because of and as a result of the delay.") (*citing State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1066 (Fed. Cir. 2003)).

When compounded with Sprint's lack of delay and Vonage's complete failure to present any evidence supporting its claim, no reasonable jury could conclude that laches bars Sprint's claims.  Therefore, Sprint's motion for summary judgment as to Vonage's laches allegations must be granted.

### 2.    Vonage Should Be Precluded From Asserting Prosecution Laches Because It Has No Proof Supporting Its Claim And This Defense Was Raised For The First Time After The Close Of Discovery

In its "defenses" section of the Preliminary Pretrial Order, which was submitted to the court over a week after discovery closed, Vonage mentioned for the first time that it is asserting a defense of prosecution laches.  SOF ¶ 30.  Vonage did not raise this defense in its Answer, its interrogatory responses, or its expert reports.  SOF ¶ 31.  As set forth above, Vonage made clear through its interrogatory responses that its "laches" defense solely related to an "unreasonable and inexcusable" delay in filing suit, **not** prosecution laches.  *See* Section IV.C.1., *supra*; SOF ¶ 31.

Prosecution laches is an affirmative defense. *Kothmann Enters., Inc. v. Trinity Indus., Inc.*, 455 F.Supp.2d 608, 614 (S.D. Tex. 2006); *Stambler v. RSA Sec., Inc.*, 243 F. Supp. 2d 74, 75-76 (D. Del. 2003) ("Prosecution laches is an equitable defense to a charge of patent infringement."). A failure to plead an affirmative defense, including prosecution laches, results in waiver of that defense. *Roberts v. Korn*, 420 F. Supp. 2d 1196, 1199 (D. Kan. 2006); Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . laches . . . and any other matter constituting an avoidance or affirmative defense."). Because Vonage has not pled a defense of prosecution laches, this defense has been waived.

If Vonage intended to assert a prosecution laches defense, Vonage should have amended its answer and supplemented its interrogatory responses to identify a prosecution laches defense when it first knew of such a defense—and certainly before discovery closed. Indeed, it is beyond dispute that Vonage knew or should have known of this defense over one year ago when Sprint first produced copies of the prosecution histories for each of Sprint's Asserted Patents. SOF ¶ 32. Despite this knowledge, Vonage did not identify this defense in its First Amended Answer. Nor did it seek leave to amend its answer to add this defense at any time during the litigation, despite the fact that it did unsuccessfully move to add other defenses (*see* Doc No. 148). SOF ¶ 31. Moreover, Vonage did not amend its interrogatory responses to identify a prosecution laches defense. Despite repeated requests by Sprint for more detail concerning its general allegation of "laches," Vonage did not supplement its interrogatory responses at any time during the litigation to identify this defense. SOF ¶ 31. Vonage cannot now raise this defense for the first time in the parties' preliminary pretrial order. Allowing Vonage to interject this defense at this stage of the proceedings would subject Sprint to manifest injustice and significant prejudice. *See, e.g., Hamel v. General Motors Corp.*, No. 86-4388, 1989

22

U.S. Dist. LEXIS 11790, at *7-8 (D. Kan. Sept. 21, 1989) (denying the plaintiff's request to raise a new defect theory, where she waited until the final pretrial conference to raise this theory, over four years after the lawsuit was filed, after the close of discovery, and after her counsel's own affirmative representations as to what her defect theory encompassed); *Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00 C 4298, 2002 U.S. Dist. LEXIS 53 (N.D. Ill. Jan. 4, 2002) (granting motion in limine to bar the defendant from asserting at trial a late-proffered defense of prior invention, where the defendant failed to amend its answer to assert this defense or to amend its discovery responses to disclose it until after the close of discovery).

Even if Vonage were allowed to raise this defense—which it should not be—it has failed to adduce any evidence supporting its claim of prosecution laches. Vonage's only "evidence" is the vague and generalized allegations made in the preliminary pretrial order. SOF ¶ 30. No reasonable juror could find for Vonage on this defense in view of its lack of proof. Accordingly, the Court should grant judgment as a matter of law with respect to this previously unidentified defense.

### 3. Summary Judgment Is Appropriate On Vonage's Estoppel Claim Because It Has No Evidence Supporting This Defense

As set forth above, Vonage generally alleges a defense of "estoppel" in its Fifth Affirmative Defense, which Vonage admits relies on the same operative facts as its "laches" defense—an unreasonable and inexcusable delay in filing suit. To prove estoppel, Vonage must demonstrate three elements: (1) that through misleading conduct, Sprint led Vonage to infer reasonably that Sprint did not intend to enforce its patents against Vonage; (2) Vonage relied on that conduct; and (3) as a result of its reliance, Vonage will suffer material prejudice if the Court allows Sprint to proceed with its infringement claims. *Ecolab, Inc. v. Envirochem, Inc.*, 264

F.3d 1358, 1371 (Fed. Cir. 2001). As with its laches defense, Vonage cannot prove the necessary elements of estoppel.

First, Vonage has failed to identify any evidence that Sprint engaged in any misleading conduct that led Vonage to infer Sprint did not intend to enforce its patents. To the contrary, Sprint sent five (5) separate letters to Vonage from July 13, 2004 to July 15, 2005, evidencing the fact that it believed Sprint's Asserted Patents were relevant to Vonage's VoIP system. SOF ¶¶ 8-9. No reasonable juror could conclude that these letters evidenced an intent by Sprint to not enforce its patents.

Second, Vonage has failed to identify any proof that it actually relied on Sprint's allegedly misleading conduct. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security" in taking some action. *A.C. Aukerman*, 960 F.2d at 1043. Vonage has not, because it cannot, come forward with any such evidence.

Finally, Vonage has utterly ignored the requirement that it must show material prejudice if Sprint were allowed to continue with its infringement claims. Vonage has presented no evidence supporting this element of its claim because it cannot, under any set of facts, make such a showing.

Because Vonage has not adduced any evidence to establish the three elements of estoppel, Vonage cannot carry its burden of proof and Sprint's motion for summary judgment as to Vonage's estoppel allegations should be granted.

### 4. Vonage Has Failed To Put Forth Any Evidence Supporting Its Acquiescence Defense And, Therefore, Summary Judgment Is Proper

Though it rarely is recognized as a viable defense to patent infringement, Vonage pleads that the doctrine of "acquiescence" bars Sprint's claims. In the few cases where

24

acquiescence actually was considered a viable theory for a defense, it has been held that acquiescence "require[s] proof of the same or similar elements required by the estoppel defense." *McKesson Info. Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 203, 211 n.10 (D. Del. 2006); *see also Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.*, 396 F. Supp. 2d 1262, 1268 (D. Kan. 2005) (setting for the standards for acquiescence in a trademark case, which are nearly identical to those set forth above for patent cases: "(1) the senior user actively represented that it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused undue prejudice to defendant."). As set forth above in Section IV.C.3, *supra*, Vonage has not set forth any evidence supporting its estoppel defense. Given that Vonage cannot prove the requisite elements of estoppel, Vonage cannot, as a matter of law, meet its burden of proof regarding acquiescence. Therefore, Sprint's motion for summary judgment as to Vonage's acquiescence allegations should be granted.

**D.    Vonage's Allegations Under the Doctrines of Unclean Hands (Vonage's Sixth Affirmative Defense) and Patent Misuse (Vonage's Eighth Affirmative Defense) Are Legally Defective**

Vonage has advanced allegations of patent misuse and unclean hands in this case based on nothing more than its belief that it will prevail in this litigation. When pressed for the basis of its allegations, Vonage offers only that "[t]o the extent Vonage Holdings understands the scope of Sprint's Asserted Patents, Vonage Holdings asserts that Sprint's Asserted Patents do not cover VoIP technology. Thus, **Sprint's overbroad reading of its Asserted Patents to cover VoIP technology constitutes patent misuse**, and further invalidates Sprint's Asserted Patents in view of the prior art." SOF ¶ 24 (emphasis added). When pressed for further explanation of the basis for its contentions, Vonage stated:

2463417v1

Finally, with respect to unclean hands, Vonage states that Sprint has impermissibly broadened the "physical or temporal scope" of the patent grant with anticompetitive effect.  That is, Sprint is now asserting a claim scope that is neither supported by the specification of the Asserted Patents nor the language of the claims themselves.  As such, **Sprint has impermissibly broadened the scope of its patent grant and, by attempting to enforce these expanded claims against Vonage**, Sprint is committing patent misuse and has unclean hands.

SOF ¶ 25 (emphasis added).

Vonage's accusations are factually and legally baseless.  Vonage's allegations also are legally defective, relying on the old shotgun-style pleading practice that once clogged the courts and have been substantially eliminated by statute.  The enactment of 35 U.S.C. § 271(d) eliminated the kind of meritless "patent misuse" and "unclean hands" allegations Vonage has made here.  Sprint is entitled to summary judgment on these defenses.

1.    **Vonage's Claims Of Patent Misuse And Unclean Hands Are Not Supported By The Law Or The Facts And Summary Judgment Is Therefore Appropriate**

Continuing its bare notice pleading practices, Vonage returns to an outdated practice in patent litigation suits of alleging unclean hands (Sixth Affirmative Defense) and patent misuse (Eighth Affirmative Defense).  Vonage makes these allegations based on nothing more than its belief that it will prevail in this case.  Vonage's lack of evidence is apparent from its responses to Sprint's interrogatories seeking the basis of these claims.  Vonage's response indicates the sole basis for its defense is its claim that "Sprint has impermissibility broadened the scope of its patent grant and, by attempting to enforce these expanded claims against Vonage, Sprint is committing patent misuse and has unclean hands."  SOF ¶¶ 24-25.  Vonage's defense rests exclusively on its belief that Sprint's affirmative claims will be unsuccessful and, therefore, the act of attempting to enforce its rights amounts to misuse or unclean hands.

2.    **The Patent Misuse Reform Act of 1988 Eliminated Vonage's Patent Misuse and Unclean Hands Defenses**

26

Congress passed the Patent Misuse Reform Act of 1988, which modified 35

U.S.C. § 271(d) as follows:

> No patent owner otherwise entitled to relief for infringement or
> contributory infringement of a patent shall be denied relief or
> deemed guilty of misuse or illegal extension of the patent right by
> reason of his having done one or more of the following: . . . (3)
> sought to enforce his patent rights against infringement or
> contributory infringement[.]

35 U.S.C. § 271(d). Under this statute, the act of enforcing patent rights, even if not well-

founded or if unsuccessful, **cannot** be the basis of an allegation of patent misuse or unclean

hands. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372-73 (Fed. Cir. 1998)

("[W]rongful enforcement of patents . . . is activity protected under *Noerr* and *California Motor*,

and is not subject to collateral attack as a new ground of misuse."). As such, Vonage's

allegations of patent misuse fail as a matter of law.

Additionally, Vonage has also failed to provide viable alternative theories to

support its patent misuse allegations. Vonage does not state with particularity, as it must, some

anticompetitive expansion of the patent grant sufficient to effectuate an anticompetitive effect

beyond the act of enforcing patent rights. *Advanced Cardiovascular Sys., Inc. v. Scimed Sys.,*

*Inc.,* No. C-96-0950, 1996 WL 467277, at *4 (N.D. Cal. Jul. 24, 1996) (striking affirmative

defense of patent misuse with prejudice); *Raines v. Switch Mfg.,* 1997 WL 578547, *4 (N.D. Cal.

Jul. 28, 1997) (dismissing patent misuse counterclaim). Vonage has not, as the legal standards

for these claims require, made any allegations that Sprint has somehow engaged in unlawful

tying or other anticompetitive acts that might support a patent misuse or unclean hands claim.

*See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d at 1372-73; *Virginia Panel Corp. v. MAC Panel*

*Co.*, 133 F.3d 860, 868-69 (Fed. Cir. 1998).

27

Vonage does not even make the necessary allegations that would support its affirmative defenses.   To be sure, Sprint's allegations of infringement are well-founded. However, even if Vonage were to prevail in this case, its allegations of patent misuse are legally deficient.  Thus, this Court should enter summary judgment in Sprint's favor on Vonage's patent misuse defense.

Vonage cites the same basis for its unclean hands defense and its misuse defense. For the same reasons that Vonage's misuses defense fails, Vonage's unclean hands defense must also fail.  *See C.R. Bard*, 157 F.3d at 1369 ("The defense of patent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or coerce an unfair commercial advantage.")   As a result, this Court should enter summary judgment in Sprint's favor on Vonage's unclean hands defense as well.

**E.      Vonage's Allegations Under 35 U.S.C. § 287 (Vonage's Ninth Affirmative Defense) Are Legally Defective**

Vonage's Ninth Affirmative Defense states that "[t]he Complaint and demand for relief are barred, in whole or in part, by 35 U.S.C. § 287."  However, the marking and notice requirements of 35 U.S.C. § 287 do not apply if the patentee does not make, offer to sell or sell the patented article.  *See* 35 U.S.C. § 287; *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002) (confirming that "[t]he recovery of damages is not limited where there is no failure to mark, i.e., where the proper patent notice appears on products or where there are no products to mark").

Sprint has informed Vonage that it is not aware of any product or service made, sold or offered for sale by Sprint that is within the scope of any claim of Sprint's Asserted Patents.   SOF ¶ 26.  Because Sprint does not fall under the mandates of 35 U.S.C. § 287,

Vonage's Ninth Affirmative Defense fails and its motion for summary judgment as to this defense must be granted.

     **F.**     **Summary Judgment Is Appropriate On Vonage's 35 U.S.C. § 101 "Defense" Because Vonage Has No Evidence Supporting Its Claims**

     In its Counterclaims, Vonage has requested a declaratory judgment that Sprint's Asserted Patents "are invalid for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference." SOF ¶ 16. Though Vonage identifies bases for the alleged invalidity of Sprint's Asserted Patents in its affirmative defenses, invalidity under 35 U.S.C. § 101 is <u>not</u> one of them. SOF ¶ 17. Despite the fact that Vonage has not pled any defense under § 101, its response to Interrogatory No. 5 identifies this section as a basis for alleged invalidity of Sprint's Asserted Patents. SOF ¶ 18. Specifically, Vonage's response states:

> Further, Vonage asserts that the apparent scope of the asserted claims as set forth in Mr. Wicker's January 12, 2007 expert report of infringement is sufficiently broad such that . . . **one or more claims of the asserted patents fail to claim statutory subject matter pursuant to 35 U.S.C. §101**. . . . Vonage will provide further details of the invalidity of the asserted claims under §§101 and 112 in its expert report due on February 23, 2007.

SOF ¶ 18 (emphasis added). Aside from providing no factual details concerning its alleged § 101 defense, Vonage makes clear that any contentions it has regarding alleged invalidity of Sprint's Asserted Patents under § 101 would be provided by its experts. *See id.*

     As with a number of its other defenses, Vonage's experts are completely silent as to how § 101 allegedly invalidates Sprint's Asserted Patents. SOF ¶ 19. Indeed, Mr. Koperda, Vonage's invalidity expert, does not even mention § 101 in his report and has no opinion as to why Vonage believes Sprint's Asserted Patents are invalid under § 101. SOF ¶ 19. Vonage has not provided any evidence to support its claim that Sprint's Asserted Patents are invalid under

29

§ 101 and, accordingly, Sprint is entitled to summary judgment on this claim. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Thom*, 353 F.3d at 851; *Garrison,* 428 F.3d at 935.

### G.    Vonage's "Unenforceability" Claims Fail Because Vonage Has Not Pled Any Facts Supporting Such A  Claim

Vonage's Counterclaim III seeks a declaration that Sprint's Asserted Patents are "unenforceable."   SOF ¶ 27.   Specifically, Counterclaim III states that "[t]he Patents are unenforceable for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference."  SOF ¶ 27.  For the reasons set forth below, this claim must fail as a matter of law.

A claim for patent unenforceability can derive from either inequitable conduct or patent misuse. *See e.g., Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,* 345 F.3d 1318 (Fed. Cir. 2003) (involving claim of unenforceability based on alleged inequitable conduct before the United States Patent and Trademark Office); *Aptix Corp. v. Quickturn Design Sys., Inc.,* 269 F.3d 1369 (Fed. Cir. 2001); *Allied Colloids Inc. v. Am. Cyanamid Co.,* 64 F.3d 1570 (Fed. Cir. 1995); *Competitive Techs., Inc. v. Fujitsu Ltd*., 374 F.3d 1098 (Fed. Cir. 2004) (involving claim of unenforceability based on patent misuse); *In re Recombinant DNA Tech. Patent & Contract Litig.*, 850 F.Supp. 769 (S.D. Ind. 1994) (same).  Because Vonage has not pled that Sprint committed inequitable conduct,[4] its "unenforceability" claim must be based on its "misuse" defense (Vonage's Eighth Affirmative Defense).

As set forth in Section IV.D, *supra*, Vonage's allegations of patent misuse are legally deficient and summary judgment should be granted to Sprint.  Because Vonage's misuse defense fails, and because Vonage has failed to plead inequitable conduct, it has no basis on

---

[4] SOF ¶ 28.

which to claim "unenforceability."   Sprint is entitled to summary judgment as to Vonage's

Counterclaim III.

>    **H.    Vonage Should Be Precluded From Asserting Any "Additional Defenses"**

In its First Amended Answer, Vonage makes the mere notice pleading allegation

that it may raise "Additional Defenses."  Specifically, Vonage states:

> As Vonage Holdings' investigation is ongoing and discovery has
> not yet been taken, Vonage Holdings is without sufficient
> information regarding the existence or non-existence of other facts
> or facts that would constitute a defense to Plaintiff's claims of
> patent infringement or that would establish the invalidity or
> unenforceability of the claims of the Patents, including additional
> prior art or related patents.  **Vonage Holdings accordingly gives
> notice that it may assert facts or acts which tend to establish
> non-infringement, invalidity, unenforceability, or otherwise
> constitute a defense under Title 35 of the United States Code.**

SOF ¶ 29 (emphasis added).

Discovery is now closed.   Vonage has not come forward with any evidence

supporting its "additional defenses," nor has it identified any such "additional defenses."[5]

Because Vonage has failed to come forward with any such "additional defenses," Sprint requests

that summary judgment be granted in its favor precluding Vonage from raising any "additional

defenses" beyond those in its pleadings and its expert reports.

>    **I.    Vonage's Affirmative Defense and Counterclaim for Non-Infringement Must
>    Fail Because Its Expert Is Not Qualified To Provide Testimony On The
>    Necessary Subjects**

Vonage's Fourth Affirmative Defense states that it has "not infringed any valid

claims of the Patents."  SOF ¶ 33.  Likewise, Vonage's Counterclaim I seeks a declaration of

non-infringement of Sprint's Asserted Patents.  SOF ¶ 34.  For the reasons set forth below,

---

[5] Indeed, the only "additional defenses" Vonage had identified were set forth in its Motion
Seeking Leave to Amend Their Respective Answers, Affirmative Defenses and
Counterclaims (Doc. No. 148), which the Court denied as untimely and improper.

Vonage's non-infringement defense and counterclaim fail because Vonage has no evidence supporting its claims.

Vonage once again advances bare notice pleading and both its Counterclaim and Affirmative Defense for noninfringement provide no legal or factual bases for its claims. In fact, Vonage refused to provide any details surrounding its claim of noninfringement for over 12 months. Vonage's continued refusal to provide any factual details regarding its noninfringement contentions ultimately forced Sprint to file a Motion to Compel,[6] which was granted. *See* Doc. No. 154. During a hearing with the Court on Sprint's Motion, Vonage affirmatively represented that its only evidence of noninfringement was set forth in its expert report. *See id.* Vonage confirmed this statement in a supplemental response to Sprint's interrogatory:

> Vonage **incorporates by reference the February 28, 2007 Expert Non-infringement Report of Joel M. Halpern** and its accompanying exhibits and attachments, which *inter alia* set forth opinions that each asserted claim of the each of the patents-in-suit is not infringed by Vonage, either literally or under the doctrine of equivalents.

SOF ¶ 35 (emphasis added). Vonage's representations to the Court as well as its supplemental interrogatory response make clear that any evidence it has regarding its noninfringement contention is contained within the expert report of Joel M. Halpern. Vonage's expert, however, admittedly lacks the educational requirements and industry experience necessary to testify to the issues of claim construction and noninfringement.

Concurrently with this motion for summary judgment, Sprint has filed a *Daubert* motion to exclude Mr. Halpern's expert testimony because Mr. Halpern, by his own admissions, does not have the requisite educational background or industry experience necessary for

---

[6] *See* Doc. No. 110.

analyzing the Asserted Patents and the Vonage VoIP System.[7]  *See* Sprint's Contemporaneously Filed Motion to Exclude the Opinions of Joel M. Halpern.  Because Vonage solely has relied on Mr. Halpern's report as the basis for its noninfringement contentions, if Mr. Halpern is excluded from providing testimony—as he should be—then Vonage has no evidence supporting its Fourth Affirmative Defense and Counterclaim I.  Without Mr. Halpern's opinion and report, Vonage fails to meet its evidentiary burden regarding its Fourth Affirmative Defense and Counterclaim I. Accordingly, should Sprint's *Daubert* motion be granted, Sprint is entitled to summary judgment in its favor that Vonage's Fourth Affirmative Defense and Counterclaim I be stricken and that the Court find that Vonage has no defense to Sprint's claims of infringement.  *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-23; *Thom*, 353 F.3d at 851; *Garrison,* 428 F.3d at 935.

## V.     CONCLUSION

For the reasons set forth above, the Court should grant summary judgment in favor of Sprint with respect to each of the Affirmative Defenses and Counterclaims for which Vonage has failed to put forward even a scintilla of evidence.

Respectfully submitted,

---

[7] Mr. Halpern opines that to understand the Asserted Patents and apply them to the Vonage VoIP system, an individual must have a bachelors degree in electrical engineering, computer engineering or computer science, and at least three years experience in the telecommunications industry.  As demonstrated in Sprint's *Daubert* Motion, Mr. Halpern does not meet his own definition and, as such, is not qualified to testify on the Asserted Patents, the Vonage VoIP System, or the issue of noninfringement.

2463417v1

Dated: May 15, 2007

      /s/ Adam P. Seitz_____

B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT COMMUNICATIONS COMPANY
L.P.

34

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2007, a true and accurate copy of

the above and foregoing **SPRINT'S BRIEF IN SUPPORT OF ITS PARTIAL MOTION**

**FOR SUMMARY JUDGMENT** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608

Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.


 _/s/ _Adam P. Seitz_____
Attorneys for Sprint Communications Company L.P.