## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.  05-2433-JWL |
| v. | ) |
| | ) |
| VONAGE HOLDINGS CORP. and | ) |
| VONAGE AMERICA, INC., | ) |
| Defendants. | ) |
| | ) |

### MEMORANDUM IN SUPPORT OF VONAGE HOLDINGS CORP. AND VONAGE AMERICA, INC.'S OBJECTIONS TO AND MOTION FOR REVIEW OF ORDERS OF MAY 14, 2007 AND MAY 16, 2007 PURSUANT TO FED.R. CIV. P. 72

Defendants (collectively, "Vonage") submit this memorandum of law in support of their Objections to, and Motion for Review of, the Court's Orders of May 14 and 16, 2007 denying Defendants' Motion for Leave to Amend their Answer (Doc. # 192) and striking certain of Defendants' factual and legal contentions from the proposed Pretrial Order (Doc. # 202) (collectively, the "Orders").

The practical effect of the Orders is to allow Sprint to game the system in a way the Federal Rules of Civil Procedure (the "Rules") do not allow, and to condone the resulting prejudice to Vonage.  Sprint should not be allowed to thwart Vonage's discovery efforts on the one hand by producing incomplete sets of critical Sprint documents months after Vonage requested them and at the close of discovery, and then, on the other hand, argue that Vonage has unduly delayed in seeking to amend its Answers and Affirmative Defenses based on, and support its previously-pled defenses with, these materials.  Simply put, Vonage's delay cannot be interpreted as "undue" because Sprint created the delay with its latent and incomplete production

of critical documents.  For this reason, Vonage has not delayed in its motion, much less unduly

so, and has demonstrated such "good cause" to add the affirmative defenses which arise from the

newly discovered evidence in this matter, and to offer these materials in support of its

previously-pled defenses, under the liberal standards of Rule 15.

Most pertinent to this motion are the following facts:

- On or about January 24, 2007, weeks prior to the close of discovery, Sprint produced, in incomplete form, a series of agreements between Sprint and Cisco Systems, Inc. ("Cisco"), from whom Vonage purchased components used in the internet telephony system that Sprint alleges infringes its Asserted Patents, including an exclusive "Sprint/Cisco License Agreement" dated December 1998 (the "License Agreement"), attached as Exhibit "A."

- The License Agreement reflected an exclusive, worldwide, irrevocable and sublicenseable license from Sprint to Cisco for patents relating to the technology at issue in this case.  (See Ex. A at ¶ 2; see also Deposition of Harley Ball, Sprint's in-house counsel, excerpts of which are attached as Exhibit "B," at 174:11-22).  Sprint produced the agreement buried among 55,000 pages it produced to Vonage in a single week, and without the exhibit identifying precisely which Sprint patents were subject to the license.  See Ex. A, at "Exhibit A" thereto.  Vonage immediately issued both a letter and formal discovery requests seeking this information.  See Vonage's February 15, 2007 Letter to Sprint, attached as Exhibit "C," and Vonage Holdings Corp.'s Fourth Set of Requests for Production of Documents and Second Set of Interrogatories, issued February 23, 2007, attached as Exhibits "D" and "E," respectively.

- The License Agreement also contained a covenant by Sprint not to sue any Cisco customer for infringement of any Sprint patent on inventions created prior to 1998.  Ex. A at ¶3.4.  At his deposition on March 29, 2007, Sprint's in-house counsel and corporate designee to testify on Sprint's licensing practices pursuant to Rule 30(b)(6), testified this covenant covered "any Sprint patent," including the Asserted Patents.  (Ex. B at 220:2-5).

- The covenant provided a period of immunity to expire one year after the end of "the Alliance Agreement" between Sprint and Cisco.  Ex. A at ¶3.4.  In its January 2007 production, Sprint produced a 1998 "Alliance Agreement" executed in December 1998.  While Vonage had requested all documents relating to the license and its related documentation, both prior and subsequent to Sprint's production, Sprint produced no documentation from which Vonage could determine whether the Alliance Agreement, and therefore the covenant that depended on its term, was still in force.  Vonage immediately issued both a letter and formal discovery requests seeking this information.  See Exs. C-E.

- In discovery responses dated March 29, 2007, one day before the March 30, 3007 discovery deadline, Sprint admitted the covenant's immunity period extended into the period Sprint alleges Vonage infringed the Asserted Patents. See Ex. E, at p. 4, Response No. 17 (stating covenant expired on December 17, 2002).

- Vonage filed its Motion to Amend its Answer (Doc. #148) (Vonage's "Motion") on March 30, 2007.

In its Motion, Vonage sought to amend its Answer to include the affirmative defenses of "license, express or implied, or other contract" based on facts and documents relating to agreements between Sprint and Cisco initially withheld by Sprint and produced only at the close of discovery, and only in part. In the parties' proposed pretrial Order, Vonage also asserted these materials as support for those defenses it had alleged in its original pleading, including its affirmative defense of estoppel.

By virtue of the Orders, the Court has precluded Vonage from asserting claims based on, and offering into evidence at trial, Sprint's own documentation, of which Sprint has been fully aware since their creation, which Sprint did not disclose or produce until well after the deadline for amending pleadings and at the close of discovery (and, in some instances, continues to withhold). As such, contrary to the Orders, Vonage, and not Sprint, has been prejudiced in this matter, and Vonage should be given leave to amend its Answers under the liberal standards of Federal Rule 15, and leave to offer these materials in support of its amended claims and original defenses in the Pretrial Order.

## I.    BACKGROUND

Sprint initiated this action against Vonage or about October 4, 2005, alleging, among other things, that Vonage's internet telephony system infringed several of Sprint's patents (the "Asserted Patents"). Vonage filed its Answers and Affirmative Defenses to Sprint's First Amended Complaint, and Counterclaims against Sprint, on or about November 3, 2005.

In its initial requests for documents, Vonage requested, among other things,

21.    All correspondence to or from third parties related to any potential agreement relating to the "Asserted Patents," *including but not limited to licenses*, sale, purchase or assignments.

22.    All correspondence to or from third parties related to any potential agreement relating to any products and/or services marketed by Sprint, which utilize the inventions disclosed in the "Asserted Patents," *including but not limited to licenses*, sale, purchase or assignments.

23.    All documents related to the development of sales and/or *licenses of the "Asserted Patents"* and/or any products and/or services marked by Sprint which utilize and/or derive therefrom, including, but not limited to, business plans, identification of prospective clients, and proposals to prospective customers.

26.    *All communications relating to patent rights by parties other than the Plaintiffs or the Defendants . . . .*

See, e.g., Vonage Holding Corp.'s First Set of requests for Production of Documents and Things, and Sprint's responses thereto, a true and correct copy of which is attached hereto as Exhibit "F" (emphasis added), at pp. 13-16.  In response to the clear language of these requests relating to licenses, Sprint produced no license documents, and further, asserted that no such documents were in its possession.  Id.

Despite Sprint's representations, Vonage discovered references to an extensive set of agreements between Sprint and Cisco, including an apparently fully executed license relating to Sprint's JCS2000 system and the work of Joseph Michael Christie, the purported sole inventor of the Asserted Patents, in its review of documents produced by Sprint.  In light of its discoveries, Vonage immediately and specifically sought confirmation and production of these documents (the "License Documents").[1]  Sprint once again failed to produce the License Documents

---

[1]    See, e.g., September 20, 2006 Ltr. from Golob to Seitz, a true and correct copy of which is attached hereto as Exhibit "G," at ¶viii (requesting Sprint produce "contracts with and licenses from third parties," citing list of agreements identified in documents Bates numbered SPRe-002-01-00188 and -00189) and ¶xi (requesting Sprint produce "correspondence to or from any third-party contractor, vendor or consultant relating to rights under one or more of the patents-in-suit," citing such rights and communications identified in SPRe-002-01-00193).

prompting Vonage to issue additional discovery requests in January of 2007 seeking, among other things, the License Documents.[2]

Finally, on or about January 25, 2007, and buried in a production of over 55,000 pages, Sprint produced what appeared to be fully executed agreements between Sprint and Cisco, including a License Agreement by which Sprint agreed to license to Cisco numerous patents relating to the JCS2000 system, and other related agreements reflecting an extensive alliance between Sprint and Cisco for the joint development and ownership of products and intellectual property relating to the Asserted Patents, a Statement of Work detailing extensive obligations between Sprint and Cisco regarding this joint effort, and a Master Purchase Agreement providing the terms of any sales of products between Cisco and Sprint.

On the face of the License Documents, however, it was plain that Sprint's latent production of these documents was substantially incomplete.  As discussed above, and by way of example, Sprint produced the License Agreement in a form that did not contain the addendum listing which patents had been licensed, or were intended to be the subject of the Agreement. See Ex. A at Exhibit A thereto.  Sprint produced no documents from which Vonage could determine whether the covenant not to sue was still in force.  Id. at ¶3.4.  All of the agreements referenced other related documents which Sprint still has not produced to date.  By its letter of February 15, 2007, Vonage itemized this missing information.  Ex. C.  When Sprint responded with the somewhat incredulous contention that the items detailed in Vonage's letter constituted

---

[2]     See, e.g., Vonage Holding Corp.'s Second Set of Requests for Production of Documents and Things, and Sprint's responses thereto, true and correct copies of which are attached hereto as Exhibit "H," at Requests Nos. 39-40, seeking, among other things, "[a]ll Sprint license agreements covering the Asserted Patents or other patents related to or regarding VoIP technology," and "documents discussing any Sprint offers, or requests, to license patents covering or relating to [voice over internet] technology."

"new requests,"[3] Vonage immediately issued formal discovery requests to ensure a full response from Sprint prior to the close of discovery.  See Exs. D-E.

As late as March 28, 2007, in its responses to Vonage's Fourth Set of Requests for Production of Documents and Things, Sprint indicated that it *still had documents it had yet to produce* in response to Vonage's repeated and diligent requests.[4]  As of March 28, 2007, two days before discovery was to close, Sprint had produced no documents from which Vonage could determine whether the covenant not to sue in the 1998 License Agreement, whose immunity period was tied to the life of the Alliance Agreement, was still in force.  Public records suggested that similar alliance agreements were reached or renewed between Sprint and Cisco in 2001 and again in 2005.  Despite Vonage's repeated requests for these materials, Sprint produced no testimony or materials relating to these latter agreements until after the close of discovery,[5] and this production is still substantially incomplete.

---

[3]    See February 21, 2007 Ltr. from Seitz to Golob, attached as Exhibit "I."

[4]    See Vonage Holding Corp.'s Fourth Set of Requests for Production of Documents and Things, and Sprint's responses thereto, true and correct copies of which are attached hereto as Exhibit "D," at Request No. 1 ("Sprint further states that it has produced and/or will produce relevant, nonprivileged, responsive documents in its possession, custody or control that can be located following a diligent and reasonable search.").

[5]    Despite being designated as Sprint's Rule 30(b)(6) witness on Sprint's licensing history and practices, see Vonage's Third Deposition Notice pursuant to Rule 30(b)(6), issued November 22, 2006, attached as Exhibit "J," at Topic Nos. 17-18, 27, 30-32, see also Ex. B. at 14:21-16:19 (confirming Mr. Ball as Sprint's corporate designee on these topics), Mr. Ball provided no substantive information on these later agreements.  See Ex. B at 103:2-105:22 (acknowledging other alliance agreements between Sprint and Cisco but not knowing where they are; testifying he did not look for any alliance agreement other than that identified by Vonage by Bates number in its Notice); see also id. at 135:2-136:18 (identifying two other alliance agreements between Sprint and Cisco; unaware of their terms, purpose, subject matter, or whereabouts); and 153:8-18 (unaware of who at Sprint would know most about 1998 Alliance Agreement).  Nor could Mr. Ball provide any information as to whether these alliances constituted or were related to the specific agreements identified in Vonage's Notice.  Id. at 142:3-144:4 (unaware of whether 2001 and 2005 alliances were separate alliances or renewals of
(Continued…)

Given Sprint's recalcitrance and delay in producing the License Documents, Vonage also sought documents from Cisco directly, and, as did Sprint, timely served a subpoena *duces tecum* to that end. See Vonage and Sprint subpoenas of Cisco, issued to Cisco on March 16 and March 30, 2007, attached as Exs. "L" and "M," respectively.

In interrogatory responses dated March 29, 2007, one day before the March 30, 3007 discovery deadline, Sprint conceded the covenant not to sue Cisco customers for infringement of the Asserted Patents extended well into the period Sprint alleges Vonage infringed the Asserted Patents. See Ex. E at p. 4 (stating covenant expired on December 17, 2002).

Because the License Documents Sprint delayed in producing, and others which Sprint has yet to produce, negate Sprint's patent claims in whole or in part, and may give rise to yet further defenses and claims, on or about March 30, 2007, Vonage requested leave of the Court to amend its affirmative defenses to include defenses specifically relating to, and based upon, the License Documents, including defenses of express or implied license. During the pretrial conference on May 9, 2007, Magistrate Judge Waxse indicated he would deny Vonage's motion, and did so by his Order of May 14, 2007.

During the pretrial conference, Judge Waxse also directed the parties to remove Vonage's references to its (until then) pending motion, and the license defenses it sought leave to assert therein, from the draft pretrial order. In the revised order submitted on May 14, 2007, Vonage complied with the Court's directive. Vonage did not understand Judge Waxse's directive to have

---

(Continued…)

1998 Alliance Agreement). Sprint produced Alliance Agreements dated 2001 and 2005, days after attaching them to its opposition to Vonage's Motion. See Doc. # 167, at Exs. 6 & 5 thereto, respectively; see also Email from Sprint on April 20, 2007 producing 2001 and 2005 Alliance Agreements, attached as Exhibit "K".

excluded the License Documents from evidence, and as such, in the revised draft Pretrial Order

Vonage referred to the License Documents as factual and legal support for those defenses

asserted in its First Amended Answer.  By order of May 16, Judge Waxse struck these factual

and legal arguments from Vonage's contentions, and the Court entered the Pretrial Order, in

stricken form, on May 21, 2007.  (Doc. #202).  A document reflecting those contentions stricken

by the Court is attached as Ex. "N."

## II.    QUESTIONS PRESENTED

Whether Vonage may amend its answer, affirmative defenses and counterclaim to include

additional affirmative defenses based on newly discovered evidence which Sprint withheld from

production until the close of discovery.

Whether Vonage properly asserted facts and arguments raised by the License Documents

as bases for the defenses of estoppel, laches and acquiescence it asserted in its original pleadings.

## III.    ARGUMENT

### A.    Standard of Review

When a Magistrate Judge denies a motion to amend and does not permit a party to assert

a claim or defense in the case, this Court and others "have found such a ruling to be dispositive

and concluded that the district court should review it *de novo*."  Jackson v. Kansas County Ass'n

Multilinbe Pool, No. 03-4181, 2005 U.S. Dist. LEXIS 31594, at * 2 (D. Kan. Dec. 6, 2005)

(citing, *inter alia*, Pedro v. Armour Swift-Eckrich, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000));

see also Cuenca v. Univ. of Kan., 205 F. Supp. 2d 1226, 1229 (D. Kan. 2002) (Crow, S.J.)

("Because that part of the order here denying leave to amend has the identical effect as an order

dismissing potential claims... from the suit, the court shall make a de novo determination upon

the record.").  See also Fed. R. Civ. P. 72(b) (District Judge shall make a *de novo* determination

upon the record for dispositive matters).  Thus, where as here, the denial of leave to amend "has

the same effect as an order dismissing a claim" such a decision should be treated as a dispositive

ruling subject to *de novo* review.  Jackson, 2005 U.S. Dist. LEXIS 31594, at * 2.  By virtue of

the Orders, the Court has denied Vonage the right to assert defenses it is entitled to, and factual

and legal bases for those defenses alleged before discovery began, and therefore has the same

effect as a dispositive ruling.[6]

> **B.     The Court Erred in Denying Vonage's Motion for Leave to Amend its Defenses.**

> **1.     Leave To Amend Is To Be Freely Given.**

"Fed. R. Civ. P. 15(a) provides that leave to amend shall be freely given when justice so

requires."  Beckett v. United States, 217 F.R.D. 541, 543 (D. Kan. 2003); see also A/R Roofing,

L.L.C. v. Certainteed Corp., No. 05-1158, 2006 U.S. Dist. LEXIS 87071, at *10 (D. Kan. Nov.

30, 2006).

As the Tenth Circuit has recently articulated, "the grant of leave to amend the pleadings

pursuant to Rule 15(a) is within the discretion of the trial court, and we will not reverse the

court's decision absent an abuse of discretion.  But the Rule itself states that 'leave shall be

freely given when justice so requires.'"  Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th

Cir. 2006) (reversing district court's refusal to allow amendment of pleading to conform to the

evidence after trial after submission of pretrial order based on newly revealed evidence) (internal

punctuation, citations omitted).

---

[6]     To the extent the Court determines the Orders are non-dispositive, the Court may modify
or set aside any portion of the orders which it finds to be "clearly erroneous or contrary to law,"
Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); that is, "unless the entire evidence leaves it
'with the definite and firm conviction that a mistake has been committed.'"  Moses v. Halstead,
Civ. No. 05-2488, 2007 U.S. Dist. LEXIS 23889, *1-2 (D. Kan. March 29, 2007) (overruling
order striking portions of pretrial order as abuse of discretion) (citing cases).  Vonage
respectfully submits that under either standard of review, the Orders must be overruled.

"The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" Id. (citation omitted).  Leave to amend should be denied only in cases where there is "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Beach v. Mutual of Omaha Insurance Co., No. 02-2124, 2003 U.S. Dist. LEXIS 715, at *4-5 (D. Kan. Jan. 8, 2003).

Within this liberal framework, this Court has routinely allowed amendments to a pleading to add affirmative defenses, even where the deadline for amending the pleadings, and for the completion of discovery, has passed.  For example, in A/R Roofing, this Court affirmed the Magistrate Judge's decision permitting the defendant to amend its answer to include certain affirmative defenses nine months after the deadline for amended the pleadings had passed and *two months* after discovery had closed.  2006 U.S. Dist. LEXIS 87071, at * 5-6.  Despite the defendant's awareness of facts that could have supported its defenses prior to the deadline, the Court found that amendment was justified where new evidence uncovered during discovery, and after the deadline for amendments had passed, "significantly bolstered the basis for such a defense." Id. at * 11.  Similarly, in Walls v. International Paper Co., No. 99-2048, 2000 U.S. Dist. LEXIS 4525 (D. Kan. March 13, 2000), the Court allowed a defendant to amend its answer to include certain affirmative defenses six months after the deadline for amending the answer had passed and almost two months after the newly discovered evidence had been revealed.  In allowing the amendment, the Court in Walls noted that the defendant came into possession of evidence that supported its proposed affirmative defenses only during its deposition of the Plaintiff, and that as such, the motion to amend, filed almost two months later, was timely.

As the defendants in <u>A/R Roofing</u> and <u>Walls</u>, Vonage did not come into possession of the evidence to support the proposed affirmative defenses until after the deadline for amending the pleadings had passed.  Further, Vonage is still not in possession of all of the evidence supporting its proposed affirmative defenses as Sprint has failed to produce full copies of the License Documents despite Vonage's unequivocal requests to do so.  In fact, because of Sprint's delay in production, Vonage had to scramble at the end of discovery to serve a third party subpoena on Cisco seeking to flush out the very information that has been in Sprint's possession all along and, more important, the Vonage has diligently and persistently requested.  As such, Vonage should be permitted, under the liberal standards of Rule 15, and the Court's directive that cases should be decided on their merits rather than on technicalities (<u>see, e.g.</u>, <u>Minter</u>, 451 F.3d at 1204), to amend its answer to include the proposed affirmative defenses which are based entirely on newly discovered evidence that Sprint did not produce until the close of discovery.

> **2.    Vonage Did Not Delay its Request for Leave to Amend, Much Less "Unduly" So.**

"Undue delay" is one of the justifications for denying a motion to amend.  <u>Minter</u>, 451 F.3d at 1205.  "Emphasis is on the adjective: 'Lateness does not of itself justify the denial of the amendment.'"  <u>Id</u>.

Vonage did not delay in asserting its license-related defenses.  Vonage diligently pursued its discovery requests for License-related material even when Sprint insisted it had no such documents.  <u>See</u> Ex. G at pp. 13-16.  Through letters (<u>see, e.g.</u>, Ex. C), follow-up discovery requests (<u>see, e.g.</u>, Exs. D-F, I), depositions (<u>see, e.g.</u>, Exs. B, J) and third-party subpoenas (<u>see, e.g.</u>, Ex. L) between the partial production at the end of January 2007 through the end of discovery, Vonage has diligently sought information that would shed definitive light on the

extent of the License Documents and the additional defenses they might raise, or support for

Vonage's previously-pled defenses they might provide.

To the extent the Court considers that Vonage delayed in its motion, any such delay was

not "undue." Despite the fact that Vonage had explicitly and repeatedly requested any and all

third party licenses and contracts, as in A/R Roofing and Walls, Sprint produced the License

Documents, which serve as the basis for the proposed amendments, only two months before

Vonage sought leave to amend its Answer, *and then only portions of them*. Based on Sprint's

facially incomplete production, Vonage could not determine (1) whether the license was still in

force, (2) whether the covenant not to sue Cisco customers was still in force, or had been

terminated, or may provide Vonage protection from Sprint's claims of infringement for all,

portions of, or none of the period of time for which Sprint seeks to hold Vonage liable. It was

only one day prior to the close of discovery when Sprint revealed that the covenant not to sue

was unquestionably in force for at least the early period of the alleged infringement.[7]

As such, Vonage has been forced to expend its time and effort in the latter phases of

discovery pursuing a complete production of the License Documents it has requested from Sprint

on multiple occasions on a timely basis.[8] Tellingly, Vonage still does not have a complete set of

the License Documents as of the date of this filing. Even more tellingly, both Sprint and Vonage

---

[7]     The covenant, by its terms, runs concurrently with, and ends one year following, the termination of an alliance agreement between Sprint and Cisco. On or around April 13, 2007, weeks after the close of discovery, and only in opposition to Vonage's Motion, Sprint disclosed previously undisclosed documents indicating an Alliance Agreement between Sprint and Cisco was renewed in 2001 and in 2005. See Doc # 167, Exs. 6 & 5 thereto, respectively. There is thus reason to believe, on the face of these documents and based on Sprint's March 29, 2007 testimony, the covenant bars Sprint's claims of infringement not just through December 2002, when Sprint admits the covenant expired, but for all alleged infringement to date.

[8]     See Vonage's Subpoena Duces Tecum issued to Cisco on March 16, 2007, and Sprint's Subpoena, issued on March 30, 3007, attached as Exs. L and N, respectively.

have subpoenas to Cisco, issued before the close of discovery, pursuant to which both parties still expect responsive information.  See Pretrial Order, Doc. #207, at ¶13, regarding unopposed extended discovery.

As any delay on Vonage's part was due entirely to Sprint's recalcitrance, and unveiled attempts to withhold a complete production of the License Documents until the clock ran out, any delay on Vonage's part was not undue.  Under the law of this Circuit, Vonage respectfully submits that the Court committed reversible error in so finding.

### 3.     Vonage's Request Works No Prejudice on Sprint.

As the Tenth Circuit has recently instructed, the "most important[] factor in deciding a motion to amend the pleadings . . . is whether the amendment would prejudice the nonmoving party."  Minter, 451 F.3d at 1207.

To be "prejudiced" by this motion under Rule 15, Sprint must have an "undue difficulty in prosecuting [or defending] a lawsuit as a result of a change of tactics or theories on the part of the other party."  Walls, 2000 U.S. Dist. LEXIS 4525, at *11.  Sprint cannot reasonably argue that Vonage's proposed amendments would prejudice it, and Vonage respectfully submits that Judge Waxse erred in so finding.

Firstly, the materials Vonage seeks to rely on are *Sprint* documents.  The documents that form the basis of Vonage's proposed amended defenses constitute, or relate to, contracts to which Sprint is a party, which Sprint negotiated and entered into years ago.  Sprint has been in possession of the very information Vonage relies on to support its proposed amendments for much longer than Vonage (and still apparently has documentation it has yet to disclose to Vonage), and Sprint, without justification, delayed production of even a portion of this material until January 2007, and bits more in March 2007, and even more in April 2007 – after discovery closed.  Sprint thus suffers no prejudice by Vonage relying on documents of which Sprint has

- 13 -

had perfect knowledge since their drafting and over which Sprint continues to wield complete control.  Compare MercExchange, L.L.C. v. eBay, Inc., 271 F. Supp. 2d 784, 786-88 (E.D. Va. 2002) (granting Motion to Amend Answer to Conform to Proof made in September based on documents produced in March; proof of proposed amended claim for inequitable conduct was in plaintiff's possession, thus finding no prejudice and that additional discovery was necessary; citing cases).

Secondly, Sprint has known since before the inception of the litigation that Vonage's accused system is made up with components from other suppliers.[9]  Any choice by Sprint to conduct no discovery of these suppliers is of Sprint's own making.

Thirdly, there has already been discovery on matters relating to the License Documents. Specifically, *both parties' experts* have opined on the scope and legal effect of the License Documents in expert reports exchanged prior to the close of discovery,[10] and these experts as well as other witnesses were deposed on the terms and scope of the License Documents.[11] Vonage alerted Sprint of its intent to depose Sprint on the subject of licenses and other agreements with third parties that relate to the technology covered by the Asserted Patents, and had months to prepare for, and conduct any of its own, discovery on these issues.  See, e.g., Ex. J (Vonage's Rule 30(b)(6) Notice, issued Nov. 22, 2006), at Topic Nos. 17-18, 27, 30-32.  As

---

[9]    See July 13, 2004 Letter from Sprint's counsel to Vonage, Ex. 2 to Sprint's Motion for Partial Summary Judgment (Doc. #199-3) ("Because Vonage has created network architectures by using combinations of equipment from different suppliers, we believes [sic] that some of [Sprint's] patents may be of particular interest to Vonage.")

[10]    See, e.g., March 27, 2007 Rebuttal Report of Sprint's expert, Raymond S. Sims, attached as Exhibit "O," at pp. 2-4, opining on effect of License Documents.

[11]    See, e.g., Tr. of Dep. of Harley Ball, Ex. B.

such, there has already been a substantial amount of discovery relating to the License Documents and Sprint would not be prejudiced by the allowance of Vonage's proposed amendments.

Fourthly, as the Court is to decide the meaning and legal effect of the License Documents based on the four corners of the documents themselves, other than their complete production by Sprint (or, if Sprint continues to drag its heels, Cisco), no additional discovery is needed. See, e.g., V-Formation, Inc. v. Benetton Group, SpA, No. 02-cv-02259, 2006 U.S. Dist. LEXIS 13352 (D. Colo. 2006) (document containing covenant not to sue "speaks for itself;" deciding on summary judgment based on plain meaning of terms, and circumstances under which contract was entered into, provide accused infringer from protection against suit for patent infringement). "The issue of the effect of a release or covenant not to sue is a legal question.... As a general rule in Kansas, the court must ascertain the intent of the parties and 'if the language of the written instrument is clear, there is no room for rules of construction.'" Vesom v. Atchison Hosp. Ass'n, Civ. No. 04-2218, 2006 U.S. Dist. LEXIS 68576, at *95 (D. Kan. Sept. 22, 2006) (citations, punctuation omitted).

The Tenth Circuit has found it reversible error to find prejudice where the party opposing the amendment had "incentive and opportunity to conduct discovery" on the issue. See, e.g., Minter, 451 F.3d at 1209-1210 (finding "no support for ... claim of prejudice" where party opposing amendment "had incentive and opportunity to conduct discovery on this issue"). Sprint was deposed on the subject of the License Documents, offered expert testimony on their impact and import, and issued its own subpoena to Cisco, all within the bounds of the discovery period. Unlike the opponent in Minter, who only had the opportunity to take discovery in a previous litigation, Sprint had the opportunity in this litigation and took as full advantage of it as it saw fit. Vonage respectfully submits that the Court's finding of prejudice to Sprint is more egregious

than that which the Tenth Circuit has found to be "clear" and reversible error. 451 F.3d at 1121.
See also Rupe v. Triton Oil & Gas Corp., 806 F. Supp. 1495, 1504 (D. Kan. 1992) (denying
motion to strike new defense where party opposing motion failed to make "any showing of
prejudice beyond its mere allegation of prejudice.").

Based on these facts, and strong federal precedent, Vonage respectfully submits that the
Court's Order finding Sprint would be "prejudiced" by Vonage's assertion of any defense based
on Sprint's own documents, based on Sprint's feigned surprise and its unsubstantiated
allegations of mountainous "new" discovery that would need to be conducted on Vonage's
proposed amended claims, is clearly erroneous and contrary to law.

    **4.     Vonage Did Not Make This Request in Bad Faith or with Dilatory Motive, and the Court Did Not Find Otherwise.**

Vonage has diligently sought information from Sprint regarding potential licenses to the
Asserted Patents and related technology since the inception of this matter, and has persisted
diligently when Sprint's responses to its requests were, apparently and on the face of Sprint's
production, incomplete and even inaccurate. Had Sprint fully produced the License documents,
which it has yet to do, in response to Vonage's initial requests, Vonage may have reasonably
been able to seek to amend its pleading before it did.

    **5.     Vonage's Request Is Not Futile, and the Court Did Not Find Otherwise.**

Sprint's agreements and licenses relating to the Asserted Patents and related technology
are highly pertinent to Sprint's claims of infringement and Vonage's defenses thereto. Even
from the few pages Sprint belatedly produced, it is apparent that Sprint's claims of infringement
may be barred by the licenses (both express, implied and intended), covenants not to sue, and
other terms of its agreements with Cisco – a supplier of components to Vonage's accused
system. See, e.g., Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684 (Fed. Cir. 1986)

(implied license is complete defense to infringement).  See also McData Corp. v. Brocade

Commn. Sys., Inc., 233 F. Supp. 2d 1315 (D. Colo. 2002) (denying motion for preliminary

injunction; covenant not to sue accused infringer is a bar to infringement claims).

   "[C]ourts seek to decide issues upon the merits rather than technicalities... ." Walls, 2000

U.S. Dist. LEXIS 4525, at *12; see also id. at *4 (citing cases).  Pursuant to this preference,

together with Vonage's diligence and Sprint's latency, Vonage should be allowed to amend its

answer to include affirmative defenses that, until only the last few months, of which Sprint and

only Sprint, has been aware, and the Magistrate erred in ruling to the contrary.

   **C.    The Court Erred in Striking Vonage's References to the License Documents, and Legal and Factual Contentions Based on the License Documents, from the Pretrial Order.**

   In its Motion, Vonage sought leave to allege specific defenses of license, implied license,

and other contractually-oriented defenses, based on the License Documents Sprint produced in

incomplete form, in drips and drabs, between January and April 2007.  That Motion

notwithstanding, Vonage respectfully submits that the License Documents support, and are

admissible evidence, to establish those affirmative defenses that Vonage asserted in its original

pleadings, including its originally-pled defense of estoppel.

   **1.    If Considered "New" Contentions, Vonage's Contentions in the Pretrial Order Satisfy Rule 15.**

   If the Court considers that any claim using the License Documents as proof is a "new"

claim, Vonage respectfully submits that Vonage has met these standards, for the reasons set out

in section B above.  See, e.g., Minter, 451 F.3d at 1204 (plaintiff's "attempt to add a new claim

to the pretrial order [is] the equivalent of asking leave to amend his complaint, and must be

evaluated by the court under the standards set forth in Rule 15(a)."); Ryan v. Shawnee Mission

Unified Sch. Dist. No. 512, 437 F. Supp. 2d 1233, 1259-1260 (D. Kan. 2006) (Lungstrum, J.)

(request to add new claim in pretrial order is evaluated by the court under the standards set forth in Rule 15(a); granting request to add claim to pretrial order).

For the additional reasons discussed below, Vonage respectfully submits that the Court erred in striking from the pretrial order Vonage's contentions based on the License Documents.

### 2.    The License Documents Are Fair and Admissible Proof of Vonage's Originally Pled Defenses.

The Court erred in striking from the Pretrial Order Vonage's factual and legal contentions relating to the License Documents.  Minter, 451 F.3d at 1207 (reversing order striking new theory of recovery from pretrial order, raised 3 weeks before trial, based on late revelations by opposing party); see also Moses, 2007 U.S. Dist. LEXIS 23889, at * 4 (overturning Judge Waxse's order striking allegations from a proposed pretrial order on the basis that the defendant had not been given fair notice of the allegations as "clearly erroneous," where "[c]ontrary to Judge Waxse's ruling, plaintiff's First Amended Reply to [defendant's] Answer includes statements which are similar to each of the eight factual statements (and identical theories) listed above."  Id.

In the Proposed Pretrial Order submitted on May 14, Vonage referred to the License Documents and the issues raised therein as support for its original defenses, including, specifically, estoppel.  See Vonage's Answer to First Amended Complaint, Doc. # 13, at Third Affirmative Defense.  By its Order of May 16, the Court struck Vonage's contentions.  See Ex. N at pp. 10-13, and 20-26, reflecting, in ~~strikethrough~~ text, the portions of Vonage's contentions stricken by the Court.

As the Federal Circuit precedent makes plain, Vonage's claim of estoppel, as originally pled, can be proven by contract:

As with other property rights, patent-related rights can be contracted away. *See Flex-Foot, Inc.*, 238 F.3d at 1367-68, 57 U.S.P.Q.2D (BNA) at 1641 (holding defendant contractually estopped from challenging validity due to its binding promise not to do so, which was embodied in a voluntarily entered settlement agreement between the parties).

Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1357 (Fed. Cir. 2002) (applying Kansas contract law).[12]

Similarly, the implied license defense Vonage sought leave to assert in its Motion may be proven through the estoppel and acquiescence defenses Vonage asserted in its original pleading. See, e.g., Wang Lab. v. Mitsubishi Elecs. Am., 103 F.3d 1571, 1580 (Fed. Cir. 1997) ("implied licenses arise by acquiescence, by conduct, by equitable estoppel (estoppel in pais), or by legal estoppel. These labels describe not different kinds of licenses, but rather different categories of conduct which lead to the same conclusion: an implied license."(citations omitted)). "Legal estoppel refers to a narrower category of conduct [than equitable estoppel] encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted." Id. at 1581. See also Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 829 F.2d

---

[12]    See also Genentech v. Eli Lilly & Co., 998 F.2d 931, 946 (Fed. Cir. 1993) (discussing "contract-based estoppel"); Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631, 636 (Fed. Cir. 1991) (affirming the district court's dismissal of an action; based on covenant not to sue, patentee was "forever estopped from asserting the [patent at issue]"); United States v. Golden, 34 F.2d 367, 373 (10th Cir. 1929) ("Is there estoppel by contract? It is quite true that, where one has contracted in light of certain facts, ordinarily he is estopped to deny their existence. But it must be a valid contract; the estoppel lasts only as long as the contract."); Carolina Indus. Prods. v. Learjet Inc., 168 F. Supp. 2d 1225, 1229 (D. Kan. 2001) ("evidence regarding a settlement agreement and the settlement negotiations was properly admitted to prove a party's claims of contractual and equitable estoppel").

1075, 1080 (Fed. Cir. 1987) ("The doctrines of legal estoppel and equitable estoppel have been applied by courts to imply a license.")[13]

While Vonage made the formal request to amend its pleadings to add claims based expressly based on the License Documents, under the law of this and the Federal Circuit, Vonage reasonably considered that the facts on which those claims were based – based on documents Sprint produced in discovery in response to Vonage's requests for material supporting its claims – could reasonably be used to support those defenses it had already alleged.[14]

Vonage thus respectfully submits that the Order striking these materials from the pretrial order was reversible error, and that the effect of precluding Vonage from supporting its defenses with materials produced by Sprint in discovery, consisting of contracts to which Sprint was a party, would result in manifest injustice so as to warrant reinstating Vonage's contentions as submitted in the draft order.  See Fed. R. Civ. P. 16(e) ("The order following a final pretrial conference shall be modified only to prevent manifest injustice.").  See also Rupe, 806 F. Supp. at 1504 (denying motion to strike "new" defense from pretrial order, based on liberal pleading standards of Rule 8; "As a general rule, a plaintiff should not be prevented from pursuing a valid

---

[13]     See also Advanced Micro Devices, Inc. v. Altera Corp., 98-1090, 1999 U.S. App. LEXIS 6272 (Fed. Cir. April 7, 1999) (suggesting license may be inferred by estoppel); and Glass Equip. Dev., Inc. v. Besten, Inc., 174 F.3d 1337, 1341 (Fed. Cir. 1999) (Besten's estoppel argument was based on a theory that Simonton had an implied license to practice the claimed linear method.  "Besten correctly asserts that if Simonton did have an implied license under the '582 patent to assemble spacer frames by the methods claimed therein, GED would be estopped from maintaining a suit against Simonton for infringement and Besten could not be liable for inducing Simonton to infringe.")

[14]     While not reaching the issue, the Tenth Circuit in Minter noted that "in light of the liberal pleading requirements of Rule 8(a)," the moving party's party's assertion of claim in pretrial order because he believed claim was "already fairly encompassed by his pleadings" was a "colorable argument."  451 F.3d at 1207  (finding moving party's assumption regarding the scope of his original pleading "constitutes an excusable cause for the delay, especially in light of the defendant's own dilatoriness" in disclosing information at close of discovery.)

claim just because she did not set forth in the complaint a theory on which she could recover).

Cf. Sinclair Oil Corp. v. Sylvan State Bank, 894 F. Supp. 1470, 1475 (D. Kan. 1995) (refusing to strike arguments *not reflected in pretrial order*, in favor of "the opportunity of both parties to fully present their arguments and respond to the opposing party's arguments") and Ward v. L.B.I. Management, Inc., Civ. No. No. 89-2538, 1991 U.S. Dist. LEXIS 11109, at *1-2 (D. Kan. July 12, 1991) (O'Connor, C.J.) (denying motion to strike testimony where allegation in pretrial order of "failing to use reasonable care," though "admittedly broad," was sufficient to allow plaintiff to introduce new theory of negligence).

## IV.     Conclusion

For the foregoing reasons, Vonage respectfully requests that the Court vacate the Orders, grant it leave to amend its answer to include additional affirmative defenses in the proposed form attached to its Motion, reinstate the stricken portions of the Pretrial Order, and allow Vonage to incorporate the License Documents and its amended pleadings into the Pretrial Order in full.

Respectfully submitted,

May 29, 2007                    /s/ Patrick J. Kaine

Don R. Lolli    KS Dist. #70236
Patrick J. Kaine  KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com

Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com

bgolob@duanemorris.com
drmcphail@duanemorris.com

Attorneys for Defendants/Counterclaim
Plaintiffs Vonage America, Inc. and Vonage
Holdings Corp.

## INDEX OF EXHIBITS

Ex. A    ............................................. "Sprint/Cisco License Agreement" dated December 1998
[*Filed under seal*]

Ex. B    ....Excerpts from the Transcript of the March 29, 2007 deposition of Harley Ball, Esq.
[*Filed under seal*]

Ex. C    ...................................................... February 15, 2007 Letter from B. Golob to A. Seitz

Ex. D    ....Vonage Holdings Corp.'s Fourth Set of Requests for the Production of Documents,
and Sprint's responses thereto

Ex. E    ............................................. Vonage Holdings Corp.'s Second Set of Interrogatories,
and Sprint's responses thereto

Ex. F    .............. Vonage Holding Corp.'s First Set of Requests for Production of Documents
and Things, and Sprint's responses thereto

Ex. G    .............................................................September 20, 2006 Ltr. from Golob to Seitz

Ex. H    ...........Vonage Holding Corp.'s Second Set of Requests for Production of Documents
and Things, and Sprint's responses thereto

Ex. I    ...................................................... February 21, 2007 Letter from A. Seitz to B. Golob

Ex. J    ...................................... Vonage's Third Deposition Notice pursuant to Rule 30(b)(6),
issued November 22, 2006

Ex. K    ........................................................................ Email from Sprint on April 20, 2007
producing 2001 and 2005 Alliance Agreements

Ex. L    ...................................................................................... Vonage subpoena to Cisco

Ex. M    ...................................................................................... Sprint subpoena to Cicso

Ex. N    ................... Blackline document comparing Pretrial Order as submitted v. as entered

Ex. O    ................................................. March 27, 2007 Rebuttal Report of Raymond S. Sims
[*Filed under seal*]

## CERTIFICATE OF SERVICE

I hereby certify on May 29, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Objections to and Motion for Review of Orders of May 14, 2007 and May 16, 2007 Pursuant to Fed. R. Civ. P. 72, and supporting papers, was filed electronically on this date, with a notice of case activity to be generated and sent electronically by the Clerk of Court to:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com
>
> *Attorneys for Plaintiff*
> *Sprint Communications Company L.P.*
>
> _/s/ Donald R. McPhail__