# EXHIBIT C

Dockets.Justia.com

| | |
|---|---|
| **From:** | Golob, Barry |
| **Sent:** | Thursday, February 15, 2007 7:27 PM |
| **To:** | 'Seitz, Adam P. (SHB)' |
| **Cc:** | McPherson, Patrick D.; Baird, John M.; Lahey, Helesa K.; Golob, Barry; Morscheck, Peter; McPhail, Donald R. |
| **Subject:** | Sprint v. Vonage |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Purple |
| **Attachments:** | Document.pdf |

Adam:

Attached please find correspondence related to the above matter. Please let me know if you have any difficulty opening the attachment.

Barry

**Barry Golob**
Partner

**Duane Morris LLP**
1667 K Street, N.W., Suite 700
Washington, DC 20006-1608
P: 202.776.5236 F: 202.776.7801
BGolob@duanemorris.com
www.duanemorris.com

3/20/2007

# DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE

BARRY GOLOB
DIRECT DIAL: 202.776.5236
E-MAIL: bgolob@duanemorris.com

www.duanemorris.com

February 15, 2007

**VIA EMAIL AND FIRST CLASS MAIL**

Adam P. Seitz, Esquire
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613

> Re: ***Sprint Communications Co. L.P. v. Vonage Holdings Corp. and Vonage America, Inc. et al.***, Case No. 05-2433-JWL
> Our Reference: Y2108-00079
> Your Reference: SPRI.116441
> **Sprint's production of Sprint/Cisco Agreements**

Dear Adam,

      We write to follow up on Mr. McPhail's letter of Tuesday, addressing Sprint's recent production of certain agreements between Sprint and Cisco Systems, Inc. relating to the JCS2000 system, and, as such, matters most fundamental to Sprint's contentions in this litigation.

      As Mr. McPhail indicated, Sprint's production of these highly relevant documents is not only dilatory in its timeliness but, even on its face, significantly incomplete in its substance.

      As you know, Vonage first requested information regarding express and implied licenses regarding Sprint's asserted patents, and products utilizing or derived from the asserted patents licensed or offered for license by Sprint, in their initial discovery requests served over a year ago. (See, e.g., Interrogatory Nos. 3 and 12; First Set of Requests for Production of Documents Nos. 21, 22, 23, 26, 30; see also Second Set of Requests No. 39-41; Third Set of Requests Nos. 85, 86, 94).

      You will recall that we followed these requests with multiple written demands, as indicated in our letter of September 20, 2006 that Sprint promptly and fully respond to these requests. As of last Fall, Sprint still had not provided, among a host of other outstanding items, "contracts with and licenses to and from third parties," "documents relating to sales of products and / or services covered by or relating to any of the inventions disclosed or claimed in the

DuaneMorris

Adam P. Seitz, Esquire
February 15, 2007
Page 2

patents-in-suit," and "correspondence to or from any third party... relating to rights under one or more of the patents in suit." See Golob ltr. to Seitz, Sept. 20, 2006, at 2.

While Sprint, in response to these pertinent and reasonable discovery requests, indicated that it had no such documents, or had produced all documents responsive to such requests in its initial disclosures, it is quite apparent that neither of Sprint's sworn (and fundamentally contradictory) statements were true.

Even after Vonage identified the Sprint/Cisco licensing arrangement among the thousands of pages of less than pertinent material Sprint produced, and provided this information to Sprint, Sprint still took over four months to locate and produce these most basic materials. Moreover, these materials, on their face, indicate they are substantially incomplete, and that Sprint has not nearly met its discovery obligations in this regard.

Sprint's delay alone reaffirms Vonage's skepticism of the vigor and effectiveness of Sprint's internal search mechanisms. It underscores the necessity that Sprint disclose the search terms Sprint is using to locate documents responsive to Vonage's requests, so that both Vonage and the Court can confirm whether Sprint is meeting its discovery obligations. Sprint's latent production of facially incomplete versions of its executed agreements with Cisco (to say nothing of the related materials encompassed by Vonage's requests, which Sprint has failed to produce at all) indicates that, even now, Sprint is unjustifiably withholding, otherwise failing to produce, and perhaps refusing to *even look for*, responsive information that is fundamental to the merits of its assertion of patent infringement and Vonage's defenses thereto.

Speaking, by way of example and not limitation, to the Cisco agreements alone, a good faith response to Vonage's First Request for Production of Documents No. 21 (seeking "[a]ll correspondence to and from third parties related to any potential agreement relating to the 'Asserted Patents,' including, but not limited to licenses, sale, purchase or assignments,") and Second Request for Production of Documents No. 39 ("[a]ll Sprint licenses agreements covering the 'Asserted Patents' or other patents relating to or regarding VoIP technology, and any materials reviewed or prepared by or for Sprint during negotiation(s) of such license agreements,") and 40 ("[a]ll documents discussing any Sprint offers, or requests, to license patents covering or related to VoIP technology,") should include at least the following:

    A.    As to the **"Sprint/Cisco License Agreement"** (the "License") executed December 12, 1998 (SPRe-12-01-00849 to 872):

        1.    A complete copy of Exhibit A, and all drafts of and amendments thereto, and all other documents sufficient to identify the negotiated and agreed list(s) of "Designated Sprint Applications" and "Designated Sprint Component Patents" as defined in the License (see §§1.6, 1.7).

# DuaneMorris

Adam P. Seitz, Esquire
February 15, 2007
Page 3

2.  A complete copy of Exhibit B, and all drafts of and amendments to the same, including each license executed by Sprint and Cisco in the form of Exhibit B for any patent. Vonage notes that as other portions of Sprint's document production indicates Sprint earned $22 million in royalties for Licensed Patents as of September 1999, at $1 million each (See Cisco License at §§2.1, 2.2, 2.3) Sprint must produce at least twenty-two (22) executed versions of Exhibit B – one for each license Cisco obtained pursuant to the License.

3.  All documents sufficient to identify the negotiated, intended and actual Licensed Patents as defined in §1.10.

4.  All additional licenses granted, or offers of a license made, pursuant to §2.7.

5.  All notifications provided pursuant to the License, and responses thereto, including:

    a.  Notices regarding the issuance of any patent Sprint considered a Cisco-Related Component Patent, as provided in §2.1, and any correspondence relating thereto;

    b.  Notices regarding possible or actual grants of licenses in the Field of Use to third parties, as identified in §2.1;

    c.  All legends and notices for Licensed Patents to be affixed to any Cisco product pursuant to §3.1;

    d.  All notices of and requests relating to any enforcement actions by Sprint or Cisco pursuant to §3.3;

    e.  All notices regarding the invalidity or unenforceability of any Designated Sprint Component Patent pursuant to §5.2(c);

    f.  Any notices of termination made pursuant to §6.2;

    g.  Any notices of disputes not resolved, pursuant to §7; and

    h.  Any other notices sent pursuant to §8.2.

6.  Copies of all Prosecution Correspondence provided by Sprint to Cisco pursuant to §3.5.

DM2\965599.1

DuaneMorris

Adam P. Seitz, Esquire
February 15, 2007
Page 4

    7.    Any options exercised pursuant to §§2.2-2.4.

    8.    Any licenses issued by Cisco to Sprint's suppliers pursuant to §2.6.

    9.    Record of all payments made pursuant to the License, including records of any Designated Sprint Component Patent for which Cisco paid $1,000,000 pursuant to §4.1, and any sublicense for which Cisco paid to Sprint Sublicense Royalties pursuant to §4.3.

    10.    Documents sufficient to identify "Subsequent Component Patents" as described in §2.2 of the License.

    11.    Documents sufficient to identify "Cisco or Sprint Patents" as described in §3.4 of the License (§3.4).

    12.    Documents sufficient to identify "Sprint Designated Component Patents," to the extent different from Designated Sprint Component Patents, as identified in §5.2(b).

    13.    Documents sufficient to identify the Immunity Period identified in §3.4.

    14.    All drafts of, amendments to, and internal and external correspondence regarding the License.

B.    As to the **"Sprint-Cisco Alliance Agreement"** (the "Alliance Agreement"), executed December 17, 1998 (SPRe-012-01-00792 to 848):

    1.    Part of Exhibit C (Definitions), missing from the copy produced;

    2.    Exhibit D (Training and Support), missing from the copy produced;

    3.    Exhibit E (Patent License Agreement), missing from the copy produced.

The Agreement itself also identifies the following materials which Sprint must produce:

    4.    The parties' Memorandum of Understanding, dated June 2, 1998.

    5.    The Master System Integrator and Service Provider Agreement, dated December 14, 1998.

    6.    The Patent License Agreement.

DM2\965599.1

DuaneMorris

Adam P. Seitz, Esquire
February 15, 2007
Page 5

7. The Statement of Work Agreement (defined in §1.3).

8. All Projects undertaken pursuant to the Alliance Agreement (§1.2).

9. All Statements of Work negotiated or executed between the parties (§§1.4; 5) and all proposals related thereto, including those relating to the JCS2000 Project and the Fastbreak Project.

10. Any Specific Agreements entered into pursuant to §1.7.

11. All Alliance Committee members and records of committee activities (§4), including those of the Executive, Steering and IP Development Committees.

12. Documents sufficient to identify all "Jointly Developed Intellectual Property," including

   a. Documents sufficient to identify "Jointly Developed Intellectual Property" owned by Sprint pursuant to §7.2.3, and

   b. Documents sufficient to identify "Jointly Developed Intellectual Property" owned by Cisco pursuant to §7.2.3.

13. All notices provided pursuant to §7.2.1 identifying, or referring or relating to, "Jointly Developed Intellectual Property Rights."

14. Documents sufficient to identify all "Custom Developed Intellectual Property."

15. All Requests for Custom Development made pursuant to §9, and all responses thereto, including proposed specifications, charges and delivery schedules pursuant to §9.2.

16. All agreements between Sprint and Cisco regarding Custom Developments, including but not limited to licenses to Cisco to distribute Custom Developments pursuant to §9.5.

17. All payments made pursuant to §12 of the Alliance Agreement, whether by credit or otherwise.

18. All Accelerated Developments to which Sprint claims exclusive rights pursuant to §15.2.

DM2\965599.1

DuaneMorris

Adam P. Seitz, Esquire
February 15, 2007
Page 6

19. All extensions and terminations of, or defaults under, the agreement.

20. All documents reflecting actual or potential sublicenses by Cisco, including documents reflecting whether Cisco provided or provides 60% of components in any claimed service or to make the claimed network architecture (§§7.2.3(a); 25).

C. As to **Statement of Work #JCS2000-K9497000** (the "SOW"), December 17, 1998 (SPRe-012-01-01022 to 1066):

1. SOW Agreement number CM80491MDL (p. 1).

2. The Test Plan, referred to in §§1.6.1 and 2.7.1 of the SOW.

3. The Master Purchase Agreement.

4. All Service Level Agreements (§5).

5. All proposed and/or agreed deliverables, milestones, lead role and completion due dates related to the SOW and as identified in §2.1 thereof.

6. Any and all JCS2000 requirements documentation as defined in §2.3 of the SOW, and deliverables related thereto;

7. Any and all Service Designs referred to in §2.4 of the SOW, including:

   a. All Software Specifications;

   b. All Software Design Documents; and

   c. Any deliverables in producing the Service Design, as identified on p. 6 of the SOW.

8. All software design documents.

9. All documents reviewed in the System Requirements Review, as noted in SOW §2.5, and all documents relating to that review.

10. All documents reviewed in the System Specification Review, as noted in SOW §2.5, and all documents relating to that review.

11. All documents reviewed in the Critical Design Review, as noted in SOW §2.5, and all documents relating to that review.

DM2\965599.1

DuaneMorris

Adam P. Seitz, Esquire
February 15, 2007
Page 7

12. The Build Schedule, as referred to in SOW §2.6.

13. All Code Deliverables based on the approved Software design (SOW §2.6).

14. Records of all tests performed according to the Test Plan.

15. All Software Deliverables described in §3.0, including all product names and serial numbers, past and present, for all items identified therein, or items which embody the functional deliverables described therein

16. All Joint Document Deliverables and other documentation listed in §5 of the SOW.

17. All Program Schedules generated pursuant to §6.4 of the SOW.

18. The VSC Schedule for JCS2000, and all project updates, monthly detailed and executive status reports (§6.5).

19. All licenses to the MDL and Execution Environments and all VSC licenses issued from Cisco to Sprint (§§9.4, 11).

20. Any support agreements for JCS2000, as identified in SOW §9.5.

21. Copies and descriptions of all Sprint Licensed Software identified in SOW §11.

22. All license and development fees paid, and all invoices for the same, as provided in §§9, 11.

23. Documents sufficient to identify "Sprint's Intellectual Property Rights" pursuant to SOW §14.1, by name or by patent, application, serial, product or project number.

24. Documents sufficient to identify "Jointly Owned Intellectual Property Rights" pursuant to SOW §14.2, by name or by patent, application, serial, product or project number.

25. Documents sufficient to identify "Cisco's Intellectual Property Rights" pursuant to SOW §14.3, by name or by patent, application, serial, product or project number.

DM2\965599.1

**DuaneMorris**

Adam P. Seitz, Esquire
February 15, 2007
Page 8

26. Documents sufficient to identify "Jointly Developed Intellectual Property" owned by Cisco pursuant to §7.2.

27. All notices provided pursuant to the SOW.

28. Exhibit A to the SOW, (Development Service Level Agreement), as further or subsequently negotiated by the parties.

D. As to the **"Master Purchase Agreement"** (also known as "Service Provider and Value Added Reseller Agreement") (the "Purchase Agreement"), December 14, 1988 (SPRe-012-01-00897 to 1021):

1. All Special Bids requested by Sprint pursuant to §6.2.

2. All Purchase Orders.

3. Records of all payments made pursuant to the Purchase Agreement.

4. All product forecasts provided by Sprint (§9.1.1).

5. All reports issued by Sprint pursuant to the Purchase Agreement, including "Point-of-Sales" Reports and inventory reports as identified in §9.1.11.

6. Records of all quarterly business meetings between Sprint and Cisco (§9.1.12).

7. Any agreements relating to the operability of Cisco products with Sprint's related products or network systems, as provided in §11.6.

8. Minutes of and documents relating to any executive briefings as proscribed in §14.1.

9. All sublicenses granted by Sprint to third parties relating to Cisco products purchased pursuant to this agreement.

10. All notices provided pursuant to §23 of the agreement.

11. All executed Affiliate Participation Agreements (Ex. F).

12. All executed Lease Assignment of Purchase Orders (Ex. G).

DuaneMorris

Adam P. Seitz, Esquire
February 15, 2007
Page 9

      Similarly, Sprint must produce all documents relating to the drafting, negotiation, execution, termination, and renewal of these agreements or any of their provisions; and drafts of, amendments to, and internal and external correspondence regarding the same. Vonage's requests similarly encompass, and Sprint must provide, all documents relating to the parties' performance under the above-listed agreements.

      As the partial materials Sprint has produced make heavy references to Sprint's JCS2000 and to the component parts Vonage purchases from Cisco for use in its accused system, Sprint can not object to the relevance of these documents to the merits of its contentions of infringement. As they are agreements with third parties, neither can Sprint excuse its insufficient production on the basis of privilege.

      As some of these requests have been outstanding for over one year, we look forward to Sprint's response (other than those materials demanded sooner by Mr. McPhail) by close of business Wednesday, February 21. Should Sprint fail again to provide full and complete disclosure of its licenses and other contracts, we will enlist the Court's assistance in compelling Sprint to honor its discovery obligations, and to award all appropriate sanctions.

      Sincerely,

      Barry Golob

BPG/sbb
cc:    Donald R. McPhail
       Patrick D. McPherson

DM2\965599.1