# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| _____ ) | |
| SPRINT COMMUNICATIONS COMPANY L.P.,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) Case No.  05-2433-JWL | |
| v.    ) | |
| ) | |
| THE GLOBE.COM, INC., ET AL    ) | |
| ) | |
| Defendants.    ) | |
| _____ ) | |

## VONAGE'S MEMORANDUM IN OPPOSITION TO SPRINT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com

Don R. Lolli    KS Dist. #70236
Patrick J. Kaine    KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com

*Attorneys for Defendants Vonage America, Inc.
and  Vonage Holdings Corp.*

June 11, 2007

1

# Table of Contents

Page

I.    Summary of Argument ................................................................................1

II.   Statement of Material Facts ........................................................................2

    A.    Response to Sprint's Statement of "Undisputed" Material Facts...........................2

    B.    Statement of Material Facts in Dispute ................................................5

    C.    Statement of Material Facts *Not* in Dispute...........................................6
        1.    Vonage's Claims as to 35 U.S.C. ¶112 ¶2...............................................6
        2.    Notice ................................................................................8
        3.    Invention and Prosecution of Asserted Patents .........................................8
        4.    Prosecution Laches....................................................................9
        5.    Misuse................................................................................12
        6.    Patent Claims at Issue ................................................................13

III.  Argument ................................................................................13

    A.    Sprint's Motion as to Vonage's Defense to Invalidity Pursuant to
        35 U.S.C. §112 ¶2 Must Be Denied. ......................................................13

    B.    Vonage's Seventh Affirmative Defense Survives Summary
        Judgment.................................................................................18

    C.    Pursuant to Rule 56(f), the Court Must Deny or Defer
        Consideration of Sprint's Motion as to Vonage's Fifth Affirmative
        Defense (Equitable Defenses).............................................................18
        1.    Sprint's Challenge to Vonage's Affirmative Defense of
            Prosecution Laches is Insufficient....................................................19
            a.    Vonage's Pleading of Laches Encompasses
                Prosecution Laches....................................................................20
            b.    Vonage's Claim for Prosecution Laches is Based on
                Documents of Public Record and Which Sprint has
                Produced in Discovery ................................................................21
            c.    By Sprint's Own Admission, There are Material
                Facts Supporting Vonage's Claim for Prosecution
                Laches.................................................................................21

    D.    Vonage's Defenses of Unclean Hands and Patent Misuse are
        Supported by Law and Fact................................................................26

i

E.      Vonage's Ninth Affirmative Defense (35 U.S.C. §287) Withstands
        Summary Judgment. ................................................................................29

        1.      Sprint Confirms There are Genuine Issues of Material Fact in
                Dispute as to Whether There Are Products or Services Required to
                be Marked Under Section 287. ...............................................................30

        2.      Sprint Confirms There Are Genuine Issues of Material Fact in
                Dispute as to When Sprint Provided Notice to Vonage Under
                Section 287. ...........................................................................................31

F.      Sprint's Motion as to Vonage's Defense Pursuant to 35 U.S.C.
        §101 is Both Premature and Misplaced. ...................................................33

G.      Vonage's Claims of Unenforceability Must Stand. ...................................36

H.      Vonage's Expert is Qualified to Offer Testimony on Sprint's
        Contentions of Infringement and Vonage's Defenses Thereto. ..............36

I.      Vonage Has Preserved its "Additional Defenses" ...................................38

IV.     Conclusion .............................................................................................39

ii

# <u>TABLE OF AUTHORITIES</u>

## Cases

<u>A.C. Aukerman Co. v. R.L. Chaides Constr. Co.</u>, 960 F.2d 1020 (Fed. Cir. 1992) . . . . . . . . . 36

<u>American Tobacco Co. v. United States</u>, 328 U.S. 781 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Amsted Indus. v. Buckeye Steel Castings</u>, 24 F.3d 178 (Fed. Cir. 1994) . . . . . . . . 29, 30, 32, 33

<u>Bausch & Lomb v. Allergan, Inc.</u>, 136 F. Supp. 2d 166 (W.D.N.Y. 2001) . . . . . . . . . . . . . . . 28

<u>Bio-Technology Gen. Corp. v. Genentech, Inc.</u>, 80 F.3d 1553 (Fed. Cir. 1996) . . . . . . . . . . . 28

<u>Campbell v. Meredith Corp.</u>, No. 00-2275, 2003 U.S. Dist.
    LEXIS 3703 (D. Kan. March 7, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Corning v. Burden</u>, 56 U.S. (15 How.) 252 (1854) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>C.R. Bard, Inc. v. M3 Systems, Inc.</u>, 157 F.3d 1340 (Fed.Cir. 1998) . . . . . . . . . . . . . . . . . . . . 27

<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) ) . . . . . . . . . . . . . . . . . . 37

<u>Diamond v. Chakrabarty</u>, 447 U.S. 303(1980) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.</u>, 122 F.3d 1040
    (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

<u>Gart v. Logitech, Inc.</u>, 254 F.3d 1334 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32, 33

<u>Gaverbel Societe Anonyme v. Northlake Marketing & Supply Inc.</u>,
    45 F.3d 1550 (Fed.Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>In re Abbott Labs.</u>, 442 F. Supp. 2d 800 (N.D. Cal. 2006) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>In re Conley</u>, 490 F.2d 972, 976 (C.C.P.A. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>In re Schrader</u>, 22 F.3d 290 (Fed. Cir. 1994), <i>reh'g denied</i>, 1994 U.S. App.
    LEXIS 10544 (Fed. Cir. May 5, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

<u>Kothmann Enters. v. Trinity Indus.</u>, 455 F. Supp. 2d 608 (S.D. Tex. 2006) . . . . . . . . . . . . . . 20

<u>Lans v. Digital Equip. Corp.</u>, 252 F.3d 1320 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 33

<u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995)(<i>en banc</i>),
    <i>aff'd</i>, 517 U.S. 370 (1996) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

MercExchange, L.L.C. v. eBay, Inc., 271 F. Supp. 2d 784 (E.D. Va. 2002) . . . . . . . . . . . . . . . 39

Miller v. Auto. Club of New Mexico, Inc., 420 F.3d 1098 (10th Cir. 2005) . . . . . . . . . . . . . . 19

Raines v. Switch Manufacturing, No. C-96-2648 DLJ, 1997 WL 578547
     (N.D. Cal. July 28, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Ryan v. Shawnee Mission Unified Sch. Dist. No. 512,
     437 F. Supp. 2d 1233 (D. Kan. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Shell Development Co. v. Watson, 149 F. Supp. 279, 280 (D.D.C. 1957),
     aff'd, 252 F.2d 861 (D.C. Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Spaulding v. United Transp. Union, 279 F.3d 901 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 30

Stambler v. RSA Sec., Inc., 243 F. Supp. 2d 74 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . 20, 21

Symbol Techs., Inc. v. Lemelson Medical, 277 F.3d 1361 (Fed. Cir. 2002) . . . . . . . . . . . . . . 20

Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., LP, 422 F.3d 1378
     (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860 (Fed. Cir. 1997) . . . . . . . . . . . . . . 26, 28

**Statutes**

35 U.S.C. §100(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

35 U.S.C. §101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 33, 34, 36

35 U.S.C. §112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 14, 16, 17, 18

35 U.S.C. §287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 29, 30, 31, 32, 33

**Rules**

Fed. R. Civ. Proc. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Fed. R. Civ. Proc. 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. Proc. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Vonage America, Inc. and Vonage Holdings Corp. (collectively, "Defendants" or "Vonage") submit this memorandum in opposition to Sprint Communications Co., L.P.'s ("Sprint's") Motion for Partial Summary Judgment.

## I.    Summary of Argument

Sprint has asserted that it should be granted partial summary judgment on a number of Vonage's defenses on the basis that: (a) the defense is not supported by the evidence ; (b) the defense is legally defective; or (c) Vonage's expert is not qualified to provide testimony. However, when the evidence is viewed in a light most favorable to Vonage, as it must be for summary judgment, and when the proper case law is applied, each of Sprint's motions for partial summary judgment should be denied, or to the extent that Vonage has requested a continuance, continued to allow Vonage to properly respond to the motion.

In response to Sprint's arguments regarding Vonage's Second and Seventh Affirmative defenses, Vonage has identified for the Court the documents and testimony that raise a genuine issue of material fact sufficient to defeat Sprint's motion that it complied with 35 U.S.C. § 112, paragraph 2.

In response to Sprint's arguments with respect to Vonage's Fifth Affirmative defense, Vonage has provided a Rule 56(f) affidavit detailing (1) the outstanding discovery not yet provided by Sprint that is needed for Vonage to properly respond to Sprint's allegations; and (2) the documents subject to Vonage's pending Objection to and Motion for Rehearing on Magistrate Judge Waxes's orders of May 14 and 16, 2007, and requesting that the Court continue Vonage's response to the motion for partial summary judgment pending resolution of these two issues.

In response to Sprint's arguments concerning Vonage's Sixth and Eighth Affirmative defense, Vonage provides the legal support for and identifies the factual support giving rise to a

general issue of material fact sufficient to defeat Sprint's motion that it has not engaged in patent misuse or unclean hands.

In response to Sprint's arguments for judgment on Vonage's Ninth Affirmative Defense, Vonage provides the legal and factual support giving raise to a genuine issue of material fact that Sprint's notice under 287 was defective.

In response to Sprint's arguments regarding Vonage's Defense that asserted claims are invalid under 35 U.S.C. § 101, this issue is purely a legal matter not requiring factual evidence from Vonage and to which Vonage is entitled to judgment as a matter of law.

In response to Sprint's arguments with respect to Vonage's Counterclaim of unenforceability, Vonage has identified the factual support which give rise to a genuine issue of material fact that Sprint has engaged in conduct making its patent unenforceable.

In response to Sprint's arguments concerning Vonage's Defense and Counterclaim for Non-infringement, Vonage has filed concurrently herewith, a motion in opposition to Sprint's motion to disqualify Mr. Halpern, and has identified the factual support that it had previously identified in support of Vonage's pending motion for summary judgment regarding the issue of non-infringement.

## II. Statement of Material Facts

### A. Response to Sprint's Statement of "Undisputed" Material Facts

Defendants (collectively, "Vonage"), in support of their opposition to Plaintiff Sprint's Motion for Partial Summary Judgment, and pursuant to Local Rule of Civil Procedure 56.1, respond to Sprint's Statement of Undisputed Material Facts in support of its Motion for Partial Summary Judgment as to Plaintiffs' Second Amended Complaint as follows:

1-7.    Vonage does not dispute ¶¶1-7 of Sprint's Statement of Undisputed Material Facts, though Vonage disputes that these facts are material.

- 2 -

8.    Denied.  For the reasons set forth in its Statement of Material Facts in Dispute and in this Memorandum, Vonage disputes that letters sent by Sprint's counsel to Vonage constituted "notice of Sprint's patent rights," or notice of any kind.  See Exs. 2-6 to Sprint's Motion.[1]

9-10.    Vonage does not dispute ¶¶9-10 of Sprint's Statement of Undisputed Material Facts.

11-14.    Vonage does not dispute ¶¶11-14 of Sprint's Statement of Undisputed Material Facts.  However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 5.

15.    Vonage does not dispute ¶15 of Sprint's Statement of Undisputed Material Facts.

16.    Vonage does not dispute ¶16 of Sprint's Statement of Undisputed Material Facts.

17.    Vonage does not dispute ¶17 of Sprint's Statement of Undisputed Material Facts, other than that Sprint fails to mention that Vonage reserved its right to amend its claims based on ongoing discovery.  See Vonage Holdings Corp. and Vonage America, Inc.'s First Amended Answer and Counterclaims, Docs. No. 73, 74, at Additional Defenses.

18.    Vonage does not dispute ¶18 of Sprint's Statement of Undisputed Material Facts.  However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 5.

19-20.    Vonage does not dispute ¶¶19-20 of Sprint's Statement of Undisputed Material Facts.

---

[1]    Hereinafter, Vonage's references to exhibits submitted by Sprint in support of its Motion shall be designated as "Sprint's Exhibits".

21-22.  Vonage does not dispute ¶¶21-22 of Sprint's Statement of Undisputed Material Facts.  However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 6.

23.     Vonage does not dispute ¶¶23 of Sprint's Statement of Undisputed Material Facts.

24.     Vonage does not dispute ¶¶24 of Sprint's Statement of Undisputed Material Facts.

25.     Vonage does not dispute ¶25 of Sprint's Statement of Undisputed Material Facts.  However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 6.

26.     Denied.  Sprint's representative Michael J. Setter testified that prototypes were constructed of systems within the scope of the asserted patents, which constitute products made by Sprint.  See the April 28, 2006 deposition of Michael J. Setter, Esquire, (excerpts of which are attached as Ex. A hereto) at p. 166, lines 3-5.

27.     Vonage does not dispute ¶27 of Sprint's Statement of Undisputed Material Facts.

28.     Vonage does not dispute ¶28 of Sprint's Statement of Undisputed Material Fact.

29.     Vonage does not dispute ¶29 of Sprint's Statement of Undisputed Material Facts.

30.     Denied.  Vonage has alleged laches since its original responsive pleading, which encompasses a defense of prosecution laches.

31.     Denied.   Further, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 6.

32.     Denied.  Sprint did not produce copies of the prosecution histories of the parent applications from which the asserted patents issued, nor copies of the prosecution histories of any patents related to the asserted patents, including foreign counterparts thereof.

33.-34.     Vonage does not dispute ¶¶33-34 of Sprint's Statement of Undisputed Material Facts.

35.     Vonage does not dispute ¶35 of Sprint's Statement of Undisputed Material Facts. However, Vonage Holdings served a Third Supplemental Response, and Vonage America served a Second Supplemental Response, to Plaintiff's First Set of Interrogatories on May 15, 2007 which further incorporated the April 27, 2007 Supplement to the Expert Non-Infringement Report of Joel M. Halpern.

**B.     Statement of Material Facts in Dispute**

Vonage, in further support of its opposition to Sprint's Motion for Partial Summary Judgment, and pursuant to Local Rule of Civil Procedure 56.1, submits the following Statement of Material Facts in Dispute.  Vonage respectfully submits that the very presence of the following material facts in dispute, supported by the documentation submitted herewith, under the standards of the Federal Rules of Civil Procedure, require the Court deny Sprint's motion in its entirety.

1.     Sprint's letters to Vonage prior to Sprint's filing of its Complaint in October 2005 (Sprint's "Letters," <u>see</u> Sprint's Exs. 2-6) provided Vonage no notice of its claims of alleged infringement.

2.     In Sprint's Letters, Sprint made no allegations of infringement.  <u>Id</u>.

3.     In its Letters, Sprint identified no patents or claims of patents Sprint contended were infringed by Vonage.  Instead, Sprint enclosed a CD of 43 patents Sprint were "representative" of an unidentified "patent portfolio."  <u>See</u> Sprint's Exs. 2-6.

4.     While Sprint suggested it was "willing to grant a non-exclusive license under these and other patents in its portfolio under mutually acceptable terms," Sprint's Ex. 2, and stated its willingness to meet with Vonage to discuss a possible license, Sprint's Exs. 2-6, Sprint

never suggested a license was necessary or that Vonage would be in breach of Sprint's patent rights if no such license was achieved.

5.    In the Letters, Sprint identified no Vonage product or service it claimed encroached on its purported patent rights.  Sprint's Exs. 2-6.

6.    To the contrary, Sprint only identified the patents it alleged Vonage infringed in its October 2005 Complaint.  Id., see also Sprint's First Amended Complaint (Doc. No. 2).

7.    Sprint articulated no basis for its accusations of infringement until it submitted is initial Expert Report in January 2007.  See Sprint's Response to Vonage Holdings Corp.'s Interrogatory No. 6, and its First, Second and Third Supplemental Responses thereto, attached as Exs. B to E.

      **C.    Statement of Material Facts *Not* in Dispute**

           **1.    Vonage's Claims as to 35 U.S.C. ¶112 ¶2**

8.    Every document authored by Mr. Christie states that his invention was directed to an ATM system for voice communication.  See SPRp-01-029-00001 to 00023; SPRp-01-029-00034 to 00065; SPRp-01-029-00075 to 00104 and SPRp-0007-01-00466 to 00791.  For example, the PowerPoint presentation purportedly authored by Mr. Christie on or before October 13, 1993 and relied upon by Sprint as evidence of conception of the inventions claimed in the patents-in-suit, states on its first slide - "Purpose: To describe a new switched ATM/circuit network architecture" (SPRp-01-029-00001; attached as Ex. F).  Similarly, a proposal to Sprint management authored by Mr. Christie and dated June 27, 1994, states "This project also tests concepts described in the Sprint patent application "Method, System and Apparatus for Telecommunications Control", filed May 6, 1994 [the ultimate parent of the patents-in-suit]. Both of these rely upon a new network element, the Call/Connection Manager, that can process

- 6 -

signaling messages outside of current network elements and ultimately enables transparent migration of Sprint's voice traffic onto ATM." (SPRp-01-029-00078; attached as Ex. G).

9.    Sprint has produced no document to show that Mr. Christie ever regarded his invention as including the Internet as a component.  See id.

10.    Sprint has also produced no document to show that Mr. Christie regarded an IP address as the "identifier" of the asserted claims.  See id.

11.    Sprint has produced no document to show that Mr. Christie regarded an "interworking device" to be anything other than an ATM interworking multiplexer.  See id.

12.    The testimony of current and former Sprint employees shows that Mr. Christie *rejected* the possibility of using the Internet as a part of his invention.  See, e.g., transcript of the deposition of Michael J. Gardner at p. 51, lines 2-12 (attached as Ex. H).

13.    Mr. Christie never authored or reviewed any of the claims being asserted by Sprint in this lawsuit.  See the April 28, 2006 deposition of Michael J. Setter, Esquire, (attached as Ex. A) at p. 65, lines 3-16; p. 68, lines 1-13; p. 93, lines 4-9; 109, lines 9-25; p. 120, line 10 to p. 121, line 10; p. 132, line 7, to p. 133, line 7; p. 143, line 20, to p. 144, line 17; and p. 150, line 7, to p. 151, line 11.

14.    Every asserted claim at issue here was first drafted by Sprint's patent attorneys at least three (3) years *after* Mr. Christie had died.  See id.

15.    In the parent application of the patents-in-suit that was filed while Mr. Christie was still alive and whose claims Mr. Christie reviewed, each of the independent claims contained limitations directed to elements described in Mr. Christie's initial disclosure documents, such as an "ATM interworking multiplexer".  See the April 28, 2006 deposition of Michael J. Setter, Esquire, (attached as Ex. A) at p. 53, line 12, to p. 65, line 2.

16.     Following Mr. Christie's death, Sprint removed these limitations from its claims.
See id., e.g., at p. 68, lines 1-13.

17.     In his deposition, Sprint patent counsel Michael Setter described how every claim
filed while Mr. Christie was alive included the concept of an ATM interworking multiplexer.
See id. at p. 53, line 12, to p. 65, line 2.

### 2.     Notice

18.     In its answers to interrogatories early in discovery, Sprint stated that Sprint has
not sold, and/or offered for sale, or licensed and/or offered for license any product utilizing
and/or derived from the inventions described in the Asserted Patents."  See Sprint's Responses to
Vonage Holdings Corp.'s First Set of Interrogatories, at Response to Interrogatory No. 12.

19.     In the Pretrial Order, Sprint stated as undisputed fact, "Sprint is *not aware of* any
product or service made, sold, or offered for sale by Sprint that is within the scope of any claim
of the Asserted Patents."  See Pretrial Order, Doc. No. 207, at Undisputed fact No. 38 (emphasis
added).

### 3.     Invention and Prosecution of Asserted Patents

20.     Sprint contends the telecommunication system disclosed in the Asserted Patents
was invented by Joe Christie in "the summer of 1993."  Sprint Br. at 9.

21.     Sprint admits that packet switched networks were "fairly undeveloped" at the
time of the invention.  Sprint Br. at 10.

22.     Sprint alleges that it "immediately realized" the "sea change" presented by Mr.
Christie's invention, and "[w]ithin days of Mr. Christie's presentation of his ideas  to
management, Sprint assigned a patent attorney, Mike Setter, to shadow Mr. Christie and to learn
as much as possible about the inventive aspects of his new system."  Sprint Br. at 12.

23.    Sprint admits it drafted patent applications on the fundamental concepts of Mr. Christie's VOP inventions within one year.  Sprint Br. at 12.

24.    Joseph Michael Christie, the named sole inventor on the Asserted Patents, died in February 1996.  (Pretrial Order at Undisputed Fact No. 37; Sprint Br. at 13).

25.    Following Mr. Christie's death, Sprint turned his inventions into a "vast patent portfolio."  Sprint Br. at 13.

26.    While Sprint admits to "related innovations made by people working with Mr. Christie," Sprint contends Mr. Christie is the sole inventor of the inventions in the Asserted Patents.  Sprint Br. at 13; Sprint's First Amended Complaint, Doc. No. 2, at Exs. A-G.

27.    Each of the Asserted Patents claim priority to filings made prior to Mr. Christie's death.  Each of the Asserted Patents is a continuation of one or more patent applications filed in May of 1994 and December 1995.  See Sprint's First Amended Complaint, Doc. No. 2, at Exs. A-G (each claiming priority to U.S. patent application no. 08/568,551, now U.S. Pat. No. 5,825,780 ("the '780 patent"), and U.S. patent application no.08/238,605, filed May 5, 1994, now abandoned).

28.    None of the claims of the Asserted Patents were the subject of any inventor's declaration executed by Mr. Christie.

### 4.    Prosecution Laches

29.    Measured from the date to which Sprint claimed priority to the date the Asserted Patents were issued, Sprint took an average of 8.5 years to prosecute the asserted patents, three to four times longer than the average prosecution time.  See Sprint's First Amended Complaint, Doc. No. 2, at Exs. A-G.

30.     Specifically, U.S. Patent No. 6,665,294 ("the '294 patent") issued 9 years, 7 months after its claimed priority date.  See Sprint's First Amended Complaint, Doc. No. 2, at Ex. G.

31.     U.S. Patent No. 6,633,561 ("the '561 patent") issued 9 years, 5 months after its claimed priority date.  See Sprint's First Amended Complaint, Doc. No. 2, at Ex. B.

32.     U.S. Patent No. 6,463,052 ("the '052 patent") issued 8 years, 5 months after its claimed priority date.  See Sprint's First Amended Complaint, Doc. No. 2, at Ex. C.

33.     U.S. Patent No. 6,473,429 ("the '429 patent") issued 8 years, 5 months after its claimed priority date.  See Sprint's First Amended Complaint, Doc. No. 2, at Ex. E.

34.     U.S. Patent No. 6,452,932 ("the '932 patent") issued 8 years, 4 months after its claimed priority date.  See Sprint's First Amended Complaint, Doc. No. 2, at Ex. D.

35.     U.S. Patent No. 6,304,572 ("the '572 patent") issued 7 years, 5 months after its claimed priority date.  See Sprint's First Amended Complaint, Doc. No. 2, at Ex. A.

36.     U.S. Patent No. 6,298,064 ("the '064 patent") issued 7 years, 4 months after its claimed priority date.  See Sprint's First Amended Complaint, Doc. No. 2, at Ex. F.

37.     Recent data indicates that the average prosecution time for U.S. patents was only 2.5 to 3 years between 1994 and 2000.  See Mark A. Lemley and Kimberly A. Moore, "Ending Abuse of Patent Continuations," 84 B. U. L. Rev. 63 (2004) (hereinafter "Moore").

38.     Only 1.38% of all applications filed were still pending eight years from their priority date, making Sprint's average prosecution time of 8 1/2 years, and even its shortest prosecution time (7 years, 4 months), extraordinary.  Id. at 113-114.

39.     In prosecuting the '780 patent (the original parent specification, filed May 5, 1994; see Sprint Exs. 14-21), Sprint cancelled some 142 examined claims over the course of four

office actions.  See Prosecution History of U.S. Patent No. 5,825,780 (excerpts of which are attached as Ex. I).

40.     Similarly, in prosecuting U.S. Patent No. 6,643,282, of which the '561 Patent is a continuation (Sprint's First Amended Complaint, Doc. No. 2, at Ex. B), Sprint cancelled some 291 examined claims over the course of five office actions.  See Prosecution History of U.S. Patent No. 6,643,282, excerpts of which are attached Ex. J.

41.     Patent examiner Ajit Patel examined some *thirty four* Sprint patent applications during the same time period, the vast majority of which are based on the *same two specifications* of the asserted patents. See Spreadsheet of Christie applications examined by Ajit Patel, attached as Exhibit K.

42.     Based on the specification of the '780 patent, Sprint has filed some *sixteen* continuations, rehashing claims over the same specification, *fifteen* of them being examined by Examiner Patel.  A cursory glance at a representative claim in the applications shows that Sprint is generating claims that are substantially the same, wearing down the Examiner and abusing the continuation system.  See Spreadsheet of '780 patent continuations, attached as Ex. L.

43.     In addition to the '301 patent itself, Sprint has filed some *fifteen* continuations, *eight* of them being examined by Patel.  See Spreadsheet of '301 patent continuations, attached as Ex. M).  Similar to the '780 continuations, the claims in the applications show that Sprint is generating claims that are substantially the same, wearing down the Examiner and abusing the continuation system.  See Spreadsheet of '780 patent continuations, attached as Ex. L.

44.     When Patel examined the application for the '932 and '294 Patents, it was *around the twenty sixth and thirty second times,* respectively*, he had seen a Christie application.* See Ex. O.  Examiner Patel only issued a single office action in each case, which, for the '932 patent, was

based solely on double patenting over a parent application and, for the '294 patent, was based solely on a single piece of previously-cited prior art. See Prosecution histories of the '932 patent and the '294 patent, excerpts of which are attached as Exs. N and O.

45.     In just the asserted patents and their parents, the PTO issued some 13 double patenting rejections. See Diagram depicting prosecution history of the Asserted Patents, attached as Exhibit P.

46.     Sprint's lawyers have filed some 87 patent applications, continuing to present "new" claims based on the same specifications.

47.     Sprint first filed the claims at issue in this case at least two years after Mr. Christie's death. See Diagram depicting prosecution history of the Asserted Patents, attached as Exhibit P.

48.     Sprint was amending its claims at the same time market analysis predicted industry developments making internet telephony a real challenge. See June 2002 Legg Mason Industry Update, SPRp-023-01-00061, attached as Exhibit Q, at 68-69.

### 5.    Misuse

49.     On September 8, 1995, Sprint filed the application for the '301 Patent, as approved by Joseph Christie. See '301 Patent Prosecution History, J. Christie Declaration, attached as Ex. R.

50.     The '301 Patent claims were commensurate with the specification, including the "ATM interworking multiplexer," "virtual connections" and "ATM cells" described in the disclosure. See U.S. Patent No. 5,991,301 (the "'301 Patent"), attached as Ex. S.

51.     In July of 1999, some three years after the inventor passed away and well into the internet boom, Sprint filed the '429 Patent as a continuation to the '301 Patent (see Ex. E to Sprint's First Amended Complaint, Doc. No. 2 ), which replaced "ATM interworking

multiplexer" with "interworking unit";  replaced "virtual connection" with "identifier" and replaced "ATM cells" with "asynchronous communication."

52.    The Patent Examiner had seen around nineteen (19) Sprint continuation applications at that point and issued only a single office action, based on Doshi, an ATM patent. See the Prosecution History of the '429 Patent, Office Action Dated October 4, 2000, attached as Ex. T.

53.    Sprint knew then, and at the time it filed suit against Vonage, and now knows, that the underlying patent specification does not support claims relating, or having any application, to the internet.

### 6.    Patent Claims at Issue

54.    Claims 1, 4, 9, 10, 17 and 18 of the '294 patent are directed to electro-magnetic signals.  Sprint's First Amended Complaint, Doc. No. 2, at Ex. G.

## III.    Argument

### A.    Sprint's Motion as to Vonage's Defense to Invalidity Pursuant to 35 U.S.C. §112 ¶2 Must Be Denied.

Sprint has asserted that it is entitled to summary judgment on Vonage's Second Affirmative Defense on the grounds that Vonage allegedly has no evidence to support its claim. Sprint's allegation, however, is plainly erroneous – there is ample evidence in the record for this Court to find that the asserted claims, both as filed and as issued, do not satisfy the requirements of 35 U.S.C. § 112, second paragraph, and so the asserted patents are invalid.  Importantly, the evidence must be viewed in a light most favorable to Vonage, and under this standard Vonage has produced ample evidence that supports the denial of Sprint's motion for summary judgment.

The statutory provision at issue here establishes two requirements for the scope of a claim: (i) the claim must particularly point out and distinctly claim the invention (sometimes

referred to as the "definiteness" requirement); and (ii) the claim must be directed to subject matter that the inventor regards as his invention (the "regards as" requirement).  See 35 U.S.C. § 112, ¶ 2.  Contrary to Sprint's assertion, the undisputed evidence of record in this case plainly shows that the claims of the applications that gave rise to the patents-in-suit did not satisfy this second statutory requirement, *i.e.* they were not directed to subject matter that Joseph Christie regarded as his invention, and nor are the issued claims asserted by Sprint in this lawsuit.[2]  See Statement of Material Facts Not in Dispute ("SoMF") Nos. 8-16.

In resolving issues of validity under the "regards as" provision, there must be some extrinsic evidence to show that the claims were not directed to subject matter that the inventor regards as his invention.  See In re Conley, 490 F.2d 972, 976 (C.C.P.A. 1974) (noting that the "regards as" provision has been relied on to show unpatentability "where some material submitted by [the inventor], *other than his specification*, shows that a claim does not correspond in scope with what *he regards* as his invention." (emphasis in original)).  That is, there must be something more than just the patent specification to indicate that the claims encompass subject matter beyond that which the inventor considered his invention.

In this case, Sprint has produced documents and witnesses that clearly show that the asserted claims, and the application claims from which they issued, encompass subject matter that Mr. Christie did not consider part of his invention and/or exclude components that he considered essential.  See SoMF Nos. 8-16.  This evidence is more than sufficient for this Court

---

[2]      Indeed, but for the Court's requirement that Vonage submit only a single motion for summary judgment of no more than forty (40) pages, Vonage would have sought summary judgment of invalidity on this issue.  The undisputed facts of record are more than sufficient for the Court to find that asserted the claims are invalid under 35 U.S.C. § 112, second paragraph, and Sprint has adduced absolutely no evidence to the contrary.

to find that the asserted claims are not directed to subject matter that Mr. Christie regarded as his invention, and so the asserted patents are invalid under 35 U.S.C. § 112, second paragraph.

The documents and witnesses produced by Sprint show that Mr. Christie regarded his invention as being directed to an ATM system, and included an ATM voice multiplexer (also referred to as an "ATM interworking multiplexer") as a key and essential component of that system. As Vonage identified in its responses to Sprint's discovery requests, *every single document* authored by Mr. Christie states that his invention was directed to an ATM system for voice communication, and included this ATM interworking multiplexer to convert the voice received from the conventional phone service into ATM packets. See SPRp-01-029-00001 to 00023; SPRp-01-029-00034 to 00065; SPRp-01-029-00075 to 00104; SPRp-0007-01-00466 to 00791; SoMF 8

Conversely, there is *no* documentary evidence to support the claim scope sought by Sprint. For example, Sprint has produced no document to show that Mr. Christie ever regarded his invention as including the Internet as a component. See id.; SoMF No. 9. Sprint has also produced no document to show that Mr. Christie regarded an IP address as the "identifier" of the asserted claims. See id.; SoMF No. 10. Sprint has produced no document to show that Mr. Christie regarded an "interworking device" to be anything other than an ATM interworking multiplexer. See id.; SoMF No. 11. Thus, to the extent any of the asserted claims are construed to provide the scope sought by Sprint, they do not reflect what Mr. Christie described in writing as his invention.

Moreover, the witnesses produced by Sprint also show that Mr. Christie did not regard his invention as encompassing that subject matter Sprint now seeks to cover in this lawsuit, including the Internet. Rather, the testimony of current and former Sprint employees shows that

- 15 -

Mr. Christie *rejected* the possibility of using the Internet as a part of his invention.  See, e.g.,
Michael J. Gardner Dep Tr. at p. 51, lines 2-12; SoMF No. 12.

 In considering whether the claims reflect Mr. Christie's invention, it is highly significant
that Mr. Christie *never* authored or reviewed any of the claims being asserted by Sprint in this
lawsuit.  See the April 28, 2006 deposition of Michael J. Setter, Esquire, at p. 65, lines 3-16; p.
68, lines 1-13; p. 93, lines 4-9; 109, lines 9-25; p. 120, line 10 to p. 121, line 10; p. 132, line 7, to
p. 133, line 7; p. 143, line 20, to p. 144, line 17; p. 150, line 7, to p. 151, line 11; SoMF No. 13.
Rather, every asserted claim at issue here was first drafted by Sprint's patent attorneys at least 3
years *after* Mr. Christie had died.  See id.; SoMF No. 14.  In a parent patent application that was
filed while Mr. Christie was still alive, and whose claims Mr. Christie reviewed, every single one
of the claims contained limitations directed to elements described in Mr. Christie's initial
disclosure documents.  See the April 28, 2006 deposition of Michael J. Setter, Esquire, at p. 53,
line 12, to p. 65, line 2; SoMF No. 15.  For example, all of independent claims in the parent
application filed while Mr. Christie was alive required or referred to an "ATM interworking
multiplexer" as an element.  See id.; SoMF No. 15.  The removal of these claim limitations in the
present claims by Sprint's attorneys years after the death of the inventor is directly contrary to
§112, ¶ 2.

 The documents and witnesses produced also show that all of the asserted claims do not
include components that Mr. Christie considered a necessary part of his invention, such as the
ATM interworking multiplexer.  See, e.g., Michael J. Setter Dep. Tr. 04/28/06 at p. 56, line 19 to
p.65, line 2 (describing how every claim filed while Mr. Christie was alive included the concept
of an ATM interworking multiplexer); SoMF No. 15.

Based on these documents and witnesses, and the lack of any contrary evidence by Sprint, this Court should conclude that Sprint's asserted claims are not directed to subject matter that Mr. Christie regarded as his invention, and nor were the application claims from which they issued. Indeed, in view of the vast weight of this evidence and the utter absence of any evidence to the contrary, this Court should find that Sprint has far exceeded the scope of what Mr. Christie considered his invention by eliminating key components of the system, including the ATM interworking multiplexer, and encompassing networks that Mr. Christie did not think would work with his invention, such as the Internet.

The crux of Sprint's demand for summary judgment is the assertion that one of Vonage's experts, Mr. Frank Koperda, did not offer an opinion as to whether the asserted claims are sufficiently definite to meet the statutory requirements. Even if true, however, Sprint is ignoring the second requirement of 35 U.S.C. § 112, second paragraph, *viz.,* the claims must be directed to subject matter *that the inventor regards as his invention*. Mr. Koperda's opinion is essentially irrelevant to whether the applications that gave rise to the asserted patents contained claims directed to the devices and methods that Mr. Christie regarded as his invention.[3]

Final resolution of this issue will ultimately depend on the Court's construction of Sprint's asserted claims. Indeed, Vonage concedes that its Second Defense would be obviated if the Court were to adopt certain constructions for claim terms such as "identifier", "interworking device" and "packet communication system". That is, if the Court construes an "identifier" to be

---

[3]    Because Mr. Christie is now dead, the testimony of Sprint would be relevant in this regard as Sprint was both Mr. Christie's employer at the time the invention was made as well as the assignee of the asserted patents. However, in ongoing defiance of the Court's order granting Vonage's motion to compel, Sprint has repeatedly refused, and continues to refuse, to produce a witness under Rule 30(b)(6) to testify on the structure and operation of the devices and methods invented by Mr. Christie.

"a VPI/VCI combination", then Vonage would agree that this term is commensurate in scope with the subject matter that Mr. Christie regarded as his invention. If, however, the Court construes an "identifier" to include "an IP address" then Vonage submits that the evidence of record clearly shows this to be beyond the scope of what Mr. Christie regarded as his invention and so the claims should therefore be found invalid.

Without having construed the asserted claims, there is no basis for this Court to grant Sprint's motion for partial summary judgment on Vonage's Second Affirmative Defense. Once these claims have been construed, however, if they are construed in the manner asserted by Sprint, then all of the evidence in this case clearly shows that these claims are invalid under 35 U.S.C. § 112, second paragraph. Sprint has presented absolutely no evidence to show that Mr. Christie ever considered his invention to encompass the systems and methods that Sprint seeks to cover by the asserted claims. Thus, if summary judgment is to be granted on Vonage's Second Affirmative Defense, then it should be granted to *Vonage*, and against Sprint, as to all of the patents-in-suit. At a minimum, Vonage has at least met its burden of raising sufficient material facts in dispute such that Sprint's motion must be denied.

### B.    Vonage's Seventh Affirmative Defense Survives Summary Judgment.

Sprint alleges Vonage's Seventh Affirmative defense fails for the same reasons as its defense pursuant to 35 U.S.C. §112. For the reasons set forth in the preceding section, the Court should deny Sprint's Motion on this point as well.

### C.    Pursuant to Rule 56(f), the Court Must Deny or Defer Consideration of Sprint's Motion as to Vonage's Fifth Affirmative Defense (Equitable Defenses)

Pursuant to Fed. R. Civ. P. 56(f), Vonage provides an accompanying affidavit stating the reasons why Vonage cannot present facts essential to Vonage's opposition to Sprint's motion for summary judgment on Vonage's equitable defenses. As provided in more detail in Vonage's

Rule 56(f) affidavit, Vonage is unable to present essential facts to supports it opposition at this time due to (1) Sprint has not provided responsive documents relevant to Vonage's Fifth Affirmative defense, and (2) Magistrate Judge Waxse's Orders of May 14 and May 16, presently subject to Vonage's Objections and Motion for Review, relating to Sprint's conduct with Cisco and subsequent licensing and covenant not to sue granted to Cisco and its customers. Accordingly, Vonage requests that the Court deny Sprint's motion for summary judgment with respect to Vonage's Fifth Affirmative defense, or in the alternative, order a continuance to allow Vonage to complete its discovery on this matter and allow resolution of Vonage's pending objections to and Motion for Review of the orders.  Cf. Miller v. Auto. Club of New Mexico, Inc., 420 F.3d 1098, 1118 (10th Cir. 2005) (finding that nonmovant's *failure* to file a Rule 56(f) affidavit "undermines her challenge to the magistrate judge's discovery order," as well as to the summary judgment motion); Campbell v. Meredith Corp., No. 00-2275, 2003 U.S. Dist. LEXIS 3703 (D. Kan. March 7, 2003) (denying Rule 56(f) request based on magistrate judge's order where movant had made no challenge to such order pursuant to Fed. R. Civ. P. 72(a)).

Because Vonage's defense of prosecution laches does not rely on evidence subject to its Rule 56(f) motion, Vonage sets forth its opposition to Sprints motion for summary judgment on prosecution laches below.

### 1. Sprint's Challenge to Vonage's Defense of Prosecution Laches is Insufficient.

Sprint asks the Court to enter summary judgment on Vonage's defense of laches because Vonage "mentioned for the first time that it was asserting a defense of prosecution laches" in the pretrial order "which was submitted to the Court over a week after discovery closed."  Sprint Br. at 21.  Sprint's assertion is without merit as Vonage has properly pled its laches defense and sufficient material facts remain in dispute to deny Sprint's motion.

          a.         **Vonage's pleading of laches encompasses prosecution laches.**

Sprint offers no support for its contention that Vonage's defense of laches is insufficient to state a claim of prosecution laches. To the contrary, the case Sprint offers in support of its argument implicitly rejects Sprint's contention as unfounded.

> In *Symbol Technologies, Inc. v. Lemelson Medical*, the Federal Circuit held that "the equitable doctrine of *laches* may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in prosecution even though the applicant complied with pertinent statutes and rules." 277 F.3d 1361 (Fed. Cir. 2002).

Kothmann Enters. v. Trinity Indus., 455 F. Supp. 2d 608, 645 (S.D. Tex. 2006) (Sprint Br. at 22) (emphasis added); see also Stambler v. RSA Sec., Inc., 243 F. Supp. 2d 74, 75 (D. Del. 2003) (Sprint Br. at 22) (citing same). Indeed, in determining that prosecution laches is a viable affirmative defense to patent infringement, the Symbol Technologies Court based its decision on an interpretation of the legislative history of the 1952 Patent Act. See Symbol Technologies, Inc. v. Lemelson Medical, 277 F.3d 1361 (Fed. Cir. 2002). In determining which defenses to patent infringement were contemplated by the 1952 Patent Act, the Federal Circuit pointed to language in the legislative history that stated, ". . . this would include the defenses such as ... laches, estoppel and unclean hands." Symbol Techs., Inc. v. Lemelson Medical, 277 F.3d 1361, 1366 (Fed. Cir. 2002) (citing the Commentary on the New Patent Act, 75 J. Pat. & Trademark Off. Soc'y at 215). Based on this excerpt from the legislative history, the Federal Circuit stated, "it is apparent ... that the drafters thought the defense of laches would be available ... and precedent has since recognized *the prosecution form of laches*." Id. (emphasis added).

Sprint cites no standards of pleading not met by the laches defense Vonage alleged in its original answer to Sprint's Complaint (Doc. Nos. 73, 74) and the cases Sprint relies on confirms there are none. See Kothmann, 455 F. Supp. 2d at 646 ("The standard of proof and type of evidence necessary to establish prosecution laches are unclear," citing Stambler, 243 F. Supp. 2d

at 75 as "lamenting lack of guidance on the legal standards applicable to the prosecution laches defense").

For these and the reasons below, Sprint's objection to the Pretrial Order, couched as a motion for summary judgment, is without merit.

> **b.    Vonage's claim for prosecution laches is based on documents of public record and which Sprint has produced in discovery.**

As Sprint provides no authority for its suggestion that pleading laches is not sufficient to plead claim of *prosecution* laches, the Court should deny its motion.  See, e.g., In re Abbott Labs., 442 F. Supp. 2d 800, 804 (N.D. Cal. 2006) (If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition, even though the non-moving party bears the ultimate burden of persuasion at trial; citing cases).

> **c.    By Sprint's own admission, there are material facts supporting Vonage's claim for prosecution laches.**

As detailed in the Pretrial Order,

> "The Asserted Patents are unenforceable on the grounds of prosecution laches.  The sole inventor of the Asserted Patents died in 1996, and made his only patent filings on his purported inventions in 1995. Through continued terminal disclaimers, and a seemingly endless stream of subsequent filings, Sprint inappropriately seeks to stretch a purported invention in 1995 to cover technology that has only come to the fore years later. In so doing, Sprint has wrongfully manipulated the term and scope of its patent protection so that term of its monopoly will square with the period when the commercial application of and profit from its purported invention might be highest, and stretched the scope of Mr. Christie's original invention beyond any claims it could rightfully support.

Pretrial Order, Doc. No. 207, at 10-11.

In deciding whether Sprint misused the patent system so as to render its patents unenforceable on the grounds of prosecution laches, the Court is to consider the prosecution history as a whole (Stambler, 243 F. Supp. 2d at 76).  As an overview, prosecution laches can

render a patent unenforceable when the patent issues after an unreasonable and unexplained delay in prosecution.  Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., LP, 422 F.3d 1378, 1385 (Fed. Cir. 2005).  In determining the applicability of prosecution laches, it is necessary to examine "the totality of the circumstances, *including the prosecution history* of all of a series of related patents and the overall delay in issuing claims."  Id. at 1386. (emphasis added).  There are no strict time limits for determining whether continuously re-filing various patent applications amount to a finding of prosecution laches.  Id. at 1385. Multiple examples of repetitive patent filings and re-filings demonstrating a pattern of unjustifiably delayed patent prosecution may constitute prosecution laches.  Id. at 1386.

For each of the Asserted Patents, the record is replete with voluminous prosecution histories, all of which contain information that could lead to a finding of prosecution laches.  In refuting Sprint's assertions, there is in actuality a significant well of evidence from which Vonage can draw in carrying its proof of burden at trial.

In its Motion, Sprint proudly declares that the invention embodied in the Asserted Patents was conceived, top to bottom, in 1993, and immediately recognized by Sprint in 1993 to have applications to Internet Protocol networks.  Sprint contends that Mr. Christie conceived of the inventions in 1993, and that that every aspect of the Asserted Patents was invented solely by him prior to his death in February 1996.  Sprint's very contentions suggest, on their face, that Sprint's continued withdrawal of Mr. Christie's patent claims following his death, and continued supplementing, amending and broadening of the claims of the Christie patents, a decade after the sole inventor finished his work is little more than an attempt to extend the reach of its patent protection in a way the law does not allow.

### i.    Sprint's prosecution time was extraordinarily long.

Measured from the date to which Sprint claimed priority to the date the Asserted Patents were issued, Sprint took an average of 8.5 years to prosecute the asserted patents, three to four times longer than the average prosecution time.  <u>See</u> Sprint's First Amended Complaint, Doc. No. 2, at Exs. A-G.  Recent data indicates that the average prosecution time for U.S. patents was only 2.5 to 3 years between 1994 and 2000.  <u>See</u> Mark A. Lemley and Kimberly A. Moore, "Ending Abuse of Patent Continuations," 84 B. U. L. Rev. 63 (2004) ("Moore").  Only 1.38% of all applications filed were still pending eight years from their priority date, making Sprint's average prosecution time of 8/5 years, and even its shortest prosecution time (7.33 years; see '064 Patent, Sprint's First Amended Complaint, Doc. No. 2, Ex. F), extraordinary.  <u>Id</u>. at 113-114.  As there is no hard or fast rule for the length of time necessary to establish prosecution laches, Vonage submits the public record raises genuine issues of material fact as to this defense, and summary judgment must be denied.

### ii.    Sprint overwhelmed the PTO examiners in its prosecution of the Asserted and related Patents.

In the parent applications to the asserted patents, Sprint submitted extensive claim changes and argument.  For example, in prosecuting the '780 patent (the original parent specification, filed May 5, 1994; <u>see</u> Sprint Exs. 14-21), Sprint cancelled some 142 examined claims over the course of four office actions.  <u>See</u> Prosecution History of U.S. Patent No. 5,825,780 attached as Ex. I.  Similarly, in prosecuting U.S. Patent No. 6,643,282, of which the '561 Patent is a continuation (Sprint's First Amended Complaint, Doc. No. 2, Ex. B), Sprint cancelled some 291 examined claims over the course of five office actions.  At Sprint's behest, Examiner Ajit Patel examined some *thirty four* Sprint patent applications during the same time

period, the vast majority of which are based on the *same two specifications* of the asserted patents. See Ex. K.

Based on the specification of the '780 patent, Sprint has filed some *sixteen* continuations, rehashing claims over the same specification, *fifteen* of them being examined by Examiner Patel. A cursory glance at a representative claim in the applications shows that Sprint is generating claims that are substantially the same, wearing down the Examiner and abusing the continuation system. See Ex. L.[4]

As Federal Circuit Judge Moore explained: "[s]ince an examiner can only finally dispose of an application by allowing it, an examiner faced with a determined applicant has every incentive to give in and allow the patent." See Moore at 75. Further, "the structure of the PTO suggests that continuations may well succeed in "wearing down" the examiner, so that the applicant obtains a broad patent not because he deserves one, but because the examiner has neither incentive nor will to hold out any longer." Id. at 65.

Examiner Patel showed signs of being worn down in several of the asserted patents. By way of example, when Patel examined the application for the '932 and '294 Patents (Sprint's First Amended Complaint, Doc. No. 2, Exs. D and G), patent, it was *around the twenty sixth and thirty second times, respectively, he had seen a Christie application.* See Exs. L and M. Examiner Patel only issued a single office action, which was based solely on double patenting over a parent application. See Exs. N and O.

---

[4]       In addition to the '301 patent itself, Sprint has filed some *fifteen* continuations, *eight* of them being examined by Patel.  See Ex. M.  Similar to the '780 continuations, the claims in the applications shows that Sprint is generating claims that are substantially the same, wearing down the Examiner and abusing the continuation system.  See Ex. L.

### iii.    Sprint's abuse of the continuation process led to unapologetic double patenting.

In just the asserted patents and their parents, the PTO issued some 13 double patenting rejections.  See Ex. P.  The public record reflects that Sprint took extensive, multiple bites at the apple, churning out hundreds of claims over the same invention.

Despite the double patenting prohibition, Sprint's lawyers have filed some 87 patent applications, continuing to present "new" claims based on the same specifications, *over thirteen years after his purported revolutionary and complete conception of his inventions.*

The facts of Sprint's delay are further unreasonable in that the inventor died in 1996, at least two years before Sprint's attorneys filed any of the claims in the present litigation at the PTO.  See Ex. P.  Contrary to what Sprint suggests through its incessant corrections and filings, *Joe Christie has not invented anything new nor approved any of the claims Sprint's lawyers assert against Vonage.*

### iv.    Sprint tried to broaden claims to capture technology developed by others

"One of the most egregious abuses of continuation applications . . . is the use of the process to change patent claims to track inventions first made by one of the applicant's competitors."  See Moore at 107.  "In the most extreme cases, patent applicants add claims during the continuation process to cover ideas they never thought of themselves but instead learned from a competitor."  Id. at 76.

Sprint was amending its claims at the same time market analysis predicted industry developments making internet telephony a real challenge.  See June 2002 Legg Mason Industry Update, SPRp-023-01-00061, at 68-69, attached as Ex. Q.)

Substantively, drawing reasonable inferences from the factual record in favor of Vonage, the record demonstrates that there are genuine issues of material fact whether Sprint's

prosecution of the applications for the Asserted Patents to stretch inventions admittedly (1) made in 1993 and (2) fully perfected before February 1996 (3) relating to an undeveloped technology to cover today's cutting-edge internet telephony systems, particularly Sprint's jettisoning of all claims approved by the inventor himself after his death to concoct wholly new ones, and its waiting for years to prosecute patents necessarily completed (by virtue of Mr. Christie's status as the sole inventor) before February 1996, constitutes prosecution laches sufficient to preclude Sprint's enforcement of the Asserted Patents against Vonage.

### D. Vonage's Defenses of Unclean Hands and Patent Misuse are Supported by Law and Fact.

Sprint contends Vonage's claims of patent misuse and unclean hands are "based on nothing more than "Vonage's belief it will prevail in this case."  To the contrary, they are based on Sprint's knowing and underhanded conduct in relation to its procurement and enforcement of the Asserted Patents, and deliberate postmortem attempts to rewrite the inventions of Mr. Christie.

Patent misuse is an affirmative defense to an accusation of patent infringement, the successful assertion of which "requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect."  Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1997) (Sprint Br. at 27).  Vonage has done so.

As described in Vonage's Motion for Summary Judgment, and in greater detail in the statement of material facts above, by seeking to extend its patent rights beyond the ATM systems to which they are limited, Sprint is seeking to acquire and enforce its monopoly power in that market through restrictive or exclusionary conduct.

For example, on September 8, 1995, Sprint filed the application for the '301 Patent, as approved by Joseph Christie.  See Ex R.  The '301 Patent claims were commensurate with the specification, including the "ATM interworking multiplexer," "virtual connections" and "ATM cells" described in the disclosure.  See Ex. S.  In July of 1999, some three years after the inventor passed away and well into the internet boom, Sprint filed the '429 continuation, which replaced "ATM interworking multiplexer" with "interworking unit;" replaced "virtual connection" with "identifier"; replaced "ATM cells" with "asynchronous communication."  The Examiner had seen around nineteen Sprint continuation applications at that point and issued only a single office action, based on Doshi, an ATM patent.  See Ex. T.

As Sprint improperly attempts to extend the claims of the asserted patents beyond the scope Sprint knows it is entitled to, Sprint is conducting patent misuse.

As noted in the very cases upon which Sprint purports to rely in support of its contention that Vonage has stated no claim for misuse, "the bringing of a lawsuit to enforce legal rights does not itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade."  Raines v. Switch Manufacturing, No. C-96-2648 DLJ, 1997 WL 578547 *4 (N.D.Cal. July 28, 1997) (Sprint Br. at 27), citing Gaverbel Societe Anonyme v. Northlake Marketing & Supply Inc., 45 F.3d 1550, 33 USPQ2d 1496, 1501 (Fed.Cir.1995) citing American Tobacco Co. v. United States, 328 U.S. 781, 809, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946) (holding that otherwise lawful acts, when done to give effect to conspiracy to restrain trade, are forbidden).

Further, "claims must be construed in accordance with the rest of the specification of which they are a part, and not contrary to it."  C.R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d

1340, 1360 (Fed. Cir. 1998) (Sprint Br. at 27).  As the Virginia Panel Court confirmed, "a patentee may lawfully police a market that is *effectively* defined by its patent."  133 F.3d 860.

As the defendant in <u>Raines</u>, Sprint here "fails to acknowledge... what this Court held in *Advanced Cardiovascular*, namely that 'defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when <u>plaintiff</u> filed the present action.'"  1997 WL 578547 at *4.  Vonage has done so.

Although Sprint relies on the <u>Virginia Panel</u> decision in support of <u>its</u> position, that reliance is misplaced.  As one court has noted, while the <u>Virginia Panel</u> court found that none of the conduct the defendant relied on constituted misuse,

> [t]he court did so, however, in the context of an appeal from a judgment entered on a jury verdict after a full trial, and ...[t]hus, the court had before it a fully-developed record upon which to assess the evidentiary sufficiency of the basis for the jury's verdict.  That is obviously not the situation that exists here, where no evidence has yet been presented to the court regarding the alleged patent misuse.  Indeed, the court in Virginia Panel, in discussing the "rule of reason," stated that "the *finder of fact* must decide whether the questioned practice imposes an unreasonable restraint on competition ... ."  133 F.3d at 869.

<u>Bausch & Lomb v. Allergan, Inc.</u>, 136 F. Supp. 2d 166, 171 (W.D.N.Y. 2001) (finding defendant sufficiently pled misuse over plaintiff's assertion of <u>Virginia Panel</u> because trier of fact had yet to hear evidence) (emphasis in original).

Sprint challenges Vonage's defense of unclean hands on the identical basis.  (Sprint Br. at 27-28).  For the reasons discussed above in connection with its allegations of misuse, and other discovery misconduct described in this submission, <u>see</u> <u>Bio-Technology Gen. Corp. v. Genentech, Inc.</u>, 80 F.3d 1553, 1565 (Fed. Cir. 1996) (Sprint Br. at 20), there are such material issues of fact in dispute that Sprint's Motion is inappropriate as to these claims, and must be denied.

Moreover, contrary to Sprint's assertions, Vonage's defense of unclean hands is not based solely on patent misuse, and so is not limited to the same facts as patent misuse. As described above, Vonage provides an accompanying affidavit stating the reasons why Vonage cannot present facts essential to Vonage's opposition to Sprint's motion for summary judgment on Vonage's equitable defenses. Accordingly, at the very least, Vonage requests that the Court deny Sprint's motion for summary judgment with respect to Vonage's unclean hands defense, or in the alternative, order a continuance to allow Vonage to complete its discovery on this matter and allow resolution of Vonage's pending objections to and Motion for Review of the orders.

### E.    Vonage's Ninth Affirmative Defense (35 U.S.C. §287) Withstands Summary Judgment.

Summary judgment on Vonage's Ninth Affirmative Defense that the Complaint and demand for relief are barred, in whole or in part, by 35 U.S.C. § 287 is *not* appropriate in view of the significant number of genuine issues of material fact relating to this defense.

Under 35 U.S.C. § 287, in order for a patentee to recover any damages for infringement, the patentee, or his licensee, must mark all articles embodying the claims of the patent with the relevant patent number, or, absent sufficient marking, the patentee must prove that notice of alleged infringement was provided to the infringer and that the infringer continued to infringe thereafter. In other words, "the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" Gart v. Logitech, Inc., 254 F.3d 1334, 1345 (Fed. Cir. 2001). Actual notice of infringement is established with the filing of an infringement action against the alleged infringer. To establish actual notice prior to the filing of a complaint, the patentee must prove that he provided to the infringer actual notice of the alleged infringement, not merely notice of the existence of the asserted patent. Amsted Indus. v. Buckeye Steel

Castings, 24 F.3d 178, 187 (Fed. Cir. 1994) ("For purposes of section 287(a), notice must be of the 'infringement,' not merely notice of the patent's existence or ownership.").  "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."  Id.  A communication without a specific charge of infringement is "merely informational" and does not satisfy Section 287.  Id.

As demonstrated by Sprint's own statements, in its Motion and the materials Sprint offers in support of its Motion, Sprint has not met and can not meet its burden of establishing that there is no genuine issue of material fact with respect to Vonage's defense that Sprint's demand for relief is barred in whole or in part under Section 287.  Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002) ("[F]amiliar Rule 56 principles impose on . . . movants the initial burden of establishing the lack of a genuine issue of material fact.").

> 1.     **Sprint Confirms There are Genuine Issues of Material Fact in Dispute as to Whether There Are Products or Services Required to be Marked Under Section 287.**

Regarding the duty under Section 287 to mark any product embodying asserted patents, Sprint relies on the equivocal statement that "Sprint is *not aware* of any product or service made, sold, or offered for sale *by Sprint* that is within the scope of any claim of Sprint's Asserted Patents."  (Sprint Br. SOF ¶ 26; Pretrial Order § 4.a, ¶ 38 (emphasis added).)  Sprint's own statement, on its face, documents that material facts still to be resolved regarding Vonage's Section 287 defense.  First, Section 287 requires that patentees, and any other "persons making, offering for sale, or selling within the United States any patented article for or under them or importing any patented article into the United States" – give notice to the public by marking the article embodying the asserted patent.  35 U.S.C. § 287.  Given that Sprint  apparently authorized Cisco to make, manufacture, and sell products using Mr. Christie's technology, which, depending on the resolution of certain outstanding factual issues, may include some or all of the

asserted patents, the representation that no "product or service made, sold, or offered for sale *by Sprint* falls within the scope of any claim of the asserted patents" is not dispositive, as a matter of law, of whether damages are barred, in whole or in part, under Section 287.  (See Sprint/Cisco License Agreement (Dec. 12, 1998), SPRe-12-01-00849 – 00872; Sprint-Cisco Alliance Agreement (Dec. 17, 1998), SPRe-012-01-00792 – 00848; Statement of Work # JCS2000-K9497000 (Dec. 17, 1998), SPRe-012-01-01022 - 01066; see also Sprint Br. at 13 (stating that JCS2000 was the project name for developing Christie inventions and Asserted Patents).)  In other words, it remains to be resolved whether products or services sold by parties other than Sprint pursuant to licensing or business relationships were required to be marked with the numbers of any of the asserted patents.  Sprint makes no contention that *no* product or service embodying the asserted patents has been made, sold, or offered for sale.  Rather, even after the close of discovery, Sprint hedges by stating that "*Sprint is not aware*" of any such product or service made, sold, or offered for sale.  Whether this qualifier indicates that Sprint has not conducted sufficient factual discovery or patent analysis to make a definite statement on this point or whether there is simply nothing for Sprint to point to in order to establish the absence of genuine issues of material fact on this point, summary judgment is not appropriate.  Whether there are products or services subject to the marking provisions of Section 287 is a material fact in dispute, and Sprint's motion only confirms this.

**2.    Sprint Confirms There Are Genuine Issues of Material Fact in Dispute as to When Sprint Provided Notice to Vonage Under Section 287.**

Putting aside for the moment Sprint's ambiguous statement of "undisputed fact" on the marking issue, absent a stipulation from Sprint that notice of alleged infringement of the asserted patents was not provided to Vonage until the Complaint in this matter was filed, there remain a number of genuine issues of material fact regarding when Vonage received notice sufficient for

the potential accrual of damages under Section 287.  Gart, 254 F.3d at 1339 ("[C]ompliance with

the marking statute, 35 U.S.C. § 287(a), is a question of fact. Thus, this issue is properly decided

upon summary judgment when no reasonable jury could find that the patentee either has or has

not provided actual notice to the particular defendants by informing them of his patent and of

their infringement of it.") (citations and quotations omitted).  To date Sprint has taken no clear

position on when it provided notice of alleged infringement to Vonage.  This much is clear from

Sprint's statement of undisputed facts, where Sprint asserts that "Sprint, through its counsel,

provided notice *of its patent rights* to Vonage in five separate letters, from July 13, 2004 to July

15, 2005"; "Vonage received each of these five letters"; and "Sprint filed its initial Complaint

against Vonage for patent infringement on October 4, 2005."  (Sprint Br. SOF ¶¶ 8-10 (emphasis

added); see also Sprint's 3d Supp. Resp. to Vonage's First Set of Interrogs., Nos. 7 (May 17,

2007) ("Vonage had knowledge *of the Asserted Patents* at least as early as July 13, 2004 . . . .

Subsequent notice of the Asserted Patents was transmitted to Vonage on multiple occasions . . .

.") (emphasis added).)  Based on Sprint's statements so far, it is unclear when Sprint alleges that

it gave notice of the alleged infringement to Vonage.  As notice under Section 287 is material to

the potential accrual of damages if Sprint is ever able to establish liability in this matter, based on

this reason alone, summary judgment is not warranted.

If Sprint's as-yet-unstated position is that notice of infringement of the asserted patents

was actually provided to Vonage at any time prior to the filing of the Complaint in this matter,

there are a number of disputed factual issues that preclude summary judgment.  As noted above,

Section 287 requires an "affirmative communication of a specific charge of infringement by a

specific accused product or device," not merely notice of the patents.  Amsted Indus., 24 F.3d at

187.  Sprint admits that the letter it allegedly sent to Vonage on July 15, 2005 "provided notice

of its patent rights" only, and that Vonage supposedly thereby "had knowledge of the Asserted Patents," not of any specific charge of infringement.  (Sprint Br. at SOF ¶ 8; Sprint's 3d Supp. Resp. to Vonage's First Set of Interrogs., No. 7.)  Accordingly, Sprint admits that notice under Section 287 was not provided by this July 15, 2005 letter.  Every subsequent letter referenced by Sprint also failed to provide sufficient notice under Section 287 for the same reason: none contained any affirmative communication of a specific charge of infringement by a specific accused product or device.  (See Sprint Br. at Exs. 2-6.)  Sprint, in its letters, made no charge of infringement, named no Vonage product or service at issue, and failed even to identify what patents were at issue.  (See Sprint Br. at Exs. 2-3 (referencing 43 unnamed "representative Sprint patents"; see also Sprint Br. at Exs. 4-5 (referring to nothing more specific than Sprint's "patent portfolio").)  On their face, Sprint's letters are nothing more than nebulous invitations to discuss a business relationship – hardly the notice of infringement required by Section 287 and governing precedent.  See, e.g., Gart, 254 F. 3d at 1346; Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001); Amsted Indus., 24 F.3d at 187.  The contrast between what Sprint argues in its Motion, and the plain text of the documents on which it relies in support of its argument, demonstrate the material issues of fact in dispute as to when Vonage received the notice required by Section 287.

In view of the above, Sprint obviously has not carried its burden in establishing that there are no genuine issues of material fact regarding Vonage's Ninth Affirmative Defense regarding 35 U.S.C. § 287.  Accordingly, the Court should deny Sprint summary judgment on this point.

### F.    Sprint's Motion as to Vonage's Defense Pursuant to 35 U.S.C. §101 is Both Premature and Misplaced.

Sprint has asserted that it is entitled to summary judgment on Vonage's claim that the Asserted Patents are invalid under 35 U.S.C. §101 ("§101").  Sprint's grounds for this assertion

are that Vonage has allegedly "not provided any evidence to support its claim" in Vonage's

expert reports.  Regardless of whether Vonage's expert reports address this issue, there is ample

evidence in this case for the Court to find that at least claims 1, 4, 9, 10, 17 and 18 of the '294

Patent are invalid under §101 for failing to define patentable subject matter.  Whether a claim is

invalid under §101 first requires that the Court construe the claims, and next to determine

whether the claimed subject matter falls within one of the four classes of subject matter eligible

for patent protection under §101.  Thus, the inquiry is purely legal (see, e.g., Markman v.

Westview Instruments, Inc., 52 F.3d 967, 976, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S.

370 (1996) (claim construction is a matter of law for the Court alone to decide)), and therefore

Sprint's assertion that it is entitled to summary judgment because Vonage's experts did not opine

on the issue is erroneous, and its motion should be denied.

Claims 1, 4, 9, 10, 17 and 18 of the '294 Patent are directed to electro-magnetic signals.

(Sprint's First Amended Complaint, Doc. No. 2, at Ex. G).  Claims directed to electro-magnetic

signals recite nothing but the physical characteristics of a form of energy and/or magnetism and,

as such, are directed to non-statutory subject matter.  Indeed, a "signal" does not fall within any

of the statutory categories of patentable subject matter set forth in title 35 of the United States

Code.  Rather, the only categories of patentable subject matter recognized under the applicable

statute are "any new and useful process, machine, manufacture, or composition of matter . . . ."

35 U.S.C. § 101.  Even when embodied in a tangible medium, however, a "signal" is not a

process, a machine, a manufacture or a composition of matter.  Cf. In re Schrader, 22 F.3d 290

(Fed. Cir. 1994), *reh'g denied*, 1994 U.S. App. LEXIS 10544 (Fed. Cir. May 5, 1994) (where

claimed invention was no more than an application of a mathematical algorithm, which was not

applied to or limited by physical elements or process steps, appellant's claim failed for lack of statutory subject matter.)

First, a "signal" is clearly not a "process" because, inter alia, it is not a series of steps or actions to be performed.  See 35 U.S.C. §100(b) ("The term 'process' means process, art, or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material.").  Nor is a "signal" one of the statutory tangible, physical products, such as a machine, manufacture or composition of matter.

The category of "machine" includes "every mechanical device or combination of mechanical devices or combination of mechanical powers and devices to perform some function and produce a certain effect or result."  Corning v. Burden, 56 U.S. (15 How.) 252, 267 (1854).  A signal, however, has no physical structure and does not itself perform any function or produce any concrete and/or tangible effect or result.  A signal therefore does not come within the recognized description of a statutory machine.

The category of "composition of matter" includes "all compositions of two or more substances and includes all composite articles, whether they be results of chemical union, or of mechanical mixture, or whether they be gases, fluids, powders or solids."  Shell Development Co. v. Watson, 149 F. Supp. 279, 280 (D.D.C. 1957), aff'd, 252 F.2d 861 (D.C. Cir. 1958).  A signal, however, is a form of energy not matter.  As such, a signal cannot be a statutory composition of matter.

Finally, the Supreme Court has stated that "manufacture" means "the production of articles for use from raw or prepared materials by giving to these materials new forms, qualities, properties, or combinations, whether by hand-labor or by machinery."  Diamond v. Chakrabarty, 447 U.S. 303, 308 (1980).  Thus, a "manufacture" requires some sort of physical, tangible

substance.  Because a signal is only a transitory form of energy, however, a signal does not

constitute a manufacture under the statute.

Accordingly, although not yet construed by the Court, it is undisputed that claims 1, 4, 9,

10, 17 and 18 of the '294 Patent are each directed to electro-magnetic signals.  These claims are

therefore all invalid under 35 U.S.C. § 101 for failing to define patentable subject matter.

### G.     Vonage's Claims of Unenforceability Must Stand.

Sprint contends that Vonage's defense of unenforceablity is limited to an allegation of

misuse.  (Sprint Br.at 30).  In so arguing, Sprint again ignores the very law on which it relies:

> The defenses which may be raised in an action involving the validity or
> infringement of a patent are [:] . . . . 'Noninfringement, absence of liability for
> infringement, or unenforceability' [35 U.S.C. § 282] [;] . . . this would include . . .
> equitable defenses such as laches, estoppel and unclean hands.

A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1029 (Fed. Cir. 1992) (Sprint

Br. at 24).  (citing commentary to patent statute and other authorities).

Sprint's faulty premise notwithstanding, because summary judgment is inappropriate on

Vonage's defense of misuse, not to mention the other equitable defenses discussed herein,

Sprint's Motion must fail as to Vonage's Counterclaim III as well.

### H.     Vonage's Expert is Qualified to Offer Testimony on Sprint's Contentions of
   Infringement and Vonage's Defenses Thereto.

Sprint has asserted that it is entitled to summary judgment on Vonage's defense and

counterclaim of non-infringement.  As grounds for this assertion, Sprint has alleged that

Vonage's "only" evidence is the opinions of Mr. Joel Halpern and that these opinions should be

excluded because Mr. Halpern is not a person of ordinary skill in the art.  Both of Sprint's

allegations, however, are clearly erroneous and so Sprint is plainly not entitled to summary

judgment on either Vonage's Fourth Affirmative Defense or Counterclaim I.  As Sprint's is a

motion for summary judgment for infringement, Sprint has the burden of showing that there is no

genuine issue of material fact with respect to the operation of Vonage's system, and the operation of the Vonage system comes within the scope of a properly construed claim.  Sprint has utterly failed to provide this Court with any evidence of Vonage's operation of the Vonage system, much less undisputed facts concerning the same.  Conversely, Vonage has provided detailed evidence of the operation of its system, through documents and witness testimony in support of its own motion for summary judgment of non-infringement and thus Sprint's motion must be denied.

As detailed in Vonage's concurrently-filed Opposition to Sprint's Motion to Exclude the Opinions of Vonage's Expert Joel M. Halpern, Mr. Halpern is well qualified to offer expert testimony in this case.  In arguing to the contrary, Sprint both ignores Mr. Halpern's extensive industry and professional experience, and asks the Court to graft an additional requirement onto Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) – that to testify as an expert the proffered witness must be a "person of ordinary skill in the art" of the Asserted Patents – an attempt which the Federal Circuit has roundly rejected as "meritless" and "nonsense."  <u>See, e.g.</u>, <u>Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.</u>, 122 F.3d 1040, 1042 (Fed. Cir. 1997).  ("The 'person of ordinary skill in the art' is a theoretical construct used in determining obviousness under § 103, and is not descriptive of some particular individual.").  Mr. Halpern's opinions are therefore admissible and, as conceded by Sprint, they provide enough evidence that Vonage does not infringe that Sprint's motion should be denied on them alone.

As plaintiff in this action alleging patent *infringement*, it is Sprint's burden to prove Vonage infringes the claims of the asserted patents, and not Vonage's to prove non-infringement. Importantly, in its Brief, Sprint has misrepresented the totality of the evidence supporting

Vonage's contention that its system does not infringe. Indeed, in addition to his opinions, Mr. Halpern's report sets forth and relies on a great deal of factual evidence that supports Vonage's non-infringement contention. This evidence includes, but is not limited to, documents produced by Vonage in this litigation, including call traces which accurately depict the operation of Vonage's system, as well as testimony provided by Vonage employees and representatives, including Peter Miron, and including the evidence provided to the Court in support of Vonage's motion for summary judgment of non-infringement.

These documents and witnesses show that Sprint's claims of infringement are not only unsupported by the evidence, but are actually based on an erroneous understanding of how the Vonage system operates. Thus, even if the applicable legal precedent is ignored and Mr. Halpern's opinions disregarded, the undisputed factual evidence shows that Vonage's system does not infringe any asserted claim.

Finally, Sprint has also misrepresented Vonage's statements and the Court's order granting in part Sprint's Motion to Compel. At no point did Vonage state that Mr. Halpern's opinions were the "only" evidence that its system does not infringe any claim of the patents-in-suit, and there is no such statement in the Court's order. <u>See</u> Doc. No. 154. Vonage has ample evidence for a jury to find that its system does not infringe any asserted claim, including, *but not limited to*, the opinions contained in Mr. Halpern's expert report.

## I.    Vonage Has Preserved its "Additional Defenses"

In its Answer and Affirmative Defenses, Vonage pled certain additional defenses that might arise over the course of discovery. As explained *supra*, <u>Sprint's</u> responses to discovery are still incomplete in substantial and material ways, and additional defenses to Sprint's charges of infringement might still arise.

Furthermore, as Rule 15 provides, pleadings may be amended to conform to the evidence even after trial: "the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby... ." Fed. R. Civ. P. 15(b). Cf. Ryan v. Shawnee Mission Unified Sch. Dist. No. 512, 437 F. Supp. 2d 1233, 1259-1260 (D. Kan. 2006) (allowing new request for relief not contained in complaint to be added to pretrial order; in her first amended complaint she requested reinstatement on her First Amendment retaliation claim and, on her Rehabilitation Act claim, she prayed for "any other relief the Court deems just and equitable," so request was proper). Compare MercExchange, L.L.C. v. eBay, Inc., 271 F. Supp. 2d 784, 786-88 (E.D. Va. 2002) (granting Motion to Amend Answer to Conform to Proof made in September based on documents produced in March; proof of proposed amended claim for inequitable conduct was in plaintiff's possession thus no prejudice or additional discovery necessary; citing cases).

Based on, and subject to, these facts and authorities, Vonage hereby withdraws its affirmative defense of additional defenses, without prejudice to bringing such other defenses to the extent Sprint produces additional material or discloses further material facts giving rise to such claims.

## IV.    Conclusion

On its face, and particularly when viewed in the light most favorable to Vonage, Vonage respectfully submits the evidence produced to date demonstrates material facts in dispute to require denial of Sprint's Motion for Summary Judgment as to the majority of Sprint's arguments, and there are certain outstanding matters material to Vonage's remaining defenses to warrant a continuance of the remainder of the Motion until such discovery is complete and appeal is resolved.

Respectfully submitted,

June 11, 2007                          /s/ Don R. Lolli

Don R. Lolli    KS Dist. #70236
Patrick J. Kaine  KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com


Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com

*Attorneys for Defendants/Counterclaim
Plaintiffs Vonage America, Inc. and Vonage
Holdings Corp.*

## CERTIFICATE OF SERVICE

I hereby certify on June 11, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Opposition to Plaintiff's  Motion for Partial Summary Judgment was filed electronically on this date, with a notice of case activity to be generated and sent electronically by the Clerk of Court to the individuals listed below.  I further certify on June 11, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Opposition to Plaintiff's  Motion for Partial Summary Judgment, and supporting papers, was sent by email on this date to:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com
>
> *Attorneys for Plaintiff*
> *Sprint Communications Company L.P.*
>
>    /s/ Donald R. McPhail