IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Case No. 05-2433-JWL |
| V. | ) <br> ) |
| VONAGE HOLDINGS CORP. and <br> VONAGE AMERICA, INC., | ) <br> ) |
| Defendants. | ) <br> ) |

**AFFIDAVIT OF PATRICK D. McPHERSON, ESQ.
PURSUANT TO FED. R. CIV. P. 56(f)**

| | |
|---|---|
| CITY OF WASHINGTON | ) |
|  | ) ss. |
| DISTRICT OF COLUMBIA | ) |

I, Patrick D. McPherson, Esquire, being of full age and duly sworn according to law, depose and say:

1. I am a partner in the law firm of Duane Morris, LLP, 1667 K. Street, N.W., Washington, DC 20006-1608, and counsel of record to Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage") in this matter.

2. I submit this affidavit pursuant to Federal Rule of Civil Procedure ("Rule") 56(f) in support of Vonage's opposition to Plaintiff Sprint's Motion for Partial Summary Judgment (Sprint's "Motion").

3. Sprint has moved for summary judgment on certain of Vonage's affirmative defenses to Sprint's claims of patent infringement, including, among others, Vonage's defenses of laches, estoppel, acquiescence and unclean hands.

- 1 -

4.  As detailed below, Sprint has yet to produce documents that are expected to provide information regarding when Sprint became aware of Vonage's allegedly infringing activity – a material fact in dispute as to Vonage's defenses of laches, estoppel, acquiescence and unclean hands, and critical to Vonage's response to Sprint's Motion as to these defenses.

5.  Sprint has promised to produce these documents some time during the week of June 11, 2007, after Vonage's opposition to Sprint's Motion is due.

6.  As detailed below, currently pending are Vonage's Objections to and Motion for Review of Orders of May 14, 2007 and May 16, 2007 Pursuant to Fed. R. Civ. P. 72, Doc. # 210, filed on May 29, 2007 (Vonage's "Appeal"), the outcome of which is expected to determine the means by which Vonage may establish its defenses of laches, estoppel, acquiescence and unclean hands, and what material facts Vonage may raise in opposition to Sprint's Motion as to these defenses.

7.  For these reasons, Vonage cannot, as of the date of this filing, present by affidavit facts essential to justify Vonage's opposition to Sprint's Motion, and Vonage requests that the Court refuse Sprint's application for judgment as to Vonage's defenses of laches, estoppel, acquiescence, and unclean hands or order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just, pursuant to Rule 56(f).  See Fed. R. Civ. P. 56(f).

### Sprint's Competitive Documents

8.  Vonage has sought, on multiple occasions, documents relating to any competitive analyses performed by Sprint with regard to Vonage and other providers of VoIP telephony systems, cable telephony systems or alternative systems (the "Competitive Documents").

9. Despite Vonage's repeated requests, and Sprint's repeated acknowledgement of the existence of the Competitive Documents, and Sprint's continued assurance these documents would be forthcoming, as of the date of this filing, Sprint has yet to produce these documents.

10. Sprint accuses Vonage of infringing patents all relating to technology by which traditional phone services can be offered by non-traditional means, such as, for example, over the internet or through cable (the "Non-Traditional Market") rather than standard telephone lines.

11. On multiple occasions since discovery opened in this matter, Vonage has requested, both in writing and orally, any and all documents that relate to or discuss the Non-Traditional Market and the competition within this market, especially as such documents pertain to Vonage; i.e., the Competitive Documents. See Vonage Holdings Corp.'s Second Set of Requests for Production of Documents at Requests Nos. 38, 43, 44 and 45, and Sprint's Responses thereto, attached as Exhibit "A."

12. Sprint has not disputed the existence of these documents, and has on multiple occasions verbally and in writing assured Vonage that these Competitive Documents would be produced. See id., see also May 1, 2007 Letter from J. Mudd to H. Lahey, attached as Exhibit "B." These assurances notwithstanding, Sprint has produced no such documents.

13. During the April 17, 2007 deposition of Sprint pursuant to Rule 30(b)(6), Sprint's designee James Patterson admitted to having personal knowledge of the existence of multiple documents that are responsive to Vonage's requests. See Transcript of April 17, 2007 deposition testimony of Mr. Patterson ("Patterson Tr.," excerpts of which are attached as Exhibit "C") at 63:8 – 67:21. By letter dated April 24, 2007, counsel to Vonage again noted Sprint's failure to respond to Vonage's pending document requests and sought production of the documents

referenced by Mr. Patterson in his deposition. See April 24, 2007 Letter from H. Lahey to A. Seitz, attached as Exhibit "D."

14.     On May 1, 2007, Sprint responded stating that it was in the process of locating these documents, and that once it did, it would produce them. See Ex. B.

15.     By e-mail dated June 6, 2007, counsel to Vonage once again noted Sprint's continued failure to respond to Vonage's pending document requests and demanded that Sprint produce the Competitive Documents. See June 6, 2007 Email from B. Golob to A. Seitz, attached as Exhibit "E."

16.     By email dated June 7, 2007, counsel to Sprint indicated Sprint has finally located and will produce these documents within the week. See June 7, 2007 Email from A. Seitz to B. Golob, attached as Exhibit "F."

17.     Sprint's delay has severely prejudiced Vonage, which now must now request this Court to delay Vonage's response to Sprint's summary judgment motion until it completes discovery it is entitled to.

18.     The Competitive Documents are likely to present the most candid and contemporaneous evidence of when Sprint became aware of Vonage as a competitor and when Sprint became aware of what Sprint alleges as Vonage's infringing activity. These issues are critical to, among other things, Vonage's defenses of laches, estoppel, acquiescence and unclean hands. See Sprint's Mem. in Sup't. of Mot. for Sum. Jgt., Doc. # 199, at 19 (laches turns in part on when plaintiff became aware of its claims of infringement, citing Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 773 (Fed. Cir. 1995)).

19.     Sprint has moved for summary judgment in its favor on Vonage's laches, estoppel, acquiescence, and unclean hands defenses.

20. In part because Sprint has failed to produce the documents admittedly in its possession that may conclusively speak to this point, material facts remain in dispute.

21. As these documents contain facts that are unavailable elsewhere, are highly material to a necessary element to Vonage's laches defense, Sprint's Motion as it relates to that defense cannot be decided until Sprint has produced, and Vonage has had the opportunity to fairly assess, the Competitive Documents.

**The Courts Orders of May 14 & 16, 2007, and Vonage's Pending Appeal Thereof**

22. Currently pending are Vonage's Objections to and Motion for Review of Orders of May 14, 2007 and May 16, 2007 Pursuant to Fed. R. Civ. P. 72, Doc. # 210, filed on May 29, 2007 (Vonage's "Appeal").

23. As detailed in Vonage's Memorandum in support of its Appeal, and its Brief in Opposition to Sprint's Motion for Summary Judgment, by virtue of Magistrate Judge Waxse's Orders of May 14 and 16, 2007 denying Defendants' Motion for Leave to Amend their Answer (Doc. # 192) and striking certain of Defendants' factual and legal contentions from the proposed Pretrial Order (Doc. # 202) (collectively, the "Orders"), Magistrate Judge Waxse not only prohibited Vonage from proving its claims of estoppel by these other means, but effectively entered an *in limine* order prohibiting Vonage from introducing Sprint's own records, which Sprint produced in discovery, in support of its defenses.

24. Through its Appeal, Vonage has timely objected to and appealed these rulings to this Court, and this Appeal is now pending.

25. Under the Orders as they now stand, the Court may find it inappropriate for Vonage to offer certain material facts in support of its opposition to Sprint's Motion, which Vonage submits are sufficient to defeat Sprint's Motion. Vonage details certain of these material facts below.

26. Vonage built its VoIP Telephony System with the technical advice of, and using components purchased from, Cisco Systems, Inc. ("Cisco").

27. After extensive and persistent requests by Vonage for all documents referring or relating to contracts and licenses relating to the technology in the Asserted Patents, in January 2007 Sprint produced fully executed agreements between Sprint and Cisco dated December 1998, including an Alliance Agreement reflecting an extensive alliance between Sprint and Cisco for the joint development and ownership of products and intellectual property relating to the Asserted Patents ("Sprint-Cisco Alliance Agreement," executed December 17, 1998, SPRe-012-01-00792 to 848) (the "Alliance Agreement"), attached as Exhibit "G;" a License Agreement by which Sprint agreed to license to Cisco numerous patents relating to the JCS2000 system, and covenanted not to sue Cisco customers for infringement of any patent for any invention conceived of prior to the date of the agreement ("Sprint/Cisco License Agreement," executed December 12, 1998, SPRe-12-01-00849 to 872) (the "License Agreement"), attached as Exhibit "H;" a Statement of Work detailing extensive obligations between Sprint and Cisco regarding this joint development effort (Statement of Work #JCS2000-K9497000, executed December 17, 1998, SPRe-012-01-01022 to 1066) (the "Statement of Work"), attached as Exhibit "I;" and a Purchase Agreement providing the terms of any sales of products between Cisco and Sprint ("Service Provider and Value Added Reseller Agreement," executed December 14, 1988, SPRe-012-01-00897 to 1021) (the "Purchase Agreement"), attached as attached as Exhibit "J."

28. The 1998 agreements between Sprint and Cisco included, among their other terms, a covenant by Sprint not to sue any Cisco customer for infringement of Sprint's patents (the "Covenant Not to Sue"). See Ex. H at ¶3.4.

29.     The Covenant Not to Sue, recited initially in the 1998 License Agreement, reads, in pertinent part, as follows:

> Both parties covenant not to sue, or bring suit, prosecute, assist or participate in any judicial, administrative or other proceeding of any kind against the other party or its licensees (including distributors and end users) for infringement of Cisco or Sprint Patents (as defined below) which occurs during the Immunity Period as defined below on account of the manufacture, use, sale, offer to sell, importation, promotion or distribution of Cisco or Sprint products or services using or incorporating any claim under such Cisco or Sprint Patents.  For purposes of this Section, "Cisco or Sprint Patents" means (i) all patents throughout the world for inventions conceived of or reduced to practice prior to the termination or expiration of this Agreement... .  The "Immunity Period" shall commence upon the execution of the Sprint/Cisco Alliance Agreement and terminate twelve months following the termination of the Alliance Agreement  [sic] The immunity will be automatically renewed with each renewal of the Alliance Agreement unless either party gives notice of its intent to end the immunity at least 90 days in advance of the expiration of the current Alliance Agreement.

See Ex. H at ¶3.4.

30.     Sprint and Cisco entered an Alliance Agreement in December 1998, commencing the Immunity Period as defined in the Covenant.  See Ex. G.

31.     By its terms, unless renewed, or terminated pursuant to its notice provisions following a breach, the Alliance Agreement was to terminate three (3) years from its execution. See Ex. G at ¶20, p. 18.

32.     On May 10, 2000, Sprint and Cisco amended the Alliance Agreement and extended the covenant not to sue for an additional year ("Amendment No. 2 to the Alliance Agreement," executed May 10, 2000, SPRe-012-01-00790 to 791), attached as attached as Exhibit "K."

33.     Sprint concedes the "Cisco and Sprint Patents" defined in the Covenant Not to Sue include the patents Sprint now accuses Vonage of infringing since the launch of Vonage's VoIP telephony service in March 2002 (the "Asserted Patents").  See Transcript of the March 29, 2007 Deposition of Harley Ball, Esquire, Sprint's in-house counsel and corporate designee to

testify on Sprint's licensing practices pursuant to Rule 30(b)(6), excerpts of which are attached as Exhibit "L," at 220:2-5 (confirming the Covenant Not to Sue covered "any Sprint patent," including the Asserted Patents).

34.     Sprint concedes the Covenant Not to Sue Cisco customers for infringement of the Asserted Patents extended well into the period Sprint alleges Vonage infringed the Asserted Patents. See Sprint Communications Company L.P.'s Responses to Defendant Vonage Holdings Corp.'s Second Set of Interrogatories at Response to Interrogatory No. 17, p. 4, attached as Exhibit "M" ("Sprint states that the Immunity Period began on December 17, 1998 and ended on December 17, 2002.").

35.     For the legal reasons discussed in Vonage's Memorandum in Opposition to Sprint's Motion, the Cisco Agreements, and the Covenant Not to Sue, estops Sprint from its claims of infringement against Vonage through and including at least December 17, 2002, and raises issues of material fact as to other of Vonage's defenses as to which Sprint seeks summary judgment.

36.     By the Order of May 16, 2007, Magistrate Judge Waxse struck from the Pretrial Order all references to the Cisco agreements, and all of Vonage's contentions based on these documents in support of its defense of estoppel.

37.     The Cisco agreements raise genuine issues of disputed fact from which the trier of fact may find that Sprint's Covenant Not to Sue Cisco customers, such as Vonage, give rise to defenses of laches, estoppel, acquiescence, patent misuse and unclean hands on the part of Sprint.

38.     Although Sprint agreed to license certain patents for components to Cisco, and executed a license agreement with Cisco to this effect in 1998, see 1998 License Agreement, Ex.

H, Sprint states it never intended to license Cisco, or any Cisco customer, rights to use components with one another as part of a network. See Ball Tr., Ex. L, at 78:21-79:4; 88:14-20; 165:16-166:7.

39.     Sprint similarly stated it "intended" that Cisco customers would use these components together with other products in larger networks, to which it would give them no rights:

> Q. So Sprint was aware that Cisco was developing components for working with other Cisco components. Isn't that true?
>
> A. It was clearly our intent that Cisco components could work -- that the alliance anticipated that Cisco components would interoperate with other supplier components.
>
> Q. Okay. And Sprint was aware that Cisco customers bought Cisco products to combine them with other components. Isn't that correct?
>
> A. Whenever you place together a network, you may -- it takes numerous different components to put together a network.
>
> Q. So Sprint was aware that Cisco was planning to sell components for which the Cisco customers would place in networks. Isn't that correct?
>
> A. Sure.
>
> Q. And Sprint wanted to reserve the right to seek licensing fees from the Cisco customers that used the Sprint components in combination with other components. Isn't that correct?
>
> A. Is that to the extent that we had intellectual property that related to architectures of multiple different components, absolutely we wanted to reserve the right and not necessarily extend to our competitors rights associated with those architectures.
>
> Q. Did you ever tell Cisco that you did not want them selling components to their customers to be placed in networks?
>
> A. We -- we made -- it was made clear to Cisco that any licenses that we provided would not extend to our architectures.
>
> Q. Did you request that Cisco inform their customers that when they used Cisco components as intended, they may be exposed to liability for Sprint?

A. I don't recall.

Ex. L at id. at 167:3-168:20.

40. From 1998 through and including the time when Vonage was developing its system, with the close advice of, and products purchased from Cisco, Sprint and Cisco were collaborating on "product innovation as well as efficient and effective collaborative marketing and sales initiatives." See Sprint's July 2005 press release "Sprint Deployment of End-to-End Cisco IP Next-Generation Network Enables 'Triple Play' Service Offerings to Enterprise Customers Worldwide," attached as Exhibit "N."

41. For these reasons, the actions between Cisco and Sprint as it relates to Cisco's customers, including Vonage, create a genuine issue of material fact regarding Vonage's defenses of laches, estoppel, acquiescence and unclean hands.

42. Vonage respectfully requests the Court continue its consideration of Sprint's Motion for Partial Summary Judgment on Vonage's defenses of laches, estoppel, acquiescence and unclean hands pending the resolution of Vonage's Appeal and the completion of the further discovery detailed herein.

_____
Patrick D. McPherson, Esq.

Sworn and subscribed
Before me this 11th day of June, 2007

_____
My commission expires: