## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                    )
                        Plaintiff,  )
                                    )
            v.                      )
                                    )     Case No. 05-2433-JWL
                                    )
VONAGE HOLDINGS CORP.,              )
VONAGE AMERICA, INC.,               )
                                    )
                        Defendants. )
                                    )

## SPRINT'S MEMORANDUM IN OPPOSITION TO VONAGE'S OBJECTIONS TO AND MOTION FOR REVIEW OF ORDERS OF MAY 14, 2007 AND MAY 16, 2007 PURSUANT TO FED. R. CIV. P. 72

Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits its Memorandum in Opposition to Defendants Vonage Holdings Corp. and Vonage America, Inc's Objections to and Motion for Review of Orders of May 14, 2007 and May 16, 2007 denying Vonage's Motion for Leave to Amend its Answer (Doc. No. 192) and striking certain contentions from the Pretrial Order (Doc. No. 202). Vonage's objections to Judge Waxse's Orders are without merit and should be overruled because (1) Vonage has failed to establish "good cause" for seeking to amend its answer after the Court-imposed deadline for such amendments; (2) Vonage unduly delayed in filing its motion to amend; (3) Sprint would be significantly prejudiced if Vonage were granted leave to amend at this late stage of the case; (4) the amendments to add license defenses are futile; and (5) Judge Waxse did not abuse his discretion in striking references to Vonage's proposed affirmative defenses from the Pretrial Order.

246746v1

Dockets.Justia.com

## I.　　INTRODUCTION AND BACKGROUND

In its objections, Vonage seeks review of Judge Waxse's decision to preclude Vonage from asserting affirmative defenses raised for the first time at the close of discovery. *See* Doc. No. 211 at 3.　Vonage's objections merely re-hash its slanted, and repeatedly rejected, rendition of history in a failed effort to demonstrate that Sprint thwarted Vonage's discovery efforts by withholding (and continuing to withhold) documents and information relevant to Vonage's proposed license defense.　*See id.* at 1.[1]　Judge Waxse saw Vonage's allegations for what they are: baseless excuses for its own delinquent conduct.　Indeed, Vonage had the relevant license documents for months prior to the close of discovery.　*See* Doc. No. 192 at 3.　As Judge Waxse correctly observed, "[n]otwithstanding possession of these [license] documents, Vonage did not timely move to add the proposed affirmative defenses, but instead waited until the day discovery closed – over two months after receiving the 'new documents' – to file a motion to amend."　*Id*.　Vonage's proposed amendments do not arise from "newly discovered evidence" as Vonage suggests, and Judge Waxse correctly held that Vonage unduly and inexplicably delayed in seeking to amend its pleadings.　*Id.* at 4.　Judge Waxse also correctly recognized that Sprint would be significantly prejudiced were Vonage allowed to pursue new defenses raised for the first time at the close of discovery.　*Id.*

In addition, Vonage's proposed amendments are altogether futile.　As will be demonstrated in detail below, the Sprint and Cisco license documents to which Vonage refers do not apply in any way to the Asserted Patents in this action, and Vonage is well aware of this fact. Furthermore, the license agreement on which Vonage seeks to rely expired before Vonage even

---

[1] Indeed, it is Vonage who has not been diligent in producing documents.　Vonage has produced over 160,000 pages since the close of fact discovery in five separate document productions.　*See* Ex. 2 (letters from counsel for Vonage dated after the close of discovery forwarding Vonage documents to Sprint).

came into existence and, thus, would have no application to this action even if the agreement did apply to the asserted patents, which it does not. Though Vonage makes ambiguous references to additional agreements reached between Sprint and Cisco in 2001 and in 2005, these 2001 and 2005 agreements do not contain any licenses to the asserted patents, another fact of which Vonage is well aware.

Undeterred by the absence of support for its theories, Vonage inexplicably seeks to rely on information it <u>may</u> discover in the future (notwithstanding the close of discovery months ago). Doc. No. 211 at 16. Indeed, Vonage's proposed amendments are based on speculation as to documents that <u>may be</u> produced by Cisco, or that Vonage believes Sprint may possess. *See id*. at 6, 7 and 12-13. (making clear that its proposed amendments are based on documents which Sprint has "yet to produce" and documents Vonage is still seeking "from Cisco directly" from which Vonage "still expects responsive information"). Contrary to Vonage's assertions, Cisco has completed its production of the requested license documents.[2] *See, e.g*., Ex. 1 (5/7/2007 correspondence from Helesa Lahey, counsel for Vonage, to counsel for Sprint forwarding documents produced by Cisco pursuant to Vonage's subpoena of Cisco). The much-vaunted Cisco production was, as expected, entirely unsupportive of Vonage's proposed defenses and no further production of Cisco is forthcoming. Sprint also has long-ago completed its production of Cisco documents. The complete lack of factual foundation for Vonage's proposed amendments further demonstrates that Judge Waxse correctly denied Vonage's motion for leave to amend and appropriately struck references to the license documents from the Pretrial Order.

---

[2] At pages 12-13 of Vonage's objections, Vonage attempts to suggest that Sprint subpoenaed documents from Cisco that pertained to Vonage's license defense. Doc. No. 211 at 12-13. This suggestion is false. Sprint's subpoena to Cisco was directed to contracts between Cisco and Vonage, not between Cisco and Sprint. *See* Ex. 6, Sprint Subpoena.

In a last-ditched effort to preserve its Cisco license defense, Vonage now disingenuously contends that the Cisco Agreements and the facts pertaining thereto were actually part of its originally-pled defenses. *See, e.g.*, Doc. No. 211, at 18-20. This position is, of course, belied by Vonage's belief that it was necessary to file a motion to amend to include the Cisco license defense. And, as demonstrated below, Vonage's own conduct both before and after Judge Waxse's May 14, 2007 Order (Doc. No. 192) reveals the baseless nature of this argument. Certainly, if Vonage ever intended for its originally-pled defenses to include the Cisco license defense, it did an excellent job of hiding that fact. Vonage's contention that the Cisco licenses are part of its originally-pled defenses either is false or demonstrates a hide-the-ball approach that the Federal Rules do not permit. Either way, Vonage's objections to Judge Waxse's Order striking contentions relating to the Cisco license documents from the Pretrial Order must be rejected.

## II.     THE COURT CORRECTLY DENIED VONAGE'S MOTION FOR LEAVE.

Rule 15(a) requires that leave to amend "be freely given **when justice so requires**." Whether leave should be granted is within the trial court's discretion. Fed. R. Civ. P. 15(a); *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991). The Court should deny a motion for leave to amend "upon a showing of undue delay, bad faith or dilatory motive, . . . undue prejudice to the opposing party, or futility of amendment." *Castleglen v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Under each of these factors, the Court should reject Vonage's objections and sustain the denial of Vonage's request for leave to amend.

### A.     Vonage Has Unduly Delayed in Moving to Amend and Has Not Demonstrated Due Diligence.

Vonage's delay in bringing its Motion for Leave to Amend justifies rejection of the present objection on two grounds. First, Vonage's delay betrays an absence of due diligence and, thus, an absence of "good cause" to amend the Court's scheduling order, which required all motions to amend the pleadings to be filed by April 28, 2006. *See Pfeiffer v. Eagle Mfg. Co.*, 137 F.R.D. 352, 355 (D. Kan.1991) (explaining that a party seeking an amendment must show that despite due diligence it could not have reasonably met scheduling order deadlines.). Second, under Tenth Circuit law, "[u]ntimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1495 (10th Cir. 1995).

Vonage's proposed amendments do not arise from "newly discovered evidence," as Vonage suggests. *See* Doc. No. 211 at 10 and 11. By its own tacit admission, Vonage was aware of its desire to pursue a licensing defense in February 2006.[3] Moreover, Vonage admits it was aware of the existence of alleged agreements between Sprint and Cisco as early as September 2006. *See* Doc. No. 149 at 3-4 & n.1. Vonage admits that it had copies of executed agreements between Sprint and Cisco in its possession as of January 25, 2007. *Id*. at 4. Vonage's damages expert, on February 28, 2007, opined that the Cisco agreements provided Vonage with a damage limitation argument. *See* Ex. 7, Strickland Report, at ¶¶ 45, 49. To provide Sprint with a fair chance to defend against its allegations, Vonage promptly should have taken the necessary steps to formalize its defensive theories during the discovery time period. Yet, inexplicably, Vonage delayed until March 30—the very day discovery closed, over a month after their expert had advanced a damages limitation argument based on the agreements, over two months after receiving the Sprint/Cisco agreements, and nearly **14 months** after tacitly

---

[3] *See* Doc. No. 149 at 8 ("Sprint has known that Vonage might pursue a license defense since receiving Vonage's first discovery requests in February 2006.").

246746v1

admitting knowledge that it wanted to pursue a licensing theory.[4]    Vonage's own conduct establishes undue delay and a lack of due diligence.

In *Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, this Court denied a motion to amend where the defendant's delay was less than that exhibited by Vonage.  No. 00-2099-CM, 2001 U.S. Dist. LEXIS 5683 (D. Kan. Apr. 23, 2001) (affirming order of Magistrate Judge Waxse).    In that case, the defendant delayed 49 days in seeking leave to amend to add compulsory counterclaims arising from newly discovered evidence.  *Id*. at *4.  The Court denied the defendant's motion because it had failed to take the necessary discovery giving rise to the new claims in a timely manner.  *Id.* at *7.  Similar to the defendant in *Aerotech*, Vonage should have promptly pursued discovery from, at the latest, the time it first had agreements between Sprint and Cisco in September 2006.  Instead, Vonage waited until two weeks before the close of discovery to issue a subpoena to Cisco.  *See* Doc. 211, at 12, n.8.  Moreover, when Vonage received, in January 2007, the exact Cisco agreements on which it now relies, it should promptly have moved to amend at that point instead of waiting two months until the very day discovery closed.  As Judge Waxse correctly recognized, Vonage's pursuit of "follow-up discovery" does not provide a sufficient reason for waiting until the close of discovery to request to add new defenses. *See* Doc. No. 192 at 3 and 4 ("Upon consideration of the arguments presented, the

---

[4] To excuse its belated filing, Vonage attempts to rely on an interrogatory response obtained just prior to the close of discovery.  Doc. No. 211 at 3.  Sprint's response, however, was merely a clean-up supplementation that re-stated information plainly contained in documents themselves, which were produced to Vonage in January of 2007. Specifically, the interrogatory response indicates the termination date of a covenant not to sue between Sprint and Cisco.  *Id.*  This covenant is contained in a License Agreement and in Amendment No. 2 to an Alliance Agreement between Sprint and Cisco.  *See* Ex. 3 (License Agreement) § 3.4; Ex. 4 (Termination Agreement) at SPRe-012-01-00790.  As these documents indicate, the covenant expired "twelve months following the termination of the Alliance Agreement."  Ex. 3 at § 3.4.  According to its express terms, the Alliance Agreement terminated on December 17, 2001, 36 months following its effective date. Ex. 5 (Alliance Agreement) at § 20.1.  As the termination date of the covenant is apparent from the documents Sprint produced in January, Vonage cannot justify its delay based on an interrogatory response that merely reiterates this termination date.

Court finds that Vonage has failed to provide sufficient reason for waiting until the day discovery closed – over two months after receiving the licenses – to file its request to add the proposed affirmative defense.").

Moreover, Vonage's undue delay and lack of diligence cannot be attributed to Sprint. To the extent Vonage took issue with Sprint's production, it should have addressed that dispute with the Court no more than 30 days after the dispute arose in September of 2006.[5] Vonage did not. Additionally, Vonage could have served its subpoena on Cisco clear back in September of 2006. Vonage did not. Vonage's undue delay is not attributable to Sprint and the Court should deny Vonage's motion.

**B.     Vonage's Delay Would Cause Sprint Significant Prejudice.**

In addition to undue delay, courts also consider whether the opposing party will suffer prejudice if the moving party is allowed to file an amended pleading. "Prejudice under Rule 15 means undue difficulty in defending a lawsuit because of a change of tactics or theories on the part of the other party." *Welch v. Centex Home Equity Co., L.L.C.*, 323 F. Supp. 2d 1087, 1091 (D. Kan. 2004) (Lungstrum, J.).

As Judge Waxse properly found, Vonage's proffered amendment would subject Sprint to significant prejudice. Doc. No. 192 at 4-5. Vonage's Amended Answer contains entirely new affirmative defenses that have no relation to any existing claim or defense in this litigation. Sprint certainly will be subject to significant prejudice in defending against the proposed new affirmative defenses, especially now that discovery is closed, all expert reports have been completed, summary judgment motions are nearly fully briefed, and the trial date is fast-approaching. In a nearly identical factual scenario, this Court denied a motion for leave to amend stating that "[a]t this stage in the proceedings—two years after the filing of the initial

---

[5] *See* D. Kan. R. 37.1(b).

Complaint and after the completion of significant discovery—this would be the epitome of undue prejudice to Defendants." *See Semsroth v. City of Wichita*, No. 04-1245, 2006 U.S. Dist. LEXIS 63294, at *13 (D. Kan. Sept. 5, 2006).  The late nature of Vonage's request would constitute a textbook case of undue prejudice to Sprint and, therefore, must be denied.

Sprint's inability to conduct meaningful discovery on these new theories and defenses would create a significant and substantive prejudice.  Recognizing the prejudice such a scenario would inflict on a litigant, this Court denied a similar motion for leave to amend after the close of discovery had passed.  *See Welch v. Centex Home Equity Co., L.L.C.*, 323 F. Supp. 2d 1087, 1091 (D. Kan. 2004) (Lungstrum, J.) ("[I]f plaintiff is allowed to amend her complaint, defendants will suffer prejudice by virtue of not being able to conduct discovery on plaintiff's new theories.").  The prejudice noted in *Welch* is the very same prejudice that will be inflicted on Sprint should Vonage's objections be sustained.  Though Vonage suggests that no further discovery would be necessary in light its proposed amendments, this argument is demonstratedly false.  By way of specific examples, Vonage's proposed defenses hinge entirely on the fact that the sole provider of Vonage's network equipment is now and always has been Cisco.  Based on discovery conducted, Sprint is generally aware that some Vonage elements were provided by Cisco, some by Sonus, and certain software by DynamicSoft.  To date, however, Sprint has not focused on the identity of Vonage's providers because those identities have not been an issue relevant to any claim or defense in this case.  Nor has Sprint focused on particular dates that any particular equipment from any particular provider was put into service by Vonage.  Nor has Sprint engaged its experts to consider the impact of some theoretical license defense from either a technical or damages standpoint.  As these examples illustrate, the introduction of new defenses at this late stage would clearly necessitate additional discovery beyond merely the four

corners of the licenses documents and additional expert reports.  Discovery, however, is closed, and Sprint's ability to discover such necessary information has passed.  Based on this prejudice alone, Vonage's motion must be denied.

Recognizing the obvious need for discovery on the license issue, Vonage attempts to argue that the parties have conducted some discovery regarding the License documents and that Sprint had the "incentive and opportunity to conduct discovery on the issue."  Doc. No. 211 at 14-15 (citing *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1209– 1210 (10th Cir. 2006).  Vonage's arguments fail for two reasons.  First, Vonage's discovery relating to licenses of the Asserted Patents did not put Sprint on notice of a license defense.  After completing its production, Sprint rightfully believed that Vonage was unable to plead an affirmative defense within the requirements of Rule 11 because the plain language of the licenses establishes their inapplicability to the case.  Indeed, the discovery cited by Vonage serves only to explain that, because the Sprint-Cisco license was rescinded prior to Vonage's first infringement, the License documents have no bearing on any issue in this case.  *See, e.g.,* Doc. No. 211 at Ex. O.[6]  Given that no licenses of the Asserted Patents have ever been offered or granted, Sprint could not reasonably have anticipated a license defense.

Second, even assuming Sprint had been placed on notice of some potential amendments, "it would not have been unreasonable for [Sprint] to forgo discovery on these potential claims, as they had not been officially raised during the discovery period."  *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099, 2001 U.S. Dist. LEXIS 5683, at *12 (D. Kan. Apr. 23, 2001).  Vonage had the license agreements on which it now relies for two months and took no steps to advise Sprint it was going to try to add an affirmative defense.  It was more than

---

[6] The "License documents" referred to by Vonage in its motion are licenses of patents unrelated to the Asserted Patents.  *See* Section II.C.1, *infra*.

reasonable for Sprint to "forgo discovery on these potential claims" because Vonage didn't raise them during over two months of remaining discovery.

Seeking to excuse its failure to raise the license defenses during the discovery period, Vonage cites the Tenth Circuit's opinion in *Minter* in an attempt show that a new defense may be allowable when the opposing party had "incentive and opportunity to conduct discovery" on the newly-raised issue. *See* Doc. No. 211 at p. 15. Vonage, however, fails to explain what "incentive" Sprint may have had to conduct discovery on Vonage's unasserted and untenable proposed defenses. Contrary to the facts of the present case, the proposed amendment in *Minter* was allowed because the Tenth Circuit concluded that any evidence supporting the new defense "should have surfaced during the underlying state court action." *Minter,* 451 F.3d at 1210. The same is not true here as the license issues have not previously been litigated, and evidence regarding Vonage's proposed license defense would not have surfaced in the present case given Vonage's failure to assert this defense before the close of discovery.

To grant Vonage's motion for leave to amend at this stage of the proceeding would require the re-evaluation of disclosures and witness testimony, additional expert reports, the re-opening of discovery, and likely the delay of trial, which is scheduled for September 2007. *See* Doc. No. 192 at 4-5 ("Sprint's inability to conduct meaningful discovery on [Vonage's] new theories and defenses will subject Sprint to significant prejudice.); *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099, 2001 U.S. Dist. LEXIS 5683, at *10-*12 (D. Kan. Apr. 23, 2001) (finding plaintiff would be unduly prejudiced where allowing amendment would require reopening discovery and delaying trial).[7] Accordingly, the Court should affirm Judge Waxse and

---

[7] Given that no licenses to the Asserted Patents actually exist, these delays and extensions are, of course, exactly what Vonage wants (*see* Vonage's Motion To Amend Scheduling Order filed as Doc. Nos. 156 and 157) and likely is the reason Vonage delayed filing its motion for leave to amend until the very day discovery closed.

reject Vonage's objections because allowing Vonage to add defenses after the close of discovery would unduly prejudice Sprint.

> ### C.    Vonage's Proposed Amendments Are Futile.

In addition to delay and prejudice, the Court should also reject Vonage's objections because the proposed amendment is futile and would not withstand a motion to dismiss. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). "Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001). The court will dismiss a cause of action under Rule 12(b)(6) when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Intercon, Inc. v. Bell Atlantic*, 205 F.3d 1244, 1247 (10th Cir. 2000).

As discussed below, Vonage can prove no set of facts in support of its license defense that would entitle it to relief. Indeed, Vonage wholly failed to plead sufficient facts to support its proffered amendments and instead offers only unfounded complaints about incomplete document productions and conclusory allegations that "Sprint's claims of infringement **may** be bared by" the licenses. Doc. No. 211 at 16 (emphasis added). Vonage's inability to affirmatively state facts that **do** establish an affirmative defense is fatal to the proposed amendments. Vonage's proposed amendments are futile, and thus Vonage's motion should be denied for this reason as well.

246746v1

Vonage asserts that "License documents" produced by Sprint regarding a license agreement between Sprint and Cisco may bar Sprint's claims of infringement, in whole or in part.  Doc. No. 211 at 7 and 16.  Vonage asserts that these "License documents" relate to the very technology at issue in this case, and the Asserted Patents that Sprint alleges Vonage has infringed.  Doc. No. 211 at 5.  Notwithstanding Vonage's vague and amorphous reference to "License documents," the following facts regarding the license agreements produced by Sprint are undisputed: (1) the agreements <u>do not</u> relate to the Asserted Patents, (2) all of the agreements expired <u>before</u> Vonage even existed, and (3) the agreements clearly and unequivocally state that an express or implied license is <u>not</u> granted to any party other than Cisco.  For all of these reasons, Vonage's reliance on these documents is misplaced and its proffered license defense is futile.

## 1.     <u>The Agreements Do Not Relate to the Asserted Patents.</u>

Fundamental to the numerous problems with Vonage's proposed affirmative defenses is that Vonage cannot identify any document that actually grant a license to the Asserted Patents in this action.  Indeed, no such license exists.  Contrary to Vonage's assertions, the Sprint/Cisco License Agreement to which Vonage refers in its motion did not give Cisco a license to the Asserted Patents, only the option to license unrelated applications.

The Agreement specifically defines the applications that could be licensed—the "Designated Sprint Component Patents"—as "those U.S. Component Patents that are issued or issuing from Designated Sprint Applications," which were attached as Exhibit A to the agreement.  *See* Ex. 3 (License Agreement) § 1.7.  The definition of "Designated Sprint Applications" states that "[a]ll Designated Sprint Applications **shall be listed on Exhibit 'A'** attached hereto," *i.e.*, other than those specifically listed in Exhibit A, no other patents or

applications were licensed to Cisco. *See* Ex. 3 (License Agreement) § 1.6 (emphasis added). The only applications listed on Exhibit A are 1057d, 1148, 1172, and 1189, none of which are the Asserted Patents.[8] *See* Ex. 3 (License Agreement), Exhibit A attached thereto; Doc. No. 167 at Ex. 8, Declaration of Adam Seitz, ¶¶ 3-9. Moreover, none of the listed applications are parent applications to the Asserted Patents, nor are they continuations or continuations-in-part of the Asserted Patents. *See id.* at ¶ 10. Simply stated, the option to license the applications listed in Exhibit A cannot, as a matter of law, support a license, implied or otherwise, to the Asserted Patents. In fact, no patent license was ever executed by Cisco. Therefore, Sprint's offer to license the Designated Sprint Component Patents to Cisco does not give Cisco (or any other party) a license—express, implied or otherwise—to the *Asserted Patents*. For this reason alone, Vonage's amendments are futile and its motion should be denied.

## 2.     The License Documents Expired Before Vonage Existed.

Even assuming that the License Agreement could be construed to cover the Asserted Patents—which it absolutely cannot—Vonage's license defense is futile because the licenses on which Vonage relies expired before Vonage even came into existence. Sprint and Cisco rescinded the Sprint/Cisco License Agreement in a separate agreement effective April 20, 2000, which was *prior to* Vonage's inception in May 2000. *See* Ex. 4 (Termination Agreement) § 1; Doc. No. 167, Ex. 4 (Citron Dep.) at 65:14-66:8. Therefore, the licenses between Sprint and Cisco cannot provide a basis for Vonage's amendments.

Moreover, Vonage's broad allegation that the License Documents contain covenants not to sue that bar Sprint's claims of infringement also fails. *See* Doc. No. 211 at 2 and 3. The covenant not to sue contained in the License Agreement and in Amendment No. 2 to

---

[8] The "Asserted Patents" are U.S. Patent Nos. 6,304,572, 6,633,561, 6,463,052, 6,452,932, 6,473,429, 6,298,064 and 6,665,294.

the Alliance Agreement between Sprint and Cisco expired "twelve months following the termination of the Alliance Agreement." *See* Ex. 3 (License Agreement) § 3.4; Ex. 4 (Termination Agreement) at SPRe-012-01-00790. The plain language of the Alliance Agreement itself establishes that it terminated on December 17, 2001, 36 months following its effective date. *See* Ex. 5 (Alliance Agreement) at § 20.1. Thus, the covenants not to sue expired on December 17, 2002, well in advance of the filing of this lawsuit. Accordingly, these covenants not to sue cannot provide a basis for Vonage's amendments.[9] Both Cisco and Sprint have completed their production of documents pursuant to Vonage's demands, and Vonage still cannot identify any agreements that alter this conclusion. Vonage's hope-for-future-production approach has come to an end. Despite the completion of all production, the proposed amendments remain unsupported and futile.

### 3.    The License Documents Expressly State That An Express or Implied License Is Not Granted.

In its motion, Vonage contends that the License Documents expressly or impliedly grant it a license to the Asserted Patents. *See* Doc. No. 211 at 16. For the reasons set forth above, this contention fails. Moreover, the express language of the License Agreement refutes Vonage's contention.

Section 2.5 of the Sprint/Cisco License Agreement states that "nothing contained in this Agreement shall be construed as a grant to Cisco of any license or right, expressly, by

---

[9] Vonage suggests in its motion that similar agreements were reached between Sprint and Cisco in 2001 and again in 2005, and that these agreements **may** provide support for its proposed defense. Doc. No. 211 at 12, n.5. Beyond wishful thinking, Vonage's argument fails because neither of those agreements contains a covenant not to sue or a license to the Asserted Patents. *See* Doc. No. 167 at Ex. 5 and 6. Moreover, that Vonage contends these documents "may" support its proposed defense is surprising given that Vonage has had these documents in its possession for over two months. Surely Vonage has had an opportunity over the last two months to determine whether the documents actually support its proposed defense—which they do not.

implication or by estoppel … to any patents of Sprint other than the Licensed Patents."[10]  *See* Ex. 3 (License Agreement) § 2.5.  Section 2.5 further states that it is "Cisco's standard practice to include in its sale and license contracts that except for the express license granted by Cisco to its customers or licensees, no other license is granted, by implication or otherwise."  *Id.*  Finally, Section 5.2(d) specifically states that "[t]his Agreement carries no implied licenses."  *See* Ex. 3 (License Agreement) § 5.2(d).  The plain language of the License Agreement clearly and indisputably rejects Vonage's contention and, accordingly, Vonage's proposed amendment must be rejected as futile.

## III.    THE COURT CORRECTLY STRUCK REFERENCES TO VONAGE'S PROPOSED AFFIRMATIVE DEFENSES FROM THE PRETRIAL ORDER.

Despite Judge Waxse's clear ruling prohibiting Vonage from asserting its proposed license defenses, Vonage defiantly ignored his ruling and inserted the rejected defenses into the proposed Pretrial Order.  *See* Ex. N to Doc. 211, Vonage's Proposed Pretrial Order.  Vonage's insertion of the rejected defenses into the proposed Pretrial Order was not well-received by Judge Waxse, who issued an Order striking the "substantive assertions based on the proposed affirmative defenses."  *See* Doc. No. 202.  In yet another attempted end-run around the Court's directive, Vonage now claims the License documents are "admissible evidence, to establish those affirmative defenses that Vonage asserted in its original pleadings, including its originally–pled defense of estoppel."  Doc. No. 211 at 17.  As detailed below, Vonage's efforts to pigeonhole its Cisco Agreement defense into its originally-pled defenses is disingenuous, belied by its own conduct, and prohibited by the Federal Rules.

---

[10] "Licensed Patents" are "the Designated Sprint Component Patents exclusively licensed to Cisco pursuant to this Agreement" (i.e., those listed in Exhibit A).  *See* Ex. 3 (License Agreement) § 1.10.

A.    **Standard of Review**

Upon objection to a magistrate judge's order on a non-dispositive matter, the district court may modify or set aside any portion of the order which it finds to be "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Court does not conduct a *de novo* review; rather, it applies a more deferential standard under which the moving party must show that the magistrate judge order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 (D. Kan. 1997).

Judge Waxse's order striking references to the License documents from the Pretrial Order is not dispositive to any claim or defense properly raised in this matter.  *See Moses v. Allstate Insurance Co.*, No. 05-2488-KHV, 2007 U.S. Dist. LEXIS 23889, at *1-*2 (D. Kan. March 29, 2007) (applying the "clear abuse of discretion" standard when reviewing a Magistrate Judge's order striking contentions from a proposed pretrial order).  Despite deletion of references to the License documents from the entered Pretrial Order, Vonage is still free to purse each of its originally-pled defenses at trial, as these defenses remain present in the Pretrial Order.  *See* Doc. No. 207 at 23.  Vonage was simply prohibited from inserting an implied license defense through the back-door that was soundly rejected when Vonage proceeded in a delayed, yet up-front, motion to amend.  Given the non-dispositive nature of the Order striking contentions from the Pretrial Order, the "clear abuse of discretion" standard applies, and the Court is required to affirm the magistrate's order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)); *see Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27

(D. Kan. 1991) (district court will generally defer to magistrate judge and overrule only if discretion clearly abused).

### B.    Judge Waxse did not Abuse his Discretion in Striking References to Vonage's Proposed Affirmative Defenses from the Pretrial Order.

Citing Federal Rule of Civil Procedure 16(e), Vonage argues the Order striking references to the License Documents from the Pretrial order results in a "manifest injustice so as to warrant reinstating Vonage's contentions as submitted in the draft order." Doc. No. 211 at 20. Rule 16(e) states that the Pretrial Order "shall be modified only to prevent manifest injustice." To evaluate a claim of "manifest injustice" such as Vonage's, this Court has consistently explained that the relevant factors "include: (1) prejudice or surprise to the nonmoving party; (2) the nonmoving party's ability to cure any prejudice; (3) the extent to which including the new issue will disrupt the orderly and efficient trial of the case; and (4) bad faith by the moving party." *Treaster v. Healthsouth Corp.*, No. 05-2061-JWL, 2006 WL 2422234, at *1 (D. Kan. Aug. 18, 2006) (Lungstrum, J.) (citing *Koch v. Koch Indus.*, 203 F.3d 1202, 1222 (10th Cir. 2002)). Additionally, courts consider the timing of when the party knew of the potential need for modification. *See id.*

The majority of these factors have been previously discussed and, as explained by Judge Waxse, heavily weigh in Sprint's favor. Specifically, Judge Waxse, in considering when Vonage knew of the potential need for modification, held Vonage unduly delayed in asserting its license defenses. Doc. No. 192 at 3 and 4. Indeed, Vonage was aware of a potential licensing defense in 2006 and had copies of executed agreements between Sprint and Cisco in its possession as of January 25, 2007. *Id.* Judge Waxse also found that undue prejudice would be visited upon Sprint if the amendments were allowed and that Sprint would be unable to cure such prejudice "given discovery has long been closed." *Id.* at 4. Certainly, for all the reasons

- 17 -

discussed above, the inclusion of the Cisco license defense in the Pretrial Order under the guise of estoppel or any other originally-pled defenses would significantly disrupt the orderly and efficient trial of this matter.  Vonage simply cannot demonstrate any error or abuse of discretion on the part Judge Waxse or any "manifest injustice" visited upon Vonage.

While the Court need not consider the merits of Vonage's contention that the Cisco Agreements can give rise to estoppel, Vonage's contentions are baseless and are contradicted by the very documents on which Vonage relies.  The express language of the Sprint/Cisco License Agreement unequivocally states that no implied license or rights by estoppel arise under this agreement.  For example, section 2.5 of the Sprint/Cisco License Agreement states that "**nothing contained in this Agreement shall be construed** as a grant to Cisco of any license or right, expressly, by ***implication* or by *estoppel*** … to any patents of Sprint other than the Licensed Patents."   See Ex. 3 (License Agreement) § 2.5 (emphasis added).  In addition, Section 5.2(d) specifically states that "[t]his Agreement carries **no implied licenses**." See Ex. 3 (License Agreement) § 5.2(d) (emphasis added).  By the plain language of the License Agreement, Vonage cannot credibly rely on the License Agreement to provide support for its estoppel contentions.  Indeed, referencing such documents in the Pretrial Order would serve only to introduce a new issue that would "disrupt the orderly and efficient trial of the case."  *Koch*, 203 F.3d at 1222.  For these additional reasons, it is clear that Judge Waxse correctly rejected Vonage's attempt incorporate its proposed license defenses into the Pretrial Order.

**C.    Vonage's Contention That The Cisco License Documents Were Part of the Originally-Pled Defenses Either is False or Demonstrates Vonage's Hide-The-Ball Approach.**

Despite an admitted need to amend its pleadings to include the Cisco license defense, Vonage now disingenuously contends that the Cisco license defense already was part of its originally-pled defenses.  Doc. 211, at 18-20.  Beyond the obvious question of why Vonage

- 18 -

would seek to amend its pleadings if its existing defenses were sufficient, the record demonstrates that Vonage never intended for the Cisco Agreements to form the basis for <u>any</u> of its originally-pled defenses, including estoppel and acquiescence.  Vonage's own conduct indisputably demonstrates this fact.

A simple comparison of the positions Vonage took in the original and amended Pretrial Orders, which were filed with the Court before and after Judge Waxse's ruling, respectively, reveal Vonage's bad faith in contending the Cisco Agreements were part of its original defenses.  In the parties' original draft Pretrial Order submitted on May 7, 2007, which was <u>before</u> Judge Waxse's ruling, Vonage described its estoppel defense as follows:

> 6.     Estoppel:  To establish its defense of estoppel, Vonage must prove, by a preponderance of the evidence:
>  (a)     misleading conduct leading to inference that the patentee does not intend to enforce the patent against the alleged infringer;
> (b)     reliance by the alleged infringer and the patentee's conduct; and
> (c)     material prejudice if patentee is allowed to proceed with an infringement suit.

Ex. 8, Original Draft Pretrial Order.  In the parties' amended draft Pretrial Order, submitted on May 14, 2007, <u>after</u> Judge Waxse's May 9, 2007 oral ruling denying Vonage's motion to amend, Vonage described its estoppel defense as follows:

> 6.     Estoppel:  To establish its defense of equitable estoppel, Vonage must prove, by a preponderance of the evidence that:
> (a)     Sprint engaged in misleading conduct leading to an inference that Sprint does not intend to enforce the patent against Vonage;
> (b)     Vonage reasonably relied on Sprint's conduct; and
> (c)     As a result of the reliance, Vonage would be materially prejudiced if Sprint is allowed to proceed with an infringement suit.
>
> Vonage further contends its defense of estoppel may also be established as follows.  Sprint objects to Vonage seeking to prove its defense of estoppel by these additional means:

246746v1

> To establish its defense of **legal estoppel**, Vonage believes it must prove, by a preponderance of the evidence, that Sprint:
> (a)     **Licensed, impliedly licensed or assigned a right**;
> (b)     received consideration; and
> (c)     then sought to derogate from the right granted.
>
> To establish its defense of **contractual estoppel**, Vonage believes it must prove by a preponderance of the evidence that Sprint executed **a valid and enforceable covenant not to sue Vonage**.

Ex. 9, amended draft Pretrial Order (emphasis added).  As these examples make clear, Vonage never intended for the Cisco Agreements to be part of its original estoppel defenses—it merely tried to pigeon-hole the Cisco Agreements into the estoppel defense after the Court rejected Vonage's motion to amend.  Had Vonage truly considered the Cisco Agreements part of its originally-pled defenses, it would have described its estoppel defenses consistently between the original and amended draft Pretrial Orders.  Vonage's own conduct demonstrates that its present contention is false.

Even assuming, *arguendo*, that Vonage actually intended the Cisco Agreements to be part of its originally pled defenses, Vonage did an incredibly effective job of hiding that fact.  In response to Interrogatory No. 6, which sought the basis for Vonage's estoppel and acquiescence defenses, Vonage stated:

> Subject to and without waiving these objections, Vonage Holdings states that Sprint's Asserted Patents **issued as early as 2001, and because Sprint was aware of Vonage Holdings and its VoIP activities since that time, its decision to wait until 2005 to initiate the present law suit amounts to inexcusable delay and prejudice to Vonage Holdings**.

Ex. 10, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4-5) (emphasis added).  Because this response was wholly lacking in substance, Sprint requested that Vonage provide further clarification of the factual bases for its estoppel and acquiescence defenses.  Vonage responded by stating:

> [T]o expand on Vonage's response, with respect to the Affirmative Defense of "laches, **estoppel** and **acquiescence**" Vonage states that **Sprint knew of Vonage's acitivities [sic] in 2001, at the same time as the Asserted Patents were issuing, yet decided to wait until 2005 to file suit. Sprint therefore unreasonably and inexcusably delayed in filing suit**, and consequently, Sprint is barred from pursuing its claim by the doctrine of laches.

Ex. 11, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007. Completely lacking from both of these responses is any mention of facts related to the Cisco Agreements.

If, at this time or any time thereafter, Vonage intended additional facts to support its defenses of estoppel and acquiescence, it was under a duty to supplement its responses and identify those facts to Sprint. *See* Fed. R. Civ. P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect . . . ."). Despite its obligation to supplement under the Federal Rules, Vonage did not. Instead, if Vonage in fact truly intended for the Cisco Agreements to form bases for its estoppel and acquiescence defenses, it opted for a hide-the-ball approach. Vonage first alerted Sprint of its intent to inject the Cisco Agreements into its originally-pled defenses only <u>after</u> Judge Waxse had rejected Vonage's motion to amend, <u>after</u> discovery had closed, <u>after</u> numerous requests from Sprint for the factual bases of its defenses, and <u>after</u> Sprint had set forth its positions during summary judgment.

The Federal Rules do not permit Vonage's hide-the-ball tactics. Under Rule 37, Vonage's failure to supplement its interrogatory responses precludes it from now relying on the Cisco Agreements as part of its originally-pled defenses. *See* Fed. R. Civ. P. 37(c)(1). Specifically, Rule 37 states:

> A party that without substantial justification fails . . . to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a

- 21 -

> trial, at a hearing, or on a motion any witness or information not so
> disclosed.

*Id.* If Vonage ever considered the Cisco Agreements to be within its originally-pled defenses, Vonage's failure to comply with its duty to supplement under Rule 26(e)(2) is indisputable.

Vonage was in possession of the Cisco Agreements for over two months prior to the close of discovery. To this day, Vonage still has not supplemented its interrogatory responses to reflect its last-ditch efforts to bring in its Cisco license defense. Nor is Vonage's failure to supplement harmless. In light of Vonage's contention interrogatory responses, Sprint was not aware of Vonage's purported intent to include the Cisco Agreements as a basis for its originally-pled defense of estoppel. As Sprint has repeatedly made clear and as Judge Waxse concluded, Sprint will suffer significant prejudice if Vonage is allowed to proceed with its Cisco license defense (in whatever form) at this late date. *See, e.g., Payless Shoesource Worldwide, Inc. v. Target Corp.*, 2006 WL 3350649, *2 (D.Kan. Nov. 17, 2006) ("A failure is harmless where there is no prejudice to the opposing party."). Because Vonage has no justification for its failure to supplement and because the failure is not "harmless," "[t]he preclusion sanction of Rule 37(c)(1) is automatic." *Niles v. American Airlines, Inc.*, 2007 WL 30607, *6 D. Kan. Jan. 3, 2007). Accordingly, whether by Vonage's failure to demonstrate "manifest injustice" or by Rule 37(c)(1) sanction, the Court must not permit Vonage to inject its Cisco license defense into its originally-pled defenses. The Court should reject Vonage's objections and affirm Judge Waxse's May 16, 2007 Order (Doc. No. 202).

## IV.  CONCLUSION

For the reasons stated above, Sprint respectfully requests that the Court overrule Vonage's objections. Vonage unduly delayed in pursuing its newly proffered affirmative defenses and in filing its motion to amend. Vonage's delay has resulted in significant prejudice

to Sprint's ability to address Vonage's baseless defenses.  In addition, Vonage's express and implied license defense is wholly unsupported by the license documents.  Accordingly, Vonage's proffered defenses are futile.  Finally, Vonage should not be permitted to insert its new affirmative license defense into its originally-pled defenses.  For all these reasons, the Court should overrule Vonage's objections in their entirety.


Respectfully submitted,


Dated: June 15, 2007.                    __/s/ Adam P. Seitz_____
                                         B. Trent Webb, KS Bar No. 15965
                                         Eric A. Buresh, KS Bar No. 19895
                                         Adam P. Seitz, KS Bar No. 21059
                                         SHOOK, HARDY & BACON L.L.P.
                                         2555 Grand Boulevard
                                         Kansas City, Missouri 64108-2613
                                         (816) 474-6550 Telephone
                                         (816) 421-5547 Facsimile

                                         Attorneys for Plaintiff
                                         SPRINT   COMMUNICATIONS   COMPANY
                                         L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2007, a true and accurate copy of the above and foregoing **SPRINT'S MEMORANDUM IN OPPOSITION TO VONAGE'S OBJECTIONS TO AND MOTION FOR REVIEW OF ORDERS OF MAY 14, 2007 AND MAY 16, 2007 PURSUANT TO FED. R. CIV. P. 72** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608
Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

  /s/   Adam P. Seitz_____
Attorneys for Sprint Communications Company L.P.

246746v1