THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
VONAGE HOLDINGS CORP.,              )   Case No. 05-2433-JWL
VONAGE AMERICA, INC.,               )
                                    )
            Defendants.             )
                                    )
                                    )
                                    )
                                    )

**SPRINT'S REPLY TO VONAGE'S OPPOSITION TO SPRINT'S MOTION TO EXCLUDE THE OPINIONS OF VONAGE'S EXPERT JOEL M. HALPERN**

Sprint Communications Company L.P. ("Sprint") hereby provides the following Reply in Support of Its Motion To Exclude The Opinions Of Vonage's Expert Joel M. Halpern (Doc. 197) and in response to Vonage's corresponding Opposition (Doc. 214).

**I.     INTRODUCTION**

Vonage <u>does not dispute</u> that Mr. Halpern does not meet <u>his own</u> definition of "one of ordinary skill in the art" for the patents-in-suit.  Instead, Vonage attempts to obscure the relevant issue by arguing that a witness does not have to be "one of ordinary skill in the art" to qualify as an expert under FED. R. EVID. 702.  While showing that a witness qualifies under Rule 702 may be sufficient to allow that witness to testify on *some* issues, it does not follow that Rule 702 qualifications entitle a witness to testify regarding the infringement inquiry as Mr. Halpern purports to do.  Indeed, Vonage's argument appears to suggest that as long as a witness has *some* qualifications, he should be entitled to testify on *any* topic.  The law does not support Vonage's

argument. In fact, the law requires that any expert <u>who opines on the infringement inquiry</u> in complex cases must be at least one of ordinary skill in the art.

Mr. Halpern is not being proffered as some abstract technology expert. Instead, the sole issue upon which Vonage proffers Mr. Halpern is the very issue for which Mr. Halpern is *not* qualified. Mr. Halpern has been offered solely to testify as to whether Vonage infringes Sprint's asserted patents. *See* Ex. 1, (Halpern Dep.) at 72:7–9 ("I have been asked to opine specifically on the infringement issues and have focused on those questions."). Indeed, the *only* expert reports Mr. Halpern served pursuant to Fed. R. Civ. P. 26(a)(2) related to his opinion on the infringement inquiry. *See* Doc. 204 at Ex. A (report titled "Expert Non-Infringement Report of Joe Halpern"); Ex. 2 (supplemental non-infringement report). Thus, the relevant issue is <u>not</u> whether Mr. Halpern could qualify as a Rule 702 expert on *some* topic—the sole issue is whether he is qualified to address the infringement inquiry, whether literal or under the doctrine of equivalents.[1] When limited to the proper issue, Mr. Halpern, by his own admission, is not one of ordinary skill in the art and, therefore, is not qualified to offer an opinion on infringement.

## II.    LEGAL ARGUMENT

### A.    The Federal Circuit Requires the Infringement Analysis to Come from One of Ordinary Skill in the Art

Contrary to Vonage's position, the "one of ordinary skill in the art" standard applies to the infringement analysis as well as the obviousness analysis. This is true whether infringement is considered literally or under the doctrine of equivalents. Indeed, courts uniformly hold that the "one of ordinary skill in the art" standard is not only *relevant* to the infringement inquiry—it is *required* to prove infringement under the doctrine of equivalents

---

[1] The relief Sprint seeks and the basis therefor is clearly set forth in Sprint's motion: Mr. Halpern "is not qualified to testify as an expert ***regarding non-infringement in this matter*** and his non-infringement reports and testimony should be excluded." Mem. at 2 (Doc. 197). Vonage's opposition appears to ignore this salient fact.

("DOE"). In its recent decision of *Aquatex Indus. v. Techniche Solutions*, the Federal Circuit emphasized that

> [b]oth the Supreme Court and this court have made clear that ***the evidence of equivalents must be from the perspective of someone skilled in the art***, for example "through testimony of experts or others versed in the technology . . . . [T]he difficulties and complexities of the doctrine require that the evidence be presented to the jury or other fact-finder ***through the particularized testimony of a person of ordinary skill in the art***, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that ***those skilled in the art*** would recognize the equivalents.

479 F.3d 1320, 1329 (Fed. Cir. 2007) (emphasis added). District courts agree and likewise require that any testimony of equivalents must be from one of ordinary skill in the art. *See Abraham v. Super Buy Tires, Inc.*, 2007 WL 1450311, at * 4 (S.D. Cal. May 15, 2007) (granting summary judgment of non-infringement under the DOE where the patentee failed to introduce testimony from one of ordinary skill in the art).

Analysis by one of ordinary skill also is required for literal infringement in complex cases. Immediately after stating that testimony from one of ordinary skill in the art is *required* for the DOE, the Federal Circuit reiterated that such testimony is generally required in the literal infringement analysis as well, particularly for cases involving complex technology. *See Aquatex*, 479 F.3d at 1329 n.7 (citing *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369–70 (Fed. Cir. 2004)). On another occasion, the Federal Circuit has relied on the "level of ordinary skill in the art" standard to determine whether, under *Centricut*, the case is sufficiently complex so as to require expert testimony to prove literal infringement. *See Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1323 n.3 (Fed. Cir. 2005) (citing *Centricut*, 390 F.3d at 1324–25). There can be no question that the present case involves complex subject matter.

2521382v1

Moreover, the conclusion that the infringement inquiry requires the perspective of one of ordinary skill in the art is further established when one considers the nature of the inquiry. In order to assess whether an accused device falls within the scope of a patent—i.e., to *compare* a patent to an accused device—one must first understand the teaching of a patent. The Federal Circuit has repeatedly stated that patents are written for one of ordinary skill in the relevant art, not the general public. *See, e.g.*, *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1556 (Fed. Cir. 1983). Accordingly, patents limitations are construed according to "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The entire claim and infringement analysis process is inextricably intertwined with the requirement that the assessment be performed from the perspective of one of skill in the art.

Furthermore, the requirement that a witness possess at least the level of ordinary skill to offer testimony on infringement in technologically-complex cases (such as the case currently before this Court) is entirely congruent with other aspects of patent law. As a general rule, the Federal Circuit requires that "testimony concerning anticipation [under 35 U.S.C. § 102] must be testimony from one skilled in the art . . . ." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). It is not surprising, then, that the Federal Circuit also requires one of ordinary skill to testify on infringement, as the infringement inquiry and the anticipation inquiry are closely related. In both analyses, one must first construe the patent claims at issue and then compare the construed claims to the piece of prior art or the accused device at issue. *See Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003) (citing the adage, stating: "that which would literally infringe if later in time anticipates if earlier").

It is indisputable that for an individual to testify with respect to the issues of infringement requires an analysis performed by one of ordinary skill in the art. It also is undisputed that Mr. Halpern does not meet the level of ordinary skill in the art, as defined in his own report. *See* Section II., D. *supra*. Vonage's contention that Mr. Halpern has *some* technical or general background knowledge is a distinct inquiry that has no bearing on whether he can testify regarding an infringement analysis. Certainly, a witness may have *some* specialized or technical knowledge that would allow that witness to offer expert testimony on *some* technological background issues without being able to make the *comparison* of the accused product with the asserted patent, *i.e.*, the infringement inquiry. Indeed, performing the infringement inquiry is fundamentally different from offering technical background testimony pursuant to qualification under Rule 702. Here, whether Mr. Halpern qualifies under Rule 702 is not important because he does not qualify to render the infringement analysis for which Vonage offers him.

B. **Vonage's Cited Authority is Inapposite**

Notwithstanding clear Federal Circuit precedent mandating testimony from the perspective of one of at least ordinary skill, Vonage argues that this Court should not consider whether Mr. Halpern is one of ordinary skill in the art. To support its position, Vonage relies primarily on three cases. *See* Opp'n at 3 (citing *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty., Ltd.*, 122 F.3d 1040 (Fed. Cir. 1997)); *id.* at 4 (citing *eSpeed, Inc. v. Brokertec USA, LLC*, 404 F. Supp. 2d 575 (D. Del. 2005)); *id.* at 5 (citing *Pfizer Inc. v. Mylan Labs, Inc.*, 2006 U.S. Dist. LEXIS 83856 (W.D. Pa. Nov. 17, 2006)). Notably, *Endress*, *eSpeed*, and *Brokertec* all pre-date the Federal Circuit's recent pronouncement in *Aquatex*, which stated that evidence on the doctrine of equivalence **must** be presented "through the particularized testimony of a person **of ordinary skill in the art**" and that such testimony also is generally required for the

literal infringement analysis in cases involving complex technology. *See Aquatex*, 479 F.3d at 1329 & n.7 (citing *Centricut*, 390 F.3d at 1369–70) (emphasis added). Accordingly, the recent pronouncement in *Aquatex* represents new law that obviously impacts the inquiry and renders much of Vonage's argument obsolete. Nonetheless, each of Vonage's cases are inapplicable to the present motion.

First, the *Endress* court was addressing the polar opposite of the present issue. In *Endress*, a party complained that the proffered expert was *over* qualified and, therefore, "not ordinary enough" to be able to testify about how one of *ordinary* skill would view the problem at issue in *Endress*. *See* 122 F.3d at 1042 ("To suggest that the construct [of one of ordinary skill in the art] applies to particular individuals could mean that a person of *exceptional* skill in the art would be disqualified from testifying as an expert because not ordinary enough."). Indeed, the court found the expert at issue in *Endress* to be highly qualified. *See id.* ("To the extent that the gravamen of defendants' complaint is that Dr. Silva was unqualified . . ., the record reflects his substantial credentials . . . ."). Contrary to Vonage's argument, *Endress* stands for the proposition that the "one of ordinary skill in the art" standard is not a ceiling over which witnesses of *extraordinary* skill cannot testify regarding infringement—a position with which Sprint agrees. It is, however, a floor below which witnesses cannot testify regarding infringement. *See, e.g.*, *Heidelberger Druckmaschinen AG v. Ohio Elecs. Engravers, Inc.*, No. 98 C 7946, 2000 WL 631382, at *4 n.4 (N.D. Ill. May 12, 2000) (citing *Endress* for the proposition that "[o]ne with *greater* than ordinary skills can still provide useful testimony as to the hypothetical person of ordinary skill. ***One with less than ordinary skill in the art, however, is not likely to be able to provide useful testimony***.") (emphasis added). To suggest, as Vonage does, that the ordinary skill in the art standard does not serve as a floor renders the entire

standard meaningless, which it certainly is not under *Aquatex*. Here, Mr. Halpern failed to meet the minimum standard required by the Federal Circuit in *Aquatex* and *Centricut* and, thus, is not qualified to conduct the proffered infringement inquiry.

Second, in *Pfizer*, the proffered expert was designated to testify on six different *background* technical topics, none of which involved an infringement inquiry. *See Pfizer*, 2006 U.S. Dist. LEXIS 83856, at *9. In fact, the *Pfizer* Court did not even address the issue presented here—whether an individual who does not meet the ordinary skill in the art standard can testify as to the *infringement* inquiry. As noted above, an expert may meet the requirements of Fed. R. Evid. 702 with respect to background technical issues, and thus be qualified as an expert, without also being one of ordinary skill in the art. Thus, the outcome of *Pfizer* is not at odds with the present case, as being one of ordinary skill in the art was not required for the issues on which the *Pfizer* expert was to opine. Here, however, the infringement inquiry is the *only* topic for which Vonage offers Mr. Halpern, and the Federal Circuit requires the level of ordinary skill in the art to opine on such inquiries. *See Aquatex*, 479 F.3d at 1329 & n.7.

Finally, in *eSpeed*, the expert's testimony was not objectionable because the proffered testimony was limited to the expert's areas of technical expertise. The patents at issue in *eSpeed* covered "an electronic trading platform used in trading government securities," and a primary issue was whether the patent-in-suit was invalid for failure to provide sufficient disclosure. 404 F. Supp. 2d at 577. Both parties agreed that Dr. Rinard, the expert at issue, was a person of at least ordinary skill in the art of computer systems, but he was not familiar with the rules of securities trading. *Id.* at 579. Consequently, the party challenging Dr. Rinard's testimony argued he was "not qualified to testify about what trading rules were disclosed" by the asserted patent. *Id.* at 581. In response, the proponent of Dr. Rinard "told the court that Dr.

Rinard would not be offering a general opinion on the adequacy of the '733 application's disclosure, but instead would provide a narrow opinion on 'what behaviors you would get' 'if you built a computer system according to the teachings of the patent.'" *Id.* On post-trial motion for judgment as a matter of law, the court found the expert's testimony was not objectionable because it was limited to the narrow opinion, as represented by counsel, for which Dr. Rinard clearly was at least one of ordinary skill. *See id.*

### C. Vonage is Incorrect in Its Assertion that Sprint Does Not Challenge the "Fit" of Mr. Halpern's Proffered Testimony

Vonage incorrectly has argued that Sprint raises no challenge to the "fit" of Mr. Halpern's testimony. *See* Oppn at 2 (Doc. 214). To the contrary, the "fit" of his testimony is central to Sprint's *Daubert* motion. Sprint has not contended that Mr. Halpern is unable to qualify as an expert for *any* topic. Instead, Sprint simply disputes that Mr. Halpern's level of experience qualifies him to render an opinion as to whether the Vonage system infringes Sprint's patents. Mr. Halpern has been designated as Vonage's *non-infringement* expert, not its technical background expert. Indeed, the title of Mr. Halpern's expert report is "Expert Non-Infringement Report of Joe Halpern." As to the infringement inquiry, Mr. Halpern is not qualified under his own standards, for the reasons set forth above. As to any other purported expertise, Mr. Halpern has not submitted any background expert reports and Sprint, accordingly, has not made such an assessment. Mr. Halpern may be qualified to testify on certain background matters, but he is not qualified to offer an opinion that compares the claims of the asserted patent to the accused devices.

Likewise, the extent to which Mr. Halpern has testified in other matters as an expert is irrelevant here for several reasons. First, Vonage has not established that the subject matter of the Verizon lawsuit—a suit involving *different* patents—qualifies Mr. Halpern as one

of ordinary skill in the art of the patents asserted in *this* lawsuit. *See, e.g.*, *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (*Daubert* burden is on party offering expert). Second, Vonages admits that the Verizon court had no opportunity to exclude Mr. Halpern because "Verizon made no objections regarding Mr. Halpern's qualification as an expert . . . ." Oppn at 12 (Doc. 214). Verizon's failure to raise such objections has no effect on the strength, or lack thereof, of Mr. Halpern's qualifications. Sprint has and does raise such an objection and Mr. Halpern's uncontested testimony in some other case has no bearing on this matter.

> D. **Mr. Halpern's General Industry Experience Does Not Meet His Own Standards for One of Ordinary Skill in the Art**

Tellingly, Vonage fails to even mention Mr. Halpern's definition as to the level of ordinary skill in the art (which is consistent with the level defined by all other experts in this case). Vonage's failure is not surprising because Mr. Halpern indisputably does not meet the standard. Mr. Halpern defines the level of ordinary skill as follows:

> A person of ordinary skill in the art at the time of the effective filing dates of the Sprint Patents would have had a bachelors degree in electrical engineering, computer engineering or computer science, **and** at least three years experience in the telecommunications industry. The person would also have some familiarity with narrowband and broadband networks, telecommunications signaling requirements and the Public Switched Telephone Network ("PSTN").

Doc. No. 197, Ex. A, at 5 and 6 (emphasis added). Regarding education, Mr. Halpern simply lacks the requisite educational experience required to conduct an infringement analysis in this case.[2] Because the level of ordinary skill requires educations **and** industry experience, the analysis may end here – Mr. Halpern simply does not have the requisite education. Nonetheless,

---

[2] Though Mr. Halpern's CV indicates he has a minor (not a B.S.) in Computer Science, he admitted in his deposition that he did not even have a minor. Doc. No. 197, at Ex.C, 17:2-10.

Vonage goes to great lengths to describe Mr. Halpern's general industry experience. Entirely absent from this discussion, however, is any explanation as to how this general experience comports with Mr. Halpern's own definition of ordinary skill in the art.

For example, Vonage attempts to manufacture experience within the telecommunications industry by pointing to Mr. Halpern's experience with "a company that designs and builds devices that interface between the Internet and such other companies." Opp'n at 9. Mr. Halpern, however, admitted that this experience involved "Internet service providers who were **not** telephone companies,"[3] which does not satisfy his own standards. Doc. No. 197, Ex. A, at 5 and 6. Knowing that Mr. Halpern has no true experience in the telecommunications industry, Vonage references Mr. Halpern's "27 years of experience with data networks" as evidence of his qualifications to testify. Opp'n at 10 (emphasis added). Vonage argues such experience is sufficient and that requiring such experience to be within the telecommunications industry is "ludicrous." *Id.* It is not some slight of advocacy by Sprint that mandates experience within the telecommunications industry. Instead, it is Mr. Halpern (and the other experts in this case) who specifically requires experience "in the telecommunications industry" as a necessary prerequisite to conducting an infringement analysis in this case. Doc. No. 197, Ex. A, at 5 and 6 (emphasis added). Additionally, Vonage goes to great lengths to discuss Mr. Halpern's experience with "Asynchronous Transfer Mode (ATM) technology." Opp'n at 10. The standard of skill in the art, however, requires familiarity with "*narrowband*" networks[4] and, as Vonage is well aware, ATM technology is a *broadband* networks. In fact, Vonage's opposition fails to identify *any* experience by Mr. Halpern with narrowband networks. Opp'n at 9-12. This is not

---

[3] Doc. No. 197, Ex. C at 32:10-14 (emphasis added).
[4] Doc. No. 197, Ex. A, at 5 and 6

2521382v1

surprising given that Mr. Halpern admitted that he had no such experience. *See, e.g.*, Doc. No. 197, Ex. C at 22:8-11; 30:12-19; 36:7-17; 37:1-3; and 43:15-21.

As demonstrated above, the experience touted by Vonage fails to meet the experience specifically required by the standard of skill in the art that Mr. Halpern himself defined. Because his experience does not fall within the standard of one of skill in the art, Vonage's arguments are misplaced. In fact, the experience cited by Vonage supports Sprint's position by reinforcing the fact that Mr. Halpern lacks the requisite qualifications to perform the infringement analysis as one of skill in the art. Further, the tangential experience Mr. Halpern does possess may confuse the jury into thinking Mr. Halpern is one of skill in the art. The Court should exercise its gatekeeping function to prevent this form of jury confusion.

## III. CONCLUSION

The Court, as gatekeeper, should preclude any testimony from Mr. Halpern that purports to offer an opinion on whether Vonage infringes the asserted patents. Such a comparison is solely within the province of one of ordinary skill in the art—a standard Mr. Halpern does not meet according to his own sworn deposition testimony. Because Vonage offers Mr. Halpern solely on the issue of infringement, the Court may properly exclude his testimony.

- 12 -

|                          | Respectfully submitted,                                            |
|--------------------------|--------------------------------------------------------------------|
| Dated: July 6, 2007      | /s/ Adam P. Seitz                                                  |

B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT COMMUNICATIONS COMPANY L.P.

- 13 -

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of July, 2007, a true and accurate copy of the above and foregoing **SPRINT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS OF VONAGE'S EXPERT JOEL M. HALPERN** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608
Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

 /s/ Adam P. Seitz
Attorneys for Sprint Communications Company L.P.