**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

SPRINT COMMUNICATIONS COMPANY L.P., )
                                                  )
                 Plaintiff,       )
                                                  )
            v.                      )
                                                  )   Case No. 05-2433-JWL
VONAGE HOLDINGS CORP.,           )
VONAGE AMERICA, INC.,             )
                                                    )
              Defendants.     )

**SPRINT'S REPLY TO VONAGE'S OPPOSITION TO SPRINT'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

      In support of its Motion for Partial Summary Judgment, Plaintiff Sprint Communications Company L.P. ("Sprint") hereby provides the following Reply to Vonage's Opposition to Sprint's Motion for Partial Summary Judgment.

Dockets.Justia.com

# TABLE OF CONTENTS

I.   REPLY TO VONAGE'S RESPONSES TO SPRINT'S STATEMENT OF
     UNDISPUTED MATERIAL FACTS ...................................................................1

     A.   The Parties ............................................................................................1

     B.   Jurisdiction ...........................................................................................2

     C.   Venue ....................................................................................................2

     D.   Sprint's Asserted Patents .....................................................................3

     E.   The Present Lawsuit..............................................................................3

     F.   Vonage's Affirmative Defenses............................................................4

II.  RESPONSE TO VONAGE'S STATEMENT OF ALLEGEDLY MATERIAL
     FACTS IN DISPUTE ....................................................................................16

III. RESPONSE TO VONAGE'S STATEMENT OF ALLEGEDLY MATERIAL
     FACTS NOT IN DISPUTE ...........................................................................20

     A.   Vonage's Claims as to 35 U.S.C. §112 ¶2.........................................20

     B.   Notice ..................................................................................................29

     C.   Invention and Prosecution of Asserted Patents..................................29

     D.   Prosecution Laches ............................................................................31

     E.   Misuse..................................................................................................37

     F.   Patent Claims at Issue ........................................................................39

IV.  INTRODUCTION ........................................................................................40

V.   ARGUMENT .................................................................................................41

     A.   Summary Judgment On Vonage's Second and Seventh Affirmative
          Defenses Under 35 U.S.C. § 112, ¶ 2 Is Proper ..................................41

          1.   Vonage's Arguments Must Be Disregarded Under Rule 37(c)(1)............41

          2.   Vonage's Alleged Facts Do Not  Establish A Material Dispute................45

          3.   Vonage's Seventh Affirmative Defense Similarly Fails............................47

     B.   Vonage's Fifth Affirmative Defense Does Not Present A Triable Issue
          And Rule 56(f) Does Not Preclude Entry Of Summary Judgment.......................48

          1.   Competitive Documents Provide No Basis To Avoid Summary
               Judgment ..................................................................................................48

2.      Vonage's Appeal From the Court's Orders of May 14 and 16, 2007 Provide No Basis for Vonage to Avoid Summary Judgment As To Its Fifth Affirmative Defense .......................................................52

C.      Vonage's Untimely Assertion of Prosecution Laches Must Be Rejected..............53

D.      Vonage's Misuse And Unclean Hands Affirmative Defenses Are Barred...........56

E.      Summary Judgment Is Proper As To Vonage's Section 287 Affirmative Defense ................................................................................................................58

F.      Summary Judgment Is Proper As To Vonage's § 101 Affirmative Defense.........61

1.      Vonage's § 101 Assertions Are Barred .....................................................61

2.      Vonage's Assertion Regarding "Signal" Claims Is Erroneous.................62

G.      Summary Judgment Is Proper As To Vonage's Unenforceability Claim..............65

H.      Summary Judgment Is Proper As To Vonage's Counterclaim and Affirmative Defense of Non-Infringement .............................................................66

I.      Summary Judgment Is Proper As To Vonage's "Additional Defenses" ...............66

VI.      CONCLUSION.................................................................................................................67

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)................. 50, 65

*Aircapital Cablevision, Inc. v. Starlink Communications Group, Inc.*, 634 F.Supp. 316 (D. Kan.

    1986) ...................................................................................................................... 57

*Allen Archery, Inc. v. Browning Mfg. Co.,* 819 F.2d 1087 (Fed. Cir. 1987) ............................... 66

*Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193 (10th Cir.2006)..................... 17

*C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340 (Fed.Cir.1998) ..................................... 56, 58

*Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313 (C.D.Cal. 2004).. 43, 44,

    55

*Committee for First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir.1992) .......................... 48

*Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) ...................................................... 60

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)........................................................... 64

*DiCesare v. Stuart*, 12 F.3d 973 (10th Cir.1993)......................................................... 48

*Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358 (Fed. Cir. 2001)............................... 50

*Emergis Technologies, Inc. v. Cable One, Inc.*, 2006 WL 2644969, *1 (D.Kan. Sept. 14, 2006)

    ............................................................................................................ 23, 24, 38, 40

*Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371 (Fed.Cir.2001) ......................... 46

*Falko-Gunter Falkner*, 448 F.3d 1357 (Fed. Cir. 2007)............................................ 23, 24, 38, 40

*Ferluga v. Eickhoff*, No. 05-2338 JWL, 2006 WL 3144218, at *2 (D. Kan. Oct. 31, 2006)  17, 35,

    36, 37, 38, 39

*Freeman v. Gerber Products Co.*, 466 F.Supp.2d 1242 (D.Kan. 2006) ....................................... 51

*Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987)................................... 65

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995)............................. 49

*Harvey Barnett, Inc. v. Shidler,* 338 F.3d 1125 (10th Cir.2003) ................................................... 17

*In re Indep. Serv. Orgs. Antitrust Litigation*, 85 F.Supp.2d 1130 (D. Kan. 2000) ...................... 43

*International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901 (10th

    Cir. 1995) .................................................................................................... 49, 50, 51, 58

*Markman*, 517 U.S. at 372 ......................................................................................... 23, 38, 40

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................................... 60

*McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F.Supp.2d 203 (D.Del. 2006)

    ................................................................................................................................... 50

*Medical Graphics Corporation v. SensorMedics Corp.,* No. 3-94-525 1995 U.S. Dist. LEXIS

    11097, at * 7 (D. Minn. June 5, 1995) ............................................................................ 58

*Meyers v. Asics Corp.*, 974 F.2d 1304 (Fed.Cir.1992) ................................................................ 50

*Miksis v. Howard*, 106 F.3d 754 (7th Cir. 1997) ....................................................................... 44

*O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 112-114 (1853) ........................................................ 63

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49

    (1993)........................................................................................................................... 57

*Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir.1976)................................................................ 61

*Radio Corporation of America v. Radio Station KYFM, Inc.*, 424 F.2d 14 (10th Cir.1970)........ 61

*Refac Electronics Corp. v. A & B Beacon Business Machines,* 695 F. Supp. 753 (S.D.N.Y. 1988)

    ................................................................................................................................... 58

*Reiffin v. Microsoft Corp.,* 270 F.Supp.2d 1132 (N.D. Cal. 2003)........................................ 53, 55

*Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir.1991) ........................................................ 61

*Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372 (Fed. Cir. 2000) ............. 21, 22, 23, 24, 46, 47

*Stevens v. Deluxe Financial Services, Inc.*, 199 F.Supp.2d 1128 (D. Kan. 2002)....................... 43

*Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)...............................58, 59

*Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.,* 297 U.S. 387, 80 L. Ed. 736, 56 S. Ct. 528

   (1936).................................................................................................................................. 58

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) ........................... 44

**Statutes**

28 U.S.C. §1391 .................................................................................................................................. 2

35 U.S.C. § 112.................................................................... 4, 5, 6, 7, 20, 21, 40, 44, 45, 46, 47

35 U.S.C. § 287 ............................................................................ 3, 17, 40, 58, 59, 60, 61

35 U.S.C. §112................................................................................................................................ 4, 5

**Rules**

Fed. R. Civ. P. 37(c)(1).......................................................................................................... 43, 55

Fed. R. Civ. P. 56(e) ....................................................................................................................... 60

Fed. R. Civ. P. 8(c) ......................................................................................................................... 61

I.     **REPLY TO VONAGE'S RESPONSES TO SPRINT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

In support of its motion for partial summary judgment, Plaintiff Sprint Communications Company L.P.  ("Sprint") filed a Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment, which Vonage responded to in its Opposition.  Sprint hereby replies to those responses.

A.     **The Parties**

**Sprint's Fact No. 1:**  Plaintiff Sprint Communications Company L.P.  ("Sprint") is a Limited Partnership organized and existing under the laws of Delaware, with its principal place of business at 6500 Sprint Parkway, Overland Park, Kansas 66251.  (Doc. No. 2, Sprint's First Amended Complaint, ¶1; Exh. 1, Pretrial Order, § 4.a. ¶ 1).

**Vonage's Response to No. 1:**      Undisputed, though Vonage disputes that this fact is material.

**Sprint's Reply to No. 1:**     Fact 1 is undisputed.

**Sprint's Fact No. 2:**  Defendant Vonage Holdings Corp. ("Vonage Holdings") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 2147 Route 27, Edison, New Jersey 08817.  (Doc. No. 2, Sprint's First Amended Complaint, ¶ 4; Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, ¶ 4; Exh. 1, Pretrial Order, § 4.a. ¶ 2).

**Vonage's Response to No. 2:**      Undisputed, though Vonage disputes that this fact is material.

**Sprint's Reply to No. 2:**     Fact 2 is undisputed.

**Sprint's Fact No. 3:**  Defendant Vonage America, Inc. ("Vonage America") is a wholly owned subsidiary of Vonage Holdings and is a corporation organized and existing under

the laws of Delaware, with its principal place of business at 2147 Route 27, Edison, New Jersey 08817.  (Doc. No. 2, Sprint's First Amended Complaint, ¶ 5; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, ¶ 5; Exh. 1, Pretrial Order, § 4.a. ¶ 3).

**Vonage's Response to No. 3:**    Undisputed, though Vonage disputes that this fact is material.

**Sprint's Reply to No. 3:**    Fact 3 is undisputed.

**Sprint's Fact No. 4:**  Vonage Holdings Corp. was incorporated in or around May 15, 2000; Vonage America Inc. was incorporated on or around April 29, 2005.  (Exh. 1, Pretrial Order, § 4.a. ¶ 39).

**Vonage's Response to No. 4:**    Undisputed, though Vonage disputes that this fact is material.

**Sprint's Reply to No. 4:**    Fact 4 is undisputed.

B.    **Jurisdiction**

**Sprint's Fact No. 5:**  This Court has personal jurisdiction over the parties.  (Exh. 1, Pretrial Order, § 4.a. ¶ 4).

**Vonage's Response to No. 5:**    Undisputed, though Vonage disputes that this fact is material.

**Sprint's Reply to No. 5:**    Fact 5 is undisputed.

C.    **Venue**

**Sprint's Fact No. 6:**  Venue is proper in this Court pursuant to 28 U.S.C. §1391. (Exh. 1, Pretrial Order, § 4.a. ¶ 6).

**Vonage's Response to No. 6:**    Undisputed, though Vonage disputes that this fact is material.

**Sprint's Reply to No. 6:**    Fact 6 is undisputed.

2

D.     **Sprint's Asserted Patents**

**Sprint's Fact No. 7:**  Sprint has asserted the following patents against Vonage: United States Patent Nos. 6,304,572; 6,298,064; 6,452,932; 6,463,052; 6,473,429; 6,633,561; and 6,665,294 ("Sprint's Asserted Patents").  (Exh. 1, Pretrial Order, § 4.a. ¶¶ 7-13; 17-27).

**Vonage's Response to No. 7:**     Undisputed, though Vonage disputes that this fact is material.

**Sprint's Reply to No. 7:**     Fact 7 is undisputed.

E.     **The Present Lawsuit**

**Sprint's Fact No. 8:**  Sprint, through its counsel, provided notice of its patent rights to Vonage in five separate letters, from July 13, 2004 to July 15, 2005.  (Exhs. 2-6, Letters from Sprint's counsel to Vonage's CEO Jeffrey Citron, with proofs of service attached thereto).

**Vonage's Response to No. 8:**     Disputed.  For the reasons set forth in its Statement of Material Facts in Dispute and in this Memorandum, Vonage disputes that letters sent by Sprint's counsel to Vonage constituted "notice of Sprint's patent rights," or notice of any kind.  See Exs. 2-6 to Sprint's Motion.

**Sprint's Reply to No. 8:**     It is undisputed that Sprint provided Vonage with knowledge of the existence of 43 Sprint patents relating to "Voice Over Packet (VoP)" technology, including Sprint's Asserted Patents, in five separate letters.  (Exhs. 2-6 to Sprint's Motion).  It also is undisputed that Sprint provided Vonage with a CD that contained copies of Sprint's Asserted Patents.  *Id.*  Vonage's attorney argument regarding whether the letters constitute "notice" under 35 U.S.C. § 287 should be disregarded as improper and irrelevant.  (*See* Sprint's Reply Br., at __, *infra*).

3

**Sprint's Fact No. 9:** Vonage received each of these five letters. (Exh. 1, Pretrial Order, § 4.a. ¶¶ 29-33; Exhs. 2-6, Letters from Sprint's counsel to Vonage's CEO Jeffrey Citron, with proofs of service attached thereto).

> **Vonage's Response to No. 9:**     Undisputed.

> **Sprint's Reply to No. 9:**     Fact 9 is undisputed.

**Sprint's Fact No. 10:** Sprint filed its initial Complaint against Vonage for patent infringement on October 4, 2005 (Doc. No. 1, Sprint's Complaint).

> **Vonage's Response to No. 10:**     Undisputed.

> **Sprint's Reply to No. 10:**     Fact 10 is undisputed.

**F.     Vonage's Affirmative Defenses**

**Sprint's Fact No. 11:** Vonage's Second Affirmative Defense states that Sprint's Asserted Patents "are invalid under 35 U.S.C. §112 for failing to point out and distinctively claim that part or portion of the subject matter disclosed in the patents' specifications that the named inventor regarded as his 'invention' or improvement over the prior art." (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

> **Vonage's Response to No. 11:**     Undisputed. However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 5.

> **Sprint's Reply to No. 11:**     Fact 11 is undisputed.

**Sprint's Fact No. 12:** Vonage's Second Affirmative Defense is a defense for invalidity under the second paragraph of 35 U.S.C. § 112. (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

4

**Vonage's Response to No. 12:**    Undisputed.    However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 5.

**Sprint's Reply to No. 12:**    Fact 12 is undisputed.

**Sprint's Fact No. 13:** Vonage's First Supplemental Response to Sprint's Interrogatory No. 5 states:

> Further, Vonage asserts that the apparent scope of the asserted claims as set forth in Mr. Wicker's January 12, 2007 expert report of infringement is sufficiently broad such that . . . one or more of the claims of the asserted patents fail to particularly point out and distinctly claim the subject matter which the applicant regards as the invention pursuant to 35 U.S.C. §112.  Vonage will provide further details of the invalidity of the asserted claims under §§ 101 and 112 in its expert report due on February 23, 2007.

(Exh. 7, Defendants' First Supplemental Response to Plaintiff's Interrogatory No. 5, at 3).  In its Second Supplemental Response, Vonage specifically "incorporates by reference the February 28, 2007 Expert Invalidity Report of Frank R. Koperda and its accompanying exhibits and attachments, which *inter alia* set forth opinions that each asserted claim of the [sic] each of the patents-in-suit is not valid under one or more sections of Title 35 of the U.S. Code."  (Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3).

**Vonage's Response to No. 13:**    Undisputed.    However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 5.

**Sprint's Reply to No. 13:**    Fact 13 is undisputed.

**Sprint's Fact No. 14:** Vonage's Seventh Affirmative Defense states "[t]he Complaint is barred by 'the doctrine that a patentee may not broaden his claims by describing the

product in terms of function.'"  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 7, Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 7).

**Vonage's Response to No. 14:**     Undisputed.   However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 5.

**Sprint's Reply to No. 14:**     Fact 14 is undisputed.

**Sprint's Fact No. 15:** The Expert Invalidity Report of Frank R. Koperda provides no opinion regarding 35 U.S.C. § 112, paragraph 2 (Vonage's Second Affirmative Defense) and "the doctrine that a patentee may not broaden his claims by describing the product in terms of function" (Vonage's Seventh Affirmative Defense).  (*See generally* Exh. 10, Expert Invalidity Report of Frank R. Koperda).

**Vonage's Response to No. 15:**     Undisputed.

**Sprint's Reply to No. 15:**     Fact 15 is undisputed.

**Sprint's Fact No. 16:** Vonage's Counterclaim II seeks a declaration that Sprint's Asserted Patents "are invalid for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).

**Vonage's Response to No. 16:**     Undisputed.

**Sprint's Reply to No. 16:**     Fact 16 is undisputed.

**Sprint's Fact No. 17:** Vonage's affirmative defenses do not set forth 35 U.S.C. § 101 as a basis of invalidity.  (Doc. No. 73, Vonage Holdings' First Amended Answer and

Counterclaims, at 6-7; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6-7).

**Vonage's Response to No. 17:**    Undisputed, other than that Sprint fails to mention that Vonage reserved its right to amend its claims based on ongoing discovery.  See Vonage Holdings Corp. and Vonage America, Inc.'s First Amended Answer and Counterclaims, Docs. No. 73, 74, at Additional Defenses.

**Sprint's Reply to No. 17:**    Fact 17 is undisputed.    Vonage's statement regarding an alleged reservation of rights to amend based on ongoing discovery is irrelevant because the deadline for such amendments has passed and discovery is now closed.  The statement also is irrelevant because Vonage admits that a defense under § 101 is based purely on the patent claims themselves and, therefore, ongoing discovery is irrelevant to a defense under § 101.  (*See* Vonage Opp., at 34).

**Sprint's Fact No. 18:** In its First Supplemental Response to Sprint's Interrogatory No. 5, Vonage stated, in part:

> Further, Vonage asserts that the apparent scope of the asserted claims as set forth in Mr. Wicker's January 12, 2007 expert report of infringement is sufficiently broad such that . . . one or more claims of the asserted patents fail to claim statutory subject matter pursuant to 35 U.S.C. §101. . . .  Vonage will provide further details of the invalidity of the asserted claims under §§ 101 and 112 in its expert report due on February 23, 2007.

(Exh. 7, Defendants' First Supplemental Response to Plaintiff's Interrogatory No. 5, at 3).  In its Second Supplemental Response, Vonage specifically "incorporates by reference the February 28, 2007 Expert Invalidity Report of Frank R. Koperda and its accompanying exhibits and attachments, which *inter alia* set forth opinions that each asserted claim of the [sic] each of the patents-in-suit is not valid under one or more sections of Title 35 of the U.S. Code." (Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at

3; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 3).

**Vonage's Response to No. 18:**    Undisputed.    However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 5.

**Sprint's Reply to No. 18:**    Fact 18 is undisputed.

**Sprint's Fact No. 19:** The Expert Invalidity Report of Frank R. Koperda provides no opinion on 35 U.S.C. § 101.  (*See generally* Exh. 10, Expert Invalidity Report of Frank R. Koperda).

**Vonage's Response to No. 19:**    Undisputed.

**Sprint's Reply to No. 19:**    Fact 19 is undisputed.

**Sprint's Fact No. 20:** Vonage's Fifth Affirmative Defense states "[t]he Complaint is barred by the doctrines of laches, estoppel and acquiescence."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

**Vonage's Response to No. 20:**    Undisputed.

**Sprint's Reply to No. 20:**    Fact 20 is undisputed.

**Sprint's Fact No. 21:** In response to Interrogatory No. 6, which sought the basis for Vonage's contention that Plaintiff's claim is barred by the doctrines of laches, estoppel, and unclean hands, Vonage stated:

> . . . Subject to and without waiving these objections, Vonage
> Holdings states that Sprint's Asserted Patents issued as early as
> 2001, and because Sprint was aware of Vonage Holdings and its
> VoIP activities since that time, its decision to wait until 2005 to
> initiate the present law suit amounts to inexcusable delay and
> prejudice to Vonage Holdings.

(Exh. 11, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4-5).   Vonage America provided the same contention.  (Exh. 12, Vonage America's Responses and Objections to Sprint's First Set of Interrogatories, at 4-5).

**Vonage's Response to No. 21:**          Undisputed.     However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 6.

**Sprint's Reply to No. 21:**     Fact 21 is undisputed.

**Sprint's Fact No. 22:** Vonage supplemented its response to Interrogatory No. 6 and provided the following additional details:

> . . . [T]o expand on Vonage's response, with respect to the Affirmative Defense of "laches, estoppel and acquiescence" Vonage states that Sprint knew of Vonage's acitivities [sic] in 2001, at the same time as the Asserted Patents were issuing, yet decided to wait until 2005 to file suit.  Sprint therefore unreasonably and inexcusably delayed in filing suit, and consequently, Sprint is barred from pursuing its claim by the doctrine of laches.

(Exh. 13, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007).

**Vonage's Response to No. 22:**          Undisputed.     However, and by way of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 6.

**Sprint's Reply to No. 22:**     Fact 22 is undisputed.

**Sprint's Fact No. 23:** There are seven Asserted Patents altogether in this case. Two of the seven Asserted Patents were issued in 2001 and the remaining five patents were issued in either 2002 or 2003.  Specifically, the patents issued as follows: The '064 patent issued on October 2, 2001; the '572 patent issued on October 16, 2001; the '932 patent issued on September 17, 2002; the '052 patent issued on October 8, 2002; the '561 patent issued on

October 14, 2003; and the '294 patent issued on December 16, 2003. (Exhs. 14-20, Cover Sheets of Sprint's Asserted Patents).

    **Vonage's Response to No. 23:**    Undisputed.

    **Sprint's Reply to No. 23:**    Fact 23 is undisputed.

    **Sprint's Fact No. 24:** In response to Sprint's Interrogatory No. 5 regarding Vonage's invalidity contentions, Vonage stated:

> Subject to and without waiving these objections, Vonage Holdings states that it cannot fully respond to this Interrogatory until such time as Vonage Holdings receives Sprint's infringement contentions. To the extent Vonage Holdings understands the scope of Sprint's Asserted Patents, Vonage Holdings asserts that Sprint's Asserted Patents do not cover VoIP technology. Thus, **Sprint's overbroad reading of its Asserted Patents to cover VoIP technology constitutes patent misuse**, and further invalidates the Asserted Patents in view of the prior art.

(Exh. 11, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4) (emphasis added). Vonage America provided the same contention. (Exh. 12, Vonage America's Responses and Objections to Sprint's First Set of Interrogatories, at 4).

    **Vonage's Response to No. 24:**    Undisputed.

    **Sprint's Reply to No. 24:**    Fact 24 is undisputed.

    **Sprint's Fact No. 25:** By way of further response to Interrogatory No. 6, Vonage stated:

> Finally, with respect to unclean hands, Vonage states that Sprint has impermissibly broadened the "physical or temporal scope" of the patent grant with anticompetitive effect. That is, Sprint is now asserting a claim scope that is neither supported by the specification of the Asserted Patents nor the language of the claims themselves. As such, Sprint has impermissibly broadened the scope of its patent grant and, by attempting to enforce these expanded claims against Vonage, Sprint is committing patent misuse and has unclean hands.

(Exh. 13, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007).

**Vonage's Response to No. 25:**        Undisputed.    However,  and  by  way  of further response, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 6.

**Sprint's Reply to No. 25:**    Fact 25 is undisputed.

**Sprint's Fact No. 26:** Sprint is not aware of any product or service made, sold, or offered for sale by Sprint that is within the scope of any claim of Sprint's Asserted Patents. (Exh. 1, Pretrial Order, § 4.a. ¶ 38).

**Vonage's Response to No. 26:**        Disputed. Sprint's representative Michael J. Setter testified that prototypes were constructed of systems within the scope of the asserted patents, which constitute products made by Sprint. See the April 28, 2006 deposition of Michael J. Setter, Esquire, (excerpts of which are attached as Ex. A hereto) at p. 166, lines 3-5.

**Sprint's Reply to No. 26:**      Vonage cannot now dispute an undisputed fact from the Pretrial Order.  Further, the deposition testimony cited by Vonage does not support Vonage's argument.  Mr. Setter did not identify a product or service made, sold, or, offered for sale by Sprint that is within the scope of any claim of Sprint's Asserted Patents.  (Vonage's Ex. A,[1] excerpts from April 28, 2006 deposition of Michael J. Setter, at p. 171, lines 19-25, p. 172, lines 1-6) ("Let me clarify.  **I did not mean to indicate that the prototype I saw was an embodiment of anything.**  It was a prototype that the group – Joe Christie, technicians under his direction, put together and process signaling, and handled better user traffic.  I don't know the details of the prototype, if it was – I assumed it was consistent with what they were working on. . . . But don't intend it – **I don't mean to tie it as a specific application here.**  It's the general technology, though.") (emphasis added).  Accordingly, Sprint's Fact 26 is uncontroverted.

---

[1] For some reason, Vonage relies on the rough, rather than the final, transcript of Mr. Setter's deposition, but Sprint has located no material differences in the two transcripts.

**Sprint's Fact No. 27:** Vonage's Counterclaim III seeks a declaration that Sprint's Asserted Patents are unenforceable.  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).  Specifically, Counterclaim III states that "[t]he Patents are unenforceable for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).

**Vonage's Response to No. 27:**     Undisputed

**Sprint's Reply to No. 27:**     Fact 27 is undisputed.

**Sprint's Fact No. 28:** Vonage has not pled that Sprint committed inequitable conduct.  (*See generally* Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims; Exh. 1, Pretrial Order, §§ 5.b, 7.a).

**Vonage's Response to No. 28:**     Undisputed.

**Sprint's Reply to No. 28:**     Fact 28 is undisputed.

**Sprint's Fact No. 29:** Vonage sets forth a paragraph entitled "Additional Defenses" in its First Amended Answer and Counterclaims that states:

> As Vonage Holdings' investigation is ongoing and discovery has not yet been taken, Vonage Holdings is without sufficient information regarding the existence or non-existence of other facts or facts that would constitute a defense to Plaintiff's claims of patent infringement or that would establish the invalidity or unenforceability of the claims of the Patents, including additional prior art or related patents.  Vonage Holdings accordingly gives notice that it may assert facts or acts which tend to establish non-infringement, invalidity, unenforceability, or otherwise constitute a defense under Title 35 of the United States Code.

(Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 7; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

**Vonage's Response to No. 29:**     Undisputed.

**Sprint's Reply to No. 29:**     Fact 29 is undisputed.

**Sprint's Fact No. 30:** Vonage first disclosed its prosecution laches defense in the parties' original Preliminary Pretrial Order, which was submitted to the Court on May 7, 2007. (Exh. 1, Pretrial Order, at 11, 19, and 23).

**Vonage's Response to No. 30:**     Disputed. Vonage has alleged laches since its original responsive pleading, which encompasses a defense of prosecution laches.

**Sprint's Reply to No. 30:**     Fact 30 is undisputed. See Sprint's Fact No. 31 and Sprint's Reply to No. 31, *infra.*

**Sprint's Fact No. 31:** Vonage did not raise a prosecution laches defense in its Answer, its interrogatory responses, or its expert reports. Vonage's prior assertions of a laches defense—in its First Amended Answer and interrogatory responses—alleged only the general defense of laches based on an alleged unreasonable and inexcusable delay in filing suit. (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6 (Fifth Affirmative Defense); Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6 (Fifth Affirmative Defense); Exh. 11, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4-5; Exh. 12, Vonage America's Responses and Objections to Sprint's First Set of Interrogatories, at 4-5; Exh. 13, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007).

**Vonage's Response to No. 31:**     Disputed. Further, concurrently with the filing of this opposition, Vonage is supplementing its response to Sprint's Interrogatory No. 6.

13

**Sprint's Reply to No. 31:**    Fact 31 is undisputed.   Vonage states no facts contrary to Sprint's Fact 31 as Vonage previously only asserted a general defense of "laches" and made clear throughout discovery that its defense was based on an alleged unreasonable delay in filing suit.  (*See* Sprint's Fact No. 31).  Vonage never identified in response to interrogatories and numerous requests for clarification any allegation of unreasonable delay in the prosecution of Sprint's Asserted Patents.  (*See* Sprint's Fact No. 31).  Vonage's belated supplementation of its response to Sprint's Interrogatory No. 6 is a tacit admission that it had not ever previously alleged prosecution laches before the parties' original Preliminary Pretrial Order, which was submitted to the Court on May 7, 2007.  Accordingly, Fact No. 31 is undisputed.

**Sprint's Fact No. 32:** Sprint produced copies of each of Sprint's Asserted Patents and their prosecution histories on February 10, 2006, as identified in Sprint's Initial Disclosures. (Exh. 21, Sprint's Initial Disclosures, at 3; Exh. 22, Email dated February 10, 2006 from Sprint's counsel to Vonage's counsel).

**Vonage's Response to No. 32:**    Disputed. Sprint did not produce copies of the prosecution histories of the parent applications from which the asserted patents issued, nor copies of the prosecution histories of any patents related to the asserted patents, including foreign counterparts thereof.

**Sprint's Reply to No. 32:**    Fact 32 is undisputed.  Vonage provides no support for its conclusory statement, and the facts demonstrate that Sprint provided this information during discovery.  Sprint produced copies of the prosecution histories of the parent applications (SPRe-022-01-00008 to SPRe-022-01-00238; SPRe-022-01-00239 to SPRe-022-01-00603), as well as prosecution histories of related patents (SPRe-022-01-00604 to SPRe-022-01-00783;

SPRe-022-01-00784 to SPRe-022-01-00938) to Vonage.  (*See* Exh. 23, 2/15/07 Letter producing documents to Vonage, and cover sheets of file histories).

**Sprint's Fact No. 33:** Vonage's Fourth Affirmative Defense states that it has "not infringed any valid claims of the Patents."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 6; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 6).

**Vonage's Response to No. 33:**    Undisputed.

**Sprint's Reply to No. 33:**    Undisputed.

**Sprint's Fact No. 34:** Vonage's Counterclaim I seeks a declaration of non-infringement of Sprint's Asserted Patents.  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).  Specifically, Counterclaim I states that "[t]he Patents are not infringed for one or more reasons in the above Affirmative Defenses, which are incorporated herein by reference."  (Doc. No. 73, Vonage Holdings' First Amended Answer and Counterclaims, at 9; Doc. No. 74, Vonage America's First Amended Answer and Counterclaims, at 9).

**Vonage's Response to No. 34:**    Undisputed.

**Sprint's Reply to No. 34:**    Undisputed.

**Sprint's Fact No. 35:** Vonage's Second Supplemental Response to Interrogatory No. 7, which seeks the basis for Vonage's non-infringement contentions, incorporates the February 28, 2007 Expert Non-infringement Report of Joel M. Halpern.  (Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4).  Specifically, Vonage responded:

> Vonage incorporates by reference the February 28, 2007 Expert
> Non-infringement Report of Joel M. Halpern and its accompanying
> exhibits and attachments, which inter alia set forth opinions that
> each asserted claim of the [sic] each of the patents-in-suit is not
> infringed by Vonage, either literally or under the doctrine of
> equivalents.

(Exh. 8, Vonage Holdings' Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4; Exh. 9, Vonage America's Second Supplemental Responses to Plaintiff's First Set of Interrogatories, at 4).

**Vonage's Response to No. 35:**    Undisputed.    However, Vonage Holdings served a Third Supplemental Response, and Vonage America served a Second Supplemental Response, to Plaintiff's First Set of Interrogatories on May 15, 2007 which further incorporated the April 27, 2007 Supplement to the Expert Non-Infringement Report of Joel M. Halpern.

**Sprint's Reply to No. 35:**    Undisputed.    It is also undisputed that the supplemental responses[2] referenced by Vonage, which Vonage served on May 15, 2007, merely incorporates the April 27, 2007 Supplement to the Expert Non-Infringement Report of Joel M. Halpern and provides no additional non-infringement contentions outside of those set forth in Mr. Halpern's reports.  (Exh. 24, 5/15/07 Third Supplemental Responses of Vonage Holdings to Sprint's First Interrogatories;  Exh. 25, 5/15/07 "Second" Supplemental Responses of Vonage America to Sprint's First Interrogatories).

## II.    RESPONSE TO VONAGE'S STATEMENT OF ALLEGEDLY MATERIAL FACTS IN DISPUTE

As set forth in Sprint's accompanying reply brief, Vonage's Statement of Material Facts in Dispute (Fact Nos. 1-7) do not constitute a basis to deny Sprint's motion.  Vonage's

---

[2] To clarify any confusion, Vonage America's "Second Supplemental Response", which is referenced in Vonage's Response to No. 35, was, in reality, its Third Supplemental Response to Sprint's First Set of Interrogatories.

proffered designation for these facts is self-serving and disingenuous.  Sprint hereby responds to these facts as follows.

       **Vonage's Additional Fact No. 1:**    Sprint's letters to Vonage prior to Sprint's filing of its Complaint in October 2005 (Sprint's "Letters," see Sprint's Exs. 2-6) provided Vonage no notice of its claims of alleged infringement.

       **Sprint's Response to No. 1:** Objection: Vonage's "Fact" 1 is attorney argument and does not comply with Local Rule 56.1(d) and, therefore, should be stricken.  *Ferluga v. Eickhoff*, No. 05-2338 JWL, 2006 WL 3144218, at *2 (D. Kan. Oct. 31, 2006) (J. Lungstrum) ("The statement of material facts itself should consist of nothing but facts; it should not consist of vague and conclusory statements; it should not contain argument about the inferences plaintiff wants the court to draw from the facts; and it should not contain any other argument such as citation to legal authority."); *see also Harvey Barnett, Inc. v. Shidler,* 338 F.3d 1125, 1136 (10th Cir.2003) (disregarding unsubstantiated conclusory allegations); *Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1200 (10th Cir.2006) (same).

       If the Court considers Vonage's improper fact, Sprint responds as follows: It is undisputed that Sprint provided Vonage with knowledge of the existence of 43 Sprint patents relating to "Voice Over Packet (VoP)" technology, including Sprint's Asserted Patents, in five separate letters.  *See* Sprint's Reply to Vonage's Response to Sprint's Fact No. 8.  It also is undisputed that Sprint provided Vonage with a CD that contained copies of Sprint's Asserted Patents.  *Id.*  However, Vonage's argument regarding "notice" under 35 U.S.C. § 287 is immaterial and has no bearing on this case if Vonage does not have sufficient evidence to allow a reasonable juror to find that Sprint failed to mark articles covered by the Asserted Patents that

it was making, selling, or offering for sale in the U.S. and that were capable of being marked. (*See infra* Section V.E.).

**Vonage's Additional Fact No. 2:**    In Sprint's Letters, Sprint made no allegations of infringement. Id.

**Sprint's Response to No. 2:**  Undisputed, but immaterial.  (*See* Sprint's Response to Vonage Fact No. 1).  Though Sprint did not contend Vonage infringed any patents or claims of patents in its letters, Sprint identified a "Voice Over Packet" portfolio of patents and sought "a meeting to discuss [Sprint's] concerns about the potential impact of [the portfolio] on the combinations of equipment and network architectures used by Vonage."  (*See* Sprint Exh. 4, 11/12/04 Letter from B. Trent Webb to Jeffrey Citron).

**Vonage's Additional Fact No. 3:**    In its Letters, Sprint identified no patents or claims of patents Sprint contended were infringed by Vonage. Instead, Sprint enclosed a CD of 43 patents Sprint were "representative" of an unidentified "patent portfolio."  See Sprint's Exs. 2-6.

**Sprint's Response to No. 3:**  Undisputed, but immaterial.  Though Sprint did not contend Vonage infringed any patents or claims of patents in its letters, Sprint identified a "Voice Over Packet" portfolio of patents and sought "a meeting to discuss [Sprint's] concerns about the potential impact of [the portfolio] on the combinations of equipment and network architectures used by Vonage."  (*See* Sprint Exh. 4, 11/12/04 Letter from B. Trent Webb to Jeffrey Citron).

**Vonage's Additional Fact No. 4:**    While Sprint suggested it was "willing to grant a non-exclusive license under these and other patents in its portfolio under mutually acceptable terms," Sprint's Ex. 2, and stated its willingness to meet with Vonage to discuss a

possible license, Sprint's Exs. 2-6, Sprint never suggested a license was necessary or that Vonage would be in breach of Sprint's patent rights if no such license was achieved.

**Sprint's Response to No. 4:** Undisputed that Sprint stated it was "willing to grant a non-exclusive license under these and other patents in its portfolio under mutually acceptable terms," and that it stated it was willing to meet Vonage to discuss a possible license. Sprint disputes Vonage's statement that Sprint never suggested a license was necessary. Sprint repeatedly informed Vonage that a license may be necessary. (*See* Sprint's Responses to Fact Nos. 1-3, *supra*).

**Vonage's Additional Fact No. 5:**    In the Letters, Sprint identified no Vonage product or service it claimed encroached on its purported patent rights. Sprint's Exs. 2-6.

**Sprint's Response to No. 5:** Disputed.   In the Letters, Sprint identified "the combinations of equipment and network architectures used by Vonage," which could be impacted by Sprint's Voice Over Packet portfolio of patents. (*See* Sprint's Responses to Fact Nos. 1-3, *supra*).  Because Vonage only implemented a single telephony service at the time, this constituted identification of the Vonage product or service at issue.

**Vonage's Additional Fact No. 6:**    To the contrary, Sprint only identified the patents it alleged Vonage infringed in its October 2005 Complaint. Id., see also Sprint's First Amended Complaint (Doc. No.2).

**Sprint's Response to No. 6:** Disputed.   Sprint provided Vonage with a CD containing the Asserted Patents.  Sprint's Reply to Vonage's Response to Sprint's Fact No. 8. Moreover, Sprint repeatedly, on five occasions, suggested to Vonage that Sprint's Voice Over Packet portfolio may be applicable to Vonage and that Sprint believed it necessary to enter into discussions to address the relevance of many patent claims to the combinations of equipment and

network architectures that Sprint believed Vonage could have been using.  (*See* Sprint Exhs. 2-6; *See, e.g.*, Exh. 3).

**Vonage's Additional Fact No. 7:**    Sprint articulated no basis for its accusations of infringement until it submitted is initial Expert Report in January 2007. <u>See</u> Sprint's Response to Vonage Holdings Corp.'s Interrogatory No.6, and its First, Second and Third Supplemental Responses thereto, attached as Exs. B to E.

**Sprint's Response to No. 7:** Disputed.   Sprint provided its initial infringement contentions to Vonage at least as early as March 20, 2006, in response to Vonage Holdings' First Set of Interrogatories to Sprint.  (Exh. 26, Sprint's Responses to Vonage Holdings' First Set of Interrogatories, dated March 20, 2006, at 7-8 (Answer to Interrogatory No. 6) and Exhibit A, attached thereto, which provides element-by-element basis for accusations of infringement with respect to each of Sprint's Asserted Patents).   Additionally, Sprint provided supplemental contention on October 5, 2006.  (Exh. 27, Sprint's Supplemental Infringement Contentions).

## III.    RESPONSE TO VONAGE'S STATEMENT OF ALLEGEDLY MATERIAL FACTS NOT IN DISPUTE

In support of its Opposition, Vonage proffered a statement of additional facts not in dispute.  Sprint hereby responds to these facts as follows.

### A.    Vonage's Claims as to 35 U.S.C. §112 ¶2

**Vonage's Additional Fact No. 8:**    Every document authored by Mr. Christie states that his invention was directed to an ATM system for voice communication. <u>See</u> SPRp-01-029-00001 to 00023; SPRp-01-02900034 to 00065; SPRp-0l-029-00075 to 00104 and SPRp-0007-0l-00466 to 00791. For example, the PowerPoint presentation purportedly authored by Mr. Christie on or before October 13, 1993 and relied upon by Sprint as evidence of conception of the inventions claimed in the patents-in-suit, states on its first slide - "Purpose: To describe a

new switched ATM/circuit network architecture" (SPRp-01-029-0000 1; attached as Ex. F).

Similarly, a proposal to Sprint management authored by Mr. Christie and dated June 27, 1994,

states "This project also tests concepts described in the Sprint patent application "Method,

System and Apparatus for Telecommunications Control", filed May 6, 1994 [the ultimate parent

of the patents-in-suit]. Both of these rely upon a new network element, the Call/Connection

Manager, that can process signaling messages outside of current network elements and

ultimately enables transparent migration of Sprint's voice traffic onto ATM." (SPRp-0l-029-

00078; attached as Ex. G).

**Sprint's Response to No. 8:** Objection. The evidence relied upon by Vonage is

irrelevant and immaterial for a 35 U.S.C. § 112, ¶ 2 analysis. *Solomon v. Kimberly-Clark Corp.*,

216 F.3d 1372, 1379 (Fed. Cir. 2000) ("[T]he inquiry under section 112, paragraph 2, now

focuses on whether the claims, as interpreted in view of the written description, adequately

perform their function of notifying the public of the patentee's right to exclude." *Id.* at 1379. As

such, the only evidence material to a § 112, ¶ 2 analysis is the patents themselves and the

material cited by Vonage should not be considered. Additionally, the question of what the

Asserted Patents were "directed to" calls for a legal conclusion that must be assessed from the

perspective of one of ordinary skill in the art. *Id.* Accordingly, Vonage's legal argument does

not present a fact at all and should be stricken for failure to comply with the Court's local rules.

If the Court considers Vonage's improper fact, Sprint responds as follows:

Disputed. *Some* documents authored by Mr. Christie discuss ATM implementations of

Mr. Christie's inventions. However, there are numerous other documents authored by

Mr. Christie that also mention IP and other packet-switched networks. (*See, e.g.*, Exh. 28, SPRp-

01-029-00001 to 00017, at 00014, which discusses both "IP," "X.25," "Frame Relay,"

"Broadband," and other packet-switched networks, in addition to "ATM.").[3]

   **Vonage's Additional Fact No. 9:**  Sprint has produced no document to show

that Mr. Christie ever regarded his invention as including the Internet as a component. See id.

   **Sprint's Response to No. 9:** Objection.  The question of what Mr. Christie

"regarded" as his invention calls for a legal conclusion that must be assessed in light of the

patent claims and specification from the perspective of one of ordinary skill in the art. *Solomon,*

216 F.3d at 1380 ("Although we recognize that 'which the applicant regards as his invention' is

subjective language, once the patent issues, the claims and written description must be viewed

objectively, from the standpoint of a person of skill in the art."). Such a legal question is not

amenable to a "fact" and must be stricken for failure to comply with the Court's local rules.

   If the Court considers Vonage's improper fact, Sprint responds as follows:

Disputed, and also immaterial. Sprint has produced the Asserted Patents themselves, whose

specifications are the primary documents relevant to the issue of what Mr. Christie regarded as

his invention. Extrinsic evidence is immaterial,[4] but to the extent it is remotely relevant, Sprint

has produced documents authored by Mr. Christie's that mention IP and other packet-switched

networks. (*See* Sprint's Response to Fact No. 8, *supra*; *see also infra* Section V.A.2.).

   **Vonage's Additional Fact No. 10:** Sprint has also produced no document to

show that Mr. Christie regarded an IP address as the "identifier" of the asserted claims. See id.

   **Sprint's Response to No. 10:**  Objection.  The question of what

Mr. Christie "regarded" as his invention calls for a legal conclusion that must be assessed from

the perspective of one of ordinary skill in the art. *Solomon,* 216 F.3d at 1380 ("Although we

---

[3] Vonage's excerpt of this powerpoint presentation (Vonage's Ex. F) only included the title page
  of this presentation. Sprint submits Exh. 28, which contains the full presentation.
[4] *Solomon,* 216 F.3d at 1379.

recognize that 'which the applicant regards as his invention' is subjective language, once the patent issues, the claims and written description must be viewed objectively, from the standpoint of a person of skill in the art."). Moreover, "identifier" is a claim term in numerous asserted claims and Vonage's use of the term in this purported fact calls for a legal conclusion. *See Markman*, 517 U.S. at 372; *see also Falko-Gunter Falkner*, 448 F.3d 1357, 1363 (Fed. Cir. 2007); *Emergis Technologies, Inc. v. Cable One, Inc.*, 2006 WL 2644969, *1 (D.Kan. Sept. 14, 2006) ("The construction of a patent, including terms of art within its claim, is a question of law."). Sprint cannot respond to the inherent legal conclusions outside the context of specific asserted claims and, accordingly, objects to Vonage's purported statement of fact. Such a legal question is not amenable to a "fact" and must be stricken for failure to comply with the Court's local rules.

If the Court considers Vonage's improper fact, Sprint responds as follows: Disputed, and also immaterial. Sprint has produced the Asserted Patents themselves, whose claims and specifications are the primary sources relevant to the issue of what Mr. Christie regarded as his invention. Extrinsic evidence is immaterial,[5] but to the extent it is remotely relevant, Sprint has produced documents authored by Mr. Christie's that mention IP and other packet-switched networks. (*See* Sprint's Response to Fact No. 8, *supra*).

**Vonage's Additional Fact No. 11:** Sprint has produced no document to show that Mr. Christie regarded an "interworking device" to be anything other than an ATM interworking multiplexer. See id.

**Sprint's Response to No. 11:** Objection. The question of what Mr. Christie "regarded" as his invention calls for a legal conclusion that must be assessed from the perspective of one of ordinary skill in the art. *Solomon,* 216 F.3d at 1380 ("Although we

---

[5] *Solomon,* 216 F.3d at 1379.

recognize that 'which the applicant regards as his invention' is subjective language, once the patent issues, the claims and written description must be viewed objectively, from the standpoint of a person of skill in the art.").  Moreover, "interworking device" is a claim term in numerous asserted claims and Vonage's use of the term in this purported fact calls for a legal conclusion. *See Markman*, 517 U.S. at 372; *see also Falko-Gunter Falkner*, 448 F.3d at 1363; *Emergis Technologies, Inc. v. Cable One, Inc.*, 2006 WL 2644969, *1 (D.Kan. Sept. 14, 2006) ("The construction of a patent, including terms of art within its claim, is a question of law.").  Sprint cannot respond to the inherent legal conclusions outside the context of specific asserted claims and, accordingly, objects to Vonage's purported statement of fact.  Such a legal question is not amenable to a "fact" and must be stricken for failure to comply with the Court's local rules.

If the Court considers Vonage's improper fact, Sprint responds as follows: Disputed, and also immaterial.  Sprint has produced the Asserted Patents themselves, whose claims and specifications are the primary sources relevant to the issue of what Mr. Christie regarded as his invention.  Extrinsic evidence is immaterial,[6] but to the extent it is remotely relevant, Sprint has produced documents authored by Mr. Christie's that mention IP and other packet-switched networks.  (*See* Sprint's Response to Fact No. 8, *supra*).

**Vonage's Additional Fact No. 12:**  The testimony of current and former Sprint employees shows that Mr. Christie *rejected* the possibility of using the Internet as a part of his invention. See, e.g., transcript of the deposition of Michael J. Gardner at p. 51, lines 2-12 (attached as Ex. H).

**Sprint's Response to No. 12:**  Objection.    The    question    of    what Mr. Christie "regarded" as his invention calls for a legal conclusion that must be assessed based on the patent claims and specification from the perspective of one of ordinary skill in the art.

---

[6] *Solomon,* 216 F.3d at 1379.

*Solomon,* 216 F.3d at 1380 ("Although we recognize that 'which the applicant regards as his invention' is subjective language, once the patent issues, the claims and written description must be viewed objectively, from the standpoint of a person of skill in the art."). Additionally, testimony from current and former Sprint employees is irrelevant to this analysis. *Id.* at 1379. Such a legal question is not amenable to a "fact" and must be stricken for failure to comply with the Court's local rules.

If the Court considers Vonage's improper fact, Sprint responds as follows: Disputed, and also immaterial. The portion of testimony cited by Vonage does not support its assertion. Contrary to Vonage's assertion, Mr. Gardner testified that Mr. Christie proposed to implement his solution "over packet technologies," and never said that Mr. Christie "rejected" using the Internet as part of his invention. (*See* Exh. 29, transcript of deposition of Michael J. Gardner at p. 50, lines 16-19).[7] When asked which packet technologies Mr. Christie proposed implementing, Mr. Gardner explained that Sprint had both an ATM network and an IP network. (*See id.*, at p. 50, line 20 to p. 51, line 1). Mr. Gardner also testified that Mr. Christie proposed *implementing* his invention on Sprint's much larger ATM network rather than its IP network solely "as a matter of convenience." (*See id.*, at p. 51, lines 2-8). Vonage's assertion is also disputed because it only cites to one former Sprint employee and not multiple "employees" as its fact claims. In fact, another former Sprint employee, Mr. Albert Duree, also testified that Mr. Christie proposed using IP. (*See* Exh. 30, transcript of the 3/21/07 deposition Albert Duree, at p. 45, lines 5-16). According to Mr. Duree, Mr. Christie explained his decision to implement his invention using an ATM network rather than an IP network for Sprint's project because Sprint currently had a big ATM network. (*See id.*). Further, the Asserted Patents and their

---

[7] Vonage's selected excerpt of the transcript takes Mr. Gardner's testimony out of context. Sprint submits Exh. 29, which contains additional testimony relevant to the statements cited by Vonage, and provides the necessary context for Mr. Gardner's statements.

specifications are the primary documents relevant to the issue of what the inventor regarded as his invention and any extrinsic evidence cited by Vonage is immaterial.  (*See infra* Section V.A.2.).

**Vonage's Additional Fact No. 13:**   Mr. Christie never authored or reviewed any of the claims being asserted by Sprint in this lawsuit. See the April 28, 2006 deposition of Michael J. Setter, Esquire, (attached as Ex. A) at p. 65, lines 3-16; p. 68, lines 1-13; p. 93, lines 4-9; 109, lines 9-25; p. 120, line 10 to p. 121, line 10; p. 132, line 7, to p. 133, line 7; p. 143, line 20, to p. 144, line 17; and p. 150, line 7, to p. 151, line 11.

**Sprint's Response to No. 13:**        Undisputed, but immaterial.   Though Mr. Christie did not author or review the exact text of the claims being asserted in this lawsuit, Mr. Christie did review the specifications upon which the asserted claims are based.  *See* Sprint's Response to Fact No. 13.

**Vonage's Additional Fact No. 14:**   Every asserted claim at issue here was first drafted by Sprint's patent attorneys at least three (3) years *after* Mr. Christie had died. See id.

**Sprint's Response to No. 14:**        Disputed in part, and immaterial.  The cited testimony only indicates that some of the patent applications from which the asserted claims issued were *filed* with the USPTO at least three years after Mr. Christie died.  Mr. Setter only testified with respect to the date of *drafting* in regard to two of these applications.  Specifically, he stated that he drafted the claims for U.S. Appl. No. 09/499,874 (now the '932 patent) "in the time frame of February 7, 2000," (*See* Vonage's Ex. A, at p. 150, lines 17-18), and that he drafted the claims for U.S. Appl. No. 10/212,503 (now the '294 patent) "before '02."  (*See* Vonage's Ex. A, at p.109, lines 20-21).  Further, two of the applications (U.S. Appl. No. 09/082,182, now the '052 patent, and U.S. Appl. No. 09/082,048, now the '572 patent) from

26

which two of the Asserted Patents issued were *filed* on May 20, 1998, just over two years after

Mr. Christie died (in February 1996), which Vonage admitted in Fact No. 47, *infra*. (*See*

Sprint's Exhs. 14 and 16, patent cover sheets; *see also* Vonage's Ex. A, at p. 120, line 10 to p.

121, line 10; p. 143, line 20 to p. 144, line 17. ). Mr. Setter did not testify as to when he *drafted*

the claims filed with these two applications. *See id*.

      **Vonage's Additional Fact No. 15:**   In the parent application of the patents-in-

suit that was filed while Mr. Christie was still alive and whose claims Mr. Christie reviewed,

each of the independent claims contained limitations directed to elements described in Mr.

Christie's initial disclosure documents, such as an "ATM interworking multiplexer". <u>See</u> the

April 28, 2006 deposition of Michael J. Setter, Esquire, (attached as Ex. A) at p. 53, line 12, to p.

65, line 2.

      **Sprint's Response to No. 15:**         Disputed.  In the very first parent application

(U.S. Pat. Appl. No. 08/238,605 ("the '605 application"), filed May 5, 1994) of the patents-in-

suit that was filed while Mr. Christie was still alive and reviewed by Mr. Christie, *none* of the

independent claims contained "ATM" limitations.  (*See* Exh. 31, excerpt from file history of U.S.

Pat. Appl. No. 08/568,551 ("the '551 application"), which contains the file history of U.S. Pat.

Appl. No. 08/238,605, at pp. 42-54 of the application [SPRe-022-01-00285 to 297]).   The

testimony of Mr. Setter cited by Vonage only refers to U.S. Pat. Appl. No. 08/525,897 ("the '897

application"), which is a continuation-in-part of the '605 application and which was filed after

the original '605 application.  The '897 application is only a parent application with respect to

three of the patents-in-suit (the '429 patent, the '064 patent, and the '294 patent).  (*See* Sprint's

Exhs. 18-20, cover sheets of patents).  The other four asserted patents (the '572 patent, the '932

patent, the '052 patent, and the '561 patent) are continuations of the '551 application, which was

a continuation of the '605 application. (*See* Sprint's Exhs. 14-17, cover sheets of patents). (*See also* Vonage's Fact No. 27, *infra*).

**Vonage's Additional Fact No. 16:**  Following Mr. Christie's death, Sprint removed these limitations from its claims. See id.,e.g., at p. 68, lines 1-13.

**Sprint's Response to No. 16:**  Disputed.  As discussed above, the parent '605 application, the first parent application that was filed, contained only a single dependent claim containing an ATM limitation[8], which was not removed from the application. (*See* Exh. 31, excerpts from '551 file history, which contains '605 file history, at SPRe-022-01-00292 (original claim 45) and SPRe-022-01-00601 (issued claim 61); *see also* Sprint's Response to No. 15, *supra*).  The original ATM limitation in the single dependent claim remained throughout prosecution and is present in an issued claim of U.S. Patent 5,825,780, which issued as a file wrapper continuation from the original '605 application.  (*See id.*, at SPRe-022-01-00601).  Further, as discussed above, the cited testimony of Mr. Setter does not discuss claims of the parent application of the patents-in-suit, but rather is referring only to U.S. Pat. Appl. No. 08/525,897 ("the '897 application"), which is a continuation-in-part of the '605 application and was filed after the '605 application.  (*See* Sprint's Response to No. 15, *supra*).

**Vonage's Additional Fact No. 17:**  In his deposition, Sprint patent counsel Michael Setter described how every claim filed while Mr. Christie was alive included the concept of an ATM interworking multiplexer. See id. at p. 53, line 12, to p. 65, line 2.

**Sprint's Response to No. 17:**  Disputed.  The testimony cited by Vonage does not support its contention.  As discussed above, Mr. Setter only discussed how claims filed with the '897 application included an ATM interworking multiplexer.  (*See* Vonage Ex. A, at p. 53, line 12, to p. 65, line 2, discussing Defendant's deposition exhibit 5, the '897 application).

---

[8] The limitation recites an "asynchronous transfer mode switch" in original claim 45.

However, the first parent application, the '605 application, reviewed and filed by Mr. Christie, contained claims that made no reference to an "ATM interworking multiplexer" and no reference to "ATM," except for a single dependent claim (*See* Sprint's Response to No. 15, *supra*).

**B.     Notice**

**Vonage's Additional Fact No. 18:**    In its answers to interrogatories early in discovery, Sprint stated that Sprint has not sold, and/or offered for sale, or licensed and/or offered for license any product utilizing and/or derived from the inventions described in the Asserted Patents." <u>See</u> Sprint's Responses to Vonage Holdings Corp.'s First Set of Interrogatories, at Response to Interrogatory No. 12.

**Sprint's Response to No. 18:**        Undisputed.

**Vonage's Additional Fact No. 19:**    In the Pretrial Order, Sprint stated as undisputed fact, "Sprint is *not aware of* any product or service made, sold, or offered for sale by Sprint that is within the scope of any claim of the Asserted Patents." <u>See</u> Pretrial Order, Doc. No. 207, at Undisputed fact No. 38 (emphasis added).

**Sprint's Response to No. 19:**        Undisputed.

**C.     Invention and Prosecution of Asserted Patents**

**Vonage's Additional Fact No. 20:**    Sprint    contends    the    telecommunication system disclosed in the Asserted Patents was invented by Joe Christie in "the summer of 1993." Sprint Br. at 9.

**Sprint's Response to No. 20:**        Undisputed.

**Vonage's Additional Fact No. 21:**    Sprint admits that packet switched networks were "fairly undeveloped" at the time of the invention.  Sprint Br. at 10.

**Sprint's Response to No. 21:**        Disputed in part.  Sprint stated that "packet networks" were "fairly undeveloped" around the time of the invention.  (Sprint Br. at 10.)

**Vonage's Additional Fact No. 22:**   Sprint alleges that it "immediately realized" the "sea change" presented by Mr. Christie's invention, and "[w]ithin days of Mr. Christie's presentation of his ideas to management, Sprint assigned a patent attorney, Mike Setter, to shadow Mr. Christie and to learn as much as possible about the inventive aspects of his new system." Sprint Br. at 12.

**Sprint's Response to No. 22:**   Undisputed.

**Vonage's Additional Fact No. 23:**   Sprint admits it drafted patent applications on the fundamental concepts of Mr. Christie's VOP inventions within one year.  Sprint Br. at 12.

**Sprint's Response to No. 23:**   Disputed in part.  Sprint stated that over the course of a year, it "drafted a series of patent applications that addressed certain of the fundamental concepts of Mr. Christie's VOP innovations."  (Sprint Br. at 12.).

**Vonage's Additional Fact No. 24:**   Joseph Michael Christie, the named sole inventor on the Asserted Patents, died in February 1996.  (Pretrial Order at Undisputed Fact No. 37; Sprint Br. at 13).

**Sprint's Response to No. 24:**   Undisputed.

**Vonage's Additional Fact No. 25:**   Following Mr. Christie's death, Sprint turned his inventions into a "vast patent portfolio."  Sprint Br. at 13.

**Sprint's Response to No. 25:**   Disputed in part.  Mr. Christie died before he could "see his system grow into a vast patent portfolio."  (Sprint Br. at 13).

**Vonage's Additional Fact No. 26:**   While Sprint admits to "related innovations made by people working with Mr. Christie," Sprint contends Mr. Christie is the sole inventor of the inventions in the Asserted Patents. Sprint Br. at 13; Sprint's First Amended Complaint, Doc. No.2, at Exs. A-G.

**Sprint's Response to No. 26:**        Undisputed.    Mr. Christie is the sole inventor of the Asserted Patents.  (*See* Sprint's Exhs. 14-20, cover sheets of Asserted Patents).

**Vonage's Additional Fact No. 27:**  Each of the Asserted Patents claim priority to filings made prior to Mr. Christie's death. Each of the Asserted Patents is a continuation of one or more patent applications filed in May of 1994 and December 1995. See Sprint's First Amended Complaint, Doc. No.2, at Exs. A-G (each claiming priority to U.S. patent application no. 08/568,551, now U.S. Pat. No. 5,825,780 ("the '780 patent"), and U.S. patent application no.08/238,605, filed May 5, 1994, now abandoned).

**Sprint's Response to No. 27:**        Disputed in part.    Each of the Asserted Patents is a continuation or continuation-in-part of the parent '605 patent application, filed in May of 1994.  (*See* Sprint's Response to No. 15, *supra*).

**Vonage's Additional Fact No. 28:**  None of the claims of the Asserted Patents were the subject of any inventor's declaration executed by Mr. Christie.

**Sprint's Response to No. 28:**        Disputed.  Vonage cites no factual support from the record for its conclusory allegation.  Further, Mr. Christie executed declarations for the parent '605 application and for the parent '897 application.  (*See* Exh. 31, excerpt from file history of U.S. Pat. Appl. No. 08/568,551 ("the '551 application"), which contains the file history of U.S. Pat. Appl. No. 08/238,605, at SPRe-022-01-00299 (following Abstract of Invention page); *see also* Exh. 32, excerpt from file history of U.S. Pat. Appl. No. 08/525,897, at SPRe-022-01-00084).

### D.    Prosecution Laches

**Vonage's Additional Fact No. 29:**  Measured from the date to which Sprint claimed priority to the date the Asserted Patents were issued, Sprint took an average of 8.5 years

to prosecute the asserted patents, three to four times longer than the average prosecution time. See Sprint's First Amended Complaint, Doc. No.2, at Exs. A-G.

**Sprint's Response to No. 29:**    Disputed. Vonage cites to no admissible evidence for its "fact" and provides no citation at all for the "average prosecution time."

**Vonage's Additional Fact No. 30:**    Specifically, U.S. Patent No. 6,665,294 ("the '294 patent") issued 9 years, 7 months after its claimed priority date. See Sprint's First Amended Complaint, Doc. No. 2, at Ex. G.

**Sprint's Response to No. 30:**    Undisputed.

**Vonage's Additional Fact No. 31:**    U.S. Patent No. 6,633,561 ("the '561 patent") issued 9 years, 5 months after its claimed priority date. See Sprint's First Amended Complaint, Doc. No.2, at Ex. B.

**Sprint's Response to No. 31:**    Undisputed.

**Vonage's Additional Fact No. 32:**    U.S. Patent No. 6,463,052 ("the '052 patent") issued 8 years, 5 months after its claimed priority date. See Sprint's First Amended Complaint, Doc. No.2, at Ex. C.

**Sprint's Response to No. 32:**    Undisputed.

**Vonage's Additional Fact No. 33:**    U.S. Patent No. 6,473,429 ("the '429 patent") issued 8 years, 5 months after its claimed priority date. See Sprint's First Amended Complaint, Doc. No.2, at Ex. E.

**Sprint's Response to No. 33:**    Undisputed.

**Vonage's Additional Fact No. 34:**    U.S. Patent No. 6,452,932 ("the '932 patent") issued 8 years, 4 months after its claimed priority date. See Sprint's First Amended Complaint, Doc. No.2, at Ex. D.

**Sprint's Response to No. 34:**          Undisputed.

**Vonage's Additional Fact No. 35:** U.S. Patent No. 6,304,572 ("the '572 patent") issued 7 years, 5 months after its claimed priority date. See Sprint's First Amended Complaint, Doc. No.2, at Ex. A.

**Sprint's Response to No. 35:**          Undisputed.

**Vonage's Additional Fact No. 36:** U.S. Patent No. 6,298,064 ("the '064 patent") issued 7 years, 4 months after its claimed priority date. See Sprint's First Amended Complaint, Doc. No.2, at Ex. F.

**Sprint's Response to No. 36:**          Undisputed.

**Vonage's Additional Fact No. 37:** Recent data indicates that the average prosecution time for U.S. patents was only 2.5 to 3 years between 1994 and 2000. See Mark A. Lemley and Kimberly A. Moore, "Ending Abuse of Patent Continuations," 84 B. U. L. Rev. 63 (2004) (hereinafter "Moore").

**Sprint's Response to No. 37:**          Disputed and objection.  Vonage cites to no admissible evidence and, instead, relies on hearsay for its "fact."

**Vonage's Additional Fact No. 38:** Only 1.38% of all applications filed were still pending eight years from their priority date, making Sprint's average prosecution time of 8 1/2 years, and even its shortest prosecution time (7 years, 4 months), extraordinary. Id. at 113-114.

**Sprint's Response to No. 38:**           Disputed and objection.  Vonage cites to no admissible evidence and, instead, relies on hearsay for its "fact."

**Vonage's Additional Fact No. 39:** In prosecuting the '780 patent (the original parent specification, filed May 5, 1994; see Sprint Exs. 14-21), Sprint cancelled some 142

examined claims over the course of four office actions. <u>See</u> Prosecution History of U.S. Patent No. 5,825,780 (excerpts of which are attached as Ex. I).

       **<u>Sprint's Response to No. 39:</u>**       Undisputed, and immaterial.

       **<u>Vonage's Additional Fact No. 40:</u>**  Similarly, in prosecuting U.S. Patent No. 6,643,282, of which the '561 Patent is a continuation (Sprint's First Amended Complaint, Doc. No.2, at Ex. B), Sprint cancelled some 291 examined claims over the course of five office actions. <u>See</u> Prosecution History of U.S. Patent No. 6,643,282, excerpts of which are attached Ex. J.

       **<u>Sprint's Response to No. 40:</u>**       Undisputed, and immaterial.

       **<u>Vonage's Additional Fact No. 41:</u>**  Patent examiner Ajit Patel examined some *thirty four* Sprint patent applications during the same time period, the vast majority of which are based on the *same two specifications* of the asserted patents. See Spreadsheet of Christie applications examined by Ajit Patel, attached as Exhibit K.

       **<u>Sprint's Response to No. 41:</u>**       Undisputed that Ajit Patel examined thirty-four Sprint patent applications and that the majority share the same two specifications of the Asserted Patents. Disputed with respect to the remainder as Vonage relies on inadmissible evidence to support its "fact."

       **<u>Vonage's Additional Fact No. 42:</u>**  Based on the specification of the '780 patent, Sprint has filed some *sixteen* continuations, rehashing claims over the same specification, *fifteen* of them being examined by Examiner Patel. A cursory glance at a representative claim in the applications shows that Sprint is generating claims that are substantially the same, wearing down the Examiner and abusing the continuation system. <u>See</u> Spreadsheet of '780 patent continuations, attached as Ex. L.

**Sprint's Response to No. 42:**          Disputed in part.  Sprint has filed sixteen continuations based on the specification of the application which issued as the '780 patent, fifteen of which were examined by Examiner Patel.  Disputed with respect to the remainder, which is pure attorney argument and should be stricken.  *See Ferluga*, 2006 WL 3144218, at *2. Moreover, Vonage does not cite to any admissible evidence supporting its alleged "fact" and the self-serving cited reference does not support its conclusory allegations.

**Vonage's Additional Fact No. 43:**   In addition to the '301 patent itself, Sprint has filed some *fifteen* continuations, *eight* of them being examined by Patel. See Spreadsheet of '301 patent continuations, attached as Ex. M). Similar to the '780 continuations, the claims in the applications show that Sprint is generating claims that are substantially the same, wearing down the Examiner and abusing the continuation system. See Spreadsheet of '780 patent continuations, attached as Ex. L.

**Sprint's Response to No. 43:**          Disputed in part.  Sprint has filed fifteen continuations based on the application that issued as the '301 patent, and Examiner Patel examined eight of them.  Disputed with respect to the last sentence, which is pure attorney argument and should be stricken.  *See Ferluga*, 2006 WL 3144218, at *2.  Moreover, Vonage does not cite to any admissible evidence supporting its alleged "fact" and the self-serving cited reference does not support its conclusory allegations.

**Vonage's Additional Fact No. 44:**   When Patel examined the application for the '932 and '294 Patents, it was *around the twenty sixth and thirty second times,* respectively, *he had seen a Christie application.* See Ex. O. Examiner Patel only issued a single office action in each case, which, for the '932 patent, was based solely on double patenting over a parent application and, for the '294 patent, was based solely on a single piece of previously-cited prior

art. See Prosecution histories of the '932 patent and the '294 patent, excerpts of which are attached as Exs. N and O.

**Sprint's Response to No. 44:**    Disputed in part.    The evidence cited by Vonage (Vonage's Exs. N and O) does not support  any assertion with respect to the number of times Examiner Patel "had seen a Christie application."   Undisputed that Examiner Patel only issued a single office action in each case.  Disputed with respect to the remainder, which is pure attorney argument and should be stricken.  *See Ferluga*, 2006 WL 3144218, at *2.

**Vonage's Additional Fact No. 45:**   In just the asserted patents and their parents, the PTO issued some 13 double patenting rejections. See Diagram depicting prosecution history of the Asserted Patents, attached as Exhibit P.

**Sprint's Response to No. 45:**    Undisputed that the PTO issued 13 double patenting rejections during prosecution of the asserted patents and their parents.  Sprint objects, however, to Vonage's cited reference as inadmissible evidence.

**Vonage's Additional Fact No. 46:**   Sprint's lawyers have filed some 87 patent applications, continuing to present "new" claims based on the same specifications.

**Sprint's Response to No. 46:**    Disputed.    Vonage cites to no factual support from the record.  Additionally, Vonage's "fact" also contains attorney argument and should be stricken.  *See Ferluga*, 2006 WL 3144218, at *2.

**Vonage's Additional Fact No. 47:**   Sprint first filed the claims at issue in this case at least two years after Mr. Christie's death. See Diagram depicting prosecution history of the Asserted Patents, attached as Exhibit P.

**Sprint's Response to No. 47:**        Undisputed that Sprint filed the applications that resulted in the asserted claims at least two years after Mr. Christie's death.  (*See* Sprint's Response to No. 14, *supra*.).

**Vonage's Additional Fact No. 48:**    Sprint was amending its claims at the same time market analysis predicted industry developments making internet telephony a real challenge. See June 2002 Legg Mason Industry Update, SPRp-023-0l-0006l, attached as Exhibit Q, at 68-69.

**Sprint's Response to No. 48:**        Disputed.    Vonage's "fact" constitutes attorney argument and should be stricken.  *See Ferluga*, 2006 WL 3144218, at *2.  Moreover, Vonage does not cite to any admissible evidence supporting its alleged "fact."   Additionally, Vonage's statement regarding market analysis predicting industry developments is vague and ambiguous and lacks sufficient meaning to provide a substantive response.  To the extent Sprint is able to understand and comprehend this "fact," Sprint responds by stating that it was not "amending its claims" at the time of the June 2002 article cited by Vonage.  In fact, the '064 and '572 patents had already issued in October of 2001, almost a year earlier.  (*See* Exhs. 14 and 19, patent cover sheets).  Further, the '429 patent, the '932 patent, and the '052 patent all issued in October and November of 2002.  (*See* Exhs. 16-18, patent cover sheets).

E.    **Misuse**

**Vonage's Additional Fact No. 49:**    On September 8,1995, Sprint filed the application for the '301 Patent, as approved by Joseph Christie. See '301 Patent Prosecution History, 1. Christie Declaration, attached as Ex. R.

**Sprint's Response to No. 49:**        Undisputed.

**Vonage's Additional Fact No. 50:**    The '301 Patent claims were commensurate with the specification, including the "ATM interworking multiplexer," "virtual connections" and

"ATM cells" described in the disclosure. <u>See</u> U.S. Patent No. 5,991,301 (the "'301 Patent"), attached as Ex. S.

**Sprint's Response to No. 50:**          Objection.     Vonage's "fact" constitutes attorney argument and should be stricken. *See Ferluga*, 2006 WL 3144218, at *2. Specifically, whether the claims are "commensurate" with the specification calls for a legal conclusion. *See Markman*, 517 U.S. at 372; *see also Falko-Gunter Falkner*, 448 F.3d at 1363; *Emergis Technologies, Inc. v. Cable One, Inc.*, 2006 WL 2644969, *1 (D.Kan. Sept. 14, 2006). Such a legal question is not amenable to a "fact" and must be stricken for failure to comply with the Court's local rules.

If the Court considers Vonage's improper fact, Sprint responds as follows: Disputed. Vonage does not cite to any admissible evidence supporting its alleged "fact" and the cited evidence does not support its conclusory allegations. The claims submitted with the '897 patent application recited terms including "ATM interworking multiplexer," "virtual connections," and "ATM cells." (*See* Vonage's Fact No. 15 and Sprint's Response to No. 15, *supra*).

**Vonage's Additional Fact No. 51:**   In July of 1999, some three years after the inventor passed away and well into the internet boom, Sprint filed the '429 Patent as a continuation to the '301 Patent (see Ex. E to Sprint's First Amended Complaint, Doc. No.2), which replaced "ATM interworking multiplexer" with "interworking unit"; replaced "virtual connection" with "identifier" and replaced "ATM cells" with "asynchronous communication."

**Sprint's Response to No. 51:**          Disputed in part. In July of 1999, Sprint filed U.S. Pat. Appl. No. 09/353,401, which issued as the '429 patent and which was a continuation of the '897 application, which issued as the '301 patent. The remainder of

38

Vonage's "fact" constitutes attorney argument and should be stricken.  *See Ferluga*, 2006 WL 3144218, at *2.  Indeed, whether one term replaced another term in a claim inherently call for a legal conclusion with respect to claim interpretation.  Additionally, Vonage does not cite any evidence supporting its "fact" concerning the "internet boom."

**Vonage's Additional Fact No. 52:**  The Patent Examiner had seen around nineteen (19) Sprint continuation applications at that point and issued only a single office action, based on Doshi, an ATM patent.  See the Prosecution History of the '429 Patent, Office Action Dated October 4,2000, attached as Ex. T.

**Sprint's Response to No. 52:**    Disputed.  The reference cited by Vonage does not support its alleged fact.

**Vonage's Additional Fact No. 53:**   Sprint knew then, and at the time it filed suit against Vonage, and now knows, that the underlying patent specification does not support claims relating, or having any application, to the internet.

**Sprint's Response to No. 53:**    Disputed.  Vonage cites to no factual support from the record.  Moreover, Vonage's "fact" constitutes improper attorney argument and should be stricken.  *See Ferluga*, 2006 WL 3144218, at *2.

F.    **Patent Claims at Issue**

**Vonage's Additional Fact No. 54:**   Claims 1, 4, 9, 10, 17 and 18 of the '294 patent are directed to electro-magnetic signals. Sprint's First Amended Complaint, Doc. No.2, at Ex. G.

**Sprint's Response to No. 54:**    Disputed in part.  Claims 1, 4, and 9 of the '294 patent each recite a "telecommunication signal embodied in a tangible medium" for performing recited functionality, and claims 10, 17, and 18 of the '294 patent each recite "a control signal embodied in a tangible medium" for performing recited functionality  (*See*

Vonage's Ex. G).  Further, Vonage's "fact" is directed towards the legal question of claim construction, and is not amenable to a "fact" under Local Rule 56.1.  *See Markman*, 517 U.S. at 372; *see also Falko-Gunter Falkner*, 448 F.3d at 1363; *Emergis Technologies, Inc. v. Cable One, Inc.*, 2006 WL 2644969, *1 (D.Kan. Sept. 14, 2006).

## IV.    INTRODUCTION

Vonage's summary judgment opposition presents many conclusions, but very little law or reasoning to support those conclusions.  Vonage attempts to create the illusion of factual controversy because it knows no such controversy exists.  In making this attempt, Vonage relies on facts that have no bearing on the underlying legal analysis.  For example, in the context of 35 U.S.C. § 112, ¶ 2, Vonage relies on irrelevant extrinsic evidence to establish what the inventor of the asserted patents "regards as" his invention.  However, the law requires consideration only of intrinsic evidence in making this analysis and expressly precludes any consideration of extrinsic evidence.  As another example, Vonage attempts to demonstrate a factual controversy based on the notice Sprint provided to Vonage under 35 U.S.C. § 287. However, facts regarding notice are absolutely irrelevant because § 287 simply does not apply to this case.  Only *material* factual controversies are relevant to summary judgment determinations, and, illusions aside, Vonage has demonstrated none.

Continuing in its efforts to generate a smoke screen of confusion, Vonage requests that the Court withhold ruling on Sprint's motion pursuant to Rule 56(f).  Vonage's Rule 56(f) affidavit, however, is the very epitome of ambiguity.  It is difficult to discern even the affirmative defenses to which Vonage contends the affidavit applies.    Additionally, it is impossible to discern how any of the "necessary" discovery upon which Vonage relies has any impact on Sprint's pending summary judgment motions.  In fact, it does not.  Vonage's Rule 56(f) request is designed to confuse and obfuscate.  The Court must reject Vonage's request it is

fatally lacking in specificity and is founded on information that has no bearing on Sprint's motion.

Vonage's opposition also is troubling in that it reveals the pervasive extent of Vonage's scheme to withhold its theories from Sprint until after Sprint sought summary judgment.  Despite Sprint's numerous interrogatories and repeated requests for clarification as to the basis of Vonage's affirmative defenses, Vonage refused to identify any factual support. Indeed, the vast majority of Vonage's theories and facts allegedly supporting those theories were disclosed **for the first time** in response to Sprint's motion.  Instead of complying with its discovery obligations, Vonage hid its theories and provided vague generalities in response to Sprint's requests.  Vonage also repeatedly incorporated by reference expert reports that didn't even mention the affirmative defenses on which Sprint requests summary judgment.  Vonage's underhanded discovery tactics aside, even its new theories and facts set forth for the first time in its summary judgment opposition and insufficient to survive summary judgment.  The Court, however, should not even consider Vonage's new arguments.  Vonage hid the ball throughout discovery and cannot now rely on facts not previously disclosed to avoid summary judgment. Vonage should not be rewarded for its dilatory conduct and the Court should exercise its authority under Rule 37(c) and require that Vonage face the natural consequences of its conduct.

## V.    ARGUMENT

### A.    Summary Judgment On Vonage's Second and Seventh Affirmative Defenses Under 35 U.S.C. § 112, ¶ 2 Is Proper

#### 1.    Vonage's Arguments Must Be Disregarded Under Rule 37(c)(1)

Sprint's request for summary judgment as to Vonage's "definiteness" and "regards as" affirmative defenses under 35 U.S.C. § 112, ¶ 2 is predicated on Vonage's complete failure to identify any factual basis for these affirmative defenses.  *See* Sprint's Memo. in

Support (Doc. No. 199), at 15-17.  In response to Sprint's interrogatory requests for the basis for

Vonage's contentions, Vonage incorporated by reference the expert report of Mr. Frank

Koperda.  *See* Sprint SOF Nos.  11-13 (Doc. No. 199), at 2-3.  Vonage does not dispute these

facts.  *See* Vonage Opposition (Doc. No. 218), at 3.  Mr. Koperda's expert reports provided no

opinion or analysis of Vonage's "definiteness" and "regards as" affirmative defenses under 35

U.S.C. § 112, ¶ 2.  *See* Sprint SOF No. 15.  Vonage does not dispute this fact.  *See* Vonage Opp.

at 3.   Despite previously incorporating Mr. Koperada's report in its interrogatory responses as

support for its "definiteness" and "regards as" defenses, Vonage now abandons Mr. Koperda and

contends that his "opinion is essentially irrelevant." *Id.* at 17.

Other than referencing Mr. Koperda's report, Vonage refused to provide Sprint

any information as to the factual bases for its affirmative defense during the discovery period in

this case.  Instead, to the extent it has attempted to muster any facts at all, Vonage waited until its

opposition to Sprint's summary judgment motion.  *See id.* at 13-17.  Further, making a complete

mockery of the discovery process, Vonage supplemented its contention interrogatory responses

to incorporate its failed attempt to identify factual support ***on the same day it submitted its***

***summary judgment opposition***.  *See* Vonage's Response to Fact Nos. 11-14; Ex. 33, Vonage's

Fourth Supplemental Interrogatory Responses.  In other words, to the extent Vonage has now

identified some factual basis for its affirmative defenses under 35 U.S.C. § 112, ¶ 2, it revealed

its hand only in response to Sprint's motion for summary judgment.  Vonage hid its contentions

throughout the discovery process, precluding Sprint from conducting the necessary discovery

and testing Vonage's defenses.  Vonage cannot now save its defenses with facts that it refused to

disclose.  The Federal Rules and this Court's precedent do not permit such tactics.

Under Rule 37, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). This rule applies to a party's failure to comply with discovery requests. *See Stevens v. Deluxe Financial Services, Inc.*, 199 F.Supp.2d 1128, 1144 (D. Kan. 2002); *see also In re Indep. Serv. Orgs. Antitrust Litigation*, 85 F.Supp.2d 1130, 1162-63 (D. Kan. 2000) (holding that expert's opinions offered for first time in declaration in response to summary judgment motion should be excluded under Rule 37(c)(1)). Other courts readily have recognized that the failure to respond to or supplement interrogatories results in any undisclosed facts being disregarded for purposes of summary judgment. *See, e.g., Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 325 (C.D.Cal. 2004) ("Given that all of the evidence plaintiff has proffered in opposition to [the] motion for summary judgment . . . was not previously disclosed, and must therefore be disregarded, plaintiff has failed to discharge its affirmative burden").

Vonage indisputably failed to comply with the provisions of Rule 26. Specifically, Rule 26(e) of the Federal Rules provides that litigants have a continuing duty "seasonably" to supplement all interrogatory responses under Rule 33 if their prior responses are either incomplete or incorrect. Fed. R. Civ. P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory ... if the party learns that the response is in some material respect incomplete or incorrect ..."). Excluding evidence as a sanction for failure to disclose under Rule 26(e)(2) in a timely fashion is "'automatic and mandatory' unless the party can show the violation is 'either justified or harmless.'" *Miksis v. Howard*, 106 F.3d 754, 760

(7th Cir. 1997); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

It is beyond dispute that Vonage was under a duty to provide this information to Sprint. Indeed, Sprint submitted very specific interrogatories asking for the bases of Vonage's affirmative defenses under 35 U.S.C. § 112, ¶ 2. *See* Sprint SOF No. 13; Ex. 7, Vonage Response to Interrog. No. 5. As detailed above, Vonage incorporated Mr. Koperda's expert reports by reference, but Mr. Koperda's reports failed to detail any bases of Vonage's § 112, ¶ 2 affirmative defenses. *See* Sprint SOF Nos. 11-15 (Doc. No. 199). Vonage had the documentary information on which it now relies by March 7, 2007 and the deposition testimony on which it now relies by March 21, 2007. *See* Ex. 34 (3/7/07 Letter from Seitz to McPhail producing documents SPRe-01-029-00001-00104). Vonage should timely have supplemented its interrogatory responses to identify the facts underlying its theories. Instead, Vonage chose to hide these theories and facts and instead rely on an expert report that was silent as to Vonage's § 112, ¶ 2 defenses. Vonage's obfuscation is not substantially justified within the meaning of Rule 37(c)(1).

Moreover, the fact that Vonage hid its factual theories until after Sprint filed a motion for summary judgment is inherently prejudicial to Sprint. *Cambridge Electronics Corp.*, 227 F.R.D. at 324 ("Learning of plaintiff's liability theories only after they had filed their motion for summary judgment placed defendants at a distinct disadvantage and constituted unfair surprise."). Here, because Vonage withheld the facts underlying its affirmative defenses, Sprint has not been able to conduct the necessary discovery and test Vonage's theories. Further, as detailed below, the analysis under 35 U.S.C. § 112, ¶ 2 must be performed from the perspective of one of ordinary skill in the art. Vonage tactics, however, have eliminated Sprint's ability to

have its expert opine as to 35 U.S.C. § 112, ¶ 2. Vonage's obfuscation with respect to the facts underlying its affirmative defenses is far from harmless. Because the purported facts underlying Vonage's argument should be disregarded pursuant to Rule 37(c)(1), summary judgment for Sprint is appropriate for the reasons set forth in Sprint's original motion.

### 2.    Vonage's Alleged Facts Do Not  Establish A Material Dispute

Vonage now contends that its "regards as" defense presents triable issues because "Sprint has produced documents and witnesses that clearly show the asserted claims, and the applications from which they issued, encompass subject matter that Mr. Christie did not consider as part of his invention . . . ." Vonage Opp. (Doc. No. 218) at 14. As is clear from Sprint's Response to Vonages's SOF Nos. 8-17, Sprint strongly disputes Vonage's characterization of the documents and witness testimony propounded in this case. But, for purposes of Vonage's affirmative defenses under 35 U.S.C. § 112, ¶ 2, even assuming Vonage's characterizations are accurate, the extrinsic "documents and witnesses" are completely irrelevant and cannot, as a matter of law, raise a material dispute.

Vonage relies on *In re Conley* to conclude that "there must be some extrinsic evidence to show that the claims were not directed to subject matter that the inventor regards as his invention." Vonage Opp. (Doc. No. 218), at 14. However, Federal Circuit precedent establishes that extrinsic evidence, including even direct testimony from the inventor about what he regarded as his invention, is not pertinent to a 35 U.S.C. § 112, ¶ 2 analysis. In so holding, the Federal Circuit stated: "Although we recognize that 'which the applicant regards as his invention' is subjective language, once the patent issues, **the claims and written description must be viewed objectively, from the standpoint of a person of skill in the art**." *Solomon v.*

*Kimberly-Clark Corp.*, 216 F.3d 1372, 1380 (Fed. Cir. 2000) (emphasis added).[9]  Indeed, "the inquiry under section 112, paragraph 2, now focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the patentee's right to exclude."  *Id.* at 1379.  In sum, Vonage's affirmative defenses under 35 U.S.C. § 112, ¶ 2 must be analyzed from the "standpoint of a person of skill in the art" interpreting the "claims and written description" "objectively."[10]

Accordingly, Vonage's efforts to survive summary judgment with respect to these defenses must fail for at least two reasons.  First, Vonage relies exclusively on the wrong kind of evidence, i.e., extrinsic evidence in the form of Sprint documents and witness testimony.  *See, e.g.,* Vonage Fact No. 8 (relying on non-patent documents); Vonage Fact No. 12 (relying on testimony of Michael Gardner).  Vonage simply did not undertake and does not rely on an analysis of the asserted claims in light of the written description, as required by the law.  Vonage's reliance on the wrong type of evidence necessarily results in an absence of any material fact dispute.  Second, Vonage has admitted that its invalidity expert, Mr. Koperda, has no opinion as to invalidity under 35 U.S.C. § 112, ¶ 2.  *See* Vonage Response to Sprint SOF No. 15.  Moreover, Vonage contends that "Mr. Koperda's opinion is essentially irrelevant."  Vonage

---

[9] *Solomon* specifically distinguished and rejected the holding in *In re Conley* upon which Vonage relies.  *Conley* did note that the phrase "which the applicant regards as his invention" in the second portion of section 112, paragraph 2, "has been relied upon in cases where some material submitted by applicant, other than his specification, shows that a claim does not correspond in scope with what he regards as his invention."  *Id.*, 490 F.2d 972, 976 (C.C.P.A. 1974).  However, the *In re Conley* analysis was in the context of patent prosecution where a patent had not yet issued.  *Solomon* specifically recognized that the analysis is **very different** during litigation of **issued claims**.  *Solomon*, 216 F.3d at 1378-79.  *See also id.* at n.5.

[10] As with the "regards as" provision of 35 U.S.C. § 112, ¶ 2, the "definiteness" requirement also must be assessed from the perspective of one skilled in the art in light of the specification and claims.  "[T]he standard for assessing whether a patent claim is sufficiently definite to satisfy the statutory requirement [is] as follows: If one skilled in the art would understand the bounds of the claim when read in light of the specification, then the claim satisfies section 112 paragraph 2."  *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed.Cir.2001).

Opp., at 17. Vonage misapprehends the law and, in doing so, establishes that Sprint is entitled to summary judgment. Vonage's affirmative defenses under 35 U.S.C. § 112, ¶ 2 must be assessed from the "standpoint of a person of skill in the art," *i.e.* Vonage's expert Mr. Koperda. *Solomon*, 216 F.3d at 1380. Vonage's admission that Mr. Koperda conducted no such analysis and Vonage's relies on irrelevant extrinsic evidence are fatal to its affirmative defenses.

Additionally, Vonage places great emphasis on the timing of Mr. Christie's death, vis-à-vis, the prosecution of certain patents. *See* Vonage Opp. at 16. However, this emphasis is doubly flawed. First, Vonage alleges that Mr. Christie did not review non-ATM claims. From this, Vonage theorizes that he did not regard non-ATM implementations as his invention. However, Vonage's argument again focuses on a concocted interpretation of Mr. Christie's **subjective** understanding. As set forth above, Mr. Christie's subjective understanding is irrelevant. As a result, Vonage's prognostications on the timing of Mr. Christie's death do not merit consideration. Second, Vonage's recitation of facts simply is erroneous. For instance, in Vonage Fact No. 15 Vonage contends that the claims of the parent application of the patents-in-suit expressly were limited to ATM technology. *See also* Vonage Opp. at 16. Contrary to Vonage's assertion, the very first parent application[11] of the patents-in-suit that was reviewed by Mr. Christie, did not contain a single claim with any "ATM" limitations. *See* Sprint's Response to Vonage Fact No. 15. Accordingly, Vonage's argument is both legally irrelevant and factually incorrect. For all these reasons, summary judgment for Sprint on Vonage's affirmative defense under 35 U.S.C. § 112, ¶ 2 is appropriate.

### 3.    Vonage's Seventh Affirmative Defense Similarly Fails

Vonage does not dispute that its Seventh Affirmative defense is nothing more than a restatement of the "definiteness" requirement of 35 U.S.C. § 112, ¶ 2. *See* Vonage Opp.

---

[11] U.S. Pat. Appl. No. 08/238,605 ("the '605 application"), filed May 5, 1994.

(Doc. No. 218) at 18.  For the reasons set forth above, Sprint is entitled to summary judgment as to Vonage's Seventh Affirmative defense.

###### B.    Vonage's Fifth Affirmative Defense Does Not Present A Triable Issue And Rule 56(f) Does Not Preclude Entry Of Summary Judgment

In response to undisputed facts establishing Sprint's right to summary judgment on Vonage's Fifth Affirmative Defense, Vonage submits a lengthy Rule 56(f) affidavit in an attempt to salvage its defenses.  Vonage's Rule 56(f) affidavit, however, is entirely ambiguous with respect to the affirmative defenses to which the affidavit purportedly applies.  While several defenses are mentioned in passing in Vonage's Rule 56(f) affidavit (such as unclean hands and patent misuse, *see* ¶ 37 of Doc. 218-2), Vonage's Opposition indicates that the affidavit is directed to its Fifth Affirmative defenses, which includes the defenses of laches, estoppel, and acquiescence.  *See* Vonage Opp. (Doc. 218) at 18-19.   Sprint, accordingly, will focus on Vonage's Fifth Affirmative defenses.

###### 1.    Competitive Documents Provide No Basis To Avoid Summary Judgment

The standards applied to assess the adequacy of a Rule 56(f) affidavit are well established.  The party seeking Rule 56(f) relief must submit an affidavit explaining why it cannot present facts which would preclude the entry of summary judgment without further discovery. *See DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir.1993); *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992) (counsel's advocacy does not suffice for evidence or fact for purposes of Rule 56(f)). A Rule 56(f) affidavit must contain more than a mere assertion that further discovery is necessary. It must identify the probable facts which are now unavailable and list the steps already "taken to obtain these facts." *Committee for First Amendment*, 962 F.2d at 1522 (citation omitted). It must also "state with specificity why extra time is needed and how the additional time and material will rebut the summary judgment

motion." *International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 905 (10th Cir. 1995).

Vonage contends that it cannot fully respond to Sprint's summary judgment motion with respect to estoppel, acquiescence, and laches until Sprint produces certain Competitive Documents. *See* 56(f) Affidavit (Doc. 218-2), at 2-5. As an aside, Sprint did in fact produce the Competitive Documents on June 14, 2007. Ex. 35, Production Letter. The produced Competitive Documents have no impact on Sprint's motion for summary judgment or Vonage's ability to respond thereto, which likely is why Vonage has not supplemented its opposition to address the Competitive Documents. With respect to the equitable defenses of estoppel and acquiescence, Vonage has failed to demonstrate how the Competitive Documents "will rebut the summary judgment motion." According to Vonage, the alleged purpose of the Competitive Documents is to demonstrate "when Sprint became aware of Vonage as a competitor and when Sprint became aware of what Sprint alleges as Vonage's infringing activity." 56(f) Affidavit (Doc. 218-2), at ¶ 18. Vonage's 56(f) affidavit alleges in conclusory fashion and without explanation that "these issues are critical to, among other things, Vonage's defenses of laches, estoppel, acquiescence and unclean hands." *Id.* Yet, Vonage provides only a case citation to support the proposition that a plaintiff's awareness of infringement is pertinent **to a laches defense**. *Id.* citing *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995). Further, Vonage admits and concludes that the Competitive Documents allegedly are material only to Vonage's laches defense. 56(f) Affidavit (Doc. 218-2), at ¶ 21.

It is not surprising that Vonage makes no effort to explain how the Competitive Documents would rebut Sprint's summary judgment motion with respect to estoppel and acquiescence. Three elements must be established to bar a patentee's suit by means of equitable

estoppel: 1) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer, 2) the alleged infringer relies on that conduct, and 3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001). *See also McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F.Supp.2d 203, 211 (D.Del. 2006) (acquiescence requires proof of the same or similar elements required by the estoppel defense). Vonage has not explained how the Competitive Documents pertain to any of the elements of estoppel and acquiescence. For this reason, Vonage's request for Rule 56(f) relief with respect to estoppel and acquiescence must be denied. *International Surplus*, 52 F.3d at 905.

Furthermore, Vonage's attempted reliance on Rule 56(f) is a red-herring with respect to Vonage's laches affirmative. At best, Vonage contends the Competitive Documents will demonstrate the timing of Sprint's awareness of Vonage's infringing activity. 56(f) Affidavit (Doc. 218-2), at ¶ 18. It is black letter law, however, that regardless of when Sprint knew or should have known of Vonage's infringing activity, the laches "period does not begin prior to issuance of the patent." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). Here, Sprint initiated the lawsuit on October 4, 2005. *See* Doc. No. 1. The earliest of the asserted patents issued on October 2, 2001. *See* Ex. 19, '064 Patent cover sheet. Accordingly, the earliest time at which the laches period could even possibly run in this case is October 2, 2001.[12] For purposes of this motion, the Court can assume that the maximum

---

[12] In reality, however, the laches period did not run until December 16, 2003 when the latest related patent issued. *See* Ex. 20, '294 Patent cover sheet. The Federal Circuit has held that it was not unreasonable for a plaintiff to wait until the issuance of a related patent before filing a suit of infringement and tolled the laches period accordingly such that it began only with the issuance of the later patent. *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed.Cir.1992) ("*Brooks Shoe* also held that it was not unreasonable for Meyers to wait until the second patent (the '283 patent) issued to sue on the first and

possible laches period is just over four years.  Assuming a four year laches period, Vonage has

failed to demonstrate sufficient evidence to raise triable issues with respect to its laches defense.

As this Court has recently recognized, "a delay of more than **six** years raises a

presumption of laches and shifts to the patentee the burden of proving that the delay was

reasonable, excusable, and non-prejudicial. Here, however, the period of delay was less than six

years. Consequently, the burden of proof remains with [defendant] to establish that plaintiff's

period of delay in filing suit was inexcusable." *Freeman v. Gerber Products Co.*, 466 F.Supp.2d

1242, 1247 (D.Kan. 2006) (citations omitted).  Because the maximum possible delay is only four

years, Vonage indisputably retains the burden to demonstrate each element of its laches defense

(as well as the elements of estoppel and acquiescence).  Here, Vonage has no evidence to

demonstrate that a four-year delay was inexcusable.  Indeed, Sprint expressly pointed out an

absence of proof on the issue, *see* Sprint Motion, at 21, and Vonage presented no evidence in its

opposition raising a triable issue as to whether Vonage suffered any prejudice—whether

evidentiary or economic—by the assumed four-year delay.  *See Freeman*, 466 F.Supp.2d at

1248.  Vonage's failure to demonstrate any evidence to support a finding of prejudice permeates

each of its Fifth Affirmative Defenses (laches, estoppel and acquiescence).

Vonage cannot avoid summary judgment by requesting 56(f) relief as to a single

element that need not be disputed for purposes of summary judgment while ignoring a complete

failure of proof on all other essential elements.  Vonage simply has not "state[d] with specificity

why extra time is needed and how the additional time and material will rebut the summary

judgment motion." *International Surplus Lines*, 52 F.3d at 905 (10th Cir. 1995).  Indeed, the

proffered Competitive Documents have no bearing on the critical failures of proof in Vonage's

---

second patent together.... Thus, for both the '797 and '283 patents, the reasonableness of
Meyers' delay depends only on his activities during the four years between the date the
'283 patent issued and the date Meyers filed his suits.").

Fifth Affirmative Defenses of laches, estoppel, and acquiescence.  Accordingly, Vonage's 56(f) request should be denied and summary judgment granted as to Vonage's Fifth Affirmative Defense.

> **2.    Vonage's Appeal From the Court's Orders of May 14 and 16, 2007 Provide No Basis for Vonage to Avoid Summary Judgment As To Its Fifth Affirmative Defense**

At the outset, a fundamental flaw in Vonage's 56(f) request regarding its appeal (Doc. No. 210) of the Court's May 14 and 16 Orders (Doc. Nos. 192 and 202, respectively) is its overbreadth.  Vonage acknowledges that the Court's May 16 Order eliminated any reference from the pretrial order to Vonage's estoppel defense.  *See* 56(f) Affidavit (Doc. 218-2), at ¶ 36.  Similarly, in the preceding paragraph of its 56(f) Affidavit, Vonage concedes that the focus of its Cisco arguments was on estoppel.  *Id.* at ¶ 35.  Yet, Vonage now contends that its Cisco arguments, which are the subject of its appeal, give rise to material disputes as to "laches, estoppel, acquiescence, patent misuse and unclean hands." Beyond estoppel (and acquiescence which has the same elements), Vonage's request is too broad.  The Court's Orders, and Vonage's appeal thereof, have nothing to do with laches, patent misuse, or unclean hands.  Vonage's appeal has no bearing on Vonage's defenses of laches, patent misuse, or unclean hands.

With respect to estoppel, Vonage's request for Rule 56(f) relief is misplaced. Vonage has not pled an estoppel affirmative defense based on the Cisco license agreements. Obviously, Sprint's motion for summary judgment does not extend to a defense that doesn't exist.  The Court need not consider Vonage's Cisco-based estoppel defense in the context of Sprint's pending summary judgment motion.  Notwithstanding, in its Opposition to Vonage's Rule 72(a) Objections (Doc. No. 227), Sprint established that Vonage's efforts to amend to include an estoppel defense based on the Cisco agreements were futile.  *See* Sprint Opposition to Rule 72 Objections (Doc. No. 227), at 11-15.  For the same reasons Vonage's proposed

amendments are futile, Vonage's Cisco-based defenses also would be subject to summary judgment. However, for purposes of Sprint's pending summary judgment motion, Vonage's request for Rule 56(f) relief simply is misplaced and does not implicate Sprint's pending motion in any way.

### C.    Vonage's Untimely Assertion of Prosecution Laches Must Be Rejected

Vonage exhausts nearly seven pages in a failed effort to establish that it has some basis for asserting prosecution laches as an affirmative defense. Vonage Opp. at 19-26. Despite this lengthy argument, Vonage only half-heartedly addressed the central point of Sprint's motion—that Vonage refused to provide Sprint with any notice of its prosecution laches defense. In its only response to the actual basis of Sprint's motion, Vonage contends that pleading generic laches encompasses prosecution laches. Vonage Opp. at 20. Beyond sharing a common word, however, the defenses could not be more distinct. Courts considering the two defenses have noted that prosecution laches and laches have different goals, different underlying facts, different elements, and different impacts. *See, e.g., Reiffin v. Microsoft Corp.,* 270 F.Supp.2d 1132, 1153-55 (N.D. Cal. 2003) (describing the fundamental differences between laches and prosecution laches). A fundamental difference is the two defenses look at conduct occurring during completely different time-frames. As noted above, a laches defense is based on conduct occurring after a patent issues. By comparison, prosecution laches is based on conduct occurring before a patent issues. *See id.* at 1154 ("the differences between delaying prosecution of a patent and delaying filing suit against a specific defendant underscore the differences in the goals of the two equitable defenses."). Vonage's contention that asserting a laches defense is the same as asserting a prosecution laches defense is disingenuous. In fact, it is just another good example of Vonage attempting to hide-the-ball during discovery.

If Vonage believed that its laches defense encompassed prosecution laches, then it was under a duty to notify Sprint of this contention. However, in response to Sprint's Interrogatory No. 6, which sought the basis for Vonage's laches, estoppel and acquiescence defenses, Vonage stated:

> Subject to and without waiving these objections, Vonage Holdings states that Sprint's Asserted Patents **issued as early as 2001, and because Sprint was aware of Vonage Holdings and its VoIP activities since that time, its decision to wait until 2005 to initiate the present law suit amounts to inexcusable delay and prejudice to Vonage Holdings**.

SOF No. 21; Ex. 11, Vonage Holdings' Responses and Objections to Sprint's First Set of Interrogatories, at 4-5 (emphasis added). Vonage's response is clearly directed to conduct occurring after the patents issued. Additionally, any fact or element necessary to establish a prosecution laches defense is notably absent from this response. This same set of facts was later confirmed by Vonage after Sprint requested that Vonage provide further clarification as to the factual bases for its laches, estoppel and acquiescence defenses. Vonage responded by stating:

> [T]o expand on Vonage's response, with respect to the Affirmative Defense of "laches, **estoppel** and **acquiescence**" Vonage states that **Sprint knew of Vonage's acitivities [sic] in 2001, at the same time as the Asserted Patents were issuing, yet decided to wait until 2005 to file suit. Sprint therefore unreasonably and inexcusably delayed in filing suit**, and consequently, Sprint is barred from pursuing its claim by the doctrine of laches.

> Ex. 13, Letter from Vonage's counsel to Sprint's counsel dated January 16, 2007.

Vonage's "expanded" response once again focused entirely on Sprint's alleged delay in filing suit, i.e., traditional laches, and provided absolutely no indication that Vonage relied on conduct occurring before the patents-in-suit issued, i.e., prosecution laches.

In line with its consistent practice of hiding its theories until after the close of discovery, Vonage never supplemented its response to identify facts relating to conduct occurring before the patents issued, *i.e.* prosecution laches. Just as with its 35 U.S.C. § 112, ¶ 2

defenses, the Federal Rules do not permit Vonage's hide-the-ball approach.  As noted above, under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Fed. R. Civ. P. 37(c)(1).  This rule applies to a party's failure to comply with discovery requests.  *See Stevens*, 199 F.Supp.2d at 1144 (D. Kan. 2002).  Further, the facts upon which Vonage now relies but refused to disclose should not be considered for purposes of summary judgment.  *See, e.g., Cambridge Electronics Corp.*, 227 F.R.D. at 325 ("Given that all of the evidence plaintiff has proffered in opposition to [the] motion for summary judgment . . . was not previously disclosed, and must therefore be disregarded, plaintiff has failed to discharge its affirmative burden").

Here, the application of Rule 37(c)(1) is straightforward.  Vonage cannot dispute that the documents and evidence on which it relies have been in its possession from the outset of this litigation.  *See* Vonage Opp. at 23 (noting that Vonage's arguments are based on "public record" documents).  Moreover, Sprint produced the prosecution histories of the Asserted Patents on February 10, 2006.  *See* SOF No. 32; Ex. 21, Sprint's Initial Disclosures; Ex. 22, Production Letter for File Histories of Asserted Patents.  Similarly, the harm to Sprint of Vonage's refusal to disclose its contentions is indisputable.  When confronted with a prosecution laches defense, patentees regularly rely upon "expert testimony on the issue whether . . . plaintiff's prosecution of those patents was reasonable."  *Reiffin v. Microsoft Corp.*,  270 F.Supp.2d 1132, 1143-46 (N.D.Cal. 2003) (allowing "expert witness on the standards, practices and procedures regarding prosecuting patent application before the [PTO] . . . to opine on whether prosecution of the applications that led to the issuance of the two patents in suit  . . . was reasonable, or whether

[plaintiff] unreasonably delayed that prosecution"). By refusing to disclose its contention with respect to prosecution laches, Vonage has prejudiced Sprint's ability to muster key testimony to rebut Vonage's newly disclosed theory. This is the very situation Rules 26(e) and 37(c) are designed to prevent. The Court should refuse to consider Vonage's newly disclosed facts and should grant Sprint's motion for summary judgment as to prosecution laches.

### D. Vonage's Misuse And Unclean Hands Affirmative Defenses Are Barred

Vonage's claim of patent misuse and unclean hands are barred as a matter of law and Vonage failed to address this fundamental point in its Opposition. *See* Vonage Opp. at 26-28. Vonage has summarized the basis for its patent misuse defense as follows: "Sprint improperly attempts to extend the claims of the asserted patents beyond the scope Sprint knows it is entitled to." *Id.* at 27. However, as noted in Sprint's moving papers, Voange's claim of patent misuse based on enforcement of patents is barred by the Federal Circuit's holding in *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed.Cir.1998). In that case, the Federal Circuit was confronted with allegations that the plaintiff "was attempting to enforce the patents against goods known not to be infringing." *Id.* The jury had found misuse based on the following instruction: "A patent will not be rendered unenforceable for misuse if the patent owner has enforced the patent in the good faith belief that the accused products infringed the patent's claims." *Id.* The Federal Circuit rejected the jury charge and described it as "[in]correct legal theory." *Id.* "The conduct to which the jury instruction on misuse generally refers, that is, 'wrongful' enforcement of patents, is activity protected under *Noerr* and *California Motor*, and is not subject to collateral attack as a new ground of 'misuse.' " *Id.* Indeed, the *Noerr-Pennington* immunity upon which the *C.R. Bard* decision rests is set aside only if the infringement action amounts to "sham litigation." The "sham litigation" exception to *Noerr-Pennington* immunity is defined in the following way:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits . . . . Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process – as opposed to the outcome of that process – as an anti-competitive weapon.

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993) (citation and quotation omitted). Vonage has not suggested, much less pled, that Sprint's filing of the present lawsuit was "objectively baseless." Nor could Vonage do so. Indeed, the pleadings in this case, including Sprint's Opposition to Vonage's Motion for Summary Judgment, establish that Sprint's filing of the instant lawsuit was not "objectively baseless." No reasonable juror could conclude otherwise and summary judgment is appropriate. *See Aircapital Cablevision, Inc. v. Starlink Communications Group, Inc.*, 634 F.Supp. 316, 320 (D. Kan. 1986) ("the issues in this case-specifically whether the lawsuit was an unprotected "sham"-may properly be resolved by summary judgment.").

Moreover, Vonage's argument in support of its patent misuse affirmative defense presents a fatal lack of attention to detail. The sole basis of Vonage's argument is that Sprint is "seeking to extend its patent rights beyond the ATM systems to which they are limited." Vonage Opp. at 26. However, in its own motion for summary judgment, Vonage applies its "ATM-only" argument to only three of the seven asserted patents. *See* Memorandum in Support of Vonage Motion (Doc. No. 200), at 25-26 (contending that 3 of 7 patents were limited to ATM technology). As Vonage's motion makes clear, its "ATM-only" argument does not apply to four asserted patents. In *Aircapital Cablevision*, this Court recognized that when certain claims are brought in good faith, "even if [other] claims were included spuriously, the **lawsuit** does not become 'sham' for this reason alone." 634 F.Supp. at 322. In other words, even if Vonage is correct in its assertion as to the scope of three of Sprint's patents—which it is not—Vonage

cannot establish that **the lawsuit** is baseless.  Accordingly, *C.R. Bard* and the *Noerr-Pennington* immunity preclude Vonage's assertion of patent misuse.  Vonage's unclean hands defense similarly fails as the two legal theories relate to the same operative facts.[13]  *C.R. Bard*, 157 F.3d at 1372 ("defense of patent misuse arises from the equitable doctrine of unclean hands").  The Court should grant summary judgment to Sprint with respect to Vonage's Sixth (unclean hands) and Eighth (patent misuse) Affirmative defenses.

### E.    Summary Judgment Is Proper As To Vonage's Section 287 Affirmative Defense

In Vonage's opposition to Sprint's motion regarding 35 U.S.C. § 287, Vonage attempts to point out issues of fact with respect to some unspecified imaginary product and various notice requirements.  Vonage's Opp. at 30-33.  However, Vonage ignores the overarching fact that there simply is no basis for applying § 287.

It is well settled that the requirements of § 287 are **<u>not</u>** applicable to situations where "patented articles" are not made or sold by the patentee or persons operating on behalf of the patentee.  *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.,* 297 U.S. 387, 80 L. Ed. 736, 56 S. Ct. 528 (1936) (interpreting predecessor statute); *Refac Electronics Corp. v. A & B Beacon Business Machines,* 695 F. Supp. 753, 755 (S.D.N.Y. 1988); *Medical Graphics Corporation v. SensorMedics Corp.,* No. 3-94-525 1995 U.S. Dist. LEXIS 11097, at * 7 (D. Minn. June 5, 1995) (same); *see also Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002) (holding that *Wine Railway* is still good law).  Thus, § 287 defenses apply only if the patent in question is commercialized.  *See Refac Electronics*, 695 F. Supp. at 755.  Indeed, "a

---

[13] Vonage also contends that summary judgment on its unclean hands defense should be delayed in light of Vonage's Rule 56(f) affidavit.  As detailed above, Vonage's Rule 56(f) affidavit fails to "state with specificity why . . . the additional time and material will rebut the summary judgment motion" with respect to its defense of unclean hands. *International Surplus*, 52 F.3d at 905.  For this reason alone, Vonage's request for a reprieve should be denied.

patentee with an unutilized patent may do nothing before bringing a suit to collect damages for infringement, while one producing or selling the goods is under an obligation to provide notice before exercising patent rights." *Id.*[14]

In its Brief, Sprint established that there is no evidence of any "patented articles" that have been made, sold or offered for sale under the asserted patents, and that Sprint is unaware of any evidence to the contrary. Sprint's Brief at 28. Sprint's statements in this respect do not indicate underlying issues of fact, and they are not equivocal, as Vonage suggests. *See* Vonage's Response at 30 and 31. Rather, Sprint's statements establish that, even after the close of discovery, there is absolutely no evidence that any "patented article" exists such that § 287 might apply.

Nor does Vonage point to any evidence supporting the application of § 287. Instead, Vonage complains that Sprint has not provided a guarantee "that *no* product or service embodying the asserted patents has been made, sold, or offered for sale." Vonage's Response at 31 (emphasis in the original). Vonage demands that Sprint prove a negative, which is a complete reversal of the burdens associated with summary judgment. Here, Sprint identified an absence of evidence to support an application of § 287 and it was then Vonage's burden to point to any material fact that would establish a triable issue, which it has not done. To survive summary judgment on its affirmative defense, Vonage must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

---

[14] It is for this reason that Vonage's arguments with respect to whether Sprint provided adequate notice under § 287 (*see* Vonage Opp. at 31-33) need not be considered. *See also Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002) ("The recovery of damages is not limited where there is no failure to mark, i.e., where the proper patent notice appears on products **or where there are no products to mark**.") Section 287 does not apply because neither Sprint nor its licensees made or sold any "patented article" under the asserted patents. Therefore, compliance with the marking and notice requirements is irrelevant. Accordingly, Sprint need not address the alleged factual disputes Vonage's raises with respect to § 287's notice requirements. *See* Vonage's Response at 31- 33.

U.S. 574, 586 (1986).  Vonage has failed to meet this burden and has further failed to identify specific facts demonstrating "there is a genuine issue for trial," as require by Fed. R. Civ. P. 56(e).

In fact, Vonage's only effort to identify any factual issue relates to various Sprint-Cisco agreements. Vonage's Response at 30 and 31.  Vonage, however, does not even identify how any agreement relates to any Asserted Patent let alone identify a single product made or sold under any agreement that would constitute a "patented article" within the scope of § 287.  *Id.* Instead, Vonage identifies "certain outstanding factual issues," but makes no effort to define those factual issues.  Sprint is unable to rebut Vonage's allegations that "certain" facts are in controversy because Vonage has not identified any specific controversy.   The summary judgment standards do not permit Vonage's games.  As the Tenth Circuit has noted, "[i]n response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).  In short, Vonage's Response fails to identify any facts supporting the application of § 287.  For this reason, summary judgment is appropriate.

Moreover, when the facts suit Vonage in other contexts, Vonage (and its representatives) vehemently argue that Sprint did not commercialize the asserted patents.  *See* Ex. 36, 4/25/07 Supplemental Expert Report of Dr. Allyn Strickland, Vonage's damages expert, at p. 11, ¶ 22 (stating that Sprint has never commercialized a product using the technology of the Christie patents); Ex. 37, 2/28/07 Expert Report of Dr. Allyn Strickland, Vonage's damages expert, at pp. 30-31, ¶ 69 (emphasizing that Sprint has failed to commercialize a product that uses the asserted patents and that Sprint failed on two occasions to commercialize products

relating to the JCS2000 patent portfolio); at p. 17-18, ¶ 36-39 (stating that Sprint does not provide VoIP telephony services for its customers and that Sprint terminated two projects related to the asserted patents); at pp. 25-26, ¶¶ 54-56 (discussing Sprint's termination of the JCS2000 and ION projects). Vonage is well aware that it does not have facts to support its § 287 defense, and its efforts to obfuscate simply to prevent a summary judgment ruling are disingenuous. The limitations of § 287 cannot be applied to the present action, and Vonage has failed to raise any genuine issues of material facts with respect to its § 287 affirmative defenses. The Court should grant Sprint summary judgment on Vonage's Ninth Affirmative Defense.

### F.    Summary Judgment Is Proper As To Vonage's § 101 Affirmative Defense

Vonage's effort to avoid summary judgment on its § 101 defense is twice flawed. First, Vonage offers no explanation or justification for its failure to preserve the defense or to provide Sprint with fair notice of the defense. Second, Vonage's contention that "signal" claims are not patentable subject matter is substantively erroneous.

### 1.    Vonage's § 101 Assertions Are Barred

In concluding that Vonage's § 101 assertion is barred, the Court need look no further than Vonage's own admissions. Vonage admits that it did not plead 35 U.S.C. § 101 as an affirmative defense. *See* Vonage Response to Sprint Fact No. 17. Vonage's failed to plead this defense even after the Court struck Vonage's original affirmative defenses and instructed Vonage to identify specific affirmative defenses under 35 U.S.C. § 100, *et seq. See* Doc. No. 61. Rule 8(c) requires that affirmative defenses be pled or they are deemed waived. *See* Fed. R. Civ. P. 8(c); *Rachbach v. Cogswell*, 547 F.2d 502, 505 (10th Cir.1976); *Radio Corporation of America v. Radio Station KYFM, Inc.*, 424 F.2d 14, 17 (10th Cir.1970). In *Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir.1991), the Tenth Circuit held that "the district court properly found that [defendant's] failure to affirmatively plead the defense prior to the grant of summary

judgment ... was an effective waiver." *Id.* at 1539.  On this basis alone, summary judgment is proper.

To the extent Vonage attempts to establish that Sprint was somehow on notice notwithstanding Vonage's failure to plead this defense, Vonage's own admissions preclude this argument.  Vonage admits that, to the extent its interrogatory responses mentioned § 101, they merely incorporated by reference the expert report of Mr. Frank Koperda.  *See* Vonage Response to Sprint Fact No. 18.[15]  Vonage also admits that Mr. Koperda's expert reports provide no opinion as to 35 U.S.C. § 101.  Vonage Response to Sprint Fact No. 19.  As a result, Sprint received absolutely no notice of the substance of Vonage's § 101 defense until Vonage filed its summary judgment opposition.  As demonstrated repeatedly herein, Vonage's hide-the-ball tactics were consistently employed, and they were consistently unfair, and consistently prejudicial to Sprint.  The Court should preclude Vonage from asserting a § 101 defense because Vonage waived that defense.  The Court also should reject Vonage's § 101 defense under Rule 37(c)(1) for the same reasons as those set forth above.  Either way, summary judgment is appropriate.

## 2.    Vonage's Assertion Regarding "Signal" Claims Is Erroneous

Even if Vonage were allowed to resurrect its waived defense, the substantive basis Vonage relies upon is not well-founded and Vonage has entirely failed to consider the relevant body of law on this topic.  By way of background, a 35 U.S.C. § 101 analysis applies four tests to each claim: (1) whether the claimed invention falls within one of the four statutory categories of patentable subject matter (process, machine, article of manufacture, composition of

---

[15] Vonage's efforts to ameliorate this fact by submitting a supplemental interrogatory response **on the same day** as its summary judgment opposition is laughable.  Receiving notice of an affirmative defense with a summary judgment opposition after the close of discovery does not alleviate any prejudice.

matter); (2) whether the claimed invention falls within a judicial exception (laws of nature, natural phenomena, abstract ideas); (3) whether the claimed invention provides a practical application (transforms an article or produces a useful, concrete, and tangible result); and (4) whether the claimed invention preempts a judicial exception (*i.e.* claimed so broadly as to cover every practical application of a judicial exception). *See* Robert Weinhardt, *USPTO Current Events in 35 U.S.C. § 101*, Business Methods Partnership Meeting (Spring 2007). Stated differently, claims that fall within a statutory category, are outside any judicial exception, and provide a practical application are patentable under 35 U.S.C. § 101.

Signal claims have long been deemed patentable where the signal claim is tied to a practical application. *See*, *e.g.*, *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 112-114 (1853) (finding a claim to be patentable that recited: "I claim, as my invention, the system of signs, consisting of dots and spaces, and of dots, spaces and horizontal lines, for numerals, letters, words or sentences, substantially as herein set forth and illustrated for telegraphic purposes."). Recently, however, signal claims have been challenged as failing to meet the requirements of the tests enumerated above. *See*, *e.g.*, *Ex Parte Nuijten*, 2006 WL 3939192 (B.P.A.I. Jan. 24, 2006). Specifically, the challenge to signal claims appears to rest on two distinct theories: (1) signal claims do not fall within a statutory category; and (2) even if signal claims fall within a statutory category, they are a judicially excepted abstract idea. *See id.*

Presently, the status of pure signal claims as patentable subject matter is uncertain because the Federal Circuit has not yet issued a ruling in the appeal of *Nuijten*. Even if the Federal Circuit rejects the claims at issue in *Nuijten*, however, Sprint's claims are still valid under 35 U.S.C. § 101 because they are directed to statutory subject matter and because Sprint's claims do not cover an abstract idea.

Here, using claim 1 of the '294 patent as an exemplary claim, Sprint's claims meet the requirements of 35 U.S.C. § 101 for two reasons. First, the claims are directed to statutory subject matter as either a process or as an article of manufacture. The claims can be characterized as a process because the claims include various acts (*e.g.*, routing the user information; receives the communication signal, converts the communication signal, etc.). The claims could also be characterized as an article of manufacture because the claims recite a telecommunications signal embodied in a *tangible medium*. *See, e.g.,* Claim 1 of '294 Patent. *See also Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (noting that the expansive scope of "manufacture" illustrates Congress' intent that "anything under the sun that is made by man" is patentable subject matter.). The Board of Patent Appeals has recently held that statutory subject matter does not become unpatentable merely because it is a signal. *See Ex parte Rice*, No. 2002-1554, slip op. at 5 (B.P.A.I. Feb. 13, 2003) (unpublished) (stating that "signals do not become unpatentable subject matter just because of their transitory and ephemeral nature) (attached as Ex. 38); *see also* S. Kunin et al., *Patent Eligibility of Signal Claims*, 87 J. Pat. & Trademark Off. Soc'y 991, 998-99 (2005) (discussing the patentability of structural and functional signal claims).

Further, in *Nuijten*, the claims rejected by the Board included neither a recitation of acts nor any tangible medium. *See Nuijten*, 2006 WL 3939192 at *1. In fact, the *Nuijten* application included a claim directed to "[a] storage medium having stored thereon a signal with embedded supplemental data . . ." and the Board reversed the rejection of the claim, holding that the storage medium put the claim into the statutory category of manufacture. *See Nuijten*, 2006 WL 3939192 at *7. As in the non-rejected claims in *Nuijten*, the claims in the '294 patent are directed to signals stored in a tangible medium. Accordingly, the '294 patent claims define patentable subject matter as a category of manufacture.

Second, the claims are not directed to an abstract idea because they include various physical attributes and specific acts. *See Nuijten*, 2006 WL 3939192 at \*4. Claim 14 in *Nuijten* is directed to "a signal with embedded data, the signal being encoded in accordance with a given encoding process." *See id.* at \*1. Thus, the claim merely recites abstract characteristics of the signal and fails to include any tangible media or specific acts performed. Here, unlike the claim at-issue in *Nuijten*, Sprint's claims explicitly include a tangible medium. *See id.* Further, again unlike claim 14 in *Nuijten*, Sprint's claims include various specific acts performed such as routing user information and receiving a communication signal. *See id.* Therefore, in addition to being included within at least one statutory category, Sprint's claims fall outside the scope of the abstract idea judicial exception.

In sum, Sprint's claims are patentable subject matter under 35 U.S.C. § 101 because the claims are directed to one or more statutory categories, fall outside the scope of any judicial exceptions, and provide a practical application. Even if the Federal Circuit finds pure signal claims unpatentable in the pending *Nuijten* case, Sprint's claims survive. Unlike the claims at-issue in *Nuijten*, Sprint's claims include a tangible medium as well as various specific acts. Accordingly, if Vonage is permitted to introduce its waived defense, Sprint still is entitled to summary judgment.

### G.     Summary Judgment Is Proper As To Vonage's Unenforceability Claim

In response to Sprint's motion, Vonage erroneously relies on a strange amalgamation of quotes from *A.C. Aukerman*. *See* Vonage Opp. at 36. Apparently, Vonage is contending that unenforceability is a defense that is duplicative of just about any other affirmative defense in patent actions. However, "[t]he simple fact is that a patent may be . . . rendered unenforceable for misuse or inequitable conduct." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987). As set out in Sprint's memorandum in support, courts

look to either misuse or inequitable conduct as a basis for unenforceability.  *See also Allen Archery, Inc. v. Browning Mfg. Co.,* 819 F.2d 1087, 1097 (Fed. Cir. 1987) (rejecting contention that failure to disclaim invalid claims rendered other claims unenforceable and finding unenforceability comprises only inequitable conduct or patent misuse).

Vonage does not assert inequitable conduct and, as demonstrated above in section V.D., Vonage's misuse defense is barred.  Accordingly, Vonage has no grounds to assert an independent claim of unenforceability.  The Court should grant Sprint's motion for summary judgment on Vonage's Third Counterclaim.

### H.    Summary Judgment Is Proper As To Vonage's Counterclaim and Affirmative Defense of Non-Infringement

Vonage assumes that Sprint's motion with respect to Vonage's Affirmative Defense and Counterclaim of Non-Infringement "is a motion for summary judgment of infringement."  Vonage Opp. at 36.  Sprint's motion is not a motion for summary judgment of infringement, and Vonage's failed assumption is a red-herring.

Sprint's entitlement to summary judgment on these issues is straightforward. Vonage affirmatively has alleged non-infringement through a counterclaim and affirmative defense.  Vonage's support for its affirmative allegations of non-infringement is contained within the expert reports and propounded testimony of Mr. Halpern.  *See* Vonage Response to Sprint Fact No. 35.  If the Court precludes Mr. Halpern's testimony on the issue of infringement due to his failure to qualify as one of ordinary skill in the art, Vonage is left without evidence to support its affirmative claims of non-infringement.  Accordingly, if the Court excludes Mr. Halpern, summary judgment on Vonage's affirmative allegations of non-infringement (both in the form of an affirmative defense and counterclaim) is proper.

### I.    Summary Judgment Is Proper As To Vonage's "Additional Defenses"

66

Notwithstanding Vonage's unnecessary commentary, Vonage has withdrawn its unidentified "additional defenses." *See* Vonage Opp. at 39. Accordingly, the Court should enter summary judgment with respect to those defenses.

## VI.    CONCLUSION

For the reasons set forth above, the Court should grant summary judgment in favor of Sprint with respect to each of the Affirmative Defenses and Counterclaims for which Vonage has failed to put forward even a scintilla of evidence.

Respectfully submitted,

Dated: July 6, 2007                            /s/ Adam P. Seitz_____
                                              B. Trent Webb, KS Bar No. 15965
                                              Eric A. Buresh, KS Bar No. 19895
                                              Adam P. Seitz, KS Bar No. 21059
                                              SHOOK, HARDY & BACON L.L.P.
                                              2555 Grand Boulevard
                                              Kansas City, Missouri 64108-2613
                                              (816) 474-6550 Telephone
                                              (816) 421-5547 Facsimile

                                              Attorneys for Plaintiff
                                              SPRINT COMMUNICATIONS COMPANY
                                              L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2007, a true and accurate copy of the

above and foregoing **SPRINT'S REPLY TO VONAGE'S OPPOSITION TO SPRINT'S**

**MOTION FOR PARTIAL SUMMARY JUDGMENT** was e-filed with the Court, which sent

notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608

Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

  /s/   Adam P. Seitz
Attorneys for Sprint Communications Company L.P.