# EXHIBIT JJ

1  Deborah Bailey-Wells (SBN 114630)
   Jonathan M. Cohen (SBN 168207)
2  Judith S. H. Hom (SBN 203482)
   Dylan B. Carp (SBN 196846)
3  KIRKPATRICK & LOCKHART, LLP
   Four Embarcadero Center, 10th Floor
4  San Francisco, CA 94111
   Telephone: (415) 249-1000
5  Facsimile:  (415) 249-1001

6  Fabio E. Marino (SBN 183825)
   Patrick T. Weston (SBN 211448)
7  Saina S. Shamilov (SBN 215636)
   BINGHAM McCUTCHEN LLP
8  1900 University Avenue
   East Palo Alto, CA 94303-2223
9  Telephone: (650) 849-4400
   Facsimile:  (650) 849-4800
10
   Attorneys for Plaintiff
11 FOUNDRY NETWORKS, INC.

12                 UNITED STATES DISTRICT COURT
13
                 NORTHERN DISTRICT OF CALIFORNIA
14
                       SAN FRANCISCO DIVISION
15

16
17 FOUNDRY NETWORKS, INC., a Delaware     No. CV 02-04909 CRB
   corporation,
18                                         DECLARATION OF DR. STEPHEN
              Plaintiff,                   WICKER IN SUPPORT OF FOUNDRY
19    v.                                   NETWORKS, INC.'S MOTION FOR
                                           PARTIAL SUMMARY JUDGMENT OF
20 NORTEL NETWORKS, INC., a Delaware       NON-INFRINGEMENT OF THE '606
   corporation, and NORTEL NETWORKS,       PATENT
21 LIMITED, a Canadian corporation,
                                           Date:   May 7, 2004
22            Defendants.                  Time:   10:00 a.m.
                                           Place:  Courtroom 8, 19th Floor
23                                         Judge:  Hon. Charles R. Breyer
   AND RELATED COUNTERCLAIMS AND
24 THIRD PARTY COMPLAINT                   Date action filed: October 9, 2002
                                           Trial date:        November 29, 2004
25         I, Dr. Stephen Wicker, declare:

26         1.    I am a Professor at the School of Electrical and Computer Engineering at

27 Cornell University. Unless stated otherwise, the following statements are based upon my own

28 personal knowledge, and if called as a witness, I could and would competently testify thereto.
   DECLARATION OF DR. STEPHEN WICKER IN SUPPORT OF FOUNDRY NETWORKS INC.'S MOTION FOR PARTIAL SUMMARY
                     JUDGMENT OF NON-INFRINGEMENT OF THE '185 PATENT
                                            1
PA-52129723.1/2024310-0000302295

2. I have been teaching and conducting research in the fields of wireless information networks, cellular networks, packet-switched computer networks, digital telephony, error control coding, and cryptography for more than 17 years.

3. I have written numerous articles and books on coding theory, wireless information networks and packet-switched computer networks. A list of my major publications along with my curriculum vitae is attached as Exhibit A.

4. I have been asked by Foundry's counsel to analyze whether Foundry products accused by Nortel include each and every limitation of the asserted claims of the U.S. Patent No. 5,852,606 patent (the "'606 patent"). I have reviewed, and am familiar with, Nortel's Infringement Contentions. Nortel is asserting infringement of independent claims 1, 3, 4, 6 and 7 of the '606 patent by Foundry's BigIron, NetIron and FastIron product families in this litigation.

5. I have read the '606 patent and carefully considered its prosecution history. I have also read the Declaration of Mr. Jeffrey Prince in Support of Foundry's Summary Judgment Motion of Non-infringement and understand Mr. Prince's description of the accused Foundry products.

6. The '606 patent is directed to transmission of data between devices connected to a network through an Asynchronous Transfer Mode (ATM) switch. *See* Abstract.

7. Generally, a switch routes data between network devices by inspecting data packets as they are received, determining the source and destination of the packets, and forwarding them appropriately.

8. In an ATM switch, these data packets, called data cells, are necessarily of a fixed size, because the ATM protocol requires that all cells be 53 bytes long. *See* Tanenbaum, A. S. "Computer Networks," Fourth Edition, Prentice Hall PTR, 2003, pp. 62-63. True and correct copies of pages 62-63 of the Tanenbaum's textbook are attached herewith as Exhibit B.

9. ATM switches generally include a number of interface cards with ports for receiving and transmitting cells. These interface cards are connected to each other through

1  a backplane, over which they communicate. When a cell arrives at an input port on a particular
2  interface card, the card determines the output port on the switch that the cell should be routed
3  to in order for it to reach its destination. The interface card then routes the cell via the
4  backplane to the interface card of the output port, which in turn transmits the cell onto the
5  network.

6     10. The system of the '606 patent attempts to optimize the routing of data
7  within the switch by transmitting ATM cells across the backplane using routing tags inserted in
8  front of each cell to be transmitted through the switch. *See* '606 patent, 7:35-44.

9     11. In the '606 patent, the inserted routing tag, referred to as DTAG, includes
10 "a [destination] module number field," "a [destination] port number field," and "a multicast
11 group number field" to specify the destination port of the switch to which the cell is to be
12 routed. *See id.* at 15:43-51 (Claim 1). This routing tag is illustrated on the cover page and
13 Figure 9 of the '606 patent:



20    12. The DTAG associated with a data cell contains information sufficient to
21 route the cell without accessing a table containing routing information. *See* '606 patent, 6:6-
22 18.

23    13. During prosecution, in response to an Examiner's rejection, the '606
24 patent applicants distinguished their disclosed system from the cited prior as eliminating the
25 need to use lookup tables for routing information. *See* Response to Office Action, 6/30/97 (the
26 cited reference "would not need to use lookup tables to derive port number if the multicast cells
27 described by [the reference] themselves included, for example, a port number field to directly
28 indicate a port.").

1  14.  It is my opinion that the accused Foundry products do not meet the limitation of a routing tag comprising fields, as required by independent Claims 1, 3, 4, 6 and 7 of the '606 patent.

15.  In the accused Foundry products, a forwarding identifier (FID) is inserted into a packet. The FID is an arbitrary number and does not contain any fields. Specifically, it does not contain a destination port number field, a destination module number field, or a multicast group number field. The FID is used as an index into a memory to obtain a list of all destinations for the packet in a single mask. This mask is then used by the forwarding mechanism to forward the packet. Indeed, this process of obtaining a mask from memory lookup operation is the same as the lookup operation that the '606 patent describes as being disadvantageous, and is the basis from which the claimed prepending of DTAGs to cells is offered as an improvement.

16.  Figure 2 below is an accurate representation of a FID in relation to the DTAG described in the '606 patent.



Figure 2.

17.  In my opinion, the accused Foundry products do not meet the "data cell" limitation of the independent Claims 1, 4, 6 and 7.

18.  The accused Foundry products are Ethernet switches. Ethernet switches route Ethernet packets of variable length. *See* Tanenbaum, A. S. "Computer

DECLARATION OF DR. STEPHEN WICKER IN SUPPORT OF FOUNDRY NETWORKS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '185 PATENT
4

PA:52129723.1/2024310-0000302295

1  Networks," Fourth Edition, Prentice Hall PTR, 2003, pp. 62-63. Specifically, Ethernet packets
2  can be of any length up to 65,536 bytes. *See id.*, at 433-434. Thus, Ethernet packets are not
3  fixed size. Figure 3 below illustrates the difference between fixed size ATM cells and variable
4  length Ethernet packets:



Figure 3.

Thus, Foundry's Ethernet switches do not route fixed size cells as performed by ATM switches, described in the '606 patent, and required by the asserted claims.

19.   In addition, the switch described in the '606 patent can only route fixed size cells, and cannot route variable length packets as performed by the accused Foundry products.

I declare under the penalty of perjury that the foregoing is true and correct, and that this Declaration was executed this 25th day of March, 2004, at Ithaca, New York.

/s/
_____
Dr. Stephen Wicker

DECLARATION OF DR. STEPHEN WICKER IN SUPPORT OF FOUNDRY NETWORKS INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '185 PATENT

5

PA:52129723.1/2024310-0000302295