# EXHIBIT A

Dockets.Justia.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THEGLOBE.COM, INC., | ) | Case No. 05-2433-JWL |
| VOICEGLO HOLDINGS, INC., | ) | |
| VONAGE HOLDINGS CORP., | ) | |
| VONAGE AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## EXPERT REPORT OF THE HONORABLE GERALD J. MOSSINGHOFF

### INTRODUCTION

1.      Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, I hereby submit this expert report as a statement of the opinions that I intend to express in the above-captioned action and the bases therefor.  This report discloses the information that I have reviewed.  Attached to this report as exhibits are my curriculum vitae (Exhibit A); a list of publications that I have authored or co-authored (Exhibit B); a list of the Congressional hearings that I participated in as a principal witness (Exhibit C); a list of the intellectual property cases in which I have testified in court or in deposition as an expert (Exhibit D); and a list of documents and materials in addition to those materials cited in this report, which I have reviewed to a greater or lesser extent, as appropriate (Exhibit E).

2.      I am a member of the Bars of Missouri, the District of Columbia and Virginia and have been registered to practice before the United States Patent and Trademark Office ("USPTO")

since 1961.  From 1957 to 1961, I was a Patent Examiner in the USPTO.  From 1965 to 1967, I

was Director of Legislative Planning in the USPTO.  With the advice and consent of the Senate,

President Reagan appointed me as Commissioner of Patents and Trademarks on June 30, 1981,

and I served in that position until January 19, 1985.  At the time of my appointment I was a

career civil servant, serving as the Deputy General Counsel of the National Aeronautics and

Space Administration.  While I was Commissioner of Patents and Trademarks, Congress

elevated my position to that of an Assistant Secretary of Commerce.  During that time also,

President Reagan appointed me as U.S. Ambassador to the Diplomatic Conference on the

Revision of the Paris Convention.  I was also elected by the member nations as Chairman of the

General Assembly of the United Nations World Intellectual Property Organization.  On August

23, 2000, I was appointed to serve on the Patent Public Advisory Committee, established

pursuant to P.L. 106-113, among other things, to advise the Under Secretary of Commerce on the

policies, goals and performance of the USPTO.  On August 6, 2002, I was reappointed to that

Advisory Committee by Secretary of Commerce Donald L. Evans for an additional three-year

term, and on August 22, 2005, I was reappointed to an additional three-year term on that

Committee by Secretary of Commerce Carlos M. Gutierrez.  Since January 1997, I have engaged

in the private practice of intellectual property law as Senior Counsel with the firm of Oblon,

Spivak, McClelland, Maier & Neustadt, P.C., 1940 Duke Street, Alexandria, Virginia 22314.  In

addition, I currently teach intellectual property law at the George Washington University Law

School.

      3.     I have been retained by counsel for the plaintiff in the above-captioned action,[1] to

---

[1] The law firm of Oblon, Spivak, McClelland, Maier & Neustadt has done work for Sprint Communications
Company unrelated to this action or to the patents involved in this action.  I have not participated in any way in that
work, and as an employee of Oblon, Spivak, McClelland, Maier & Neustadt, I have not received any compensation
from it.

prepare this expert report and to be available to testify in the action. The law firm that employs me bills my time in this matter at my standard fee rate of $810.00 per hour for time spent on this matter, with reimbursement for actual expenses. No part of my compensation depends on the outcome of this litigation.

4.     At the present time, I expect to testify, both at deposition and at trial, on the rules and procedural requirements governing the filing and prosecution of patent applications in the USPTO and the grant of U.S. patents by the USPTO.

5.     The opinions stated in this report are based on information currently available to me. I reserve the right to continue my investigation and study, which may include a review of documents and information that may yet be produced, as well as deposition testimony from depositions for which transcripts are not yet available and that may yet be taken in this case. Therefore, I reserve the right to expand or modify this report as my investigation and study continue, and to supplement my opinions in response to any additional information that becomes available to me, to any matters raised by the parties, and/or other opinions provided by the parties' expert(s). In my testimony I may use exhibits and demonstratives.

**GENERAL OVERVIEW OF PATENT EXAMINATION PROCEDURES**

6.     Under a grant of authority in the U.S. Constitution, Congress established the U.S. patent system in 1790 to encourage the creation of new inventions and their disclosure to the public. To administer the U.S. patent system Congress established the United States Patent and Trademark Office, a key agency in the U.S. Department of Commerce. The USPTO has a staff of more than 4,700 patent examiners, each of whom is a scientist or engineer, and many of whom have legal education as well. As a performance-based federal agency, the USPTO has established production goals for each examiner. These goals do not limit the time available on

any specific application but rather apply to the average time spent per case per reporting quarter. The average time allotted varies depending on the complexity of the technology. The *average* time per application throughout the USPTO is approximately 20 hours.

      7.     After a preliminary review to ensure that an application meets the formal requirements of the USPTO, an examiner is responsible for deciding whether the patent application meets a number of substantive requirements.

    (a)   Under 35 U.S.C. § 101:

        (1)   The invention must involve patentable subject matter, i.e., be the type of technology that can be patented.  § 706.03(a) of the Manual of Patent Examining Procedure[2] ("MPEP").

        (2)   The invention must have utility or industrial application.  § 2107 MPEP.

        (3)   Only one patent can be granted for an invention.  Ch. 800 MPEP.

    (b)   Under 35 U.S.C. § 102, the invention must not be disclosed in what patent professionals refer to as "prior art."  § 706.02 MPEP.

    (c)   Under 35 U.S.C. § 103, even if the invention is not specifically disclosed in the prior art, a patent should not be granted if the invention would have been obvious to "a person of ordinary skill in the art" based upon what is in the prior art.  § 706.02 MPEP.

    (d)   Under 35 U.S.C. § 112, § 706.03(c) MPEP, several requirements are imposed:

---

[2] As stated by the Federal Circuit in *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed. Cir. 1997) regarding the Manual of Patent Examining Procedure:

    . . . although it does not have the force of law, is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates.

(1)    The specification must contain a "written description."

(2)    It must be in "full, clear, concise, and exact terms."

(3)    It must enable a person skilled in the art to make and use the invention (referred to as the "enablement requirement").

(4)    It must set forth the "best mode" contemplated by the inventor of carrying out his invention.

(5)    It must conclude with claims (that are a part of the specification and thus the disclosure of the invention) "particularly pointing out and distinctly claiming" the invention.

8.      After the review of a patent application for formal matters, the application is assigned to an examiner in a Group Art Unit, who examines the claims in an application and prepares an *Office Action* recording his/her conclusions.  In the examination of a patent application, the examiner is required initially to decide whether the application satisfies the requirement set forth above in ¶ 7(a) and (d).  The claims of an application define what the applicant regards as his/her invention.  The examination of claims in an application requires an examiner to search the prior art to decide whether the requirements set forth in ¶ 7(b) or (c) above are satisfied.  An applicant can respond to an Office Action by filing an *Amendment* or *Remarks* or both.  This process continues until the application is *Allowed* to be issued as a patent or it is *Abandoned*.  An applicant can appeal an adverse decision of an examiner to the USPTO Board of Patent Appeals and Interferences and then to the Federal courts.

**THE PATENTS IN SUIT**

9.      There are seven patents involved in this action:

- U.S. Patent No. 6,298,064 ("the '064 patent"), granted on October 2, 2001, to

5

Mr. Joseph Michael Christie for Broadband Telecommunications System.

The '064 patent was identified as:

> Continuation of application No. 09/353,401, filed on Jul. 15, 1999, which is a continuation of application No. 08/525,897, filed on Sep. 8, 1995, now Pat. No. 5,991,301, which is a continuation-in-part of application No. 08/568,551, filed on Dec. 7, 1995, now Pat. No. 5,825,780, which is a continuation of application No. 08/238,605, filed on May 5, 1994, now abandoned.[3]

- U.S. Patent No. 6,304,572 ("the '572 patent"), granted on October 16, 2001, to

  Mr. Christie for Method, System and Apparatus for Telecommunications

  Control.  The '572 patent was identified as:

  > Continuation of application No. 08/568,551, filed on Dec. 7, 1995, now Pat. No. 5,825,780, which is a continuation of application No. 08/238,605, filed on May 5, 1994, now abandoned.

- U.S. Patent No. 6,452,932 ("the '932 patent"), granted on September 17, 2002,

  to Mr. Christie for Method, System and Apparatus for Telecommunications

  Control.  The '932 patent was identified as:

  > Continuation of application No. 09/081,891, filed on May 20, 1998, [now Pat. No. 6,104,718], which is a continuation of application No. 08/568,551, filed on Dec. 7, 1995, now Pat. No. 5,825,780, which is a continuation of application No. 08/238,605, filed on May 5, 1994, now abandoned.

- U.S. Patent No. 6,463,052 ("the '052 patent"), granted on October 8, 2002, to

  Mr. Christie for Method, System and Apparatus for Telecommunications

---

[3] As stated in MPEP § 201.07:

  A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented.

                    *    *    *

  The continuation application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 120 . . . .

Control.  The '052 patent was identified as:

> Continuation of application No. 08/568,551, filed on Dec. 7,
> 1995, now Pat. No. 5,825,780, which is a continuation of
> application No. 08/238,605, filed on May 5, 1994, now
> abandoned.

- U.S. Patent No. 6,473,429 ("the '429 patent"), granted on October 29, 2002, to

  Mr. Christie for Broadband Telecommunications System.  The '429 patent

  was identified as:

  > Continuation of application No. 08/525,897, filed on Sep. 8,
  > 1995, now Pat. No. 5,991,301, which is a continuation-in-
  > part of application No. 08/568,551, filed on Dec. 7, 1995,
  > now Pat. No. 5,825,780, which is a continuation of
  > application No. 08/238,605, filed on May 5, 1994, now
  > abandoned.

- U.S. Patent No. 6,633,561 ("the '561 patent"), granted on October 14, 2003, to

  Mr. Christie for Method, System and Apparatus for Telecommunications

  Control.  The '561 patent was identified as:

  > Continuation of application No. 09/082,040, filed on May
  > 20, 1998, [now Pat. No. 6,643,282], which is a continuation
  > of application No. 08/568,551, filed on Dec. 7, 1995, now
  > Pat. No. 5,825,780, which is a continuation of application
  > No. 08/238,605, filed on May 5, 1994, now abandoned.

- U.S. Patent No. 6,665,294 ("the '294 patent"), granted on December 16, 2003,

  to Mr. Christie for Broadband Telecommunications System.  The '294 patent

  was identified as:

  > Continuation of application No. 09/438,669, filed on Nov. 12,
  > 1999, now Pat. No. 6,452,928, which is a continuation-in-
  > part of application No. 08/568,551, filed on Dec. 7, 1995,
  > now Pat. No. 5,825,780, and a continuation of application
  > No. 08/525,897, filed on Sep. 8, 1995, now Pat. No.
  > 5,991,301, and a continuation of application No. 08/238,605,
  > filed on May 5, 1994, now abandoned.

**PROSECUTION HISTORIES OF THE PATENTS IN SUIT**

10.    I have been requested to summarize the prosecution histories of the patents in suit,

and I will do so in the following paragraphs.

*Prosecution History of the '064 Patent*

11.    The prosecution history of the '064 patent included the following:

(a)    The '064 patent resulted from U.S. Application No. 09/504,408 ("the '408

application"), filed February 15, 2000, and assigned to Primary Examiner Ajit

Patel[4] in Art Unit 2662 for examination.

(b)    In an Action mailed November 8, 2000, Examiner Patel rejected claims 1-71

under 35 U.S.C. §§ 102 or 103 based on a U.S. Patent to Doshi et al. (5,483,527).

He also rejected claims 1 and 37 as follows:

> Claims 1 and 37 are rejected under the judicially created
> doctrine of obviousness-type double patenting as being
> unpatentable over claims 1, 4, 15, 35, 45-47 of U.S. Patent
> No. 5,991,301. Although the conflicting claims are not
> identical, they are not patentably distinct from each other
> because it would have been obvious to one skilled in the art
> to delete the feature that the applicant does not consider to
> the critical to their invention.

(c)    In response to the November 8, 2000, Action, the applicant's attorney filed:

(1)    an Amendment, cancelling claims 4, 5 and 40 and replacing claims 1

and 37;

(2)    a Terminal Disclaimer; and

(3)    an Information Disclosure Statement ("IDS"), citing a number of

---

[4] Primary Examiners are senior examiners who, because of their experience and performance are given supervisory roles over more junior examiners. Actions which require the attention of a primary examiner are listed in MPEP §§ 1004 and 1005.

2265296v1

documents, each of which was considered by Examiner Patel.

(d)   On February 23, 2001, the applicant's attorney filed an IDS citing two

documents, each documents, each of which was considered by Examiner Patel.

(e)   On May 7, 2001, Examiner Patel issued a Notice of Allowability allowing all

of the pending claims.  On July 17, 2001, Examiner Patel issued a Supplemental

Notice of Allowability attaching an additional IDS with his notations.

(f)   The '064 patent was granted on October 2, 2001.

(g)   On January 27, 2004, the USPTO issued a Certificate of Correction with

respect to the '064 patent.

### Prosecution History of the '572 Patent

12.      The prosecution history of the '572 patent included the following:

(a)   The '572 patent resulted from U.S. Application No. 09/082,048 ("the '048

application"), filed May 20, 1998, and assigned to Primary Examiner Patel in

Group Art Unit 2738 for examination.

(b)   On May 20, 1998, the applicant's attorney filed an IDS on Form PTO-1449

citing a large number of documents, each of which was considered by Examiner

Patel.  In a Statement accompanying the IDS, the applicant's attorney stated:

> Applicant submits herewith the attached Form PTO-1449
> documents.  This statement is being submitted in numerous
> patent applications that have related or similar subject
> matter.  Many of the references identified on the Form
> PTO-1449 document have been previously submitted, and
> are submitted again here only for consistency.  Applicant
> apologizes in advance for the duplication.
>
> The documents listed on the attached Form PTO-1449
> documents are divided into Group A and Group B.  With
> the exception of the ISDN article and the Samba '815,
> Robrock '402, Robrock '884, Robrock '390, Robrock '643,

LaPorta '679, and Land '706 references, each of the
references listed in Group A have been relied upon by an
examiner in either U.S., PCT or foreign prosecution of
either a corresponding patent application, or a patent
application that may have related or some similar subject
matter. To avoid significant duplication only previously
non-submitted references in Group A and Group B are
being submitted.

While the references of Group A are presently believed by
applicant to be of greater pertinence than those of Group B,
the inclusion of a particular reference in Group B is not
intended to mean that the reference may not be the same or
more relevant than the references included in Group A.

(c)   On November 24, 1998, the applicant's attorney filed an IDS listing a number

of copending patent applications. The applicant's attorney stated:

The Applicant respectfully requests that the attached table
of U.S. patent application serial numbers be considered in
the examination of the above-identified application on
other than a form PTO-1449 format to avoid the serial
numbers of pending applications being published on any
future patents.

Examiner Patel accommodated that request.

(d)   In an Office Action mailed February 16, 2000, Examiner Patel rejected

claims 1-79 under 35 U.S.C. §§ 102 or 103 based upon an earlier U.S. patent to

La Porta et al. (5,509,010).

(e)   On June 16, 2000, the applicant's attorney filed a Response, amending claims

1, 38 and 75-79, and respectfully requesting allowance of claims 1-79.

(f)   On June 16, 2000, also, the applicant's attorney filed an IDS, including a

Form PTO-1449, citing a number of documents, each of which was considered by

Examiner Patel. He also filed a list of copending applications stating:

The Applicant respectfully requests that the attached table
of U.S. Patent application serial numbers be considered in

the examination of the above-identified application on
other than a form PTO-1449 format to avoid the serial
numbers of pending applications being published on any
future patents.

(g)   In an Action mailed September 12, 2000, Examiner Patel again rejected

claims 1-79 based upon the LaPorta et al. patent. (5,509,010).  The Action was

made FINAL.

(h)   On February 9, 2001, the applicant's attorney filed and paid the fee for a

Request for Continued Examiner ("RCE").[5]  The RCE was accompanied by an

IDS listing additional documents, which were considered, and a Response to the

September 12, 2000, Action.  The Response amended many of the claims.

(i)   On February 23, 2001, the applicant's attorney filed an IDS listing a number

of documents, each of which was considered by Examiner Patel.

(j)   On May 22, 2001, Examiner Patel issued a Notice of Allowability, allowing

claims 1-79.

(k)   The '572 patent was granted on October 16, 2001.

### Prosecution History of the '932 Patent

13.   The prosecution history of the '932 patent included the following:

(a)   The '932 patent resulted from U.S. Application No. 09/499,874 ("the '874

application"), filed February 7, 2000, and also assigned to Primary Examiner

Patel in Art Unit 2662 for examination.

---

[5] 37 C.F.R. § 1.1114 states:

(a)  If prosecution in an application is closed, an applicant may request continued examination of
the application by filing a submission and the fee . . . .

*     *     *

(d)  If an applicant timely files a submission and fee set forth in § 1.17(e), the Office will
withdraw the finality of any Office action and the submission will be entered and considered.

(b)   On February 23, 2001, the applicant's attorney filed an IDS, citing two U.S.

patents, each of which was considered by Examiner Patel.

(c)   In an Action mailed July 31, 2001, Examiner Patel rejected claims 1 and 18,

stating:

> Claims 1, 18 are rejected under the judicially created
> doctrine of obviousness-type double patenting as being
> unpatentable over claim 34 of U.S. Patent No. 5,825,780.
> Although the conflicting claims are not identical, they are
> not patentably distinct from each other because it would
> have been obvious to one skilled in the art to replace the
> network elements with narrowband and broadband
> (asynchronous) element to integrate the narrow and
> broadband traffic.

*   *   *

> A timely filed terminal disclaimer in compliance with 37
> CFR 1.321(c) may be used to overcome an actual or
> provisional rejection based on a nonstatutory double
> patenting ground provided the conflicting application or
> patent is shown to be commonly owned with this
> application.  See 37 CFR 1.130(b).

(d)   On January 3, 2002, the applicant's attorney filed a "Terminal Disclaimer to

Obviate a Double Patenting Rejection Over a Prior Patent."

(e)   On March 25, 2002, Examiner Patel issued a Notice of Allowability,

allowing claims 1-34.  He stated:

> The following is an examiner's statement of reasons for
> allowance.  The prior art of the record fails to disclose an
> asynchronous communication system configured to receive
> the second message and the communications and transfer
> the communications to the selected narrowband switch in
> response to the second message in combination of other
> limitation recited in claims 18 and 1.

(f)   On April 12, 2002, Examiner Patel issued a second Notice of Allowability

requiring the applicant to submit New Formal Drawings, which the applicant's

12

attorney did on April 23, 2002.

(g)   The '932 patent was granted on September 17, 2002.

**Prosecution History of the '052 Patent**

14.   The prosecution history of the '052 patent included the following:

(a)   The '052 patent resulted from U.S. Application No. 09/082,182 ("the '182 application"), filed May 20, 1998, and assigned to Primary Examiner Patel in Art Unit 2738 for examination.

(b)   On May 20, 1998; October 22, 1998; and November 24, 1998, the applicant's attorney filed IDSs citing a number of documents, each of which was considered by Examiner Patel.  With respect to the May 20, 1998, IDS, the applicant's attorney stated:

> The enclosed form 1449 cites all of the references of record in the parent case.  Pursuant to MPEP, § 609, applicant has not provided copies of these references for this continuation application.  Applicant respectfully requests that copies not be required since the PTO has copies of these references and since additional duplicate copies would require that applicant copy and mail several thousand pages of references for this continuation application and the other continuation applications filed contemporaneously with this continuation application.  If requested, applicant will provide these copies.

With respect to the October 22, 1998, IDS, the applicant's attorney stated:

> Applicant submits herewith the attached Form PTO-1449 documents.  This statement is being submitted in numerous patent applications that have related or similar subject matter.  Many of the references identified on the Form PTO-1449 document have been previously submitted, and are submitted again here only for consistency.  Applicant apologizes in advance for the duplication.
>
> The documents listed on the attached Form PTO-1449 documents are divided into Group A and Group B.  With

2265296v1

the exception of the ISDN article and the Samba '815, Robrock '402, Robrock '884, Robrock '390, Robrock '643, LaPorta '679, and Land '706 references, each of the references listed in Group A have been relied upon by an examiner in either U.S., PCT or foreign prosecution of either a corresponding patent application, or a patent application that may have related or some similar subject matter. To avoid significant duplication only previously non-submitted references in Group A and Group B are being submitted.

While the references of Group A are presently believed by applicant to be of greater pertinence than those of Group B, the inclusion of a particular reference in Group B is not intended to mean that the reference may not be the same or more relevant than the references included in Group A.

With respect to the November 24, 1998, IDS, the applicant's attorney stated:

The Applicant respectfully requests that the attached table of U.S. patent application serial numbers be considered in the examination of the above-identified application on other than a form PTO-1449 format to avoid the serial numbers of pending applications being published on any future patents.

Examiner Patel considered the cited applications in a way that did not result in their being printed in the '052 patent.

(c)   In an Action mailed February 16, 2000, Examiner Patel rejected all of the claims under 35 U.S.C. §§ 102 or 103 based upon the U.S. patent to La Porta et al. (5,434,852).

(d)   On June 16, 2000, the applicant's attorney filed a Response amending independent claims 1, 21, 27 and 47, and forwarding an IDS that cited a number of documents, each of which was considered by Examiner Patel.

(e)   In an Action mailed August 29, 2000, Examiner Patel again rejected all of the claims under 35 U.S.C. §§ 102 or 103 based upon the U.S. patent to La Porta et al.

14

(5,434,852). The Action was made FINAL.

(f)   On January 29, 2001, the applicant's attorney filed an RCE accompanied by a

Response to the August 29, 2000, Action, amending claims 1 and 21.

(g)   In an Action mailed April 10, 2001, again rejected all of the claims under 35

U.S.C. §§ 102 or 103 based upon the U.S. patent to La Porta et al. (5,434,852).

(h)   On September 6, 2001, the applicants' attorney filed a Response, replacing

claims 1-63 with new claims 64-87.  Filed with the Response was an IDS citing

six documents, each of which was considered by Examiner Patel.

(i)   On December 3, 2001, Examiner Patel issued a Notice of Allowability,

allowing claims 64-87.

(j)   Following some obvious confusion on whether the Issue Fee was paid on

time, the '052 patent was granted on October 8, 2002.

### Prosecution History of the '429 Patent

15.   The prosecution history of the '429 patent included the following:

(a)   The '429 patent resulted from Application No. 09/353,401 ("the '401

application"), filed July 15, 1999, and assigned to Primary Examiner Patel in Art

Unit 2738 for examination.

(b)   In an Action mailed October 4, 2000, Examiner Patel rejected claims 1-46

under 35 U.S.C. §§ 102 or 103 based upon a U.S. patent to Doshi et al.

(5,483,527).  He also rejected claims 1 and 24 as follows:

> 2. Claims 1 and 24 are rejected under the judicially created
> doctrine of obviousness-type double patenting as being
> unpatentable over claims 1, 4, 15, 35, 45-47 of U.S. Patent
> No. 5,991,301.  Although the conflicting claims are not
> identical, they are not patentably distinct from each other
> because it would have been obvious to one skilled in the art

15

to delete the feature that the applicant does not consider to the critical to their invention.

3.  Claims 1 and 24 are provisionally rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 1, 7, 9, 15 of copending Application No. 09/439,033.  Although the conflicting claims are not identical, they are not patentably distinct from each other because it would have been obvious to one skilled in the art to delete the feature that the applicant does not consider to the critical to their invention.

(c)  On February 13, 2001, the applicant's attorney filed a Response that included an Amendment, a Terminal Disclaimer, and an IDS that cited several documents, each of which was considered by Examiner Patel.  The Amendment cancelled claims 1 and 24 and amended claims 2-23 and 25-46.

(d)  On March 2, 2001, the applicant's attorney filed an IDS that cited several documents, each of which was considered by Examiner Patel.

(e)  On January 28, 2002, Examiner Patel issued a Notice of Allowability, allowing all of the pending claims.

(f)  Following some confusion on whether the Issue Fee was paid on time, the '429 patent was granted on October 29, 2002.

***Prosecution History of the '561 Patent***

16.  The prosecution history of the '561 patent included the following:

(a)  The '561 patent resulted from U.S. Application No. 10/002,850 ("the '850 application"), filed November 14, 2001, and assigned to Primary Examiner Patel in Art Unit 2662 for examination.

(b)  On December 27, 2001, the applicant's attorney filed an IDS citing many documents, each of which was considered by Examiner Patel.

16

(c)   In an Action mailed February 27, 2002, Examiner Patel rejected claims 1-38

under 35 U.S.C. §§ 102 or 103 based upon a U.S. patent to Martin et al.

(5,765,108) or the Martin et al. patent in view of La Porta et al. (5,509,010).   He

also rejected claims 1-38 as follows:

> 3.   Claims 1-38 are provisionally rejected under the judicially created doctrine  of obviousness-type double patenting as being unpatentable over claims 297-342 of copending Application No. 09/082,049.  Although the conflicting claims are not identical, they are not patentably distinct from each other because it would have been obvious to one skilled in the art to delete the steps of generating and transferring a response message that the applicant does not consider critical to their invention.
>
> This is a provisional obviousness-type double patenting rejection because the conflicting claims have not in fact been patented.
>
> 4.   Claims 1-38 are provisionally rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claims 293-329 of copending Application No. 09/082,040.  Although the conflicting claims are not identical, they are not patentably distinct from each other because it would have been obvious to one skilled in the art to delete the steps of generating and transferring a response message that the applicant does not consider critical to their invention.
>
> This is a provisional obviousness-type double patenting rejection because the conflicting claims have not in fact been patented.

(d)   On July 26, 2002, the applicant's attorney filed a Response and two Terminal

Disclaimers to Obviate the Double Patenting Rejections.

(e)   On September 6, 2002, the applicant's attorney filed an IDS citing several

documents, each of which was considered by Examiner Patel.

(f)   In an Action mailed October 22, 2002, Examiner Patel rejected claims 1-38

17

under 35 U.S.C. § 103 based upon a U.S. patent to Lewis (6,175,574) in view of La Porta et al. (5,509,010).

(g)   On March 24, 2003, the applicant's attorney filed a Response to the October 22, 2002, Action, amending claims 1 and 24.

(h)   On May 7, 2003, Examiner Patel issued a Notice of Allowability, allowing claims 1-38.

(i)   The '561 patent was granted on October 14, 2003.

### Prosecution History of the '294 Patent

17.   The prosecution history of the '294 patent included the following:

(a)   The '294 patent resulted from U.S. Application No. 10/212,503 ("the '503 application"), filed August 5, 2002, and assigned to Primary Examiner Patel for examination.

(b)   On October 25, 2002, the applicant's attorney filed an Electronic IDS, citing a number of documents, each of which was considered by Examiner Patel.

(c)   On October 29, 2002, the applicant's attorney filed an IDS, citing a number of documents, each of which was considered by Examiner Patel.

(d)   In an Action mailed March 14, 2003, Examiner Patel rejected claims 1-40 under 35 U.S.C. §§ 102 or 103 based upon a U.S. patent to Doshi et al. (5,483,527).

(e)   On July 11, 2003, the applicant's attorney faxed a Response to the March 14, 2003, Action, amending claims 1, 11, 21 and 31 and cancelling claims 6, 16, 26 and 36.

(f)   On July 18, 2003, Examiner Patel issued a Notice of Allowability, allowing

18

all of the pending claims.

(g)    On December 16, 2003, the '294 patent was granted.

(h)    Certificates of Correction with respect to the '294 patent were issued on April

6, 2004, and February 15, 2005.

**PROSECUTION OF "ANCESTORS" OF THE PATENTS IN SUIT**

18.    I have also been requested to summarize the prosecution histories of "ancestors"

of the patents in suit, and I will do so in the following paragraphs.

*Prosecution History of U.S. Patent No. 5,825,780*

19.    Each of the patents in suit is a continuation or continuation-in-part[6] of U.S. Patent

No. 5,825,780 ("the '780 patent").

20.    The '780 patent was granted on October 20, 1998, to Mr. Christie for "Method,

System and Apparatus for Telecommunications Control."  The '780 patent was identified as:

"Continuation of Ser. No. 238,605, May 5, 1994, abandoned."

21.    The prosecution history of the '780 patent included the following:

(a)    The '780 patent resulted from two applications:

—    Application Serial No. 08/238,605 ("the '605 application") and

—    Application Serial No. 08/568,551 ("the '551 application), a "file wrapper

continuation" ("FWC") of the '605 application.[7]

(b)    The '605 application was filed on December 7, 1995, and assigned for

---

[6] As stated in MPEP § 201.08:
        A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application,
        repeating some substantial portion or all of the earlier nonprovisional application and *adding matter not
        disclosed* in the said earlier nonprovisional application.  (Emphasis in original.)
[7] At the time the '605 application was pending, Rule 62, 37 C.F.R. § 1.62 (since repealed) stated:
        § 1.62 File wrapper continuing procedure.

                                    *    *    *

        (e) An application filed under this section will utilize the file wrapper and contents of the prior application
        to constitute the new continuation . . . application but will be assigned a new application number.

examination to Examiner Russ Blum, acting under the supervision of Supervisory

Patent Examiner ("SPE") Douglas W. Olms, in Art Unit 2603.

(c)   In an Action mailed November 9, 1994, Examiner Blum rejected all of the

claims under 35 U.S.C. §§ 102, 103 or 112.  The §§ 102 and 103 rejections were

based upon patents to Gopal et al. (4,748,658); Epley (5,251,255); and Rago

(5,089,954) and "admitted prior art."

(d)   On May 9, 1995, the applicant's attorney filed an Amendment, cancelling

claims 1-63 and adding new claims 64-120.

(e)   On May 19, 1995, the applicant's attorney filed an IDS citing a number of U.S.

patents and "other documents," each of which was considered by Examiner Blum.

(f)   In an Action mailed July 7, 1995, Examiner Blum rejected claims 64-120

under 35 U.S.C. §§ 102, 103 and 112.  The §§ 102 and 103 rejections were based

upon patents to Gopal et al. Epley, Rago and "admitted prior art."  Examiner

Blum objected to the May 9, 1995, Amendment as introducing "new matter into

the specification."  The Action was made FINAL.

(g)   On December 7, 1995, the applicant's attorney filed the FWC that received

the '551 serial number.  At that time, he also filed a Preliminary Amendment, that

cancelled claims 64-129 and added new claims 121-174.  He also filed an IDS

that cited a number of U.S. patents and "other documents," each of which was

considered by Examiner Blum.

(h)   On March 21, 1996, the applicant's attorney filed an IDS, citing seven U.S.

patents and two other documents, each of which was considered by Examiner

Blum.

20

(i)   In an Action mailed October 17, 1996, Examiner Blum rejected a number of

the claims and objected to others.  The rejections were based upon 35 U.S.C. §§

102 and 112, and were a non-statutory double patenting rejection based on

copending applications in view of issued patents.

(j)   A personal interview between Examiner Blum and the applicant's attorney

was held on February 26, 1997, at which "agreement was not reached."  The

Interview Summary stated:

> Description of the general nature of what was agreed to if
> an agreement was reached, or any other comments:
> discussed possible distinguishing limitations; e.g., new
> signaling sent to switch/element which did not generate or
> receive previous signaling, processor selects a connection
> to overcome the prior art rejections.

(k)   On April 16, 1997, the applicant's attorney filed an Amendment cancelling

three of the claims, amending others and adding new claims.  Two Terminal

Disclaimers were filed with the Amendment to Obviate the Double Patenting

Rejections.  On April 16, 1997, also, the applicant's attorney filed an IDS, citing a

number of U.S. patents, foreign patent documents and "other references," each of

which was considered by Examiner Blum.

(l)   In an Action mailed September 5, 1997, Examiner Patel allowed a number of

claims and rejected others under 35 U.S.C. § 112.

(m)   In an Amendment filed December 4, 1997, the applicant's attorney amended

several of the claims and cancelled others.  On December 4, 1997, also, the

applicant's attorney filed an IDS citing nine U.S. patents and one Japanese patent

document, each of which was considered by Examiner Patel.

(n)   On February 17, 1998, Examiner Patel issued a Notice of Allowability and

21

on March 16, 1998, issued a Supplemental Notice of Allowability.

(o)   On September 18, 1998, the applicant's attorney filed a number of Form

PTO-1449s (IDSs), citing references that were already of record.   There is no

indication on the Form PTO-1449s that Examiner Patel considered the references

cited at that time.

(p)   The '780 patent was granted on October 20, 1998.

***Prosecution History of U.S. Patent No. 5,991,301***

22.   Patents in suit '064, '429 and '294 are continuations or continuations-in-part of

U.S. Patent No. 5,991,301 ("the '301 patent").

23.   The '301 patent was granted on November 23, 1999, to Mr. Christie for

"Broadband Telecommunications System."   The '301 patent was identified as:

> Continuation-in-part of application No. 08/238,605, May 5, 1994,
> abandoned.

24.   The prosecution history of the '301 patent included the following:

(a)   The '301 patent resulted from Application Serial No. 08/525,897 ("the '897

application"), filed September 8, 1995, and assigned for examination to Examiner

Blum, then a Primary Examiner, in Art Unit 2603.

(b)   On December 12, 1995, the applicant's attorney filed an IDS, citing a number

of U.S. patents, foreign patent documents and "other documents," each of which

was considered by Examiner Blum.

(c)   In an Action mailed October 17, 1996, Examiner Blum rejected claims under

35 U.S.C. §§ 102, 103, 112 and under the judicially created doctrine of

obviousness-type double patenting.   The §§ 102 and 103 rejections were based

upon U.S. patents to Hiller (5,422,882) and Isono (5,363,433).   Claims 50-54

22

were allowed

(d)  A Personal Interview between Examiner Blum and the applicant's attorney

was held on February 26, 1997, at which "agreement was not reached." The

Interview Summary stated:

> Description of the general nature of what was agreed to if
> an agreement was reached, or any other comments:
> discussed possible distinguishing limitations; e.g.,
> processor external to any switch, cell conversion in
> response to signaling, independence from buffer location
> for path identifiers; for overcoming the prior art rejections.

(e)  On April 16, 1997, the applicant's attorney filed an Amendment, amending

several of the claims and adding new claims 63-66.  He also filed two Terminal

Disclaimers to Obviate the Double Patenting Rejection and an IDS, citing a

number of U.S. patents, three foreign patent documents and a number of "other

documents," each of which was considered by Examiner Patel.

(f)  In an Action mailed July 22, 1998, Examiner Patel maintained the double

patenting rejections because the proper fee as not paid.  The Action was made

FINAL.

(g)  On September 28, 1998, the applicant's attorney filed a number of Form

PTO-1449 documents, citing a number of references, each of which was

considered by Examiner Patel.

(h)  On March 31, 1999, Examiner Patel issued a Notice of Allowability,

allowing claims 1-66.

(i)  On March 2, 1999, the applicant's attorney filed an Amendment, cancelling

claims 37-54 and 66.

(j)  On November 24, 1998, the applicant's attorney filed an IDS listing patent

23

applications, but not a Form PTO-1449.

(k)   On May 7, 1999, Examiner Patel issued a Supplemental Notice of

Allowability, in response to the March 2, 1999, Amendment.   The Examiner

stated:

> The information disclosure statement filed in this
> application on [November 24, 1998] fails to include the
> petition after final under 37 C.F.R. § 1.97(d).   See 1135
> O.G. 13 dated February 4, 1992, which is effective for all
> information disclosure statements filed after March 16,
> 1992.
>
> The petition should also be accompanied by a proper
> certification as specified in 37 C.F.R. §§ 1.97(d) and
> 1.97(e).   Information disclosure statement has been made of
> record in the application file but will not be considered by
> the examiner until it complies with 37 C.F.R. §§ 1.97-1.98.

(l)   A similar IDS was filed on July 16, 1999, and accepted under the same

conditions.

(m)   The '301 patent was granted on November 23, 1999.

***Prosecution History of U.S. Patent No. 6,104,718***

25.      Patent in suit '932 is a continuation of U.S. Patent No. 6,104,718 ("the '718

patent").

26.      The '718 patent was granted on August 15, 2000, to Mr. Christie for "Method,

System and Apparatus for Telecommunications Control."   The '718 patent was identified as:

> Continuation of application No. 08/568,551, Dec. 7, 1995, Pat. No.
> 5,825,780, which is a continuation of application No. 08/238,605,
> May 5, 1994, abandoned.

27.      The prosecution history of the '718 patent included the following:

(a)   The '718 patent resulted from Application Serial No. 09/081,891) ("the '891

application"), filed on May 20, 1998, and assigned for examination to Examiner

24

Patel in Art Unit 2738.

(b)   Four IDSs were filed during the pendency of the '891 application: with the

application; on November 24, 1998; on October 26, 1998, and on January 6, 2000.

Each of the references cited was considered by Examiner Patel.

(c)   In an Action mailed September 15, 1999, Examiner Patel allowed claims 7-

16, objected to claims 3-5 and rejected the remainder under 35 U.S.C. § 102(e)

based on a U.S. patent to La Porta et al. (5,434,852) and under the judicially

created doctrine of obviousness-type double patenting.

(d)   On January 14, 2000, the applicant's attorney filed a Response, cancelling

claims 1-6 and 17-40.

(e)   On January 31, 2000, Examiner Patel issued a Motion of Allowability,

allowing claims 7-16.

(f)   On March 13, 2000, the applicant's attorney filed an "Unpublished

Application table," citing applications that were considered by Examiner Patel.

(g)   On June 5, 2000, Examiner Patel issued a Supplemental Notice of

Allowability acknowledging the Application table.

(h)   The '718 patent was granted on August 15, 2000.

### Prosecution History of U.S. Patent No. 6,452,928

28.    Patent in suit '294 is a continuation of U.S. Patent No. 6,452,928 ("the '928

patent").

29.    The '928 patent was granted on September 17, 2002, to Mr. Christie for

"Broadband Telecommunications System."  It was identified as:

Continuation-in-part of application No. 08/568,551, filed on Dec. 7,
1995, now Pat. No. 5,825,780, and a continuation of application

No. 08/525,897, filed on Sep. 8, 1995, now Pat. No. 5,991,301, which is a continuation of application No. 08/238,605, filed on May 5, 1994, now abandoned.

30.  The prosecution history of the '928 patent included the following:

(a)  The '928 patent resulted from Application Serial No. 09/438,669, filed November 12, 1999, and assigned for examination to Examiner Patel in Art Unit 2662.

(b)  IDSs were filed on February 23, 2001, and August 21, 2001, citing a number of documents, each of which was considered by Examiner Patel.

(c)  In an Action mailed August 15, 2001, Examiner Patel rejected all of the claims under 35 U.S.C. § 102 based upon a U.S. patent to Skoog (5,623,491) and under the judicially created doctrine of obviousness-type double patenting.

(d)  On January 15, 2002, the applicant's attorney filed an Amendment, amending the specifications and several of the claims.  On that date, the applicant's attorney also filed a Terminal Disclaimer to Obviate the Double Patenting Rejection.

(e)  On May 6, 2002, Examiner Patel issued a Notice of Allowability, allowing claims 1-40.

(f)  The '928 patent was granted on September 17, 2002.

(g)  On January 27, 2004, the USPTO issued a Certificate of Correction, adding the following to the Title page:

> Title page,
> Item [63], Related U.S. Application Data, replace 'Continuation-in-part of application No. 08/568,551, filed on Dec. 7, 1995, now Pat. No. 5,825,780, and a continuation of application No. 08/525,897, filed on Sep. 8, 1995, now Pat. No. 5,991,301, which is a continuation of application No. 08/238,605, filed on May 5, 1994, now abandoned' with – Continuation of application No.

26

08/525,897, filed on Sep. 8, 1995, now Pat. No. 5,991,301,
which is a continuation-in-part of application No.
08/238,605, filed on May 5, 1994, now abandoned.

***Prosecution History of U.S. Patent No. 6,643,282***

31.    Patent in suit '561 is a continuation of U.S. Patent No. 6,643,282 ("the '282

patent").

32.    The '282 patent was granted on November 4, 2003, to Mr. Christie for "Method,

System and Apparatus for Telecommunications Control." It was identified as:

Continuation of application No. 08/568,551, filed on Dec. 7, 1995,
now Pat. No. 5,825,780, which is a continuation of application No.
08/238,605, filed on May 5, 1994, now abandoned.

33.    The prosecution history of the '282 patent included the following:

(a)    The '282 patent resulted from Application Serial No. 09/082,040 ("the '040

application"), filed May 20, 1998, and assigned for examination to Examiner

Patent in Art Unit 2738.

(b)    Several IDSs were filed during the prosecution of the '040 application: on

May 20, 1998; on October 22, 1998; on November 24, 1998; on April 10, 2000;

on February 23, 2001; on August 8, 2001; and on September 9, 2002. Examiner

Patel considered each of the documents cited in these IDSs.

(c)    In an Action mailed November 12, 1999, Examiner Patel rejected all of the

claims under 35 U.S.C. §§ 102 and/or 103 based upon two U.S. patents to La

Porta et al. (5,509,010 and 5,434,852).

(d)    The applicant's attorney filed an Amendment on April 10, 2000, amending

three of the claims.

(e)    In an Action mailed June 26, 2000, Examiner Patel rejected all of the claims

27

under 35 U.S.C. §§ 102 and/or 103 based again on the La Porta et al. patents. The Action was made FINAL.

(f)  A Personal Interview with Examiner Patel was held on October 18, 2000, at which "agreement was not reached (pending search)." The Interview Summary states:

> Description of the general nature of what was agreed to if an agreement was reached, or any other comments:  We discussed the way to overcome the rejection or references and draft claim was attached for review.  Upon receiving the CPA the examiner will perform the search and if the references will be found, the references will be supplied for the applicants.

(g)  On October 26, 2000, the applicant's attorney filed a Continuation Prosecution Application ("CPA"), reopening prosecution of the '040 application.[8]

(h)  Filed with the CPA was a Preliminary Amendment that cancelled claims 1-148 and added new claims 149-292.

(i)  In an Action mailed January 27, 2001, Examine Patel rejected all of the then-pending claims under 35 U.S.C. § 103(a) based upon the two La Porta et al. patents.

(j)  The applicant's attorney filed an Amendment on May 17, 2001, cancelling claims 149-292 and adding new claims 293-329.

(k)  In an Action mailed August 14, 2001, Examiner Patel rejected all of the new claims under the judicially created doctrine of obviousness-type double patenting.

(l)  On December 10, 2001, the applicant's attorney filed a response to the August 14, 2001, Action that included a Terminal Disclaimer to Obviate the Double

---

[8] Prior to July 14, 2003, 37 C..F.R. § 1.53 stated:
> A continuation or divisional application (but not a continuation-in-part) of a prior nonprovisional application may be filed as a continued prosecution application under this paragraph . . . .

Patenting Rejection.

(m)   In an Action mailed February 27, 2002, Examiner Patel rejected all of the claims (1) under 35 U.S.C. § 112, (2) under nonstatutory double patenting grounds and (3) under 35 U.S.C. §§ 102 or 103 based upon U.S. patents to Martin et al. (5,765,108) and La Porta et al. (5,509,010).

(n)   On July 26, 2002, the applicant's attorney filed a Response and a Terminal Disclaimer.

(o)   In an Action mailed October 22, 2002, Examiner Patel rejected all of the claims under 35 U.S.C. § 102(a) based upon U.S. patents to Lewis (newly cited) (6,175,574) and La Porta et al. (5,509,010).

(p)   On March 24, 2003, the applicant's attorney filed an Amendment to claim 293.

(q)   On May 5, 2003, Examiner Patel issued a Notice of Allowability, allowing claims 293-329.  On July 15, 2003, Examiner Patel issued a Supplemental Notice of Allowability, correcting a typographical error.

(r)   The '282 patent was granted on November 4, 2003.

## ENHANCED DAMAGES FOR WILLFUL INFRINGEMENT

34.   35 U.S.C. § 284 states in part:

> When the damages are not found by a jury, the court shall assess them.  In either event the court may increase the damages up to three times the amount found or assessed.

35.   In *SRI International v. Advanced Tech. Labs*,[9] the Federal Circuit stated:

> 35 U.S.C. § 284 of the Patent Act authorizes the court to "increase the damages up to three times the amount found or assessed."  The statute prescribes no standards for such increase, but precedent

---

[9]  127 F.3d 1462, 1464 (Fed. Cir. 1997).

establishes that a person having knowledge of an adverse patent has an affirmative duty to exercise due care to avoid infringement of a presumptively valid and enforceable patent. The statute thus recognizes the tortious nature of patent infringement and the public interest in a stable patent right, for enhanced damages are not compensatory but punitive.

To meet this duty of care, an infringer with knowledge of another's patent protection is required to investigate the scope of the patent and form a good-faith belief that is was invalid or that it was not infringed.[10] In determining whether the circumstances of an infringement would justify increased damages, the Federal Circuit has made clear that courts must consider the *totality of the circumstances* in any given case.

36.    In the HORNBOOK ON INTELLECTUAL PROPERTY,[11] the authors state at § 22.4.4:

In judging whether to award enhanced damages or not, the courts consider whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed. Prompt, competent advice from a qualified patent attorney significantly decreases the likelihood an infringement will be declared willful.[12]

37.    Factors that courts have considered in determining whether an infringer has met the duty of care include whether the infringer obtained a competent opinion of counsel concluding that the claims were not infringed and/or invalid. A competent opinion must consider at least the patent's claims, detailed description, prosecution history and cited art and

---

[10] See *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996).

[11] Schechter & Thomas, INTELLECTUAL PROPERTY: THE LAW OF COPYRIGHTS, PATENTS AND TRADEMARKS, Hornbook Series (Thompson West 2003).

[12] In its en banc decision in *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004), the Federal Circuit stated:

We now hold that no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel.

apply them to the allegedly infringing systems or methods examining all theories of infringement, although the totality of the circumstances may require more or less care in any given case.

Respectfully submitted,

Date: *January 10, 2007*

Gerald J. Mossinghoff

31

# EXHIBIT
# A

## EXHIBIT A

*Curriculum Vitae*
of the
**HONORABLE GERALD J. MOSSINGHOFF**

## PROFESSIONAL

OBLON, SPIVAK, MCCLELLAND, MAIER AND NEUSTADT, P.C.
Senior Counsel, 1997 – Present

PROFESSIONAL DETAILING INCORPORATED, UPPER SADDLE RIVER, N.J.
Member, Board of Directors, 1998 – 2004

TRIAL CARD INC., RALEIGH, N.C.
Member, Board of Directors, 2001 – Present

PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA (PhRMA)
WASHINGTON, D.C. (FORMERLY PHARMACEUTICAL MANUFACTURERS
ASSOCIATION)
President, 1985 – 1996
International Federation of Pharmaceutical Manufacturers Associations
Member of Council, 1985 – 1996
European Federation of Pharmaceutical Industries Associations
Member of Strategic Advisory Committee, 1990 – 1996
Consultant, 1997 – 2000

DEPARTMENT OF COMMERCE
Member, Statutory Patent Public Advisory Committee, 2000 - Present
Assistant Secretary of Commerce and Commissioner of Patents and
Trademarks, 1981 – 1985
U.S. Ambassador to the Diplomatic Conference on the Revision of the
Paris Convention, 1982 – 1985
Chairman, General Assembly of the United Nations World Intellectual
Property Organization (WIPO), 1983 – 1985
Director, Office of Legislative Planning, U.S. Patent and Trademark
Office, 1965 – 1967
Patent Examiner, 1957 – 1961

NATIONAL AERONAUTICS AND SPACE ADMINISTRATION
Deputy General Counsel, 1976 – 1981
Assistant General Counsel for General Law, 1974 – 1976
Deputy Assistant Administrator for Legislative Affairs, 1971 – 1974
Director, Congressional Liaison, 1967 – 1971
Patent Attorney, 1963 – 1965

KOENIG, POPE, SENNIGER & POWERS, ST. LOUIS, MISSOURI
>Patent Attorney, 1961 – 1963

SACHS ELECTRIC CORPORATION, ST. LOUIS, MISSOURI
>Project Engineer, 1954 – 1957

## ACADEMIC

ST. LOUIS UNIVERSITY
>Bachelor of Science in Electrical Engineering, 1957
>Pi Mu Epsilon Honorary Mathematics Fraternity
>Eta Kappa Nu Electrical Engineering Honor Society
>President, Phi Kappa Theta Fraternity
>Who's Who Among College & University Students
>Alumni Merit Award, 1983

THE GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
>Juris Doctor with Honors, 1961
>Editorial Staff of the *Law Review*
>Order of the Coif
>Law Alumni Professional Achievement Award, 1984
>Distinguished Alumnus Award, 1996
>Member, Dean's Board of Advisors, Law School
>Visiting Professor of Intellectual Property law, 1996 – 1997
>Member, Editorial Board, AIPLA Quarterly Journal, 1996 – 2000
>The "Honorable Gerald J. Mossinghoff Fellowship in Graduate Research
>in Intellectual Property" permanently endowed by PhRMA.
>Cifelli Professorial Lecturer, 1998 – Present
>[Taught the three-credit-hour course in Patent Law, 1996 – 1997; currently
>teach two two-credit-hour advanced seminars]

THE GEORGE MASON UNIVERSITY SCHOOL OF LAW
>Distinguished Adjunct Professor, 1997 – Present

FRANKLIN PIERCE LAW CENTER
>Adjunct Professor, 1998 – Present

THE UNIVERSITY OF AKRON SCHOOL OF LAW
>Member, Intellectual Property Law Advisory Council, 2000 - Present

INTERNATIONAL JUDICIAL ACADEMY, WASHINTON, D.C.
>Member, Board of Directors, 1999 – Present

AMERICAN UNIVERSITY, WASHINGTON COLLEGE OF LAW
>Adjunct Professor of Law, 1978 – 1984[Taught a three-credit-hour course
>in Patent Law during that time]

UNIVERSITY OF NORTH CAROLINA SCHOOL OF PHARMACY
Charter Member of the Board of Visitors, 1990 – 1996

## PROFESSIONAL HONORS

NASA Exceptional Service Medal, 1972
NASA Distinguished Service Medal, 1980
Presidential Rank of Meritorious Executive, 1980
Purdue University "Old Master," 1980
NASA Medal for Outstanding Leadership, 1981
Secretary of Commerce Award for distinguished Public Service, 1982
American University Roger W. Jones Award for Executive Leadership 1984
Fellow, National Academy of Public Administration, 1984 – Present
Jefferson Medal Recipient, 2000
Named in Who's Who in American Law, Who's Who in American Education,
Who's Who in Science and Engineering, Who's Who in America and Who's Who
in the World
Named as one of twenty-two "Who's Who in Intellectual Property" by the *Legal
Times Magazine*, May 7, 2001

## ORGANIZATIONS AND ACTIVITIES

Member, Missouri Bar, District of Columbia Bar, Virginia Bar, American
Bar Association, Federal Bar Association, American Intellectual Property
Law Association, International Institute of Teaching and Research in
Intellectual Property; Member, Boards of Directors of the International
Judicial Academy and the National Inventors Hall of Fame; Chairman,
Board of Directors of the U.S. Committee for the World Intellectual
Property Organization; Cosmos Club; Member of the Sovereign Military
Order of Malta (Knights of Malta); Registered Patent Attorney; Author of
more than eighty articles on Intellectual Property, Health Care and Space
Law; Board of Directors of the Education Foundation of the Intellectual
Property Owners

## PERSONAL

Married to the former Jeanne Carole Jack
Three children: Pamela Ann Jennings, Gregory J. Mossinghoff &
Melissa M. Ronayne
Resides at 1530 Key Boulevard, Penthouse 28, Arlington, Virginia 22209

**GJM: 01/10/06**

# EXHIBIT B

## EXHIBIT B

**Publications
of the
HONORABLE GERALD J. MOSSINGHOFF**

*Housing and Health Inspection: A Survey and Suggestions in Light of Recent Case Law* (co-author), 28 George Washington University Law Review 421 (January 1960), reprinted in Law Review Digests (1961) and in the Handbook for Housing Inspectors (1961)

Book Review of *Patent Procurement and Exploitation*, 13 Catholic University Law Review 203 (1964)

*Patent Infringement in Government Procurement: A Remedy Without a Right?* (co-author), 40 Notre Dame Lawyer 5 (1966), reprinted at 48 Journal of the Patent Office Society 755 (1966) and in the 1966 Yearbook of Procurement Articles

*Proposed Patent Reform Act*, included in the book Nurturing New Ideas: Legal Rights and Economic Roles (Bureau of National Affairs 1969)

*Legal Issues Inherent in Space Shuttle Operations* (co-author), 6 Journal of Space Law 47 (1978), reprinted in the book Space Shuttle and the Law (University of Mississippi Law Center 1980)

Address to the NASA Langley Research Center, 125 Congressional Record, page S6737 (May 24, 1979)

*Managing Tort Liability Risks in the Era of the Space Shuttle*, 7 Journal of Space Law 121 (1979)

*New Task Force of the American Institute of Aeronautics and Astronautics Wades into the Legal Waters*, 17 Astronautics and Aeronautics 20 (October 1979)

*United Nations Principles on Remote Sensing: Report on Developments 1970-1980* (co-author), 8 Journal of Space Law 103 (1980)

*A Lawyer's Space*, a monthly column in Astronautics and Aeronautics (March 1980 – April 1981)

Address to the ABA Section on Patent, Trademark and Copyright Law, 63 Journal of the Patent Office Society 342 (1981)

*The United States Patent and Trademark Office: Plans and Projections*, 2 Practical Approach to Patents, Trademarks and Copyrights 147 (1981)

*Intellectual Property Rights in Space Ventures*, 10 Journal of Space Law 107 (1982)

*Changes Pending in the U.S. Patent Office*, 7 Universitas 5 (St. Louis University 1982)

Address to the ABA Section on Patent, Trademark and Copyright Law, 64 Journal of the Patent Office Society 424 (1982)

*Trademark Law of the United States of America* and *Scientific Management and Examination of Trademarks*, Proceedings of the Legal Training Course on Trademarks, Beijing, May 1982 (World Intellectual Property Organization 1982)

*Developments and Plans at the Patent and Trademark Office*, included in the book Lectures for Inventors (Boston Public Library 1983)

*Protecting Intellectual Property in Space Activities*, included in the book Encouraging Business Ventures in Space Technology (National Academy of Public Administration 1983)

*An Agency Crackdown on Inefficiency*, 7 Enterprise 4 (National Association of Manufactures 1983)

Address to the ABA Section of Patent, Trademark and Copyright Law, 65 Journal of the Patent Office Society 375 (1983)

*Recent U.S. Legislation on Patents and Trademarks*, 23 Industrial Property 215 (WIPO 1984).

*The Importance of Intellectual Property Protection in International Trade*, 7 Boston College International and Comparative Law Review 235 (1984)

Address to the ABA Section on Patent, Trademark and Copyright Law, 66 Journal of the Patent Office Society 425 (1984)

*Intellectual Property and Space Activities* (co-author), 13 Journal of Space Law 8 (1985).

*Don't Restrict Innovation*, Medical Marketing and Media (December 1986)

*Research-Based Pharmaceutical Companies:  The Need for Improved Patent Protection Worldwide*, 2 Journal of Law and Technology 307 (1987)

*Patent Piracy*, 1 Nexus 6 (Scientific Apparatus Makers Association 1987)

*Pharmaceutical Manufactures Applaud the World Health Organization on its 40th Birthday*, World Diplomatic Bulletin (April/May 1988)

Comment on Drug Advertising, 319 The New England Journal of Medicine 798 (September 22, 1988)

*Pharmaceutical Patent Ills*, 9 World Link 24 (November 1988)

*State Regulation of Biotechnology in the USA*, 7 Trends in Biotechnology 63 (1989)

*Fair Trade Practices for U.S. Pharmaceuticals*, 55 American Society for Microbiology News 526 (1989)

*Research Questions in Pharmaceutical Economics*, 1 Journal of Research in Pharmaceutical Economics 51 (University of Mississippi 1989)

*From Patents to Products, U.S. is Strong in Genetically Engineered Medicines*, 24 Hospital Pharmacy 753 (September 1989)

*Facts and Pseudofacts:  Setting the Record Straight*, Proceedings of the 7th International Conference on Pharmaceutical Medicine, Madrid, Spain, September 23-26, 1990 (Prous Science Publishers 1990)

Guest column:  *Doctors, Drug Industry Are Responsible*, USA TODAY, page 12A (December 14, 1990)

*The Pharmaceutical Industry and Pricing:  Facts and Pseudofacts*, 3 Journal of Research in Pharmaceutical Economics 7 (1991)

*Executive Prophecies:  Global Pharmaceuticals 2001* (co-author), 11 Pharmaceutical Executive 40 (January 1991)

*The Uruguay Round of Trade Negotiations and Intellectual Property*, Proceedings of the ABA National Institute on Uruguay Round Negotiations, Washington, D.C. (March 21-22, 1991)

*For Better International  Protection*, 26 Les Nouvelles 75 (Licensing Executives Society June 1991)

*Pharmaceutical Manufacturers and Self-Regulation of Drug Advertising and Promotion*, 22 Journal of Drug Issues 235 (1992)

*Executive Prophecies:  Pharmaceuticals in the EC in 2002* (co-author), 12 Pharmaceutical Executive 51 (February 1992)

Guest column:  *Streamlining Drug Approvals:  A Solution Whose Time Has Come*, The New Republic, page 20 (June 1, 1992)

*The Pharmaceutical Industry and Health Reform*, 69 The Maryland Pharmacist 25 (April 1993)

*Global Intellectual Property Law is Dampening Piracy*, Corporate Legal Times Roundtable, page 37 (June 1993)

*Pharmaceutical Companies as a Positive Force for Change*, Health Affairs, page 148 (Fall 1993)

*Should the Government Reform Drug Pricing Policies?*, 59 American Society for Microbiology News 273 (June 1993)

*Trilateral Cooperation in Patents: Future Visions Based on Past Successes*, Proceedings of the Symposium at the European Patent Office Celebrating the 10th Anniversary of Trilateral Cooperation, page 21 (European Patent Office 1993)

*The Promises and Challenges of Pharmaceutical Biotechnology*, page 50, The Biotechnology Report (1993/1994)

*The Need for Health Care Reform*, 27 Health Systems Review 5 (Federation of American Health Systems May/June 1994)

*Health Care Reform and the Pharmaceutical Industry*, a chapter in the book U.S. Health Care in Transition (Hanley & Belfus 1994)

*Price Controls and Drug Research*, 1 Pharmaceutical News 32 (September 1994)

*Biomedical Research: The Private Sector*, 8 The FASEB Journal 1214 (Federation of American Societies for Experimental Biology 1994

*Let the Market Decide Who Gets Discounts*, 28 Health Systems Review 2 (January/February 1995)

*Executive Prophecies II, Creating Opportunities in the New Reality*, 15 Pharmaceutical Executive 48 (February 1995)

Letter on Drug Marketing, 322 The New England Journal of Medicine 1032 (April 13, 1995)

*Health Care Reform and Pharmaceutical Innovation*, 29 Drug Information Journal 1077 (1995)

*Trade Talks Benefit Patients and Patents*, The International Review of World Trade, page 101 (Sterling Publications Limited, London 1996)

*Morality versus Progress: The Gene Patent Debate*, Script Magazine, page 38 (February 1996)

*Commitment to Innovation*, Proceedings of the American College of Cardiology Industry Forum `96, page 44, (Bethesda, Maryland, February 11-12, 1996)

*The Importance of Intellectual Property Protection to the American Research-Intensive Pharmaceutical Industry*, (co-author), 31 Columbia Journal of World Business 38 (Columbia University Spring 1996), republished in 27 CHEMTECH 46 (American Chemical Society, May 1997)

*An Unprecedented Decade of Progress*, 8 Journal of Research in Pharmaceutical Economics (1996)

Letter *Defending Patents*, The Economist, page 8 (July 6-12, 1996)

*20 Years of Progress: Getting Drugs to Patients Sooner*, 1 Regulatory Affairs Focus 18 (Regulatory Affairs Professional Society September 1996)

*Remedies under Patents on Medical and Surgical Procedures*, 78 JPTOS 789 (November 1996), translated into Japanese and republished in 28 IIP Forum 26 (Japan Institute of Intellectual Property, Winter 1997)

*IP Protection Increases R&D Worldwide*, 31 Les Nouvelles 159 (December 1996)

*The Economic Espionage Act: A New Federal Regime of Trade Secret Protection*, (co-author), 79 JPTOS 191 (March 1997).

*U.S. Supreme Court Upholds Key Patent Law Doctrine*, Legal Backgrounder, Washington Legal Foundation (April 4, 1997)

*The State of Patent Litigation* (panelist), Legal Time Special Report on Intellectual Property, page 19 (April 7, 1997)

*The World Intellectual Property Organization: A United Nations Success Story* (co-author), 159 World Affairs 104 (Fall 1997), republished in 79 JPTOS (1997)

Sixth Biennial Patent System Major Problems Conference (panelist), 38 IDEA (Franklin Pierce Law Center 1997)

*Intellectual Property Protection – the Key to Human Progress* to be published by the United States Information Agency in a brochure for Developing Countries (1997)

*World Patent System: Circa 20XX A.D.*, 38 IDEA 529 (Franklin Pierce Law Center 1998), reprinted in 80 Journal of the Patent & Trademark Office Society 523 (1998) and in 31 Intellectual Property Law Review 3 (West Group 1999)

*Recent Developments in U.S. Patent Law*, 30 FORUM 24 (Japan Institute of Intellectual Property (1997)

*Federal Circuit Maintains Close Oversight of Patent Office Decisions*, Counsel's Advisory, Washington Legal Foundation (June 5, 1998)

*Independent Patent Review for 'Pipeline' Drugs would advance Intellectual Property*, Legal Backgrounder, Washington Legal Foundation (August 7, 1998)

*The Economic Espionage Act: A Prosecution Update* (co-author), 80 JPTOS 369 (1998).

*The Creation of the Federal Circuit & Searching for Worldwide Prior Art*, Sidebars in the Book *Principles of Patent Law* (Foundation Press 1998)

*The Biodiversity Convention and Intellectual Property Rights: Conflict or Harmony?* Patent World, Issue 106, Page 27 (October 1998)

*The Biodiversity Convention and Intellectual Property Rights*, Proceedings of the 37th Congress of the Association Internationale pour la Protection de la Propriete Industrielle, Rio de Janeiro 1998 (AIPPI Yearbook 1998, Page 120)

*The Importance of Patents to Intellectual Creativity,* Proceedings of the Keio University KIEP Conference No. 4: Intellectual Assets in an Era of Intellectual Creativity, page 52 (in Japanese), Awashima Island, Japan (January 1999)

*The Economic Espionage Act: Federal Protection for Corporate Trade Secrets* (co-author),16 The Computer Lawyer 14 (March 1999)

*Intellectual Property in an Era of Intellectual Renaissance,* 3 Intellectual Property News 10 (Federalist Society, Spring 1999)

*Overview of the Hatch-Waxman Act and Its Impact on the Drug Development Process,* 54 Food and Drug Law Journal 187 (1999)

*Wall Street's Untapped Patent Opportunities* (co-author), Chapter 9 in the book Hidden Value: Profiting from the Intellectual Property Economy (Euromoney 21st Century Books 1999)

*TRIPs is Here to Stay,* Patent World's Biotechnology Supplement, page22 (November 1999)

*National Obligations Under Intellectual Property Treaties: The Beginning of a True International Regime,* 9 Federal Circuit Bar Journal 591 (2000)

*Intellectual Property: A Guide for Engineers* (co-author), American Society of Mechanical Engineers, ASME Press (2001)

*Increasing Certainty in Patent Litigation: The Need for Federal Circuit Approved Pattern Jury Instructions* (co-author), 10 Federal Circuit Bar Journal 273 (2001)

*High Court Upholds Utility Patents on Genetically-Enhanced Seeds*, Washington Legal Foundation Legal Backgrounder, Vol. 17, No. 5 (2002)

*The Duty of Candor & Good Faith to the United States Patent & Trademark Office,* Course Materials, 17th Annual Intellectual Property Law Conference, ABA Section of Intellectual Property Law (April 12, 2002)

*Intellectual Property Implications of the Human Genome Project,* Proceedings of the Conference on Intellectual Property Implications of the Human Genome Project, Center for Interdisciplinary Studies, Washington University School of Law (April 13, 2002)

*The U.S. First-To-Invent System Has Provided No Advantage To Small Entities,* 84 Journal of the Patent & Trademark Office Society 425 (June 2002)

*Post-Grant Review of Patents: Enhancing the Quality of the Fuel of Interest* (co-author), 43 IDEA 83 (Franklin Pierce Law Center 2002), Reprinted in 85 Journal of the Patent and Trademark Office Society 231 (2003)

*The Evolution of Gene Patents Viewed from the United States Patent Office*, Chapter 2, Volume 50, ADVANCES IN GENETICS (Academic Press 2003)

*Patent Harmonization Through the UN: International Progress or Deadlock?,* Legal Backgrounder, Washington Legal Foundation (December 19, 2003); Reprinted in 86 Journal of the Patent and Trademark Office Society 5 (2004)

*Celebrating the Life of Isaac Fleishman,* 86 Journal of the Patent and Trademark Office Society 87 (2004)

*Small Entities and the "First to Invent" Patent System: An Empirical Analysis,* Washington Legal Foundation Critical Legal Issues, No. 129 (April 2005)

*The First-to-Invent Rule in the U.S. Patent System has provided No Advantage to Small Entities,* 20th Annual Intellectual Property Law Conference, ABA Section of Intellectual Property Law Course Materials, Vol. 1, Page 133 (April 14, 2005), Reprinted in 87 Journal of the Patent and Trademark Society 514 (2005), translated into Japanese and Republished in 50 AIPPI-Japan 15 (2005)

Foreword to *Software Patents in Europe: Promoting Innovation, Investment & Disclosure* by Beth Z. Shaw, Washington Legal Foundation Critical Legal Issues, No. 130 (June 2005)

GJM: 02/02/06

# EXHIBIT C

<u>**EXHIBIT C**</u>

**THE HONORABLE GERALD J. MOSSINGHOFF
APPEARED AS A PRINCIPAL WITNESS IN THE FOLLOWING
CONGRESSIONAL HEARINGS**

Joint Hearing before the Senate Committee on Commerce, Science, and Transportation and the House Committee on Science and Technology, on "Federal Patent Policy," 97th Congress, 1st Session (September 30, 1981).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R.1937, the "Patent Term Restoration Act of 1981," 97th Congress, 1st Session (November 12, 1981).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R.4564, "Patent Policy," 97th Congress, 2nd Session (March 2, 1982).

Hearing before the Subcommittee on Commerce, Justice, State and the Judiciary, House Committee on Appropriations, on the Patent and Trademark Office FY 1983 Appropriations, 97th Congress, 2nd Session (March 4, 1982).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R. 5602, a "Bill to Authorize Appropriations to the Patent and Trademark Office for FY 1983," 97th Congress, 2nd Session (March 11, 1982).

Hearing before the Subcommittee on Commerce, Justice, State and the Judiciary, Senate Committee on Appropriations, on the Patent and Trademark Office FY 1983 Appropriations, 97th Congress, 2nd Session (March 18, 1982).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R. 5154, "Lanham Trademark Act Amendment," 97th Congress, 2nd Session (July 21, 1982).

Hearing before the Subcommittee on Commerce, Justice, State and the Judiciary, House Committee on Appropriations, on the Patent and Trademark Office FY 1984 Budget, 98th Congress, 1st Session (January 30, 1983).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on the Judiciary, on the Patent and Trademark Office 1983 Legislative Program, 98th Congress, 1st Session (April 7, 1983).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on the Patent and Trademark Office, 98th Congress, 1st

Session (April 20, 1983).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on the Judiciary, on S.1306, the "Patent Term Restoration Act of 1983," 98th Congress, 1st Session (June 22, 1983).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R.1028 "Copyright Protection for Semiconductor Chips," 98th Congress, 1st Session (August 3, 1983).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on the Judiciary, on S.1841, the "National Productivity and Innovation Act of 1983," 98th Congress, 1st Session (October 26, 1983).

Hearing before the Subcommittee on Crime, House Committee on the Judiciary, on H.R.2447, the "Trademark Counterfeiting Act of 1984," 98th Congress, 1st Session (November 3, 1983).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R.1027, the "Record Rental Amendment of 1983," and H.R. 1029, the "Consumer Video Sales-Rental Amendment of 1983," 98th Congress, 1st Session (December 13, 1983).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R.3285, H.R.3286, H.R.4525 and H.R.4527 on Inventors' Rights, H.R.2610, the "Patent Law Amendments of 1983," H.R.3462 on Small Businesses and Independent Inventors, H.R.4462, the "Patent and Trademark Office Procedures Act of 1983," H.R.4528 on Interference Practice, H.R.3502, the "Patent Term Restoration Act of 1983," and H.R.3577, H.R.4526 and H.R.4814 on Patented Processes, 98th Congress, 2nd Session (March 28, 1984).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on the Judiciary, on S.1734, the "Jukebox Bill," 98th Congress, 2nd Session (June 20, 1984).

Hearing before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, House Committee on the Judiciary, on H.R.3605, the "Drug Price Competition and Patent Term Extension Act of 1984," 98th Congress, 2nd Session (June 27, 1984).

Hearing before the Senate Committee on Labor and Human Resources on Legislation to Permit the Export of Medicines not yet Approved in the United States, 99th Congress, 1st Session (June 5, 1985).

Hearing before the Consumer Subcommittee, Senate Committee on Commerce, Science and Transportation, on Product Liability, 99th Congress, 1st Session (June 18, 1985).

Hearing before the House Committee on Ways and Means on Section 936 of the Internal Revenue Code, 99th Congress, 1st Session (July 11, 1985).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on Prescription Drug Prices, 99th Congress, 1st Session (July 15, 1985).

Hearing before the Subcommittee on Oversight and Investigations, House Committee on Energy and Commerce, on Barriers to U.S. Exports, 99th Congress, 1st Session (July 26, 1985).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on the Judiciary, on S.1543, the "Process Patent Amendment of 1985," 99th Congress, 1st Session (October 23, 1985).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, House Committee on Appropriations, on FDA User Fees, 99th Congress, 2nd Session (April 16, 1986).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, House Committee on Appropriations, on FDA Appropriations for FY1988, 100th Congress, 1st Session (April 6, 1987).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, Senate Committee on Appropriations, on FDA User Fees, 100th Congress, 1st Session (April 8, 1987).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on Prescription Drug Prices, 100th Congress, 1st Session (April 21, 1987).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on the Judiciary, on S.573, the "Process Patent Act of 1987," 100th Congress, 1st Session (April 22, 1987).

Hearing before the Subcommittee on International Trade, Senate Committee on Finance, on S.368, Drug-Diversion Legislation, 100th Congress, 1st Session (June 15, 1987).

Hearing before the Subcommittee on Antitrust, Monopolies and Business Rights, Senate Committee on the Judiciary, on Generic Drugs, 100th Congress, 1st Session (October 21, 1987).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, House Committee on Appropriations, on FDA Appropriations for FY1989, 100th Congress, 2nd Session (April 19, 1988).

Hearing before the Subcommittee on Oversight and Investigations, House Committee on Energy and Commerce, on Unfair Trade Practices, 101st Congress, 1st Session (March 1, 1989).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, House Committee on Appropriations, on FDA Appropriations for FY1990, 101st Congress, 1st Session (April 13, 1989).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, Senate Committee on Appropriations, on FDA Appropriations for FY1990, 101st Congress, 1st Session (April 20, 1989).

Hearing before the Senate Special Committee on Aging on Prescription Drug Prices, 101st Congress, 1st Session (July 18, 1989).

Hearing before the Subcommittee on Courts, Intellectual Property and the Administration of Justice, House Committee on the Judiciary, on H.R.1556, the "Transgenic Animal Patent Reform Act," 101st Congress, 1st Session (September 13, 1989).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, House Committee on Appropriations, on FDA Appropriations for FY1991, 101st Congress, 2nd Session (March 27, 1990).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on Medicaid Prescription Drug Purchasing, 101st Congress, 2nd Session (September 14, 1990).

Hearing before the Subcommittee on Health for Families and the Uninsured, Senate Committee on Finance, on the Medicaid Drug Reimbursement Program, 101st Congress, 2nd Session (September 17, 1990).

Hearing before the Senate Committee on Labor and Human Resources on Pharmaceutical Promotion, 101st Congress, 2nd Session (December 12, 1990).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on the Judiciary, on the North American Free Trade Agreement ("NAFTA"), 102nd Congress, 1st Session (May 14, 1991).

Hearing before the Subcommittee on Intellectual Property and Judicial Administration, House Committee on the Judiciary, on International Aspects of Intellectual Property Protection, 102nd Congress, 1st Session (May 15, 1991).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, House Committee on Appropriations, on FDA Appropriations for FY1992, 102nd Congress, 1st Session (May 16, 1991).

Hearing before the Subcommittee on Patents, Copyrights and Trademarks, Senate Committee on

the Judiciary, on S.654 the "Biotechnology Patent Protection Act of 1991," 102nd Congress, 1st Session (June 12, 1991).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on H.R.2507, the "Food, Drug, Cosmetic, and Device Enforcement Amendments of 1991," 102nd Congress, 1st Session (July 17, 1991).

Hearing before the House Committee on Ways and Means on International Competitiveness of U.S. Industry, 102nd Congress, 1st Session (July 18, 1991).

Hearing before the Senate Committee on Governmental Affairs on the Food and Drug Administration, 102nd Congress, 1st Session (July 25, 1991).

Hearing before the Subcommittee on Technology and Competitiveness, House Committee on Science, Space, and Technology, on Trade and Technology, 102nd Congress, 1st Session (July 30, 1991).

Hearing before the Subcommittee on Hospitals and Health Care, House Committee on Veterans' Affairs, on H.R.2890, the " Omnibus Budget Reconciliation Act of 1990," 102nd Congress, 1st Session (September 11, 1991).

Hearing before the Senate Committee on Labor and Human Resources on S.1729 on Prescription Drug Rebates, 102nd Congress, 1st Session (October 16, 1991).

Hearing before the Senate Committee on Labor and Human Resources on S.2060, the "Orphan Drug Amendments of 1991," 102nd Congress, 2nd Session (March 3, 1992).

Hearing before the Subcommittee on Trade, House Committee on Ways and Means, on the International Competitiveness of the U.S. Pharmaceutical Industry, 102nd Congress, 2nd Session (April 7, 1992).

Hearing before the Senate Committee on Labor and Human Resources on S.2135, the "Food, Drug, Cosmetic, and Device Enforcement Authorities Act," 102nd Congress, 2nd Session (May 19, 1992).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on H.R.2890, H.R. 3405 and H.R. 5614 on Prescription Drug Prices and Rebates, 102nd Congress, 2nd Session (July 31, 1992).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on FDA User Fees, 102nd Congress, 2nd Session (August 10, 1992).

Hearing before the Senate Committee on Labor and Human Resources on FDA User Fees, 102nd Congress, 2nd Session (September 22, 1992).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on the General Accounting Office Report comparing U.S. and Canadian Prescription Drug Prices, 103rd Congress, 1st Session (February 22, 1993).

Hearing before the Senate Special Committee on Aging on NIH Cooperative Research and Development Agreements ("CRADAs"), 103rd Congress, 1st Session (February 24, 1993).

Hearing before the Subcommittee on Technology, Environment and Aviation, House Committee on Science, Space, and Technology, on the Government's Role in Advancing Medical Technology, 103rd Congress, 1st Session (June 16, 1993).

Hearing before the Subcommittee on Health, House Committee on Ways and Means, on a Medicare Drug Benefit, 103rd Congress, 1st Session (June 22, 1993).

Hearing before the Senate Special Committee on Aging on the Pharmaceutical Drug Market, 103rd Congress, 1st Session (November 16, 1993).

Hearing before the Senate Committee on Labor and Human Resources on Health Care Reform, 103rd Congress, 1st Session (November 18, 1993).

Hearing before the Subcommittee on Health and the Environment, House Committee on Energy and Commerce, on Health Care Reform, 103rd Congress, 2nd Session (February 8, 1994).

Hearing before the Subcommittee on Trade, House Committee on Ways and Means, on the GATT Uruguay Round Trade Agreements, 103rd Congress, 2nd Session (February 22, 1994).

Hearing before the Subcommittee on Agriculture, Rural Development, Food and Drug Administration and Related Agencies, House Committee on Appropriations, on FDA Appropriations for FY1995, 103rd Congress, 2nd Session (March 16, 1994).

Hearing before the Subcommittee on Agriculture, Rural Development and Related Agencies, Senate Committee on Appropriations, on FDA Appropriations for FY1995, 103rd Congress, 2nd Session (April 7, 1994).

Hearing before the Subcommittee on Intellectual Property and Judicial Administration, House Committee on the Judiciary, on H.R.4307 on Process Patents, 103rd Congress, 2nd Session (May 5, 1994).

Hearing before the Senate Committee on Governmental Affairs on Prescription Drug Price Controls, 103rd Congress, 2nd Session (July 27, 1994).

Joint Hearing before the Subcommittee on Intellectual Property and Judicial Administration, House Committee on the Judiciary, and the Subcommittee on Patents, Copyrights and

Trademarks, Senate Committee on the Judiciary, on the Intellectual Property Provisions of the GATT Uruguay Round Trade Agreements, 103rd Congress, 2nd Session (August 12, 1994).

Hearing before the Subcommittee on Intellectual Property and Judicial Administration, House Committee on the Judiciary, on Establishing the Patent and Trademark Office as a Government Corporation, 104th Congress, 1st Session (1995).

Hearing before the Senate Committee on the Judiciary on the Uruguay Round Agreements Act ("URAA"), 104th Congress, 2nd Session (February 27, 1996).

Hearing before the Senate Committee on the Judiciary on Intellectual Property Protection for Pharmaceuticals, 104th Congress, 2nd Session (March 5, 1996).

Hearing before the Subcommittee on Agriculture, Rural Development, Food and Drug Administration and Related Agencies, House Committee on Appropriations, on FDA Appropriations for FY1997, 104th Congress, 2nd Session (April 16, 1996).

Hearing before the Subcommittee on Intellectual Property, Committee on the Judiciary, United States Senate, on International Patent Harmonization, 109th Congress, 1st Session (July 26, 2005)

**GJM:07/26/05**

- 7 -

# EXHIBIT D

## <u>EXHIBIT D</u>

### PATENT CASES IN WHICH
### HONORABLE GERALD J. MOSSINGHOFF
### TESTIFIED AS AN EXPERT WITNESS IN COURT OR IN DEPOSITION

*Merial Limited, et al.\* v. Phoenix Scientific, Inc., et al.*, Civil Action No. 98-0955-CV-W-2; United States District Court for Western District of Missouri, Western Division.

*Micro Solutions, Inc.\* v. Hewlett-Packard Company*, Civil Action No. 3:98CV50135; United States District Court for the Northern District of Illinois Western Division (Rockford, Illinois); *Micro Solutions, Inc. v. Computer Connections America, Inc.*, Civil Action No. 3:98CV50140; United States District Court for the Northern District of Illinois Western Division (Rockford, Illinois).

*Barbour Well Surveying Corporation\* v. Claude Laval Corporation, et al.*, Case No. CV-F-98-5112 OWW-SMS; United States District Court for the Eastern District of California (Fresno, California).

*AMP Incorporated, et al.\* v. Teradyne, Inc.*, Civil Action No. 4:CV-98-0975, United States District Court for the Middle District of Pennsylvania.

*Phillips Petroleum v. Tosco Corporation and Bayway Refining Company\**, Civil Action No. 98-336, United States District Court for the District of Delaware.

*Penalty Kick Management Ltd. v. The Coca-Cola Company\**, Civil Action No. 1 97-CV-1821, United States District Court for the Northern District of Georgia, Atlanta Division.

*Tutco, Incoprorated\* v. NOVA, Industries, Inc.*, United States District Court for the Eastern District of Wisconsin.

*Holcomb HealthCare Services L.L.C., et al.\* v. Nikken USA, Inc., et al.*, Civil Action No. 3-99 0543, United States District Court for the Middle District of Tennessee, Nashville Division.

*Flex Products,Inc., and Petrochem Marketing, Inc. v. Advantage Sealing Systems, Inc.\**, United States District Court for the Southern District of California, Civil Action No. 00 CV 0231 LEG (POR).

*Dentsply International Inc.\* v. Great White, Inc.*, United States District Court for the Middle District of Pennsylvania, Case No. 1:CV 99-1346.

*Oxford Gene Technology, Ltd. v. Affymetrix, Inc.,\** United States District Court for the District of Delaware, Civil Action No. 99-348 JJF.

*KLA-Tenor Corporation v. Therma-Wave, Inc.\**, United States District Court for the Northern District of California, Case No. C 98-03391 CAL.

*Sun Microsystems, Inc.\* v. Kingston Technology Company, Inc.,* United States District Court for the Northern District of California, San Francisco Division, Case No. C99003610 VRW ENE.

*DuPont Pharmaceuticals & DuPont Contrast Imaging\* v. Molecular Biosystems, Inc., Mallinckrodt, Inc. & Nycomed Imaging AS,* United States District Court for the District of Delaware, Civil Action No. 99-273 (JJF).

*Caterpillar, Inc.\* v. Sturman Industries,* United States District Court, Central District of Illinois, Case No. 99-CV-1201.

*Micron Technology, Inc.\* v. Rambus,* United States District Court for the District of Delaware, Civil Action No. 00-792-RRM.

*Valeo Electrical Systems, Inc.\* v. Siemens Automotive Corporation,* United States District Court for the District of Michigan Southern Division, Civil Action No. 99-CV-40430.

*City of Hope National Medical Center v. Genentech, Inc.,\** Superior Court of Los Angeles, Case No. BC215152.

*Jack A. Ekchian v. Home Depot, Inc., Lucas Automation & Control Engineering, Inc., Macklanburg-Duncan Company\* MTI Corporation and Zircon Corporation,* United States District Court for the Eastern District of Virginia (Alexandria), Civil Action No. 97-198-A.

*Transclean Corporation, James P. Viken, Jon A. Long and Donald E. Johnson v. Wynn Oil Company and Petram Marketing,* Inc.\* United States District Court for the District of Minnesota, Civil No. 00-CV-2135 MJD/SRO.

*Aesculap, AG & Co. KG, Aesculap Inc. and Karl-Dieter Lerch, M.D\*. v. Walter Lorenz Surgical, Inc.,* United States District Court for the Northern District of California, San Jose Division, Civil Action No. C00-02394

*Cambrian Consultants, Inc. v. Maxtor Corporation,\** United States District Court for the Central Division of California, Civil Case No. 00-CV-4580

*Applera Corporation, MDS Inc. & Applied Biosystems/MDS Sciex\* v. Micromass UK LTD & Micromass, Inc.,* United States District Court for the District of Delaware, Civil Action No. 00-CV-105

*Intuitive Surgical, Inc. and International Business Machines Corporation v. Computer Motion, Inc.,\** United States District Court for the District of Delaware (Wilmington), Civil Action No. 01-CV-203

*Greene, Tweed of Delaware v. DuPont Dow Elastomers, L.L.C.\* and E.I. DuPont de Nemours and Co., Inc.,\** United States District Court for the Eastern District of Pennsylvania, Civil Action No. 00-CV-3058

*Parental Guide of Texas Inc.. v. Funai Corp. Inc. et al. (Matsushita Electric Corporation of America,\* Toshiba American Consumer Products, Inc.,\* and Sharp Corporation\* )*, United States District Court for the Eastern District of Texas, Marshall Division, Civil Action No. 2-00CV262-TJW

*Callaway Golf Company\* v. Dunlop Slazenger Group Americas, Inc, d/b/a MAXFLI.*, United States District Court for the District of Delaware, Civil No. 01-669 (RRM)

*Augustine Medical Inc. v. Mallinckrodt, Inc. Mallinckrodt Medical, Inc. Nellcor Puritan Bennett, Inc. Tyco Healthcre Group, L.P., Gaymar Industries, Inc., and Level 1, Inc.,\** United States District Court for the District of Delaware, Civil Action No. 01-387 SLR

*eSpeed, Inc., and Electronic Trading Systems Corporation v. The New York Mercantile Exchange,\** United States District Court for the Southern District of New York, Civil Action 00-CV-7431 (KMW)

*Casco Products Corporation v. Valeo Vision S.A.S.,\** United States District Court for the Southern District of New York, Civil Case # 02-CV-2327 (KMW)

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Company,\** United States District Court for the Southern District of Maryland, Case Nos. AW01-CV-1504 and AW02-CV-2504

*Sightsound.com, Inc. v. N2K, Inc., CDNow, Inc.\* and CDNow Online, Inc.,\** United States District Court for the Western District of Pennsylvania, Civil Action No. 98-0118

*Verizon California Inc.\* v. Ronald A. Katz Technology Licensing, L.P.*, United States District Court for the Central District of California, Case No. CV-01-9871 RGK (RCx)

*Thomson\* v. Gemstar-TV Guide International, Inc., StarSight Telecast, Inc. and TVG-PMC, Inc.*, United States District Court for the Northern District of Georgia, Atlanta Division, Master File No. MDL-1274-WBH

*Central Sprinkler Company\* v. The Reliable Automatic Sprinkler Co., Inc.*, United States District Court for the Southern District of New York, Civil Action No. 03-CV-0112

*Quickie LLC v. Medtronic, Inc.,\** United States District Court for the Southern District of New York, Civil Action No. CV 1157 (GEL)

*John Mezzalingua Associations, Inc. v. Corning Gilbert, Inc.,\** United States District Court for the Western District of Wisconsin, Civil No. 03-C-0354 S

*V.P. Intellectual Property, L.L.C. v. Nobel Biocare USA, Inc., Implant Innovations, Inc.\*, Implant Innovations International Corporation, Astra Tech Inc. and Imtec Corporation*, United States District court for the District of New Jersey, Civil Action No. 99 Civ 3136

*Puritan-Bennett Corp. and Mallinckrodt Inc.\* v. Penox Technologies, Inc. and Essex Industries, Inc.* United States District Court for the Southern District of Indiana Indianapolis Division, Civil Action No. IP 02-0762 C M/S

*Corning Incorporated\* v. AFN, LLC, Katz Family Limited Partnership; Astarte Fiber Networks, Inc. and Tellium, Inc.*, American Arbitration Association, New York, New York, No. 12 117 01757 02

*AT&T\* v. Microsoft Corporation*, United States District Court for the South District of New York, Case No. 01 CV 4872 (WHP)

*Izumi Products Company v. Koninklijke Philips Electronics N.V. and Philips Electronics North America Corporation,\** United States District Court for the District of Delaware, Case No. C.A. 02-156-(SLR)

*Unova, Inc. v. Acer, Incorporated, et al.,\** United States District Court for the Central District of California, Case No. 02-03772 ER (MANx)

*Digital Control Incorporated v. Charles Machine Works*,\* United States District Court for the Western District of Washington at Seattle, Civil Case No. CIV03-103R

*EMC Corporation\* v. Columbia Data Products, Inc.,* United States District Court for the District of Utah, Central Division, Civil Action No. 2:01CV00312C

*Gerald E. Frugoli v. Douglas V. Fougnies, Daniel B. Harned, Larry Day, Freedom Wireless, Inc., Wireless Pathways, Inc. f/k/a Cellexis International, Inc.,\** United States District Court for the District of Arizona, CIV 02-0957-PHX(RCB)

*Plasma Physics Corporation v. Agilent Technologies, Inc.\** (Case No. 02-CV-3456 – LDW/WDW) and *LSI Logic Corporation\** (Case No. 02-3462 – LDW/WDW) United States District Court for the Eastern District of New York

*St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc., Canon U.S.A., Inc. and Fuji Photo Film Co., Ltd.\*, Fuji Photo Film U.S.A., Inc.\* and Fujifilm America, Inc.,\** United States District Court for the District of Delaware, Civil Action No. 03-241-JJ

*Robert Bosch GmbH v. TRW Automotive Inc.\*, TRW Vehicle Safety Systems, Inc.\* and TRW Automotive US LLC,\** United States District Court for the District of Arizona (Phoenix), Civil Docket No. 03-CV-45

*Plasma Physics Corporation v. STMicroelectronics, Inc.,\** United States District Court for the Eastern District of New York, CV-02-3475 (LDW) WDW) and *Plasma Physics Corporation v. Analog Devices, Inc.\** United States District Court for the Eastern District of New York, Civ. No. 02-3484 (LDW) (WDW)

*Metrologic Instruments\* v. PSC Inc.,* United States District Court for the Eastern District of New Jersey, Civil Action No. 99-4876 (JBS) (AMD)

4

*Overture Services, Inc.\* v. FindWhat.com, Inc.*, United States District Court for the Central District of California, Southern Division, Civil Action No. SACV 03-00685 CJC (EX)

*Taltech Limited,\* TAL Apparel Limited\* and The Apparel Group Limited\* v. Esquel Apparel, Inc. and Esquel Enterprises Limited*, United States International Trade Commission, Washington, D.C., Investigation No. 337-TA-517

*Scimed Life Systems, Inc. v. Medtronic Vascular, Inc.\* and Eric C. Martin,* United States District Court for the District of Columbia, Civil Action No. 1:01 CV 02015 (RJL)

*Shire Laboratories, Inc. v. Barr Laboratories Inc.,\** United States District Court for the Southern District of New York (Foley Square), Civil Docket No. 1:03-cv-01219-PKC

*Praxair, Inc.\* v. ATMI Inc.,* United States District Court for the Southern District of New York, Civil Action No. 03 CV 5161 (RO)

*WeddingChannel.com, Inc.\* v. The Knot, Inc.* United States District Court for the Southern District of New York (Foley Square), Civil Case # 1:03-cv-07369-RWS

*CIVIX-DII, LLC v. Verizon Information Services Inc.,\* Expedia, Inc.\* and Travelscape, Inc.,* United States District Court for the Northern District of Illinois, Case No. 03-C-3792

*BIAX Corporation v. Texas Instruments\*, Inc. iBiquity Digital Corporation\*, Kenwood Corporation\* and Kenwood U.S.A. Corporation\*,* United States International Trade Commission, Investigation 337-TA-529

*Specialty Minerals, Inc. v. Pluess-Staufer AG, Pluess-Staufer Industries, Inc. and Omya, Inc.,\** United States District Court for the Southern District of New York, Civil Action No. 98 Civ. 7775 (VM) (MHD)

*Minerals Technologies, Inc. and Specialty Minerals, Inc. v. Omya, A.G., Omya Industries, Inc. and Omya, Inc.,\** United States District Court for the Southern District of New York, Civil Action No. 04-CV-04484 (VM)

*SPS Technologies Corporation v. Motorola Inc.\*; Arthur Anderson Corporation, LL, Inc.; Manugistics, Inc.; Carlos Baradello; and Len DeBarros*, Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 02-003159-12

*Vantage Controls, Inc. v. Lutron Electronic Co., Inc.,\** United States District Court for the District of Utah, Central Division, Civil No. 2:03-CV-004888

*PHT Corporation\* v. Invivodata, Inc.*, United States District Court for the District of Delaware, Civil Action No. 04-60 (GMS)

*Sky Technologies LLC v. IBM Corporation\* and i2, Incorporated,* United States District Court for the Eastern District of Texas Marshall Division, Civil Action No. 2-03CV454

*In re Abbott Labs\* Norvir Antitrust Litigation,* United States District Court for the Northern District of California, Oakland Division, Case Nos. C-04-1511 CW and C-04-4203 CW

*Digi International, Inc. v. Lantronix, Inc.\*,* United States District Court for the District of Minnesota, Civil Action No. 0:04-cv-01560-DWF-SRN

*Genentech, Inc. and Tercica, Inc. v. Insmed Incorporated\* and Celtrix Pharmaceuticals, Inc.,* United States District Court for the Northern District of California (Oakland), Civil Docket No. 4:04-cv-05429-CW

*Taltech Limited\* v. Esquel Enterprises, Ltd.,* United States District Court for the Western District of Washington at Seattle, Civil Action No. C04-974Z

*Caterpillar Inc\*. v. Navistar International Transportation Corp, International Truck & Engine Corp., Newstream Enterprises, LLC, Sturman Industries, Inc., and Sturman Engine Systems, LLC,* Circuit Court for the Tenth Judicial Circuit, Peoria County, Illinois, Civil Action No. 02 MR 22

*Matsushita Electrical Industrial Co., Ltd. v. Samsung Electronics Co., Ltd.,\* Samsung Electronics America, Inc.,\* Samsung Semiconductor, Inc.,\* and Samsung Austin Semiconductor, L.L.C.,\** United States District for the District of New Jersey, Civ. Action No. 02-CV-336(GEB)(JJH)

*Leggett & Platt, Inc. and Leggett & Platt Property Management Company v. Vutek, Inc\*. and Electronics for Imaging Inc.,* United States District Court for the Eastern District of Missouri (Eastern Division)

*Lucent Technologies, Inc. v. Dell Computer Corporation\* et al.,* United States District Court for the Southern District of California, Case No. 02-CV-2060

*Eaton Corporation v. ZF Meritor LLC, Arvinmeritor, Inc.\* and ZF Friedrichshafen AG,\** United States District Court for the Eastern District of Michigan, Case No. 03-74844

*Nutrition 21, LLC\* v. General Nutrition Corporation,* United States District Court for the Eastern District of Texas, Civil Action No. 6:05-CV-228-LED (ED Texas)

*In the Matter of Certain Voltage Regulators, Components thereof and Products Containing Same,* The United States International Trade Commission, Investigation No. 337-TA-564

*DE Technologies, Inc. v .Dell Inc.,* * United States District Court for the Western District of Virginia, Civil Action No. 7-2004CV00628

*Verizon Services Corp. and Verizon Laboratories Inc. v. Vonage Holdings Corp. and Vonage America, Inc.*, United States District Court for the Eastern District of Virginia, Case No. 1:06CV682

_____

*Retained Mr. Mossinghoff
**GJM: 01/10/07**

7

# EXHIBIT
# E

## EXHIBIT E

## LIST OF DOCUMENTS AND MATERIALS REVIEWED
## [IN ADDITION TO THE MATERIALS SPECIFICALLY CITED IN THE TEXT OF THIS EXPERT REPORT]

Complaint, October 4, 2005

First Amended Complaint, October 12, 2005

Vonage America, Inc. Answer & Counterclaims, November 3, 2005

Vonage Holdings Corp. Answer & Counterclaims, November 3, 2005

Answer to Vonage America, Inc.'s Counterclaim, November 23, 2005

Answer to Vonage Holdings Corp.'s Counterclaim, November 23, 2005

Answer to Voiceglo Holding, Inc.'s Counterclaim, December 12, 2005

Vonage America, Inc. First Amended Answer and Counterclaims, February 27, 2006

Vonage Holdings Corp. First Amended Answer and Counterclaims, February 27, 2006

Scheduling Order, January 18, 2006

Answer to Vonage America, Inc.'s Counterclaims, March 13, 2006

Answer to Vonage Holdings Corp.'s Counterclaims, March 13, 2006

Order for Dismissal Without Prejudice (Voiceglow Holdings, Inc. and TheGlobe.com,Inc.), October 3, 2006

U.S. Patents Nos. 6, 298,064; 6,304,572; 6,452,932; 6,463,052; 6,473,429; 6,633,561; and 6,665,294, and their Prosecution Histories

U.S. Patents Nos. 5,825,780; 5,991,301; 6,104,718; 6,452,928; and 6,643,282, and their Prosecution Histories

Cited U.S. Patents:    5.434.852
                       5,483,527
                       5,509,010
                       5,765,108
                       5,825,780
                       5,991,301
                       6,175,574