# EXHIBIT C

1

UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

- - - - - - - - - - - - - - -x

SPRINT COMMUNICATIONS       :

COMPANY,                    :

        Plaintiff,       :

v.                          :    No. 052433 JWL

VONAGE HOLDING CORPORATION  :    CONFIDENTIAL

and VONAGE AMERICA, INC.,   :    PURSUANT TO

        Defendants.      :    PROTECTIVE ORDER

- - - - - - - - - - - - - - -x

    VIDEOTAPED DEPOSITION OF HONORABLE GERALD J. MOSSINGHOFF, produced, sworn and examined on August 7, 2007, between the hours of 9:30 a.m. and 2:25 p.m., at the offices of Shook, Hardy & Bacon, 2555 Grand Blvd., Kansas City, Missouri, before Glenda Moeller, a Certified Court Reporter (MO & KS), Registered Merit Reporter, Certified Realtime Reporter, and a Notary Public within and for the State of Missouri, in a certain cause now pending in the United States District Court for the District of Kansas,

12

1 accountant take care of all the taxing and all
2 the rest, but my impression is that as an expert
3 witness, I probably bill less than a thousand
4 hours, but not a lot less than that. And that's
5 a ballpark estimate, because I really haven't
6 done a -- haven't done any kind of a
7 calculation.
8     Q.   Do you recall about how many hours you
9 spent on this case?
10     A.   I believe it was about 40 hours,
11 preparing and up until yesterday and we spent
12 seven or eight hours yesterday here preparing
13 for this deposition and producing a supplemental
14 report. So 40 plus the seven or eight yester --
15 from yesterday.
16     Q.   And that has all been in 2007?
17     A.   No. No.
18     Q.   Some of that time was last year?
19     A.   I think the bulk of it was last year.
20 The report was signed in early January, so the
21 bulk of the work was done in October and
22 November, I believe. My recollection, it's --

Mossinghoff, Honorable Gerald J.    CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER    August 7, 2007
Kansas City, MO

17

1    Q.    Do you commonly file supplemental
2    reports in a case?
3    A.    I wouldn't say commonly.  It's
4    certainly not unusual that I do it.  In fact, in
5    the last two weeks I've done two.  I did one
6    yesterday in this case and I did one last week
7    in another case.
8    Q.    For what reasons would you usually file
9    a supplemental report?
10   A.    If I'm asked to do so is the primary
11   reason.  If the -- if the attorney retaining me
12   asks me to do so and it's something that I can
13   give an opinion on, I will do so.
14   Q.    In this case you've been retained as an
15   expert.  What is the scope of -- of your expert
16   knowledge in this case?
17   A.    It would be patent office procedure,
18   patent office law, because all of the procedure
19   is key to the law.  In other words, the search
20   that an examiner does, which is a procedural
21   thing under -- under very rigorous guidelines at
22   the patent office, that's done because 35 U.S.

1   Code Section 102 says that if the invention's
2   anticipated by the prior art, you can't get a
3   patent.
4           So I'd say virtually everything that
5   the U.S. Patent and Trademark Office does is
6   founded in law.  There's not much that's not
7   founded in Title 35 or in 37 CFR, the Code of
8   Federal Regulations, which has the force and
9   effect of law.
10          But I am an expert on patent office
11  procedure, expert on patent law to the extent
12  that I've taught it, taught the basic course at
13  two very good universities, Washington
14  University for seven years and George Washington
15  University for two years, the basic three-hour
16  course in patent law.  Now I teach an advanced
17  seminar at GW, as I've already mentioned, in
18  matters involving patents.
19      Q.   What do you mean by "matters involving
20  patents"?
21      A.   Well, the issue -- issues involving
22  what happens to patents, how they could be

1   sort of a system. And that was part of my
2   testimony.
3           I think that about covers it. But it
4   is -- that's a matter of public record. I mean,
5   that trial was public and I'm sure the
6   transcript is available.
7       Q.  Has your testimony ever been excluded
8   by any court?
9       A.  In a case involving Corning, before
10  Judge Farnham in Delaware, the other side made a
11  motion in limine on the grounds that what I was
12  going to testify to invaded the providence of
13  the court in that it was going to be telling the
14  jury what patent law was and that was the job of
15  the -- of the court.
16          And the side retaining me argued or
17  opposed that on the grounds that all I was going
18  to be doing would be discussing internal patent
19  office procedures with respect to the patents in
20  issue.
21          Judge Farnham said because I was only
22  going to be discussing internal patent office

30

1  procedures with respect to those patents, he
2  decided to grant the motion in limine, and so I
3  was precluded from testifying in that based on
4  Judge Farnham's order.
5       There was a second case involving Judge
6  Sue Robinson from the District of Delaware
7  involving a -- a supplemental expert report
8  which was served too late, in her view, on a
9  motion, and so she instructed counsel, when they
10 were examining me, not to ask me questions about
11 that supplemental expert report.
12      Q.   Can you recall any other cases?
13      A.   No.  I can recall cases -- well, put
14 things in context.  As I indicated, I have -- I
15 have been retained in more than 175 cases -- 275
16 cases.  I know that because I started with No. 1
17 and now I'm at 275.  I have provided reports,
18 and we can count them here if I had -- if I had
19 my report, count the number of times I
20 testified, most of which were in depositions.
21 And court testimony I think was limited to
22 probably 15 times.

1   administrative law judges went through my report
2   very diligently and said he can --
3   Mr. Mossinghoff can testify regarding his
4   Paragraphs 1 to 26, 27B, not 28, so there was a
5   whole -- a whole recipe of what I could or
6   couldn't talk about.
7           And that case particularly was one of
8   the cases where the other side decided -- the
9   side retaining me just called and said we've
10  decided with the other side not to call patent
11  law experts, and that was the end of it.
12      Q.  You've submitted two reports in this
13  case; is that correct?
14      A.  As of yesterday, yes.
15      Q.  Do you intend to submit any more?
16      A.  I have no present intention, but I
17  don't know whether I'll be asked to do so or
18  not.
19      Q.  Why did you choose to supplement your
20  report yesterday?
21      A.  I was asked to do so by Mr. Webb, and I
22  felt that I could do so and I did it.

1  appendix to the protective order to sign, and so
2  he was in and out of the same room we were in
3  yesterday.
4     Q.    And I believe you testified that you
5  didn't review any documents in connection with
6  the supplemental report?
7     A.    I reviewed the five letters that are
8  attached to the supplemental report.
9     Q.    Other than those five letters, you
10 didn't review any documents in connection with
11 your supplemental report?
12    A.    I did not.
13    Q.    On your first report, are all the
14 materials that you reviewed in -- in preparing
15 that report listed in the appendix?
16    A.    It's listed in Exhibit E, yes.
17    Q.    And all of your opinions are contained
18 in these two reports; is that correct?
19    A.    Yes.
20    Q.    And those are the opinions you intend
21 to testify to at trial?
22    A.    Well, at trial I will answer whatever

Mossinghoff, Honorable Gerald J.   CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER   August 7, 2007
Kansas City, MO

49

1   question I'm given in any way the judge permits
2   me to answer to be as helpful as possible and I
3   don't know what those answers -- what those
4   questions will be.  I'll have to wait and see.
5        Q.   When you were preparing your first
6   report, did you talk to anyone at Sprint in
7   connection with that?
8        A.   No.
9        Q.   Have you ever spoken to Harley Ball?
10       A.   No.
11       Q.   Have you ever spoken to Michael Setter?
12       A.   No.
13       Q.   Do you know who Mr. Setter is?
14       A.   No.
15       Q.   Do you know who Mr. Ball is?
16       A.   No.  The engagement letter was actually
17  signed by Sprint rather than by the Shook Hardy
18  law firm.  I can't even tell you who it was that
19  signed that.
20       Q.   Other than Mr. Webb, Mr. Buresh and
21  Mr. Seitz, did you talk to anyone at Shook Hardy
22  Bacon in connection with the preparation of