IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

_____
)
SPRINT COMMUNICATIONS COMPANY, L.P., )
)
                Plaintiff, )
) Case No. 05-2433-JWL
            v. )
)
VONAGE HOLDINGS CORP. AND )
VONAGE AMERICA, INC., )
                Defendants. )
_____)

**MEMORANDUM IN SUPPORT OF VONAGE HOLDINGS CORP. AND VONAGE AMERICA, INC.'S MOTION TO COMPEL PRODUCTION OF A COMPLETE PRIVILEGE LOG AND THE DOCUMENTS DESCRIBED THEREIN**

    Defendants (collectively, "Vonage") submit this memorandum in support of their Motion to compel the production of documents described in Plaintiff's ("Sprint's") Sixth Supplemental Privilege Log produced on August 6, 2007. Recognizing the Court's reluctance to address what is essentially a discovery issue so close to trial, Vonage respectfully submits this motion and asks for Court intervention based on deficiencies in items Sprint has supplemented months after the discovery deadline. As discussed further below, the items on the privilege logs have a direct bearing on the parties' respective expert testimony, the proper scope of certain key witnesses' testimony at trial, and the fundamental issue of damages.

    Despite extensive correspondence between the parties detailing deficiencies in Sprint's Privilege Log, and supplements thereto, and a recent Order from this Court outlining the elements that must be established in order to withhold production of a document on the basis of an asserted privilege, Sprint has failed to produce a complete privilege log and continues to withhold highly relevant information under unsustainable privilege claims.

In the three separate supplemental privilege logs Sprint produced between July 20 and August 6, 2007, Sprint fails to provide the necessary detail to sustain an assertion of privilege, and the entries on the logs, on their face, expose the documents described therein as ones that plainly fall outside the scope of any recognizable protection. Sprint continues to attempt to assert the attorney-client privilege over documents reflecting its candid valuation of the Asserted Patents at the time of the hypothetical negotiation that will be used to assess any damages awarded in this case – a factual numerical valuation no matter its purported legal basis. Sprint further attempts to selectively disclose certain communications between sole inventor Joseph Christie and his counsel, and withhold others. Neither is proper under the rulings of the Court. Vonage therefore respectfully moves this Court to compel Sprint to produce a complete privilege log and the documents described therein which fall outside of any privilege or immunity.

## I.   BACKGROUND

On May 8, 2007, this Court issued an Order expressly setting forth the elements necessary for invoking work-product immunity or attorney-client privilege in response to a discovery request. See Doc. 184 (the "Order"). Notably, the Court made this Order on *Sprint's* motion to compel *Vonage* to provide a complete privilege log. Sprint's own log met neither the standards to which Sprint, in its Motion, sought to hold Vonage, nor the standard the Court articulated in its Order.

Vonage requested that Sprint provide a privilege log in compliance with the Court's May 8, 2007 Order. See Exhibit A. On July 5, 2007, Sprint requested that Vonage further identify those Sprint privilege log entries that were deficient, and Vonage did so by letter dated July 11, 2007. See Exhibits B and C. On July 20, 2007 and July 27, 2007, Sprint produced via e-mail Sprint's Fourth and Fifth Supplemental Privilege Logs, respectively. See Exhibits D and E.

Despite the plain language of the Court's Order, and the deficiencies pointed out by Vonage, Sprint, in these supplemental logs, still failed to meet the Court's standards.

By letter dated July 31, 2007, Vonage sent a letter to Sprint's counsel outlining its concerns and specifying the entries in the privilege logs that fail to meet the Court's standards in a final attempt to resolve these issues. See Exhibit F.

In response, Sprint agreed certain of the documents it has withheld were indeed not subject to any privilege. See August 3 and 6, 2007 Letters from J. Mudd to L. DeBruicker, attached as Exhibits G and H. Sprint similarly produced a Sixth Supplemental Privilege Log on August 6, 2007. See Exhibit I.

Even Sprint's Sixth Supplemental Log is still plagued with recurring deficiencies, and, in it, Sprint still seeks to assert privileges that are unsustainable under the rules of discovery or the law of this Court. Most critically, Sprint lists on its Sixth Supplemental Log documents which, by their description, are plainly business documents, rather than documents created for the purpose of providing legal advice, including valuations of the very patents at issue in this litigation. See, e.g., Ex. I at Entry Nos. 47-48 and 50-58.[1] Sprint further maintains that undated materials apparently authored by Sprint counsel Michael Setter and Harley Ball (id. at Entry Nos. 24, 42-46, and 59) were attorney-client privileged, while Sprint has designated both Mr. Setter and Mr. Ball as potential witnesses it intends to use to testify as to what Mr. Christie told them about the invention and on certain other facts pertinent to the inventions and patents at issue in this case ("Asserted Patents"). The Court's determination of whether Sprint's selective assertion of privilege is proper will have a direct bearing on the proper scope of these witnesses' testimony at trial, and Vonage's preparation therefor.

---

[1] The specific deficiencies in these disclosures and others are explained in detail below. For ease of reference, Vonage has annotated Sprint's logs by numbering each entry.

Having exhausted all efforts, in satisfaction of the requirements of Federal Rule of Civil Procedure 37 and D. Kan. Rule 37, Vonage petitions this Court for an Order requiring Sprint immediately to produce the documents contained therein which fall outside the protection of any recognized privilege.

## II.    QUESTIONS PRESENTED

(1) Whether Sprint is required to produce documents addressed in the privilege log that are not subject to attorney-client privilege or work-product immunity protection, specifically, but not exclusively, Sprint's valuations of its intellectual property (or "IP valuations"), documents created for the purpose of business negotiations rather than legal advice.

(2) Whether Sprint may selectively withhold on grounds of privilege notes by Harley Ball and Michael Setter regarding Mr. Christie and the Asserted Patents if Sprint intends to offer these witnesses to testify on these subjects at trial.

(3) Whether Sprint is required immediately to provide Vonage with a complete privilege log in compliance with the Court's May 8, 2007 Order.

## III.    ARGUMENT

In its May 8, 2007 Order, the Court expressly delineated the minimum required information that a party must disclose in a privilege log when seeking to withhold responsive documents or information on the grounds of attorney-client privilege or work-product immunity:

1. A description of the document (e.g., correspondence, memorandum, attachment), including the number of pages and the date prepared;

2. Identity of the person(s) who prepared the document, identity of the person(s) for whom the document was prepared and to whom the document and copies of the document were directed;

3. Purpose of preparing the document, including

        a.      A showing that the documents were prepared in the course of adversarial litigation or in anticipation of a threat of "real and imminent" litigation;

        b.      A showing that communications within the documents relate to seeking or giving legal advice (as opposed to business or non-legal advice); and

        c.      A showing that the documents do not contain or incorporate non-privileged underlying facts.

4.     Basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

5.     Any other information necessary to establish the elements of each asserted privilege.

See Doc. 184 at 10-11. Sprint, as the party asserting the privilege, bears the burden of establishing a "clear showing" that the protections apply. Ali v. Douglas Cable Comms., 890 F. Supp. 993, 994 (D. Kan. 1995). In its Sixth Supplemental Privilege Log, Sprint has failed to comply with the requirements set forth in the Order, and carry its burden in asserting the privilege under which it seeks to protect its information from discovery. "The law is well-settled that, if a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived" and order production. In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. 669, 671 (D. Kan. 2005).

    **A.**    **Sprint Fails to Establish That Attorney-Client Privilege Applies to the Documents It Seeks to Withhold on That Basis.**

The attorney-client privilege is "limited to communications made to attorneys solely for the purpose of the corporation seeking legal advice and its counsel rendering it." Zullig v. Kansas City Power & Light Co., No. 87-2342, 1989 U.S. Dist. LEXIS 1151, *6 (D. Kan. Jan. 17, 1989). Sprint fails to provide the information required by the Court in its Order to sufficiently assert the attorney-client privilege over the documents it seeks to withhold from discovery.

        **1.**    **Sprint Fails to Establish That the Documents Either Relate to the Provision of Legal Advice Or Contain No Discoverable Information.**

The attorney-client privilege does not apply "to every interaction between attorney and client." IMC Chems., Inc. v. Niro Inc., No: 98-2348, 2000 U.S. Dist. LEXIS 22850, at *27 (D. Kan. July 20, 2000) (Waxse, J.) (citation omitted). Rather, the privilege only applies in instances where advice is actually given or received, and should be applied by courts "within the narrowest possible limits consistent with the logic of its principle." Id. at *27-28 (citation omitted). As the Court directed in its Order, the purpose of each document must be made clear on the privilege log, which requires, specifically, "(b) a showing that communications within the documents relate to seeking or giving legal advice (*as opposed to business or non-legal advice*); and (c) a showing that the documents do not contain or incorporate non-privileged underlying facts." See Order at 11 (emphasis added). In at least Entry Nos. 47-55 and 57-59 of its Sixth Supplemental Log (Exhibit I) dated August 6, 2007, Sprint has not met these requirements.

### a.     Communications Made for the Predominant Purpose of Seeking Business, as Opposed to Legal, Advice, Must Be Produced.

Among the documents Sprint seeks to withhold are valuations of Sprint's intellectual property, including the family of technology covered by the Asserted Patents, made by Sprint employees around the time Sprint was preparing a business transaction with Cisco Systems, Inc.

By way of example, Sprint's Sixth Supplemental Log Entry No. 50 claims privilege for a document prepared by a non-lawyer that conveys factual valuations of Sprint intellectual property and was sent to a lawyer to inform his business *"proposal"* to development partner Cisco. Ex. I at Entry No. 50. Additionally, Entry Nos. 54-55 are "*Charts detailing Sprint's value of license to individual JCS2000 patents*...affixed to July 23, 1998 Draft of Memorandum of Current Understandings Between Cisco and Sprint" created by a Sprint employee and apparently forwarded to counsel. Sprint attempts to assert privilege over these factual valuations of the JCS2000 patents, and business agreements with third-party Cisco.

Despite Sprint's boilerplate insertion between its Fourth and Sixth Supplemental Logs that these documents are "for the purpose of rendering legal advice," (compare Exhibits D and I), the document descriptions on their face disclose they are plainly business documents related to business transactions with third-party Cisco, one of Sprint's intellectual property development partners for the project Joseph Christie System 2000 ("JCS2000"), wherein the technology underlying the Asserted Patents was developed. See Sprint's Mem. in Suppt. of Mot. for Summ. Jgt., Doc. 199, at 13.

The attorney-client privilege "does not apply where legal advice does not predominate the communication or where legal advice is merely incidental to business advice." Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., No. 05-2164, 2007 U.S. Dist. LEXIS 13386, *22 (D. Kan. Feb. 23, 2007); see also In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. at 677 (overruling objections of privilege where "the subject matter of the [document] is not related to seeking or giving legal advice, and therefore is not privileged"); Burton v. R.J. Reynolds Tobacco Co., 200 F.R.D. 661, 676 (D. Kan. 2001) (party asserting privilege failed to establish that documents relating to negotiations with Department of Health and Human Services were legal in nature or that party's lawyers were providing legal advice as opposed to general business or scientific advice in connection with same); Marten v. Yellow Freight Sys., No: 96-2013, 1998 U.S. Dist. LEXIS 268, *22 (D. Kan. Jan. 6, 1998) (compelling production of minutes of committee meeting prepared by in-house counsel stating that "legal advice sought or received during such meeting appears to be incidental to considerations of what is most prudent for the successful operation of the business").

Sprint has the burden to show that the communication was made for the predominant purpose of obtaining legal advice, not merely legal advice incidental to business advice. Even

taken at face value, in at least Entry Nos. 47-55 and 57-59 of its Sixth Supplemental Log, Sprint fails to show the requisite predomination.[2]

### b. Factual Information Forwarded to Counsel, If Even for the Purpose of Obtaining Legal Advice, is Not Privileged.

Further, even if Sprint can establish the IP Valuations and other business documents were communicated to counsel for the predominant purpose of obtaining legal advice, the numerical valuations are not privileged. Facts communicated to an attorney, even if for the purpose of obtaining legal advice, are not privileged and should be produced. See Order at 7, citing, *inter alia*, IMC Chemicals, No: 2000 U.S. Dist. LEXIS 22850 at *8-9 (quoting Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981)).

In its Sixth Supplemental Log (Ex. I), Sprint identifies certain factual information to which Vonage is entitled. See, e.g., Ex. I at Entry Nos. 47-55 and 57-59 (pertaining to valuations of JCS2000 intellectual property); 40 (pertaining to factual information on the Joseph Christie estate); 17-18 (pertaining to JCS2000 termination issues); and 3 (pertaining to JCS2000 intellectual property issues). Vonage does not seek privileged communications to an attorney for the provision of legal advice, but discoverable factual information within documents in appropriate redacted form.

---

[2] Sprint even designated Mr. Ball, its in-house counsel, to testify as to Sprint's licensing practices and its methods of valuing intellectual property rights. See Topics 29-31 of Vonage's Third Notice of Deposition of Sprint Communications Company, L.P. Pursuant to Rule 30(b)(6) ("Third 30(b)(6) Notice"), attached as Exhibit "J;" see also Email from A. Seitz to B. Golob designating Mr. Ball to testify on Sprint's behalf in response to topics 27-31 of Vonage's Third 30(b)(6) Notice, attached as Exhibit "K." While Mr. Ball was able to offer little responsive testimony on these topics, he did so without any objection of privilege. See Transcript of the March 29, 2007 deposition of Mr. Ball, excerpts of which are attached as Exhibit "L." While providing little responsive information, Mr. Ball discussed the basis upon which Sprint its relationship with Cisco at $5 billion; projections for this alliance; Sprint's valuations of the intellectual property rights at issue in that transaction, and Sprint's process for determining appropriate compensation for intellectual property rights. See id. at 82:9-86:15; 171:16-172:22.

Sprint, in its letter of August 6, 2007, contends certain of its intellectual property valuations are based on legal advice regarding the scope and extent of its intellectual property protection, see Ex. H, and refuses to produce even a numeric value on this basis. See Exchanges of August 7, 2007, attached as Exhibits M and N. Sprint's valuation of any JCS2000 patent bears directly on its claim for damages, Vonage's defenses to those contentions, and the "reasonable royalty" analysis performed by the parties' respective experts pursuant to Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970).

Even accepting Sprint's latent characterization of these IP valuations as having been communicated to counsel "for [the] purpose of obtaining legal advice" (compare Exhibit D at Entry Nos. 61, 62, 63, 64, 66, 67 to Exhibit E at Entry Nos. 61, 62, 63, 66, 67), which Vonage does not concede, Vonage is not seeking information about communications between Sprint and its counsel, but facts that may reflect on the true value of the patent rights Sprint is asserting, going to the heart of Sprint's claim for damages and Vonage's defenses thereto. On their face, these entries disclose that Sprint is incorrectly withholding documents addressing business or non-legal advice and documents containing or incorporating non-privileged underlying facts.

If these documents are in fact protected by the attorney-client privilege, which the entry description in the privilege log does not prove, rather than withhold these relevant documents for revealing legal advice incidental to business advice, Sprint should produce redacted versions excluding the portions containing legal advice. See Order at 7 ("Accordingly, if relevant facts are incorporated into an otherwise attorney-client protected document, the document still will be subject to disclosure after redaction of privileged material.") For these reasons, Vonage respectfully requests the Court to compel Sprint to produce the documents reflecting relevant facts with redactions where appropriate, most importantly of its valuation of the JCS2000 patents

identified in its Sixth Supplemental Privilege Log. In the alternative, Vonage requests an *in camera* review of these materials to determine their alleged privileged status.

        c.      **Sprint Fails to Establish the Communications Were Between Attorney and Client For the Purpose of Providing Legal Advice.**

Only communications made between a lawyer and client for the purpose of providing legal advice qualify for protection under the attorney-client privilege. Zullig, 1989 U.S. Dist. LEXIS 1151 at *6. As such, communications not seeking legal advice, such as where a lawyer is simply copied for informational purposes, are not protected under the attorney-client privilege. The act of carbon copying a lawyer on an e-mail or letter does not make the subject matter of a document legal in nature, nor does it serve as a firm request to the lawyer that he/she was carbon copied in order to provide legal advice on the subject. See In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. at 675 ("The mere fact that one is an attorney does not render everything he does for or with the client privileged. Minutes of meetings attended by attorneys are not automatically privileged, and business documents sent to attorneys are not automatically protected."). Sprint has not indicated the manner in which, or purpose for which, certain communications were made to counsel. See Ex. I at Entry Nos. Entry Nos. 2, 3, 50, and 54-56. Therefore, Vonage is unable to assess the applicability of privilege or protection, and certain entries suggest Sprint continues to withhold discoverable factual information on the simple basis it was transmitted to counsel, which the rules of privilege do not countenance.

        2.      **Sprint Fails to Identify the Authors and Recipients of the Purported Communications.**

In even its Sixth Supplemental Log dated August 6, 2007, Sprint still fails to identify authors and recipients of documents in a manner making it possible to determine whether the communications were to or from a lawyer made for the predominant purpose of providing legal

- 10 -

advice, or if the lawyer was simply added to a list of people carbon copied on the document. For example, in Entry Nos. 3, 8 and 41 (Ex. I), Sprint fails to identify any author or recipient whatsoever. Lacking an author or creation date, Sprint vaguely states only who the document was "circulated between" and cannot identify who drafted the document, when it was drafted, and why and for what purpose it was drafted. In Entry No. 3, Sprint refers to a powerpoint presentation attached to an "e-mail from Joe Gardner to Harley Ball and Charles Wunsch and other Sprint employees . . . regarding vendor team status meeting," failing to mention who drafted the presentation and why in-house counsel received it. While the email may be protected if it sought legal advice from in-house counsel regarding a topic covered in the presentation, the attached presentation itself is not privileged, unless it is a presentation specifically created to communicate a need for legal advice, which Sprint fails to establish.

### 3.     Sprint Fails to Provide Dates of the Purported Communications.

Entries in Sprint's privilege logs also lack dates, making it difficult for Vonage or the Court to determine whether any privilege applies. See, e.g., Ex. I at Entry Nos. 3, 8, 23, 24, 26, 42-46; Ex. E at Entry Nos. 1, 3, 24-30, 37-41, 43-53, 57-62. Without information as to when the communication was made, or the document created, neither Vonage nor the Court can determine whether the communication was made for the purpose of providing legal advice in this case. Particularly as to communications between Mr. Christie and counsel, a significant number of which Sprint between its Fifth Supplemental Log on July 27 and its Sixth Supplemental Log on August 6 conceded are *not* privileged, the dates of creation reflect on the communication's purported purpose and are critical to the determination of privilege. Ex. I at Entry Nos. 24, 42-46, and 59). Without them, Sprint fails to carry its burden in proving it is entitled to protection from production.

### 4. Drafts and Third-Party Communications are Not Privileged.

"Drafts of documents to be submitted to third parties, while prepared by counsel, are not generally privileged. In any event, submission of documents to a third party outside the attorney-client relationship removes any cloak of privilege." In re Universal Serv. Fund Tel. Billing Practices Litig., 223 F.R.D. at 675. Thus, privilege appears not to apply to the "form letters" and "draft form letters" referenced in Entry Nos. 23 and 25, and the undated draft declaration in Entry No. 26 to Sprint's Sixth Supplemental Log (Ex. I), which were obviously intended for eventual public disclosure. Moreover, there is no indication that the documents identified in Entry Nos. 25-40 were not eventually transmitted to, or the information therein otherwise shared with, counsel to Mr. Christie's Estate, or that the "outside counsel" did not also represent the estate of Mr. Christie. See Ex. I. As such, Sprint has not met its burden in asserting any privilege over these documents, and should produce them forthwith.

### B. Sprint Cannot Assert Privilege over Some, but Not All, Communications Made between Mr. Christie and Michael Setter and Harley Ball.

Sprint also seeks to assert privilege over certain communications between Joseph Christie, the sole inventor of the Asserted Patents, and Sprint's in-house counsel, Michael Setter and Harley Ball, Esquires, and other documents relating to Messrs. Setter and Ball's involvement with the Asserted Patents. See, e.g., Ex. I at Entry Nos. 40-46.

Importantly, however, Sprint has designated Messrs. Setter and Ball as witnesses to speak on its behalf on the inventions and Asserted Patents pursuant to Rule 30(b)(6). See Ex. L. Sprint has identified Messrs. Setter and Ball as witnesses it *will* call at trial, see Sprint's Supplemental Preliminary Witness List, dated July 31, 2007, attached as Exhibit O, at 2, and as witnesses who "may have discoverable information relating to the conception and reduction to practice of the inventions of the patents in suit," "the project underlying the inventions disclosed and claimed in

Sprint's Asserted Patents," "the preparation and prosecution of the patent application that matured into the patents in suit," and "relating to Sprint's policies and procedures relating to the protection of Sprint intellectual property." See Sprint's Second Supplemental Initial Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1), attached as Exhibit P.  Messrs. Setter and Ball have been put forward by Sprint as the foremost authorities on Mr. Christie's inventions and the Asserted Patents and are expected to be proffered to so testify at trial.[3]

In withholding certain of Messrs. Setter and Ball's documentation as privileged, it is apparent that Sprint intends to use its attorneys' testimony in a limited manner – presumably disclosing communications that benefit its argument, while insisting that others on the same subject are protected by privilege.  The Court has rejected such tactics as impermissible:

> parties may not use the attorney-client privilege as both a shield and a sword. ...Parties may not use the privilege to prejudice [their] opponent's case or to disclose some selected communications for self-serving purposes.

IMC Chems., 2000 U.S. Dist. LEXIS 22850 at *68 (citations, punctuation omitted).  Sprint can not both offer Mr. Setter and Mr. Ball as witnesses to testify as to some communications between them and Mr. Christie, and patent related documents, thereby putting these matters at issue, and then assert privilege over other relevant parts of their testimony on the same subject matter. Sprint cannot assert privilege only when it is convenient for it to do so.  Id.  Sprint is plainly trying to accomplish through selective disclosure that which the law does not allow.

Because Sprint has designated Mr. Setter and Mr. Ball to speak on issues related to Mr. Christie's inventions and the other inventions and patents at issue, and conceded that

---

[3] Moreover, Sprint has in the last week conceded that communications between Messrs. Christie, Ball and Setter regarding the technical disclosures in the Asserted Patents and others invented by Mr. Christie "*are not privileged.*" See Exs. G and H (emphasis added).

communications between Messrs. Christie, Setter & Ball regarding the inventions underlying the Asserted Patents are not privileged, and intends to offer Messrs. Ball and Setter to testify as to what Mr. Christie said as to the legal scope of his invention, Sprint cannot maintain any privilege over documents on these subjects. Vonage therefore respectfully requests that the Court compel Sprint to promptly produce all documents on its Sixth Supplemental Privilege Log relating to Mr. Christie and the Asserted Patents, so that Vonage may adequately prepare to cross-examine Messrs. Setter and Ball at trial.

## IV.     CONCLUSION

Because Sprint has failed to produce a complete privilege log in accordance with this Court's May 8, 2007 Order and failed to produce relevant, responsive documents, Vonage respectfully moves this Court for an Order compelling Sprint to produce documents identified in annotated privilege log Entry Nos. 2, 3, 8, 23-26, and 40-59, and to provide a complete privilege log, and awarding such other and further relief as the Court deems just, equitable and appropriate.

# **EXHIBIT LIST**

# **TO VONAGE'S MOTION TO COMPEL PRODUCTION OF A COMPLETE PRIVILEGE LOG AND THE DOCUMENTS DESCRIBED THEREIN**

A.      06-26-07 Letter from H. Lahey to A. Seitz

B.      07-05-07 Letter from J. Mudd to H. Lahey

C.      07-11-07 Letter from H. Lahey to J. Mudd

D.      07-20-07 Sprint's Fourth Supplemental Privilege Log

E.      07-27-07 Sprint's Fifth Supplemental Privilege Log

F.      07-31-07 Letter from L. DeBruicker to A. Seitz

G.      08-03-07 Letter from J. Mudd to L. DeBruicker

H.      08-06-07 Letter from J. Mudd to L. DeBruicker

I.      08-06-07 Sprint's Sixth Supplemental Privilege Log

J.      11-26-06 Vonage's Third Rule 30(b)(6) Deposition Notice to Sprint

K.      03-11-07 Email from A. Seitz to B. Golob

L.      03-29-07 Excerpts of Deposition of Harley Ball

M.      08-07-07 Letter from H. Lahey to J. Mudd

N.      08-07-07 Letter from J. Mudd to H. Lahey

O.      07-31-07 Sprint's First Supplemental Preliminary Witness List

P.      03-08-07 Sprint's Second Supplemental Initial Rule 26(a)(1) Disclosures

Respectfully submitted,

s/ Terrence J. Campbell

Terrence J. Campbell - 18377
Catherine C. Theisen - 22360
BARBER EMERSON, L.C.
1211 Massachusetts Street
P.O. Box 667
Lawrence, KS 66044
(785) 843-6600
(785) 843-8405 Facsimile
tcampbell@barberemerson.com
ctheisen@barberemerson.com

Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com

*Attorneys for Defendants/Counterclaim Plaintiffs Vonage America, Inc. and Vonage Holdings Corp.*

## CERTIFICATE OF SERVICE

I hereby certify on August 14, 2007, that a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Motion to Compel Production of a Complete Privilege Log and the Documents Described Therein, and supporting papers, was filed electronically, with a notice of case activity to be generated and sent electronically by the Clerk of Court to:

>B. Trent Webb
>Adam P. Seitz
>Eric A. Buresh
>Shook, Hardy & Bacon LLP
>2555 Grand Boulevard
>Kansas City, MO 64108-2613
>bwebb@shb.com
>aseitz@shb.com
>eburesh@shb.com
>
>*Attorneys for Plaintiff*
>*Sprint Communications Company L.P.*

_s/ Terrence J. Campbell__