# EXHIBIT F

# Duane Morris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE

LAUREN DEBRUICKER
DIRECT DIAL: 215.979.1198
E-MAIL: LEDeBruicker@duanemorris.com

www.duanemorris.com

July 31, 2007

**VIA EMAIL**

Adam P. Seitz, Esquire
Shook, Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613

Re:   *Sprint Communications Co. L.P. v. Vonage Holdings Corp. and Vonage America, Inc. et al.*, Case No. 05-2433-JWL
**Sprint's Fourth and Fifth Supplemental Privilege Logs**

Dear Adam,

We write regarding Sprint's Fourth and Fifth Supplemental Privilege Logs, produced under your cover emails of July 20 and 27, 2007, respectively.

In our letter of June 28, we asked that Sprint provide a privilege log in compliance with the Court's express directive in its May 8, 2007 Order, (see Doc. 184), and, at your request, detailed those deficiencies in our letter of July 11. Sprint's Fourth and Fifth Supplemental Privilege Logs still fail to meet the Court's standards, and Vonage intends to enlist the Court's assistance in compelling the production of a complete privilege log or the documents described therein.

The attorney-client privilege protects confidential communications between attorney and client made so that the client may "obtain legal assistance from the attorney in his capacity as a legal advisor." In re Grand Jury Subpoena Duces Tecum Issued June 9, 1982, 697 F.2d 277, 278 (10th Cir. 1983). The work-product doctrine protects documents "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). The party asserting the privilege bears the burden of establishing with a "clear showing" that the privilege applies. Ali v. Douglas Cable Comms., Ltd. Partnership, 890 F. Supp. 993, 994 (D. Kan. 1995).

The Court has ruled that with respect to claims of protection based on the attorney-client privilege,

> the description of the documents within the privilege log must establish each of the following elements: (1) where legal advice is sought (2) from a professional

DuaneMorris

Adam P. Seitz, Esquire
July 31, 2007
Page 2

legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

Sprint Communs. Co., L.P. v. Vonage Holdings Corp., No. 05-2433, 2007 U.S. Dist. LEXIS 34168 (D. Kan. May 8, 2007) (Doc. 184) (citations omitted).

### A. Sprint's Log remains deficient.

Sprint's Fifth Amended Privilege Log of July 27, 2007 still fails to identify authors and recipients so as to identify whether the purported communication directly to a lawyer, or one where the attorney is simply one of several persons carbon copied ("cc'd") on the document – an important factor in determining the privileged status of a communication. (See, e.g., Entry Nos. 1, 2-13, 19). In Entry Nos. 1 and 4, Sprint fails to identify any author or recipient whatsoever. Regardless of among whom a document was "circulated," in order to assert the attorney-client privilege, Sprint must establish that the document was a communication between lawyer and client made for the purpose of providing legal advice. Sprint, in its log, fails to establish these documents were communications at all.

Sprint's entries often lack dates so as to allow Vonage or the Court to determine whether any privilege applies. (See, e.g., Entry Nos. 1, 19, 25, 27, 43-53, 57). Without any information as to when a communication was made, or a document created, Vonage submits that Sprint cannot clear the high hurdle of establishing that the communication was made for the purpose of providing legal advice so as to be subject to the attorney-client privilege, or reasonably in anticipation of litigation so as to be eligible for protection under the work product doctrine.

Similarly, Sprint's entries often lack a description of the subject matter of the document, or the nature of the legal advice, so as to allow Vonage or the Court to determine whether any privilege applies. (See, e.g., Entry Nos. 1, 3, 24-30, 37-41, 43-53, 57-62). Certain of the entries strongly suggest that Sprint is withholding discoverable factual information on the basis that that information was transmitted to counsel – which the rules of privilege do not countenance.

As to communications that are subsequently forwarded in another communication, Sprint must indicate in its log why *each* communication in a series of communications qualifies for a privilege. See, e.g., In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. 669, 673 (D. Kan. 2005). Sprint, in at least its Entry Nos. 3, 13-15 and 25, has failed to do so.

Documents eventually sent to third parties, and drafts of documents to be submitted to third parties, while prepared by counsel, are not generally privileged. Id. at 675. In addition to the unlikelihood that a "form letter" can even qualify as privileged subject matter, the "draft form

DuaneMorris

Adam P. Seitz, Esquire
July 31, 2007
Page 3

letters" referenced in Entry Nos. 24, 26 thus appear not to be privileged at all. Moreover, there is no indication that the Cisco-related documents identified in Entry Nos. 59-72 were not eventually transmitted to, or the information therein otherwise shared with, Cisco; as such, Sprint has not met its burden in asserting any privilege over these documents.

### B. Sprint's assertion of the Work Product Privilege is ineffective.

The Work Product privilege may only be asserted over a document prepared specifically in anticipation of litigation. We ask you identify, by party and substance of the actual or anticipated allegations, the litigation Sprint reasonably anticipated in preparing the documents listed in Entry Nos. 53-55. Please know that given Sprint's representations in the case to date – i.e., that it was unaware of its potential claims in this matter until 2004 – Vonage finds Sprint's assertion of a "work product" privilege over documents created in 1994 to be without merit. Furthermore, Sprint's assertion of a "work product" privilege over *undated* documents (see Entry No. 53) is without factual basis.

### C. Sprint's IP valuations and business negotiations must be produced.

This Court, in this action, has expressly ordered that the privilege logs must provide:

"A showing that communications within the documents relate to seeking or giving legal advice (*as opposed to business or non-legal advice*); and

A showing that the documents do not contain or incorporate non-privileged underlying facts.

See May 8, 2007 Order (Doc. 184), 2007 U.S. Dist. LEXIS 34168 at *20 (emphasis added). Sprint, in its Fourth and Fifth Supplemental Privilege Log, has not met these obligations.

"The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice, and is 'limited to communications made to attorneys *solely* for the purpose of the corporation seeking legal advice and its counsel rendering it.'" Zullig v. Kansas City Power & Light Co., No. 87-2342, 1989 U.S. Dist. LEXIS 1151, 5-6 (D. Kan. Jan. 19, 1989) (O'Connor, C.J.) (compelling production of accident reports, even where reports were, in fact, used as a basis for legal advice and that legal advice was given at the committee meetings) (emphasis in original; citation omitted). The privilege "does not apply where legal advice does not predominate the communication or where legal advice is merely incidental to business advice." Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., No. 05-2164, 2007 U.S. Dist. LEXIS 13386 (D. Kan. Feb. 23, 2007) (internal citations omitted). See also In re Universal Serv. Fund Tel. Billing Practices Litig., 232 F.R.D. at 674-75 (overruling objections of privilege where "the subject matter of the [document] is not related to seeking or giving legal advice, and therefore is not privileged.") (citing, *inter alia*, Burton v. R. J. Reynolds Tobacco

DuaneMorris

Adam P. Seitz, Esquire
July 31, 2007
Page 4

Co., Inc., 170 F.R.D. 481, 484 (D. Kan. 1997) (Lungstrum, J.); Burton v. R.J. Reynolds Tobacco Co., 200 F.R.D. 661, 676 (D. Kan. 2001) (Lungstrum, J.) (party asserting privilege failed to establish that documents relating to negotiations with department of Health and Human Services were legal in nature or that party's lawyers were providing legal advice, as opposed to general business or scientific advice, in connection with same) and Marten v. Yellow Freight Sys., No: 96-2013, 1998 U.S. Dist. LEXIS 268, 17-18 (D. Kan. Jan. 7, 1998) (compelling production of minutes of committee meeting prepared by in-house counsel; "legal advice sought or received during such meeting appears to be *incidental to considerations of what is most prudent for the successful operation of the business*.").

In Entry Nos. 1, 3, 4, 9, 63-66 and 68-69, Sprint seeks to assert a privilege over what, based on their description, and despite Sprint's latent boilerplate insertion in its Fifth Supplemental Privilege Log that these entries are "for the purpose of rendering legal advice," are plainly business documents related to business transactions. By way of example, Entry No. 63 relates expressly to a business proposal to Cisco ("9/10/98 IP Valuation Cisco document prepared by Gene Agee (Sprint employee) and sent to Art Chaykin for purpose of obtaining legal advice regarding *Art Chaykin's (Sprint in-house counsel) current proposal*"); Nos. 68-69 are "Charts detailing Sprint's value of license to individual JCS2000 patents" relating to "license negotiations." It is Sprint's burden, as the party asserting a valuation of the JCS2000 patents, or other agreements with Cisco, and communications relating thereto, to show the communication is made for the predominant purpose of obtaining legal advice, and not legal advice incidental to business advice. Even taken at face value, Sprint's entries do not show the necessary predomination.

Sprint's valuation of any JCS2000 patent bears directly on its claim for damages, and Vonage's defenses to those contentions, and the *Georgia Pacific* analysis performed by the parties' respective experts.

Furthermore, Vonage in its requests does not seek information about communications between Sprint and its counsel but rather the facts that may reflect on the true value of the patent rights Sprint is asserting. Vonage's requests seek to elicit facts and not attorney-client communications. Even if these communications qualify as protected by the attorney-client privilege, which Sprint's log falls short of establishing, Sprint must produce any figures of its valuation as facts not subject to the privilege in redacted form.

For these reasons, we ask Sprint produce the documents reflecting its valuation of the JCS2000 patents identified in its Fourth and Fifth Amended Privilege Logs immediately.

DuaneMorris

Adam P. Seitz, Esquire
July 31, 2007
Page 5

### D. Mr. Setter's Notes

As to its entries regarding the notes of Michael Setter (Entry Nos. 43-45, 48-53), Sprint has no basis over which to assert any privilege over Mr. Setter's notes on the slide presentation made by Mr. Christie in 1993. Mr. Setter was not an attorney at the time he made these notes, and even were this not the case, Mr. Setter testified that all notes he may have made in preparing any patent applications for Mr. Christie's inventions were (i) subsumed in the draft applications and/or (2) destroyed. Mr. Setter testified the meeting during which he made these notes was not to determine patentability or to assist in the patent application process, but merely to teach the technology to certain members of Sprint's business team. Further, as Mr. Setter testified freely as to his communications with Mr. Christie and Mr. Christie's disclosures to him both during the presentation and following, Vonage submits Sprint has no basis to assert privilege over, or refuse to produce, these notations.

Given the Court's rulings and our extensive correspondence on the subject over the last weeks, Vonage feels it has more than satisfied its obligations under D. Kan. Rule 37 to attempt to resolve these issues. We write this letter, and provide this detail, in the hopes that Sprint will produce those documents on its log which plainly fall outside the scope of any recognizable protection. We intend apply to the Court at the end of this week to compel the same if we cannot reach some other resolution in the meantime.

We look forward to Sprint's response.

Very truly yours,

Lauren DeBruicker

LED/rae
cc: B. Trent Webb, Esquire
    Eric A. Buresh, Esquire
    Donald R. McPhail, Esquire
    Patrick D. McPherson, Esquire
    Barry Golob, Esquire