# EXHIBIT J

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-2433-JWL |
| THE GLOBE.COM, INC., ET AL | ) |
| Defendants. | ) |

**VONAGE AMERICA, INC. AND VONAGE HOLDINGS CORP.'S THIRD NOTICE OF DEPOSITION OF SPRINT COMMUNICATIONS COMPANY L.P. PURSUANT TO RULE 30(b)(6)**

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendants Vonage America, Inc. and Vonage Holdings Corp. (collectively "Vonage") will take the deposition of Sprint Communications Company L.P. ("Sprint") by and through its representative(s), on December 1, 2006, beginning at 9:30 am and continuing day-to-day thereafter until completed. The deposition will be conducted at the offices of Duane Morris, 1667 K Street, NW, Suite 700, Washington, DC 20006, or at another date and/or location mutually agreed upon by the parties.

The deposition will be taken by oral examination, with written and/or sound and visual record made thereof (e.g. videotape, LiveNote, etc), before a Notary Public or officer authorized by law to administer such oaths.

Vonage will examine Sprint on the matters set forth below. Sprint is directed to and reminded of its obligation under Rule 30(b)(6) to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf, to testify concerning these matters.

## DEFINITIONS AND INSTRUCTIONS

1. The terms "you", "your" and "Sprint" are defined as Plaintiff/Counterclaim Defendant Sprint Communications Company L.P. and any and all agents, officers, employees, representatives, affiliates, parent companies and subsidiaries thereof, and any and all other persons or entities acting on its behalf, whether former or current.

2. The term "Vonage" is defined as Defendants/Counterclaim Plaintiffs Vonage Holdings Corp. an/or Vonage America, Inc., and any and all agents, officers, employees, representatives, affiliates, parent companies and subsidiaries thereof, and any and all other persons or entities acting on its behalf, whether former or current.

3. The term "the '294 patent" is defined as U.S. Patent No. 6,665,294, and any and all related patents or patent applications, whether foreign or domestic, including without limitation, all patents and patent applications which claim priority benefit of the filing date of the '294 patent, and all patents and patent applications from which the '294 patent claims priority benefit.

4. The term "the '561 patent" is defined as U.S. Patent No. 6,663,561, and any and all related patents or patent applications, whether foreign or domestic, including without limitation, all patents and patent applications which claim priority benefit of the filing date of the '561 patent, and all patents and patent applications from which the '561 patent claims priority benefit.

5. The term "the '429 patent" is defined as U.S. Patent No. 6,473,429, and any and all related patents or patent applications, whether foreign or domestic, including

without limitation, all patents and patent applications which claim priority benefit of the filing date of the '429 patent, and all patents and patent applications from which the '429 patent claims priority benefit.

6. The term "the '052 patent" is defined as U.S. Patent No. 6,463,052, and any and all related patents or patent applications, whether foreign or domestic, including without limitation, all patents and patent applications which claim priority benefit of the filing date of the '052 patent, and all patents and patent applications from which the '052 patent claims priority benefit.

7. The term "the '064 patent" is defined as U.S. Patent No. 6,298,064, and any and all related patents or patent applications, whether foreign or domestic, including without limitation, all patents and patent applications which claim priority benefit of the filing date of the '064 patent, and all patents and patent applications from which the '064 patent claims priority benefit.

8. The term "the '932 patent" is defined as U.S. Patent No. 6,452,932, and any and all related patents or patent applications, whether foreign or domestic, including without limitation, all patents and patent applications which claim priority benefit of the filing date of the '932 patent, and all patents and patent applications from which the '932 patent claims priority benefit.

9. The term "the '572 patent" is defined as U.S. Patent No. 6,304,572, and any and all related patents or patent applications, whether foreign or domestic, including without limitation, all patents and patent applications which claim priority benefit of the

filing date of the '572 patent, and all patents and patent applications from which the '572 patent claims priority benefit.

10. The term "Asserted Patents" is defined as one or more of the '294 patent, 'the '561 patent, the '429 patent, the '052 patent, the '064 patent, the '932 patent and/or the '572 patent.

11. The term "correspondence" is defined as including, but not limited to, any letter, telegram, telex, TWX, facsimile, e-mail, notice, message, memorandum, oral or written communication, and/or a transcript of notes or an oral communication, whether embodied in a tangible medium or not.

12. The term "communication" is defined as every manner of disclosure, transfer or exchange, and every disclosure, transfer or exchange, of information, whether orally or by written documents or otherwise, and whether face-to-face, by telephone, mail, e-mail, personal delivery, electronic transmission, person-to-person, in a group, or otherwise, and shall include any utterance heard by any other person whether in person, by telephone or otherwise.

13. The terms "regarding", "regard(s)", "relating", "relate(s) to", referring to" and/or "refer(s)" are defined to include containing, contain(s), recording, record(s), discussing, discuss(es), mentioning, mention(s), noting, note(s), evidencing, evidence(s), memorializing, memorialize(s), analyzing, analysis(es), describing, describe(s), commenting upon, comment(s) upon, have any connection with and/or have any tendency to prove or disprove any issue or matter set forth.

14. The term "document" is used in its broadest possible sense and includes, without limitation, any information recorded in any manner or medium. It includes, but is not limited to, written, printed, typed, recorded and/or electronic or graphic material however produced, such as all correspondence, letters, memoranda, notes, summaries of personal conversations, interviews or meetings, communications, transcripts, electronically transmitted messages (e-mail), voice mail, minutes, telephone logs or message slips, facsimiles, telegrams, telexes, notepads, postcards, "Post-it" notes, records, press releases, promotional materials, brochures, advertisements, circulars, newspaper and/or periodical articles and/or clippings, articles, books, pamphlets, manuals, outlines, summaries, reports, studies, analyses, opinions or reports of consultants and/or advisers, files, data sheets, contracts, agreements, charts, graphs, plans, drawings, sketches, calendars, appointment books, diaries, daily calendars, date books, checks, wire transfers, records of payment, bank records, accounting statements, bills, billing memoranda, invoices, ledgers, vouchers, books of account, microfilm, microfiche, pictures, photographs, sound and/or video recordings, computer files, computer printouts, computer tapes, disks, diskettes, websites, CD-ROMs, data tapes, electronic or magnetic media, and other data compilations from which information can be obtained, translated, if necessary, by Plaintiffs through detection devices into reasonably usable form, including but not limited to electronic or computerized data compilations (including any information contained in any desktop, laptop, server or mainframe) and all other writings.

15. The terms "and", "or" and "and/or" shall be construed disjunctively or conjunctively, as necessary, in order to bring within the scope of any question any response which may otherwise be construed to be outside the scope thereof.

16. Any term used in the singular shall be construed as plural, or *vice versa*, as necessary, in order to bring within the scope of any question any response which may otherwise be construed to be outside the scope thereof.

17. Any term used in the past tense shall be construed as the use of that verb in all other tenses in order to bring within the scope of any question any response which may otherwise be construed to be outside the scope thereof.

18. The terms "any" and "all" shall be considered to include "each and every".

19. The term "Vonage product and/or service" is defined as any product and/or service utilized for providing any telephony services that Vonage distributes, provides, uses, sells, offers for sale, markets and/or manufactures, wherein any portion of a telephone call is transmitted over: (a) a packet-based network, such as the Internet; (b) a circuit-switched network or device, such as the Public Switched Telephone Network (PSTN) or a standard POTS telephone; or (c) any combination of a packet-based network and a circuit-switched network or device.

20. The term "Sprint product and/or service" is defined as any product and/or service utilized for providing any telephony services that Sprint conceived, designed, developed, distributes, provides, uses, sells, offers for sale, markets and/or manufactures, wherein any portion of a telephone call is transmitted over: (a) a packet-based network, such as the Internet; (b) a circuit-switched network or device, such as the Public Switched

Telephone Network (PSTN) or a standard POTS telephone; or (c) any combination of a packet-based network and a circuit-switched network or device. The term "Sprint product and/or service" shall include, but not be limited to, those products and/or services known as JCS2000, BONANZA, CCM (a/k/a Call Control Manager), BB/IN (a/k/a BBIN or Broadband Intelligent Network)), BBOSD, SPRINT ION and SPRINT SUCCESSION.

## TOPICS FOR DEPOSITION

1. The marketing, advertisement and/or promotion of any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

2. The identity of the indvidual(s) most knowledgeable regarding the marketing, advertisement and/or promotion of any Sprint product and/or service that utilizes or involves any invention disclosed and/or claimed in any Asserted Patent.

3. Sprint's financial accounting policies and procedures, including but not limited to Sprint's policies and procedures for recognizing revenue, determining and allocating costs, and determining and allocating profits.

4. Sprint's expected sales, rates of return and/or profits (gross or net, actual or projected) for any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

5. The information and/or documents that form the basis for Sprint's expected sales, rates of return and/or profits (gross or net, actual or projected) for any Sprint product and/or service that relates to, utilizes and/or involves any invention

disclosed and/or claimed in any Asserted Patent, including but not limited to projections, market research, competitive analysis reports and consumer surveys.

6. All information concerning and/or analysis of companies and/or products and/or services that compete with Sprint and/or any Sprint product and/or service that that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including the documents on which Sprint relies for such information.

7. All information concerning Sprint's share of the market for telephony products and/or services, and the market share of each company and/or product and/or service that competes with Sprint and/or any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including the documents on which Sprint relies for such information.

8. Market requirements, consumer requirements and/or feature requirements relating to any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

9. Forecasts, business and strategic plans relating to any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

10. Sales, marketing and promotion of any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

11. Pricing of any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including the documents and/or information on which Sprint determines such pricing.

12. All costs associated with any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including but not limited to research and development costs, costs for contractors, costs of manufacturing, advertising costs, marketing costs and costs of selling such product(s) and/or service(s), including, but not limited to, those listed on the document bearing Bates number SPRp-002-01-00775.

13. The importance to customers of the features of any invention disclosed and/or claimed in any Asserted Patent.

14. Any sales, marketing, advertising and/or promotional plans designed, developed, proposed and/or implemented by Sprint or on its behalf for any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

15. All information concerning the market and/or customers for any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including the documents on which Sprint relies for such information.

16. The identity of each company and/or product and/or service that competes with Sprint and/or any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

- 9 -

17.  Licenses and/or contracts and/or agreements that relate to any Asserted Patent and/or any invention disclosed and/or claimed in any Asserted Patent and/or any product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including, but not limited to, the following: licenses and contracts listed on documents bearing Bates numbers SPRe-002-01-00188 and SPRe-002-01-00189; the "Cisco Development SLA" bearing Bates numbers SPRp-004-01-01362 to SPRp-004-01-01400; the "Master Purchase Agreement" bearing Bates numbers SPRp-004-01-01418 to 004-01-01471; contracts and/or agreements with Masoud Kemali and/or Kemm Consulting, Inc. including the "Services Agreement Between Sprint Communications Company L.P. and Kemm Consulting, Inc." bearing Contract No. 01USS CK7072060 JMM (Ex. A) and the "Services Agreement" bearing Contract No. 01USS CK5007619 JOG (Ex. B); contracts and/or agreements with Anonymix including the "Professional Services Agreement" bearing Contract No. 01USS-CK4015013 (Ex. C); the "Sprint Support Proposal" bearing Bates numbers SPRp-004-01-01495 to SPRp-004-01-01504; the "Cisco Development SLA" bearing Bates numbers SPRp-004-01-01506 to SPRp-004-01-01544; and the "General Agreement" bearing Bates numbers SPRp-004-01-01546 to SPRp-004-01-01548.

18.  Negotiations concerning any license and/or contract and/or agreement that relates to any Asserted Patent and/or any invention disclosed and/or claimed in any Asserted Patent and/or any product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including any document prepared by or for Sprint during and/or for the purpose of such negotiation(s), including,

- 10 -

but not limited to, the following: licenses and contracts listed on documents bearing Bates numbers SPRe-002-01-00188 and SPRe-002-01-00189; the "Cisco Development SLA" bearing Bates numbers SPRp-004-01-01362 to SPRp-004-01-01400; the "Master Purchase Agreement" bearing Bates numbers SPRp-004-01-01418 to 004-01-01471; contracts and/or agreements with Masoud Kemali and/or Kemm Consulting, Inc. including the "Services Agreement Between Sprint Communications Company L.P. and Kemm Consulting, Inc." bearing Contract No. 01USS CK7072060 JMM (Ex. A) and the "Services Agreement" bearing Contract No. 01USS CK5007619 JOG (Ex. B); contracts and/or agreements with Anonymix including the "Professional Services Agreement" bearing Contract No. 01USS-CK4015013 (Ex. C); the "Sprint Support Proposal" bearing Bates numbers SPRp-004-01-01495 to SPRp-004-01-01504; the "Cisco Development SLA" bearing Bates numbers SPRp-004-01-01506to SPRp-004-01-01544; and the "General Agreement" bearing Bates numbers SPRp-004-01-01546 to SPRp-004-01-01548.

19.  All information and/or documents that refer or relate to any Vonage product and/or service, or any business or strategic plan, outlook or forecast concerning any Vonage product and/or service.

20.  All information and/or documents that refer or relate to competition between Vonage and/or any Vonage product and/or service and Sprint and/or any Sprint product and/or service.

21. All information and/or documents that refer or relate to the financial impact of Vonage and/or any Vonage product and/or service on Sprint and/or any Sprint product and/or service.

22. All information concerning any lost product or service sales by Sprint because of Vonage, including the documents on which Sprint relies for such information.

23. All Sprint presentations and/or proposals to any financial analyst, industry conference or third party that refer or relate to any product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

24. All information concerning the commercial success any invention disclosed and/or claimed in any Asserted Patent.

25. Sprint's financial statements, annual reports and/or regulatory reports submitted to any government agency, including but not limited to the SEC and the FCC, and all documents and/or information on which Sprint relied on and/or used in the preparation of any such financial statement, annual report and/or regulatory report.

26. Sprint's organization and structure.

27. Sprint's licensing practices.

28. Sprint's policies and procedures for licensing intellectual property, including how Sprint determines what it will pay or what it will charge for intellectual property and whether it will license intellectual property (in or out).

29. Licenses that Sprint has entered into to license technology owned by others, including, but not limited to, those listed on documents bearing Bates numbers SPRe-002-01-00188 and SPRe-002-01-00189.

30. Licenses that Sprint has entered into to license technology owned by Sprint.

31. License, contracts and/or agreements that Sprint has entered into that refer or relate to the design, development, conception and/or reduction to practice (actual or constructive) of any product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including, but not limited to, the following: licenses and contracts listed on documents bearing Bates numbers SPRe-002-01-00188 and SPRe-002-01-00189; the "Cisco Development SLA" bearing Bates numbers SPRp-004-01-01362 to SPRp-004-01-01400; the "Master Purchase Agreement" bearing Bates numbers SPRp-004-01-01418 to 004-01-01471; contracts and/or agreements with Masoud Kemali and/or Kemm Consulting, Inc. including the "Services Agreement Between Sprint Communications Company L.P. and Kemm Consulting, Inc." bearing Contract No. 01USS CK7072060 JMM (Ex. A) and the "Services Agreement" bearing Contract No. 01USS CK5007619 JOG (Ex. B); contracts and/or agreements with Anonymix including the "Professional Services Agreement" bearing Contract No. 01USS-CK4015013 (Ex. C); the "Sprint Support Proposal" bearing Bates numbers SPRp-004-01-01495 to SPRp-004-01-01504; the "Cisco Development SLA" bearing Bates numbers SPRp-004-01-01506to SPRp-004-01-01544; and the "General Agreement" bearing Bates numbers SPRp-004-01-01546 to SPRp-004-01-01548.

32. The identity of the individual(s) most knowledgeable regarding licenses and contracts Sprint has entered into.

33. Sales results, gross sales volume, gross profit and/or net profit for each Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, from the date such product and/or service was first sold until the date of the deposition.

34. All costs and/or expenses incurred by Sprint in connection with the design, development, use, sale, offer for sale, advertising and/or marketing any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent including, but not limited to, those listed on the document bearing Bates number SPRp-002-01-00775.

35. The demand in the marketplace for any product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent.

36. The identity of any product and/or service that does not infringe any Asserted Patent, is available in the marketplace and is an alternative to any product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, and the demand for such product and/or service.

37. The identity of any product and/or service that infringes any Asserted Patent and is available in the marketplace, and the demand for such product and/or service.

38. The portion of profit from the sale of any Sprint product and/or service that should be credited to any invention disclosed and/or claimed in any Asserted Patent.

39. The advantage(s) of any product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, as

- 14 -

compared to any product and/or service that does not relate to, utilize and/or involve any invention disclosed and/or claimed in any Asserted Patent.

40. The portion of profit from the sale of any Vonage product and/or service that should be credited to any invention disclosed and/or claimed in any Asserted Patent.

41. All costs and/or expenses incurred by Sprint in connection with the design, development, use, sale, offer for sale, advertising and/or marketing of any Sprint product and/or service that relates to, utilizes and/or involves VoIP technology.

42. The portion of profit from the sale of any Vonage product and/or service that should be credited to VoIP technology.

43. Documents that relate or refer to any claim by any party to any rights in or to any invention disclosed and/or claimed in the any Asserted Patent, including correspondence between Sprint and Kemm Consulting, Masoud Kamali and/or Oliver Colvin.

44. Documents that relate or refer to any claim by any party to any rights in or to any Sprint product and/or service that relates to, utilizes and/or involves any invention disclosed and/or claimed in any Asserted Patent, including correspondence between Sprint and Kemm Consulting, Masoud Kamali and/or Oliver Colvin.

45. Documents that relate or refer to any claim by any party to any rights in or to any Sprint product and/or service that relates to, utilizes and/or involves VoIP technology, including correspondence between Sprint and Kemm Consulting, Masoud Kamali and/or Oliver Colvin.

46. Correspondence between Sprint and the estate of Joseph Michael Christie or any representative thereof.

47. The decision by Sprint to offer and/or not to offer for sale any Sprint product and/or service, including, but not limited to, those products and/or services known as JCS2000, BONANZA, CCM (a/k/a Call Control Manager), BB/IN (a/k/a BBIN or Broadband Intelligent Network)), BBOSD, SPRINT ION and SPRINT SUCCESSION.

                                    Respectfully submitted,

                                    /s/ Donald R. McPhail

Patrick D. McPherson
Barry Golob
Donald R. McPhail
Patrick C. Muldoon
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com
pcmuldoon@duanemorris.com

Don R. Lolli  KS Dist. #70236
Patrick J. Kaine KS #15594
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missour 64111
816-931-2700
pkaine@DysartTaylor.com
dlolli@DysartTaylor.com
*Attorneys for Defendants/Counterclaim Plaintiff Vonage America, Inc. and Vonage Holdings Corp.*

Dated: November 22, 2006

## CERTIFICATE OF SERVICE

I hereby certify on this 22nd day of **November, 2006** that a copy of **VONAGE AMERICA, INC. AND VONAGE HOLDINGS CORP.'S THIRD NOTICE OF DEPOSITION OF SPRINT COMMUNICATIONS COMPANY LP** was served by email and First Class Mail on:

B. Trent Webb
Adam P. Seitz
Erick A. Buresh
SHOOK, HARDY & ;BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
Fax: (816) 421-5547
**ATTORNEYS FOR PLAINTIFF**

                                           Respectfully submitted,

                                           /s/ Donald R. McPhail