## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )     Case No. 05-2433-JWL |
| VONAGE HOLDINGS CORP., | ) |
| VONAGE AMERICA, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## SPRINT'S MOTIONS *IN LIMINE* AND BRIEFS IN SUPPORT

Plaintiff Sprint Communications Company L.P. (hereinafter "Sprint") respectfully moves *in limine* for the Court's order precluding defendants Vonage Holdings Corporation and Vonage America, Inc. (hereinafter collectively "Vonage") from presenting all evidence and prohibiting all questions, references, arguments, and testimony, whether direct or indirect, at trial and during *voir dire* as to each of the following issues:

## I.    PRIOR ART REFERENCES DISCLOSED FOR THE FIRST TIME IN ITS NOTICE UNDER § 282

Vonage served Sprint with its "Notice Under 35 U.S.C. § 282" ("§ 282 Notice") on August 3, 2007.  *See* Ex. A, Vonage's § 282 Notice, at 49.  Vonage's § 282 Notice spans 48 pages and lists **seven hundred and sixty two (762)** alleged prior art references.  *Id.*

In stark contrast to its § 282 notice, Vonage disclosed only **28** alleged prior art references during the discovery period in support of its invalidly contentions.  The contrast between the two disclosures is even more striking considering the fact that Sprint served interrogatories and document requests on January 5, 2006, which sought **all** prior art upon which Vonage relied in support of its invalidity defense.  (Interrogatory no. 5 and Request No. 9).  It was only after Sprint filed a motion to compel[1] on January 18, 2007, that Vonage first identified any prior art in response to these discovery requests.  *See* Doc. No. 116, at 4 (providing first supplemental response).

Vonage's supplemental response, served on February 1, 2007, identified only **21** references.  Vonage's expert witness on invalidity, Mr. Frank Koperda, cited and relied upon only **16** references in connection with his expert report, which was served on Sprint on February 28, 2007.  Mr. Koperda prepared a supplemental report on April 27, 2007, but he did not identify any new references in the supplemental report.  In response to Sprint's motion to compel, Vonage represented that the entirety of its invalidity contentions were set forth in it supplemental interrogatory response and Mr. Koperda's report.  Doc. No. 116.

Discovery closed on March 31, 2007.  Vonage <u>has not</u> supplemented either its response to Interrogatory No. 5, or Mr. Koperda's report to identify any additional references.  Vonage should not be allowed to introduce any of the previously-undisclosed references at trial,

---

[1] Doc. No. 110.

and Sprint is entitled to an order excluding any evidence or discussion of the references disclosed for the first time in Vonage's § 282 Notice.[2]

The Federal Circuit has expressly rejected attempts to circumvent the discovery process by submitting new invalidity contentions by way of a § 282 notice. *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed. Cir. 1998). In *ATD Corp.*, the Federal Circuit affirmed the exclusion of a previously-undisclosed reference, explaining, "[t]he purpose of § 282, like that of the Federal Rules, is to prevent unfair and prejudicial surprise, not to facilitate last-minute production of evidence." *Id.* at 551. Consistent with the Federal Rules, "[W]hen the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial. Thus although § 282 sets a minimum period for the identification of prior art to be introduced as evidence of anticipation, <u>a specific judicial directive for the timing of discovery establishes the procedures to which the parties are bound</u>." *Id.* (emphasis added); *see also Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874 (Fed. Cir. 1986).

In this case, the Court set specific deadlines for the disclosure of expert reports and the close of discovery. Accordingly, the Court's deadlines control the time period by which Vonage was required to make its invalidity contentions and to disclose all of its prior art. It is beyond dispute that Vonage failed to disclose these newly discovered references within the time frames identified by the Court. Vonage cannot rely on § 282 to justify its present attempt to bury Sprint with 762 prior art references on the eve of trial. Additionally, because Vonage failed to supplement Mr. Koperda's prior reports to address the 746 references he did not include in his report, Vonage should not be allowed to rely upon those recently-disclosed references in

---

[2] Exhibit A is a copy of Vonage's Notice Under 35 U.S.C § 282. The references disclosed by Vonage during discovery are marked with yellow highlighting. The remaining, unmarked references were disclosed for the first time in Vonage's § 282 Notice. The present Motion requests exclusion of these unmarked references.

2

connection with its validity challenges at trial.   Any other result would be extremely prejudical to Sprint and cause it to divert enormous resources to analyze and evaluate the prior art at a time when it should be focusing its efforts on trial preparation.

Vonage's previously-undisclosed references also should be excluded under Fed. R. Civ. P. 37.   Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).   This rule applies to a party's failure to comply with discovery requests. *See Stevens v. Deluxe Fin. Servs.,* 199 F. Supp. 2d 1128,1144 (D. Kan. 2002).

Vonage failed to disclose the overwhelming majority of the references listed in its § 282 Notice in response to Sprint's discovery or in an expert report.   Such a failure cannot be justified because most of the listed references are publicly available documents published in the 1980's and 1990's.   There is no reason to believe that Vonage only recently became aware of all these references and their ostensible relevance to this case.   There can be no legitimate excuse for Vonage's late disclosures.   For this reason, they should be excluded under Rule 37(c)(1).

## II.     EVIDENCE OF ADVICE OF COUNSEL TO REBUT WILLFULNESS

"The concept of "willful infringement" is not simply a conduit for enhancement of damages; it is a statement that patent infringement, like other civil wrongs, is disfavored, and intentional disregard of legal rights warrants deterrence."   *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004).   "Determination of willfulness is made on consideration of the totality of the circumstances and may include contributions of several factors."   *Id.* at 1342-43 (internal citations omitted).   Where an alleged infringer has notice of another's patent rights, "he has an affirmative duty to exercise due care to

3

determine whether or not he is infringing, including the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity." *Id.*

Sprint has alleged that Vonage's infringement was, and continues to be, willful. In its answer, Vonage denied that any alleged infringement was willful. Throughout this litigation, Sprint has attempted to ascertain the facts surrounding Vonage's defense to Sprint's allegations of willful infringement. Specifically, Sprint served Vonage with an interrogatory seeking the basis of Vonage's willfulness defense that Vonage initially refused to answer.[3] After a number of requests by Sprint for clarification, Vonage clarified its position by stating:

> 1)    Vonage is not asserting a written opinion of counsel as a defense to Sprint's allegations of willful infringement.
>
> 2)    Vonage is not asserting any defense to Sprint's allegations of willful infringement that would involve a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

Ex. B (Letter from McPhail to Seitz, dated Feb. 13, 2007). *See also* Ex. C, (Letter from McPhail to Seitz, dated Feb. 8, 2007) ("Vonage has not asserted any 'advice of counsel defense' in this action."). Vonage's 30(b)(6) designee confirmed this fact.

Despite Vonage's unequivocal statements, Sprint anticipates that Vonage may attempt to refer to or introduce evidence regarding an advice of counsel defense. Sprint is entitled to an Order excluding this evidence under Rule 37 because Vonage failed to identify any such evidence during discovery and because Vonage has not properly supplemented its discovery responses with any such evidence.[4] *See* Doc. No. 264, at 78. Moreover, disclosure of such evidence at this point would not be harmless. Disclosure of an opinion of counsel for the first time at trial would amount to ambush by Vonage and Sprint would have no opportunity to

---

[3]    Indeed, Vonage refused to provide an answer to this Interrogatory until Ordered by this Court to do so. *See* Doc. No. 154, at 2.

[4]    Vonage also did not identify any opinion of counsel defense in the Pretrial Order. *See* Doc. No. 207.

evaluate the competency of the opinion or the circumstances of its rendering. *Id.*  Rule 37 mandates that Vonage be precluded from raising any opinion of counsel defense.

Sprint also anticipates that Vonage will attempt to introduce evidence or attorney argument that it allegedly provided its attorneys with copies of one or more of the five letters sent to Vonage by Sprint prior to filing the current lawsuit (despite the fact that there is no evidence that counsel ever even acknowledged receipt of the letters, much less gave any opinion as a result of them).  Given Vonage's unequivocal statements that it did not receive and will not be relying upon an opinion of counsel, such references would be an improper attempt to make an end-around their prior representations.  Moreover, merely providing the letters to its attorneys with nothing more is insufficient to establish a defense to willful infringement.  Instead, the alleged infringer must receive "competent legal advice" from counsel.  *See Knorr-Bremse*, 383 F.3d at 1343.  Because Vonage has stated it did not receive "competent legal advice" from any legal counsel, Vonage's assertion that it provided the letters to its attorneys is irrelevant to the willfulness analysis, and must be precluded under Fed. R. Evid. 402.

Finally, this Court should exclude such evidence under Rule 403.  Even if Vonage actually provided Sprint's letters to its attorneys, that fact would not constitute obtaining an opinion of counsel sufficient to defend against a claim of willful infringement.  If Vonage were to mention this fact to the jury, however, the jury may wrongly believe Vonage had complied with its "affirmative duty to exercise due care . . . [by] seek[ing] and obtain[ing] competent legal advice from counsel."  *Id.*  Such evidence is unfair and confusing given Vonage's statements to the contrary.  Moreover, there is a substantial likelihood that this evidence will mislead and distract the jury from the fact that Vonage has not received and is not relying upon advice of counsel in defense to the allegations of willful infringement.

## III.     INVENTORSHIP, OWNERSHIP, OR DOUBLE PATENTING

The parties have stipulated that Sprint is the owner by assignment of the Asserted Patents. *See* Doc. No. 207, at 4, ¶¶ 14-20.  Because of this stipulation, ownership is not at issue, and any reference by Vonage that Sprint is not the legal owner of the Asserted Patents would be irrelevant and inadmissible. *See* Fed. R. Evid. 402  Moreover, any such testimony would serve only to unfairly prejudice Sprint, mislead the jury, and confuse the issues. *See* Fed. R. Evid. 403. Accordingly, the Court should preclude and prohibit any suggestion or reference by Vonage that Sprint is not the legal owner of the Asserted Patents.

Additionally, Vonage has not pled an ownership defense. *See* Doc. No. 207.  In fact, the parties have stipulated that Joe Christie is the sole inventor of the Asserted Patents. *Id.* at 6, ¶ 37.  Because there is no dispute, any testimony regarding inventorship is irrelevant and inadmissible. *See* Fed. R. Evid. 402.  Moreover, any reference by Vonage to inventorship would serve only to prejudice Sprint by misleading and confusing the jury.  Accordingly, the Court should preclude and prohibit any testimony relating to inventorship. *See* Fed. R. Evid. 403.

Vonage also has not pled or identified a defense of invalidity based on double patenting. *See* Doc. No. 207 (Pretrial Order).  Because evidence relating to double patenting is not related to any claim or defense in this matter, it is irrelevant and inadmissible. *See* Fed. R. Evid. 402.  Because no such defense has been advanced by Vonage, any evidence relating to double patenting would serve only to prejudice Sprint by misleading and confusing the jury and must be excluded. *See* Fed. R. Evid. 403.

Vonage also should be precluded under Rule 37 from raising an ownership, inventorship, or double patenting defense at trial because it did not identify such a defense in response to Sprint's discovery requests, or in the pretrial order. *See* Doc. No. 207.

## IV.    TIMING OF CLAIM AMENDMENTS OR PATENT CONTINUATIONS IN RELATION TO JOSEPH CHRISTIE'S DEATH

Sprint anticipates that Vonage will attempt to introduce evidence or attorney argument suggesting that Sprint improperly amended the claims of its asserted patents and/or improperly filed continuation patent applications after Mr. Christie's death. The timing of Sprint's claim amendments or continuation applications does not impact any issues relevant to Sprint's claims of patent infringement or Vonage's defenses. *See* Doc. No. 207. Moreover, the Pretrial Order is devoid of any allegations or inferences that the asserted claims are invalid for impropriety in the timing of Sprint's claim amendments or continuation applications. *See id.* In addition, the Court has already disposed of Vonage's defenses alleging that the asserted patents are unenforceable, which includes any argument the patents may not be enforced due to alleged wrongdoing before the Patent Office. Doc. No. 264 at 87. Accordingly, evidence regarding the timing of Sprint's claim amendments or continuations applications does not satisfy the threshold relevancy inquiry and, thus, should be excluded pursuant to Rule 402.

Such evidence should also be excluded under Rule 403 of the Federal Rules of Evidence. To the extent the timing of amendments and continuations relative to Joe Christie's death has any probative value—which Sprint disputes—it is far outweighed by the confusion to the jury and unfair prejudice to Sprint. The jury likely will be led to believe there is something improper about the timing of Sprint's actions and would call into question the validity of the patents or Sprint's motives in making its filings. Sprint's prosecution of its patents is not at issue in this case and arguments about the timing of amendments and continuations would necessarily raise questions about the propriety of Sprint's actions before the PTO. Such evidence is misleading, confusing and highly prejudicial.

7

## V.    EXPERT TESTIMONY NOT DISCLOSED IN EXPERT REPORTS

Vonage may attempt to offer opinions from its identified experts, Messrs. Allyn Strickland, Joel Halpern, and Frank Koperda, that were not disclosed in their respective expert reports.  Such testimony must be precluded.  By way of example, without limitation, Sprint requests that Mr. Koperda be precluded from offering any claim construction opinions at trial and from offering any opinions regarding the presence or absence of an "ATM interworking multiplexer" in the prior art.  Sprint also specifically requests that Mr. Halpern be precluded from offering any opinions regarding the presence or absence of the claimed "identifier" and the claimed "asynchronous communication" in the Accused Vonage System.   Furthermore, Sprint specifically requests that Mr. Halpern be precluded from offering any opinions with respect to the first and second limitation of Claim 1 of the asserted '561 patent.

Rule 26 of the Federal Rules of Civil Procedure provides that expert witness reports shall contain a "complete statement of all opinions to be expressed and the basis and reasons therefor."  Any opinions not expressed in an expert's written report should be excluded under Fed. R. Civ. P. 26(a)(2)(B) and 37(c)(1).  *See Nelson v. Calvin*, No. 01-2021, 2002 U.S. Dist. LEXIS 14164, at *9 (D. Kan. July 25, 2002) ("The failure to disclose a report meeting the requirements of Rule 26(a)(2)(B) may preclude that witness from testifying as to specific opinions not disclosed in the report.").

Sprint expects that Vonage will attempt to elicit testimony from its designated invalidity expert, Mr. Koperda, regarding his opinions on claim construction and regarding his opinions as to the presence of an "ATM interworking multiplexer" in the prior art.  Because his reports fail to address these topics, such testimony should be excluded.  Mr. Koperda's reports express his opinion that, *inter alia*, the claims of the Sprint patents are invalid in view of the prior art.  *See, e.g.*, Ex. E, Excerpts from Mr. Koperda's Report, p. 8.  In reaching his opinions on

8

validity, Mr. Koperda admittedly did not advance his own claim constructions and instead relied on the claims constructions provided by Sprint's expert witness.  *See, e.g., id* at 8, 38 and 56. Mr. Koperda stated, "[I]t is my opinion that <u>if the asserted claims are read in the manner set forth in Sprint's expert report</u>, then each of the asserted claims is invalid . . . ."  *Id*. at 8 (emphasis added).  At his deposition, Mr. Koperda confirmed that he has not opined on issues of claim construction.  *See, e.g.,* Deposition of Mr. Koperda, p. 32 ("In rendering my opinions, I used [Sprint's expert] Wicker's [opinion], and that's the only thing I believe I really should be discussing.") and pp. 193-194 ("I am not endeavoring to do claim construction.").

In addition to failing to advance his own claim construction opinions, Mr. Koperda also did not consider whether the prior art teaches an "ATM interworking multiplexer," as required by the claims of the '301 Family Patents.  This Court recently construed the claimed "interworking unit" to mean an "ATM interworking multiplexer."  Doc. No. 264, at 34. However, in comparing the prior art to the asserted claims, Mr. Koperda relied on a claim construction for "interworking unit" that was later rejected by the Court.  *See, e.g.* Ex. E at 55-58.  As such, Mr. Koperda has not provided any opinions regarding the disclosure of an ATM interworking multiplexer by the prior art references upon which his opinions rely.  Because Mr. Koperda's reports do not state any opinion as to whether the prior art references disclose an "ATM interworking multiplexer," he must not be permitted to express any such opinions at trial.

Sprint also expects that Vonage will attempt to elicit testimony from its designated noninfringement expert, Mr. Halpern, regarding the presence or absence of the claimed "identifier" and the claimed "asynchronous communication" in the Accused Vonage System.  For these claim elements, Mr. Halpern's noninfringement opinions rely exclusively on claim constructions that were recently rejected by this Court.  *See* Ex. F, Expert Report of Mr.

Halpern, p. 35 and 40.  Indeed, he failed to express any opinions in his reports as to whether the claimed "identifier" or the claimed "asynchronous communication," as properly construed by the Court, are present in the Accused Vonage System.  Mr. Halpern should not be permitted to express any opinions on the noninfringement of these claim elements under Rules 26 and 37.

Furthermore, Mr. Halpern should be precluded from offering any testimony as to the first limitation of claim 1 of the asserted '561 patent.  That limitation requires "receiving a signaling message for the user communication from a narrowband communication system into the processing system."  Claim 1, '561 patent.  Mr. Halpern's only opinion on this limitation, expressed in Appendix F of his February 28, 2007 report, is as follows: "This limitation is not present in the Vonage System for the same reasons discussed with respect to the limitation 'Receiving signaling formatted  for a narrowband system into a processing system' of Claim 1 of the '052 Patent. . ."  Doc. No. 200, Ex. K, at 1 (Appendix F to Halpern's 2/28/07 Report).  Thus, Mr. Halpern's "opinion" on claim 1 of the '561 patent is nothing more than an incorporation of his opinion from claim 1 of the '052 patent.

The Court, however, already has found this approach to result in the "absence of any meaningful discussion by Vonage of even the applicable claim language."  Doc. No. 264, at 56.  The Court further found that the differences between the limitations in the '561 patent and the '052 patent is a "critical distinction."  *Id.*  Accordingly, by analyzing only the '052 claim limitation, Mr. Halpern failed to provide any meaningful opinion on the limitation in claim 1 of the '561 patent.  The Court should, therefore preclude Mr. Halpern from now offering any opinion with respect to the first limitation of claim 1 of the '561 patent.

Finally, Mr. Halpern did not offer any opinions on the actual second limitation of claim 1 of the '561 patent.  That limitation requires "processing the signaling message to select a

network code." Claim 1, '561 Patent. Once again, Mr. Halpern attempted to incorporate an absent claim limitation by reference: "This limitation is not present in the Vonage system for the same reasons discussed with respect to the limitation 'In the processing system, selecting a network code that identifies a network element to provide egress for the user communication' of Claim 24 of the '561 Patent." Doc. No. 200, Ex. K, at 1 (Appendix F to Halpern's 2/28/07 Report). However, once again, the Court already has found significant distinctions between the claim 1 limitation and the limitation of claim 24 on which Mr. Halpern's analysis relies. *See* Doc. No. 264, at 48 (recognizing that claim 1 requires only that "the processing system is involved in the selection of the network code, while the claim 24 limitation requires that the processing system "actually select the network code"). By analyzing only the claim 24 limitation, Mr. Halpern failed to provide any meaningful opinion on the second limitation in claim 1 of the '561 patent. The Court should, therefore, preclude Mr. Halpern from now offering any opinion with respect to the <u>second</u> limitation of claim 1 of the '561 patent.

## VI.    EVIDENCE OF SPRINT'S SETTLEMENT WITH VOICEGLO

Sprint anticipates that Vonage will attempt to introduce evidence of Sprint's lawsuit against and settlement with VoiceGlo. This evidence, however, should be precluded under Fed. R. Evid. 402 because it is irrelevant to any issue in this litigation. To the extent Vonage argues the settlement agreement is relevant to its expert's damages analysis as a "comparable license," this argument has been considered and rejected by numerous courts.[5] Indeed, courts routinely have held that a settlement agreement made after litigation has been threatened, is probable, or has been filed is not a "comparable license" under *Georgia-Pacific*.

---

[5]    The second *Georgia-Pacific* factor looks at rates paid by the patentee for the use of other patents "comparable" to the patent-in-suit. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1137 (D.C.N.Y. 1970).

*See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983). Thus, the VoiceGlo settlement agreement is not relevant and must be excluded. Fed. R. Evid. 402.

Additionally, because settlement agreements are not probative of any issue, courts have excluded evidence of such agreements under Fed. R. Evid. 403 as unduly prejudicial:

> the Federal Circuit . . . has squarely held that in patent infringement litigation such as this the rates paid in the industry as a result of settlement negotiations may not be considered since they do not accurately reflect what a willing licensee would pay a willing licensor in an arm's length negotiation. Accordingly, the Court determines that these settlement agreements should be precluded under Federal Rule of Evidence 403 as more prejudicial than probative.

*Donnelly Corp. v. Gentex Corp.*, 918 F.Supp. 1126, 1137 (W.D. Mich. 1996) (citing *American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 464 (Fed. Cir. 1985).

Because Sprint's settlement with VoiceGlo was made during pending litigation, it is not evidence of a reasonable royalty and must be excluded.

## VII.    SPRINT'S ALLEGED NON-USE OF THE PATENTED TECHNOLOGY

Sprint anticipates that Vonage will argue at trial that Sprint does not use its patented technology. However, Sprint's purported non-use of the technology claimed in the Asserted Patents is not relevant to any of the remaining claims or defenses in this case. See Pretrial Order 18-24, May 21, 2007 (Doc #207). A patent affords a patentee the right to exclude others from making, using selling, or offering to sell the patented invention; however, it is well-settled that a patentee is not required to practice its invention. *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995). The issue of whether a patentee practices its invention is completely irrelevant to and inadmissible on the issue of infringement. *See Roche Prods. v. Bolar Pharma. Co.*, 733 F.2d 858, 861 (Fed. Cir. 1984) ("[T]he patentee does not need to have any evidence of damage or lost sales to bring an infringement action.").

The issue of whether a patentee practices its invention is generally relevant in only three contexts: (1) When a patentee is seeking its lost profits as a measure of patent damages, *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); (2) When a patentee is attempting to prove compliance with the marking statute, 35 U.S.C. § 287, *see Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002); or (3) When a patentee is seeking an injunction, *see, eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1840 (2006) (holding that the patentee's failure to practice the invention is relevant but not determinative of this issue). None of these issues is before the jury in this case.

Sprint only seeks reasonable royalty damages, not its lost profits. Sprint also will not seek to prove at trial that it marked its products with the numbers of the Asserted Patents, nor will Sprint seek to prove at trial that no products made by Sprint or its licensees are covered by the Asserted Patents.[6] Although Sprint will seek a permanent injunction in this case, this is a legal issue for the Court. See 35 U.S.C. § 283; *cf. In re: Tech. Licensing Corp.*, 423 F.3d 1286, 1290-91 (Fed. Cir. 2005) (holding that there is no right to a jury trial where the patentee seeks only equitable relief). Accordingly, because the issue of whether Sprint uses its patented technology is not relevant to any jury issue, the issue is not relevant and should be excluded.

Vonage's damages expert, however, argues that Sprint has never commercialized the asserted patents in his analysis of Georgia-Pacific factor 8. Expert Report of Dr. Strickland ¶69. Factor 8 of the analysis is "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity." But this argument misses the point. The correct analysis should be the profitability of the infringer's product, not the patentee's.

---

[6]    Sprint has not done the analysis to determine if any of its products or the products of its licensees are within the scope of any asserted claim. As set forth in its motion for summary judgment, Sprint believes it is not required to prove the negative, that is, that no product it or its licensees makes is covered by the asserted claims.

*State Contracting & En'g Corp. v. Condotte Am. Inc*., 346 F.3d 1057, 1072 (Fed. Cir. 2003) (holding that the infringer's profit margin is relevant to the reasonable royalty rate determination); *Interactive Pictures Corp. v. Infinite Pictures, Inc*., 274 F.3d 1371, 1385 (Fed. Cir. 2001) (same).  The underlying rationale is that, if the infringer could obtain significant profit by using the patented invention, the infringer would pay the patentee more to use the technology. "[A] reasonable royalty must be fixed so as to leave the infringer a reasonable profit." *Hughes Tool Co. v. Dresser Industries, Inc*., 816 F.2d 1549, 1558 (Fed. Cir. 1987)In the hypothetical negotiation, upon which the reasonable royalty is based, the parties therefore would agree to a higher royalty.  This factor does not extend to whether the patentee practices its invention.

Further, even if such evidence were marginally relevant, it should be excluded under Federal Rule of Evidence 403 because any probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.  If Vonage is permitted to argue that Sprint cannot prove it practices its patents, the jury may somehow wrongfully assume that Sprint's inability to offer such proof is a reflection on Sprint's case-in-chief or, worse, that it bars Sprint's claims.  But failure to practice the asserted patents is not a bar to relief.  *See eBay Inc. v. MercExchange, L.L.C.,* 126 S. Ct. 1837, 1840 (2006).  Moreover, if Vonage is allowed to argue Sprint does not practice its inventions, the jury might also improperly conclude that Sprint abandoned its inventions.  *See Moore v. United States*, 194 U.S.P.Q. (BNA) 423, 428 (Ct. Cl. 1977) ("To abandon the invention, the inventor must intend a dedication to the public.").  Vonage did not plead abandonment as a defense and the Court recently granted Summary Judgment to Sprint on Vonage's "additional defenses." Mem. & Order 87, Aug. 7, 2007 (Doc# 264).  Therefore, such evidence should be excluded.

## VIII.   EVIDENCE REFERENCING THE LACK OF DOCUMENTS DATED PRIOR TO 1998 PRODUCED BY SPRINT

Like most companies, Sprint maintains a document retention policy designed to preserve documents for a reasonable period of time before systematically purging its records as an economic necessity.  Because many of the documents requested by Vonage were subject to a six-year retention policy, Sprint was only able to locate and produce a limited number of responsive documents dated prior to 1998.[7]  Nevertheless, Sprint anticipates Vonage will attempt to improperly introduce evidence or attorney argument referencing the lack of pre-1998 documents in an effort to show Sprint has wrongfully destroyed or hidden important documents.  Vonage's allegations are meritless, and Sprint is entitled to an order excluding such evidence .

First, the lack of Sprint documents dated prior to 1998 should be excluded for not being relevant to any claim or issue in this case.  Indeed, the Pretrial Order lacks any reference to the lack of pre-1998 documents.  Doc. No. 207.  Accordingly, evidence of the lack of pre-1998 documents should be excluded pursuant to Rule 402.

In addition, Vonage's allegations have already been rejected by this Court.  In connection with a motion to compel, Judge Waxse rejected Vonage's contention that Sprint had wrongfully withheld relevant documents.  Doc. No. 186 at 2- 3.  Referencing Sprint's retention policy, Judge Waxse correctly recognized that no additional responsive documents exist.  *Id*. This Court should deny Vonage the opportunity to raise amorphous, unsubstantiated allegations of document destruction, especially when such allegations have previously been rejected.

This Court also should exclude such evidence under Fed. R. Evid. 403.  Any reference by Vonage to the lack of pre-1998 Sprint documents would inevitably insinuate that Sprint has destroyed or hidden such documents in "bad faith."  The prejudice inflicted on Sprint

---

[7]     Sprint sent the first in a series of Hold Notices in May, 2004.  Under Sprint's policy, documents created before May, 1998 may already had been purged by the time the Hold Notice was circulated.

2586061v1

by this type of evidence will be particularly unfair due to the fact that this evidence misrepresents Sprint's document retention policy as a nefarious spoliation plot. Accordingly, the admission of such evidence will unfairly prejudice Sprint, mislead the jury, and badly confuse the issues.

## IX.    SPRINT PROJECTS UNRELATED TO THE ASSERTED PATENTS

Sprint anticipates Vonage will attempt to introduce evidence referencing Sprint projects not related to the asserted patents ("unrelated projects"), including but not limited to ION, Fastbreak, Darwin, and IP-Fonecard ESD projects. Such evidence should be excluded.

Not surprisingly for an innovative company like Sprint, there were numerous other developmental projects before, during, and after the development of the Asserted Patents. Although some of these projects related generally to network communications, they did not relate to Sprint's efforts to develop and implement the inventions claimed in the Asserted Patents. The undisputed testimony in this case establishes that the unrelated projects are not connected to the development of the Asserted Patents. For example, ION and JCS2000 were distinct   (Gardner Depo. 117:5-12), had separate starting dates (*Id.* at 108:14-19 (JCS2000 started in 1993) and 117:13-16 (ION started in 1994)), and separate ending dates (*Id.* at 114:11-12 (JCS2000 terminated in 1999) and 117:21-118:1 (ION was ongoing in 1999)). Vonage did not dispute that the unrelated projects were irrelevant to the Asserted Patents. When Sprint objected to discovery requests on this basis, Vonage did not move to compel or seek additional information. Because the unrelated projects are not relevant to any issue presently before the Court, Sprint is entitled to an order excluding such evidence under Rule 401.

Further, such evidence also should be excluded under Rule 403. Given the complexity of the technology in this case, the jury's confusion of superficially similar but unrelated projects is highly probable. Importantly, the jury may confuse Sprint's decisions and expectations regarding an unrelated project with its decisions and expectations regarding the

16

Asserted Patents.  In addition, evidence concerning these unrelated projects would cause an undue waste of time.  Thus, the admission of such evidence must be excluded under Rule 403.

## X.    ARGUMENT OR EVIDENCE THAT SPRINT OVERWHELMED THE PATENT EXAMINERS

In an attempt to support its rejected prosecution laches defense, Vonage argued that Sprint abused the patent system so as to overwhelm the patent examiners assigned to review the Asserted Patents.  *See* Doc. No. 218 at 28-29.  Specifically, Vonage argues that Sprint attempted to overburden the patent system by requesting that the same patent examiner review thirty-four Sprint patent applications.  *Id.*  By overwhelming this patent examiner, Vonage alleges that Sprint undeservedly obtained overly-broad patent claims.  *Id.*

Evidence directed to Vonage's argument that Sprint overwhelmed the patent examiners should be excluded because it is not relevant to any claim or defense in this case. Doc. No. 207.  In fact, the only defense to which Vonage attempted to apply this accusation was its prosecution laches defense, which the Court recently rejected.  Doc. No. 264 at 81.  Vonage's argument that Sprint overwhelmed the patent examiners does not satisfy the threshold relevancy inquiry, and, thus, such evidence should be excluded pursuant to Rule 402.

Even if such evidence were relevant, this Court should exclude it under Fed. R. Evid. 403.  Because Vonage has no defense to which this evidence can apply, there is a substantial likelihood that these baseless allegations will mislead and distract the jury from consideration of the issues truly in dispute.  Moreover, were the jury actually to consider a defense that is not properly part of this case, it would significantly prejudice Sprint. Accordingly, the Court should preclude the admission of any such evidence under Rule 403.

2586061v1

## XI.     CLAIM CONSTRUCTION ARGUMENT OR TESTIMONY.

Claim construction is a matter of law that is governed by the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  Because the construction of the claims of the patents asserted in this case is within the exclusive province of the Court, any testimony to the jury on claim construction is improper and must be excluded.  *Id.*

Additionally, claim construction testimony must be precluded under Federal Rule of Evidence 403.  Given the complexity of the technology in this case, the jury's confusion of claim construction testimony is highly probable.  Importantly, the jury may improperly rely on improper claim construction testimony in performing its infringement analysis, which would unfairly prejudice Sprint.

## XII.    VONAGE'S DEFENSES ADJUDICATED AT SUMMARY JUDGMENT

This Court has rejected a number of Vonage's affirmative defenses and counterclaims.  Doc. No. 264.  Specifically, this Court rejected the following: "regards as" defense under 35 U.S.C. § 112, ¶ 2; Vonage's defense that the patents are unenforceable by virtue of the doctrine that a patentee may not broaden its claims by describing the product in terms of function; laches (including prosecution laches); estoppel; acquiescence; patent misuse; unclean hands; Vonage's 35 U.S.C. § 101 defense; and Vonage's unenforceability counterclaim (*e.g.* inequitable conduct).   Because summary judgment was entered in Sprint's favor on these defenses, evidence and argument directed to these rejected defenses should be precluded at trial.

## XIII.   EVIDENCE RELATING TO SPRINT'S "PROTOTYPE"

Sprint anticipates that Vonage will attempt to introduce evidence referencing a "prototype" of the Asserted Patents and, specifically, that Sprint did not have a working prototype at the time the Asserted Patents were filed with the Patent Office.  Such evidence must be excluded because it is not relevant.  There is no requirement under United States patent law

18

that an inventor actually build or practice their invention. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). Rather, the filing of a patent application serves as a constructive reduction to practice. *Id.* In this case, Sprint is relying on patent application filings to provide its reduction to practice, not the building of a prototype. It is well-settled that when a patentee relies on their application filings to show a reduction to practice, there is no need to consider whether or not they actually built the claimed invention. *See, e.g., Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1168 (Fed. Cir. 2006). The existence of a prototype and the timing of its construction is not relevant to any issue in this case.

Furthermore, any reference relating to the prototype must be excluded under Rule 403. References to the lack of an actual prototype would serve only to unfairly call into question the validity of the asserted patents. Indeed, a juror untrained in patent law may incorrectly conclude from such evidence that one needs to construct a physical prototype before they may file for a patent. Such a conclusion, of course, distorts the law and gives rise to significant prejudice to Sprint.

## XIV.  EVIDENCE RELATING TO THE CISCO AGREEMENTS

Sprint seeks to exclude all evidence relating to Cisco or any agreements or documents referencing Cisco in the manner set forth below.

### A.     The Sprint/Cisco Agreements

This Court struck all references to the Sprint-Cisco license agreements from the Pretrial Order[8] and rejected Vonage's license and misuses defenses based on the Cisco agreements.[9] Nevertheless, Sprint anticipates that Vonage may attempt to introduce these agreements or testimony relating to these agreements at trial. Such evidence would be a

---

[8] Doc. No. 202.
[9] Doc. No. 264.

violation of Orders by this Court and would, in effect, be an attempt to back-door its rejected "Cisco defenses" into the trial.

This Court has rejected Vonage's attempts to rely on the Sprint-Cisco license agreements in support of its defenses. *See, e.g*., Doc. No. 192, 202 and 264. Magistrate Judge Waxse ruled that Vonage unduly and inexplicably delayed in seeking to amend its pleadings to include defenses based on the Cisco agreements and that Sprint would be significantly prejudiced were Vonage allowed to pursue such defenses on the eve of trial. *See* Doc. No. 192 at 3-5. Two days later, despite this ruling from Magistrate Judge Waxse, Vonage attempted to insert references to the Sprint/Cisco license agreements into numerous unrelated defenses throughout the proposed Pretrial Order. Each of these references was promptly stricken by Judge Waxse for failing to comply with his previous Order. *See* Doc. No. 202 (striking the "substantive assertions based on the proposed affirmative defenses."). *Id.* This Court recently affirmed both of Judge Waxse's rulings noting that "Vonage's attempt to insert legal estoppel and contractual estoppel defenses, as well as related factual contentions, was clearly an attempt to subvert the magistrate judge's ruling denying Vonage's motion to amend its answer to assert the license and misuse defenses." Doc. No. 264, at 101-02.

Because Vonage has no defense to which the agreements could pertain, the Cisco agreements are irrelevant under Fed. R. Evid. 401. Indeed, the agreements do not mention or otherwise relate to the Asserted Sprint Patents in this action. *See* Doc. No. 227 at 12-13 (citing the Sprint-Cisco license agreements). Accordingly, because this evidence does not satisfy a threshold relevancy inquiry, it should be excluded pursuant to Rule 402. *See Wilkins v. Kmart Corp*., 487 F. Supp. 2d 1216,1219 (D. Kan. 2007)(citing Fed. R. Evid. 401 and 402).

20

Even assuming the Sprint/Cisco license agreements were relevant—which they are not—this Court should exclude such evidence nonetheless under Federal Rule of Evidence 403 because any such probative value is substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. In failing to raise its defenses that were based on the Sprint/Cisco agreements during discovery, Vonage unduly delayed in pursuing these defenses. This Court properly rejected Vonage's attempts to interject these defenses into the Pretrial Order because Vonage's reliance on the Sprint/Cisco agreements at this late stage of the proceedings would subject Sprint to significant prejudice. Doc. No. 192 at 4-5; Doc. No. 264 at 100-01. Sprint would suffer the same unfair prejudice were Vonage allowed to present any evidence relating to the Sprint/Cisco license agreements at trial because Sprint has never been afforded the opportunity to fully conduct discovery regarding these agreements. *See id.* Moreover, there is a substantial likelihood that the jury would be misled into believing that Vonage has actual defenses based on the Sprint/Cisco agreements, which it does not. Vonage's interjection of such evidence would be nothing more than an attempt to back-door its rejected "Cisco defenses" into the trial. Furthermore, introduction of the Cisco/license agreements would cause undue waste of time and confuse the jury. Accordingly, the admission of such evidence would unfairly prejudice Sprint, mislead the jury, and badly confuse the issues, and must be excluded. Fed. R. Evid. 403.

B.     **Evidence or Testimony That Vonage Purchased Components from Cisco**

Sprint anticipates that Vonage may attempt to inferentially raise an implied license defense[10] by arguing to the jury that it merely purchased components from Cisco and,

---

[10]     The express language of these Cisco agreements unequivocally states that no implied license or rights by estoppel were granted to Cisco or its customers. For example, section 2.5 of the Sprint/Cisco License Agreement states that "nothing contained in this Agreement shall be construed as a grant to Cisco of any license or right, expressly, by implication or by estoppel . . . ." See Doc. No. 227 at Ex. 3 (License

therefore, cannot be found to infringe Sprint's patents.  Such evidence and arguments are not only irrelevant and inadmissible, but they would be in violation of the Court's Order striking Vonage's license defense and would only serve to unfairly prejudice Sprint.

If Vonage were allowed to make such an argument, Sprint would be unfairly prejudiced and the jury would be misled to believe that Vonage was somehow immune from legal action, by license or otherwise, because it purchased products from Cisco.  The sole purpose for Vonage to introduce evidence or testimony that it purchased components from Cisco would be to improperly suggest to the jury that Vonage cannot be an infringer because it purchased, rather than constructed, the equipment.   The only reasons Vonage would argue that it purchased components from Cisco would be to raise questions in the minds of the jury as to why Cisco is not a party to this litigation, rather than Vonage, and to suggest to the jury that there can be no infringement if you buy pre-existing items, whether or not you combine and use them in an infringing manner.

There is a high likelihood that the jury would believe Vonage's acts of infringement to be immune or less culpable because they purchased components of their network from another company.   Whether Vonage mentions the word "license" is immaterial because the effective result is that the jury will believe Vonage permissibly can use products it purchased from Cisco.  Such evidence should be excluded under Fed. R. Evid. 403.

C.     **Evidence Regarding Certain Communications Between Vonage and Cisco.**

Sprint anticipates Vonage will argue that Cisco instructed Vonage how to assemble its network.  Such evidence is inadmissible hearsay.  Pursuant to Federal Rules of Evidence 801 and 802, evidence of out-of-court communications or instructions between Vonage

---

Agreement) § 2.5 (emphasis added).  In addition, Section 5.2(d) specifically states that "[t]his Agreement carries no implied licenses."  Id. at Ex. 3 (License Agreement § 5.2(d) (emphasis added)).

and Cisco may not be offered at trial to prove the truth of the matters asserted. Because any reliance by Vonage on evidence of Vonage-Cisco communications would be to establish the truth of the asserted matters, such evidence should be excluded as hearsay.

Even if Cisco instructed Vonage how to build its network, which Sprint disputes, that evidence does not impact any issue relevant to Sprint's claims of patent infringement. Such communications also have no bearing on any of Vonage's defenses. *See* Doc. No. 264 (Order on Summary Judgment). Additionally, to the extent Vonage attempts to introduce this evidence to show a lack of knowledge or intent to infringe, patent infringement is a strict liability offense, for which evidence of knowledge and intent are irrelevant. 35 U.S.C. § 271(a); *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (en banc). Accordingly, the communications between Vonage and Cisco have no bearing on any factual issue before the jury, and this evidence should be excluded as irrelevant pursuant to Rule 402.

Finally, evidence related to Vonage's communications with Cisco should be excluded under Fed. R. Evid. 403. For instance, this evidence may inappropriately suggest that Vonage is not liable for patent infringement because of its dealings with Cisco. Further, such evidence may give rise to irrelevant questions in the minds of the jurors such as whether Cisco is liable for infringement of Sprint's patents and whether Cisco should have been a party to this litigation. Because Rule 403 serves to exclude evidence that is likely to cause such harmful confusion, this Court should exclude all evidence directed to any Vonage-Cisco communications concerning the assembly of Vonage's network.

### D.    Evidence Regarding the "$1 Million" Agreement Between Sprint and Cisco

Sprint expects that Vonage will attempt to introduce evidence at trial suggesting an established royalty of $1 million per patent exists for the Asserted Patents based on the

Sprint/Cisco agreements.  Sprint is entitled to an Order precluding such evidence because no such established royalty exists for the Asserted Patents in the Sprint/Cisco agreements.

As noted in Section XV.A., all Cisco agreements should be excluded.  Because the alleged $1 million royalty is in these agreements, it, too, should be excluded.  Even if the agreements were not excluded, though, Vonage nevertheless should be precluded from arguing the Sprint/Cisco agreements contained an established royalty of $1 million per patent.

As an initial matter, Cisco and Sprint did not enter into a single license under this agreement.  (Ball Depo at 148:4-6 (Q: "Did Sprint license any of its technology to Cisco?" A: "No.")).  The agreement sets forth an option to license, but the parties were still required to execute a license agreement for the specific patent to be licensed, which was embodied in Exhibit B to that agreement.  Exhibit B was ever executed by the parties and there is no license at issue.  *See* Doc. No., at Ex. 167, p. b-4.  For this reason, the option agreement is not relevant.  .

Further, the plain language of the agreements makes clear they do not relate to the Asserted Patents.  Paragraph 1.7 of the Sprint/Cisco agreement, which gives Cisco an option to license "Designated Sprint Component Patents," defines the patents as only "those U.S. Component Patents that are issued or issuing from Designated Sprint Applications."  Doc. No. 167, at Ex. 1 (License Agreement), § 1.7 (emphasis added).  The agreement further defines "Designated Sprint Applications" as those applications "listed on Exhibit 'A.'"  *Id.* at § 1.6. Notably, not one of the Asserted Patents is included in the list and the listed applications are not related to the Asserted Patents.  *See* Doc. No. 167 at Ex. 8, Declaration of Adam Seitz, ¶¶ 3-9.

Moreover, the Asserted Patents never could have been licensed to Cisco under this agreement because the <u>Asserted Patents did not exist at the time of the agreement</u>.  Further, even if they existed, each of the Asserted Patents is an <u>architecture</u> patent, not a <u>component</u>

patent.  Vonage and its experts do not, and cannot, dispute this fact.  As evidenced by the language in the agreement itself, architecture patents were specifically excluded by Sprint and Cisco when the parties entered into the agreement.  *See* Doc. No. 167, Ex. 1 (License Agreement), § 1.3 ("excluding any patent that would be infringed only by the Architecture of a system or group of systems.").  To the extent the $1 million figure in the Cisco agreement could possibly be relevant, it would be relevant to component patents that existed at the time of the agreement. Because the Sprint/Cisco agreements do not relate to the Asserted Patents in any way, they are irrelevant and must be excluded.  Fed. R. Evid. 402.

Even if the $1 million option pertained to the Asserted Patents, Vonage has no proof that this license arises to an established royalty.   For a rate to be an established royalty, it must have been used repeatedly within the relevant commercial context so that it arises to essentially the "going rate" for a license under the patent.  *See, e.g., Phillips Petroleum Co. v. Rexene Corp.*, 1997 WL 781856, *17 (D.Del. 1997) (listing five criteria necessary for an "established royalty" including that "they must be paid by a sufficient number of persons to indicate the reasonableness of the rate").  Here, at most, the $1 million option fee was a one-time arrangement with an equipment manufacturer, not a telecommunications services provider.  Thus, the $1 million option falls far short of qualifying as an established royalty for the Asserted Patents.

Even assuming evidence regarding the Sprint/Cisco agreement were relevant, this evidence should be excluded because any probative value associated with the $1 million agreement would be substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403.  Evidence of, or reference to, the $1 million option arrangement contained within the Sprint/Cisco agreement would unfairly prejudice Sprint by misleading the jury into believing the

agreement set forth an established royalty for the Asserted Patents. Further, evidence of a potential license fee for component patents would only serve to confuse the jury when Sprint is solely asserting unrelated architecture patents. If such evidence is allowed in the case, there is a substantial likelihood the jury will be misled and not perform a proper Georgia-Pacific analysis to determine the amount of damages to which Sprint is entitled. *See Georgia-Pacific*, 318 F.Supp. at 1120. Such an outcome would significantly prejudice Sprint's ability to be compensated by "no less than a reasonable royalty" for Vonage's infringement. 35 U.S.C. § 284. Accordingly, any evidence of, reference to, the $1 million arrangement contained within the Sprint/Cisco agreement should be excluded because it will only serve to mislead the jury, confuse the issues, and unduly prejudice Sprint.

## XV.    TESTIMONY REGARDING PRIOR VONAGE SYSTEM ARCHITECTURES

Sprint respectfully seeks to exclude any testimony, direct or indirect, referring to prior implementations of the Vonage system. Similarly, Sprint moves to exclude any testimony referencing the Virginia point-of-presence configuration of the Vonage system.

Sprint's infringement allegations currently extend to numerous implementations of the Vonage system, including system architectures that are no longer used by Vonage. These prior implementations are referred to as the "SIP Gateway" architecture and the "Nailed" configuration. Vonage employed these implementations during the 2002-2004 timeframe. Notably, these alternative implementations of the Vonage system relate only to outbound calling scenarios. Vonage's architecture for inbound call scenarios has remained unchanged since Vonage's service was first offered in 2002. Sprint also has accused of infringement a portion of Vonage's system referred to as the "Virginia point-of-presence." This point-of-presence operates in a manner different than all other portions of Vonage's network.

26

Despite Sprint's contention that the SIP Gateway architecture, the Nailed configuration and the Virginia Point-of-presence configuration infringe asserted claims, Sprint contacted Vonage and offered to withdraw its infringement allegations directed to these implementations to reduce the number of issues presented to the jury, limit the potential for jury confusion, and to shorten the length of the trial. Sprint's approach asks the jury to assess only one system architecture as opposed to four. In addition, the reduction in architectures would allow Sprint to significantly reduce the number of asserted claims in this case. A reduction of claims will obviously streamline and reduce the duration of the upcoming trial.[11]

In return, Sprint requested that Vonage agree not to refer to, or present evidence of, the previous outbound architectures at trial, and not mention to the jury that Sprint had withdrawn certain asserted claims. Vonage refused to make such a stipulation, indicating that it intends to allege that the prior configurations ("SIP Gateway" architecture and the "Nailed" configuration) are "non-infringing alternatives" relevant to its damages theories.[12]

The Court should preclude Vonage from presenting any evidence in support of its purported "non-infringing alternatives" theory. By way of context, "part of the reasonable royalty determination under *Georgia Pacific* is whether the accused infringer had acceptable non-infringing alternatives available to it at the time of the hypothetical negotiation." *Fresenius Medical Care Holdings, Inc., v. Baxter Intern., Inc.*, 2006 WL 1646113, *1 (N.D.Cal.) (N.D.Cal.

---

[11]    Because Vonage's system architecture for inbound call scenarios has not changed since 2002, Sprint's offer to withdraw its infringement allegations directed to the prior architectures does not impact Sprint's infringement allegations against Vonage's inbound call scenarios. Rather, for the three asserted Sprint Patents containing claims directed to outbound calling scenarios (the '932, '572, and '064 Patents), Sprint has offered not to assert such outbound-based claims against the prior architectures.

[12]    Sprint's offer to withdraw its infringement contentions regarding the prior outbound architectures was contingent on Vonage agreeing not to present evidence of these architectures at trial. Until Vonage agrees not to present such evidence or unless the Court precludes presentation of this evidence pursuant to this motion, Sprint will have no choice but to allege that the prior outbound architectures infringe the Sprint Patents and will offer evidence of such infringement at trial.

27

2006).  Accordingly, before Vonage can rely on prior architectures as "non-infringing alternatives," Vonage must establish with reasonable certainty that such architectures are <u>non-infringing</u>.[13]  *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F.Supp. 1333, 1372 (D. Del. 1994) ("fundamental principles of justice require that in fixing damages in a patent infringement action, all doubts should be resolved in favor of the patentee and against the infringer.").  To meet this burden, Vonage must provide expert analysis of the infringement issue.  *AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) ("expert infringement testimony is generally required in cases involving complex technology.").

        Vonage's non-infringement expert, Joel Halpern, failed to provide any non-infringement analysis in his expert reports for the SIP Gateway architecture, the Nailed configuration, or the Virginia Point-of-presence configurations.  For instance, Mr. Halpern's expert reports provide no non-infringement analysis for the SIP Gateway architecture or the Nailed configuration.  Instead, his reports merely contend that Sprint's expert "does not provide any support for infringement" of these architectures.  *See* Doc. No. 204, pp. 33, 49, 55 (Mr. Halpern's report) (failing to perform any infringement analysis regarding the SIP Gateway architecture);  Doc. No. 200, Ex. K, at 12 (Mr. Halpern's Supplemental Report) (failing to perform any infringement analysis regarding the Nailed configuration).  Likewise, Mr. Halpern directly admitted during his deposition that he had not formulated any noninfringement positions with respect to the Virginia Point-of-presence configuration.  *See* Halpern Depo., at pp. 256-57 (Q: "So at this point you don't have an opinion with respect to the Virginia inbound point of presence?" A: "I have – I – I really haven't looked at it sufficiently carefully." Q: "And Since your supplemental report, have you formulated any opinions with respect to the Virginia point of

---

[13]     The accused infringer must also demonstrate that prior implementations were "acceptable."  Vonage similarly has no expert testimony to demonstrate that any of the prior implementations would be acceptable in the present network environment.

28

presence?" A: "I haven't formed an – an expert opinion on it.  **I haven't done the analysis.**") (emphasis added).

Because Mr. Halpern failed to provide any non-infringement opinions for the prior configurations, he should not be permitted to offer any non-infringement opinions regarding these configurations at trial.  Rule 26 of the Federal Rules of Civil Procedure expressly provides that expert witness reports shall contain a "complete statement of all opinions to be expressed and the basis and reasons therefor."  Fed. R. Civ. P. 26(a)(2)(B).  Any opinions not expressed in an expert's written report should be excluded under Rules 26(a)(2)(B) and 37(c)(1).  *See Williams v. Burlington N. & Santa Fe Ry. Co.*, 13 F. Supp. 2d 1125, 1127 (D. Kan. 1998).  Allowing Mr. Halpern to offer previously-undisclosed opinions at trial regarding alleged non-infringement by Vonage's prior configurations would constitute unfair and harmful surprise to Sprint.  *See Cohen v. Lockwood*, No. 02-2246, 2004 U.S. Dist. LEXIS 5989, at *16–17 (D. Kan. April 8, 2004).  Accordingly, the Court should preclude Vonage from offering any evidence regarding its prior architectures as non-infringing alternatives.  In the event the Court grants Sprint's motion, Sprint will not pursue its claims of infringement with respect to Vonage's prior outbound architectures.  As a result, evidence pertaining to prior outbound architectures is irrelevant and should be precluded.


Dated:  August 17, 2007.                               Respectfully submitted,

                                                        /s/ Adam P. Seitz_____
                                                       B. Trent Webb, KS Bar No. 15965
                                                       Adam P. Seitz, KS Bar No. 21059
                                                       Eric A. Buresh, KS Bar No. 19895
                                                       SHOOK, HARDY & BACON L.L.P.
                                                       2555 Grand Blvd.
                                                       Kansas City, Missouri 64108
                                                       Phone: (816) 474-6550

Facsimile: (816) 421-5547

Counsel for Sprint Communications
Company, L.P.

2586061v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of August, 2007, a true and accurate copy of the above and foregoing **SPRINT'S MOTIONS *IN LIMINE* AND BRIEFS IN SUPPORT** was e-filed with the Court using the CM/ECF system which sent notification to all parties entitled to notice.


   /s/ Adam P. Seitz
Attorney for Sprint Communications Company, L.P.