# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

_____

SPRINT COMMUNICATIONS COMPANY L.P.,

                                 Plaintiff,

                  v.

VONAGE HOLDINGS CORP. and
VONAGE AMERICA, INC.,

                             Defendants.

_____

Case No.  05-2433-JWL

## VONAGE AMERICA, INC. AND VONAGE HOLDINGS CORP.'S MEMORANDUM IN OPPOSITION TO SPRINT COMMUNICATIONS CO., L.P.'S MOTION TO EXCLUDE THE OPINIONS OF VONAGE'S EXPERT JOEL M. HALPERN REGARDING THE DISCLOSURE-DEDICATION RULE AND THE ALL-LIMITATIONS RULE

Vonage America, Inc. and Vonage Holdings Corp. (collectively, "Vonage") submit this Memorandum in Opposition to Sprint Communications Co., L.P.'s ("Sprint's") Motion to Exclude the Opinions of Vonage's Expert Joel M. Halpern Regarding the Disclosure-Dedication Rule and the All-Limitations Rule (the "Motion").  Sprint argues that Mr. Halpern's opinions regarding the scope and infringement of the claims of the patents at issue should be excluded because he has referenced the "doctrine of equivalents", the "disclosure-dedication" rule, and the "all-limitations" rule.

Sprint's Motion, now Sprint's third attack on Mr. Halpern's reports and proffered opinions, still fails to state a claim for relief.[1]  The portions of Mr. Halpern's reports which Sprint proffers as the basis for its grievances, do not "invade the province of the Court".  Motion at 1.  In patent cases,

---

[1] Sprint lodged its first unsuccessful challenge to Mr. Halpern's expert qualifications by motion submitted May 15, 2007 (Doc. 197), which the Court has denied (see Doc. 264) (denying same).  Subsequent to this Motion filed on August 7, 2007 (its second challenge to Mr. Halpern's opinions), Sprint moved for a third time seeking yet again to preclude Mr. Halpern's testimony on matters to which Sprint's own expert has opined repeatedly and extensively.  See Sprint's Motion In Limine, submitted Aug. 17, 2007, Doc. 287 at 8-11, 18 (challenging Vonage expert testimony on claim construction and other matters).  Vonage respectfully submits Sprint has more than exhausted its turns at the plate on the propriety and sufficiency of Mr. Halpern's qualifications and opinions.

questions regarding claims interpretation, and other ultimately legal conclusions, frequently require experts to reference patent law in their analyses. The Court is capable not only of hearing Mr. Halpern's helpful expert opinion[2] but also of making its own judgments concerning matters of law. In reality, Mr. Halpern's expert analysis is exactly what the Federal Circuit has said is often *required* in patent cases when applying the doctrine of equivalents.

Accordingly, Vonage respectfully requests that the Court deny Sprint's Motion.

## I.    **BACKGROUND**

Sprint has claimed that Vonage's voice over internet protocol ("VoIP") system infringes on certain claims made in seven patents owned by Sprint (the "Asserted Patents"). Vonage denies Sprint's claims. The VoIP system does not infringe on the Asserted Patents because it does not meet every limitation of any claim of any of the Asserted Patents. In support of Vonage's defense of non-infringement, Vonage has submitted two expert reports from Mr. Halpern, one dated February 28, 2007 and a supplemental report dated April 27, 2007. Mr. Halpern is an expert in the computer and networking industries with particular experience in Session Internet Protocol ("SIP"), the protocol used in Vonage's VoIP system. As the Court found in rejecting Sprint's first attempt to preclude Mr. Halpern's opinions and testimony from trial, "his extensive computer science coursework combined with his twenty-seven years of professional experience in the computer and networking industries," qualifies him as an expert in this case. See Mem. & Ord. of Aug. 7, 2007, at 92-93.

In this second of three attempts to limit Mr. Halpern's testimony, Sprint now argues that certain of Mr. Halpern's opinions regarding the interpretation of the claims of Asserted Patents, and Sprint's allegations of infringement both literally and under the doctrine of equivalents, should be excluded because Mr. Halpern offered an opinion that the scope of the asserted claims is limited

---

[2]  The Court has specifically found that Mr. Halpern "clearly possesses relevant technical knowledge that would tend to aid the trier of fact." See Mem. & Ord. of Aug. 7, 2007, Doc. 264, at 92.

under the doctrine of equivalents, the disclosure-dedication rule, and the all-limitations rule.  Sprint claims that Mr. Halpern does not offer factual or technical analysis in these sentences, but instead "attempts to opine on issues of law" and that his testimony will "encroach on the domain of the Court".  Id. at 2, 7.  For its legal basis, Sprint cites merely to the general proposition that experts should not be allowed to testify on purely legal issues.  Id. at 4.

Contrary to Sprint's assertions, the sections of Mr. Halpern's reports that Sprint cites provide specific factual analysis concerning the claims of the Asserted Patents and Vonage's VoIP system, and referencing Mr. Halpern's understanding of the rules in order for Mr. Halpern to make an informed and helpful explanation of the facts:

> I understand that material disclosed in the specification of a patent, but not claimed, dedicates that unclaimed material to the public, thereby precluding coverage under the doctrine of equivalents.  *In the present case, the applicant disclosed that the processing system may select the narrowband switch, a DS0 connection, or both. However, in Claim 18, Sprint chose to only claim the selection of the narrowband switch*, thus the selection of the DS0 connection is dedicated to the public and Sprint is precluded from asserting that selecting a DS0 connection is equivalent under the doctrine of equivalents. . . .

> I understand that the doctrine of equivalents cannot be applied to a claim limitation in a manner that would effectively ignore or eliminate that limitation from the claim.  *In the present case, the claim limitation "formatted for a narrowband system" would be completely eliminated if broadband SIP signaling were deemed to be an equivalent.*  Thus, this limitation is not present in the Vonage system under the doctrine of equivalents. . . .

> I understand that the doctrine of equivalents cannot be applied to a claim limitation in a manner that would effectively ignore or eliminate that limitation from the claim.  *In the present case, the limitation "selecting a network code to provide egress for the user communication" would be eliminated if the processing system received the network code from the TA instead of selecting it itself.*  Thus, this limitation is not present in the Vonage System under the doctrine of equivalents. . . .

> I understand that the doctrine of equivalents cannot be applied to a claim limitation in a manner that would effectively ignore or eliminate that limitation from the claim. *In the present case, the claim limitation "selecting a network code to provide egress for the user communication" would be eliminated if the processing system received the network code from the Media Gateway instead of selecting it itself. For example, the specification describes the importance of centralized control of the switching so less expensive switches may be used.* Thus, this limitation is not present in the Vonage System under the doctrine of equivalents.

See Excerpts from Mr. Halpern's report, attached as Exhibit "A" at 54, 58, 59, and 62 (emphasis added).

As demonstrated here, and as the Court has found, Mr. Halpern's well-qualified expert factual analysis of the claims in the Asserted Patents in comparison to Vonage's VoIP system likely will assist the Court in applying the disclosure-dedication and all-limitations rules to the doctrine of equivalents. His opinions do not "invade" the province of the Court merely by referencing his understanding of those rules for the purpose of providing his factual analysis. Indeed, in patent cases, this is exactly the sort of expert analysis that is not only appropriate, but often necessary.

## II.    LEGAL ARGUMENT

It is not entirely clear from the Motion how Sprint can claim that Mr. Halpern has made only "bare legal conclusions, not founded in technical analysis." Sprint Br. at 2. Instead, Mr. Halpern has performed the sort of factual analysis that is quintessentially helpful in patent cases: he has analyzed the claims that are made in the Asserted Patents and compared them to Vonage's VoIP System.

Sprint does not claim that Mr. Halpern's understanding of the law is incorrect – indeed, Sprint uses nearly identical language itself when it describes the disclosure-dedication rule and the all-limitations rule in its Motion. Id. at 5-6. It would appear that Sprint's real objection to Mr. Halpern's testimony is that, having performed his factual analysis, he found that the claim

limitations of the Asserted Patents were not present in the Vonage System.  Unfortunately for

Sprint, that sort of objection is not an appropriate reason to exclude expert testimony.

> ### A.    Application Of The Doctrine Of Equivalents Is Often Of Sufficient Complexity That Testimony Of A Qualified Expert To Describe The Claim Limitations Is Necessary

The Federal Circuit has held, and this Court has recognized, that when the patent holder

relies on the doctrine of equivalents, as Sprint does, "the difficulties and complexity of the doctrine

*require* that evidence be presented to the jury or other fact-finder through the particularized

testimony of a person of ordinary skill in the art, typically a qualified expert... ." AquaTex Indus.,

Inc. v. Techniche Solutions, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (emphasis added); see also Mem.

& Ord. at 89.  Such testimony is both appropriate and expected in order to, "on a limitation-by-

limitation basis[,] describe[e] the claim limitations and establish[] that those skilled in the art would

recognize the equivalents."  Id. (patentee could not withstand summary judgment on the issue of

infringement under the doctrine of equivalents in the absence of expert testimony); see also Lighting

World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1357 (Fed. Cir. 2004) (district court did not

err by requiring patentee to present evidence as to the level of ordinary skill in the art as part of its

proof of infringement under the doctrine of equivalents).

Under the doctrine of equivalents, Sprint must prove that each limitation in the asserted

claims is found in the Vonage system.  Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241,

1250-1251 (Fed. Cir. 2000).  Corollaries to the doctrine of equivalents include the disclosure-

dedication rule and the all-limitations rule.  The disclosure-dedication rule bars application of the

doctrine of equivalents "when a patent drafter discloses but declines to claim subject matter".

Johnson & Johnston Assocs., Inc. v. R.E. Serv. Co., 285 F.3d 1046, 1054 (Fed. Cir. 2002).  By

declining to claim subject matter, the patent drafter "dedicates that unclaimed subject matter to

the public".  Id.  In such circumstances, the disclosure-dedication rule bars application of the

doctrine of equivalents because "to recapture subject matter deliberately left unclaimed would

'conflict with the primacy of the claims in defining the scope of the patentee's exclusive right'".

Id. (quoting Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1424 (Fed. Cir. 1997)).

While its application to a particular claim is a question of law, the disclosure-dedication rule

turns on the application of law to facts, and whether "one of ordinary skill in the art can

understand the unclaimed disclosed teaching upon reading the written description," Pfizer, Inc. v.

Teva Pharms. USA, Inc., 429 F.3d 1364, 1378 (Fed. Cir. 2005), a particularly apt subject for

expert testimony.

The "all-limitations" rule (also known as the "all-elements" rule) bars application of the

doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused

device. Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc., 262 F.3d 1258, 1280

(Fed. Cir. 2001). "Such a determination *must be premised upon a proper claim construction*," id.

(emphasis added), which, itself, is to be in accord with the understanding of a person of ordinary

skill in the art of the invention at the time the invention. See, e.g., Phillips v. AWH Corp., 415 F.3d

1303, 1313 (Fed. Cir. 2005) (*en banc*). If a court determines that a finding of infringement under the

doctrine of equivalents "would entirely vitiate a particular claim[ed] element," then the court should

rule that there is no infringement under the doctrine of equivalents. Bell Atl. Network Servs., 262

F.3d at 1280.

Here, Mr. Halpern's expert testimony, as reflected in the sections of his reports cited by

Sprint, likely will be helpful to the Court in applying the doctrine of equivalents because Mr.

Halpern does exactly what the Federal Circuit has suggested that experts should do: he has

described the claim limitations of the Asserted Patents in order to help establish what those skilled in

the art would recognize as equivalents. AquaTex, 479 F.3d at 1329.

**B.     Sprint Has Offered, And The Court Has
        Considered, Expert Testimony On Issues Of Law**

As Sprint notes, application of the disclosure-dedication rule or the all-limitations rule is a question of law to be decided by the court.  <u>Pfizer</u>, 429 F.3d at 1378; <u>Lockheed Martin Corp. v. Space Systems/Loral, Inc.</u>, 324 F.3d 1308, 1321 (Fed. Cir. 2003).  Indeed, all interpretations of patent claims through claim construction are determinations that are matters of law for the court to decide.  <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372, 384 (1996).

While it is undisputed that claim construction is a matter of law for the Court, both parties have offered expert opinion on claim construction, as is typical in patent cases.  Its three stabs notwithstanding, Sprint does not take issue with the propriety of an expert offering a proposed construction of the terms in the Asserted Patents.  Indeed, Sprint does not extend its Motion, based exclusively on the propriety of an expert testifying as to matters of law, to Mr. Halpern's opinions on the meaning of the terms in the claims of the Asserted Patents.  <u>See, e.g.</u>, Ex. A at 38-39 (opining on meaning of "interworking unit" in the claims of the '301 Patent Family).  Sprint has offered its own similar legal conclusions (<u>see, e.g.</u>, March 27, 2007 Rebuttal Expert Report of Stephen B. Wicker, attached as Exhibit "B" at 5, 15, and 27 (construing claim terms "narrowband switch," "user information," and "identifier"[3])), and the Court has expressly considered such proffered opinions in deciding Vonage's Motion for Summary Judgment.  <u>See, e.g.</u>, Mem. and Ord. at 16 ("Dr. Wicker's declaration also states that by identifying and selecting the network codes of the respective opposite endpoints, in light of the '572 Patent's claims and specification, one of ordinary skill in the art would recognize that the processing system has

---

[3]  "It is my opinion that one of skill in the art that [sic] would not have construed 'identifier' as used in claim 23 of the '429 patent so narrowly.  In the context of the '429 patent, 'identifier' should be construed as 'a logical address enabling the transport of data through a network.'"  Ex. B at 27.

selected a 'connection' between those two endpoints."), 17 (citing Dr. Wicker's declaration as to meaning of claim terms, and similar discussion of term selecting a network "code").

To the extent that Sprint challenges Mr. Halpern's statements as improperly invading the Court's province, the Court need look no further than its own findings to date, and the no fewer than four reports from Mr. Wicker Sprint has offered on the subject of claim construction.  See Ex. B; see also Mr. Wicker's Expert Report of January 12, 2007 (attached as Exhibit "C") at 37 (as to the '932 patent), 39 (as to the '572 patent), 42(as to the '561 patent), 44 (as to the '052 patent), 46 (as to the '294 patent), 49 (as to the '064 patent), and 51 (as to the '429 patent); Mr. Wicker's April 27, 2007 Supplemental Report, attached as Exhibit "D," at 16, 34 (discussing construction of claim terms); Mr. Wicker's Rebuttal Expert Report of May 2, 2007 (attached as Exhibit "E") at p. 3 ("All that is required by the claims is that an identifier is selected and is contained in the header of voice packets exiting the interworking unit. The claims do not require that the identifier enable routing all the way to the TA."); see also Mr. Wicker's declaration in support of Sprint's Opposition to Vonage's Motion for Summary Judgment, Doc. 217 at Ex. A.

Thus, if the statements by Mr. Halpern of which Sprint complains were to be excluded, Mr. Wicker's own analysis should be excluded from evidence on the same grounds.

C.     **Expert Testimony Is Admissible If It Would Assist
        A Court When Dealing With Complex Technologies**

Sprint couches its Motion as one pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), though Sprint makes no challenges here to Mr. Halpern's qualifications, the reliability of his testimony, or the "fit" of his analysis to the facts at issue.  In any event, Mr. Halpern's statements should not be excluded because, pursuant to Federal Rule of Evidence 702, expert testimony concerning the technological aspects of a patented invention is admissible if it would be of assistance to a court or a jury when dealing with complex

technologies.  Fed. R. Evid. 702; Daubert, 509 U.S. at 589 (the court shall determine the

reliability and thus the relevance of expert testimony).  Accordingly, this Court has broad

discretion in deciding whether to admit expert testimony.  Moses v. Halstead, 477 F.Supp.2d

1119, 1123 (D. Kan. 2007).  As held by the 10th Circuit, even close calls on the admission of

expert testimony ought to be resolved in favor of admissibility.  Robinson v. Missouri Pacific R.

Co., 16 F.3d 1083, 1090 (10th Cir. 1994.) ("[d]oubts about whether an expert's testimony will be

useful 'should generally be resolved in favor of admissibility'") (quoting J. Weinstein & M.

Berger, Weinstein's Evidence, ¶ 702[02], at 702-13 to -15 (1988)).

     Even if a true Daubert challenge, Sprint's Motion still fails to meet its mark:  Sprint's

challenges here go to the weight, not the admissibility, of his opinions:

> Although expert testimony should be excluded if it is speculative
> or conjectural, or if it is based on assumptions that are so
> unrealistic and contradictory as to suggest bad faith or to be in
> essence an apples and oranges comparison, *other contentions that
> the assumptions are unfounded go to the weight, not the
> admissibility, of the testimony.*

Boucher v. United States Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir.1996) (internal quotations

and citations omitted) (emphasis added); Libas, Ltd. v. United States, 193 F.3d 1361, 1366 (Fed.

Cir. 1999) ("[T]he proposition for which [Daubert and Kumho] stand, that expert testimony must

be reliable, goes to the weight that [the] evidence is to be accorded as well as to its

admissibility"); McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir.1995) ("Disputes as

to . . . faults in his use of . . . a methodology, or lack of textual authority for his opinion, go to the

weight . . . of his testimony").

     Here, any question of the reliability of Mr. Halpern's factual analysis of the claims

limitations, based on his understanding of the referenced patent laws, ought to go to the weight

of the evidence, rather than to admissibility, particularly because, in this instance, the question of

the application of the doctrine of equivalents and its corollaries is to be decided by this Court rather than the jury. <u>Markman</u>, 517 U.S. at 372, 384 (questions of claim construction are matters of law for the Court to decide).[4]  Where issues are to be decided by a court, the utility of expert testimony is untarnished by the downside risk that the roles of witness and judge will be confused.  <u>See, e.g.</u>, <u>Moses</u>, 477 F.Supp.2d at 1124 (where issues were to be decided by court, court stated that it was "capable of screening factual statements from legal conclusions").  In other words, this Court is capable both of hearing qualified and helpful expert testimony and also of making its own judgments.

> **D.    Experts May Refer To Existing Law And Terms That Touch On Legal Concepts Which May Be Employed In Technical Areas, Such As Patent Law, If Such Testimony Assists The Court, And <u>May Give Opinions On The Ultimate Question Of Infringement</u>**

The reality is that, contrary to Sprint's implication, courts in patent cases often do not follow the rule that expert witnesses cannot testify about the state of the law or the application of law to a specific factual controversy.  <u>See, e.g.</u>, <u>Beckman Instruments, Inc. v. LKB Produkter AB</u>, 892 F.2d 1547 (Fed. Cir. 1989) (reviewing a trial court's decision not to grant a new jury trial, the court did not criticize the lower court's allowance of such expert testimony); Howard G. Pollak, <u>The Admissibility and Utility of Expert Legal Testimony in Patent Litigation</u>, 32 Idea: J.L. & Tech. 361 (1992) (citing cases).  This may be because patent law is a discipline replete with so-called "mixed questions of law and fact," and purely legal issues, including – as in the instant case – claim construction and interpretation.  <u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 989 (Fed.Cir.1995) (Mayer, J., concurring in the judgment) ("claim interpretation is a matter of law depending on underlying factual inquiries"), <u>aff'd</u>, 517 U.S. 370

---

[4] Mr. Halpern's opinions are a far cry from the opinions offered by Sprint's proffered expert Gerald J. Mossinghoff. Among other things, Mr. Mossinghoff's opinions infringe upon the province of the jury, as fact-finder in this case,

(1996); Pollak, at 364 (citing claim construction as example of mixed question of law and fact as

to which expert testimony may be admitted). Thus, testimony directed at claim construction and

interpretation may understandably cross the neat boundary that typically separates fact testimony

from legal conclusions.

Accordingly, the Federal Circuit has held that – contrary to Sprint's assertions – experts

may refer to existing law and terms that touch on legal concepts which may be employed in

technical areas, such as patent law, if such testimony assists the court, and may give opinions on

the ultimate question of infringement:

> [T]he court may consult extrinsic evidence such as expert and inventor testimony,
> dictionaries, and learned treatises. These have all been recognized as tools that
> can assist the court in determining the meaning of particular terminology... [and]
> in understanding the technology or educating itself about the invention.

Mem. & Ord. at 20, citing Phillips, 415 F.3d at 1317-1318; see also Snellman v. Ricoh Co., Ltd.,

862 F.2d 283, 287 (Fed. Cir. 1988) ("Although claim interpretation is a question of law . . .

expert testimony is admissible to explain the meaning of technical terms in the claims and to give

an opinion on the ultimate question of infringement").

In fact, according to the Tenth Circuit, expert testimony opining as to legal conclusions

may be admissible to reach a discrete legal conclusion relevant to the case so long as the expert's

testimony assists the court or jury. U.S. v. Wade, 203 Fed. Appx. 920, 930-931 (10th Cir. 2006)

(no error in admission of expert's testimony because "[a]lthough he reached legal conclusions,

he did so only after explaining his understanding of the relevant law and then applying the facts

as he understood them" and "[h]is conclusions were presented as opinions rather than

unquestionable facts"); United States v. Dazey, 403 F.3d 1147, 1172 (10h Cir. 2005) (allowing

---

because he purports to opine on the question of whether infringement, if proven, was willful – a non-technical
analysis the trier of fact is capable of undertaking, and must undertake, itself.

expert's opinion "[e]ven if his testimony arguably embraced the ultimate issue" because his testimony assisted, rather than supplanted, the jury's judgment); see also Delta Mining Corp. v. Big Rivers Elec. Corp., 18 F.3d 1398, 1402 (7th Cir. 1994) (expert opinion testimony to interpret contract language is admissible to "clarify or define terms of art, science or trade").

Here, Mr. Halpern has already been found to be qualified to provide his opinions regarding patent infringement.  The portion of his expert opinions cited by Sprint that refer to Mr. Halpern's understanding of the doctrine of equivalents, the disclosure-dedication rule, and the all-limitations rule merely apply the facts as Mr. Halpern understands them.  See, e.g., Wade, 203 Fed. Appx. at 930-931.  Regardless of what Sprint's erroneous arguments suggest, Mr. Halpern's opinions are based on his factual analysis of the claims in the Asserted Patents and Vonage's VoIP system.  Mr. Halpern's expert opinions regarding the disclosure-dedication rule and the all-limitations rule likely will assist the Court in applying those rules to the doctrine of equivalents.

## III.     **CONCLUSION**

Mr. Halpern's opinions do not "invade" the province of the Court.  Accordingly, for all the foregoing reasons, Vonage respectfully requests that the Court deny Sprint's Motion to exclude the expert testimony of Mr. Halpern regarding the disclosure-dedication rule and the all-limitations rule.

Respectfully submitted,

BARBER EMERSON, L.C.

August 21, 2007                By:    s/ Terrence J. Campbell
                                      Terrence J. Campbell - 18377
                                      tcampbell@barberemerson.com
                                      Catherine C. Theisen - 22360
                                      ctheisen@barberemerson.com
                                      1211 Massachusetts Street
                                      P.O. Box 667
                                      Lawrence, KS 66044
                                      (785) 843-6600
                                      (785) 843-8405 Facsimile

                                      s/ Donald R. McPhail
                                      Patrick D. McPherson
                                      Barry Golob
                                      Donald R. McPhail
                                      Duane Morris LLP
                                      1667 K Street N.W.
                                      Washington, DC 20006-1608
                                      202-776-7800
                                      pdmcpherson@duanemorris.com
                                      bgolob@duanemorris.com
                                      drmcphail@duanemorris.com

                                      *Attorneys for Defendants/Counterclaim*
                                      *Plaintiffs Vonage America, Inc. and Vonage*
                                      *Holdings Corp.*

## <u>INDEX OF EXHIBITS</u>

Exhibit A – Excerpts from Mr. Halpern's Initial Expert Report dated February 28, 2007 (*under seal*)

Exhibit B – Excerpts from March 27, 2007 Rebuttal Expert Report of Stephen B. Wicker

Exhibit C – Excerpts from Mr. Wicker's Expert Report of January 12, 2007

Exhibit D – Excerpts from Mr. Wicker's April 27, 2007 Supplemental Report

Exhibit E – Excerpts from Mr. Wicker's Rebuttal Expert Report of May 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2007 a copy of Vonage Holdings Corp. and Vonage America, Inc.'s Memorandum in Opposition to Sprint Communications Co., L.P.'s Motion to Exclude the Opinions of Vonage's Expert Joel M. Halpern Regarding the Disclosure-Dedication Rule and the All-Limitations Rule was filed electronically on this date, with a notice of case activity to be generated and sent electronically by the Clerk of Court to:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com
>
> *Attorneys for Plaintiff*
> *Sprint Communications Company L.P.*

> s/ Terrence J. Campbell