# EXHIBIT E

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P.,

Plaintiff,

v.

VONAGE HOLDINGS CORP.,
VONAGE AMERICA, INC.

Defendants.

Case No. 05-2433-JWL

**REBUTTAL EXPERT REPORT OF DR. STEPHEN B. WICKER
REGARDING APRIL 27, 2007 REPORTS OF MESSRS. HALPERN AND
KOPERDA**

device may provide some intelligence in that process, I believe the limitations are literally met as I've discussed. If not, the differences between Vonage's implementation and the specification description are insubstantial. The specifications describe querying elements outside the processing system for the processing system to make the necessary selections, which is exactly the way the Vonage system acts. The functions and results are the same. In both the specification and the Vonage network, queries are made that result in the establishment of a communication path by a processing system.

At page 5 of his report, Mr. Halpern asserts that my failure to address one or more of his comments indicates an agreement with regard to the infringement of some of the asserted patents by a NAT'd call. He seems to be confused regarding the contents of my expert reports on infringement as well as the nature of the report process. He asserts that my failure to address elements of his rebuttal somehow indicates an agreement with his statements. I am not aware of any requirement that I address each and every factitious or incorrect statement in his rebuttal, and do not agree that such a "failure" in any way constitutes an agreement with such statements. My testimony in this case is reflected in my reports, and not in any perceived tension between that report and Mr. Halpern's and Mr. Koperda's seemingly endless sequence of rebuttals.

As an example, Mr. Halpern suggests I have no opinion on the '561 patent in the NAT'd scenario. At page 26 of my Halpern Rebuttal report, I indicated that the '561 patent analysis would be largely the same as that of the '572 patent. If that was not sufficiently explicit, my analysis as to the '561 patent is the same as that of the '572 patent except that the '561 patent requires the network code to identify a network element to provide egress from the packet communication system. If this limitation of independent claims 1 and 24 is not literally met, it is certainly met under the doctrine of equivalents. While it is true that the network code used to transmit voice packets from the media gateway is that of the RTP relay, this is an insubstantial difference from using the network code identifying a Vonage user agent (or TA). The RTP relay acts as a pass-through device as the voice packets are communicated to the TA. The function of transmitting voice to the egress element (or TA) is identical. The way this is accomplished is substantially the same. Voice packets are communicated directly to the TA. There just happens to be a pass-through device in the communications path instead. Finally, the result is identical. The voice packets reach the TA and leave the packet communication system.

I note that Mr. Halpern does not identify any relevant distinctions in a NAT'd scenario as it would apply to the '932 and '064 patent. Thus, the discussion here appears to focus on the respective position both I and Mr. Halpern took in our original reports and my March 27 rebuttal report, and there is no reason to re-hash my opinions in that regard.

With respect to Mr. Halpern's '429 argument in the NAT'd scenario, I disagree with his contention that the identifier in the asserted claims requires identification sufficient to route to the TA. All that is required by the claims is that an identifier is selected and is contained in the header of voice packets exiting the interworking unit. The claims do not require that the identifier enable routing all the way to the TA. Accordingly, it is my opinion that the processing system selects an identifier that is appended to the voice

establish a connection with the TA because the RTP relay is just that – a relay. Thus, the SIP invite sent to the media gateway does indicate the second connection.

I note Mr. Koperda takes issue with my citation to the prosecution history of the '572 patent in which the examiner issued claims over the LaPorta '010 reference. In addition to that previously cited, in the prosecution of the '052 patent, the examiner used the same LaPorta '852 patent to reject the '052 claims. On pages 2-3 of the examiner's April 9, 2001 rejection, the '852 is clearly being used to reject all limitations. I note the '010 patent is only added to meet the limitations requiring SS7 signaling. The prosecuting attorney amended the claims and distinguished LaPorta as follows:

> page 18, lines 14-23). In La Porta, the processing system selects an ATM connection and transfers a control message to an ATM switch indicating the ATM connection. To the ATM switch, the ATM connection identifies an output VPI/VCI for routing ATM cells out of the ATM switch. The ATM connection does not identify "a network element to provide egress from a packet communication system."

It is my opinion that the examiner was aware of the relevant distinctions between LaPorta '852 and the asserted '052 claims. I note the claims issued in light of this awareness, which leads to and supports the conclusion that the '052 is not anticipated by the very same reference that the examiner carefully considered.

May 2, 2007
Date:

Dr. Stephen B. Wicker