## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

_____
                                                        )
SPRINT COMMUNICATIONS COMPANY L.P.,    )
                                                        )
                              Plaintiff,    )
                                                        )  Case No.  05-2433-JWL
                  v.                          )
                                                        )
VONAGE HOLDINGS CORP. and            )
VONAGE AMERICA, INC.,                    )
                                                        )
                              Defendants.    )
_____ )

## VONAGE AMERICA, INC. AND VONAGE HOLDINGS CORP.'S MEMORANDUM IN OPPOSITION TO SPRINT COMMUNICATIONS CO., L.P.'S MOTIONS *IN LIMINE*

Vonage America, Inc. and Vonage Holdings Corp. (collectively, "Vonage") submit this Memorandum in Opposition to Sprint Communications Co., L.P.'s ("Sprint's") Motions *In Limine* (collectively, Sprint's "Motion").  Vonage addresses each of Sprint's numbered arguments in the order in which Sprint presented them.

Sprint essentially asks the Court to preclude the evidence that negatively affects Sprint's claims regarding liability and damages, without any basis to demonstrate that the evidence is inadmissible or unduly prejudicial.  Under Federal Rule of Evidence ("Rule") 403, the Court should "give the evidence its maximum reasonable probative force and its minimal reasonable prejudicial value."  "[A]*ll evidence* is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it."  Koch v. Koch Industries, Inc., 2 F.Supp.2d 1385, 1389 (D. Kan. 1998) (citations omitted).  The Court should deny Sprint's Motions because Sprint has failed to meet its burden of proving that the evidence it seeks to exclude here is "plainly inadmissible *on all potential grounds*," see Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218-19 (D. Kan. 2007).

Dockets.Justia.com

## I.    THE PRIOR ART IN VONAGE'S §282 NOTICE IS ADMISSIBLE.

The prior art cited by Vonage in its Notice pursuant to §282 consists in its entirety of prior art either (1) identified or provided by Sprint to U.S. and foreign patent examiners for consideration in connection with patent applications in which Mr. Christie was named an inventor (compare the '572 Patent, Compl. Ex. A, at p. 2-6 (identifying over 310 prior art references) (attached as Exh. "A") or (2) identified and discussed by Vonage's invalidity expert, Mr. Koperda, in his expert submissions.  Although a lengthy list, the references on Vonage's §282 Notice were identified as prior art during prosecution of Sprint's patents and thus known to Sprint years prior to this litigation.

Each of the cited references are a part of the Asserted Patents' prosecution history that the Court may consider when construing the disputed claim terms.  See, e.g., Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005).  Whether prior art is relevant to a litigation for purposes of a defense of invalidity hinges on the construction of the claims of the Asserted Patents.  Vonage's expert on invalidity, Mr. Koperda, discussed in his report those references he opined were relevant based on the few proposed claim constructions Sprint has provided prior to trial.  Given the number of claim terms yet to be construed, and that Sprint has yet to disclose its position as to how the claims should be construed, it was, and remains, impossible for Vonage and its experts to offer evidence and opinions addressing all possible permutations of the 61 patent claims at issue.  Sprint's own expert opinions have continued to evolve after discovery and expert deadlines, underscoring Sprint's shifting the grounds in this case even after the close of discovery.  Of course, should the Court's construction of the remaining claim terms at issue render moot any of the prior art identified in Vonage's §282 notice, Vonage will not thereafter introduce these references into evidence.

As Sprint has been aware of the references in Vonage's §282 notice since long before Vonage has, and because the claims have yet to be construed by the Court, Sprint's Motion should be denied.

## II.    SPRINT'S ARGUMENT AS TO EVIDENCE REGARDING WILLFUL INFRINGEMENT IS BOTH MISPLACED AND NOW MOOT.

Sprint's attempt to preclude any assertions by Vonage that it relied on "advice of counsel" is misplaced. Indeed, its motion now turns on a rule of law that this week was overturned by an *en banc* Federal Circuit. Sprint's motion on this point is geared entirely toward Sprint's proofs that Vonage allegedly breached an "affirmative duty to exercise due care to determine whether or not he is infringing, including the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity." Sprint Br. at 4 (citation omitted). However, in an *en banc* decision this week, the Federal Circuit removed any basis for Sprint's position: "Because we abandon the affirmative duty of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel." In re Seagate Tech., LLC, Misc. No. 830, 2007 U.S. App. LEXIS 19768 at *22 (Fed. Cir. Aug. 20, 2007) (*en banc*). As such, Sprint's Motion on this point must be denied as moot.

Moreover, contrary to Sprint's contention, and as emphatically "reemphasized" by the Federal Circuit just this week, "there is *no affirmative obligation to obtain opinion of counsel*." In re Seagate Tech., LLC, Misc. No. 830, 2007 U.S. App. LEXIS 19768 at *22 (Fed. Cir. Aug. 20, 2007) (*en banc*) (emphasis added). See also id. at *18 (discussing finding in Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1345-46 (Fed. Cir. 2004) (*en banc*) that an accused infringer's failure to obtain legal advice does not give rise to an adverse inference with respect to willfulness).

III.    **SPRINT'S MOTION AS TO INVENTORSHIP, OWNERSHIP AND DOUBLE-PATENTING SHOULD BE DENIED.**

This court granted Sprint's motion to preclude Vonage's defense of inventorship and ownership and thus Sprint's motion *in limine* as to these issues should be denied as moot. Vonage does not contest that Sprint is the owner of any rights to the Asserted Patents, and does not intend to offer any evidence to the contrary at trial.  Similarly, Vonage has not raised any defense of double patenting  as the claims have not been construed by the court.  At which time the claims are construed, Vonage may appropriately raise the defense.

IV.    **EVIDENCE AS TO SPRINT'S AMENDMENT OF THE PATENT CLAIMS, INCLUDING THE TIMING THEREOF, IS RELEVANT AND NECESSARY TO THE CONSTRUCTION OF THE CLAIMS AND TO VONAGE'S DEFENSES.**

Sprint asserts that the timing of Mr. Christie's death in relation to the amendments to the asserted claims would be prejudicial to Sprint.  Once again, Sprint attempts to blur the distinction between prejudicial with unduly prejudicial.  Indeed, the fact that Mr. Christie died three years before the substantive claim amendments and prosecution history of the asserted patents is a set of facts that are highly relevant to this case.  There can be no doubt of the importance of the prosecution history of the Asserted Patents to at least the issues of enablement, written description (as originally filed claims form part of the written description), prosecution history estoppel, and rebutting the presumption of validity (i.e. burden on examiner).

Similarly, Mr. Wicker has made the date of Mr. Christie's death an issue in this case, as Sprint has repeatedly attributed a particular chosen claim language to Mr. Christie, when in fact Mr. Christie had already passed away when the amendment that gives rise to the claim term was submitted to the U.S. Patent Office.  See, e.g.,  Report of Dr. Steven Wicker, 30, March 27, 2007 (attached as <u>Exhs.</u> "B" and "C" respectively) ("It is interesting to note that the patentee chose to

claim his invention using the term interworking unit when he was obviously aware of an ATM

multiplexer."). Further:

> Mr. Halpern does not take into account that fact that the claim language of the asserted claims contains no such limitation. Furthermore, <u>Mr. Christie was well aware</u> that the overwhelmingly preferred term for an ATM packet was "cell," and <u>yet he chose to use the term "packet"</u> in certain claims (see, e.g., claim 1 of the `294) or he chose to use the word "routing system" in other claims (see, e.g., claim 2 of the `429). If anything, this points to increased coverage, as opposed to the overly narrow construction preferred by Mr. Halpern. (emphasis added)
>
> Report of Dr. Stephen Wicker, 2, May 3, 2007.
>
> Thus, Sprint cannot claim undue prejudice when it is in fact relying on information that

must be directly rebutted by the timing of Mr. Christie's death.


## V.    SPRINT'S CHALLENGES TO VONAGE'S EXPERT TESTIMONY ARE INAPPROPRIATE AND INSUFFICIENT.

Sprint moves to preclude the testimony of Mr. Halpern, Vonage's expert on infringement,

and Mr. Koperda, Vonage's expert on invalidity.

Sprint's attempt to exclude Vonage's expert Mr. Halpern from testifying about the

presence or absence of an "identifier" in the Vonage system and from rendering an opinion on

both limitations of asserted claim 1 of the '561 patent is disingenuous.  There can be no dispute

that Mr. Halpern has rendered an opinion on each limitation of asserted claim 1 of the 561

patent, as evidenced by the claim charts.  See, Appendix F to Feb 28, 2007 Expert Non-

Infringement Report of Joel Halpern (attached as <u>Exh.</u> "D") "I have included a claim chart

expressing my opinion that the remaining asserted claims of the '561 patent are likewise not

infringed, either literally or under the doctrine of equivalents." . . . .[the limitations of claim 1 of

the 561 patent] "are not present in the Vonage System for the same reasons discussed with

respect to the limitations 'receiving Signaling Formatted for a Narrowband System into a

processing system of Claim 1 of the 052 Patent as described in my report in Sec. 5."  Sprint's

assertion is a red hearing – the claim limitations, although different, fail to be met for exactly the same analysis.  Tellingly, in Sprint's initial expert report, Sprint provided the same analysis with regard to these two claim limitations.

Additionally, Mr. Halpern has provided testimony regarding the use of a VPI/VCI as an identifier with respect to an ATM system.  It would seem that Sprint is arguing that Vonage intends to have Mr. Halpern provide testimony that would be inconsistent with the Court's claim construction of the term "identifier."  Vonage does not intend to do so.

Sprint moves to preclude the testimony of Vonage's invalidity expert, Mr. Frank Koperda, as to the presence or absence of an "ATM interworking multiplexer" in the prior art on the grounds that such would exceed the scope of his reports.  Sprint's argument, however, is not supported by the facts, and so should be denied.

At issue here are the claim terms "interworking unit" and "interworking device" that appear in the claims of the '301 family of Asserted Patents (the '294, '064 and '429 patents).  This Court has recently construed these terms to mean an "ATM interworking multiplexer".  <u>See</u> Doc. 264 at pp. 36, 38-39.  Sprint now seeks to exclude Mr. Koperda's testimony on the grounds that his proffered reports did not include the precise words "an ATM interworking multiplexer" when referring to the prior art systems and their operation.

Sprint's argument is no more than a red herring.  The prior art references applied by Mr. Koperda against the claims of the '301 family patents, including the Spanke '426 patent and the NBBS Architectural Tutorial, both specifically disclose the use of an ATM network, and ATM interworking multiplexers are a necessary part of such a network.  In his reports, Mr. Koperda specifically addresses the operation of interworking devices to convert voice communication

from a DS0 connection into packets for transmission over an ATM network, which is what an "ATM interworking multiplexer" does in the context of the patent claims.

Sprint's arguments regarding the alleged absence of an "ATM interworking multiplexer" from Mr. Koperda's analysis of the prior art is therefore unsupported by the substance of his reports. Accordingly, Sprint's Motion in this respect should be denied.

## VI.     SPRINT'S SETTLEMENT WITH VOICEGLO SHOULD NOT BE REFERENCED.

The parties agree that any reference to the settlement agreement between Sprint and former co-defendants Voiceglo Holdings et al. should be precluded.

## VII.    SPRINT'S ALLEGED NON-USE OF THE TECHNOLOGY IS RELEVANT AND A FACTOR THE JURY MUST CONSIDER.

Sprint concedes that the fact it has only "paper patents" is directly relevant to the issue of the injunctive relief. Br. at 13. Despite this concession, Sprint asks the Court to hide this evidence from the jury as "not relevant to any jury issue." To the contrary, the fact of Sprint's alleged non-use of the inventions is at the heart of issues the jury must decide.

As Sprint would have the Court overlook, the fact that Sprint contends it makes and sells nothing according to the Asserted Patents is a key factor to, even if not dispositive of, Vonage's defense of enablement. See, e.g., AK Steel Corporation, v. Sollac and Ugine, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (affirming finding of non-enablement supported because defendant presented documentary and testimonial evidence from patentee that despite its desire to utilize patent in manner consistent with challenged invention, inventor was unable to do so at the time of the patent filing); Enzo Biochem, Inc., v. Calgene, Inc., 188 F.3d 1362, 1374-1375 (Fed. Cir. 1999) (district court properly considered inventor's failed attempts in determining issue of non-enablement). As the Court has found, whether Sprint, or any licensee of Sprint, makes or sells

any product covered by the Asserted Patents is similarly pertinent to the resolution of Vonage's

notice and marking defenses pursuant to 35 U.S.C. §287.  See Doc. 264 at 85-86.

In addition, Sprint's use (or nonuse) of the Asserted Patents is directly at issue in Sprint's

claim for damages.

Sprint's failure to commercialize any product based on the Asserted Patents will be

relevant to any calculation of the amount of the reasonable royalty Sprint will ask the jury to

award if successful in proving its claims.  One factor expressly enumerated in Georgia-Pacific

Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1127 (S.D.N.Y. 1970) as relevant to the

reasonable royalty analysis is the level of profits that *the patent-holder* makes from sale of the

products associated with the asserted patents:

> What must be considered now as one of the elements, *inter alia*, relevant to the
> determination of the amount of a reasonable royalty, [is] the rate of profits that
> [the patent-holder] was making on [the product] at the time GP began its
> infringement... .

Georgia-Pacific, 318 F.Supp. at 1127.  See also Expert Report of Raymond Sims, attached as

Exhibit "F," at 8-9 (citing Georgia Pacific as authoritative).  Accordingly, *and contrary to*

*Sprint's contentions*, the level of the *patent-holder's* profits has, for decades, been an established

factor considered in calculating a reasonable royalty.  See, e.g., Third Wave Technologies, Inc. v.

Stratagene Corp., 405 F. Supp. 2d 991, 1011-1013 (W.D. Wis. 2005) (analyzing patent-holder's

bargaining position based on, *inter alia*, the *patent-holder's* "anticipated sales in the

neighborhood of nearly $750 million").

In reality, Sprint's Motion is a backdoor attempt to exclude the damages testimony of

Vonage's damages expert, Dr. Strickland, without meeting the requirements of *Daubert* and its

progeny.  By declining to challenge his testimony directly, Sprint appears to recognize that any

such challenge would go only to the weight accorded to the testimony, not its admissibility.  Dr.

Strickland's testimony regarding the effect on any reasonable royalty of Sprint's failure to commercialize a product is not only admissible but highly probative. To the extent Sprint takes issue with Mr. Strickland's methods, it must do so on cross-examination.

Sprint's additional argument that evidence of Sprint's failure to profit from the Asserted Patents would be too prejudicial for the jury to hear is merely a cover for Sprint's fear of the probative value of the evidence. Evidence is only *unfairly* prejudicial to the extent it has "an *undue* tendency to suggest decision *on an improper basis*, commonly, though not necessarily, an emotional one." Koch, 2 F.Supp.2d at 1389. The word "unfair" in "unfair prejudice" is the key: "all evidence is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it." Id. In other words, potent evidence that is *entirely relevant* is generally called "highly probative." Sprint's arguments about the prejudicial value of the evidence are far-fetched, because they do not deal with relevant issues.

If the jury has to consider damages, it should consider all relevant evidence on the subject. Sprint's motion to exclude evidence of Sprint's "non-use of technology claimed in the Asserted Patents" should therefore be denied.

## VIII. SPRINT'S FAILURE TO PRODUCE DOCUMENTS THAT SHOULD HAVE BEEN MAINTAINED PURSUANT TO ITS DOCUMENT RETENTION POLICY IS RELEVANT TO SPRINT'S CREDIBILITY

Juries are "entitled to draw inferences based on the absence of documents that one would reasonably expect to be in a party's possession." Koch v. Koch Indus., Inc., 2 F. Supp. 2d 1385, 1395 (D. Kan. 1998). Accordingly, a party's "gap in production," or proof that evidence has been lost or destroyed – even if inadvertent – is relevant and admissible, if for no other purpose, to attack the nonproducing party's reliability and credibility. Id; see also Caprotta v. Entergy Corp., 168 F.3d 754, 757-758 (5th Cir. 1999); Anderson v. Production Management Corp., No. 98-2234, 2000 U.S. Dist. LEXIS 5696, at *11 (E.D. La. Apr. 26, 2000).

Sprint's definitive assertion in its Motion that those documents from 1998 and before were the subject of a strict document retention policy is contrary to its representations throughout the course of discovery and the Court's Order dated May 9, 2007.  <u>See, e.g.</u>, Motion to Compel Christie documents and related papers, Docs. 146-47, 165, 174, and 186, at 2 (suggesting documents simply cannot be located by Sprint because they have allegedly been lost). To the extent that Sprint is unable to produce documents that should have been maintained in accordance with its document retention policy, Vonage should be permitted to introduce such evidence.  Futhermore, "[T]he jury is entitled to draw inferences based on the absence of documents that one would reasonably expect to be in a party's possession." <u>Koch</u>, 2 F. Supp. 2d at 1395.

The relevance of Sprint's lack of documents outweighs any prejudice that Sprint might suffer per Rule 403.

## IX.    SPRINT CANNOT PRECLUDE EVIDENCE OF PROJECTS "UNRELATED" TO THE ASSERTED PATENTS.

Sprint's motion to preclude references to those projects Sprint declares "unrelated" to the asserted patents is belied by its own admissions.  Elsewhere in the record, Sprint represents that it has undertaken no analysis to determine what if any of its products or services fall within the scope of the claims of the Asserted Patents.  See, e.g., Br. at 12 (discussing Sprint's own "*purported* nonuse of the technology"); Doc. 264 at 85 (noting Sprint's "equivocal" assertion that it is "not aware of" any product or service made or sold by Sprint under the Asserted Patents).

Sprint describes itself as an "innovative company" in the same breath with which it seeks to preclude Vonage from mentioning such innovations.  If Sprint has and is going to continue to pepper the record by describing itself in as an "innovative company" (Br. at 16) with a "vast

patent portfolio" (Doc. 199 at 13), touting that "Mr. Christie's inventions and the related innovations made by people working with Mr. Christie have resulted in a patent portfolio of well over 100 issued United States Patents" that is "one of the largest project portfolios in the United States" (id.), Sprint cannot reasonably preclude those it has sued from exploring the details.

Specifically, Sprint's experience with its project entitled "ION" is directly relevant to the hypothetical negotiation between Sprint and Vonage in October 2001. See Report of Allyn D. Strickland at 17-18 and 25 (attached as Exh. "G"). As the Federal Circuit has noted, "the reasonable royalty calculus assesses the relevant market as it would have developed before and absent the infringing activity," based on "sound economic and factual predicates." Integra Lifesciences I, Ltd. v. Merck KGaA, 02-1052, 02-1065, 2003 U.S. App. LEXIS 27796, *25-26 (Fed. Cir. June 6, 2003). As such, the state of similar art, and "economic risks and rewards" at the time of the hypothetical negotiation. Id. at *26.

ION is a contemporaneous example that illustrates the risks and difficulties involved with implementing new technologies in the telecom industry. Sprint, an established telecom company, abandoned ION in October 2001 – the date of the hypothetical negotiation.[1] Sprint noted in its 2001 annual report that "the reward was too far in the future to support continued investment given current market conditions" (See Exh. "G" at 18). This parallels Vonage's situation in 2001, except Vonage was a start-up VoIP telecom company with a new technology (with a history of quality problems) and an unproven business model.

Moreover, ION, like the JCS2000, was a Voice-over-ATM based technology. Sprint chose VoATM over VoIP in the late 1990s. Both of these failures to commercialize technologies

---

[1]     While Sprint contends the date of the hypothetical negotiation is March 2002, Sprint's damages expert, Raymond Sims, testified he considered this five month difference had no effect

by Sprint are relevant to understanding the risks and rewards facing Vonage in 2001, and both would have been known as of the date of the "hypothetical negotiation." As such, Sprint cannot establish that its other project are nit relevant for any purpose so as to be precluded on its Motion.

## X.     IF SPRINT "OVERWHELMED" THE PATENT EXAMINER, SUCH IS A FACT SPRINT CANNOT PRECLUDE FROM EVIDENCE AT TRIAL

Sprint seeks to preclude Vonage from proffering any argument or testimony to the effect that Sprint overwhelmed the patent examiner responsible for the Asserted Patents on the grounds that such is irrelevant and highly prejudicial to Sprint. Sprint's motion, however, fails on both grounds and so should be denied.

With respect to relevance, evidence regarding the number of patent applications filed by Sprint and the number of prior art references submitted in each are both relevant to Vonage's defenses in this matter. For example, evidence of one or both of these points would support Vonage's contention that the Asserted Patents are invalid over certain prior art references which were cited during prosecution, by showing that the examiner did not fully appreciate the content of the prior art or the scope of the claims being sought by Sprint.

Moreover, it is quite disingenuous for Sprint's to contend now that evidence on the workload burdens faced by patent examiners is somehow irrelevant in view of the reports and testimony of their patent expert, Mr. Mossinghoff, on the amount of time an examiner spends reviewing a patent application. If Sprint is going to suggest that each of the Asserted Patents was thoroughly reviewed by the examiner prior to issuance, Vonage is entitled to present evidence

---

on the reasonable royalty analysis. See Deposition of Raymond Sims at 43:5-9 (attached as Exh. "K")

showing that Sprint filed a very large number of applications with that examiner, and cited

dozens, if not hundreds, of prior art references and co-pending applications.

Because such evidence is therefore not clearly inadmissible "*on all potential grounds*,"

see Wilkins, 487 F. Supp. 2d at 1218-19, Sprint's Motion to preclude evidence or testimony

regarding the number of patent applications filed by Sprint, and the number of prior art

references and co-pending applications cited in each, should be denied.

## XI.    EVIDENCE ON CLAIM CONSTRUCTION IS NECESSARY AND UNAVOIDABLE.

Sprint argues that testimony to the jury on claim construction is improper and should be

excluded.  Sprint's argument is fundamentally flawed, lacks any legal support, and if granted

would prevent Vonage from properly asserting its various affirmative defenses.

The claims of the Asserted Patents have, for the most part, yet to be construed.  The

Court has ordered the parties to address claim construction in jury instructions.  To the extent the

disputed claims are not construed until the jury is ready to deliberate, Sprint must offer, and the

jury *must* hear, testimony on the parties' competing constructions of the claim terms in dispute,

and, then, testimony as to why the Vonage system falls, or doesn't fall, within those terms under

either proffered construction.  See, e.g., Markman v. Westview Instruments, Inc., 52 F.3d 967,

979-81 (Fed. Cir. 1995) (claims must first be construed, *then* compared by trier of fact to accused

system).  At the very least, the Court will need to hear testimony in its role as construer of the

claims, and it would be wholly impractical to excuse the jury every time such testimony is

offered.  Moreover, the Court's instructions to the jury will expressly define the claim terms they

are to use in their deliberations, rectifying any confusion Sprint fears.

To the extent that the Court construes the claims before trial, Vonage agrees that the

parties should not be able to introduce evidence contrary to the Court's construction.

Further, although claim construction is a matter of law, claim construction testimony is relevant and can be offered into evidence if it assists the jury in understanding the underlying technology and how the given claims apply to that technology. Kustom Signals v. Applied Concepts, 52 F. Supp. 2d 1260, 1274 (D. Kan. 1999) (overruling Plaintiff's motion *in limine* to exclude expert testimony on claim construction used to interpret technology).

Claim construction plays a further role in Vonage's affirmative defenses, including obviousness and enablement, with respect to which a jury is going to have to make findings of fact. While the construction of claims is not a matter for the jury to decide, testimony as to the proper construction of the claims (and competing constructions to the extent not decided by the Court) is relevant, necessary and unavoidable. By not being able to offer testimony regarding claims construction, Vonage simply will not be able to mount any of its afforded defenses.

While Vonage agrees that the Court should not allow testimony rehashing the construction of claims already made by the Court in its summary judgment order (Doc. 264), there will be little practical way to avoid testimony on the construction of the claims at issue so the trier of fact may determine if the Vonage system falls within their scope. Vonage submits that the jury would likely become greatly confused in rendering its infringement analysis *without* hearing each party's claim construction testimony and how a given construction may or may not lend to a finding of infringement. It is clear that testimony regarding claim construction is highly relevant and should not be excluded. Sprint's motion should be denied.

## XII. NO CLAIM DECIDED ON SUMMARY JUDGMENT SHOULD BE RELITIGATED AT TRIAL.

This court granted partial summary judgment to both parties. Vonage does not intend to relitigate these issues at trial. As such, this motion should be denied as moot.

## XIII.  EVIDENCE RELATED TO SPRINT'S "PROTOTYPE" IS RELEVANT, PROBATIVE AND ADMISSIBLE.

Sprint moves to preclude Vonage from introducing any evidence, such as testimony from Sprint employees, regarding Sprint's prototype(s) on the grounds that such evidence is not relevant and is highly prejudicial to Sprint.  Both of Sprint's reasons are unsupportable.

Sprint's argument that evidence regarding Sprint's failure to build a prototype of the claimed invention is plainly erroneous.  Such evidence is relevant to the issues of enablement of the Asserted Patents.

Vonage has always contended that the Asserted Patents fail to meet the enablement requirement of 35 U.S.C § 112 and has proffered evidence in support of that contention.  See Sprint's Mem. in Suppt. of its motion to preclude selected opinions of Mr. Koperda, Doc. 263, at 2 n.2 (acknowledging, and not challenging, opinions as to enablement).  The evidence regarding Sprint's failed attempt to build a working prototype of even its most preferred ATM embodiment is directly relevant to this point.

Evidence is only *unfairly* prejudicial to the extent it has "an undue tendency to suggest decision *on an improper basis*, commonly, though not necessarily, an emotional one."  Koch, 2 F.Supp.2d at 1389.  The word "unfair" in "unfair prejudice" is the key:  "all evidence is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it."  Id.  In other words, potent evidence that is *entirely relevant* is generally called "highly probative."

Appropriate jury instructions will adequately inform the jury regarding the distinctions between actual and constructive reduction to practice.  Sprint does not offer any reason to believe that the jury would be unable to understand those distinctions.

Because such evidence is therefore not clearly inadmissible "*on all potential grounds*," see Wilkins v. Kmart, 487 F. Supp. 2d at 1218-19, Sprint's Motion to preclude testimony relevant to prototypes should be denied.

## XIV.   THE SPRINT/CISCO AGREEMENTS, AND EVIDENCE RELATED THERETO, ARE RELEVANT, PROBATIVE AND ADMISSIBLE.

Sprint broadly requests that the Court exclude all evidence relating to Cisco, including any reference to the Sprint/Cisco agreements, any mention of the fact that Vonage purchased a substantial number of the components in its system from Cisco, any remark that Cisco instructed Vonage how to assemble its system, and any suggestion that the $1 million per patent royalty evidenced by the Sprint/Cisco agreements is material to the determination of an established royalty for the Asserted Patents.  (Br. at 19-26.)  Sprint offers no basis for such a total exclusion of highly relevant evidence.  Wilkins, 487 F. Supp. 2d at 1218-19.

### A.      The Court Has Already Considered Evidence Regarding Cisco on Summary Judgment, Thereby Deeming it Admissible for Trial.

While having denied Vonage's request to assert new affirmative defenses based on the Sprint/Cisco Agreements, the Court's rulings have expressly demonstrated that the Sprint/Cisco agreements are relevant, properly in evidence, and must be submitted to the jury at trial.

In denying Sprint's Motion for Summary Judgment regarding Vonage's asserted defense pursuant to 35 U.S.C. §287 – the very Order Sprint cites as categorically barring the Sprint/Cisco agreements from evidence – the Court considered, and relied upon, the Sprint/Cisco agreements. See Doc. 264 at 85-86.  In rendering its decision, the Court expressly held that Vonage's defense pursuant to §287 was to be decided by the trier of fact.  By virtue of the Court's opinion, and the evidence on which it relied, the Sprint/Cisco agreements are relevant to, and admissible to prove, this defense.  Id; see also, e.g., Washington v. General Motors Corp., No. 91-2150, 1992 U.S. Dist. LEXIS 18890, at *20 (D. Kan. Nov. 24, 1992) (Lungstrum, J.) ("evidence that is not

admissible at trial cannot be considered on a motion for summary judgment."). On their face, the Court's Orders cannot be read so broadly as Sprint contends. Accordingly, and based on the law of the case, Sprint's motion to exclude this evidence should be denied.

**B.      Evidence regarding Cisco is highly relevant to and admissible as to damages.**

While the Court has barred Vonage from asserting affirmative defenses to Sprint's claims of liability for patent infringement, evidence regarding Cisco is highly pertinent to the calculation of any damages the jury awards Sprint. See Doc. 264 at 84 (noting compliance *vel non* with the statutory notice and marking requirements of § 287 "serves to limit a patentee's damages" and that Cisco documents are proof thereof).

1.      The Sprint/Cisco License contains a covenant not to sue Vonage that limits Sprint's damages claim to sales after December 2002.

The Sprint/Cisco License of 1998 contains a covenant by Sprint not to sue end-users of Cisco products for infringement of any Sprint patent on an inventions "conceived of or reduced to practice" prior to 1998. See 1998 License Agreement, attached as Exhibit "H," at ¶ 3.4. Sprint has conceded that this Covenant applies to the Asserted Patents.[2] Sprint has further conceded that the "Immunity Period" defined in the covenant began in December 1998 and lasted until at least December 2002.[3] The Sprint/Cisco agreements thus directly contradict (and are thus relevant to) Sprint's claim that it is entitled to damages for all Vonage's sales since its launch in March 2002, and the jury must consider whether Sprint's claim for damages must be limited to infringing activities that fall outside the covenant's protection.

---

[2]      See Excerpts from the March 29, 2007 deposition of Harley Ball, Esq., attached as Exh. "I," at 220:2-5 (admitting, as 30(b)(6) witness on agreements relating to the Asserted Patents, that the Covenant covered "any Sprint patent"); See also Final Pretrial Order, Doc. 207, at ¶¶ 4.a.7-13 and 37 (Mr. Christie, sole inventor of the Asserted Patents, died in 1996).

[3]      See Sprint's Responses to Vonage Holdings Corp.'s Second Set of Interrogatories, attached as Exh. "J," at p. 4, Response No. 17 (stating covenant expired on December 17, 2002).

2.    <u>If not an established royalty, the $ 1 million per patent  Sprint/Cisco license is the most relevant evidence of a "reasonable royalty."</u>

Contrary to Sprint's contentions, the Sprint/Cisco License, in which Sprint agreed to license patents relating to the JCS2000 system for a $1 million fee per packet, relates directly to, and is evidence of an established royalty for, the Asserted Patents.  The license was for JCS2000 patents, of which, Sprint admits, the Asserted Patents are an integral part.  (<u>See</u> License, <u>Exh.</u> "H", at Recitals (licenses relate to patents in JCS2000 project), <u>see also</u> Sprint Summ. J. Br., Doc. 198, at 13) (Asserted Patents among 100 relating to JCS2000).  While initially aimed at component patents, to the arguable exclusion of architecture patents, the license expressly anticipates Sprint would *also* license to Cisco, for the same $1 million price, "*any Sprint patents... which Sprint subsequently determines infringe* [sic] *by the use or sale of any Cisco product.*"  Ex. H at ¶2.7. Even if, as Sprint contends, Sprint and Cisco never actually designated any patent to be licensed under the contract's terms, the contract was signed, and the price for a license to any Sprint JCS2000 patent Sprint considered infringed was set.  Sprint may dispute this interpretation, and the jury is entitled to hear the debate.

Even if not proof of an established royalty, the Sprint/Cisco agreements are highly relevant to and constitute the *best available evidence* regarding the "reasonable royalty" to which Sprint claims it is entitled as damages, based on the hypothetical license negotiation between Sprint and Vonage at the time the alleged infringement began in or around March 2002.  <u>See, e.g.</u>, Donald S. Chisum, 7 Chisum on Patents § 20.03[2][b] (2007) ("prior licenses that failed to set an actual established royalty could nevertheless be considered in setting a reasonable royalty."); <u>see also</u> <u>Exh.</u> "C", at 8-10) ("the hypothetical negotiation construct permits access to *all relevant information*.").

The Sprint/Cisco licenses, which deal expressly with the JCS2000 Project and would have been known and considered at the time of the hypothetical negotiation, are at least as relevant to the jury's analysis as the license agreements between unrelated third parties – unknown to the parties and nonexistent at the date of the hypothetical negotiation, with unknown terms and conditions, on unrelated subject matter – which Sprint intends to proffer as "comparable" to the hypothetical negotiation. *Id*. at 12-13.  It is for the jury to decide how comparable these competing agreements are in making its determination of damages.

Sprint's argument that this evidence should be excluded as unfairly prejudicial under Rule 403 is overblown and amounts to nothing more than Sprint attempting to exclude evidence that it finds unfavorable to its damages analysis:

> In deciding whether the plaintiff has carried his burden of persuasion, a jury is
> entitled to consider relevant evidence that contradicts the plaintiff's claimed injury... .

Wilkins, 487 F. Supp. 2d at 1220.  Any concern about jury confusion regarding an "established royalty" is overblown, and can be addressed with an appropriate instruction on the distinction between an established royalty and a reasonable royalty if the Court deems it appropriate.

## XV.     SPRINT'S MOTION TO EXCLUDE TESTIMONY REGARDING PRIOR VONAGE SYSTEM ARCHITECTURES SHOULD BE DENIED.

Sprint seeks the exclusion of testimony referring to the SIP Gateway architecture, the nailed configuration and the Virginia point-of-presence configuration of the Vonage system. Sprint's decision whether to assert infringement of these architectures is purely tactical, and not the proper basis to seek exclusion of this evidence.  Any architecture that Sprint can not prove is infringing is evidence that Vonage has an acceptable non-infringing alternative available to it and highly relevant to Vonage's damages case.

Implementation of a denied settlement offer is not a remedy that is a proper subject of any, much less *in limine* relief.  On the basis of nothing more than disappointment, Sprint seeks

to eliminate Vonage's ability to show that Vonage has a non-infringing alternative system it could use in the future – a vital defense to Sprint's claim for damages.

It is undisputed that the reasonable royalty to which Sprint claims it is entitled as damages is limited by Vonage's cost to "design-around" the Asserted Patents, or implement a non-infringing alternative system.  See, e.g, Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302 (Fed. Cir. 2002) (market could not award patentee a royalty divorced of all relation to a potential non-infringing alternative method. "The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation," citing Grain Processing Corp. v. American Maize-Prods. Co., 185 F.3d 1341, 1347 (Fed. Cir. 1999) (the difference in production costs between infringing and non-infringing products "effectively capped the reasonable royalty award").  See also Exh. "K", at 50:4-7 ("Q: Have you ever given an opinion as an expert in a case that the cost of a design-around is basically the ceiling on a royalty?  [Mr. Sims]:   Yes.").  Sprint's initial expert report by Dr. Wicker was completely devoid of any infringement analysis as to Vonage's SIP Gateway and Virginia architectures.  Thus, there were no allegations of infringement for Vonage's expert, Mr. Halpern, to rebut, and in his own report, Mr. Halpern pointed this out.

Sprint nonetheless contends, without any citation to authority, that to establish the SIP Gateway and Virginia architectures as noninfringing alternatives so as to limit Sprint's damages, Vonage must not merely show that Sprint has made no allegations of infringement as to these architectures, but conduct a trial within the trial to *disprove* Sprint's infringement contentions. Sprint's contention is contrary both to logic and to law: it is Sprint's burden to prove infringement.  Vonage need not offer proof, much less expert testimony, to show its *unaccused* alternatives, or alternative systems as to which Sprint makes no offer of proof, do not infringe the

Asserted Patents.  Vonage may prove as much by demonstrating Sprint either does not accuse, or had not met its burden of proof of infringement as to, other variations of the Vonage system.[4]

For these reasons, Vonage requests the Court deny Sprint's Motion in its entirety.

Respectfully submitted,

BARBER EMERSON, L.C.

August 25, 2007          By:  s/ Terrence J. Campbell
                              Terrence J. Campbell - 18377
                              tcampbell@barberemerson.com
                              Catherine C. Theisen - 22360
                              ctheisen@barberemerson.com
                              1211 Massachusetts Street
                              P.O. Box 667
                              Lawrence, KS 66044
                              (785) 843-6600
                              (785) 843-8405 Facsimile

                              s/ Donald R. McPhail
                              Patrick D. McPherson
                              Barry Golob
                              Donald R. McPhail
                              Duane Morris LLP
                              1667 K Street N.W.
                              Washington, DC 20006-1608
                              202-776-7800
                              pdmcpherson@duanemorris.com
                              bgolob@duanemorris.com
                              drmcphail@duanemorris.com

                              *Attorneys for Defendants/Counterclaim
                              Plaintiffs Vonage America, Inc. and Vonage
                              Holdings Corp.*

---

[4]  Cf. Grain Processing Corp. v. American Maize-Products Co., 893 F. Supp. 1386, 1391-1392 (D. Ind. 1995) (finding limit of damages where *patentee* did not present a scientist or production manager to say that noninfringing alternative "would have been beyond reach, or even a daunting task" at time of hypothetical negotiation); Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320 (Fed. Cir. 1987) (awarding 5% royalty where *patentee* showed absence of acceptable noninfringing substitutes).

## INDEX OF EXHIBITS

Exhibit A – U.S. Patent 6,304,572

Exhibit B – Expert Report of Dr. Steven Wicker (March 27, 2007)

Exhibit C – Expert Report of Dr. Steven Wicker (May 3, 2007)

Exhibit D – Expert Non- Infringement Report of Joel Halpern (February 28, 2007)

Exhibit E – NO EXHIBIT

Exhibit F – Expert Report of Raymond S. Sims, January 2007 (*under seal*)

Exhibit G – Expert Report of Dr. Allyn D. Strickland (February 28, 2007) (*under seal*)

Exhibit H – 1998 Sprint/Cisco License Agreement, SPRp-012-01-00237 et seq. (*under seal*)

Exhibit I – Excerpts from the transcript of the March 29, 2007 deposition of Harley Ball, Esq.

Exhibit J – Sprint's Responses to Vonage Holdings Corp.'s Second Set of Interrogatories

Exhibit K- Excerpts from the transcript of the April 25, 2007 deposition of Raymond Sims (*under seal*)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2007 a copy of Vonage Holdings Corp. and Vonage

America, Inc.'s Memorandum in Opposition to Sprint Communications Co., L.P.'s Motions *In*

*Limine*, and supporting papers, was filed electronically on this date, with a notice of case activity

to be generated and sent electronically by the Clerk of Court to:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com
>
> *Attorneys for Plaintiff*
> *Sprint Communications Company L.P.*

<u>s/ Terrence J. Campbell</u>