# EXHIBIT I

1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF KANSAS
 3
 4    SPRINT COMMUNICATIONS COMPANY LP,  )
 5              Plaintiff,               )
 6         v.                            )Case No.
 7    VONAGE HOLDINGS CORP               )05-2433-JWL
 8    AND VONAGE AMERICA INC,            )
 9              Defendants.              )
10
11             VIDEO DEPOSITION OF MR. HARLEY BALL,
12    produced, sworn, and examined on the part of the
13    Defendants in an action pending in the United States
14    District Court for the District of Kansas, in the case
15    of SPRINT COMMUNICATIONS COMPANY LP, Plaintiffs,
16    versus VONAGE HOLDINGS CORP AND VONAGE AMERICA INC,
17    Defendants, at 9:30 a.m. on Thursday, March 29, 2007,
18    at the law offices of Shook Hardy & Bacon LLP, 2555
19    Grand Boulevard, Kansas City, Missouri, before KAREN
20    S. ROGERS, Registered Professional Reporter, Certified
21    Realtime Reporter, and Notary Public in and for the
22    State of Missouri.
```

2

```
 1                    A P P E A R A N C E S
 2    For Plaintiff:
 3         MR. TRENT WEBB
 4         SHOOK HARDY & BACON LLP
 5         2555 Grand Boulevard
 6         Kansas City, Missouri 64108
 7         (816) 559-2320
 8         bwebb@shb.com
 9              and
10         MR. LEE LAWRIDSEN
11         General Counsel
12         SPRINT COMMUNICATIONS COMPANY LP
13
14    For Defendants:
15         MR. PATRICK D. MCPHERSON
16         MR. JOHN BAIRD
17         DUANE MORRIS LLP
18         1667 K Street Northwest, Suite 700
19         Washington, D.C. 20006
20         (202) 776-5214
21         pdmcpherson@duanemorris.com
22    A P P E A R A N C E S (Continued)
```

3

```
 1    A P P E A R A N C E S
 2    For Defendants (continued):
 3         Mr. Patrick C. Muldoon
 4         Duane Morris LLP
 5         168 Village Street, Suite 1
 6         Eggleston, Virginia  24086
 7         (540) 922-3177
 8         pcmuldoon@duanemorris.com
 9
10
11
12
13    Also Present:
14         MR. DAVID PARIS
15         HURON CONSULTING GROUP
16         555 13th Street, NW
17         West Tower, 4th Floor
18         Washington, DC 20004-1109
19         (202) 585-6831
20         dparis@huronconsultinggroup.com
21
22
```

4

```
 1                        I N D E X
 2                                                PAGE
 3    MR. HARLEY BALL
 4         Direct Examination By Mr. McPHERSON     009
 5    SETTER EXHIBITS
 6    Exhibit Setter 005   Network PP&I Switch and
 7                         Signaling, 10/15/93,
 8                         SPRp-01-029-00001 through
 9                         SPRp-01-029-00017         025
10    Exhibit Setter 003   United States Patent Number
11                         5,825,780; 10/20/98       031
12    Exhibit Setter 004   United States Patent Number
13                         5,991,301; 11/23/99       034
14    Exhibit Setter 015   United States Patent Number
15                         6,452,932 B1; 9/17/02     036
16    Exhibit Setter 016   United States Patent Number
17                         6,304,572 B1; 10/16/01    036
18    Exhibit Setter 017   United States Patent Number
19                         6,463,052 B1; 10/8/02     036
20    Exhibit Setter 018   United States Patent Number
21                         6,633,561 B2; 10/14/03    036
22    I N D E X (Continued)
```

218

1    A.   I don't recall what the person's
2  capacity was.
3    Q.   Okay.  Did you negotiate the
4  amendment number 2 to the alliance agreement?
5    A.   I was -- yes, I was involved in the
6  negotiations of this agreement.
7    Q.   Okay.  Who else was involved with
8  you?
9    A.   (The witness does not respond.)
10   Q.   At Sprint?
11   A.   I believe Charlie Wunch.
12   Q.   Who is Charlie Wunch?
13   A.   He's my boss.
14   Q.   What's his title?
15   A.   I believe vice president of legal.
16 I'm not sure of the exact -- maybe it's general
17 business.  I'm not sure of the exact title.
18   Q.   Is he a patent attorney?
19   A.   No, he's not.
20   Q.   Okay.  And this mutual covenant not
21 to sue, is the scope the exact same as the scope of
22 the mutual covenant not to sue that we discussed in

219

1  the patent license agreement?
2    A.   I would have to do a word-by-word
3  comparison.  But that would be my recollection.
4    Q.   Okay.  Was your intention -- was it
5  Sprint's intention to give the same scope of this
6  covenant not to sue as the one that was granted in
7  the patent license?
8    A.   Granted, this is back in May of
9  2000.  But to the best of my recollection, yes.
10   Q.   And this covered all Sprint
11 products.  Isn't that correct?
12   A.   I think it covered the same scope
13 of the covenant not to sue that we were discussing
14 prior.
15   Q.   Right.  And that covered all Sprint
16 products, did it not?
17   A.   It covered -- yes.
18   Q.   And it covered all Cisco products?
19   A.   Correct.
20   Q.   And it covered all Cisco services?
21   A.   Yes.
22   Q.   And it covered all Sprint services?

220

1    A.   Correct.
2    Q.   Okay.  And what patents was the
3  covenant not to sue related to?
4    A.   I believe it was for any Sprint
5  patent or Cisco patent.
6    Q.   Okay.  And what was the purpose of
7  the immunity period?
8    A.   To provide peace for a limited
9  period of time.
10   Q.   Now when you say provide peace, was
11 there discussions with Cisco relating to a patent
12 infringement actions with Sprint?
13   A.   No.
14   Q.   Okay.  And was it anticipated that
15 there may not be peace in the near future?
16   A.   No.
17   Q.   Okay.  Was this -- was this
18 covenant not to sue more beneficial to Cisco or
19 Sprint?
20   A.   I don't know.
21   Q.   Okay.  Well, did Sprint want to
22 include this covenant not to sue in the alliance

221

1  agreement?
2    A.   In the alliance agreement?  I don't
3  recall whether we wanted it in the alliance
4  agreement.
5    Q.   You know -- I think your testimony
6  is you know Sprint -- strike that.
7         You know that Cisco did not to include
8  this --
9    A.   No, I'm -- yes.  I apologize.  Is
10 -- yes.  Cisco wanted this in -- in this agreement
11 -- in this agreement probably more than Sprint,
12 yes.
13   Q.   Okay.  But the covenant not to sue
14 also covered Sprint's customers as well?
15   A.   Yes.
16   Q.   Okay.  Do you consider what is
17 being granted in this mutual covenant not to sue a
18 cross license between Sprint and Cisco?
19   A.   No.
20   Q.   Why not?
21   A.   I think a covenant not to sue is
22 inherently different than a license.