**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VONAGE HOLDINGS CORP., | ) | Case No. 05-2433-JWL |
| VONAGE AMERICA, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>PROPOSED JURY INSTRUCTIONS</u>**

Dockets.Justia.com

<u>**PROPOSED JURY INSTRUCTIONS**</u>

1.    **[GENERAL INSTRUCTIONS TO BE SUPPLIED BY THE COURT]**

2.    **STIPULATIONS**

The following facts are uncontroverted:

1.    Plaintiff Sprint Communications Company L.P. is a Limited Partnership with its principal place of business in Overland Park, Kansas.

2.    Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively "Vonage") are corporations with their principal places of business in Edison, New Jersey.

3.    Defendant Vonage Holdings Corp. is the parent of Vonage America, Inc. Vonage America, Inc. is the wholly owned subsidiary of Vonage Holdings Corp. Vonage America Inc. markets and sells Vonage phone services in the United States.

4.    Vonage has sold, offered for sale, used and/or marketed voice over Internet phone services ("VoIP services"). Vonage has made and/or used systems and architectures of components to provide VoIP services, which we will refer to in these instructions as the "Accused Vonage System".

5.    Sprint is the owner by assignment of the following United States Patents, which are referred to collectively herein as the "Asserted Patents":

| U.S. Patent No. 6,304,572 | "the '572 patent" |
| U.S. Patent No. 6,633,561 | "the '561 patent" |
| U.S. Patent No. 6,452,932 | "the '932 patent" |
| U.S. Patent No. 6,473,429 | "the '429 patent" |
| U.S. Patent No. 6,298,064 | "the '064 patent" |
| U.S. Patent No. 6,665,294 | "the '294 patent" |

6.    Each of the Asserted Patents was issued by the U.S. Patent and Trademark Office to Joseph Michael Christie. Mr. Christie is the sole inventor on each patent.

7.    The '429 patent, the '064 patent, and the '294 patent all claim the priority date of U.S. Patent No. 5,991,301 filed September 8, 1995 (collectively, "the Broadband System Family"), and share a common specification.

2

8.      The '561 patent, the '572 patent and the '932 patent all claim the priority date of the U.S. Patent Application No. 08/238,605, filed May 5, 1994 (collectively, "the Call Control Family"), and share a common specification.

9.      Sprint asserts that Vonage has infringed and is infringing the following claims of the Asserted Patents:

| The '572 patent | Claims 38, 42, and 51 |
|---|---|
| The '561 patent | Claims 1 and 23 |
| The '932 patent | Claim 18 |
| The '429 patent | Claims 1 and 5 |
| The '064 patent | Claims 1, 5, and 7 |
| The '294 patent | Claims 19, 26, and 27 |

10.     Vonage first offered for sale its VoIP services, Vonage DigitalVoice, in March, 2002.   Vonage has continued to offer VoIP services since that time using the Accused Vonage System.

11.     The following letters were sent by Sprint and received by Vonage: the letter to Mr. Citron dated July 13, 2004 (Exhibit ___); the letter to Mr. Citron dated August 19, 2004 (Exhibit ___); the letter to Mr. Citron dated November 12, 2004 (Exhibit ___); the letter to Mr. Citron dated May 9, 2005 (SPCC.1160); and the letter to Mr. Citron dated July 15, 2005 (Exhibit ____).

12.     With the July 13, 2004, letter, Vonage also received a CD from Sprint containing 43 United States Patents owned by Sprint.  All six Asserted Patents were on the CD.

**3.      ALL PARTIES EQUAL UNDER THE LAW**

In this case, both Sprint and Vonage are corporations. This should make no difference to you. You must decide this case as if it were between individuals. All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.


**AUTHORITY**

Federal Civil Jury Instructions of the Seventh Circuit 1.03 (as modified).

## 4.    BURDENS OF PROOF

When a party has the burden of proof on any claim or affirmative defense by a **preponderance of the evidence**, it means that you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  In other words, if you believe the party has proved its case to be even slightly more likely than not, you must find in favor of that party.

When a party has the burden of proof on any claim or affirmative defense by **clear and convincing evidence**, the evidence must produce an abiding conviction that the claim or affirmative defense is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.  It is more difficult to prove a claim or defense under the clear and convincing standard than the preponderance of the evidence standard.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Sprint or Vonage has met its burden of proof.

## AUTHORITY

Ninth Circuit Model Civil Jury Instructions 1.13, 1.14 (as modified); *Colorado v. New Mexico*, 467 U.S. 310, 315-16 (1984); *Mattingly, Inc. v. Beatrice Foods Co.*, 835 F.2d 1547, 1551 (10th Cir. 1987)

2614958v1

5.     **THE PATENT SYSTEM**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 6.

6

6.      **PATENTS GENERALLY**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

**AUTHORITIES**

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

7.      **THE CLAIMS OF THE PATENTS IN SUIT**

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe products, systems, or methods for making or using a product or system.

Claims are usually divided into parts or steps, called "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.

A patented invention typically is a combination of known elements or steps.  A claim to a system usually recites a combination of several elements, most or all of which may be separately known or even separately patented.

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 7 (as modified).

8.      **INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers. The following claims at issue in this lawsuit are independent claims:

| The '572 patent | Claim 38 |
|---|---|
| The '561 patent | Claim 1 |
| The '932 patent | Claim 18 |
| The '429 patent | Claim 1 |
| The '064 patent | Claim 1 |
| The '294 patent | Claim 19 |

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.  The following claims at issue in this lawsuit are dependent claims:

| The '572 patent | Claims 42, and 51 |
|---|---|
| The '561 patent | Claim 23 |
| The '429 patent | Claim 5 |
| The '064 patent | Claims 5, and 7 |
| The '294 patent | Claims 26 and 27 |

**AUTHORITIES**

35 U.S.C. § 112 ¶ 4; *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch,*

*Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-23 (Fed. Cir. 1989); Fed. Cir. Bar Ass'n Model Instruction 7.2 (as modified).

2614958v1

9.    **CONSTRUCTION OF THE CLAIMS**

To decide whether or not an accused product or method infringes a patent or whether or not a patent is valid, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

It may be helpful to refer to the copy of the Asserted Patents that you have been given as I discuss the claims at issue here. I will be giving you a list of the claims of the Asserted Patents at issue as part of the verdict form when I conclude my instructions.

**AUTHORITIES**

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments*, Inc., 517 U.S. 370, 384-391 (1996); *Bell Atlantic Network Sews., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); Pitney *Bowes, Inc. v. Hewlett- Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc*., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); *Rival Co. v. Sunbeam Corp.*, 987 F. Supp. 1167, 1171 (W.D. Miss. 1997), *aff'd without op*., 185 F.3d 885 (Fed. Cir. 1999); *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, No. 95C 7255, 1997 WL 187326, at *2 (N.D. Ill. April 11, 1997); Fed. Cir. Bar Ass'n Model Instruction 7.1 (as modified).

10.     "COMPRISING" CLAIMS

The beginning portion, or preamble, of the claims of the Asserted Patents patent uses the word "comprising."  "Comprising" has a special meaning in patent law, and it means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products having only the limitations that are recited in the claim, but also covers products that add additional elements or steps.

All the asserted claims in this matter use the "comprising" language.  Thus, if you find that the Accused Vonage System contains each limitation of an asserted claim, then that claim is infringed even if the Accused Vonage System contains additional features not found in the claim.

**AUTHORITIES**

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811-12 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-29 (Fed. Cir. 1999); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379-80 (Fed. Cir. 1998); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1177-79 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 7.5 (as modified).

## 11.    LIMITATIONS OF THE CLAIMS AT ISSUE

I have now instructed you as to the types of claims at issue in this case.  I will next define the meaning of the words used in the patent claims at issue.  You must rely exclusively on the definitions I provide to you in your consideration of infringement and invalidity issues.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

| CLAIM TERMS AND PHRASES CONSTRUED BY THE COURT: | SPRINT'S PROPOSED CONSTRUCTIONS: | PRESENT IN PATENT CLAIMS: |
|---|---|---|
| routing; route | "directing through a communication system"; "direct through a communication system" | Claim 19 of the '294 patent, and Claim 1 of the '561 patent |
| DS0 communication signal | DS0 is a term of art meaning a "Digital Signal Level 0" | Claim 26 of the '294 patent |
| DS0 connection | "a channel over which DS0 communication signals (as construed above) are transmitted or received" | Claim 1 of the '064 patent, and Claim 1 of the '429 patent |
| generating a message; generate . . . message | "assembling information into a message"; "assemble information into a message" | Claim 1 of the '429 patent; Claim 38 of the '572 patent; Claim 1 of the '561 patent, and Claim 18 of the '932 patent |
| in-band telecommunications signaling | "signaling that is sent on the same channel as that used for voice or data" | Claim 38 of the '572 patent |
| out-of-band telecommunications signaling | "signaling that is sent on a distinct channel from that used for voice or data" | Claim 38 of the '572 patent |
| Connection | "media between two network elements that supports the transfer of information" | Claim 38 of the '572 patent |
| communication system | "plurality of network elements and connections forming a network for transferring information" | Claim 1 of the '561 patent, and Claim 18 of the '932 patent |

2614958v1

| Identifier | "data for routing user information in a packet network" | Claim 1 of the '429 patent, and Claim 19 of the '294 patent |
|---|---|---|
| interworking unit | "a device that converts narrowband communication signals into a packet format" | Claim 1 of the '429 patent, and Claim 1 of the '064 patent |
| interworking device | "a device that converts narrowband communication signals into a packet format" | Claim 19 of the '294 patent |
| asynchronous communication | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 1 of the '429 patent, Claim 1 of the '064 patent, and Claim 18 of the '932 patent |
| processing system | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claims 1 and 5 of the '429 patent, Claims 1 and 7 of the '064 patent, Claims 1 and 23 of the '561 patent, and Claim 18 of the '932 patent |
| External | This claim term does not require construction and should be afforded its plain and ordinary meaning. | Claim 5 of the '429 patent, Claim 7 of the '064 patent, Claim 18 of the '932 patent, Claim 23 of the '561 patent, and Claim 38 of the '572 patent |
| asynchronous communication system | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 18 of the '932 patent |
| telecommunication switches | "devices that set up calls and relay voice and/or data information from one connection to another" | Claim 5 of the '429 patent, and Claim 7 of the '064 patent |
| narrowband communication signal | "a communication signal carried on a channel that supports data rates of 64 kbps or less" | Claim 19 of the '294 patent |
| indicate/ing | This claim term/phrase does not require construction and should be afforded its plain | Claim 38 of the '572 patent, Claim 1 of the '561 patent, and Claim 19 of the '294 patent |

14

| | and ordinary meaning. | |
|---|---|---|
| setup signaling | "information or commands used to setup calls" | Claim 1 of the '064 patent |
| a processor | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 38 of the '572 patent |
| a broadband connection | "a connection (as defined above) that carries information on channels not limited to 64 kbps or less" | Claim 42 of the '572 patent |
| a packet connection | "a connection (as defined above) that carries information in packet format" | Claim 51 of the '572 patent |
| Coupled | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 38 of the '572 patent |
| Coupling | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 38 of the '572 patent |
| telecommunications device | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 38 of the '572 patent |
| signaling message | "information or commands used to set up or tear down a call" | Claim 38 of the '572 patent, Claim 19 of the '294 patent, and Claim 1 of the '561 patent |
| control message | "information or commands sent to a network element on the communication path" | Claim 38 of the '572 patent, and Claim 1 of the '561 patent |
| in response | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 38 of the '572 patent |
| a packet communication system | "a communication system in which information is | Claim 1 of the '561 patent |

15

| | | |
|---|---|---|
| | communicated in packet format" | |
| a network code that identifies a network element to provide egress from the packet communication system | "information that identifies a network element that provides an exit from a packet communication system" | Claim 1 of the '561 patent |
| a signaling message from a narrowband communication system | "a signaling message (as defined above) from a communication system comprising channels supporting data rates of 64 kbps or less" | Claim 1 of the '561 patent |
| process . . . to select []; processing . . . to select [] | "processing . . . to participate in the selecting []" | Claim 1 of the '561 patent, Claim 1 of the '429 patent, Claim 1 of the '064 patent, Claim 38 of the '572 patent, and Claim 18 of the '932 patent |
| selected by processing a signaling message | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 19 of the '294 patent |
| generating a control message indicating the network code | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 1 of the '561 patent |
| user communication | "voice or data information from a user" | Claim 1 of the '561 patent |
| any communication switches | "any devices that set up calls and relay voice and/or data information" | Claim 23 of the '561 patent |
| Processing | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 18 of the '932 patent, Claim 19 of the '294 patent, Claim 1 of the '429 patent, Claim 38 of the '572 patent, and Claim 1 of the '561 patent |
| based on the selected narrowband switch | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Claim 18 of the '932 patent |

**AUTHORITIES**

Parties' Trial Briefs on Claim Construction Issues; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments*, Inc., 517 U.S. 370, 384-391 (1996); Fed. Cir. Bar Ass'n Model Instruction 7.8 (as modified).

12.    **INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS**

In order to infringe a patent claim, a system or method must include every limitation of the claim. You must consider each of the asserted claims separately.

A claim limitation may be present in an accused system in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused system just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it. If each limitation in a claim is present in the accused system, it literally infringes.

Infringement also may be found even if a limitation is literally missing from the accused system if the infringer substitutes the missing component or step with an equivalent component or step. This is called infringement under the doctrine of equivalents. A claim limitation is present in an accused system under the doctrine of equivalents if the differences between the claim limitation and the substituted component or step of the accused system are insubstantial. One way to determine whether differences are insubstantial is to look at whether or not the substituted component or step of accused system performs substantially the same function, in substantially the same way, to achieve substantially the same result as the component or step of the claimed invention.

Equivalency is determined by what was known at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

**AUTHORITIES**

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Allen Engineering Corp. v. Bartell Indus., Inc.*, 2002 WL 1765989 (Fed. Cir. 2002); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1334 (Fed. Cir. 2001); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1107 (Fed. Cir. 2000); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1287 (Fed. Cir. 2000); *Bayer AG v. Elan Pharm., Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1301-02 (Fed. Cir. 1999); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*); Fed. Cir. Bar Ass'n Model Instruction 8.3 (as modified).

**13.     DETERMINATION OF INFRINGEMENT**

Taking each of the asserted claims of the Asserted Patents separately, if you find that Sprint has proved by the preponderance of the evidence that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in the Accused Vonage System, then you must find that Vonage infringes that claim. You must determine whether each and every asserted independent claim has been infringed.

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 8.7 (as modified).

14.     **INFRINGEMENT COMPARISON**

      To determine infringement, you must compare the Accused Vonage System with each of the asserted claims, using my instructions as to the meaning of these claims.  The Accused Vonage System should be compared only to the invention described in the patent claims.  You should not compare Vonage's System to the patents' summaries, backgrounds, specifications, drawings, or preferred embodiments.  The Accused Vonage System also should not be compared with any of Sprint's products or services.

**AUTHORITIES**

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

15.     **KNOWLEDGE OF INFRINGEMENT**

Whether or not Vonage knew that what it was doing was an infringement does not matter. Vonage's intent or its state of mind is only relevant to your finding of willful infringement, which I will explain below.  A person may be found to be an infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

**AUTHORITIES**

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

16.     **MAKING OR SELLING OF THE PATENTED INVENTION**

Sprint is not required to make or sell its patented inventions.  A patent can still be valid and enforceable against others even if the patent owner has never made or sold a product that falls within the claims of the patent.  In making your decision about whether Vonage has infringed Sprint's patents, you may not consider whether any of Sprint's products or services fall within the scope of the claims of the Asserted Patent.

**AUTHORITIES**

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

2614958v1

17.    **INFRINGEMENT OF DEPENDENT CLAIMS**

My instructions on infringement so far have related to independent claims.  As I told you, the Asserted Patents also contains dependent claims.  A dependent claim includes each of the limitations of the independent claim to which it refers, plus the additional elements listed in the dependent claim itself.

If you find that independent claims of the Asserted Patents have been infringed, you must separately determine whether dependent claims have also been infringed.  You must determine whether each and every asserted dependent claim of the Asserted Patents has been infringed.

**AUTHORITIES**

*Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp. v. United States Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989); Fed. Cir. Bar Ass'n Model Instruction 8.10 (as amended).

18.     **INFRINGEMENT AND IMPROVEMENTS TO PATENTED INVENTION**

Proof that the Accused Vonage System is an improvement of the inventions described in the Asserted Patents does not necessarily mean that the Accused Vonage System does not infringe the asserted patent claims.  The tests for infringement remain as I have instructed you. As long as you find that the Accused Vonage System includes all of the limitations of any of the asserted patent claims, either literally or under the doctrine of equivalents, then you must find that those asserted patent claims are infringed by Vonage.


**AUTHORITIES**

*Glaxo Wellcome Inc. v. Andrx Pharm., Inc.*, 344 F.3d 1226, 1233–34 (Fed. Cir. 2003); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000); *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191-92 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Stiftung v. Renishaw, PLC*, 945 F.2d 1173, 1179 (Fed. Cir. 1991); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Atlas Powder Co. v. E. I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984); Fed. Cir. Bar Ass'n Model Instruction 8.11 (as amended).

19.    **PURCHASE OF COMPONENTS**

The fact that Vonage may have purchased some or all of the components for its System from other companies does not mean the Accused Vonage System does not infringe Sprint's patents.  The test for infringement remains the same regardless of where Vonage obtained the components of its System.

**AUTHORITIES**

*Glaxo Wellcome Inc. v. Andrx Pharm., Inc.*, 344 F.3d 1226, 1233–34 (Fed. Cir. 2003); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000); *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191-92 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Stiftung v. Renishaw, PLC*, 945 F.2d 1173, 1179 (Fed. Cir. 1991); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Atlas Powder Co. v. E. I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984).

2614958v1

20.     **WILLFUL INFRINGEMENT**

If you find that Vonage infringed at least one of Sprint's Asserted Patents, then you must further determine if Vonage's infringement was willful.  If you find that Vonage was objectively reckless in continuing its activities after it became aware of Sprint's patents, its infringement must be considered willful.  Sprint has the burden to prove by clear and convincing evidence that Vonage's infringement was willful.

In determining whether Vonage's conduct was objectively reckless and, therefore, willful, you must consider whether Vonage acted despite an objectively high likelihood that its actions constituted infringement of one or more of the Asserted Patents.  Vonage's state of mind is not relevant to this objective inquiry.

You also must determine whether Sprint has shown that this risk of infringement was either (a) actually known by Vonage or (b) that the risk was so obvious that it should have been known to Vonage.  In other words, Sprint must show that Vonage knew of a high risk that it infringed Sprint's patents or, if it did not actually know of the risk, a reasonable company in Vonage's situation would have known of the risk.

In determining whether or not Vonage actions were objectively reckless, you should consider all of the circumstances, including whether or not Vonage obtained and relied on an opinion of a competent attorney.  Although the absence of an attorney's opinion does not require you to find willfulness, the obtaining and following of an attorney's advice may be evidence that infringement was not willful.

Willful infringement does not require that the accused infringer copy the patent.  Vonage can be a willful infringer even if it did not know of Sprint's patents at the time it began its activities that are accused of infringement.  Your focus should be on what Vonage did after it became aware of Sprint's patents.

## AUTHORITIES

*In re Seagate Technology, LLC*, --- F.3d ----, 2007 WL 2358677 (Fed. Cir. 2007); 35 U.S.C. § 284; *Ncube Corp. v. Seachange Int'l*, 436 F.3d 1317, 1319 (Fed. Cir. 2006); *Knorr-Bremse Sys. Fuer Nutzfahrzenge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (*en banc*); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University v. Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l, Inc. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Minnesota Mining & Mfg. v. Johnson and Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-30 (Fed. Cir. 1992); *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579 (Fed. Cir. 1988).

21.    **VALIDITY—VALIDITY IN GENERAL**

Patents issued by the U.S. Patent office are presumed to be valid.  Thus, it is not Sprint's obligation to prove that its patents are valid before it can enforce those patents.  Rather, it is Vonage's burden to prove that the patents are invalid.

Vonage has challenged the validity of the asserted claims on a number of grounds.  Because each claim of the Asserted Patents is presumed to be valid, Vonage must prove that a patent claim is invalid by the clear and convincing standard.  I will now explain to you each of Vonage's grounds for invalidity in detail.  In making your determination as to invalidity, you must consider each of the asserted claims separately.

**AUTHORITIES**

*Morton Int'l* v. *Cardinal Chem. Co*., 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Avia Group Int'l, Inc.* v. *L.A. Gear Cal*., 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc.* v. *Deere & Co*., 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc.* v. *Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed. Cir. 1983); Fed. Cir. Bar Ass'n Model Instruction 10.1 (as amended).

22.     **THE PRIOR ART**

An invention is patentable if it is new and not obvious in light of the "Prior Art."  A patent for an invention that is either not new or obvious is invalid.  Prior Art is a phrase used in patent law to mean documents that existed before an inventor formed a complete idea of how to make and use his or her invention.

Vonage contends that the claims of the Asserted Patents are invalid in view of certain pieces of Prior Art. Vonage and Sprint agree that the following patents existed before Sprint's patents were filed.

| | |
|---|---|
| U.S. Pat No. 4,991,172 | "Cidon" |
| U.S. Pat No. 4,491,945 | "Turner" |
| U.S. Pat No. 5,544,163 | "Madonna" |
| U.S. Pat No. 5,115,426 | "Spanke" |
| U.S. Pat No. 5,440,563 | "Isidoro" |
| U.S. Pat No. 5,339,318 | "Tanaka" |

Vonage and Sprint disagree as to whether these Prior Art patents affect the validity of the Asserted Patents.

**AUTHORITIES**

35 U.S.C. § 102(a), (b), and (e); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu,* 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.6.9 (as amended).

23.     **PRIOR ART – ANTICIPATION/LACK OF NOVELTY**

In this case, Vonage contends that each of the asserted claims of the Asserted Patents are invalid because they are anticipated by one or more items of prior art.  A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If an invention is not new, we say that it was "anticipated" by the prior art.  An invention that is "anticipated" by the prior art is not entitled to patent protection and is invalid.  A party challenging the validity of a patent must prove anticipation with clear and convincing evidence.

In order for a claim of the Asserted Patents to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A patent will not be an anticipated unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.  That means that a person skilled in the field of the invention reading the patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

If you find that Vonage has proved that it is clear and convincing that one of the asserted claims is anticipated by an item of prior art, then you must find that particular claim to be invalid.  Validity is to be determined on a claim-by-claim basis.  You cannot find generally that an entire patent is invalid.  Rather, you must make your validity determination for each and every Asserted Claim.

**AUTHORITIES**

*Impax Labs., Inc. v. Aventis Pharm. Inc.*, No. 05-1313, 2006 WL 3346151, at *36 (Fed. Cir. Nov. 20, 2006); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983); Fed. Cir. Bar Ass'n Model Instruction 10.8 (as amended).

24.    **PRIOR ART – PRINTED PUBLICATION**

Vonage contends that each of the asserted claims of the '429 patent, the '294 patent, and '064 patent are anticipated because the claimed inventions were described in a printed publication that is Prior Art.  To establish that a printed publication is Prior Art, Vonage must show by clear and convincing evidence that it was published either: (i) before the inventor made his invention; or (ii) more than one year before the effective filing date of the application for the patent.

In addition, Vonage must also show by clear and convincing evidence that the printed publication was reasonably accessible to those members of the public who would be interested in its contents. A publication is accessible if all interested persons exercising reasonable diligence could access the document. If such persons cannot find that document, then it is not a printed publication. So long as the printed publication was available to the public, the form in which the information was recorded is unimportant. The information must, however, have been maintained in some permanent form, such as a printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

For a printed publication to anticipate the Asserted Claims of the '429, 294 or '064 patents, Vonage must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element or step of the claim. An element or step is disclosed inherently only if it is necessarily present in the process or product described in the prior art reference. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

**AUTHORITIES:**

35 U.S.C. § 102; *In re Carol F. Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995); *Scripps Clinic &Research Found. v. Genentech, Inc*., 927 F.2d 1565 (Fed. Cir. ), *clarif. on recon*., 927 F.2d 1565 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897 (Fed. Cir. 1986); *In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.*, 726 F.2d 724 (Fed. Cir. 1984); AIPLA Model Patent Jury Instructions, Instruction 6.4; Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 10.6.7.

## 25.    OBVIOUSNESS

Vonage contends claims 1 and 23 of the '561 patent, claim 27 of the '294 patent and claim 5 of the '064 patent are invalid because the claimed inventions were "obvious." Vonage has not asserted that the remainder of the Asserted Claims are obvious and, therefore, you may not consider whether any of these other claims are obvious.

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Unlike anticipation which allows consideration of only one item of prior art, obviousness may be shown by considering a combination of more than one item of prior art. Vonage bears the burden of proving obviousness by clear and convincing evidence.

The following factors must be evaluated to determine whether Vonage has established that the claimed inventions are obvious:

1. The scope and content of the prior art relied upon by Vonage;

2. The difference or differences, if any, between each asserted claim that Vonage contends is obvious and the prior art;

3. The level of ordinary skill in the art at the time the inventions of the Asserted Patents were made; and

4. Additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims. I will now explain each of the four factors in more detail.

## AUTHORITIES

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S.Ct. 1727, 1740-41 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966); *Leapfrong Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.,* 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

26.    **LEVEL OF ORDINARY SKILL**

Obviousness is determined from the perspective of a person of ordinary skill in the art. The person of ordinary skill is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.9.3 (as amended).

27.     THE SCOPE AND CONTENT OF THE PRIOR ART

In assessing obviousness, you must also determine the scope and content of the prior art. This means that you should determine what is disclosed in the prior art relied on by Vonage. You must decide whether this prior art was reasonably relevant to the particular problem Mr. Christie faced in making the invention covered by the asserted claims.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

AUTHORITIES

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. l, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.9.1 (as amended).

28.    **DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART**

Your obviousness analysis should also consider whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of any such differences on the obviousness or lack of obviousness of the invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise disclosure in the prior art directed to the subject matter of the claimed invention. You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claimed invention was obvious.

Again, you must undertake this analysis separately for each claim that Vonage contends is obvious.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. l, 27-28 (1966); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353-54 (Fed. Cir. 2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Nyko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 717 (Fed. Cir. 1991); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

## 29.    FACTORS SHOWING NON-OBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or the lack of obviousness of the invention as a whole.

1.    Were products covered by the claims commercially successful due to the merits of the claimed invention?

2.    Was there was long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

3.    Did others try, but fail, to solve the problem solved by the claimed invention?

4.    Did others copy the claimed invention?

5.    Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.    Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

## AUTHORITIES

*Graham v. John Deere Co*., 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966); *United States v. Adams*, 383 U.S. 39, 52, 86 S.Ct. 708, 714-15 (1966); *Perkin-Elmer Corp. v. Computervision Corp*., 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed.Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc*., 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc, v. Aeroquip Corp*., 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

30.    **DETERMINATION OF OBVIOUSNESS**

In determining whether the invention of a patent in suit would have been obvious to a person of ordinary skill in the art, you must presume that such a person would have known about all of the relevant prior art. In examining the prior art references, you should take into account not only what they expressly disclose or embody, but also anything that inherently occurred as a result of practicing what was expressly disclosed in that prior art. In this case Vonage contends that the prior art at least inherently disclosed all of the elements of the asserted claims. To show that all of the elements were inherently disclosed, Vonage must show by clear and convincing evidence that the prior art inherently possessed all those elements of the asserted claims.

If you conclude that the prior art disclosed all the elements or steps of at least one of the asserted claims, but those elements or steps are in separate references, you must then consider whether or not it would have been obvious to combine the elements or steps. In answering this question, it is important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the known elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims, such that someone reading the prior art would be discouraged from following the path taken by the Mr. Christie.

If the prior art merely discloses that it would have been obvious to explore a new technology or general approach that seems to be a promising field of experimentation, this would not constitute a suggestion of the claimed combination of elements or steps. Similarly, if the prior art merely discloses numerous possible combinations but gives no direction as to which of those many choices is likely to be successful, this does not constitute a suggestion of the claimed combination of elements or steps.

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art. When doing so, you must not use hindsight reasoning. In other words, it is wrong to use the Sprint patents as a guide through the prior references, combining the right references in the right way so as to achieve the result of Sprint's claimed invention.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co., et al.*, 464 F.3d 1356 (Fed. Cir. 2006); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349 (Fed. Cir. 2000); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353-54 (Fed. Cir. 2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340 (Fed. Cir. 1998); *Rouffet*, 149 F.3d 1350 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573 (Fed. Cir. 1997); *Orthopedic Equip. Co. v. United States,* 702 F.2d 1005 (Fed. Cir. 1983).

31.      **WRITTEN DESCRIPTION REQUIREMENT**

Vonage contends that the asserted claims are invalid for failure to satisfy the written description requirement.  Vonage bears the burden of establishing lack of written description by clear and convincing evidence.

A patent must contain a written description of the system or method claimed in the patent.  To satisfy the written description requirement, the patent must describe the limitations of a patent claim, although the exact words found in the claim need not be used.  The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention as finally claimed in the patent.

If you find that Vonage has proved by clear and convincing evidence that the Asserted Patents do not contain a written description of the invention covered by a particular asserted claim, then you must find that claim to be invalid.  You must make this determination on a claim-by-claim basis for every asserted claim.

**AUTHORITIES**

*Univ. of Rochester v. G.D. Searle & Co*., 358 F.3d 916 (Fed. Cir. 2004); *Turbocare Div. of Demag Delaval Turbomach. Corp., v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2002); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002) (en banc); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 20 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp*., 134 F.3d 1473, 1478-90 (Fed. Cir. 1998); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991); AIPLA Model Jury Instructions Par. 9 (as modified).

32.    **ENABLEMENT**

Vonage contends that the asserted claims are invalid for lack of enablement.  Vonage bears the burden of proving lack of enablement by clear and convincing evidence.

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the invention.  This is referred to as the enablement requirement.  If the patent does not enable one of ordinary skill in the art to practice the product or method of a patent claim, then the claim is invalid.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that one of ordinary skill in the art would be likely to already know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  A written description is enabling so long as undue experimentation is not needed to make or use the invention.   A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and the level of expertise and knowledge of persons skilled in that field.

In addition, enablement does not require an inventor to meet the standards for success in the commercial marketplace.  The enablement inquiry is directed to the level of experimentation necessary to make or use the claimed invention, not to the level of research and development necessary to bring a product to market.

Whether or not Sprint makes a product or service that is within any claim of the Asserted Patents is not relevant to the issue of enablement unless Vonage shows that Sprint employees with the appropriate level of skill attempted to follow the specification of the Asserted Sprint Patents but failed to make a product or service embodying the claimed invention.

If you find that Vonage has proved by clear and convincing evidence that the written description of the Asserted Patents do not enable a skilled person to make and use the invention covered by a particular asserted claim without undue experimentation, then you must find that claim to be invalid. You must make this determination on a claim-by-claim basis for every asserted claim.

**AUTHORITIES**

*CFMT, Inc. v. YieldUp In''l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003); *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1374 (Fed. Cir. 1999); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998); *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278, 1291 (D. Del. 1987), aff'd 865 F.2d 1247 (Fed. Cir. 1989); *Engel Industries, Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532-33 (Fed. Cir. 1991); *SRI Int'l v. Matsushita Electric Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985).

**33.    DAMAGES**

If you find that the Accused Vonage System infringes any of the asserted claims, and that such claims are not invalid, you must determine the amount of damages to be awarded Sprint for the infringement.

Sprint has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty. Reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Sprint's right to recover. You may base your evaluation of reasonable certainty on opinion evidence provided by expert witnesses. Any doubts regarding the computation of the amount of damages should be resolved against Vonage and in favor of Sprint.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Sprint.

**AUTHORITIES**

*Interactive Pictures Corp. v. Infinite Pictures Corp.*, 374 F.3d 1371, 1385 (Fed. Cir. 2001); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482 (Fed. Cir. 1990).

34.    **COMPENSATORY PATENT DAMAGES IN GENERAL- AMOUNT**

If you find that any claim of the Asserted Patents is both infringed and not invalid, then Sprint is entitled to damages adequate to compensate for the infringement. Your damage award should put Sprint in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty. You may not add anything to the amount of damages to punish Vonage or to set an example.

It is not relevant to the question of damages whether Vonage benefited from, realized profits from, or even lost money as a result of the acts of infringement. It is also not relevant if Vonage did not foresee that it would cause Sprint damage at the time that it infringed the asserted claims. The only issue is the amount necessary to compensate Sprint for Vonage's infringement. Adequate compensation should return Sprint to the position it would have occupied if there had been no infringement.

**AUTHORITIES**

35 U.S.C. § 284; *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*): *King Instruments Corp. v. Perego*, 65 F.3d 941, 948, n.3 (Fed. Cir. 1995);

**35.     WHAT IS A REASONABLE ROYALTY?**

In this case, Sprint is asking for damages in the amount of a reasonable royalty. A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between Sprint and Vonage taking place at the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of Sprint and Vonage would have been had they entered into an agreement at that time and acted reasonably in their negotiations.

For purposes of determining a reasonable royalty, you must assume that both parties believed at the time of the negotiation that the Asserted Patents were valid and infringed. In addition, you must assume that Sprint and Vonage were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In deciding what is a reasonable royalty, you may consider the factors that Sprint and Vonage would consider in setting the amount Vonage should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.   Whether Sprint had established a royalty for the Asserted Patents, for example, by granting other licenses to the Asserted Patents. For a rate to be an established royalty, it must have been used repeatedly within the relevant commercial context so that it becomes essentially the "going rate" for a license under the Asserted Patents. You should remember, however, that an established royalty may have been set before the patent was determined to be valid and infringed in court and, therefore, may not be as much as it would be if both Sprint and Vonage know it is valid.

2.   Royalties paid by Vonage or by others for patents comparable to the Asserted Patents.

3.   Whether or not Sprint had a policy of licensing or not licensing the patent.

4.   Whether or not Sprint and Vonage are competitors.

5.   Whether being able to use the patented invention helps in making sales of other products or services.

6.   The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

7.  The advantages and benefits of using the patented invention over products not claimed in the Asserted Patents.

8.  The extent of Vonage's use of the patented invention and the value of that use to Vonage.

9.  Whether or not there is a portion or percentage of the profit or selling price that is customarily paid for use of patented inventions comparable to the inventions claimed in the Asserted Patents.

10.  The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Vonage.

11.  Expert opinions as to what would be a reasonable royalty.

12.  The nature and scope of the license as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

13.  The duration of the Asserted Patents and the term of the license.

14.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Sprint; and the benefits to those who have used the invention.

15.  The amount that Sprint and a licensee would have agreed upon at the time the infringement began if they had reasonably and voluntarily tried to reach an agreement.

## AUTHORITIES

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Phillips Petroleum Co. v. Rexene Corp.*, 1997 WL 781856, *17 (D.Del. 1997); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

36.    **TOTAL DAMAGES**

If you determine Vonage has infringed a valid claim of the Asserted Patents, you should arrive at a total damages amount to award to Sprint.  It is your job to consider the evidence regarding the reasonable royalty and determine the amount to which Sprint is entitled.

If you find that Vonage has infringed one or more claims of the '561, '429, '064 or '294 patents, Sprint is entitled to a reasonable royalty on all Vonage sales since March, 2002.  This is true whether or not you also find that Vonage has infringed claims in the '572 or '932 patents.

If, on the other hand, you find that Vonage has infringed **only** claims in the '572 or '932 patents but **not** infringed claims in the '561, '429, '064, or '294 patents, Sprint is entitled to a reasonable royalty on all Vonage sales since October, 2005.

The amount of damages Vonage owes Sprint may exceed the royalty that would have resulted from a real-world licensing negotiation between Sprint and Vonage. Here, a real-world licensing negotiation did not occur and Sprint pursued its rights in litigation. Therefore, if you find that Vonage infringes one or more asserted claim, Vonage need not necessarily receive the benefit of a royalty rate that Sprint may have been willing to negotiate in the absence of infringement.


**AUTHORITIES**

*Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.,* 297 U.S. 387 (1936); *State Contracting and Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1074 (Fed. Cir. 2003); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1109-10 (Fed. Cir. 1996); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1158 (6th Cir. 1978); *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075 (Fed. Cir. 1983); *The Coca-Cola Co. v. Pepsico, Inc.,* No. CIVA 102-CV-2887-RWS, 2004 WL 4910334 at *32-*33 (N.D. Ga. Sept. 29, 2004); Fed. Cir. Bar Ass'n Model Instruction 12.3.8 (as amended).