## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| VONAGE HOLDINGS CORP., ) | Case No. 05-2433-JWL |
| VONAGE AMERICA, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PROPOSED JURY INSTRUCTIONS

<u>**PROPOSED JURY INSTRUCTIONS**</u>

1.    **[GENERAL INSTRUCTIONS TO BE SUPPLIED BY THE COURT]**

2.    **STIPULATIONS**

The following facts are uncontroverted:

1.    Plaintiff Sprint Communications Company L.P. is a Limited Partnership with its principal place of business in Overland Park, Kansas.

2.    Defendants Vonage Holdings Corp. and Vonage America, Inc. are corporations with their principal places of business in Edison, New Jersey.

3.    Sprint is the owner by assignment of the following United States Patents, which are referred to collectively herein as the "Asserted Patents":

| U.S. Patent No. 6,304,572 | "the '572 patent" |
|---|---|
| U.S. Patent No. 6,633,561 | "the '561 patent" |
| U.S. Patent No. 6,463,052 | "the '052 patent" |
| U.S. Patent No. 6,452,932 | "the '932 patent" |
| U.S. Patent No. 6,473,429 | "the '429 patent" |
| U.S. Patent No. 6,298,064 | "the '064 patent" |
| U.S. Patent No. 6,665,294 | "the '294 patent" |

4.    Each of the Asserted Patents was issued by the U.S. Patent and Trademark Office to Joseph Michael Christie.  Mr. Christie died on or around February 22, 1996.

5.    The '429 Patent, the '064 Patent, and the '294 Patent will be referred to as "the '301 Family Patents."  The '301 Family Patents all claim the priority date of U.S. Patent No. 5,991,301 filed September 8, 1995, and share a common specification.

6.    The '561 Patent, the '052 Patent, the '572 Patent and the '932 Patent will be referred to as "the '605 Family Patents."  The '605 Family Patents all claim the priority date of the U.S. Patent Application No. 08/238,605, filed May 5, 1994, and share a common specification.

7.    Sprint is not aware of any product or service made, sold, or offered for sale by Sprint that is within the scope of any claim of the Asserted Patents.

8.     Vonage first offered for sale its VoIP service, Vonage DigitalVoice, in March, 2002.

9.     The following letters were received by Vonage: the letter dated July 13, 2004 (SPCC.1157-58); the letter dated August 19, 2004 (SPCC.1165-66); the letter dated November 12, 2004 (SPCC.1159); the letter dated May 9, 2005 (SPCC.1160); and the letter dated July 15, 2005 (SPCC.1169).

10.     Sprint received a letter from Vonage dated September 30, 2005.   (Def. Exh. 1482).

11.     Vonage asserts that it does not infringe any claim of the Asserted Patents.

12.     Vonage claims that the Asserted Patents are invalid over the following prior art:

| U.S. Pat No. 4,991,172 | Priority Date: October 28, 1988 | "Cidon" | Entitled: "Design of a high speed packet switching node" |
|---|---|---|---|
| U.S. Pat No. 4,491,945 | Priority Date: June 25, 1982 | "Turner" | Entitled: "Fast packet switch" |
| U.S. Pat No. 5,434,852 | Priority Date: June 25, 1993 | "LaPorta" | Entitled: "Distributed processing architecture for control of broadband and narrowband communications networks" |
| U.S. Pat No. 5,115,426 | Priority Date: March 30, 1990 | "Spanke" | Entitled: "Broadband ISDN packet switching arrangements" |
| U.S. Pat No. 5,440,563 | Priority Date: October 12, 1993 | "Isidoro" | Entitled: "Service circuit allocation in large networks" |
| U.S. Pat No. 5,339,318 | Priority Date: October 22, 1992 | "Tanaka" | Entitled: "VPI and VCI assignment system in ATM system" |

| U.S. Pat. No. 5,544,163[1] | Priority Date: March 8, 1994 | "Madonna" | Entitled: "Expandable telecommunications system" |
|---|---|---|---|

---

[1] The parties agree that Madonna is prior art to the '301 Family Patents. Sprint, however, contests that Madonna is prior art to the '605 Family Patents

## 3.     BURDENS OF PROOF

In a patent case such as this, there are two different burdens of proof for you to keep in mind.

One is called the preponderance of the evidence. This burden of proof requires that, in order for a party to prevail on a claim, you must be persuaded that the party's claim is more probably true than not true.

The second burden of proof is a higher one. It is called clear and convincing evidence. This burden of proof requires that, in order for a party to prevail on a claim, you must be persuaded that the party's claim is highly probable.

You must decide essentially four main issues in this case. The burden of proof on those issues is as follows.

1.     Infringement. Sprint has the burden of proof on its claim that the accused system infringes the Asserted Patent Claims. Sprint must prove this claim by a preponderance of the evidence.

2.     Invalidity. Vonage has the burden of proof on its claims that the Asserted Patent Claims are invalid. Vonage must prove this claim by clear and convincing evidence.

3.     Damages. Sprint has the burden of proving damages by a preponderance of the evidence. If you find that Sprint has met its burden of proof on its infringement claim as to any one of the Asserted Patent Claims and also that Vonage has not met its burden of proof on the issue of invalidity as to that particular claim, you must then determine the amount, if any, to which Sprint has proven they are entitled, by the preponderance of the evidence, as damages to compensate for the infringement.

4.     Willfulness. If you find that Sprint has met its burden of proof on its infringement claim as to any one of the Asserted Patent Claims and also that Vonage has not met its burden of proof on the issue of invalidity as to that particular claim, you must then determine whether Sprint has proven, by clear and convincing evidence, that Vonage's infringement was willful. Sprint has the burden of proof on this issue.

In determining whether a party has met its burden, consider all the evidence, whether produced by Sprint or by Vonage. The weight of the evidence on any issue is not determined by the number of witnesses but rather by how reasonable, persuasive, and satisfying the evidence is to you.

## AUTHORITY

Ninth Circuit Model Civil Jury Instructions 1.13, 1.14 (as modified); *Colorado v. New Mexico*, 467 U.S. 310, 315-16 (1984).

Jury Instructions in *Freeman v. Gerber Prods. Co.*, Civ. Action No. 02-2249-JWL, p. 57-58.

4.    **THE PATENT SYSTEM**

At the beginning of the trial, you saw the video about the patent system.  I will now give you additional instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 6.

## 5.     THE CLAIMS OF THE PATENTS IN SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims set forth the "metes and bounds" of the invention, and recite what the patent owner owns and what the patent owner may prevent others from doing.  Claims may be directed at products, systems, or methods for making or using a product or system.

Claims are usually divided into parts or steps, called "limitations."

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 7 (as modified).

6.    **CONSTRUCTION OF THE CLAIMS**

To decide whether or not an accused product or method infringes a patent or whether or not a patent is valid, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

It may be helpful to refer to the copy of the Asserted Patents that you have been given as I discuss the claims at issue here. I will be giving you a list of the claims of the Asserted Patents at issue in this case as part of the verdict form when I conclude my instructions.

**AUTHORITIES**

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments*, Inc., 517 U.S. 370, 384-391 (1996); *Bell Atlantic Network Sews., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); Pitney *Bowes, Inc. v. Hewlett- Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); *Rival Co. v. Sunbeam Corp.*, 987 F. Supp. 1167, 1171 (W.D. Miss. 1997), *aff'd without op.*, 185 F.3d 885 (Fed. Cir. 1999); *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, No. 95C 7255, 1997 WL 187326, at *2 (N.D. Ill. April 11, 1997); Fed. Cir. Bar Ass'n Model Instruction 7.1 (as modified).

7.    **INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself.  Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

For example, claim 3 of the '429 patent is a dependent claim. It refers to claim 1.  To determine what dependent claim 3 covers, the words of that claim and the words of claim 1 must be read together.  Claims 2, 5 and 6 are also dependent claims.

The verdict forms indicate which asserted claims are independent claims and which are dependent claims.

## AUTHORITIES

35 U.S.C. § 112 ¶ 4; *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-23 (Fed. Cir. 1989); Fed. Cir. Bar Ass'n Model Instruction 7.2 (as modified).

8.    "COMPRISING" CLAIMS

The beginning portion, or preamble, of the claims of the Asserted Patents patent uses the word "comprising."  "Comprising" has a special meaning in patent law, and it means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products having only the limitations that are recited in the claim, but also covers products that add additional elements or steps.  For example, if a claim recites one of something, an accused product containing two of that something still meets the limitation because it has at least one. However, the word "comprising" does not make the claim limitations themselves open-ended; an accused product must have each and every claim limitation as recited in order to be covered by the claim.

**AUTHORITIES**

*Dippin' Dots, Inc. v. Mosey,* 476 F.3d 1337, 1343 (Fed. Cir. 2007); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811-12 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-29 (Fed. Cir. 1999); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379-80 (Fed. Cir. 1998); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1177-79 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 7.5 (as modified).

**9.     LIMITATIONS OF THE CLAIMS AT ISSUE**

I have now instructed you as to the types of claims at issue in this case.  I will next define the meaning of the words used in the patent claims at issue.  You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

The terms "interworking unit" and "interworking device" in the asserted claims of the '294, '064 and the '429 Patents mean "*an ATM Interworking Multiplexer*".

The term "identifier" in the asserted claims of the '294, '064 and the '429 Patents means "*data for routing information in a packet network*".

The term "processing system" in the asserted claims of the '064 and '429 Patents means "*any processing platform that can receive and process signaling to select virtual connections, and then generate and transmit signaling to identify the selections.*"

The term "processing the information in the processing system to select an identifier" in claim 1 of the '429 Patent means "*processing the information and making a selection from more than one possible identifier.*"

The term "process the information to select an identifier" in claim 23 of the '429 Patent means "*process the information and make a selection from more than one possible identifier.*"

The term "generating" in the asserted claims of the '572, '561, '932, '429 and '064 Patents, means "*creating for the first time.*"

The term "DS0 connection" in the asserted claims of the '052, '429 and '064 Patents means "*a logical channel representing 64,000 bits per second.*"

The term "asynchronous communication" in the asserted claims of the '064 and '429 means "*asynchronous transfer mode communication.*"

The term "a routing system" in the asserted claims of the '429 Patent means "*components for delivering ATM cells over virtual connection*s.*"

The term "routing the asynchronous communication through the routing system based on the identifier in the header" in claim 2 of the '429 Patent means "*using the identifier in the header to deliver the asynchronous communication through the routing system.*"

The term "generate" in the asserted claims of '429 and '064 Patents means "*create for the first time.*"

The term "communication system" in the asserted claims of the '052, '561, '932, '429 and '064 Patents means "*at least one network element having at least one connection used to communicate with at least one endpoint.*"

The term "route the asynchronous communication based on the identifier in the header" in claim 24 of the '429 Patent means "*using the identifier in the header to deliver the asynchronous communication.*"

The term "the identifier is selected by processing a signaling message" in the asserted claims of the '294 Patent means "*processing a signaling message and making a selection from more than one possible identifier.*"

The term "signaling message" in the asserted claims of the '572, '294 and '561 Patents means "*a message used to transfer information among points and network elements to establish communication paths.*"

The term "processing the set-up signaling in the processing system to select a DS0 connection" in claim 1 of the '064 Patent means "*processing the set up signaling and making a selection from more than one possible DS0 connection in the processing system.*"

13

The term "process the set-up signaling to select a DS0 connection" in claim 35 of the '064 Patent means "*process the set up signaling and make a selection from more than one possible DS0 connection.*"

The term "first message" in the asserted claims of the '932 Patent means "*a narrowband signaling message.*"

The term "processing the first message in a processing system external to the narrowband switches to select one of the narrowband switches" in the claim 1 of the '932 Patent means "*processing the narrowband signaling message and making a selection from more than one possible narrowband switch in a processing system that is external to narrowband switches.*"

The term "process the first message to select to select one of the narrowband switches" in the claim 18 of the '932 Patent means "*process the narrowband signaling message and make a selection from more than one possible narrowband switch.*"

The term "a signaling message from a narrowband communication system" in the asserted claims of the '561 Patent means "*a signaling message formatted for a narrowband communication system.*"

The term "processing the signaling message to select a network code that identifies a network element to provide egress from the packet communication system for the user communication" in claim 1 of the '561 Patent means "*processing the signaling message and making a selection from more than one possible logical address that identifies a network element to provide egress from the packet communication system for the user communication.*"

The term "network code" in the asserted claims of the '052 and '561 Patents means "*a logical address identifying a network element.*"

The term "using the network code to route the user communication through the packet communication system to the network element" in the asserted claims of the '561 Patent means "*using the logical address identifying the network element to deliver the user communication through the packet communication system to the egress network element.*"

The term "selecting a network code that identifies a network element to provide egress" in claim 24 of the '561 Patent means "*making a selection from more than one possible logical address that identifies a network element to provide egress.*"

The term "signaling" in the asserted claims of the '572 and '052 Patents means "*a signaling message.*"

The term "signaling formatted for a narrowband system" in the asserted claims of the '052 Patent means "*signaling message in the format used by narrowband switches.*"

The term "processing the signaling to select a network code that identifies a network element to provide egress for the user communication from the packet communication system" in claim 1 of the '052 Patent means "*processing the signaling message and making a selection from more than one possible logical address that identifies a network element to provide egress from the packet communication system for the user communication.*"

The term "communication path" in the asserted claims of the '052 Patent means "*the combination of connections and network elements that physically transfers the information, such as voice and data, between points.*"

The term "in-band telecommunications signaling" in the asserted claims of the '572 Patent means "*signaling transmitted on the actual communications path.*"

The term "coupled" in the asserted claims of the '572 Patent means "*physically attached or logically mapped.*"

The term "connection" in the asserted claims of the '572 Patent means "*the media between two network elements that allows the transfer of information*."

The term "out-of-band telecommunications signaling message" in the asserted claims of the '572 Patent means "*a signaling message that is not transmitted on the actual communications path*."

The term "processing the out of band telecommunication signaling message in the processor to select a second connection coupled to the first telecommunications device and to the second telecommunications device" in claim 1 of the '572 Patent means "*processing the out-of-band telecommunications signaling message and making a selection from more than one possible second connection coupled to the first telecommunications device and to the second telecommunications device*."

The term "routing" in the asserted claims of the '572 Patent means "*delivering*."

The term "coupling" in the asserted claims of the '572 Patent means "*physically or logically mapping*."

The term "coupling the first connection to the second connection in response to the first control message" in claim 1 of the '572 Patent means "*physically attaching or logically mapping the first connection to the second connection after receiving the first control message*."

The term "to couple the first connection to the second connection in response to the first control message" in claim 38 of the '572 Patent means "*physically attach or logically map the first connection to the second connection upon receipt of the first control message*."

The term "to process the out-of-band telecommunications signaling message to select the second connection" in claim 38 of the '572 Patent means "*to process the out-of-band*

*telecommunications signaling message and make a selection from more than one possible second*

*connection.*"

You should give the rest of the words in the claims their ordinary meaning to one skilled in the art in the context of the patent specification and prosecution history.

**AUTHORITIES**

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments*, Inc., 517 U.S. 370, 384-391 (1996); Fed. Cir. Bar Ass'n Model Instruction 7.8 (as modified).

10.    **PATENT INFRINGEMENT GENERALLY**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  To determine infringement, you must compare the accused system with each of the asserted claims, using my instructions as to the meaning of these claims.  The accused system should be compared only to the invention set forth in the patent claims.


**AUTHORITIES**

35 U.S.C. § 271-281; *eBay Inc. v. MercExchange L.L.C.*, 126 S.Ct. 1837, 1839 (2006); *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

## 11.    INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS

In order to infringe a patent claim, a system or method must include every limitation of the claim.  If the accused system omits even a single limitation recited in an asserted claim, then you must find that Vonage has not infringed that particular claim.  You must consider each of the asserted claims separately.

A claim limitation may be present in one of two ways, either literally or under what is known as the doctrine of equivalents.  A claim limitation is literally present if it exists in the accused system just as it is recited in the claim language.

For there to be infringement under the doctrine of equivalents, every claim limitation, or something equivalent to that limitation, must be present in the accused product.  A particular claim limitation can be satisfied under the doctrine of equivalents if an element of the accused system performs substantially the same function, in substantially the same way, to achieve substantially the same result as the missing claim limitation.  Only one part of the test, for example "the way", need be different to find that the accused system is not an equivalent of the claim limitation.  One way of making this determination of equivalents is to consider if the structure of the accused system and the structure recited in the missing claim limitation are interchangeable.

## AUTHORITIES

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Allen Engineering Corp. v. Bartell Indus., Inc.*, 2002 WL 1765989 (Fed. Cir. 2002); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1334 (Fed. Cir. 2001); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1107 (Fed. Cir. 2000); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1287 (Fed. Cir. 2000); *Bayer AG v. Elan Pharm., Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1301-02 (Fed. Cir. 1999); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*); Fed. Cir. Bar Ass'n Model Instruction 8.3 (as modified).

Fed. Cir. Bar Assoc. Model Patent Jury Instruction No. 8.4; *Freeman v. Gerber Prods. Co.*, Civ. Action No. 02-2249-JWL, p. 24.

**12.     DETERMINATION OF INFRINGEMENT**

Taking each of the asserted claims separately, if you find that Sprint has proved by the preponderance of the evidence that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in the accused system, then you must find that Vonage infringes that claim. You must determine whether each and every independent claim has been infringed.

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 8.7 (as modified).

13.    **INFRINGEMENT OF DEPENDENT CLAIMS**

My instructions on infringement so far have related to independent claims.  As I told you, the Asserted Patents also contains dependent claims.  A dependent claim includes each of the limitations of the independent claim to which it refers, plus the additional elements listed in the dependent claim itself.

If you find that an independent claim of the Asserted Patents has been infringed, then you must separately determine whether each of the claims depending from that claim has also been infringed.  If you find that an independent claim has not been infringed, then you must also find that the claims depending from that claim have not been infringed.  If an independent claim is not infringed, then all claims depending from that claim cannot be infringed.   You must determine whether each and every dependent claim of the Asserted Patents has been infringed.

**AUTHORITIES**

*Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp. v. United States Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989); Fed. Cir. Bar Ass'n Model Instruction 8.10 (as amended).

## 14.     VALIDITY—VALIDITY IN GENERAL

Up until now, my instructions have focused on the law you must apply to determine whether Vonage infringes the Asserted Patents.  We now turn to the next major issue in the case, which is the validity of the asserted claims of the Asserted Patents.

You must determine validity separately from your determination on infringement.  For example, you may find a patent to be valid but not infringed.  Likewise, you may find a patent infringed but not valid.

Only a valid patent claim may be infringed.  For a patent claim to be valid, the invention claimed in the patent must be new, useful and non-obvious.  A patent cannot legally take away the right to use an identical combination of parts or elements which was already known before the invention was made, or that which was obvious from what was already known.  The terms "new," "useful" and "non-obvious" have special meanings under the patent laws.  I will explain these terms to you as we discuss Vonage's grounds for asserting invalidity.

The specification of a patent must describe and enable the full scope of the claimed invention.  In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use the full scope of the claimed invention.

Vonage has challenged the validity of the asserted claims on a number of grounds. Each claim of the Asserted Patents is presumed to be valid.  Vonage can prove that a patent claim is invalid by the clear and convincing standard.

I will now explain to you each of Vonage's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each of the asserted claims separately.

**AUTHORITIES**

*Morton Int'l* v. *Cardinal Chem. Co.*, 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Avia Group Int'l, Inc.* v. *L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc.* v. *Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc.* v. *Aeroquip Corp.,* 713 F.2d 1530, 1534 (Fed. Cir. 1983); Fed. Cir. Bar Ass'n Model Instruction 10.1 (as amended).

15.    **THE PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new, useful and non-obvious in light of the prior art. That which came before is referred to as the "prior art."

Vonage and Sprint agree that the following items existed before the invention claimed in the Asserted Patents, and therefore they are prior art.

| U.S. Pat No. 4,991,172 | Priority Date: October 28, 1988 | "Cidon" | Entitled: "Design of a high speed packet switching node" |
|---|---|---|---|
| U.S. Pat No. 4,491,945 | Priority Date: June 25, 1982 | "Turner" | Entitled: "Fast packet switch" |
| U.S. Pat No. 5,434,852 | Priority Date: June 25, 1993 | "LaPorta" | Entitled: "Distributed processing architecture for control of broadband and narrowband communications networks" |
| U.S. Pat No. 5,115,426 | Priority Date: March 30, 1990 | "Spanke" | Entitled: "Broadband ISDN packet switching arrangements" |
| U.S. Pat No. 5,440,563 | Priority Date: October 12, 1993 | "Isidoro" | Entitled: "Service circuit allocation in large networks" |
| U.S. Pat No. 5,339,318 | Priority Date: October 22, 1992 | "Tanaka" | Entitled: "VPI and VCI assignment system in ATM system" |

Vonage and Sprint agree that the following item existed before the invention claimed in the '301 Family Patents, and therefore is prior art to that family.

| U.S. Pat. No. 5,544,163 | Priority Date: March 8, 1994 | "Madonna" | Entitled: "Expandable Telecommunication System" |
|---|---|---|---|

Although the parties agree that these patents existed before Sprint filed for its Asserted Patents, Vonage and Sprint disagree as to whether these patents affect the validity of the Asserted Patents.

**AUTHORITIES**

35 U.S.C. § 102(a), (b), and (e); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu,* 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.6.9 (as amended).

16.    **PRIOR ART – PRIOR PATENTS**

Although Sprint agrees that Madonna is prior art to the '301 Family Patents, Sprint asserts that it can show that Madonna is not prior art to the '605 Family Patents. This reference is U.S. Patent No. 5,544,163 to Madonna (the "Madonna patent").

A U.S. patent may be prior art to a patent-in-suit even if the prior art patent issued after the patent-in-suit was filed. This occurs when the patent application for the prior art patent was filed by another person before the inventor made the claimed invention. The Madonna patent is therefore prior art if it was filed before Mr. Christie made the claimed invention. The parties agree that the Madonna patent was filed on March 8, 1994. To resolve the question of whether the Madonna patent is prior art, you must determine whether Mr. Christie made the claimed invention before or after March 8, 1994, the date the Madonna patent was filed.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. The "conception" of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without any further inventive effort or extensive research or experimentation. Because it is generally a mental process, proof of conception requires independent confirmation in the form of a contemporaneous disclosure that would teach one skilled in the art how to make and use the invention.

The second part is the actual making of the invention, which is referred to as a "reduction to practice". An invention is said to be "reduced to practice" when it has been made and shown to work for its intended purpose.

Under the patent laws, the date of invention is usually the date on which the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is May 5, 1994 for the '605 Family Patents. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There is an exception to this rule, however, if the inventor of the patent-in-suit had a complete conception of the invention before the date of the prior art and then exercised reasonable diligence from just before the date of the art up to the inventor's filing date. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of diligence.

The Madonna patent was filed on March 8, 1994, while Sprint's '605 Family Patents rely on a later filing date of May 5, 1994. To show that the Madonna patent is not prior art to the '605 Family Patents, Sprint must prove that Mr. Christie had a complete conception of each and every limitation of the claimed methods and systems before March 8, 1994, the date of Madonna's filing. Sprint must prove this through documents that are sufficiently detailed to teach one skilled in the art how to make and use the invention. If even one limitation of an asserted claim is missing from the documents that Sprint uses to corroborate Mr. Christie's alleged conception of the invention, then his conception was not complete and you must find that the Madonna patent is prior art to that claim.

Sprint must also prove by a preponderance of the evidence that Mr. Christie exercised reasonable diligence from before March 8, 1994 up to the date of his filing on May 5, 1994. If Mr. Christie did not work continuously to try to reduce his invention to practice, then you must find that the Madonna reference is prior art, even if you also find that Mr. Christie conceived of his invention first.

However, if you find that Sprint has provided documents that fully corroborate that Mr. Christie conceived of his invention before March 8, 1994 and that Sprint has shown that Mr. Christie acted diligently, then you must find that the Madonna patent is not prior art to the '605 Family Patents.

## AUTHORITIES

35 U.S.C. § 102(a), (b), and (e); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1173 (Fed. Cir. 2006); *Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1383 (Fed. Cir. 2004); *Singh v. Brake*, 317 F.3d 1334, 1340-41, 1342 (Fed. Cir. 2002); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed.Cir.2001); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed.Cir.2000); *Genentech Inc. v. Chiron Corp.*, 220 F.3d 1345, 1351 (Fed.Cir.2000); *Bruning v. Hirose*, 161 F.3d 681, 684-85 (Fed.Cir.1998); *Cooper v. Goldfarb*, 154 F.3d 1321, 1326-31 (Fed.Cir.1998); *Hyatt v. Boone*, 146 F.3d 1348, 1352-55 (Fed.Cir.1998); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed.Cir.1996); *In re Chu*, 66 F.3d 292, 296-97 (Fed.Cir.1995); *In re Robertson*, 169 F.3d 743, 745 (Fed.Cir.1999); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir.1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed.Cir.1991).

Fed. Cir. Bar. Assoc. Model Instruction 10.6.1 and 10.6.9.

17.     **PRIOR ART – ANTICIPATION/LACK OF NOVELTY**

A person cannot obtain a patent on an invention if someone else has already made the same invention.   In other words, the invention must be new.  If an invention is not new, we say that it was "anticipated" by the prior art.  An invention that is "anticipated" by the prior art is not entitled to patent protection.

In order for a claim of the Asserted Patents to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art.

A prior art reference anticipates a claim if it discloses the claimed invention such that it would enable a person of ordinary skill in the art to use the invention.  In determining whether the disclosure meets this test, you should take into account the knowledge that of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present.  Something is "inherent" in an item of prior art if it is necessarily present in that piece of prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.  A party claiming inherency must prove it by clear and convincing evidence.

In this case, Vonage contends that the asserted claims of the Asserted Patents are invalid because they are anticipated by one or more items of prior art.  If you find that Vonage has proved that it is clear and convincing that one of the asserted claims is anticipated by an item of prior art, then you must find that particular claim to be invalid.

**AUTHORITIES**

*Impax Labs., Inc. v. Aventis Pharm. Inc.*, No. 05-1313, 2006 WL 3346151, at *36 (Fed. Cir. Nov. 20, 2006); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983); *In re Graves*, 69 F.3d 1147 (Fed. Cir. 1995); Fed. Cir. Bar Ass'n Model Instruction 10.8 (as amended).

18.     **PRIOR ART – PRINTED PUBLICATION**

Vonage contends that the Asserted Claims of all of the Asserted Patents are anticipated because the inventions defined in the claims of those patents were described in a printed publication either: (i) before the inventor made his invention; or (ii) more than one year before the effective filing date of the application for the patent.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

So long as the printed publication was available, the form in which the information was recorded is unimportant. The information must, however, have been maintained in some permanent form, such as a printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies. Printed publications may also include issued patents.

**AUTHORITIES:**

35 U.S.C. § 102; *In re Carol F. Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995); *Scripps Clinic &Research Found. v. Genentech, Inc*., 927 F.2d 1565 (Fed. Cir. ), *clarif. on recon*., 927 F.2d 1565 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897 (Fed. Cir. 1986); *In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.*, 726 F.2d 724 (Fed. Cir. 1984); AIPLA Model Patent Jury Instructions, Instruction 6.4; Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 10.6.7.

19.     **OBVIOUSNESS**

Vonage contends that the asserted claims are invalid because the claimed inventions were "obvious."  A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. Obviousness may be shown by considering more than one item of prior art.  The question is: would it have been obvious for a skilled person who knew of the prior art to make the invention as set forth in the claim?  If the answer to this question is yes, then the patent claim is invalid. Vonage bears the burden of proving obviousness by clear and convincing evidence.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention.  The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention.  Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention at the time of the invention
.

In deciding obviousness, you should avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the asserted patents. You must put yourself in the place of a person of ordinary skill at the time the invention was made.  While you must be cautious of the bias hindsight may cause, you must above all use your common sense, and base your determination on the objective reach of the claim.

A claim may be obvious if it would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made, based on the prior art and other reasonably available information, to try to make the invention in the Asserted Patent.

You should consider the following factors in determining whether the claimed inventions are obvious:

1.  The scope and content of the prior art;

2.  The difference or differences, if any, between each asserted claim and the prior art;

3.  The level of ordinary skill in the art at the time the inventions of the Asserted Patents were made; and

4.  Objective indications, if any, of non-obviousness.

Against this background, you must decide whether or not the invention covered by the asserted claims would have been obvious.  I will now explain each of the four factors in more detail.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S.Ct. 1727, 1740-41 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.,* 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983).

20.    **THE SCOPE AND CONTENT OF THE PRIOR ART**

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Vonage.  In examining the prior art references, you should take into account not only what they expressly disclose or embody, but also anything that inherently occurred as a result of practicing what was expressly disclosed in that prior art.  You should also consider the general knowledge that one of skill in the art has, even if it does not appear in the specific references relied on by Vonage.  You must decide whether this prior art was reasonably relevant to the particular problem Mr. Christie faced in making the invention covered by the asserted claims, or to any other need or problem known in his field of endeavor.  Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem Mr. Christie faced or any other need or problem known in his field of endeavor.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. l, 27-28 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.9.1 (as amended).

21.    **DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART**

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention. You may also take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. l, 27-28 (1966); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353-54 (Fed. Cir. 2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Nyko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 717 (Fed. Cir. 1991); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

22.    **LEVEL OF ORDINARY SKILL**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

A person of ordinary skill is presumed to have the ordinary level of creativity for a person in that field. Thus, a person of ordinary skill is able to make connections between his or her knowledge and the prior art and to solve problems using their experience and education.

In this case, a person of ordinary skill in the art would have had at least a Bachelors degree in electrical engineering, computer engineering, or computer science, or the equivalent skills and knowledge, or at least three years experience at a company working with narrowband and broadband networks, telecommunications signaling requirements and the Plain Old Telephone System (POTS).

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.9.3 (as amended).

23.    **FACTORS INDICATING NONOBVIOUSNESS**

You must also consider certain factors which, if established, may suggest that the invention would not have been obvious.  These objective indication are only relevant if there is an established connection, or nexus, between them and the invention covered by the asserted claims.

1.    Were products covered by the claims commercially successful due to the merits of the claimed invention?

2.    Was there long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

3.    Did others try, but fail, to solve the problem solved by the claimed invention?

4.    Did others copy the claimed invention?

5.    Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.    Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

7.    Did others take licenses under the patents?

**AUTHORITIES**

*Graham v. John Deere Co*., 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966); *United States v. Adams*, 383 U.S. 39, 52, 86 S.Ct. 708, 714-15 (1966); *Perkin-Elmer Corp. v. Computervision Corp*., 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc*., 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc, v. Aeroquip Corp*., 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

24.     **DETERMINATION OF OBVIOUSNESS**

In determining whether the invention of a patent in suit would have been obvious to a person of ordinary skill in the art, you must presume that such a person would have known about all of the relevant prior art.

Vonage contends that the invention covered by the asserted claims would have been obvious to a person of ordinary skill in the relevant field at the time the invention was made.  If you find that Vonage has proved obviousness with clear and convincing evidence, then you must find the asserted claims are invalid.

A patent claim can be proved obvious by showing that the combination of elements was "obvious to try."  When there is a design need or there is market pressure to solve a problem and there are a limited number of identified, predictable solutions, then a person of ordinary skill has good reason to pursue all of those options.  If this leads to success, it is likely the product not of innovation but of ordinary skill and common sense, and therefore it would be considered an obvious solution.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co., et al.*, 464 F.3d 1356 (Fed. Cir. 2006); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349 (Fed. Cir. 2000); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353-54 (Fed. Cir. 2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340 (Fed. Cir. 1998); *Rouffet*, 149 F.3d 1350 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573 (Fed. Cir. 1997); *Orthopedic Equip. Co. v. United States,* 702 F.2d 1005 (Fed. Cir. 1983).

Fed Cir. Bar Assoc. Model Instruction 10.9.5.

25.    **WRITTEN DESCRIPTION REQUIREMENT**

The patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.

To satisfy the written description requirement, the specification must describe the full scope of a patent claim, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the inventors had possession of the invention that was ultimately claimed in the issued patent.

Vonage contends that the asserted claims are invalid for failure to satisfy the written description requirement.

To satisfy the written description requirement, the specification as originally filed must show a person of ordinary skill in the art that the inventor had invented the subject matter that is spelled out in the claims that ultimately issued as in the asserted patents. The description must be sufficiently clear that a person of ordinary skill in the art will recognize that the applicant had possession of an invention having each of the elements described in the claims.

To prove a claim invalid for lack of an adequate written description, Vonage must prove by clear and convincing evidence that the patent specification does not reasonably convey to a person of ordinary skill in the art that Mr. Christie had possession, on or before the filing date of his patent application, of the invention as claimed in the issued patent. If you find that Vonage has proved that the Asserted Patents do not contain a written description of the invention covered by a particular asserted claim, then you must find that claim to be invalid.

**AUTHORITIES**

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003); *Turbocare Div. of Demag Delaval Turbomach. Corp., v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2002); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002) (en banc); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 20 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-90 (Fed. Cir. 1998); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991); AIPLA Model Jury Instructions Par. 9 (as modified).

26.    **ENABLEMENT**

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the full scope of the claimed invention without undue experimentation. This is referred to as the enablement requirement. If the patent does not enable a skilled person to make or use the full scope of a patent claim, then the claim is invalid.

The patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the full scope of the claimed invention as of the date of the invention. If the claim scope encompasses two alternative structures, then the specification must teach how to make and use both alternatives. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the full scope of the claimed invention. Enablement cannot be proved by one making and using the invention years after the patent application is filed.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. A written description is enabling so long as undue experimentation is not needed to make or use the invention. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and the level of expertise and knowledge of persons skilled in that field. The failure of an inventor to build a working system, despite attempting to do so, is strong evidence of lack of enablement.

Vonage contends that the asserted claims are invalid for lack of enablement. If you find that Vonage has proved by clear and convincing evidence that the written description of the Asserted Patents do not enable a skilled person to make and use the full scope of any asserted claim without undue experimentation, then you must find that claim to be invalid. You must make this determination for every claim of the Asserted Patents.

**AUTHORITIES**

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); Liquid *Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1070-71 (Fed. Cir. 2005); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005); *Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347 (Fed. Cir. 2005); *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999); *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278, 1291 (D. Del. 1987), *aff'd* 865 F.2d 1247 (Fed. Cir. 1989); *Engel Industries, Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532-33 (Fed. Cir. 1991); *SRI Int'l v. Matsushita Electric Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985).

## 27.    DAMAGES

If you find that the accused system infringes any of the asserted claims, and that such claims are not invalid, you must determine the amount of damages to be awarded Sprint for the infringement.  If you find that Vonage does not infringe the asserted claims, or that such claims are not valid, then Sprint is not entitled to any damages and you do not need to make any findings about damages.

Sprint has the burden of proving damages by a preponderance of the evidence.  You should award only those damages that Sprint has more likely than not suffered.  While Sprint is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Sprint is not entitled to damages that are remote or speculative.

In this case, Sprint is seeking only a reasonable royalty as its damages.  You may not add anything to the amount of damages to punish Vonage or to set an example to others.  If you find that Sprint did not notify Vonage by communicating a specific charge that the Accused system infringed the Asserted Patents, then Sprint can only recover damages for infringement that occurred after its sued Vonage on October 4, 2005.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance only in the event you find the evidence in favor of Sprint.

## AUTHORITIES

*Interactive Pictures Corp. v. Infinite Pictures Corp.*, 374 F.3d 1371, 1385 (Fed. Cir. 2001); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482 (Fed. Cir. 1990); D*ow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGgaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); 35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062-1066 (Fed. Cir. 1987).

Fed. Cir. Bar Assoc. Model Instruction 12.1.1; Model Patent Jury Instructions for the Northern District of California (Sept. 2004); AIPLA Model Jury Instruction No. 12.1.

**AUTHORITIES**

*Interactive Pictures Corp. v. Infinite Pictures Corp.*, 374 F.3d 1371, 1385 (Fed. Cir. 2001); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482 (Fed. Cir. 1990) ); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGgaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); 35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062-1066 (Fed. Cir. 1987).

Fed. Cir. Bar Assoc. Model Instruction 12.1.1; Model Patent Jury Instructions for the Northern District of California (Sept. 2004); AIPLA Model Jury Instruction No. 12.1.

28.    **WHAT IS A REASONABLE ROYALTY?**

In this case, Sprint is asking for damages in the amount of a reasonable royalty.  A reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between Sprint and Vonage taking place at the time when the infringing use first began, in this case, in October 2001.  In considering the nature of this negotiation, the focus is on what the expectations of the parties would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, for purposes of determining a reasonable royalty, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In deciding what is a reasonable royalty, you may consider the factors that Sprint and Vonage would consider in October 2001 (the date of the hypothetical negotiation) in setting the amount Vonage should pay.

I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.  Whether the patent owner had established a royalty for the patented invention, for example, by granting other licenses at that royalty.  You should remember, however, that an established royalty may have been set before the patent was determined to be valid and infringed in court and, therefore, may not be as much as it would be if both the patent owner and the party wanting to use the patent know it is valid.

2.  Royalties paid by the licensee or by others for patents comparable to the Asserted Patents.

3.  The nature and scope of the license, as exclusive or non-exclusive.  Sprint's licensing policy.

4.  Whether or not Sprint and Vonage are competitors.

5.  Whether being able to use the patented invention helps in making sales of other products or services.

6.  The established profitability of a product made using the patent, and whether or not it is commercially successful or popular.

7.  The advantages and benefits of using the patented invention over old modes or device that had been used for working out similar results.

8.   The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Sprint, and the benefits to those who have used the invention.

9.   The extent of Vonage's use of the patented invention and the value of that use to Vonage.

10.   Whether or not there is a portion or percentage of the profit or selling price that is customarily paid for use of patented inventions comparable to the inventions claimed in the Asserted Patents.

11.   The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Vonage.

12.   Expert opinions as to what would be a reasonable royalty.

12.   The nature and scope of the license as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

13.   The duration of the Asserted Patents and the term of the license.

14.   Whether Vonage has a non-infringing alternative system it can implement, and at what cost.

15.   The economic climate and risk factors affecting those in the art at the time of the hypothetical negotiation.

16.   Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license. Such factors include the strength of the parties' bargaining positions to negotiate a higher or lower rate.

17.   A patent holder's lack of profitability is of major importance to the determination of a reasonable royalty.

The reasonable royalty you award should not be any higher under any circumstance than Vonage's cost to "design-around" the Asserted Patents, or implement a non-infringing alternative system.  It is Sprint's burden to establish, by a preponderance of the evidence, that Vonage has no acceptable non-infringing alternative to any system you find infringes the Asserted Patents.  If Sprint fails to prove that a given accused system infringes the Asserted Patents, then that system should be considered a non-infringing alternative.

**AUTHORITIES**

*Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580-81 (Fed. Cir. 1989); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom.*, *Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 02-1052, 02-1065, 2003 U.S. App. LEXIS 27796, *25-26 (Fed. Cir. June 6, 2003); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus.*, Inc., 862 F.2d 1564, 1571-72 (Fed. Cir. 1988); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302 (Fed. Cir. 2002); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1347-55 (Fed. Cir. 1999); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Fiskars, Inc. v. Hunt Manuf. Co.*, 279 F.3d 1378, 1382-83 (Fed. Cir. 2002).

AIPLA Model Jury Instruction Nos. 12.15-16; Court's Order on Motions *in Limine*, Aug. 29, 2007.

29.    **WILLFUL INFRINGEMENT**

Sprint also contends that Vonage has willfully infringed the Asserted Patent Claims.  If you find on the basis of the evidence and the law as I have explained it, that Vonage infringes at least one claim of an Asserted Patent and that the claim is valid, you must then decide whether or not Vonage's infringement was willful.

Although, as I explained before, Sprint must prove infringement by the preponderance of the evidence standard, the burden of proving that the infringement was willful is the clear and convincing standard.

To establish willful infringement as to any Asserted Patent Claim, Sprint must prove two things by the clear and convincing standard.

First, Sprint must show by clear and convincing evidence that Vonage acted recklessly. In other words, Sprint must show by clear and convincing evidence that Vonage ignored an objectively high likelihood that its actions constituted infringement of a valid Asserted Patent and that Vonage's defenses were objectively unreasonable.

Second, Sprint must then demonstrate by clear and convincing evidence that this risk of infringement was either known or so obvious that it should have been known to Vonage.

There is no obligation on the part of an accused infringer to obtain the advice of counsel as to whether its activities may infringe a patent or whether that patent is valid.

SOURCES & AUTHORITIES:

Fed. Cir. Bar Assoc. Model Patent Jury Instruction No. 9; In re Seagate Techs. LLC, Misc. No. 830, 2007 U.S. App. LEXIS 19768, *22-23 (Fed. Cir. Aug. 20, 2007); Jury Instructions in *Freeman v. Gerber Prods. Co.*, Civ. Action No. 02-2249-JWL, p. 30.