# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P. )
                                                 )
                      Plaintiff,     )
                                                 )

vs.                                                   )
                                               )

VONAGE HOLDINGS CORP.,           )     Case No. 05-2433-JWL
VONAGE AMERICA, INC.             )
                                               )
                    Defendants.   )
                                               )

## <u>PROPOSED JURY INSTRUCTIONS</u>

<u>**PROPOSED JURY INSTRUCTIONS**</u>

1.    **[GENERAL INSTRUCTIONS TO BE SUPPLIED BY THE COURT]**

2.    **STIPULATIONS**

The following facts are uncontroverted:

1.    Plaintiff Sprint Communications Company L.P. is a Limited Partnership with its principal place of business in Overland Park, Kansas.

2.    Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively "Vonage") are corporations with their principal places of business in Edison, New Jersey.

3.    Defendant Vonage Holdings Corp. is the parent of Vonage America, Inc. Vonage America, Inc. is the wholly owned subsidiary of Vonage Holdings Corp. Vonage America Inc. markets and sells Vonage phone services in the United States.

4.    Vonage has sold, offered for sale, used and/or marketed voice over Internet phone services ("VoIP services"). Vonage has made and/or used systems and architectures of components to provide VoIP services.

5.    Sprint is the owner by assignment of the following United States Patents, which are referred to collectively herein as the "Asserted Patents":

| U.S. Patent No. 6,304,572 | "the '572 patent" |
| U.S. Patent No. 6,633,561 | "the '561 patent" |
| U.S. Patent No. 6,452,932 | "the '932 patent" |
| U.S. Patent No. 6,473,429 | "the '429 patent" |
| U.S. Patent No. 6,298,064 | "the '064 patent" |
| U.S. Patent No. 6,665,294 | "the '294 patent" |

6.    Each of the Asserted Patents was issued by the U.S. Patent and Trademark Office to Joseph Michael Christie. Mr. Christie is the sole inventor on each patent.

7.    The '429 Patent, the '064 Patent, and the '294 Patent all claim the priority date of U.S. Patent No. 5,991,301 filed September 8, 1995 (collectively, "the '301 Family Patents" <u>or the "Broadband System Family"</u>), [Sprint] and share a common specification.

8.  The '561 Patent, the '572 Patent and the '932 Patent all claim the priority date of the U.S. Patent Application No. 08/238,605, filed May 5, 1994 (collectively, "the '605 Family Patents" or the "Call Control Family"), [Sprint] and share a common specification.

9.  Sprint asserts that Vonage has infringed and is infringing the following claims of the Asserted Patents:

| The '572 patent | Claims 38, 42, and 51 |
|---|---|
| The '561 patent | Claims 1 and 23 |
| The '932 patent | Claim 18 |
| The '429 patent | Claims 1 and 5 |
| The '064 patent | Claims 1, 5, and 7 |
| The '294 patent | Claims 19, 26, and 27 |

10.  Vonage asserts that the Asserted Patents are invalid over the following prior art:

| U.S. Pat No. 4,991,172 | Priority Date: October 28, 1988 | "Cidon" | Entitled: "Design of a high speed packet switching node" |
|---|---|---|---|
| U.S. Pat No. 4,491,945 | Priority Date: June 25, 1982 | "Turner" | Entitled: "Fast packet switch" |
| U.S. Pat No. 5,115,426 | Priority Date: March 30, 1990 | "Spanke" | Entitled: "Broadband ISDN packet switching arrangements" |
| U.S. Pat No. 5,440,563 | Priority Date: October 12, 1993 | "Isidoro" | Entitled: "Service circuit allocation in large networks" |
| U.S. Pat No. 5,339,318 | Priority Date: October 22, 1992 | "Tanaka" | Entitled: "VPI and VCI assignment system in ATM system" |
| U.S. Pat. No. 5,544,163 | Priority Date: March 8, 1994 | "Madonna" | Entitled: "Expandable telecommunications system" |

3

| IBM Redbooks: IBM International Technical Support Organization Network Broadband Services (NBBS) Architecture Tutorial | Publication Date: June 30, 1995 | "NBBS" | Entitled: "Network Broadband Services (NBBS) Architecture Tutorial" |
|---|---|---|---|

11.  Vonage first offered for sale its VoIP services, Vonage DigitalVoice, in March, 2002.  Vonage has continued to offer VoIP services since that time.

12.  Sprint is not aware of any product or service made, sold, or offered for sale by Sprint that is within the scope of any claim of the Asserted Patents.

13.  The following letters were sent by Sprint and received by Vonage: the letter to Mr. Citron dated July 13, 2004 (Pl. Exhibit 74); the letter to Mr. Citron dated August 19, 2004 (Pl. Exhibit 75); the letter to Mr. Citron dated November 12, 2004 (Pl. Exhibit 76); the letter to Mr. Citron dated May 9, 2005 (Pl. Exhibit 77); and the letter to Mr. Citron dated July 15, 2005 (Pl. Exhibit 78).

14.  With the July 13, 2004, letter, Vonage also received a CD from Sprint containing 43 United States Patents owned by Sprint.  All six Asserted Patents were on the CD.

15.  Sprint received a letter from Vonage dated September 30, 2005.  (Def. Exh. 1482).

**Sprint's Statement:**

Sprint requests that the instructions include the names that Sprint has assigned to the patent families that are at issue in this litigation.  Specifically, Sprint requests that the '301 Family Patents be referred to as the "Broadband System Family" and that the '605 Family Patents also be referred to as the "Call Control Family."  These descriptive family names will make it easier for the jury to differentiate between the two patent families.  In addition, Sprint intends to refer to these patent families as the "Broadband System Family" and the "Call Control Family" at trial.  Accordingly, the jury instructions should reflect the patent family names known to the jurors.

**Vonage's Statement:**

(Stipulation #7)  Vonage objects to the inclusion of the underlined language on the grounds that it is irrelevant, confusing, misleading and prejudicial.  The title of a patent has no bearing on the scope of the claims.  Accordingly, Vonage believes that reference to the title(s) of the patents-in-suit could mislead the jury in understanding the scope of claims and applying them to the systems at issue.  Vonage notes that the parties have each consistently referred to this patent family as the "'301 Family Patents" in all papers and pleadings throughout this litigation and that

the term "Broadband System Family" sought by Sprint appears nowhere else in these instructions.

(Stipulation #8)  Vonage objects to the inclusion of the underlined language on the grounds that it is irrelevant, confusing, misleading and prejudicial.  The title of a patent has no bearing on the scope of the claims.  Accordingly, Vonage believes that reference to the title(s) of the patents-in-suit could mislead the jury in understanding the scope of claims and applying them to the systems at issue.  Vonage notes that the parties have each consistently referred to this patent family as the "'605 Family Patents" in all papers and pleadings throughout this litigation and that the term "Call Control Processing Family" sought by Sprint appears nowhere else in these instructions.

**3.     ALL PARTIES EQUAL UNDER THE LAW**

In this case, both Sprint and Vonage are corporations. This should make no difference to you. You must decide this case as if it were between individuals. All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.


**AUTHORITY**

Federal Civil Jury Instructions of the Seventh Circuit 1.03 (as modified).

6

### 4.      BURDENS OF PROOF

Burden of proof means burden of persuasion.  [Sprint]  In a patent case such as this, there are two different burdens of proof for you to keep in mind.

One is called the preponderance of the evidence.  This burden of proof requires that, in order for a party to prevail on a claim, you must be persuaded that the party's claim is more probably true than not true.

The second burden of proof is a higher one.  It is called clear and convincing evidence.  Clear and convincing evidence is described as evidence which produces in your mind an abiding conviction that the truth of a contention is highly probable. [Sprint]  This burden of proof requires that, in order for a party to prevail on a claim, you must be persuaded that the party's claim is highly probable.  [Vonage]

You must decide essentially four main issues in this case.  The burden of proof on those issues is as follows.

1.      Infringement.  Sprint has the burden of proof on its claim that the accused system infringes the Asserted Patent Claims.  Sprint must prove this claim by a preponderance of the evidence.

2.      Invalidity.  Vonage has the burden of proof on its claims that the Asserted Patent Claims are invalid.  Vonage must prove this claim by clear and convincing evidence.

3.      Damages.  Sprint has the burden of proving damages by a preponderance of the evidence.  If you find that Sprint has met its burden of proof on its infringement claim as to any one of the Asserted Patent Claims and also that Vonage has not met its burden of proof on the issue of invalidity as to that particular claim, you must then determine the amount, if any,  to which Sprint has proven they are entitled, by the preponderance of the evidence, as damages to compensate for the infringement.

4.      Willfulness.  If you find that Sprint has met its burden of proof on its infringement claim as to any one of the Asserted Patent Claims and also that Vonage has not met its burden of proof on the issue of invalidity as to that particular claim, you must then determine whether Sprint has proven, by clear and convincing evidence, that Vonage's infringement was willful.  Sprint has the burden of proof on this issue.

In determining whether a party has met its burden, consider all the evidence, whether produced by Sprint or by Vonage.  The weight of the evidence on any issue is not determined by the number of witnesses but rather by how reasonable, persuasive, and satisfying the evidence is to you.

### AUTHORITY

Ninth Circuit Model Civil Jury Instructions 1.13, 1.14 (as modified); *Colorado v. New Mexico*, 467 U.S. 310, 315-16 (1984).
Jury Instructions in *Freeman v. Gerber Prods. Co.*, Civ. Action No. 02-2249-JWL, p. 57-58.

**<u>Sprint's Statement:</u>**

The language advanced by Sprint is a correct statement of the law taken directly from this Court's instructions in *Freeman v. Gerber Prods. Co.*, Civil Action No. 02-2249-JWL, p. 57. The language advanced by Vonage, however, attempts to alter the Freeman instruction by mischaracterizing the clear and convincing evidentiary standard.

**<u>Vonage's Statement:</u>**

With respect to the first paragraph, Vonage objects to the inclusion of the underlined language on the grounds that it is misleading and confusing. The burden of proof has two components: the burden of persuasion and the burden of production, or going forward with the evidence. This instruction suggests that Sprint has no burden of producing evidence to support its case, and so might serve to mislead and confuse the jury as to whether Sprint has satisfied all of its burdens under the law.

With respect to the alternatives proposed for describing the "clear and convincing" standard, Vonage believes that its alternative is more clear and will be easier for the jury to understand and apply, particularly as it more closely parallels the language in the instruction describing the "preponderance of the evidence standard" (*i.e.* only replaces "more probably true than not true" with "highly probable").

**5.    THE PATENT SYSTEM**

At the beginning of the trial, you saw the video about patents and the patent system. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 6.

6.    **PATENTS GENERALLY**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

**AUTHORITIES**

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

7.    **THE CLAIMS OF THE PATENTS IN SUIT**

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims define the invention made by the inventor and define what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, systems, or methods for making or using a product or system.

Claims are usually divided into parts or steps, called "limitations."

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 7 (as modified).

8.      CONSTRUCTION OF THE CLAIMS

To decide whether or not an accused product or method infringes a patent or whether or not a patent is valid, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

It may be helpful to refer to the copies of the Asserted Patents that you have been given as I discuss the claims at issue here. I will be giving you a list of the claims of the Asserted Patents at issue in this case as part of the verdict form when I conclude my instructions.

**AUTHORITIES**

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments*, Inc., 517 U.S. 370, 384-391 (1996); *Bell Atlantic Network Sews., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001); *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1244-45 (Fed. Cir. 2001); *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1340-41 (Fed. Cir. 2000); Pitney *Bowes, Inc. v. Hewlett- Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); *Rival Co. v. Sunbeam Corp.*, 987 F. Supp. 1167, 1171 (W.D. Miss. 1997), *aff'd without op.*, 185 F.3d 885 (Fed. Cir. 1999); *Minuteman Int'l, Inc. v. Critical-Vac Filtration Corp.*, No. 95C 7255, 1997 WL 187326, at *2 (N.D. Ill. April 11, 1997); Fed. Cir. Bar Ass'n Model Instruction 7.1 (as modified).

9.      **INDEPENDENT AND DEPENDENT CLAIMS**

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. The following claims at issue in this lawsuit are independent claims:

| | |
|---|---|
| The '572 patent | Claim 38 |
| The '561 patent | Claim 1 |
| The '932 patent | Claim 18 |
| The '429 patent | Claim 1 |
| The '064 patent | Claim 1 |
| The '294 patent | Claim 19 |

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers. The following claims at issue in this lawsuit are dependent claims:

| | |
|---|---|
| The '572 patent | Claims 42 and 51 |
| The '561 patent | Claim 23 |
| The '429 patent | Claim 5 |
| The '064 patent | Claims 5, and 7 |
| The '294 patent | Claims 26 and 27 |

The verdict forms that I will be providing to you will indicate which asserted claims are independent claims and which are dependent claims.

**AUTHORITIES**

13

35 U.S.C. § 112 ¶ 4; *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 236 F.3d 1363, 1369-70 (Fed. Cir. 2001); *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000); *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552-23 (Fed. Cir. 1989); Fed. Cir. Bar Ass'n Model Instruction 7.2 (as modified).

14

## 10.    "COMPRISING" CLAIMS

The beginning portion, or preamble, of the claims of the Asserted Patents uses the word "comprising."   "Comprising" has a special meaning in patent law, and it means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products having only the limitations that are recited in the claim, but also covers products that add additional elements or steps.

All the asserted claims in this matter use the "comprising" language.  Thus, if you find that the accused system contains each limitation of an asserted claim, then that claim is infringed even if the accused system contains additional features not found in the claim.

## AUTHORITIES

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811-12 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-29 (Fed. Cir. 1999); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379-80 (Fed. Cir. 1998); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1177-79 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 7.5 (as modified).

11.    **LIMITATIONS OF THE CLAIMS AT ISSUE**

I have now instructed you as to the types of claims at issue in this case.  I will next define the meaning of the words used in the patent claims at issue.  You must rely exclusively on the definitions I provide to you in your consideration of infringement and invalidity issues.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

**[The parties dispute the following terms, as detailed below.]**

| CLAIM TERMS AND PHRASES THAT SHOULD BE CONSTRUED BY THE COURT: | SPRINT'S PROPOSED CONSTRUCTION | VONAGE'S PROPOSED CONSTRUCTION | PRESENT IN PATENT CLAIMS: |
|---|---|---|---|
| routing; route | directing through a communication system; direct through a communication system | delivering to the destination through a communication system | Claim 19 of the '294 patent, and Claim 1 of the '561 patent |
| generating a message; generate . . . message | assembling/assemble information into a message for the first time in connection with setting up a call | "generating" means "creating for the first time" | Claim 1 of the '429 patent; Claim 38 of the '572 patent; Claim 1 of the '561 patent, and Claim 18 of the '932 patent, Claim 1 of the '064 patent. |
| in-band telecommunications signaling | signaling that is sent on the same channel as that used for voice or data | signaling transmitted on the actual communications path | Claim 38 of the '572 patent |

| out-of-band telecommunications signaling | signaling that is sent on a distinct channel from that used for voice or data | "out-of-band telecommunications signaling message" means "a signaling message that is not transmitted on the actual communications path" | Claim 38 of the '572 patent |
|---|---|---|---|
| communication system | plurality of network elements and connections forming a network for transferring information | at least one network element having at least one connection used to communicate with at least one endpoint. | Claim 1 of the '561 patent, and Claim 18 of the '932 patent |
| identifier | data for routing user information in a packet network | data identifying a pre-provisioned virtual connection in an ATM network[1] | Claim 1 of the '429 patent, and Claim 19 of the '294 patent |
| interworking unit | a device that converts narrowband communication signals into a packet format[2] | an ATM interworking multiplexer | Claim 1 of the '429 patent |
| interworking unit | a device that converts packet communications into a narrowband format[3] | an ATM interworking multiplexer | Claim 1 of the '064 patent |
| interworking device | a device that converts narrowband communication signals into a packet format[4] | an ATM interworking multiplexer | Claim 19 of the '294 patent |

---

[1] The court has construed identifier. Vonage includes its original construction to preserve its rights with respect to this term.

[2] The court has construed interworking unit. Sprint includes its original construction to preserve its rights with respect to this term.

[3] The court has construed interworking unit. Sprint includes its original construction to preserve its rights with respect to this term.

[4] The court has construed interworking device. Sprint includes its original construction to preserve its rights with respect to this term.

2615684v1

| asynchronous communication | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | asynchronous transfer mode communication[5] | Claim 1 of the '429 patent, and Claim 1 of the '064 patent |
|---|---|---|---|
| processing system | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | any processing system platform that can receive and process signaling to select virtual connections, and then generate and transmit signaling to identify the selections | Claims 1 and 5 of the '429 patent, Claims 1 and 7 of the '064 patent |
| telecommunication switches | "devices that set up calls and relay voice and/or data information from one connection to another" | "devices that relay voice and/or data information from one connection to another" | Claim 5 of the '429 patent, and Claim 7 of the '064 patent |
| setup signaling | information or commands used to setup calls | a narrowband Signaling message | Claim 1 of the '064 patent |
| coupled | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Physically attached or logically mapped | Claim 38 of the '572 patent |
| coupling | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | Physically attaching or logically mapping | Claim 38 of the '572 patent |

---

[5] The court has construed asynchronous communication. Vonage includes its original construction to preserve its rights with respect to this term.

| | | | |
|---|---|---|---|
| signaling message | information or commands used to set up or tear down a call | A message used to transfer information among points and network elements to establish communication paths | Claim 38 of the '572 patent, Claim 19 of the '294 patent, and Claim 1 of the '561 patent |
| a network code that identifies a network element to provide egress from the packet communication system | information that identifies a network element that provides an exit from a packet communication system (wherein the claim phrase "to provide egress from the packet communication system" modifies the "network element" and not the "network code") | a logical address identifying a network element that provides an exit from a packet communication system | Claim 1 of the '561 patent |
| a signaling message from a narrowband communication system | a signaling message (as defined above) from a narrowband communication system | a signaling message (as defined above) received in the format sent from a narrowband communication system | Claim 1 of the '561 patent |

| Process . . . to select []; Processing . . . to select [] | Processing . . . to participate in selecting [] | Processing the information and making a selection from more than one possible identifier ('429: 1)

Processing the set up signaling and making a selection from more than one possible DS0 connection in the processing system ('064: 1)

Process the narrowband signaling message and make a selection from more than one possible narrowband switch ('932: 18)

Processing the signaling message and making a selection from more than one possible logical address that identifies a network element to provide egress… ('561: 1)

Process the out-of-band telecommunications signaling message and make a selection from more than one possible second connection ('572:38) | Claim 1 of the '561 patent, Claim 1 of the '429 patent, Claim 1 of the '064 patent, Claim 38 of the '572 patent, and Claim 18 of the '932 patent |
|---|---|---|---|

| generating a control message indicating the network code | This claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | "generating" means "creating for the first time" a new control message specifying the logical address of the egress network element | Claim 1 of the '561 patent |
| first message | a signaling message that is distinct from the claimed second message | a narrowband signaling message | Claim 18 of '932 patent |
| using the network code to route the user communication through the packet communication system to the network element | In accordance with above constructions of "network code," "route" and "packet communication system," this claim term/phrase does not require construction and should be afforded its plain and ordinary meaning. | using the logical address identifying the network element to deliver the user communication through the packet communication system to the egress network element | Claim 1 of '561 patent |

**[The parties agree on these definitions below and respectfully request that the Court instruct the jury as to the meaning of these terms, as follows:]**

| TERM | CONSTRUCTION | PRESENT IN PATENT CLAIMS |
|---|---|---|
| DS0 Communication Signal | Term of art meaning a Digital Signal Level 0 | Claim 26 of the '294 patent |
| DS0 Connection | A channel over which DS0 Communication Signals (as construed above) are transmitted or received | Claim 1 of the '064 patent, and Claim 1 of the '429 patent |
| Connection | The media between two network elements that allows the transfer of information | Claim 38 of the '572 patent |

**AUTHORITIES**

Parties' Trial Briefs on Claim Construction Issues; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Markman v. Westview Instruments*, Inc., 517 U.S. 370, 384-391 (1996); Fed. Cir. Bar Ass'n Model Instruction 7.8 (as modified).

**[The parties have provided support for their proposed claim constructions in their respective claim construction briefs.]**

12.    **INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS**

In order to infringe a patent claim, a system or method must include every limitation of the claim.  You must consider each of the asserted claims separately.

A claim limitation may be present in an accused system in one of two ways, either literally or under what is known as the doctrine of equivalents.  A claim limitation is literally present if it exists in the accused system just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.  If each limitation in a claim is present in the accused system, it literally infringes.

A claim limitation is present in an accused system under the doctrine of equivalents if the differences between the claim limitation and the substituted component or step of the accused system are insubstantial.  One way to determine whether differences are insubstantial is to look at whether or not the substituted component or step of accused system performs substantially the same function, in substantially the same way, to achieve substantially the same result as the component or step of the claimed invention.  Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the structure or step of the accused product and the structure or step recited in the patent claim limitation are interchangeable.  A person of ordinary skill is a person with average education and training in the field.

Equivalency is determined by what was known at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued.  Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

I have previously instructed you that the claim term "interworking device or unit" means "an ATM interworking multiplexer" in the '301 Family Patents.  There is no dispute that the accused system does not contain an ATM interworking multiplexer.  Therefore, none of the asserted claims of the '301 Family Patent are literally infringed.  However, you must still determine whether the asserted claims of the '301 Family patents are infringed under the doctrine of equivalents.  For the claim term "ATM interworking multiplexer" you must determine whether this claim limitation is found in the accused device using only the doctrine of equivalents.  For each claim term other than "ATM interworking multiplexer" in the '301 Family Patents, you must determine whether the claim term is found in the accused system, either literally or under doctrine of equivalents.  [Vonage]

**AUTHORITIES**

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Allen Engineering Corp. v. Bartell Indus., Inc.*, 2002 WL 1765989 (Fed. Cir. 2002); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1334 (Fed. Cir. 2001); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1107 (Fed. Cir. 2000);

*Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1287 (Fed. Cir. 2000); *Bayer AG v. Elan Pharm., Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1301-02 (Fed. Cir. 1999); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*); Fed. Cir. Bar Ass'n Model Instruction 8.3 (as modified).

**Sprint's Statement:**

Sprint objects to Vonage's proposed discussion of the claim term "interworking device or unit." For purposes of maintaining a proper record, Sprint does not concede either that the claimed interworking device or unit is limited to ATM or that the asserted claims of the Broadband System Family patents are not literally infringed. Moreover, even if the interworking device or unit were limited to ATM, Vonage's proposed instruction is still improper because the jury will be more than capable of applying the Court's claim constructions to the evidence and does not need instructions dictating which claims elements are not literally found in the accused system.

**Vonage's Statement:**

Vonage submits that the underlined language is appropriate in view of the Court's decision on the parties' motions for summary judgment that Sprint is not entitled to show literal infringement of any asserted claim in the '301 Family Patents. Vonage further submits that the underlined language ensures that the jury will not be confused about the determinations they must make with respect to infringement.

13.     **LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS [Vonage]**

The Patent law places certain limits on the doctrine of equivalents. It is my duty to decide whether or not any of these limitations applies in this case and instruct you on my decision. You must use my instruction in considering both infringement and invalidity.

One limit on the doctrine of equivalents occurs as the result of changes to patent claims or arguments that the patent owner made in order to obtain his or her patent. A patent owner may not include within the patent claim products or methods that he or she gave up in order to obtain his or her patent.

In this case, Sprint changed several claims and presented arguments in order to get the Asserted Patents allowed and thereby can not prove infringement using the doctrine of equivalent for these claims limitations. I will now identify the claim limitations which you must find are literally present in the accused system in order to determine infringement. For these limitations you may not use the doctrine of equivalents. If you do not find these claim limitations literally present in the accused system then you must determine that the claim is not infringed.

| Patent | Claim | Limitation |
|--------|-------|------------|
| '561 | 1 | processing the signaling to select a network code that identifies a network element to provide egress for the user communication from the packet communication system" |
| '572 | 38 | "process the out-of-band telecommunications signaling message to select the second connection" |
| '932 | 18 | "processing the first message in the processing system external to narrowband switches to select one of the narrowband switches |
| '429 | 1 | "processing the information in the processing system to select an identifier" |

As to the remaining claim limitations, you must determine whether the claim limitations are present in the accused system either literally or under the doctrine of equivalents.

**AUTHORITIES**

*Festo Corp. v. Shoketsu Kinzolu Kogyo Kabushiki Co.*, 122 S. Ct. 1831 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *Johnson & Johnson Associates v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001); *Bell Atlantic Network Servs., Inc., v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1279 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 252 F.3d 1306, 1320 (Fed. Cir. 2001); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001); *Forest Labs. v. Abbott Labs.*, 239 F.3d 1305, 1314 (Fed. Cir. 2001); *Biovail Corp. v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301-02 (Fed. Cir. 2001); *Litton Sys., Inc. v. Honeywell Inc.*, 238 F.3d 1376, 1380 (Fed. Cir. 2001); *Johnson & Johnston Associates, Inc. v. R.E. Service Co.*, 238 F.3d 1347 (Fed. Cir. 2001); *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 238 F.3d 1341, 1344 (Fed. Cir. 2001); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) (*en banc*); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381-83 (Fed. Cir. 2000); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1251-54 (Fed. Cir. 2000); *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1416 (Fed. Cir. 2000); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366-68 (Fed. Cir. 1999); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998); *YBM Magnex, Inc. v. Int'l Trade Comm'n*, 145 F.3d 1317, 1320-22 (Fed. Cir. 1998); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997); *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303-04 (Fed. Cir. 1997); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1573-74 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106-08 (Fed. Cir. 1996); *Texas Instruments v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174 (Fed. Cir. 1993); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1563-64 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 8.4 (as modified).

**Sprint's Statement:**

Sprint objects to this instruction in its entirety. Vonage has not and cannot show that Sprint is foreclosed, as a matter of law, from asserting infringement under the doctrine of equivalents. As of the present, Vonage has not properly moved for judgment on this issue. In the event Vonage properly raises this issue, Sprint will substantially refute Vonage's unfounded attempt to limit application of the doctrine of equivalents.

**Vonage's Statement:**

Vonage submits that this instruction is appropriate as an accurate statement of law and notes that the first two paragraphs are a word-for-word reproduction of Rule 8.4 of the Federal Circuit Bar Association Model Patent Jury Instructions. Vonage further submits that this instruction ensures that the jury will not be confused about the determinations they must make with respect to infringement.

2615684v1

**14.    DETERMINATION OF INFRINGEMENT**

Taking each of the asserted claims of the Asserted Patents separately, if you find that Sprint has proved by the preponderance of the evidence that each and every limitation of the claim is present, either literally or under the doctrine of equivalents <u>where allowed</u>, in the accused  system, then you must find that Vonage infringes that claim. You must determine whether each and every asserted independent claim has been infringed.  [Vonage]

**AUTHORITY**

Fed. Cir. Bar Ass'n Model Instruction 8.7 (as modified).

**<u>Sprint's Statement:</u>**
Sprint objects to the inserted language because it indicates that the doctrine of equivalents may not apply to some claims.  But, Vonage has not and cannot show that Sprint is foreclosed, as a matter of law, from asserting infringement under the doctrine of equivalents.

**<u>Vonage's Statement:</u>**
Vonage submits that the underlined language is appropriate because limitations, such as prosecution history estoppel, preclude the jury from considering the question of infringement of certain elements under the doctrine of equivalents.

## 15.    INFRINGEMENT COMPARISON

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare the asserted claims as I have defined them, to the accused system, and determine whether or not there is infringement.   You should not compare the accused system to any specific figure or example set out in the Asserted patents, or with any of Sprint's products or services.  The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

## AUTHORITIES

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

16.     **KNOWLEDGE OF INFRINGEMENT**

Whether or not Vonage knew that what it was doing was an infringement does not matter. A person may be found to be an infringer of a patent even if he or she believes in good faith that what he or she is doing is not an infringement of any patent, and even if he or she does not even know of the patent.

**AUTHORITIES**

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

## 17.     MAKING OR SELLING OF THE PATENTED INVENTION

Sprint is not required to make or sell its patented inventions.  A patent can still be valid and enforceable against others even if the patent owner has never made or sold a product that falls within the claims of the patent.  In making your decision about whether Vonage has infringed Sprint's patents, you may not consider whether any of Sprint's products or services fall within the scope of the claims of the Asserted Patent.  <u>However, whether Sprint could make, use or sell its patent inventions is relevant to the issue of whether the Asserted patents are valid as I will instruct you later.</u> [Vonage]

## AUTHORITIES

35 U.S.C. § 271-281; *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 36 (1997); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 644 (1999); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *Atl. Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867 (Fed. Cir. 1985); Fed. Cir. Bar Ass'n Model Instruction 8.1 (as modified).

<u>Sprint's Statement:</u>
Sprint objects to the indicated language because it is legally inaccurate.  The proposed statement presumably is referencing the standard for enablement.  The enablement standard, however, does not require the patent owner to "make, use, or sell" its patented invention.  Indeed, the failure for the patentee to develop a viable commercial product does not render the patent invalid for lacking enablement.  *CFMT, Inc. v. YieldUp Int'l Corp*., 349 F.3d 1333, 1338-39 (Fed. Cir. 2003) ("[T]he law requires that patents disclose inventions, not mass-production data, and that patents enable the practice of inventions, not the organization and operation of factories.") (quoting *Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1562 (Fed.Cir.1987)).

<u>Vonage's Statement:</u>
Vonage believes that this instruction is unnecessary since the rights conferred by a patent are set forth elsewhere in these instructions.  To the extent this instruction is given, Vonage submits that the underlined language is appropriate as it is misleading, confusing and prejudicial to give an instruction regarding the effect of certain activity on infringement, without a parallel instruction regarding the effect of that same activity on validity.  In this case, the issue of whether Sprint could make or use the patented invention is highly relevant to the question of whether the asserted claims are enabled.

18.    **INFRINGEMENT OF DEPENDENT CLAIMS**

My instructions on infringement so far have related to independent claims. As I told you, the Asserted Patents also contains dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus the additional elements listed in the dependent claim itself.

If you find that an asserted independent claim of the Asserted Patents has been infringed, you must separately determine whether each asserted dependent claim that refers to the independent claim has also been infringed. If you find that an asserted independent claim is not infringed, then you must also find that all asserted dependent claims that refer to that independent claim are not infringed. You must determine whether each and every asserted dependent claim of the Asserted Patents has been infringed.

**AUTHORITIES**

*Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Finnigan Corp. v. United States Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685-86 (Fed. Cir. 1990); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989); Fed. Cir. Bar Ass'n Model Instruction 8.10 (as amended).

19. **INFRINGEMENT AND IMPROVEMENTS TO PATENTED INVENTION [Sprint]**

Proof that the accused system is an improvement of the inventions described in the Asserted Patents does not necessarily mean that the accused system does not infringe the asserted patent claims. The tests for infringement remain as I have instructed you. As long as you find that the accused system includes all of the limitations of any of the asserted patent claims, either literally or under the doctrine of equivalents, then you must find that those asserted patent claims are infringed by Vonage.

**AUTHORITIES**

*Glaxo Wellcome Inc. v. Andrx Pharm., Inc.*, 344 F.3d 1226, 1233–34 (Fed. Cir. 2003); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000); *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191-92 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Stiftung v. Renishaw, PLC*, 945 F.2d 1173, 1179 (Fed. Cir. 1991); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Atlas Powder Co. v. E. I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984); Fed. Cir. Bar Ass'n Model Instruction 8.11 (as amended).

**Sprint's Statement:**
The proposed instruction is an accurate statement of the law and adopts the language of the Federal Circuit Bar Association Model Instruction 8.11. As the model instruction indicates, it is important for the jury to appreciate that improvements to a patented system may still infringe. Accordingly, Sprint respectfully requests this instruction be included.

**Vonage's Statement:**
Vonage objects to the inclusion of this instruction in its entirety as irrelevant, misleading, confusing and prejudicial. There has been no evidence proffered by either party that the Vonage systems are improvements over the inventions claimed in the asserted patents, nor has either party ever made such a contention. Accordingly, inclusion of this instruction would be improper.

20.    **PURCHASE OF COMPONENTS [Sprint]**

<u>The fact that Vonage may have purchased some or all of the components for its system from other companies does not mean that its system does not infringe Sprint's patents.  The test for infringement remains the same regardless of where Vonage obtained the components of its system.</u>

**AUTHORITIES**

*Glaxo Wellcome Inc. v. Andrx Pharm., Inc.*, 344 F.3d 1226, 1233–34 (Fed. Cir. 2003); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000); *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1191-92 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996); *Stiftung v. Renishaw, PLC*, 945 F.2d 1173, 1179 (Fed. Cir. 1991); *Marsh-McBirney, Inc. v. Montedoro-Whitney Corp.*, 882 F.2d 498, 504 (Fed. Cir. 1989); *Atlas Powder Co. v. E. I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984).

**Sprint's Statement:**

The proposed instruction is an accurate statement of the law and addresses a common public misperception that one cannot be found to infringe if they merely use components purchased from others.  This instruction is consistent with the Court's decision on Sprint's Motion in Limine #14 ("the Cisco motion") and is designed to prevent the jury from considering the fact that Vonage purchased

**Vonage's Statement:**

Vonage objects to the inclusion of this instruction in its entirety as irrelevant, misleading, confusing and prejudicial.  Based on the Court's decisions on various motions filed by Sprint, Vonage is not permitted to raise a defense based on the purchase of components from parties such as Cisco.  Accordingly, inclusion of this instruction would be improper.

21.     **WILLFUL INFRINGEMENT [Sprint]**

If you find that Vonage infringed at least one of Sprint's Asserted Patents, then you must further determine if Vonage's infringement was willful. If you find that Vonage was objectively reckless in continuing its activities after it became aware of Sprint's patents, its infringement must be considered willful. Sprint has the burden to prove by clear and convincing evidence that Vonage's infringement was willful.

In determining whether Vonage's conduct was objectively reckless and, therefore, willful, you must consider whether Vonage acted despite an objectively high likelihood that its actions constituted infringement of one or more of the Asserted Patents. Vonage's state of mind is not relevant to this objective inquiry.

You also must determine whether Sprint has shown that this risk of infringement was either (a) actually known by Vonage or (b) that the risk was so obvious that it should have been known to Vonage. In other words, Sprint must show that Vonage knew of a high risk that it infringed Sprint's patents or, if it did not actually know of the risk, a reasonable company in Vonage's situation would have known of the risk.

In determining whether or not Vonage actions were objectively reckless, you should consider all of the circumstances, including whether or not Vonage obtained and relied on an opinion of a competent attorney. Although the absence of an attorney's opinion does not require you to find willfulness, the obtaining and following of an attorney's advice may be evidence that infringement was not willful.

Willful infringement does not require that the accused infringer copy the patent. Vonage can be a willful infringer even if it did not know of Sprint's patents at the time it began its activities that are accused of infringement. Your focus should be on what Vonage did after it became aware of Sprint's patents.

**AUTHORITIES**

*In re Seagate Technology, LLC*, --- F.3d ----, 2007 WL 2358677 (Fed. Cir. 2007); 35 U.S.C. § 284; *Ncube Corp. v. Seachange Int'l*, 436 F.3d 1317, 1319 (Fed. Cir. 2006); *Knorr-Bremse Sys. Fuer Nutzfahrzenge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (*en banc*); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999); *Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999); *John's Hopkins University v. Cellpro*, 152 F.3d 1342, 1363 (Fed. Cir. 1998); *Comark Comm, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *SRI Int'l, Inc. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994); *Minnesota Mining & Mfg. v. Johnson and Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580 (Fed. Cir. 1992); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-30 (Fed. Cir. 1992); *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579 (Fed. Cir. 1988).

**Sprint's Statement:**

The parties have submitted conflicting instructions regarding willful infringement. As an initial matter, the parties disagree regarding the placement of this instruction. Sprint contends this instruction should be placed along with the other infringement instructions. Vonage places its willfulness instruction after the damages instructions. Vonage's attempt to lump willfulness into the damages instructions finds no support. Indeed, each of the model instructions cited by Vonage properly include the willfulness instruction along with the other infringement instructions   *See* Fed. Cir. Bar Assoc. Model Jury Instruction No. 9; Jury Instructions in *Freeman v. Gerber Prods. Co.,* Civil Action No. 02-2249-JWL, p.30. Consistent with the cited instructions, Sprint requests that the willfulness instructions be provided along with the other infringement instructions.

Sprint's proposed willfulness instruction borrows heavily from the Federal Circuit's recent landmark decision *In re Seagate Technology, LLC.* 2007 U.S. App. LEXIS 19768, *22-23 (Fed. Cir. Aug. 20, 2007). In contrast, Vonage's proposed instruction provides only a bare recitation of the relevant determinations, while repeatedly re-emphasizing the standard of proof in a prejudicial manner. Because Sprint's *Seagate* treatment mirrors the Federal Circuit's explanation of the willfulness standard, Sprint's proposed instruction provides the jury a complete and accurate explanation of the relevant law.

Sprint's proposed instruction also states that the totality of the circumstances should be assessed when making a willfulness determination. This language is appropriate as it defines the evidence that may be considered in determining this issue. Tellingly, the Model Instructions and instructions previously used by this Court include similar language regarding the "totality of the circumstances" inquiry. *See* Fed. Cir. Bar Assoc. Model Jury Instruction No. 9; Jury Instructions in *Freeman v. Gerber Prods. Co.,* Civil Action No. 02-2249-JWL, p.30.

Moreover, *Seagate* did not change the fact that the "totality of the circumstances," including an infringer's prelitigation conduct must be considered in the willfulness inquiry. *Seagate*, 2007 WL 2358677, *8 (". . . [I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct."); *Seagate*, 2007 WL 2358677, *18 ("The standards of behavior by which a possible infringer evaluates adverse patents should be the standards of fair commerce, including the reasonableness of the actions taken in the particular circumstances.") (Newman, J., concurring); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004) ("Determination of willfulness is made on consideration of the totality of the circumstances and may include contributions of several factors.").

Further, Sprint's proposed instructions provide guidance regarding how the jury may assess the absence of advice of counsel in its willfulness determination. While Vonage's proposed instruction states that there is no obligation for a party to obtain the advice of counsel, Vonage fails to provide any context for its lone "advice of counsel" statement. In contrast, Sprint's proposed instruction provides an accepted explanation of how the jury may consider the absence of advice of counsel in its willfulness determination. *See* Fed. Cir. Bar Assoc. Model Jury Instruction No. 9; Jury Instructions in *Freeman v. Gerber Prods. Co.,* Civil Action No. 02-2249-JWL, p.30; *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1056 (Fed. Cir.

1994) ("Possession of a favorable opinion of counsel is not essential to avoid a willfulness determination; it is only one factor to be considered, albeit an important one.")

Sprint's proposed instruction also states that a proper willfulness analysis must focus on the actions of the accused infringer after becoming aware of the patents and that copying is not required for willful infringement. These are accurate statements of the law that appropriately focus the jury's inquiry.

**<u>Vonage's Statement:</u>**
Vonage objects to the inclusion of Sprint's alternative instruction in its entirety as misleading, confusing, prejudicial and a mis-statement of the relevant law. Vonage submits that its alternative language is more appropriate because it accurately sets forth the test for determining willfulness under *in re Seagate Tech*.

22.    **VALIDITY—VALIDITY IN GENERAL**

Up until now, my instructions have focused on the law you must apply to determine whether Vonage infringes the Asserted patents. We now turn to the next major issue in the case, which is the validity of the claims of the Asserted Patents.

Only a valid patent claim may be infringed. For a patent claim to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot legally take away the right to use an identical combination of parts or elements which was already known before the invention was made, or that which was obvious from what was already known. The terms "new", "useful" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Vonage's grounds for asserting invalidity.

Vonage has challenged the validity of the asserted claims on a number of grounds. Because each claim of the Asserted Patents is presumed to be valid, Vonage must prove that a patent claim is invalid by the clear and convincing standard. I will now explain to you each of Vonage's grounds for invalidity in detail. In making your determination as to invalidity, you must consider each of the asserted claims separately.

Validity is to be determined on a claim-by-claim basis. You cannot find generally that an entire patent is invalid. Rather, you must make your validity determination for each and every asserted claim. [Sprint]

**AUTHORITIES**

*Morton Int'l* v. *Cardinal Chem. Co.*, 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Avia Group Int'l, Inc.* v. *L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc.* v. *Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc.* v. *Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983); Fed. Cir. Bar Ass'n Model Instruction 10.1 (as amended).

**Sprint's Statement:**
Sprint requests that the indicated language be included as it is an accurate statement of the law and properly instructs the jury to determine validity on a claim-by-claim basis. *Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1334 (Fed. Cir. 2004) ("A validity analysis must be conducted on a claim-by-claim basis."). Such an instruction will reduce the risk of a generalized finding that an entire patent is invalid without consideration of each respective asserted claim of the patent.

**Vonage's Statement:**
Vonage objects to the inclusion of the underlined language on the grounds that it is misleading, confusing and prejudicial because it is redundant in view of other language in this instruction which makes it clear that validity is to be determined on a claim-by-claim basis. Specifically the underlined portion is redundant to the sentence preceding it.

23.    **THE PRIOR ART**

An invention is patentable if it is new and not obvious in light of the "Prior Art."  A patent for an invention that is either not new or that is obvious is invalid.  Prior Art is a phrase used in patent law to mean documents that existed before an inventor formed a complete idea of how to make and use his or her invention.

Vonage contends that the claims of the Asserted Patents are invalid in view of certain pieces of Prior Art. Vonage and Sprint agree that the following patents existed before Sprint's patents were filed.

| | |
|---|---|
| U.S. Pat No. 4,991,172 | "Cidon" |
| U.S. Pat No. 4,491,945 | "Turner" |
| U.S. Pat No. 5,544,163 | "Madonna" |
| U.S. Pat No. 5,115,426 | "Spanke" |
| U.S. Pat No. 5,440,563 | "Isidoro" |
| U.S. Pat No. 5,339,318 | "Tanaka" |

Vonage and Sprint disagree as to whether these Prior Art patents affect the validity of the Asserted Patents.

Vonage and Sprint disagree as to whether the "NBBS" publication is prior art.  Vonage must prove by clear and convincing evidence that this publication is prior art.  In order to do so, Vonage must prove that this publication meets the requirements of a "printed publication" recognized by the patent laws.  I will explain these requirements to you momentarily.

**AUTHORITIES**

35 U.S.C. § 102(a), (b), and (e); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Chu,* 66 F.3d 292, 296-97 (Fed. Cir. 1995); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999); *Baxter Int'l, Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1062 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.6, 10.6.9 (as amended).

24.     **PRIOR ART – ANTICIPATION/LACK OF NOVELTY**

In this case, Vonage contends that each of the asserted claims of the Asserted Patents are invalid because they are anticipated by one or more items of prior art. A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection and is invalid. A party challenging the validity of a patent must prove anticipation with clear and convincing evidence.

In order for a claim of the Asserted Patents to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A patent will not be an anticipated unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is "inherent" in an item of prior art if it is necessarily present in that piece of prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case. A party claiming inherency must prove it by clear and convincing evidence.

In this case, Vonage contends that each of the asserted claims are anticipated. If you find that Vonage has proved that it is clear and convincing that one of the asserted claims is anticipated by an item of prior art, then you must find that particular claim to be invalid.

**AUTHORITIES**

*Impax Labs., Inc. v. Aventis Pharm. Inc.*, No. 05-1313, 2006 WL 3346151, at *36 (Fed. Cir. Nov. 20, 2006); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983); Fed. Cir. Bar Ass'n Model Instruction 10.8 (as amended).

## 25.     PRIOR ART – PRINTED PUBLICATION

Vonage contends that each of the asserted claims of the '429 patent, the '294 patent, and '064 patent are anticipated because the claimed inventions were described in a printed publication that is Prior Art, the "NBBS" publication.  To establish that a printed publication is Prior Art, Vonage must show by clear and convincing evidence that it was published before the filing date of the patent. [Sprint]

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.  Vonage must show by clear and convincing evidence that the printed publication was reasonably accessible to those members of the public who would be interested in its contents. [Sprint]

So long as the printed publication was available, the form in which the information was recorded is unimportant. The information must, however, have been maintained in some permanent form, such as a printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies. Printed publications may also include issued patents.

For a printed publication to anticipate the Asserted Claims of the '429, 294 or '064 patents, Vonage must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element or step of the claim. Something is "inherent" in an item of prior art if it is necessarily present in that piece of prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.  The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time. [Sprint]

## AUTHORITIES:

35 U.S.C. § 102; *In re Carol F. Klopfenstein*, 380 F.3d 1345, 1352 (Fed. Cir. 2004); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550 (Fed. Cir. 1995); *Scripps Clinic &Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. ), *clarif. on recon.*, 927 F.2d 1565 (Fed. Cir. 1991); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988); *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897 (Fed. Cir. 1986); *In re Donohue*, 766 F.2d 531 (Fed. Cir. 1985); *Studiengesellschaft Kohle mbH v. Dart Indus., Inc.*, 726 F.2d 724 (Fed. Cir. 1984); AIPLA Model Patent Jury Instructions, Instruction 6.4; Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 10.6.7.

**Sprint's Statement:**

Sprint requests that the instruction reflect that Vonage holds the burden of proving that a reference legally qualifies as prior art. It is beyond dispute that the jury should be instructed regarding the relevant burdens of proof. It is equally beyond dispute that, before a reference is considered prior art (in this case, a "printed publication"), Vonage must prove by clear and convincing evidence that the document meets the applicable prior art requirements. *See Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1326 (Fed. Cir. 2004) (affirming district court's holding that publication was not sufficiently accessible to constitute prior art under 35 U.S.C. § 102). Accordingly, the jury should be instructed that Vonage bears the burden of providing clear and convincing evidence as to each of the prior art requirements, including the date of publication and its accessibility. *See Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir. 1988) ("dissemination and public accessibility are the keys to the legal determination whether a prior art reference was 'published' [under 35 U.S.C. § 102(b) ]"); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) (public accessibility is "the touchstone in determining whether a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b)").

Sprint also requests that the jury be instructed regarding the requirement that the publication's disclosure be enabling. The proposed language is an accurate statement of the law and is taken directly from the model instruction. AIPLA Model Jury Instructions, p. 23; *See Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1479 (Fed. Cir. 1986) ("anticipation requires that each and every element of the claimed invention be disclosed in a prior art reference. In addition, the prior art reference must be enabling, thus placing the allegedly disclosed matter in the possession of the public.")

**Vonage's Statement:**

Vonage objects to the inclusion of the underlined language in the first two paragraphs on the grounds that it is misleading, confusing and prejudicial because it is redundant in view of other language in this instruction. Vonage further notes that this language does not appear in either of the model instructions referenced.

Vonage objects to the inclusion of the underlined language in the last paragraph on the grounds that it is misleading, confusing, prejudicial and a mis-statement of the relevant law. It is perfectly appropriate to use additional references to show that a prior art printed publication is enabling, without those references being limited to "publications that shed light on the knowledge" of a person of ordinary skill.

26.     **OBVIOUSNESS**

Vonage contends claims 1 and 23 of the '561 patent, claim 27 of the '294 patent and claim 5 of the '064 patent are invalid because the claimed inventions were "obvious." Vonage has not asserted that the remainder of the Asserted Claims are obvious and, therefore, you may not consider whether any of these other claims are obvious. [Sprint]

Vonage contends that the asserted claims are invalid because the claimed inventions were obvious. [Vonage]

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is: would it have been obvious for a skilled person who knew of the prior art to make the invention as set forth in the claim? If the answer to this question is yes, then the patent claim is invalid. Vonage bears the burden of proving obviousness by clear and convincing evidence.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention at the time of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the asserted patents. You should not use the Asserted Patents as a road map for selecting and combining items of prior art. [Sprint] You must put yourself in the place of a person of ordinary skill at the time the invention was made. While you must be cautious of the bias hindsight may cause, you must above all use your common sense, and base your determination on the objective reach of the claim. [Vonage]

You should consider the following factors in determining whether the claimed inventions are obvious:

1. The scope and content of the prior art.

2. The difference or differences, if any, between each asserted claim that Vonage contends is obvious and the prior art; [Sprint]

3. The level of ordinary skill in the art at the time the inventions of the Asserted Patents were made; and

4. Additional considerations, if any, that indicate that the invention was obvious or not obvious.

You must perform a separate analysis for each of the claims Vonage contends are invalid as obvious. Against this background, you must decide whether or not the invention covered by the asserted claims would have been obvious. I will now explain each of the four factors in more detail.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S.Ct. 1727, 1740-41 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkies Lures, Inc. v. Gene Larew Tackle, Inc.,* 119 F.3d 953, 955 (Fed. Cir. 1997); *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 716 (Fed. Cir. 1991); *Nutrition 21 v. U.S.,* 930 F.2d 867, 871 n.2 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 764 (Fed. Cir. 1988); *Structural Rubber Prods. Co. v. Park Rubber Co.,* 749 F.2d 707, 718-19 (Fed. Cir. 1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376, 1382-83 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538-40 (Fed. Cir. 1983); Jury Instructions in *Freeman v. Gerber Prods. Co.*, Civ. Action No. 02-2249-JWL, p. 37-38.

## Sprint's Statement:

Sprint's proposal to identify the specific claims Vonage contends are obvious prevents the jury from considering issues that are not before them. Vonage has not asserted obviousness with respect to all of the asserted claims. Vonage's instruction, however, would allow the jury to impermissibly consider all of the asserted claims in the obviousness inquiry.

Sprint's inclusion of the "road map" statement is a verbatim statement from the Court's Instruction No. 29 in *Freeman* and is needed to add further clarity to the previous sentence regarding the use of "hindsight."

Vonage's statement that "above all, you must use your common sense…" is legally inaccurate. In *KSR*, the Supreme Court merely stated that "rules that deny factfinders recourse to common sense . . . are neither necessary under our case law nor consistent with it." 127 S.Ct. at 1742-43. Vonage's "above all" assertion is simply unsupported. Common sense should be considered, but not emphasized above all else. Further, though the Court in *KSR* discussed the Federal Circuit's *Dystar* opinion (discussing consideration of common sense), it explicitly refused to consider whether this was consistent with its opinion in *KSR*.

## Vonage's Statement:

With respect to the first paragraph, Vonage objects to Sprint's alternative on the grounds that it is misleading, confusing and prejudicial. The parties' contentions are set forth elsewhere in these instructions, and so it is unnecessary and redundant to repeat them here and its inclusion is likely to confuse the jury. Vonage submits that its alternative (as set forth in the second paragraph) is more clear.

With respect to the fifth paragraph, Vonage objects to Sprint's alternative on the grounds that it is misleading, confusing, prejudicial and a mis-statement of the applicable law. Vonage submits that its alternative is more clear and will be easier for the jury to understand and apply, particularly as it correctly sets forth the applicable law in view of *KSR*.

27.     **LEVEL OF ORDINARY SKILL**

Obviousness is determined from the perspective of a person of ordinary skill in the art. The person of ordinary skill is presumed to know all of the prior art, not just what the inventor may have known.  When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 27-28 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 998-99 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-25 (Fed. Cir. 1999); *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.9.3 (as amended).

28.    THE SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Vonage. In examining the prior art references, you should take into account not only what they expressly disclose or embody, but also anything that inherently occurred as a result of practicing what was expressly disclosed in that prior art. Something is "inherent" in an item of prior art if it is necessarily present in that piece of prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case. <u>You should also consider the general knowledge that one of skill in the art has, even if it does not appear in the specific references relied on by Vonage.</u> [Vonage]

You must decide whether this prior art was reasonably relevant to the particular problem Mr. Christie faced in making the invention covered by the asserted claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. l, 27-28 (1966); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994, 999-1000 (Fed. Cir. 1999); *In re Rouffet*, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881-83 (Fed. Cir. 1998); *Wang Lab. v. Toshiba Corp.*, 993 F.2d 858, 863 (Fed. Cir. 1993); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991); Fed. Cir. Bar Ass'n Model Instruction 10.9.1 (as amended).

**Sprint's Statement:**

Vonage's addition is unsupported by the law and improperly suggests to jurors that they are to use the general knowledge of one of skill in the art as part of the scope and content of the prior art itself. The case law states that the general knowledge of one of skill in the art is to be considered in determining whether an apparent reason existed to combine multiple prior art references, but it doesn't support use of general knowledge by itself as being within "the scope and content of the prior art." Vonage's addition is also duplicative of the next instruction, which already provides a statement based on *KSR*: "you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention. You may also take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention." This is the same thing as saying that they can consider the general knowledge of one of skill in the art during the obviousness inquiry.

**Vonage's Statement:**

Vonage submits that the underlined language is appropriate and a correct statement of the law as set forth in *KSR*.

29.    **DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART**

<u>You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention.</u>  [Sprint]  In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation.  You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In analyzing the differences between the claimed invention and the prior art, you do not need to look for a precise teaching in the prior art directed to the subject matter of the claimed invention.  You may also take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  If the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  <u>On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.</u>  [Sprint]

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740- 42 (2007); *Graham v. John Deere Co.*, 383 U.S. l, 27-28 (1966); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353-54 (Fed. Cir. 2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343-45 (Fed. Cir. 2000); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371-81 (Fed. Cir. 2000); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000); *Nyko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 717 (Fed. Cir. 1991); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567-68 (Fed. Cir. 1983).

<u>**Sprint's Statement:**</u>

The first contested sentence should be included to instruct jurors as to the purpose of this *Graham* factor – to determine whether there are any relevant differences from the point of view of a person of ordinary skill in the art.  Without this first sentence, the instruction would merely begin by telling them not to consider the differences in isolation, but rather with respect to the claimed invention as a whole, which is not the entire thrust of this factor.

Sprint contends that the last two sentences of this instruction fall or stand as a pair.  The two sentences appear together in the latest drafts of the AIPLA Model Instructions following *KSR*.  To not include Sprint's proposed final sentence makes the instruction one-sided and unbalanced by not also including factors that make a claim less likely to be obvious.  Sprint's proposed last sentence is based on black-letter law that was affirmed by the Supreme Court in its *KSR* decision.

**Vonage's Statement:**

Vonage objects to the underlined language in the first paragraph as misleading, confusing and prejudicial.  The analyses required for determining obviousness are set forth elsewhere in these instructions, and so its inclusion here is unnecessary and likely to confuse the jury.  Vonage further notes that this language does not appear in the Federal Circuit Bar Association Model Patent Jury Instructions or the AIPLA Model Patent Jury Instructions.

Vonage objects to the last sentence of the second paragraph as misleading, confusing and prejudicial.  Sprint has proffered no evidence of "unexpected or unpredictable results" being achieved with the claimed invention(s) and Sprint's expert has not offered any opinions in this respect.  Accordingly, inclusion of an instruction on "unexpected or unpredictable results" is improper.

## 30.     FACTORS SHOWING NON-OBVIOUSNESS

Before deciding the issue of obviousness, you must also consider certain factors which, if established, may indicate that the invention would not have been obvious.  No factor alone is dispositive, and you must consider the obviousness or the lack of obviousness of the invention as a whole.

1.     Were products covered by the claims commercially successful due to the merits of the claimed invention?

2.     Was there a long felt need for a solution to the problem facing the inventors which was satisfied by the claimed invention?

3.     Did others try, but fail, to solve the problem solved by the claimed invention?

4.     Did others copy the claimed invention?

5.     Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6.     Did others in the field praise the claimed invention or express surprise at the making of the claimed invention?

Answering any, or all, of these questions "yes" may suggest that the claim was not obvious.

## AUTHORITIES

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966); *United States v. Adams*, 383 U.S. 39, 52, 86 S.Ct. 708, 714-15 (1966); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed.Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc*., 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc, v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

31.     DETERMINATION OF OBVIOUSNESS

In determining whether the invention of a patent in suit would have been obvious to a person of ordinary skill in the art, you must presume that such a person would have known about all of the relevant prior art.

Vonage contends that

the invention covered by the asserted claims [Vonage]

claims 1 and 23 of the '561 patent, claim 27 of the '294 patent, and claim 5 of the '064 patent [Sprint]

would have been obvious to a person of ordinary skill in the relevant field at the time the invention was made. If you find that Vonage has proved obviousness with clear and convincing evidence, then you must find these claims are invalid.

If you conclude that the prior art disclosed all the elements or steps of a claim, but those elements or steps are in separate references, you must then consider whether or not it would have been obvious to combine the elements or steps. A claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense. If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, this evidence would make it more likely that the claim was obvious. [Sprint]

Under certain circumstances, a patent claim can be proved obvious by showing that the combination of elements was "obvious to try." When there is a design need or there is market pressure to solve a problem and there are a limited number of identified, predictable solutions, then a person of ordinary skill has good reason to pursue all of those options. If this leads to success, it is likely the product not of innovation but of ordinary skill and common sense, and therefore it would be considered an obvious solution.

You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims, such that someone reading the prior art would be discouraged from following the path taken by the Mr. Christie. If you find that it does, this evidence would make it less likely that the claim was obvious. [Sprint]

**AUTHORITIES**

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1740-42 (2007); *Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co., et al.*, 464 F.3d 1356 (Fed. Cir. 2006); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349 (Fed. Cir. 2000); *Ruiz*

*v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353-54 (Fed. Cir. 2001); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664-65 (Fed. Cir. 2000); *In re Dembiczak*, 175 F.3d 994 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340 (Fed. Cir. 1998); *Rouffet*, 149 F.3d 1350 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573 (Fed. Cir. 1997); *Orthopedic Equip. Co. v. United States,* 702 F.2d 1005 (Fed. Cir. 1983); Fed Cir. Bar Assoc. Model Instruction 10.9.2, 10.9.5; Instructions in *Freeman v. Gerber Prods. Co.*, Civ. Action No. 02-2249-JWL, p. 37-38, 42-43, 45.

## Sprint's Statement:

Again, Vonage's proposal improperly allows the jurors to consider the obviousness of all asserted claims, even though Vonage has only asserted obviousness with respect to particular claims. Sprint's proposal, which identifies particular claims, is consistent with both the Model Instructions and with the Court's instructions in *Freeman*.

Sprint's proposed second paragraph regarding the combination of multiple references is based directly on black-letter law and was recently confirmed by the Supreme Court's recent ruling in *KSR v. Teleflex*, 550 U.S. ___, 127 S. Ct. 1727 (2007). "[A] patent composed or several elements is not proved obvious merely by demonstrating that each of its elements was, independently known in the prior art." Instruction is necessary to comply with this rule of law.

Further, Sprint and Vonage have agreed to include the Court's language from *KSR* regarding consideration of whether it was "obvious to try" to combine multiple prior art references, but this inclusion by itself would be grossly out of context without any accompanying general discussion regarding the combination of multiple references. Vonage proposes to not include any general discussion regarding the combination of multiple references for obviousness. In particular, Vonage disagrees with including discussion of the relevance of an "apparent reason" to combine multiple references. Though the Supreme Court, in *KSR*, rejected the Federal Circuit's rigid requirement of an explicit teaching, suggestion, or motivation to combine references, the Court stated that, "it can be important to identify **a reason** that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." 127 S.Ct. at 1741 (emphasis added). "This is so, because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *Id*. The Court also stated that:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was **an apparent reason to combine** the known elements in the fashion claimed by the patent at issue. *Id*. at 1740-41. (emphasis added).

Vonage's refusal to include a discussion of whether prior art "teaches away" is inconsistent with both the Model Instructions and this Court's instructions in *Freeman*. *See* Instruction No. 33, ., Civ. Action No. 02-2249-JWL, p.42-43 ("You should also consider whether or not the prior art 'teaches away' from the invention covered by the patent claims . . . ."); Fed. Cir. Bar Assoc.

Model Instruction 10.9.2 ("You should also consider whether or not the prior art 'teaches away' from the invention covered by the patent claims . . . ."). Sprint contends this is a necessary factor to be considered in determining obviousness.

**<u>Vonage's Statement:</u>**

With respect to the second paragraph, Vonage objects to Sprint's alternative on the grounds that it is misleading, confusing and prejudicial. The parties' contentions are set forth elsewhere in these instructions, and so it is unnecessary and redundant to repeat them here and its inclusion is likely to confuse the jury. Vonage submits that its alternative (as set forth in the second paragraph) is more clear.

With respect to the third paragraph, Vonage objects to this paragraph in its entirety on the grounds that it is misleading, confusing, prejudicial and a mis-statement of the law in that it suggests that some "reason" must be found to combine prior art elements or steps.

With respect to the final paragraph, Vonage object to this paragraph as misleading, confusing and prejudicial. Sprint's expert has not offered any opinions as to the prior art "teaching away" from the invention covered by the asserted claims. Accordingly, inclusion of an instruction on "teaching away" is improper.

32.    **WRITTEN DESCRIPTION REQUIREMENT [Vonage]**

The patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.

To satisfy the written description requirement, the specification must describe the full scope of a patent claim, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the inventors had possession of the invention that was ultimately claimed in the issued patent.

Vonage contends that the asserted claims are invalid for failure to satisfy the written description requirement.

To prove a claim invalid for lack of an adequate written description, Vonage must prove by clear and convincing evidence that the patent specification does not reasonably convey to a person of ordinary skill in the art that Mr. Christie had possession, on or before the filing date of his patent application, of the invention as claimed in the issued patent. If you find that Vonage has proved that the Asserted Patents do not contain a written description of the invention covered by a particular asserted claim, then you must find that claim to be invalid.

**AUTHORITIES**

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004); *Turbocare Div. of Demag Delaval Turbomach. Corp., v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2002); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002) (en banc); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000); *Lampi Corp. v. American Power Products, Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 20 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-90 (Fed. Cir. 1998); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997); AIPLA Model Jury Instructions Par. 9 (as modified).

**Sprint's Statement:**

The parties have submitted separate instructions regarding the written description requirement. Sprint's proposed instruction incorporates the language of the American Intellectual Property Lawyer Association's Model Jury Instructions. AIPLA Model Jury Instructions, p. 32. In addition, Sprint's proposed instruction sets forth that the written description determination must be made on a claim-by-claim basis for every asserted claim. In contrast, Vonage deviates from the model instruction by adding unnecessary commentary regarding the purpose of the written description requirement. In addition, Vonage's proposed instruction impermissibly focuses on Mr. Christie's subjective knowledge and not the actual written description set forth in the patent application. Finally, Vonage's proposed instruction also advances Vonage's "full scope"

argument.  As described *infra* with respect to enablement, Vonage's "full scope" arguments are contrary to law and should not be reflected in the jury instructions.

**<u>Vonage's Statement:</u>**

Vonage objects to Sprint's alternative instruction in its entirety as misleading, confusing, prejudicial and a mis-statement of the applicable law, particularly as it suggests that the written description requirement can be satisfied even if the specification discloses less than the full scope of a claim.

Vonage submits that its alternative is more clear and easier for the jury to understand and apply, as well as an accurate statement of the law.

2615684v1

33.    **WRITTEN DESCRIPTION REQUIREMENT [Sprint]**

Vonage contends that the asserted claims are invalid for failure to satisfy the written description requirement.  Vonage bears the burden of establishing lack of written description by clear and convincing evidence.

A patent must contain a written description of the system or method claimed in the patent.  To satisfy the written description requirement, the patent must describe the limitations of a patent claim, although the exact words found in the claim need not be used.  The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention as finally claimed in the patent.

If you find that Vonage has proved by clear and convincing evidence that the Asserted Patents do not contain a written description of the invention covered by a particular asserted claim, then you must find that claim to be invalid.  You must make this determination on a claim-by-claim basis for every asserted claim.

**AUTHORITIES**

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004); *Turbocare Div. of Demag Delaval Turbomach. Corp., v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2002); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002) (en banc); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 20 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-90 (Fed. Cir. 1998); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991); AIPLA Model Jury Instructions Par. 9 (as modified).

**Sprint's Statement:**

*See statement above with respect to Vonage's proposed Written Description instruction.*

**Vonage's Statement:**

*See statement above with respect to Vonage's proposed Written Description instruction.*

2615684v1

**34.    ENABLEMENT [Vonage]**

Vonage contends that the asserted claims are invalid for lack of enablement.  Vonage bears the burden of proving lack of enablement by clear and convincing evidence.

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the full scope of the claimed invention without undue experimentation.   This is referred to as the enablement requirement.  If the patent does not enable one of ordinary skill in the art to make or use the full scope  of  a patent claim, then the claim is invalid.

The patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the full scope of the claimed invention as of the date of the invention.   If the claim scope encompasses two alternative structures, then the specification must teach how to make and use both alternatives.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the full scope of the claimed invention.  Enablement cannot be proved by one making and using the invention years after the patent application is filed

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that one of ordinary skill in the art would be likely to already know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  A written description is enabling so long as undue experimentation is not needed to make or use the invention.   A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and the level of expertise and knowledge of persons skilled in that field.  The failure of an inventor to build a working system, despite attempting to do so, is strong evidence of lack of enablement.

 If you find that Vonage has proved by clear and convincing evidence that the written description of the Asserted Patents do not enable a skilled person to make and use the full scope of an  asserted claim without undue experimentation, then you must find that claim to be invalid. You must make this determination on a claim-by-claim basis for every asserted claim.

**AUTHORITIES**

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007); *CFMT, Inc. v. YieldUp In''l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003); *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1374 (Fed. Cir. 1999); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998); *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278, 1291 (D. Del. 1987), aff'd 865 F.2d 1247 (Fed. Cir. 1989); *Engel Industries, Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532-33 (Fed. Cir. 1991); *SRI Int'l v. Matsushita Electric Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985).

**Sprint's Statement:**

The parties have submitted separate instructions regarding enablement. Vonage's proposed instructions are legally inaccurate. Vonage's instructions state that the written description of a patent must enable persons skilled in the field to make and use the "*full scope*" of the claimed invention without undue experimentation. Explaining its "full scope" theory of non-enablement, Vonage states, "If the claim scope encompasses two alternative structures, then the specification must teach how to make and use both alternatives." The Federal Circuit has expressly rejected Vonage's approach to enablement, i.e., a finding of non-enablement predicated on lack of disclosure as to a particular means of practicing the claimed invention. *See Invitrogen Corp. v. Clontech Lab., Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005) ("[T]he enablement requirement is met if the description enables any mode of making and using the invention.") (emphasis added). Indeed, Vonage's misconstruction of the "full scope" rule is directly refuted by numerous Federal Circuit opinions. *See Invitrogen Corp.*, 429 F.3d at 1070- 71; *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533 (Fed. Cir. 1991); *In re Vaeck*, 947 F.2d 488, 496 (Fed. Cir. 1991) ("It is well settled that patent applicants are not required to disclose every species encompassed by their claims, even in an unpredictable art."); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 n.5 (Fed. Cir. 1987) ("If an invention pertains to an art where the results are predictable, e.g. mechanical as opposed to chemical arts, a broad claim can be enabled by disclosure of a single embodiment."). As the Federal Circuit recently explained, "[T]he specification need not necessarily describe how to make and use every embodiment of the invention 'because the artisan's knowledge of the prior art and routine experimentation can often fill in the gaps.'" 481 F.3d 1371, 1380 (Fed. Cir. 2007) (quoting *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39, 1244 (Fed. Cir. 2003). Vonage's proposed instruction is contrary to the law and should not be included.

In contrast to Vonage's instruction, Sprint's enablement instruction incorporates the language of the American Intellectual Property Lawyer Association's Model Jury Instructions. AIPLA Model Jury Instructions, p. 32.

In addition, Sprint's proposed instruction properly notes that enablement does not require an inventor to meet the standards for success in the commercial marketplace. *CFMT, Inc. v. YieldUp In'l Corp.*, 349 F.3d 1333, 1338-39 (Fed. Cir. 2003). Sprint's proposed instructions also provides the proper standard for considering Sprint's attempts to make products or services embodying the claimed invention. While Vonage suggests that the inventor's failure to build a working system is "strong evidence" of the lack of enablement, Sprint's proposed instruction correctly focuses the inquiry on whether persons of the appropriate level of skill attempted to follow the specification of the asserted patents but failed to make a product or service embodying the claimed invention. *See Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1360 (Fed.Cir.1998) ("A party who wishes to prove that the claims of a patent are not enabled by means of a failed attempt to make the disclosed invention must show that the patent's disclosure was followed."). Sprint's proposed instruction correctly recites the law of enablement and should be included.

**Vonage's Statement:**

Vonage objects to Sprint's alternative instruction in its entirety as misleading, confusing,

prejudicial and a mis-statement of the applicable law, particularly as it suggests that the enablement requirement can be satisfied even if the specification enables less than full scope of a claim or if the specification enables only one single embodiment covered by a claim.

Vonage submits that its alternative is more clear and easier for the jury to understand and apply, as well as an accurate statement of the law.

2615684v1

35.    **ENABLEMENT [Sprint]**

Vonage contends that the asserted claims are invalid for lack of enablement.  Vonage bears the burden of proving lack of enablement by clear and convincing evidence.

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the invention without undue experimentation.  This is referred to as the enablement requirement.  If the patent does not enable one of ordinary skill in the art to practice the product or method of a patent claim, then the claim is invalid.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that one of ordinary skill in the art would be likely to already know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  A written description is enabling so long as undue experimentation is not needed to make or use the invention.  A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and the level of expertise and knowledge of persons skilled in that field.

In addition, enablement does not require an inventor to meet the standards for success in the commercial marketplace.  The enablement inquiry is directed to the level of experimentation necessary to make or use the claimed invention, not to the level of research and development necessary to bring a product to market.

Whether or not Sprint makes a product or service that is within any claim of the Asserted Patents is not relevant to the issue of enablement unless Vonage shows that Sprint employees with the appropriate level of skill attempted to follow the specification of the Asserted Sprint Patents but failed to make a product or service embodying the claimed invention.

If you find that Vonage has proved by clear and convincing evidence that the written description of the Asserted Patents do not enable a skilled person to make and use the invention covered by a particular asserted claim without undue experimentation, then you must find that claim to be invalid. You must make this determination on a claim-by-claim basis for every asserted claim.

**AUTHORITIES**

*CFMT, Inc. v. YieldUp In''l Corp.*, 349 F.3d 1333, 1338-39 (Fed. Cir. 2003); *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1374 (Fed. Cir. 1999); *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998); *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278, 1291 (D. Del. 1987), aff'd 865 F.2d 1247 (Fed. Cir. 1989); *Engel Industries, Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532-33 (Fed. Cir. 1991); *SRI Int'l v. Matsushita Electric Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985).

**<u>Sprint's Statement:</u>**

*See statement above with respect to Vonage's proposed Enablement instruction.*

**<u>Vonage's Statement:</u>**

*See statement above with respect to Vonage's proposed Enablement instruction.*

2615684v1

**36.    DAMAGES**

I have now instructed you as to the law governing Sprint's claims of infringement and Vonage's claims of invalidity.  If you find that the accused  system infringes any valid claim, you must determine the amount of damages to be awarded Sprint for the infringement.  If on the other hand, you find that the accused system does not infringe a valid claim, then Sprint is not entitled to any damages, and you should not make any findings about damages.

Sprint has the burden of proving damages by a preponderance of the evidence. <u>While Sprint is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Sprint is not entitled to damages that are remote or speculative.</u> [Vonage]

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Sprint.

**AUTHORITIES**

*Interactive Pictures Corp. v. Infinite Pictures Corp*., 374 F.3d 1371, 1385 (Fed. Cir. 2001); *Kalman v. Berlyn Corp*., 914 F.2d 1473, 1482 (Fed. Cir. 1990); D*ow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGgaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co*., 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); 35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2001); *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184-87 (Fed. Cir. 1994); *Devices for Med., Inc. v. Boehl,* 822 F.2d 1062-1066 (Fed. Cir. 1987).

**<u>Sprint's Statement:</u>**

Sprint objects to the indicated language because it misstates Sprint's burden of proof with respect to damages.  The burden of proving damages is by the preponderance of the evidence.  The insertion of the "reasonable certainty" language, without adequate explanation, serves only to invite departure from the preponderance of the evidence standard and confuse the jury.

**<u>Vonage's Statement:</u>**

Vonage submits that the underlined language is appropriate because it is a correct statement of the law that damages cannot be remote or speculative, although they do not have to be shown with mathematical precision, and ensures that the jury applies the correct standard in evaluating any evidence relating to the amount of damages.

**37.     COMPENSATORY PATENT DAMAGES IN GENERAL - AMOUNT**

If you find that any claim of the Asserted Patents is both infringed and not invalid, then Sprint is entitled to damages adequate to compensate for the infringement.  <u>These damages may not be less than a reasonable royalty would be for the use made of the invention by the infringer.</u> [Sprint]  <u>In this case, these damages are a reasonable royalty for the use made of the invention by the infringer.</u>  [Vonage]  You may not add anything to the amount of damages to punish Vonage or to set an example.

**AUTHORITIES**

35 U.S.C. § 284; *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*)*: King Instruments Corp. v. Perego*, 65 F.3d 941, 948, n.3 (Fed. Cir. 1995);

**Sprint's Statement:**

The parties disagree on the amount of damages owed to Sprint by Vonage in the event the jury determines Vonage infringed a valid patent claim.  Sprint's proposed instruction provides that damages may "not be less" than a reasonable royalty, which is the verbatim language used by the patent damages statute, while Vonage's statement misstates the law.  *See* 35 U.S.C. § 281 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but **in no event less than a reasonable royalty** for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").

**Vonage's Statement:**

Vonage objects to the underlined language proposed by Sprint on the grounds that it is misleading, confusing and prejudicial because it suggests that Sprint can receive damages in excess of a reasonable royalty.  Given that Sprint's expert has offered an opinion only as to a reasonable royalty, inclusion of Sprint's proposed language would be improper.

Vonage submits that its proposed language is more clear and easier for the jury to understand and apply

**38.    WHAT IS A REASONABLE ROYALTY?**

I will now discuss the meaning of "reasonable royalty" in greater detail.  A reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between Sprint and Vonage taking place at the time when the infringing use first began, in this case October 2001. [Vonage]  In considering the nature of this negotiation, the focus is on what the expectations of Sprint and Vonage would have been had they entered into an agreement at that time and acted reasonably in their negotiations.

For purposes of determining a reasonable royalty, you must assume that both parties believed at the time of the negotiation that the Asserted Patents were valid and infringed.  In addition, you must assume that Sprint and Vonage were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In deciding what is a reasonable royalty, you may consider the factors that Sprint and Vonage would consider in October 2001 (the date of the hypothetical negotiation) setting the amount Vonage should pay. [Vonage]

I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1.  Whether Sprint had established a royalty for the Asserted Patents, for example, by granting other licenses to the Asserted Patents.  For a rate to be an established royalty, it must have been used repeatedly within the relevant commercial context so that it becomes essentially the "going rate" for a license under the Asserted Patents. [Sprint]  You should remember, however, that an established royalty may have been set before the patent was determined to be valid and infringed in court and, therefore, may not be as much as it would be if both Sprint and Vonage know it is valid.

2.  Royalties paid by Vonage or by others for patents comparable to the Asserted Patents. [Sprint]

3.  Whether or not Sprint had a policy of licensing or not licensing the patent.

4.  Whether or not Sprint and Vonage are competitors.

5.  Whether being able to use the patented invention helps in making sales of other products or services.

6.  The established profitability of the product made using the patent, and whether or not it is commercially successful or popular. [Vonage]

62

7.  The advantages and benefits of using the patented invention over old systems and methods that had been used for working out similar results. [Vonage]

7.  The advantages and benefits of using the patented invention over products not claimed in the Asserted Patents. [Sprint]

8.  The extent of Vonage's use of the patented invention and the value of that use to Vonage.

9.  Whether or not there is a portion or percentage of the profit or selling price that is customarily paid for use of patented inventions comparable to the inventions claimed in the Asserted Patents.

10.  The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Vonage.

11.  Expert opinions as to what would be a reasonable royalty.

12.  The nature and scope of the license as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

13.  The duration of the Asserted Patents and the term of the license.

14.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Sprint; and the benefits to those who have used the invention.

15.  Whether Vonage has a non-infringing alternative system it can implement, and at what cost. [Vonage]

16.  The economic climate and risk factors affecting those in the art at the time of the hypothetical negotiation. [Vonage]

17.  Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license. Such factors include the strength of the parties' bargaining positions to negotiate a higher or lower rate.  [Vonage]

18.  A patent holder's lack of profitability is of major importance to the determination of a reasonable royalty. [Vonage]

The reasonable royalty you award should not be any higher under any circumstance than Vonage's cost to "design-around" the Asserted Patents, or implement a non-infringing alternative system.  It is Sprint's burden to establish, by a preponderance of the evidence, that Vonage has no acceptable non-infringing alternative to any system you find

infringes the Asserted Patents.  If Sprint fails to prove that a given accused system infringes the Asserted Patents, then that system should be considered a non-infringing alternative.  [Vonage]

**AUTHORITIES**

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Phillips Petroleum Co. v. Rexene Corp.*, 1997 WL 781856, *17 (D.Del. 1997); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**Sprint's Statement:**

Sprint objects to the indicated language referencing an October 2001 timeframe as the date infringement began or the date of the hypothetical negotiation because it asserts a disputed factual conclusion.  Sprint disputes that infringement began in October 2001.  Instead, Sprint contends that Vonage started infringing the Asserted Patents in the Spring of 2002.  Because the parties dispute this fact, it would be improper to include it in the Jury Instructions.

Please find below Sprint's arguments regarding the disputed language in the listed "factors":

Factor #1.  The proposed additional sentence is an accurate statement of the law defining the necessary factual findings for an "established royalty."  *See, e.g., Phillips Petroleum Co. v. Rexene Corp.*, No. Civ. A. 90-208-LON, 1997 WL 781856, at *17 (D. Del. Sept. 4, 1997) (listing five criteria necessary for an "established royalty" including that "they must be paid by a sufficient number of persons to indicate the reasonableness of the rate"); *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) ("For a royalty to be 'established,' it 'must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention.'" (quoting *Rude v. Westcott*, 130 U.S. 152, 165 (1889))).  Further, this statement is necessary to avoid the possibility that the jury will improperly conclude that an arguably "comparable" rate is "established."  Accordingly, Sprint respectfully requests this language be included in the instruction.

Factor #2.  The proposed additional language is necessary to avoid the inaccurate suggestion that royalties paid by Vonage are not relevant to this factor.  The term "others" may improperly suggest that only royalties paid by third parties are relevant to this factor.   Further, the proposed language parallels the language used by this Court in its previous instructions.  Jury Instructions in *Freeman v. Gerber Prods. Co.,* Civil Action No. 02-2249-JWL, ¶ 39, subparagraph 2.

Factor #6.  Sprint objects to the indicated language because it may improperly suggest to the jury that "actual" profits are the only relevant evidence of this factor.  In fact, this factor is broad enough to encompass evidence of "popularity" even where no profits have been "established."  *See, e.g., PayMaster Techs., Inc. v. United States*, 180 Fed. Appx. 942, 948-49

(Fed. Cir. 2006) (holding that popularity of infringing product can satisfy factor 8, regardless of whether infringer made any profit). The language proposed by Sprint has been used previously by this Court. Jury Instructions in *Freeman v. Gerber Prods. Co.,* Civil Action No. 02-2249-JWL, ¶ 39, subparagraph 6.

Factor #7. The parties have submitted conflicting instructions regarding this factor. The language proposed by Sprint parallels language used previously by this Court. Jury Instructions in *Freeman v. Gerber Prods. Co.,* Civil Action No. 02-2249-JWL, ¶ 39, subparagraph 7. This language focuses the jury's analysis on the important distinction: the advantages and benefits of the patented invention over non-infringing alternatives available to Vonage. In contrast, Vonage's proposed instruction is vague and may lead the jury to unnecessarily focus on the large volume of prior art.

Factor #15. Sprint objects to this instruction because it is a woefully incomplete and misleading statement of the law. "In order to be an acceptable non-infringing alternative, the substitute product must have the advantages of the patented product. Moreover, to be an acceptable non-infringing substitute, the product or process must have been available or on the market." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008, 1028-29 (D. Del. 2001) (internal citations omitted) ("A non-infringing alternative is only available ... if the infringer had all of the necessary equipment, know-how, and experience to [use the alternative] whenever it chose to do so during the time of infringement."), *vacated in part on other grounds,* 370 F.3d 1131 (Fed. Cir. 2004). Vonage's proposed instruction omits both of these requirements.

Factors #16 and #17. Sprint objects to these proposed instructions because they are hopelessly vague and fail to inform the jury regarding the applicable law. These are not included among the *Georgia-Pacific* factors. While the parties' damages experts may opine on other considerations relevant to the hypothetical negotiation, here Vonage attempts to improperly comment on the evidence by injecting vague and unsupported considerations into the instructions in the guise of additional factors. For example, Vonage would have the Court tell the jury that "[t]he economic climate and risk factors affecting those in the art" is a factor they may consider. But the instruction does not elaborate on the meaning of "the economic climate," "risk factors," or "the art." If Vonage's damages expert opines on these considerations, Sprint will have the opportunity to flush them out and rebut them through cross-examination. Here, these vague "factors" are misplaced and could serve only to confuse or mislead the jury.

Factor #18. Sprint objects to this instruction because it is an improper comment on the weight of the evidence and does not inform the jury on the applicable law. *Georgia-Pacific* itself recognized that "there is no formula by which these factors can be rated precisely in the order of their relative importance." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Here, Vonage seeks to comment on the evidence by having the Court emphasize one factor over all others. But Vonage offers no case law to support its claim that this factor somehow deserves extra attention. Again, this commentary may come from the parties' experts but should not come from the Court in the form of an instruction.

Finally, Sprint objects to the paragraph Vonage proposes to conclude this section of the instructions. This instruction grossly misstates the law and the parties' burdens as decided by the

Court. The patent statute requires that patent infringement damages be "adequate to compensate for the infringement, *but in no event **less** than a reasonable royalty* for the use made of the invention by the infringer." 35 U.S.C. § 284 (emphasis added). Although a "design-around" may be an important factor to consider in deciding the amount of damages to award, it does not limit the possible outcome as Vonage suggests. *See Schofield v. United States Steel Corp.*, NO. 2:04-CV-520-PRC, 2006 U.S. Dist. LEXIS 39605, at *21 (N.D. Ind. Mar. 31, 2006) ("While the economic effects of non-infringing alternatives available to the infringer is a key factor in determining the reasonable royalty in the hypothetical negotiation, it is not dispositive."). Further, the Court recently ruled that it is Vonage's burden to establish the existence of acceptable non-infringing alternatives. *See* Minute Entry of *in limine* Conf., Doc. No. 345, at p.64 ("[T]he issue of which party has the burden of proving that the prior Vonage system architectures are noninfringing, I believe that burden falls on Vonage."). The Court's ruling is a correct statement of the law. *See, e.g., Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002) (". . .[T]he accused infringer has the burden of showing that the alleged alternative was available . . . .").

If Vonage intends to rely on the presence of any non-infringing alternative in arguing that a lower reasonable royalty should apply, then, clearly, Vonage is the party who must present evidence that such a non-infringing alternative exists and was available, rather than Sprint having the burden of proving the absence of any non-infringing alternatives.

## **Vonage's Statement:**

With respect to the second and fourth paragraphs, Vonage submits that inclusion of the underlined language is appropriate to ensure that the jury properly understands the time frame in which the hypothetical negotiation is to take place.

With respect to the list of factors, Vonage objects to the inclusion of the underlined language in factor #1 on the grounds that it is misleading, confusing, prejudicial and a mis-statement of the applicable law. Vonage further notes that this language does not appear in the Federal Circuit Bar Association Model Patent Jury Instructions or the AIPLA Model Patent Jury Instructions.

With respect to factor # 2, Vonage objects to the inclusion of "Vonage" (rather than "defendants") on the grounds that it is misleading, confusing and prejudicial as it suggests that Vonage should be paying royalties on certain unidentified patents.

With respect to factor # 6, Vonage submits that inclusion of the underlined language is appropriate as it is an accurate statement of the law.

With respect to factor # 7, Vonage submits that its alternative is more clear and easier for the jury to understand and apply. Vonage notes that its alternative is taken from the AIPLA Model Patent Jury Instructions.

With respect to factors #15-#18 and the paragraph following, Vonage submits that inclusion of this language is appropriate as these are all accurate statements of the law.

39.    **TOTAL DAMAGES**

If you determine Vonage has infringed a valid claim of the Asserted Patents, you should arrive at a total damages amount to award to Sprint.  It is your job to consider the evidence regarding the reasonable royalty and determine the amount to which Sprint is entitled.

Vonage has used various architectures since March, 2002, and Sprint has the burden of proof to demonstrate infringement of any architecture accused.  Therefore, the date for damages to begin, if any, is the date of first infringement, depending on the architecture accused and the date each patent issued.  [Vonage]

If you find that Vonage has infringed one or more claims of the '561, '429, or '294 patents, Sprint is entitled to a reasonable royalty on all Vonage sales since March, 2002.  This is true whether or not you also find that Vonage has infringed claims in the '064, '572, or '932 patents. [Sprint]

If, on the other hand, you find that Vonage has infringed **only** claims in the '064, '572, or '932 patents but **not** infringed claims in the '561, '429, or '294 patents, Sprint is entitled to a reasonable royalty on all Vonage sales since October, 2005.  [Sprint]

The amount of damages Vonage owes Sprint may exceed the royalty that would have resulted from a real-world licensing negotiation between Sprint and Vonage. Here, a real-world licensing negotiation did not occur and Sprint pursued its rights in litigation. Therefore, if you find that Vonage infringes one or more asserted claim, Vonage need not necessarily receive the benefit of a royalty rate that Sprint may have been willing to negotiate in the absence of infringement. [Sprint]

**AUTHORITIES**

*Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.*, 297 U.S. 387 (1936); *State Contracting and Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1074 (Fed. Cir. 2003); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1109-10 (Fed. Cir. 1996); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983); *The Coca-Cola Co. v. Pepsico, Inc.*, No. CIVA 102-CV-2887-RWS, 2004 WL 4910334 at *32-*33 (N.D. Ga. Sept. 29, 2004); Fed. Cir. Bar Ass'n Model Instruction 12.3.8 (as amended).

**Sprint's Statement:**

The language proposed by Vonage states that Vonage has used various architectures since March, 2002.  Vonage's statement is inaccurate for inbound call flows.  For inbound calls, Vonage has used the same architecture since March, 2002.  Accordingly, for claims addressed to in inbound calls, the date of first infringement does not depend on the architecture, as Vonage's proposed language incorrectly indicates.

In contrast, the language of Sprint's proposed instruction properly notes that method claims addressed to inbound calls rely on a date of first infringement in March, 2002. For all other claims, Sprint's proposed instructions reflect that the damages period begins in October, 2005. The October 2005 date removes the implications presented by Vonage's previous architectures.

Finally, Sprint requests that the jury be instructed that the royalty may exceed the real-world licensing negotiations between Sprint and Vonage because Sprint necessarily pursued its rights in litigation. This is an accurate statement of the law and appropriately focuses the damages analysis. *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1109-10 (Fed. Cir. 1996) ("The fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty, is also relevant.").

**Vonage's Statement:**

Vonage objects to the inclusion of this instruction in its entirety as misleading, confusing and prejudicial, particularly because it suggests that Sprint is entitled to damages in excess of a reasonable royalty. Given that Sprint's expert has offered an opinion only as to a reasonable royalty, inclusion of this instruction would be improper.

If this instruction is to be given, Vonage submits that its proposed second paragraph is appropriate to ensure that the jury properly understands the relationship between damages and the various Vonage systems at issue in this case.

If this instruction is to be given, Vonage objects to the third and fourth paragraphs in their entirety as misleading, confusing and prejudicial, particularly as it fails to differentiate amongst the various Vonage systems and suggests that Sprint is entitled to receive damages for sales based on non-infringing Vonage systems.

If this instruction is to be given, Vonage objects to the final paragraph in its entirety as misleading, confusing, prejudicial and a mis-statement of the applicable law, particularly because it suggests that Sprint is entitled to damages in excess of a reasonable royalty. Given that Sprint's expert has offered an opinion only as to a reasonable royalty, inclusion of this instruction would be improper.

**40.    WILLFUL INFRINGEMENT [Vonage]**

Sprint also contends that Vonage has willfully infringed the Asserted Patent Claims.  If you find on the basis of the evidence and the law as I have explained it, that Vonage infringes at least one claim of an Asserted Patent and that the claim is valid, you must then decide whether or not Vonage's infringement was willful.

Although, as I explained before, Sprint must prove infringement by the preponderance of the evidence standard, the burden of proving that the infringement was willful is the clear and convincing standard.

To establish willful infringement as to any Asserted Patent Claim, Sprint must prove two things by the clear and convincing standard.

First, Sprint must show by clear and convincing evidence that Vonage acted recklessly. In other words, Sprint must show by clear and convincing evidence that Vonage ignored an objectively high likelihood that its actions constituted infringement of a valid Asserted Patent and that Vonage's defenses were objectively unreasonable.   Vonage's state of mind is not relevant to this inquiry.

Second, Sprint must then demonstrate by clear and convincing evidence that this risk of infringement was either known or so obvious that it should have been known to Vonage.

There is no obligation on the part of an accused infringer to obtain the advice of counsel as to whether its activities may infringe a patent or whether that patent is valid.

**AUTHORITIES**

Fed. Cir. Bar Assoc. Model Patent Jury Instruction No. 9; In re Seagate Techs. LLC, Misc. No. 830, 2007 U.S. App. LEXIS 19768, *22-23 (Fed. Cir. Aug. 20, 2007); Jury Instructions in *Freeman v. Gerber Prods. Co.*, Civ. Action No. 02-2249-JWL, p. 30.

**Sprint's Statement:**

*See statement above with respect to Sprint's proposed Willful Infringement instruction (No. 21).*

**Vonage's Statement:**

*See statement above with respect to Sprint's proposed Willful Infringement instruction (No. 21).*