# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**SPRINT COMMUNICATIONS**
**COMPANY L.P.,**

    **Plaintiff,**

    v.                                        Case No.  05-2433-JWL

**VONAGE HOLDINGS CORP. and**
**VONAGE AMERICA, INC.,**

    **Defendants.**

## MEMORANDUM AND ORDER

In this lawsuit plaintiff Sprint Communications Company L.P. alleges that the voice over internet protocol (VoIP) telephony system of defendants Vonage Holdings Corp. and Vonage America, Inc. (Vonage) infringes sixty-one claims of seven telecommunications patents owned by Sprint. This matter is currently before the court on the parties' remaining pretrial motions including (1) Sprint's motion to exclude the opinions of Vonage's expert Joel M. Halpern regarding the disclosure-dedication rule and the all-limitations rule, (2) Sprint's motion to exclude the opinions of Vonage's expert Frank B. Koperda regarding obviousness and enablement, and (3) the final remaining issue in Sprint's motion in limine relating to the admissibility of the Sprint/Cisco agreements on the issue of a reasonable royalty (docs. #258, #262 & #287). For the reasons explained below, the court will grant the motion as to Mr. Halpern's testimony, grant in part and deny in part the motion as to Mr.

Koperda's testimony, and grant the remaining aspect of Sprint's motion as to the Sprint/Cisco agreements.

### SPRINT'S MOTION TO EXCLUDE THE OPINIONS OF VONAGE'S EXPERT JOEL M. HALPERN REGARDING THE DISCLOSURE-DEDICATION RULE AND THE ALL-LIMITATIONS RULE

Sprint seeks to exclude Vonage's designated expert on patent infringement, Joel M. Halpern, from testifying as to the legal doctrines known as the "disclosure-dedication" rule and the "all-limitations" rule. More specifically, the motion is directed at four paragraphs in Mr. Halpern's expert report in which he opines that certain claim elements are not infringed by relying on these legal doctrines, without conducting any factual or technical analysis under the doctrine of equivalents. Sprint contends that these are opinions concerning purely legal issues and, as such, are inadmissible. The court agrees.

The disclosure-dedication rule limits application of the doctrine of equivalents, much in the same way as prosecution history estoppel. *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1331 (Fed. Cir. 2004). Similarly, the "all limitations" rule restricts the doctrine of equivalents by preventing its application when doing so would vitiate a claim limitation. *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 850 (Fed. Cir. 2006). The application of each of these doctrines presents a question of law for the court. *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1378-79 (Fed. Cir. 2005). As such, expert testimony on this issue would not "assist the trier of fact to . . . determine a fact in issue." Fed. R. Evid. 702; *Specht v. Jensen*, 853 F.2d 805, 807-08 (10th Cir. 1988) (en banc) (expert

should not have been allowed to testify as to legal conclusions, as such testimony interfered with the role of the judge as sole arbiter of the law).  Accordingly, the court will grant Sprint's motion and prohibit Mr. Halpern from offering testimony at trial as to his view of the application of the disclosure-dedication rule and the all-limitations rule.  To the extent that Vonage seeks to rely on these legal doctrines in support of any of its legal arguments, however, the court will of course permit Vonage to offer any such opinions by Mr. Halpern in Vonage's submissions to the court.

### SPRINT'S MOTION TO EXCLUDE THE OPINIONS OF VONAGE'S EXPERT FRANK R. KOPERDA REGARDING OBVIOUSNESS AND ENABLEMENT

**I.    Obviousness**

Sprint seeks to exclude Vonage's designated expert on patent invalidity, Frank R. Koperda, from testifying as to the substance of twelve paragraphs contained in his expert report relating to Vonage's obviousness defense.  Vonage does not dispute Sprint's accurate characterization of those paragraphs as "boilerplate" language for which Mr. Koperda conceded during his deposition that he performed no analysis and that he intended to serve as placeholders for more detailed obviousness opinions.  Instead, Vonage characterizes these paragraphs as "concluding summaries" of Mr. Koperda's discussion of prior art references and contends that some of them are supported by factual analysis contained in claim charts or other more specific obviousness opinions set forth elsewhere in Mr. Koperda's report and supplemental report.  Vonage represented at oral argument that it only intends to offer the

3

"concluding summaries" which are supported by more specific opinions elsewhere in his reports. As to these obviousness opinions, the court will exercise its discretion under its *Daubert* gatekeeping function and grant Sprint's motion in part and deny it in part.

In *Daubert*, the Supreme Court held that before an expert may testify at trial, he or she must demonstrate, among other things, that the expert's testimony is relevant. 509 U.S. at 590-95. Testimony is relevant if it assists the trier of fact in determining the case. *Id.* Thus, the party offering an expert must present the witness's proposed testimony in a form that persuades the trial court that the testimony will in fact assist the trier of fact. *See Cook ex rel. Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). Presenting a summary of a proffered expert's testimony in the form of a conclusory statement devoid of factual or analytical support is insufficient to lay the proper foundation for the admission of that testimony. *See id.*; *see also Izumi Prods. Co. v. Koninklijke Philips Electronics N.V.*, 140 Fed. Appx. 236, 244 (Fed. Cir. 2005) (holding the district court did not abuse its discretion in excluding conclusory expert testimony regarding infringement under the doctrine of equivalents where opinion was based solely on expert's subjective belief); *Elder v. Tanner*, 205 F.R.D. 190, 193-94 (E.D. Tex. 2001) (excluding patent experts' conclusory opinions regarding infringement, anticipation, and obviousness which contained no discussion of their thought processes because their testimony would not assist the trier of fact in determining the case).

Accordingly, to the extent that the twelve "concluding summaries" are unsupported by any factual support elsewhere in Mr. Koperda's report, Sprint's motion is granted on the

grounds that Mr. Koperda's conclusory testimony on those issues would be irrelevant because it would not assist the jury. But, on the other hand, to the extent that Mr. Koperda's report contains factual support for those conclusory opinions in other portions of his report, such as in the claim charts or in other more specific obviousness opinions, Mr. Koperda's opinions would assist the trier of fact. Consequently, the court will permit Mr. Koperda to testify as to the substance of the paragraphs that essentially conclude that evidence. The court is not at this time determining which of those twelve conclusions are admissible. Instead, the court's is simply ruling that it will permit Mr. Koperda to testify regarding what Vonage contends are "concluding summaries" to the extent that Mr. Koperda first lays a proper foundation for his testimony by discussing the factual basis for each of those opinions.

## II.     **Enablement**

Sprint also seeks to exclude Mr. Koperda from offering testimony that the claims of the Sprint patent are invalid for lacking enablement. For the following reasons, this aspect of Sprint's motion is denied.

Sprint's motion is based, first and foremost, on Mr. Koperda's failure to expressly consider the eight enablement factors set forth by the Federal Circuit in *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). These factors, known as the *Wands* factors, include (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *Id.* at 737. Sprint points out that in Mr.

Koperda's expert report he did not discuss the first of these factors relating to the level of experimentation and, additionally, he admitted in his deposition that he performed no independent analysis concerning the level of experimentation that would be required to practice the claimed invention. Sprint's argument is without merit because all of the *Wands* factors do not have to be reviewed when determining whether a disclosure is enabling. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999). In fact, the *Wands* factors are merely illustrative of the factors a court may consider in determining whether a disclosure would require undue experimentation; they are not mandatory. *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991). In any event, the court has reviewed Mr. Koperda's report and supplemental report regarding enablement, and finds that it contains information which might bear on some of the other *Wands* factors, most notably the amount of direction or guidance presented in the disclosure for bridging ATM and IP technology.

Sprint also focuses on Mr. Koperda's opinion that a lack of enablement is evident "from the many thousands of hours of work and millions of dollars of research that have gone into efforts to produce a VoIP system." It is true, as Sprint contends, that the enablement requirement does not mean that a patent disclosure must enable one of ordinary skill in the art to make a commercially viable embodiment. *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003). But, at the same time, the Federal Circuit has held that evidence regarding the absence of a commercial embodiment of a patented article is admissible as relevant to the disputed issue of enablement. *Chiron Corp. v. Genentech,*

*Inc.*, 363 F.3d 1247, 1260-61 (Fed. Cir. 2004). Consequently, this does not provide a valid basis for excluding Mr. Koperda's opinion concerning enablement.

And, lastly, Sprint contends that Mr. Koperda's enablement opinion is legally incorrect inasmuch as it is erroneously premised on the proposition that the disclosure must enable one of skill in the art to practice VoIP technology. Sprint contends that the disclosure requirement is met if the description enables any mode of making and using the invention. It is well settled, however, that the patent specification must enable those skilled in the art to make and use the "full scope" of the claimed invention without undue experimentation. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1379 (Fed. Cir. 2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 (Fed. Cir. 2006); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1070 (Fed. Cir. 2005). Although enablement does not require the inventor to foresee every means of implementing an invention, the scope of the patent claims must be less than or equal to the scope of enablement. *Invitrogen Corp.*, 429 F.3d at 1070-71. Sprint contends that the claims of the patent should encompass VoIP technology, and therefore the patent specification must enable one skilled in the art to practice that invention without undue experimentation. Sprint's argument to the contrary is without merit.

In sum, the objections Sprint has raised to Mr. Koperda's enablement opinion do not warrant the exclusion of his testimony on that subject. Sprint's arguments go to the weight of his testimony, not its admissibility. Accordingly, Sprint's motion is denied with respect to Mr. Koperda's opinion concerning a lack of enablement.

### SPRINT'S MOTION IN LIMINE RELATING TO THE
### SPRINT/CISCO AGREEMENTS

The court has already issued its ruling on all but one of the issues raised in Sprint's motion in limine. The final remaining issue is the admissibility of evidence relating to the Cisco agreements insofar as Vonage contends that the evidence is relevant and admissible as to the issue of determining a reasonable royalty. Vonage contends that this evidence is relevant because the Sprint/Cisco License Agreement contains a covenant not to sue. On the other hand, Sprint contends that this evidence is irrelevant because the agreement is unquestionably related to component patents. Whether this agreement is evidence of a reasonable royalty in this case requires a closer examination of the nature and scope of the agreement.

The agreement contains a New York choice of law provision. Sprint/Cisco License Agreement § 8.4. "Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *British Int'l Ins. Co. Ltd. v. Seguros LA Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003) (quotation omitted; applying New York law). "Where . . . the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *Id.* (same). In assessing ambiguity, the court "consider[s] the entire contract to safeguard against adopting an interpretation that would render any individual provision superfluous." *RJE Corp. v.*

*Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (same). Contract terms are not ambiguous if they have a definite and precise meaning and are not reasonably susceptible to differing interpretations. *Id.* (same). Whether a contract is ambiguous is a question of law. *Id.* (same).

Here, after carefully considering the various terms, provisions, and language utilized throughout the Sprint/Cisco License Agreement, the court finds that the agreement unambiguously relates only to component patents and, as such, the fee included in the agreement for licensing those patents is irrelevant to the architecture patents at issue in this lawsuit. The agreement gives Cisco the option to license "Designated Sprint Component Patents" solely with the "Field of Use" for a stated price per patent.[1] It is undisputed that the "Designated Sprint Component Patents" do not include the architecture patents asserted in this lawsuit. "Component" is defined as a unit of network equipment, software that resides on a unit of network equipment, or a unit of network equipment with associated software. The term "Component Patent" is specifically defined to exclude any patent that would be infringed only by the architecture of a system. "Field of Use" means suppliers of "Components." The "Component" and "Field of Use" concepts are used throughout the agreement in such a way that it is clear that the agreement was aimed at component patents to the exclusion of architecture patents. Thus, the agreement relates solely to component

---

[1] Sprint and Cisco never entered into a single license under the agreement.

patents whereas the asserted patents in this lawsuit are entirely separate system architecture patents.

Vonage nonetheless relies on § 2.7 of the agreement, which provides as follows:

> Designation of Component Patents. As to any Sprint patents which Sprint did not offer to Cisco for licensing during the Exclusive License Period as set forth above which Sprint subsequently determines infringe by the use or sale of any Cisco product, Sprint shall offer to Cisco the right to acquire an exclusive license as set forth above.

Vonage contends that this provision means that Sprint would license to Cisco "*any* Sprint patents" that Sprint subsequently determined were infringed by Cisco. The court disagrees. This provision is entitled "Designation of *Component* Patents." Thus, the title itself makes clear that this section only applies to the designation of additional Component Patents not offered to Cisco during the Exclusive License Period. Additionally, the "as set forth above" language refers to § 2.1 which, again, provides Cisco with an option to license component patents, not architecture patents. And, the provision refers to "the sale or use of any Cisco *product*." Cisco is a distributor of components, not telecommunications systems. Construing this provision to be limited to component patents is consistent with the scope of the entire agreement, which reflects the parties' intent to provide Cisco with an option to license component patents, not architecture patents. Thus, this provision does not prove that the agreement is relevant to the determination of a reasonable royalty for the asserted patents.

Vonage also relies on the agreement's covenant not to sue end users of broadly defined "Sprint Patents." This provision is set forth in § 3.4 of the agreement and provides, in relevant part, as follows:

10

> Mutual Covenant Not to Sue. Both parties covenant not to sue, or bring suit, prosecute, assist or participate in any judicial, administrative or other proceeding of any kind against the other party or its licensees (including distributors and end users) for infringement of Cisco or Sprint Patents (as defined below) which occurs during the Immunity Period as defined below on account of the manufacture, use, sale, offer to sell, importation, promotion or distribution of Cisco or Sprint products or services using or incorporating any claim under such Cisco or Sprint patents. For purposes of this Section, "Cisco or Sprint Patents" means (i) all patents throughout the world . . . , (ii) all extensions, divisionals, continuations, continuations-in-part, re-examinations and reissue patents of such patents . . .

Although this provision broadly defines "Sprint patents," Vonage's argument that this provision extends to all "end users" of all Sprint patents is without merit. The agreement, by its terms, only extends litigation protection to "the other party [*i.e.*, Cisco] *or its licensees* (including distributors and end users)." Thus, this provision only provides protection for those end users who qualify as Cisco's licensees and, as such, incorporates the scope of Cisco's licensing rights under the agreement. The agreement itself contains no license or implied license. Sprint/Cisco License Agreement § 2.5. Rather, it is only an option to obtain "an exclusive license . . . substantially in the form attached as Exhibit 'B'" to the agreement. *Id.* § 2.1, ¶ 2. The form license attached as Exhibit B would have granted Cisco "an exclusive, . . . sublicenseable license . . . solely within the Field of Use." Just as in the primary agreement itself, the form license defines "Field of Use" as "the manufacture and sale of Components" and it defines "Component" to mean a unit of network equipment, software that resides on a unit of network equipment, or a unit of network equipment with associated software. Thus, even if Cisco had exercised its option to license, its license would only have extended to the manufacture and sale of components and its sublicensing rights

11

would have been commensurate. Thus, the only "licensee" end users within the scope of the covenant not to sue would have been manufacturers and sellers of components. Once again, this echoes the overall theme of the agreement, which is that the parties intended to confer Cisco, a component distributor, with the option to acquire licensing rights on certain JCS-2000 component patents.

In sum, the Sprint/Cisco Licensing Agreement relates solely to component patents that are not at issue in this litigation. As such, any fee which could have been paid for licensing those patents is irrelevant to the asserted patents. The sole relationship between any patent rights conferred upon Cisco in the agreement and the asserted patents in this lawsuit is that they all stem from Sprint's JCS-2000 project. Significantly, however, the JCS-2000 project gave rise to a vast patent portfolio of more than one hundred issued patents, and it is one of the largest project portfolios in the United States. Thus, the mere fact that the patents at issue in the Sprint/Cisco License Agreement and the asserted patents all relate to the JCS-2000 project does not provide a sufficient nexus to infer that the terms of the agreement are in any way relevant to the asserted architecture patents.

At a bare minimum, even to the extent that this evidence might be relevant (which it is not), the court would exclude it based on Rule 403 considerations. Its probative value, if any, is marginal and is substantially outweighed by the danger of confusing or misleading the jury and potentially wasting time on a "mini trial" concerning the implications of the Sprint/Cisco Licensing Agreement. For reasons explained above, however, the terms of that agreement are not probative of any issue in this lawsuit. Accordingly, Sprint's motion to

12

exclude evidence of the agreement as it relates to the issue of a reasonable royalty is granted with one caveat. That is, the court will grant the motion subject to Sprint opening the door by presenting evidence of similarly incomparable licensing arrangements. Vonage contends that Sprint intends to offer such evidence at trial. If Sprint does so, the court will be willing to revisit the issue of the admissibility of the Sprint/Cisco Licensing Agreement.

**IT IS THEREFORE ORDERED BY THE COURT** that Sprint's motion to exclude the opinions of Vonage's expert Joel M. Halpern regarding the disclosure-dedication rule and the all-limitations rule (doc. #258) is granted.

**IT IS FURTHER ORDERED** that Sprint's motion to exclude the opinions of Vonage's expert Frank R. Koperda regarding obviousness and enablement (doc. #262) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the remaining aspect of Sprint's motion in limine concerning the admissibility of evidence relating to the Cisco agreements relating to the issue of damages (doc. #287) is granted.

**IT IS SO ORDERED** this 4th day of September, 2007.

                                                  s/ John W. Lungstrum  
                                                John W. Lungstrum  
                                                United States District Judge