## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )
                                     )
VONAGE HOLDINGS CORP.,               )    Case No. 05-2433-JWL
VONAGE AMERICA, INC.,                )
                                     )
                    Defendants.      )
                                     )
                                     )
                                     )
                                     )


## SPRINT'S CLAIM CONSTRUCTION BRIEF

Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits its

Claim Construction Brief under *Markman* as follows:

I.      INTRODUCTION

This case involves claims of infringement of six patents[1] owned by Sprint in the

telecommunications field.  The parties have identified a number of disputed terms and phrases

from the asserted patent claims that require interpretation by the Court.  Some of the disputed

claim terms and phrases appear in multiple patents, and others merely relate to one of the

patents-in-suit.  All six of the asserted Sprint patents generally are directed to pioneering

technology that employs the use of packetized networks, like the Internet, to connect phone calls

between traditional telephones using the Public Switched Telephone Network ("PSTN").

However, each patent-in-suit is directed to a different innovation within this general field.  With

this in mind, each of the disputed claim terms and phrases is discussed below.

---

[1] As the Court is aware, Sprint's allegations originally extended to sixty-one claims of seven
    patents.  In an effort to streamline the impending trial, Sprint determined to select and

## II.    LEGAL STANDARDS OF CLAIM CONSTRUCTION

Claim construction, the first step in a patent infringement analysis, involves the court's determination of the meaning and scope of the asserted patent claims. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Following claim construction, the jury must determine—as a matter of fact—whether the claim as properly constructed reads on the accused product or method. *Id.* In view of this segregation of the roles of the judge and jury, it is important to ensure that *Markman* rulings are limited to genuine issues of claim construction and do not extend to applying the claims to actual or potential infringement. To preserve this segregation, Federal Circuit cases have repeatedly held that claim construction must proceed "without regard to the accused product." *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991).

"Words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Liebel-Flarsheim Co. v. Mehrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("There exists a heavy presumption that a claim term carries its ordinary meaning."). This is consistent with the "bedrock principle" that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *see also Markman*, 52 F.3d at 980 ("The written description portion itself does not delimit the right to exclude. That is the function and purpose of the claims."). The ordinary and

---

proceed with respect to fourteen representative claims from six of the originally asserted patents. The parties' claim construction briefs pertain only to the remaining claims.

customary meaning is that meaning which the "term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

In addition, the doctrine of claim differentiation is also instructive when construing the meaning of the claims. *Id*. at 1314. This doctrine is grounded in the notion that "[d]ifferences among claims can . . . be a useful guide in understanding the meaning of particular claim terms." *Id.* at 1314. "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.*; *see also CurtissWright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) (doctrine of claim differentiation refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim). This is because "reading an additional limitation from a dependent claim into an independent claim would not only make that additional limitation superfluous, it might render the dependent claim invalid." *CurtissWrightFlow Control Corp.*, 438 F.3d at 1380.

Beyond the presumptive ordinary meaning of the claim language, the *Phillips* court explained the hierarchy of other evidence properly used in construing the claims, as follows:

The Claims:

> Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms. . . . To begin with, the context in which a term is used in the asserted claim can be highly instructive. . . . Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently[2] throughout the patent, the usage of a term in one claim can often illuminate the meaning of

---

[2]     In fact, the Federal Circuit has noted that there is a "presumption that the same terms appearing in different portions of the claims should be given the same meaning <u>unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims</u>." *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001) (emphasis added).

the same term in other claims. Differences among claims can also be a useful guide in understanding the meaning of particular claim terms. For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim. *Id*. at 1314-15 (citations omitted).

The Patent specification:

The claims, of course, do not stand alone. Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.' As we stated in *Vitronics*, the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' *Id*. at 1315 (citations omitted).

The Prosecution History:

In addition to consulting the specification, we have held that a court 'should also consider the patent's prosecution history, if it is in evidence.' *Id*. at 1317.

Extrinsic Evidence:

[W]hile extrinsic evidence can shed useful light on the relevant art, we have explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language. *Id*. (quotations and citations omitted).

Indeed, "[i]n most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence."[3] *Vitronics*, 90 F.3d at 1583. However, "[w]ithin the class of extrinsic evidence, the court has observed that dictionaries and treatises can be useful in claim construction." *Phillips*, 415 F.3d at 1318. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of such terms." *Id.* at 1314 (citation omitted). The Federal Circuit has noted that general dictionaries can be helpful in such cases. *Id.* However, the Court must take caution to consider only dictionary definitions that are applicable within the context of the patent because

---

[3]    "Intrinsic evidence" consists of the claims, the patent specification, the figures, and the prosecution history. *See Vitronics*, 90 F.3d at 1582.

dictionaries, and particularly general dictionaries, "strive to collect all uses of particular words, from the common to the obscure." *Id.* at 1321. Thus, the "risk of systematic overbreadth is greatly reduced if the court instead focuses at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down." *Id.*

As noted, review of the patent specification is highly probative. However, this review must be conducted only for the purpose of interpreting the claim's stated terms, not to incorporate features exhibited in the specification into the claim. *Liebel-Flarsheim Co.*, 358 F.3d at 904. Because a patent's specification may show one or more exemplary embodiments, "particular embodiments appearing in a specification will not [be] read into the claims when the claim language is broader than such embodiments." *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994); *see also Liebel-Flarsheim*, 358 F.3d at 906 ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'"). Thus, "[w]here a specification does not require a limitation, that limitation should not [be] read from the specification into the claims." *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 836 (Fed. Cir. 1991); *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations.").

## III.    ARGUMENT

Sprint accuses Defendants Vonage America, Inc. and Vonage Holdings Corp. (collectively "Vonage") of infringing certain claims of U.S. Patent Numbers 6,665,294, 6,298,064, 6,473,429, 6,304,572, 6,633,561, and 6,452,932 (collectively "the Sprint Patents").

- 5 -

2615722v1

The Sprint Patents can be divided into two groups based on the patent's titles: the Broadband System Family and the Call Control Family. The Broadband System Family includes U.S. Patent Nos. 6,473,429 (the '429 Patent), U.S. Patent No. 6,665,294 (the '294 Patent), and U.S. Patent No. 6,298,064 (the '064 Patent). The Broadband System Family all share a written description and drawings with U.S. Patent No. 5,991,301. Each of the Broadband System Family patents were filed as continuation applications of the '301 Patent. For ease of reference, the common specification of the Broadband System Family is attached herewith as Exhibit A. *See* Ex. A., the '429 Patent (the "Broadband System Specification").

The Call Control Patents include U.S. Patent No. 6,452,932 (the '932 Patent), U.S. Patent No. 6,304,572 (the '572 Patent), and U.S. Patent No. 6,633,561 (the '561 Patent). The Call Control Family patents each share a written description and drawings with U.S. Patent Application No. 08/238,605 (the '605 Application, now abandoned) and were filed as continuation applications to the '605 Application. The common specification of the Call Control Family Patents is included herewith as Exhibit B. *See* Ex. B., U.S. Patent No. 6,452,932 (the "Call Control Specification").

After extensive discussion between the parties, the parties dispute the proper construction of the claim terms and phrases discussed below. Sprint's proposed constructions and associated support also are provided below.

### A.    "Routing" Means "Directing Through a Communication System"

Claim 19 of the '294 patent includes the claim term "routing." The proper construction of this claim term is "**directing** through a communication system." Likewise, the claim term "route" recited by claim 1 of the '561 patent should be construed as "**direct** through a communication system." Vonage incorrectly suggests that "route" and "routing" mean "**delivering** to the **destination** through a communication system."

- 6 -

The intrinsic evidence uniformly supports Sprint's proposed construction. Following the analysis in *Phillips*, Sprint begins with the context of the claims. Using claim 19 of the '294 patent as an example, the claim language recites "an identifier for **routing** user information." *See* Ex. C, U.S. Patent No. 6,665,294, at claim 19. The claim further requires the identifier be included along with a user communication in packet format. *See id.* By including the identifier in a packet format, the user information may be **directed** through the packet network based on the identifier. Notably, the claim language is silent regarding the **delivery** of the packet and does not identify or even discuss the packet's **destination**. Vonage is plainly adding limitations that are not required by these asserted claims.

Sprint's proposed construction is further supported by other intrinsic evidence. For instance, consistent with the claim language, the Broadband System Specification and the Call Control Specification both disclose routing devices, such as signaling transfer points and switches, that process signaling messages by **directing** such messages through the communication system. *See, e.g.,* Ex. A at 6:34-35 ("the <u>route</u> function of MTP 3 would forward the message"); Ex. A at 16:4-8; Ex. B at 2:15-25 ("<u>routes</u> the information to a network element"); Ex. B at 21:5-10 ("the CCP will <u>route</u> calls over the broadband network to another narrowband switch"). Contrary to Vonage's proposed construction, these devices do not **deliver** the routed messages to the end-user or destination. Rather, they serve to **direct** such messages from element to element within the network based on an identifier contained in the message. Ex. B at 2:18-20 (the switch "<u>reads portions of the signaling information</u> and either discards or <u>routes the information to a network element</u>").

In yet another example of the accuracy of Sprint's proposed construction, the related '429 patent claims a "routing system" that directs communications through the

communication system. *See* Ex. D, U.S. Patent No. 6,473,429, at claims 2 and 24 ("receiving the asynchronous communication into a <u>routing</u> system and <u>routing</u> the asynchronous communication through the <u>routing</u> system based on the identifier in the header."). Attempting to insert Vonage's proposed construction into this claim would yield a nonsensical limitation requiring the communication be *delivered through* the system. Communications cannot be *delivered through* a system. Communications are, however, *directed* through a system from element to element. This is consistent with the plain usage of the term route. *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, Fourth Edition (2007) (defining "route" as "To send or forward by a specific route."). As the intrinsic evidence and common usage uniformly support Sprint's proposed construction, the claim terms "route and "routing" should be construed to mean "direct/directing through a communication system."

**B.    "Generating a Message" Means "Assembling Information into a Message for the First Time in Connection With Setting Up a Call"**

Claim 1 of the '429 patent, claim 38 of the '561 patent, claim 1 of the '561 patent, claim 18 of the '932 patent and claim 1 of the '064 patent each recite the claim phrase "generate a message" or "generating a message." The claimed message generation means to assemble or assembling "information into a message for the first time in connection with setting up a call." Vonage incorrectly contends that the claimed action of "generating" means "creating for the first time."

The claim language demonstrates that messages are generated by "assembling" information into a message. Each of the claims requires the generation of a "message" that includes some particular content. For example, claim 1 of the '429 patent requires generating a message that contains an "identifier." The other claims have similar requirements. However, while the claims require the processing system to generate a message that contains particular

content, the claims do not require that the processing system generate the content itself.  This is why "generate" or "generating" is properly construed as "assemble" or "assembling." To "assemble" information into a message embraces the actual limitation of the claims -- that the processing system generate a message -- without requiring the processing system to itself have created the required content of the message.

Vonage's proposed construction, "creating for the first time," is indefinite, subject to post-construction manipulation, and unsupported by the evidence.  In this context, the word "creating" is ambiguous and does not serve to clarify the nature of the claimed message generation.  Notably,  it is inherently unclear whether the act of "creating" is directed to creating the message and all its content, or just forming a message that includes potentially pre-existing content.  Due to this inherent ambiguity, Vonage's construction is likely to lead to what happens in many patent cases -- the parties simply argue about what the construction means instead of what the claim term means.  Without any guidance regarding what it means to "create" a message for the first time, Vonage's proposed construction serves only to introduce ambiguity. "Assemble" or "assembling" resolves the ambiguity because it indisputably allows for either the generation of entirely new message content or for the generation of a new message with pre-existing content.

Vonage's use of the phrase "for the first time" also provides nothing but ambiguity and indefiniteness.  Presumably, the inclusion of the "first time" language requires an inquiry into whether a particular message was *ever* previously generated.  However, as Vonage's proposed construction is unlimited in scope, it is unclear what contexts a fact finder must consider before concluding that the message was, in fact, created for the "first time."  Such an undefined inquiry into previous instances of a message demonstrates that Vonage's proposed

construction is indefinite and incorrect.  In contrast, Sprint's proposed construction appropriately limits the context to "for the first time *in connection with setting up a call*."  Accordingly, Sprint's proposed construction is definite in scope and serves to clarify the nature of the claimed message generation.

> **C.**    **"In-Band Telecommunications Signaling" Means "Signaling that is Sent on the Same Channel as that Used for Voice or Data"**

Claim 38 of the '572 patent recites "in-band telecommunications signaling."  The term "in-band telecommunications signaling" is a term of art, meaning the "signaling that is sent on the same channel as that used for voice or data."  The Call Control Specification expressly confirms that the patentee intended to use this term consistent with its customary usage in the field.  *See* Ex. B at 7:50-63 (explaining the in-band signaling is used to carry both signaling and data when there is only one connection).  Indeed Vonage's own expert, Mr. Frank Koperda, supports Sprint's proposed construction in his expert report.  *See* Ex. E, Expert Invalidity Report of Mr. Frank Koperda Report at p. 10 ("'in-band' signaling is the exchange of signaling information [i.e. information necessary to control a telephone call] within the same **channel** that the telephone call itself is using.") (emphasis added).  Given this treatment by the specification, and the common usage by those skilled in the art, it is apparent that the claim phrase "in-band telecommunications signaling" should be construed in accordance with its customary usage to mean "signaling that is sent on the same channel as that used for voice or data."

> **D.**    **"Out-Of-Band Telecommunications Signaling" Means "Signaling that is Sent on a Distinct Channel from that Used for Voice or Data"**

Claim 38 of the '572 patent recites "out-of-band telecommunications signaling." Like the term "in-band telecommunications signaling," the term "out-of-band telecommunications signaling" is a term of art.  As used in the field, the term "out-of-band

telecommunications signaling" means "signaling that is sent on a distinct channel from that used for voice or data."  The Call Control Specification expressly confirms that the patentee intended to use this term consistent with its customary usage.  *See* Ex. B at 7:50-63.  As with in-band signaling, Vonage's technical expert, Mr. Koperda, supports Sprint's proposed construction.  *See* Ex. E at 10 ("'Out-of-band' signaling is telecommunication signaling that is done on a **channel** that is dedicated for the purpose and separate from the channels used for the telephone call.").  Vonage's other technical expert, Mr. Joel Halpern, also confirmed the accuracy of Sprint's construction by testifying that out-of-band signaling "has to be in a separate band, a separate recognizable **channel**."    Ex. F, Excerpt from the Deposition Transcript of Joel Halpern Deposition, p. 83-84 (emphasis added).  By using the term "out-of-band telecommunications signaling" in a manner consistent with its customary usage in the field, the specification confirms that the term "out-of-band telecommunications signaling" means "signaling that is sent on a distinct channel from that used for voice or data."

### E. The Phrase "Communication System" Means a "Plurality of Network Elements and Connections Forming a Network to Transfer Information"

The phrase "communication system" is found in claim 1 of the '561 patent and in claim 18 of the '932 patent.  The claimed "communication system" is properly construed as a "plurality of network elements and connections forming a network to transfer information."  For this claim element, Vonage advances the tortured construction "at least one network element having at least one connection used to communicate with at least one endpoint."

The plain and ordinary meaning of the phrase "communication system" denotes multiple devices interacting to enable communications, i.e., the transfer of information.  This plain and ordinary meaning is supported by the intrinsic evidence.  For instance, claim 1 of the '561 patent recites a "network code to route the user communication through the packet

communication system."   A network code would not be required to route the user communication if the claimed "communication system" were only a single device, as Vonage suggests.

The Call Control Specification confirms that accuracy of Sprint's proposed construction by describing a telecommunications system as a network of switches that establish communication connections between various other network elements (e.g., other switches) in the system. Ex. B at 1:29-36. The disclosure of the need for <u>multiple switches</u> in the system shows that Vonage's attempt to define a communication <u>system</u> as a <u>*single*</u> <u>device is incorrect and</u> <u>unsupported by the intrinsic evidence</u>. Indeed, the patentee chose to claim a "system" for communication and not a singular communication *device.*   By relying on multiple switches to comprise the disclosed "communication system," the intrinsic evidence uniformly supports Sprint's construction, "plurality of network elements and connections forming a network to transfer information."

### F.    "Identifier" Means "Data for Routing User Information in a Packet Network"

Claim 1 of the '429 patent and claim 19 of the '294 patent each recite an "identifier."   Relying on the intrinsic evidence, the Court already has expressly construed the claim term "identifier" to mean "data for routing user information in a packet network."  *See* Doc. No. 264 at 27-31.  For all the reasons set forth in the Court's Order, Sprint proposes that the claim term "identifier" be construed to mean "data for routing user information in a packet network."

### G.    "Interworking Unit" and "Interworking Device" Mean a "Device that Converts Narrowband Communication Signals into a Packet Format"

Claim 1 of the '429 patent and claim 1 of the '064 patent both require an "interworking unit.  Likewise, claim 19 of the '294 patent requires an "interworking device."

- 12 -

Adopting Vonage's proffered construction, the Court construed the claimed interworking unit/device to mean "an ATM multiplexer."  See Doc. No. 264 at 34.  For the purposes of maintaining its rights with respect to this term, Sprint advances and asks the Court to reconsider Sprint's proposed constructions, "a device that converts narrowband communication signals into a packet format" and "a device that converts packet communications into a narrowband format," for all the reasons set forth in Sprint Opposition to Vonage's Motion for Summary Judgment, Doc. No. 217.

> **H.     The Phrase "Asynchronous Communication" Does Not Require Construction**

Claim 1 of the '429 patent, claim 1 of the '064 patent and claim 18 of the '932 patent require an "asynchronous communication."  Rejecting Vonage's proposed construction, the Court found that the claim phrase "asynchronous communication" did not require construction.  See Doc. No. 264 at 39-40.  Consistent with the Court's Order, Sprint proposes this term be afforded its plain and ordinary meaning.

> **I.     The Phrase "Processing System" Does Not Require Construction**

The claim phrase "processing system" is found in claims 1 and 5 of the '429 patent, claims 1 and 7 of the '064 patent, claims 1 and 23 of the '561 patent and claim 18 of the '932 patent.  The claim phrase "processing system" does not require construction.  Neither the claims themselves nor the specification contain express language disturbing the "heavy presumption that a claim term carries its ordinary meaning."  *Liebel-Flarsheim Co.*, 358 F.3d at 913.  For example, both the Call Control Specification and the Broadband System Specification broadly disclose the processing system as performing a number of tasks.  *See* Ex. B at 3:53-60 and 13:30-45 (the processing system "is operational to receive and transmit signaling); Ex. A at 4:43-47 (identifying various tasks).  Accordingly, the claimed "processing system" does not

- 13 -

require construction and should be afforded its plain and ordinary meaning. *See Phillips*, 415 F.3d at 1323.

Attempting to depart from the plain and ordinary meaning of the claim language, Vonage contends that the claim phrase "processing system" means "any processing system platform that can receive and process signaling to select virtual connections, and then generate and transmit signaling to identify the selections." Vonage's incorporation of the disputed claim phrase "processing system" into its proposed construction shows that Vonage has not provided a genuine construction of the claim phrase. Instead, Vonage attempts to insert additional limitations that are unsupported by the claim language and the intrinsic evidence. In fact, neither the claims themselves nor the specifications expressly limit the claimed "processing system" to a "processing system platform that can receive and process signaling to select virtual connections, and then generate and transmit signaling to identify the selections." Accordingly, Vonage's attempt to insert such additional limitations into the claims must fail.

J.     **"Telecommunication Switches" Means "Devices that Set up Calls and Relay Voice and/or Data Information from one Connection to Another"**

Claim 5 of the '429 patent and claim 7 of the '064 patent each recite "telecommunication switches." The claimed "telecommunication switches" should be construed to mean "devices that set up calls and relay voice and/or data information from one connection to another." Consistent with the customary usage of "telecommunication switches" in the art, the Broadband System Specification explains that the "switches require both signaling capability and call processing capability." *See* Ex. A at 1:43-53. The specification expressly provides that telecommunications switches are used to both set up calls with signaling and to process voice data during a call connection. *Id*. at 1:33-45; 1:48-64. In addition, the Call Control Specification confirms that the telecommunication switches set up call communication paths and states,

- 14 -

"Switches select the connections that comprise the communications path." Ex. B at 1:48-49. This express disclosure by the intrinsic evidence confirms that the claimed "telecommunication switches" are "devices that set up calls and relay voice and/or data information from one connection to another."

K.    **"Setup Signaling" Means "Information or Commands Used to Setup Calls"**

Claim 1 of the '064 patent requires "setup signaling." The claimed "setup signaling" should be construed to mean "information or commands used to setup calls." The Broadband System Specification expressly defines signaling as "messages that are used by telecommunications networks to set-up and tear down calls." Ex. A at 1:25-26. Because the disclosed "messages" necessarily contain "information or commands," the specification's definition of "signaling" dictates that "<u>setup</u> signaling" be construed to mean "information or commands used to setup calls."

Ignoring both the plain and ordinary claim language and the express disclosure of the specification, Vonage proposes that "setup signaling" be construed to mean "a narrowband signaling message." Claim 1 of the '064 patent, however, does not even mention narrowband signaling. Accordingly, Vonage's proposed construction finds no support in the claim itself and directly contradicts the specification's definition of signaling.

L.    **The Claim Terms "Coupled" and "Coupling" Do Not Require Construction**

Claim 38 of the '572 patent includes the claim terms "coupled" and "coupling" The claim terms "coupled" and "coupling" should be afforded their plain and ordinary meaning. *See Phillips*, 415 F.3d at 1323. Indeed, neither the claims themselves nor the specification contain express language disturbing the "heavy presumption that a claim term carries its ordinary meaning." *Liebel-Flarsheim Co.*, 358 F.3d at 913. Vonage's proposed construction, "physically

- 15 -

attached or logically mapped," unnecessarily seeks to alter these claims terms, which are clear on their face. In fact, Vonage's construction introduces otherwise non-existent ambiguity by seeking to add the concept of "logically mapped," which has no readily recognizable meaning. Accordingly, the claim terms "coupled" and "coupling" do not require construction.

**M.**    **"Signaling Message" Means "Information or Commands Used to Set Up or Tear Down a Call"**

Claim 38 of the '572 patent, claim 19 of the '294 patent and claim 1 of the '561 patent recite a "signaling message." The claimed "signaling message" should be construed to mean "information or commands used to setup or tear down a call." Vonage's proposed construction, a "message used to transfer information among points and network elements to establish communication paths," deviates from the plain and ordinary meaning of the claim language by limiting the claimed signaling messages to messages directed to the establishment of communication paths. In contrast, Sprint's proposed construction of "signaling message" is consistent with a plain and ordinary reading of the claim language. Moreover, Sprint's proposed instruction is supported by the Broadband System Specification, which expressly defines "signaling" as "messages that are used by telecommunications networks to set-up and tear down calls." Ex. A at 1:25-26; *see also* Ex. B at 2:28-37. Because the disclosed "messages" necessarily contain "information or commands," the specification's definition of "signaling" dictates that the claimed "signaling message" be construed to mean "information or commands used to setup or tear down a call."

**N.**    **"A Network Code that Identifies a Network Element to Provide Egress from the Packet Communication System" Means "Information that Identifies a Network Element that Provides an Exit from a Packet Communication System"**

Claim 1 of the '561 patent claims "a network code that identifies a network element to provide egress from the packet communication system." As dictated by the claim

language, this phrase should be construed to mean "information that identifies a network element that provides an exit from a packet communication system."  First, it cannot be disputed that a "network code" is "information" for identifying a network element.  Secondly, the claim phrase "provide egress" may be easily understood to mean "provides an exit." Inserting the proper construction of "network code" and "provide egress" into the claim language reveals that the claimed "network code that identifies a network element to provide egress from the packet communication system" means "information that identifies a network element that provides an exit from a packet communication system."

In addition, Sprint further requests that the Court's construction reflect the treatment of this claim element in the Court's Summary Judgment Order.  *See* Doc. No. 264 at 52 and 53.  Specifically, Sprint requests the Court's construction specify that the claim phrase "to provide egress from the packet communication system" modifies the "network element" and not the "network code."  The Court already has decided this legal issue.  During the summary judgment proceedings, the Court correctly recognized that the "network code" need <u>not</u> provide egress from the packet communication system.  *Id.*  Rather, the claim language requires that the <u>network element</u> must provide such egress.  *Id.*  Given this finding by the Court, Sprint requests the Court's claim construction for this element expressly foreclose reintroduction of Vonage's misconstruction of this claim element.[4]

**O.    The Claim Phrase "A Signaling Message from a Narrowband Communication System" Does Not Require Construction in Light of Constructions Already Discussed Above.**

---

[4]    Addressing the claimed "network element" in connection with another limitation of claim 1 of the '561 patent, Vonage confirms that this network element is the "egress network element," i.e., the network element that provides egress from the network.  *See, infra*, at S.  Accordingly, Vonage cannot dispute it is the claim phrase "to provide egress from the packet communication system" modifies the "network element."

Claim 1 of the '561 patent recites "a signaling message from a narrowband communication system." The construction of the claimed "signaling message" has already been discussed and, as expressly provided by the specification, this claim language should be construed to mean "information or commands used to set up or tear down a call." *See supra* at M. Applying the proper construction of "signaling message," the claimed "a signaling message from a narrowband communication system" does not require further construction and should be afforded its plain and ordinary meaning.

Vonage suggests that the claimed "signaling message <u>from</u> a narrowband communication system" be construed as a "signaling message <u>received in the format sent</u> from a narrowband communication system." (emphasis added). As indicated by the underlined language, Vonage's proposed construction attempts to rewrite the claim by changing the word "from" to "received in the format sent." The meaning of the word "from" is obviously quite different from the meaning of the phrase "received in the format sent." The Court has already rejected Vonage's attempt to rewrite the claim in this manner. In denying Vonage's Motion for Summary Judgment, the Court stated:

> The limitation in the '561 Patent claims a method where the processing system "receiv[es] a signaling message for the user communication <u>from</u> a narrowband system," '561 Patent, col. 22, ll. 15-17 (emphasis added), not "<u>formatted for</u> a narrowband system." This is distinct from the limitation in the '052 Patent, which requires the signaling to be formatted for a narrowband system. **<u>Despite this critical distinction</u>**, Vonage's sole argument with respect to non-infringement of this claim limitation in its opening brief was that in the inbound scenario using an SIP gateway, the Vonage system does not infringe for the same reasons set forth with respect to claim 1 of the '052 Patent.

Doc. No. 264 at 56 (emphasis added). Once again, Vonage's proposed construction attempts to ignore the critical distinction between a communication <u>from a</u> narrowband system and a communication <u>formatted for</u> a narrowband system. Because the Court already has recognized

the importance of this difference in the claim language, Vonage's proposed construction must be rejected.

**P.    "Processing . . . To Select" Means to "Processing  . . . to Participate in Selecting"**

Claim 1 of the '561 patent, claim 1 of the '429 patent, claim 1 of the '064 patent, claim 38 of the '572 patent, claim 18 of the '932 patent require "processing . . . to select []" or "process . . . to select []".  As dictated by the claim language, these phrases should be construed to mean "processing . . .  to participate in selecting []" or "process . . . to participate in selecting [].'' Vonage proposes that the claim phrases be construed to mean "process . . . **and** make a selection []" or "processing . . . **and** making a selection [].''  Vonage's proposed construction subtly introduces the "and" requirement.  This addition is improper because the claim language does not require the independent act of "making a selection."   Rather, the claim language requires only "processing" some signaling to select, i.e., processing that participates in the selecting.  This very different from processing signaling **and** selecting.

Sprint's correct construction of the claim language is confirmed by the Court's Summary Judgment Order.  Doc. No. 264.  Considering the claim language in the context of Vonage's Motion for Summary Judgment, the Court stated:

> Neither claim requires that the processing system must actually "select" a network code, but rather that the processing system must merely "process [the signaling] to select" a network code. Viewing the evidence in the light most favorable to Sprint, a rational trier of fact could find that the Vonage processing system (the inbound and outbound proxies and signaling gateway) processes the signaling "to select" a network code, i.e., that the processing system is involved in the selection of the network code.

*Id.* at 48.  By focusing on the underlined involvement of the processing in system in the selection and not the actual selection of the network code, the Court correctly denied Vonage's Motion for

- 19 -

summary judgment. Consistent with the Court's rationale in denying Vonage's motion, the claimed "processing . . . to select []" means "processing . . . to participate in selecting []."

### Q.     The Claim Phrase "Generating a Control Message Indicating the Network Code" Does Not Require Construction

Claim 1 of the '561 patent requires "generating a control message indicating the network code." The claim phrase "generating a control message indicating the network code" does not require construction and should be afforded its plain and ordinary meaning. For this claim language, Vonage proposes that the claim term "generating" means "creating for the first time a new control message specifying the logical address of the egress network element." As discussed *supra* at D, Vonage's proposed claim construction of "generating" is ambiguous and unsupported by the evidence. Sprint already has proposed constructions of "generating" and "network code." *See, supra*, at B and N. The remainder of this phrase requires no further construction.

### R.     The Claim Phrase "First Message" Means a "Signaling Message that is Distinct from the Claimed Second Message"

Claim 18 of the '932 patent requires a "first message" and a "second message." The terms "first" and 'second" are used in the claim for identification to distinguish between the two messages. Accordingly, the term "first message" should be construed to mean "a signaling message that is distinct from the claimed second message." However, Vonage attempts to construe the "first message" as "a narrowband signaling message." Essentially, Vonage contends that the "first message" must be the very first message of the telephone call, which typically is a narrowband signaling message from the phone. *See* Ex. G, Expert Report of Joel Halpern, p. 51. Neither the claim language or the specification support such a reading of the claim phrase "first message." *See generally* Ex. A; Ex. B. In context, the first time the phrase "first message" appears is in the preamble of claim 18 of the '932 patent. The preamble refers to

- 20 -

a call having "**a** first message," not **the very** first message.  "A first message" is simply an identifier to distinguish from the later-claimed "second message."  Interestingly, Vonage doesn't try to contend that the "second message" can only be the second message in a call set up. Vonage's efforts to insert a temporal limitation into what is simply "a first message" is an obvious case of adding unnecessary limitations.  Accordingly, Vonage's proposed construction is improper.

### S.    The Claim Phrase "Using the Network Code to Route the User Communication Through the Packet Communication System to the Network Element" Does Not Require Construction

Claim 1 of the '561 patent requires "using the network code to route the user communication through the packet communication system to the network element."  The proper constructions for "network code" and "route" have been previously discussed.  The phrase "the network element" plainly refers to an antecedent network element, which is the element that provides egress (see second limitation of claim 1).  No further explanation is necessary. Applying these proper constructions, the claim phrase "using the network code to route the user communication through the packet communication system to the network element" is clear and does not need further construction.  Nevertheless, Vonage advances the construction "using the logical address identifying the network element to deliver the user communication through the packet communication system to the egress network element."  Once again, Vonage's construction impermissibly rewrites claim language that is otherwise clear on its face with an unduly limited result.

## IV.    CONCLUSION

For the foregoing reasons, Sprint respectfully requests that the disputed terms/phrases of the claims of the patents-in-suit be construed as set forth above.

- 21 -

2615722v1

Respectfully submitted,

Dated: September 4, 2007

   /s/  Adam P. Seitz           
B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT COMMUNICATIONS COMPANY
L.P.

- 22 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2007, a true and accurate copy of the above and foregoing **SPRINT'S CLAIM CONSTRUCTION BRIEF** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608
Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

 _/s/_____Adam P. Seitz_____
Attorneys for Sprint Communications Company L.P.

2615722v1