IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

_____
                                                        )
SPRINT COMMUNICATIONS COMPANY L.P.,    )
                                                        )
                          Plaintiff,         )
                                                        )  Case No.  05-2433-JWL
              v.                               )
                                                        )
VONAGE HOLDINGS CORP. and            )
VONAGE AMERICA, INC.,                    )
                                                        )
                          Defendants.        )
_____)

**VONAGE AMERICA, INC.'S AND VONAGE HOLDINGS CORP.'S RESPONSE IN
OPPOSITION TO SPRINT'S CLAIM CONSTRUCTION BRIEF**

Terrence J. Campbell – 18377
tcampbell@barberemerson.com
Catherine C. Theisen – 22360
ctheisen@barberemerson.com
1211 Massachusetts Street
P.O. Box 667
Lawrence, KS 66044
(785) 843-6600
(785) 843-8405 Facsimile

DUANE MORRIS LLP
Patrick D. McPherson
Barry Golob
Donald R. McPhail
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800

L. Norwood Jameson
1180 West Peachtree Street
Atlanta, GA 30309
404-253-6900

*Attorneys for Defendants/Counterclaim
Plaintiffs Vonage America, Inc. and Vonage
Holdings Corp.*

## <u>TABLE OF CONTENTS</u>

Page

ARGUMENT FOR ADOPTION OF VONAGE'S CONSTRUCTION OF DISPUTED
    TERMS ........................................................................................................................2

    A.    "ROUTING/ROUTE" .............................................................................................2

    B.    "GENERATING A MESSAGE" ................................................................................3

    C.    "IN-BAND TELECOMMUNICATIONS SIGNALING" ................................................4

    D.    "OUT-OF-BAND TELECOMMUNICATIONS SIGNALING MESSAGE"...........................5

    E.    "COMMUNICATION SYSTEM" ...............................................................................6

    F.    "IDENTIFIER" .......................................................................................................6

    G.    "INTERWORKING UNIT" AND "INTERWORKING DEVICE" ....................................7

    H.    "ASYNCHRONOUS COMMUNICATIONS"..................................................................7

    I.    "PROCESSING SYSTEM".........................................................................................7

    J.    "TELECOMMUNICATION SWITCHES"......................................................................9

    K.    "SET-UP SIGNALING".............................................................................................9

    L.    "COUPLED" AND "COUPLING" ..............................................................................9

    M.    "SIGNALING MESSAGE"........................................................................................9

    N.    "A NETWORK CODE THAT IDENTIFIES A NETWORK ELEMENT TO PROVIDE
        EGRESS FROM THE PACKET COMMUNICATION SYSTEM" ...................................11

    O.    "SIGNALING MESSAGE FROM A NARROWBAND COMMUNICATION SYSTEM".......11

    P.    "PROCESSING . . . TO SELECT" ...........................................................................13

    Q.    "GENERATING A CONTROL MESSAGE INDICATING THE NETWORK CODE" ('561
        PATENT, CLAIM 1) ...........................................................................................13

    R.    "FIRST MESSAGE" ('932 PATENT, CLAIM 18) ......................................................13

    S.    "USING THE NETWORK CODE TO ROUTE THE USER COMMUNICATION THROUGH
        THE PACKET COMMUNICATION SYSTEM TO THE NETWORK ELEMENT" ..............14

CONCLUSION ......................................................................................................................14

1

Defendants Vonage Holdings Corp. and Vonage America, Inc. (collectively, "Vonage") submit this Response in Opposition to Plaintiff Sprint Communications Company L.P.'s ("Sprint") Claim Construction Brief on the bases that most of Sprint's proposed claim constructions are contrary to well-established claim construction principals and/or not supported by the evidence. In its August 7, 2007 Memorandum and Opinion, this Court outlined many of the generally-applicable claim construction principals and Vonage incorporates by reference the Court's findings with respect to those principals. (*See* Doc. No. 264 at pp.19-21). To the extent that additional claim construction principals apply to the construction of specific disputed terms or phrases, Vonage will discuss those principals in turn.

**ARGUMENT FOR ADOPTION OF VONAGE'S CONSTRUCTION**
**OF DISPUTED TERMS**

A.    <u>**"Routing/Route"**</u>

Sprint argues that "routing" should be construed as "directing through the system." Sprint's proposed construction, however, is not supported by the claims and specification. In the context of routing signaling messages, the patentee makes clear that the act of routing means delivering the signaling message to its final destination: "CCM 250 would be identified by its own signaling point code. STP 260 would route signaling messages addressed to this point code to CCM 250." (*See* '294 Patent, col. 6:23-26; *see also*, *id.*, col. 9:50-59). In other words, the signaling message would be delivered to the processor associated with the point code, *i.e.*, a final destination. Likewise, in the context of a call, the '294 Patent specification also uses "route" in terms of delivering voice to its destination, *i.e.*, the user. (*Id.*, col. 10:5-7).[1]

---

[1] The term route is used similarly in the '561 Patent and '429 Patent. (*See*, *e.g.*, '932 Patent, col. 11:38-39 (**"STP 340 transfers the signal from LEC STP 328 to STP 345 which, in turn, routes the signal to CCP 350."**) and col. 9:55-60 ("On each call, CCP 250 could **select the actual voice server device** which should be used on that call and control the communications **through** network 210 and connection 212 **to the selected device**."); '429 Patent, claims 2

2

Sprint's proposed construction does not take into account the fact that the communication must be routed to the end user and further, the express teachings of the specification, thereby, violating the principal that claims should not be construed in a vacuum.  *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum).  Accordingly, in the context of both signaling and voice routing, the intrinsic evidence supports a construction of "rout[e/ing]" to mean "deliver[ing] to the destination through a communications system."[2]

### B.  "Generating a message"

Sprint argues that "generat[ing]" should be construed to mean "assembling information into a message for the first time in connection with setting up a call."  Sprint's proposed construction can be conveniently divided into two parts: (1) assembling information into a message, and (2) for the first time in connection with setting up a call.  Vonage agrees with the second-half of Sprint's proposed construction and, therefore, is willing to amend its proposed construction to add the phrase "in connection with setting up a call."

Vonage, however, disagrees with the first-half of Sprint's proposed construction of generating a message ("assembling information into a message").  The key distinction between the constructions proposed by Sprint and Vonage is whether generating is the act of "creating" or "assembling."  Sprint's proposed construction is incorrect because it ignores the repeated use of the term "new signaling" in the specification that modifies the signaling that is being generated.

---

("routing the asynchronous communication **through the routing system** based on the identifier in the header") (emphasis added).

[2] Sprint's argument also is based, in part, on a dictionary definition of the term route. Reliance on a dictionary definition is not appropriate because: (1) the intrinsic evidence provides a sufficient basis to construed the term and the dictionary definition does not provide an alternate definition, and (2) the 2007 non-technical dictionary definition provides no insight as to how one of ordinary skill in the art would understand the term route or routing in 1994-1995.

(*See*, *e.g.*, '294 Patent, col. 2:17-22 ("The method comprises receiving the signaling for the call into the signaling processor, processing the signaling to select the virtual connection, generating new signaling to identify the particular connection and the selected virtual connection, and then transmitting the new signaling to the ATM interworking multiplexer.); '561 Patent, col. 4:18-20 ("The signaling processor is operational to process signaling and to generate new signaling information based on the processing.") The patentee's use of the term "new signaling" makes clear that the signaling information that is being generated is created for the first time, rather than assembled as proposed by Sprint. *Phillips v. AWH, Inc.*, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) ("claims 'must be read in view of the specification, of which they are a part' . . . . Usually, [the specification] is dispositive, it is the single best guide to the meaning of the disputed term."); *Medrad,* 401 F.3d at ("We cannot look at the ordinary meaning of the term . . . in a vacuum). Using Vonage's amended construction in context of claim 1 of the '561 patent which recites "generating a control message indicating the network code" results in " creating, for the first time in connection with setting up a call, a control message indicating the network code." This construction unquestionably captures the understanding of generating as used in the specification and claims. Accordingly, the term "generating" should be construed to mean "creating for the first time in connection with setting up a call."[3]

C.    **"In-band telecommunications signaling"**

Sprint claims that this phrase is a term of art that focuses on information being sent on a "channel", as opposed to a "communications path," as proposed by Vonage. First, the specification describes in-band signaling explicitly:

---

[3] As set forth in Vonage's Trial Brief, the proper terms to be construed are "generating" and "generating a control message indicating a network code," as opposed to "generating a message." (*See* Doc. No. 354, at 8). Nevertheless, the same principals apply.

> "As known in the art, in-band signaling is typically used in many user network connections, such as the local loop. This is because only one connection or link is typically provided to the user premises and thus, **the signaling must be placed on the actual communications path**."

(*See* '572 Patent, col. 7:50-54 (emphasis added); *see also id.*, col. 8:56-59 and col. 7:54-57).

Second, Sprint's reliance on extrinsic evidence -- expert testimony that is taken out of context and not specifically directed at what one of ordinary skill in the art would understand in 1993-1995 -- cannot change the construction used by patentee in the specification.  Accordingly, "in-band telecommunication signaling" should be construed as proposed by Vonage and supported by the intrinsic evidence to mean "signaling transmitted on the actual communication path."

### D.     "Out-of-band telecommunications signaling message"

Sprint's construction of "out-of-band telecommunication signaling message" fails for the same reasons as Sprint's construction of "in-band telecommunication signaling" as discussed above.  Vonage agrees that "in-band" and "out-of-band" phrases are counterparts, and that the construction of out-of band should be coordinated with the proper construction of in-band.  As the counterpart to "in-band," the phrase "out-of-band telecommunication signaling message" should be construed to mean "signaling message that is not transmitted on the actual communications path."

Vonage's proposed construction is supported by the use of the phrase "out-of-band telecommunications signaling" in the '572 Patent specification to mean signaling that is not on the communications path:  "The initial network switch typically **removes the signaling from the communications path** and transfers it to an **out-of-band signaling system**."  (*See* '572 Patent, col. 7:54-57 (emphasis added); *see also, id.,* col. 8:56-59 ("If in-band signaling is employed on connections 222 and 232, network 210 would separate at least a portion of the signaling out-of-

5

band and transmit it to CCP 250 over link 214.")).  In this instance, the intrinsic evidence

supports the adoption of Vonage's proposed construction.[4]

     **E.**    <u>**"Communication System"**</u>

    Although Vonage does not agree with all of Sprint's arguments regarding the proper

construction of this term, Sprint's construction of "communication system" is not in dispute.

     **F.**    <u>**"Identifier"**</u>

    As Sprint correctly states, the Court has construed "identifier" to mean "data for routing

user information in a packet network."  (Doc. No. 264, p. 13).  The Court applied the doctrine of

claim differentiation to broaden the term identifier beyond a VPI/VCI identifier as specifically

and solely disclosed by patents in its discussion of the claimed and disclosed ATM inventions.

(*See* Doc. No. 264, p. 27).  However, Vonage respectfully submits that the Court erred when it

relied on claim differentiation because Vonage overcame the presumption that the claim

differentiation principal applies.  *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1369 (Fed.

Cir. 2005) ("However, that presumption is not a hard and fast rule and will be overcome by a

contrary construction dictated by the written description or prosecution history").

    In this case, there can be no doubt that the '301 Family Patents specification is limited to

ATM networks as the Court found when it construed the interworking device as an ATM

interworking multiplexer.  (Doc. No. 264, at 34).  Because the specification is so limited, the

doctrine of claim differentiation does not apply to broaden identifier.  *Seachange*, 413 F.3d at

---

    [4] The evidence for consideration in connection with construing this phrase should be
limited to the intrinsic evidence alone and Sprint's reliance on expert testimony, *i.e.*, extrinsic
evidence taken out of context, is not relevant to the construction of this phrase.  *Phillips*, 415
F.3d at 1313 ("We have made clear, moreover, that the ordinary and customary meaning of a
claim term is the meaning that the term would have to a person of ordinary skill in the art in
question at the time of the invention, *i.e.*, **as of the effective filing date of the patent
application**.") (emphasis added).

1369.  The only "identifier" that can be used with an ATM interworking multiplexer is a

VPI/VCI identifier, as admitted during trial by Sprint's own expert.  Accordingly, the term

identifier should be construed to mean a "VPI/VCI identifier."

      Indeed, based on Sprint's own admission, "identifier" must be limited to a VPI/VCI

identifier, but at a minimum must be limited to a virtual connection.  (*See* Ex. B, JCS 2000

Glossary of Telecommunication Terms, at 126 (definition of "Packet").

      **G.**    **"Interworking Unit" and "Interworking Device"**

      The Court already construed these terms to mean "an ATM multiplexer."  (*See* Doc. No.

264 at 34).  Based on the Court's reasoning in its summary judgment Memorandum and Order,

and the prosecution history as more fully developed in Vonage's Motion for Partial Summary

Judgment, both of which are incorporated by reference herein, the Court's construction should

not be amended as proposed by Sprint.

      **H.**    **"Asynchronous Communications"**

      As Sprint correctly states, this Court found that this term does not need to be construed.

For the reasons discussed in Vonage's Motion for Partial Summary Judgment, which Vonage

incorporates by reference herein, Vonage respectfully disagrees with the Court's findings.  In the

context of the written description of the '301 Family Patents, this term is properly constructed as

an ATM communication.  While extrinsic evidence regarding "asynchronous" may be

appropriate with respect to the '605 Family Patents, Vonage submits that the four corners of the

'301 Family Patent's written description contradicts the extrinsic evidence.  The only

asynchronous communication in the '301 Family Patents is an ATM communication. (*See* Doc.

No. 206 at 25).

      **I.**    **"Processing system"**

      Sprint argues that the phrase "processing system" does not need to be construed and it

should be given its ordinary meaning.  Sprint's argument is based on its assertion that the

processing system provides various processing functions according to the specifications.

Sprint's argument is a non-sequitur.  The fact that the processing system can perform multiple

processes does not mean that the processing system should not be limited to processing systems

that perform at least some processes specifically identified by the patents.

In this instance, the patentee **specifically defined the phrase "processing system"** as

any processing platform that can receive and process signaling to select virtual connections and

then generate and transmit signaling to identify the selections:

> Signaling processing system 160 is any processing platform that
> can receive and process signaling to select virtual connections, and
> then generate and transmit signaling to identify the selections.

('294 Patent, col. 4:24-27).  The fact that the processing system may have additional processing

functionality is not relevant because the patentee acted as his own lexicographer with respect to

certain functionalities the processing system must perform.  Any other definition contradicts the

fundamental principal that a patentee can be his/her own lexicographer.  *See Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[A] patentee may choose to be his

own lexicographer and use terms in a manner other than their ordinary meaning, as long as the

special definition of the term is clearly stated in the patent specification or file history. . . .  [I]t is

always necessary to review the specification to determine whether the inventor has used any

terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary

when it expressly defines terms used in the claims or when it defines terms by implication").

Accordingly, the Court should adopt Vonage's construction that requires the functionality

specifically required by the patentee.[5]  *Vintronics*, 90 F.3d at 1582.

_____

[5] This construction is further supported by Dr. Wicker's recent testimony:  "The
processing system called for in this limitation has – **has to do or be configured** to do two things,

**J.**     **"Telecommunication switches"**

Although Vonage does not agree with all of Sprint's arguments regarding the construction of this term, Sprint's construction of this term is not in dispute and is accepted by Vonage.

**K.**     **"Set-up signaling"**

Sprint's proposed construction for "set-up signaling is not supported by the evidence on which it relies."  Sprint states that the '301 Patent Family Specification expressly defines signaling as "messages that are used by telecommunications networks to set-up and tear down calls."  Although Vonage's construction is consistent with this definition, Sprint's proposed construction is not.  Telecommunication networks at the time the '064 Patent application was filed, used narrowband signaling to set-up and tear down calls.  Narrowband signaling was required to establish a path for the transmission of the narrowband voice signals.  Set-up signaling is used consistently in the intrinsic evidence by the patentee as narrowband signaling.  Accordingly, there is no basis to remove "message" from the express definition as proposed by Sprint, and the Court should adopt Vonage's construction – "a narrowband signaling message."

**L.**     **"Coupled" and "coupling"**

Although Vonage does not agree with all of Sprint's arguments regarding the construction of this term, Sprint's construction of this term is not in dispute.

**M.**     **"Signaling message"**

---

generally speaking.  As we discussed, receive and process the first message, to select one of the narrowband switches, and to generate and transmit a second message, based on the selected narrowband switch."  (September 3, 2007 Deposition of Stephen B. Wicker, attached as Ex. A, at 9 (emphasis added).  In other words, Dr. Wicker confirmed his understanding that the processing system disclosed in Asserted Patents must be configured to perform the functionality that is included in Vonage's proposed construction.

Sprint construes the term based on an asserted plain and ordinary meaning.  Sprint argues that this term should broadly mean "information or commands used to set up or tear down a call."  Sprint's proposed definition, however, ignores the intrinsic evidence and the narrowing disclaimers that Sprint made during the prosecution of the '928 patent.  (*See* Doc. No. 354, at Ex. A ('928 Patent, Jan. 15. 2002 Office Action Response), at 8).  In response to a prior art rejection by the Patent Office, Sprint amended the claimed phrases "receiving <u>information</u> ..." and "processing <u>information</u> ..." respectively  to "receiving <u>signaling</u> . . ." and processing <u>signaling</u> . . ."  On the basis of this disclaimer, Sprint unquestionably distinguished between information and signaling and argued for patentability over the cited prior art of that basis.  Accordingly, Sprint's proposed construction of signaling message is contrary to the position that it took during the prosecution.  Therefore, Sprint is estopped from making the opposite argument now.  *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'"); *see also Phillips*, 415 F.3d at 1316-17 ("'the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.'").

Sprint's construction of signaling message also is divorced from the context in which signaling messages are used in the specification.  Signaling messages are conveyors of information, the information is conveyed in a format or protocol that gives it meaning.   Using Sprint's definition of signaling message leads to nonsensical results.  Receiving DTMF signaling would be nothing more than the receipt of tones; receiving a SS7 signaling message would result only in a collection of 0s and 1s; and a SOS distress message would unfortunately, for the

sender, be understood as just an annoying repetition of taps.  It is only in the context of a message with a given protocol or format that any information can be transferred.  Only Vonage's definition of "signaling message" reflects the context provided by the specification and thus, "signaling message" should be construed to mean "a message used to transfer information among points and network elements to establish communication paths."

**N.**      **"A network code that identifies a network element to provide egress from the packet communication system"**

Sprint construes this claim as meaning "information that identifies a network element that provides an exit from a packet communication system."  Essentially, Sprint's construction replaces terms in the phrase to be construed with other terms according to its proposed construction of those terms, including the term "network code."  However, Sprint's construction of network code ignores the explicit definition for this term provided in '561 Patent specification:  "Network codes are the logical address of a network element."  (*See* '561 Patent, col. 12:47-53).  Based on the proper constructions of network code, "using the network code to route the user communication through the packet communication system to the network element" should be construed to mean: "using the logical address identifying the network element to deliver the user communication through the packet communication system to the egress network element."

**O.**      **"Signaling message from a narrowband communication system"**

Vonage already has proposed a construction for the term "signaling message" that should be incorporated into the construction of this phrase.  The remainder of the phrase, "from a narrowband communication system" should be construed as "received in the format sent from a narrowband communication system" based on the intrinsic record.

11

During prosecution of the '561 Patent and it related patents, Sprint repeatedly argued to the Patent Office that "signaling message <u>formatted for a narrowband system</u>" and "signaling message <u>from a narrowband system</u>" were the same:  Claims 1 and 21 require 'receiving signaling formatted for a narrowband system into a processing system that is external to any communication switches' . . . . La Porta '852 does not teach the processing of signaling from narrowband systems. (*See* Doc. No. 354, Ex. E ('052 Patent, Jan. 29, 2001 Response to Office Action), pp. 3-4, (emphasis added)).  Sprint thus explained to the PTO that the claims were patentable because the prior art system processed broadband signaling, *i.e.*, not formatted for a narrowband system.

Furthermore, in overcoming an enablement rejection, Sprint relied upon the existence of SS7 signaling, *i.e.*, signaling formatted for a narrowband system, as the basis for patentability:

> Claim 1 requires receiving a signaling message for the user communication from a narrowband communication system into a processing system. This functionality was readily available at the time of the invention as it existed in switches, signal transfer points, and service control points.  In SS7 jargon, the functionality is called a signaling point. It appears clear to the Applicant that those skilled in the art could make and use a processing system with this limitation without undo experimentation.

(*See* Doc. No. 354, Ex. F ('561 Patent, Aug. 7, 2002 Response to Office Action), p. 2; *see also*, Exs. G and H ('282 Patent, April 10, 2000 and Oct. 26, 2000 Office Action Responses), pp. 4 and 16, respectively).  Thus, Sprint's proposed construction would contradict the basis for overcoming the enablement rejection during prosecution.

Sprint made these arguments in order to obtain allowance of claim 1 of the '561 Patent. In other words, Sprint disclaimed any difference between "formatted for a narrowband system" and "from a narrowband system" to secure the granting of claim 1 over the prior art.  Based on these prosecution history disclaimers, Sprint is barred from arguing that the terms should be construed to encompass the disclaimed material. *Chimie*, 402 F.3d at 1384.  Therefore, the

intrinsic evidence supports Vonage's proposed construction: "a signaling message (as defined above) received in the format sent from a narrowband communication system."

P.   **"Processing . . . to select"**

Sprint contends that the subject team should be construed to mean "processing [. . .] to participate in selecting." Sprint claims that the construction of this term was resolved by the Court in its summary judgment Memorandum and Order. However, the Court did not construe this term. Rather, the Court explained that it was specifically not construing this term. (*See* Doc. No. 264, at 47). As explained in Vonage's Trial Brief, the prosecution history makes clear, through disclaimer and substance, that "processing the . . . to select" should be construed to mean "processing the . . . and making a selection from more than one of the choices."

Q.   **"Generating a control message indicating the network code" ('561 Patent, claim 1)**

Separately in this Response, Vonage discusses the proper construction of the terms "generating" and "network code." (*See* §§ B and N). Based on the constructions of these two terms, this phrase should be construed to mean "creating, for the first time in connection with setting up a call, a new control message specifying the logical address of the egress network element."

R.   **"First message" ('932 Patent, claim 18)**

Sprint's proposed construction, "signaling message that is distinct from the claimed second message," is not supported by the intrinsic record. Sprint's primary argument for not adopting Vonage's construction is Sprint's misinterpretation of Vonage's construction to include a temporal limitation. Vonage's construction is based on the intrinsic evidence. The preamble of Claim 18 of the '932 Patent provides that there is only one message associated with a telephone call and that message is a narrowband signaling message. The preamble reads "A

method for handling a call having a first message and the communications." Accordingly, the "first message" of a call must be limited to "a narrowband signaling message" associated with the call and cannot be expanded to encompass what Vonage does years after the patent was filed. Furthermore, the '932 Patent specification and prosecution history supports finding that the first signal of a call is a narrowband signaling message as described in detail in Vonage's Trial Brief. Accordingly, Vonage's construction, "a narrowband signaling message," should be adopted.

      **S.**      **"Using the network code to route the user communication through the packet communication system to the network element"**

Based on the constructions of the term network code individually set forth in Section N of this Response, "using the network code to route the user communication through the packet communication system to the network element" should be construed to mean: "using the logical address identifying the network element to deliver the user communication through the packet communication system to the egress network element."

## CONCLUSION

For the foregoing reasons, Vonage respectfully requests that the Court adopt Vonage's claim constructions for the remaining disputed terms.

                                        Respectfully submitted,

                                        BARBER EMERSON, L.C.

September 8, 2007                  By:    s/ Terrence J. Campbell
                                      Terrence J. Campbell – 18377
                                        tcampbell@barberemerson.com
                                        Catherine C. Theisen – 22360
                                        ctheisen@barberemerson.com
                                        1211 Massachusetts Street
                                        P.O. Box 667
                                        Lawrence, KS 66044
                                        (785) 843-6600
                                        (785) 843-8405 Facsimile

s/ Donald R. McPhail
Patrick D. McPherson
Barry Golob
Donald R. McPhail
Duane Morris LLP
1667 K Street N.W.
Washington, DC 20006-1608
202-776-7800
pdmcpherson@duanemorris.com
bgolob@duanemorris.com
drmcphail@duanemorris.com

L. Norwood Jameson
1180 West Peachtree Street
Atlanta, GA 30309
404-253-6900

*Attorneys for Defendants/Counterclaim Plaintiffs Vonage America, Inc. and Vonage Holdings Corp.*

## CERTIFICATE OF SERVICE

I hereby certify on September 8, 2007, that a copy of Defendants Vonage Holdings Corp. and Vonage America, Inc.'s Response in Opposition to Sprint's Claim Construction Brief was filed and served via the Court's electronic filing system on:

> B. Trent Webb
> Adam P. Seitz
> Erick A. Buresh
> Shook, Hardy & Bacon LLP
> 2555 Grand Boulevard
> Kansas City, MO 64108-2613
> bwebb@shb.com
> aseitz@shb.com
> eburesh@shb.com

> /s/ Terrence J. Campbell
> Attorney for Defendants