THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                    )
              Plaintiff,             )
                                    )
     v.                              )
                                    )
VONAGE HOLDINGS CORP.,               )   Case No. 05-2433-JWL
VONAGE AMERICA, INC.,                )
                                    )
              Defendants.            )
                                    )
                                    )
                                    )
                                    )

## SPRINT'S RESPONSE IN OPPOSITION TO VONAGE'S TRIAL BRIEF REGARDING CLAIM CONSTRUCTION

Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits its response in opposition to Vonage's Trial Brief on Claim Construction. Generally speaking, Vonage's proposed claim constructions seek to unduly limit unambiguous claim language either by improperly importing limitations from the patents' specifications or by creating limitations entirely out of whole cloth. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("case law is well established that, while a specification should be used to interpret the meaning of a claim, it should not be used to import unnecessary limitations into the claims."); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *see also Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995) ("The written description portion itself does not delimit the right to exclude. That is the function and purpose of the claims."). Both of Vonage's approaches are wrong. Vonage's efforts to avoid infringement should not be confused with proper claim construction. Moreover, Vonage repeatedly attempts to apply the doctrine of prosecution history disclaimer by arguing that Sprint

254398v1

disavowed claim scope during prosecution. However, Vonage's arguments fail to reveal <u>any</u> disclaimer of claim scope, much less the "clear and unmistakable" disavowal required by Federal Circuit precedent. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) ("for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."). In contrast, Sprint's claim constructions are derived from a proper *Phillips* analysis, which focuses on the plain and ordinary meaning of the claim language viewed in light of the claim context and the patent's specification. *See Phillips*, 415 F.3d at 1323-25.

### A. "Routing" Means "Directing Through a Communication System"

Claim 19 of the '294 patent includes the claim term "routing." The proper construction of this claim term is "**directing** through a communication system." Likewise, the claim term "route" recited by claim 1 of the '561 patent should be construed as "**direct** through a communication system." Vonage incorrectly suggests that "route" and "routing" mean "**delivering** to the **destination** through a communication system." Doc. No. 354 at 14.

Vonage erroneously relies on the specification of the '294 patent in an attempt to support its proposed construction. *Id*. The citations relied upon by Vonage, however, serve only to confirm the accuracy of Sprint's proposed construction. Vonage states that a routing device, known as the STP 260, "route[s] signaling messages addressed to" a call control manager, known as the CCM 250. *Id*. (citing the '294 patent, 6:23-26). Contrary to Vonage's proposed construction, the STP 260 does not **deliver** the routed messages to the CCM 250. This fact is illustrated by Figure 2 of the '294 patent. Figure 2 demonstrates that the STP 260 and the CCM 250 are physically separated and connected by a signaling link 291. Because of this separation, the STP 260 cannot actually **deliver** the signaling messages but must **direct** such messages over the link 291. Furthermore, Vonage proposed construction entirely ignores the context in which

- 2 -

254398v1

the terms in question appear.  For example, in claim 19 of the '294 patent, all that is required by the claim is that an "identifier for routing the user information" be "selected by processing a signaling message."  Later in the claim, the context provides that the "second signal component" (or header) include the identifier.  Claim 19 does not in any way even contemplate a particular **destination** for the packet described in the second limitation of claim 19.  Vonage has failed to identify any reason to depart from the plain and ordinary meaning of "route" or "routing."  The claim terms "route and "routing" should be construed to mean "direct/directing through a communication system."

### B.  "Generating a Message" Means "Assembling Information into a Message for the First Time in Connection With Setting Up a Call"

Claim 1 of the '429 patent, claim 38 of the '561 patent, claim 1 of the '561 patent, claim 18 of the '932 patent and claim 1 of the '064 patent each recite the claim phrase "**generate** a message" or "**generating** a message."  The claimed message generation means to **assemble** or **assembling** "information into a message for the first time in connection with setting up a call."  Vonage incorrectly contends that the claimed action of "**generating**" means "**creating** for the first time."  *See* Doc. No. 354 at 13.

Vonage notes that the patents' specifications disclose the creation of "new signaling." *Id.*  However, Vonage's proposed construction fails to provide any clarification as to what it means to "create" *new signaling*.  Indeed, it is inherently unclear whether the act of "creating" is directed to creating the message and all its content, or just forming a message that includes potentially pre-existing content.  Accordingly, Vonage's proposed construction serves only to introduce ambiguity.

To cure such ambiguity, Sprint's proposed construction focuses on the express purpose of the new *signaling messages*, i.e., identification of a particular connection or element.

As noted by Vonage, the specification discloses the "generating [of] new signaling *to identify the particular connection* . . . ." *Id*. (citing the '294 patent, 2:17- 22) (emphasis added).  As such, the generating of a *new signaling* message must necessarily include the "assembling" of information identifying the connection or element.  The '561 patent's specification further supports Sprint's proposed construction in describing a message that is assembled based on information received by the processing system.  '561 patent at 15:30-49 ("the CCP may also accept status information from the broadband switches indicating which connections are idle . . the CCP processes the information it has received . . . [and] a signal indicating these selections is generated and sent to the appropriate broadband switches.").  Accordingly, Sprint's proposed construction, "assembling information into a message for the first time in connection with setting up a call," is fully supported by the specification and, unlike Vonage's proposed construction, serves to clarify the nature of the claimed message generation.

   **C.** **"In-Band Telecommunications Signaling" Means "Signaling that is Sent on the Same Channel as that Used for Voice or Data"**

Claim 38 of the '572 patent recites "in-band telecommunications signaling."  The term "in-band telecommunications signaling" is a term of art, meaning the "signaling that is sent on the same **channel** as that used for voice or data."  Vonage incorrectly suggests that "in-band telecommunications signaling" means "signaling transmitted on the actual communication **path**."  *See* Doc. No. 354 at 10.  As indicated by the bolded language, the crux of the dispute surrounding this claim term is whether in-band signaling must be sent on the same **channel** as the voice/data or whether out-of-channel signaling on the communication **path** also qualifies as "in-band" signaling.

Contrary to Vonage's suggestion, the specification of the '572 patent does not "expressly define" in-band signaling.  *See* '572 patent at 7:50-54.  Because the intrinsic evidence

- 4 -

does not address the **path** verses **channel** distinction raised by the parties' proposed constructions, it is instructive to consider the usage of this term by those in the art. *Phillips*, 415 F.3d at 1314. On this issue, Vonage's own expert, Mr. Frank Koperda, confirms that "'in-band' signaling is the exchange of signaling information within the same **channel** that the telephone call itself is using." *See* Doc. No. 352, Ex. E, Expert Invalidity Report of Mr. Frank Koperda Report at p. 10 (emphasis added). Given this usage by Vonage's own expert, it is apparent that the claim phrase "in-band telecommunications signaling" should be construed in accordance with its customary usage in the art to mean "signaling that is sent on the same channel as that used for voice or data."

### D. "Out-Of-Band Telecommunications Signaling" Means "Signaling that is Sent on a Distinct Channel from that Used for Voice or Data"

Claim 38 of the '572 patent recites "out-of-band telecommunications signaling." The term "out-of-band telecommunications signaling" is also a term of art. As used in the field, the term "out-of-band telecommunications signaling" means "signaling that is sent on a distinct **channel** from that used for voice or data." For this claim term, Vonage advances the proposed construction "signaling message that is not transmitted on the actual communication **path**." *See* Doc. No. 354 at 10. Once again, the intrinsic evidence is not instructive in resolving the **path** verses **channel** distinction raised by the parties' proposed constructions.

Nevertheless, as was the case with "in-band telecommunications signaling," Vonage's technical expert, Mr. Koperda, supports Sprint's proposed construction. *See* Doc. No. 352, Ex. E at 10 ("'Out-of-band' signaling is telecommunication signaling that is done on a **channel** that is dedicated for the purpose and separate from the channels used for the telephone call."). Vonage's other technical expert, Mr. Joel Halpern, also confirms the accuracy of Sprint's construction by testifying that out-of-band signaling "has to be in a separate band, a separate

- 5 -

254398v1

recognizable **channel**." *See* Doc. No. 352, Ex. F, Excerpt from the Deposition Transcript of Joel Halpern Deposition, p. 83-84 (emphasis added). As confirmed by Vonage's own technical experts, the term "out-of-band telecommunications signaling" means "signaling that is sent on a distinct channel from that used for voice or data."

### E. The Phrase "Communication System" Means a "Plurality of Network Elements and Connections Forming a Network to Transfer Information"

The phrase "communication system" is found in claim 1 of the '561 patent and in claim 18 of the '932 patent. The claimed "communication system" is properly construed as a "plurality of network elements and connections forming a network to transfer information." For this claim element, Vonage advances the tortured construction "at least one network element having at least one connection used to communicate with at least one endpoint." However, Vonage's Trial Brief fails to address this disputed claim term. Nevertheless, for all the reasons set forth in Sprint's Claim Construction Brief, the Court should adopt Sprint's construction for the claimed "communication system," "plurality of network elements and connections forming a network to transfer information." *See* Doc. No. 352 at 11-12.

### F. "Identifier" Means "Data for Routing User Information in a Packet Network"

Claim 1 of the '429 patent and claim 19 of the '294 patent each recite an "identifier." Relying on the intrinsic evidence, the Court already has construed the claim term "identifier" to mean "data for routing user information in a packet network." *See* Doc. No. 264 at 27-31. Unpleased with this result, Vonage states, "[T]he Court has mistakenly relied on claim differentiation, without reference to Vonage's ability to overcome the presumption attached to this doctrine." Doc. No. 354 at 15. In making this argument, Vonage relies on the Court's alleged failure to consider whether the '301 specification is limited to ATM. *Id.*

Contrary to Vonage's suggestion, the Court fully considered the specification of the '301 Family in construing the claimed "identifier." Doc. No. 264 at 29 ("Vonage's argument that the court should construe the claim term "identifier" to mean an ATM VPI/VCI pair is based on language contained in the specification."). The Court explained, "With respect to the claim term 'identifier,' the court concludes that a person of skill in the art would understand the specification's reference to VPI/VCI combinations to be exemplary in nature, rather than defining the outer limits of the claim term." Doc. No. 264 at 30. Accordingly, the Court has already rejected Vonage's argument that the '301 Family specification is limited to ATM and properly construed the claim term "identifier" to mean "data for routing user information in a packet network."

### G. The Phrase "Asynchronous Communication" Does Not Require Construction

Claim 1 of the '429 patent, claim 1 of the '064 patent and claim 18 of the '932 patent require an "asynchronous communication." Rejecting Vonage's proposed construction, the Court found that the claim phrase "asynchronous communication" did not require construction. *See* Doc. No. 264 at 39-40. Vonage now challenges this determination, arguing the Court mistakenly failed to consider the ATM teachings of the '301 Family specification. Doc. No. 354 at 15. As discussed, *supra* at F, the Court properly considered Vonage's specification arguments and correctly found that the term "asynchronous communication" should not be limited to ATM communications. *See* Doc. No. 264 at 39-40.

### H. The Phrase "Processing System" Does Not Require Construction

The claim phrase "processing system" is found in claims 1 and 5 of the '429 patent, claims 1 and 7 of the '064 patent, claims 1 and 23 of the '561 patent and claim 18 of the '932 patent. Vonage contends the claim phrase "processing system" means "any processing

system platform that can receive and process signaling to select virtual connections, and then generate and transmit signaling to identify the selections." Doc. No. 354 at 8-9. Vonage's proposed construction unquestionably interjects unnecessary limitations and ignores the unambiguous claim language.

Vonage once again is attempting to limit the asserted claims to an ATM implementation. Vonage unabashedly seeks to limit the "processing system" to a "platform that can receive and process signaling to select **virtual connections**." While Sprint does not agree with such a characterization, Vonage undoubtedly will contend that "virtual connections" is a concept limited to an ATM system. The most critical flaw in Vonage's proposed construction is that it is nonsensical when placed into the claims in question. For example, in claim 1 of the '064 patent, the "processing system" expressly processes set-up signaling to select a "DS0 connection." Vonage cannot require the "processing system" to select a "virtual connection" when the claim specifically requires the selection of a "DS0 connection." In claim 1 of the '429 patent, the processing system must process information to "select an identifier." Again, Vonage cannot additionally require the selection of a "virtual connection" when the claim already calls for the selection of "an identifier." Similarly, claim 1 of the '561 requires that the processing system process a signaling message to select a "network code." A network code is not a virtual connection. Without further belaboring of the point, Vonage's proposed construction is entirely nonsensical when considered in the context of the claims. Vonage' proposal ignores the express requirements of the claims and instead interjects the concept of a "virtual connection" that is completely unconnected to the claims in question.

Vonage advances two erroneous arguments in support of its proposed construction. First, Vonage argues that the specification of the '294 patent expressly defines the

phrase "processing system." *Id*. However, the "definition" relied upon by Vonage is directed to a particular "<u>signaling</u> processing system" disclosed in the specification and referred to as the "Signaling processing system 160." *See id*. It is unreasonable to suggest that the specification's description of the "Signaling processing system 160" provides an express definition of the claim term "processing system." *See Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("particular embodiments appearing in a specification will not [be] read into the claims when the claim language is broader than such embodiments").

Second, Vonage argues that Sprint disclaimed claim scope during prosecution to overcome prior art. Doc. No. 354 at 9. However, Vonage's cursory argument fails to identify any specific statements made during prosecution that would serve to limit the scope of the claimed "processing system." *Id*. Indeed, a review of the document cited by Vonage reveals no "clear and unmistakable" disavowal of any claim scope whatsoever. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) ("for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."). Accordingly, Vonage's prosecution history argument fails, and the claim phrase "processing system" does not require construction.

## I. "Telecommunication Switches" Means "Devices that Set up Calls and Relay Voice and/or Data Information from one Connection to Another"

Claim 5 of the '429 patent and claim 7 of the '064 patent each recite "telecommunication switches." The claimed "telecommunication switches" should be construed to mean "devices that set up calls and relay voice and/or data information from one connection to another." Vonage's Trial Brief fails to address this disputed claim term. Nevertheless, for all the reasons set forth in Sprint's Claim Construction Brief, the Court should adopt Sprint's construction, which defines the claimed "telecommunication switches" as "devices that set up

calls and relay voice and/or data information from one connection to another." *See* Doc. No. 352 at 14-15.

### J. "Setup Signaling" Means "Information or Commands Used to Setup Calls"

Claim 1 of the '064 patent requires "setup signaling." Ignoring both the plain and ordinary claim language and the express disclosure of the specification, Vonage suggests that "set-up signaling" be construed to mean "a narrowband signaling message." Doc. No. 354 at 15-16. Vonage's proposal clearly interjects a "narrowband" limitation that is not otherwise present in claim 1 of the '064 patent. Vonage simply substitutes the word "narrowband" for "set-up" without justification for such a substitution. Though Vonage tacitly admits that "set-up signaling" is a term of art, Vonage argues that the '301 Family specification has redefined this term to mean only an "IAM" narrowband signaling message. *Id*. Vonage's argument fails for several reasons. First and foremost, the IAM disclosure relied upon by Vonage <u>does not even **mention**</u> the phrase "set-up signaling." *Id.* The failure to mention the claim language-at-issue exposes Vonage's argument for what it is—an impermissible attempt to incorporate features from the specification into the claims. *See Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898. 904 (Fed. Cir. 2004). Second, claim 1 of the '064 patent does not reference narrowband signaling at all, and the '064 patent's specification does not contain any language limiting "set-up signaling" to narrowband signaling. Accordingly, Vonage's attempt to unduly limit the claimed "set-up signaling" must fail, and the claim phrase "setup signaling" should be construed in accordance with it customary meaning as "information or commands used to setup calls."

### K. The Claim Terms "Coupled" and "Coupling" Do Not Require Construction

Claim 38 of the '572 patent includes the claim terms "coupled" and "coupling" These claim terms should be afforded their plain and ordinary meaning. Vonage's proposed construction, "physically attached or logically mapped," unnecessarily seeks to alter these claims

- 10 -

254398v1

terms, which are clear on their face. Vonage's Trial Brief fails to address these disputed claim terms. For all the reasons set forth in Sprint's Claim Construction Brief, the Court should find that the claim terms "coupled" and "coupling" do not require construction. Doc. No. 352 at 15-16.

    **L.**    **"Signaling Message" Means "Information or Commands Used to Set Up or Tear Down a Call"**

Claim 38 of the '572 patent, claim 19 of the '294 patent and claim 1 of the '561 patent recite a "signaling message." The claimed "signaling message" should be construed to mean "information or commands used to setup or tear down a call." Vonage's proposed construction, a "message used to transfer information among points and network elements to establish communication paths," deviates from the plain and ordinary meaning of the claim language by limiting the claimed signaling messages to messages directed to the establishment of communication paths, and adds unnecessary complexity to an otherwise simple concept . Doc. No. 354 at 6-7.

In its Brief, Vonage fails to provide any arguments or citations in support of its own claim construction. *See id*. Rather, Vonage's comments are limited to arguments that, due to a claim amendment made during prosecution, Sprint is foreclosed from taking the position that the term "signaling" is broader in scope than the term "information." Sprint, however, has never argued that the term "signaling" is broader in scope than the term "information."

Sprint's proposed construction for "signaling" is "information or commands <u>used to setup or tear down a call</u>." Vonage's arguments conveniently ignore the second half of Sprint's construction, which requires the information be "used to setup or tear down a call." Considering Sprint's entire construction, it is readily apparent that Sprint is not attempting to expand the scope of the claimed "signaling" to mean "information." Accordingly, Vonage's

prosecution history estoppel arguments are inaccurate and misplaced. Moreover, Vonage's fails to identify any support for its inherently confusing claim construction. As Vonage cannot support its own claim construction or provide any basis for limiting the claimed "signaling message" beyond its plain and ordinary meaning, the Court should adopt Sprint's proposed construction, "information or commands used to setup or tear down a call."

**M.    "A Network Code that Identifies a Network Element to Provide Egress from the Packet Communication System" Means "Information that Identifies a Network Element that Provides an Exit from a Packet Communication System"**

Claim 1 of the '561 patent claims "a network code that identifies a network element to provide egress from the packet communication system." For this element, Vonage advances a proposed claim construction of "<u>a logical address</u> identifying a network element that provides an exit from a packet communication system." Doc. No. 354 at 16. Sprint's proposed construction is similar and reads "<u>information</u> that identifies a network element that provides an exit from a packet communication system."[1] As indicated by the underlined text, the primary dispute between the parties for this claim element is the meaning of the phrase "network code." Sprint's proposed construction adopts the plain and ordinary meaning of the claim language. In contrast, Vonage's proposed construction, "logical address," seeks to impermissibly limit the claim term based on a disclosure in the specification that is expressly referred to as "one embodiment" of the invention. *See* '561 patent, 12:47-49 (stating that the alleged definition of "network codes" relied upon by Vonage relates to only "one embodiment" of the invention).[2]

---

[1]    As set forth fully in Sprint's Trial Brief on Claim Construction, Sprint also requests the Court's construction specify that the claim phrase "to provide egress from the packet communication system" modifies the "network element" and not the "network code." *See* Doc. No. 352 at 17.

[2]    Vonage alludes to prosecution history arguments that purportedly limit the scope of this element. *See* Doc. No. 354 at 17. In addition to being unfounded, Vonage's prosecution

- 12 -

254398v1

N.  **The Claim Phrase "A Signaling Message from a Narrowband Communication System" Does Not Require Construction in Light of Constructions Already Discussed Above.**

Claim 1 of the '561 patent recites "a signaling message from a narrowband communication system." In light of the constructions already discussed, "a signaling message from a narrowband communication system" does not require further construction and should be afforded its plain and ordinary meaning.

For this claim phrase, Vonage incorrectly suggests that the claimed "signaling message <u>from</u> a narrowband communication system" be construed as a "signaling message <u>received in the format sent</u> from a narrowband communication system." Doc. No. 354 at 11 (emphasis added). As indicated by the underlined language, Vonage's proposed construction attempts to rewrite the claim by changing the word "from" to "received in the format sent." *See id.* at 11-12. Once again, Vonage attempts to inject requirements that simply are not present in the claim. In taking this overreaching position, Vonage attempts to show that Sprint disclaimed claim scope during prosecution by purportedly arguing that "signaling message formatted for a narrowband system" and "signaling message from a narrowband system" were the same. *Id.* Vonage, however, <u>fails to identify any such arguments</u> in the prosecution history. *See id.* Indeed, a review of the file history quotations provided by Vonage reveals only discussion of the claim terms and the prior art. *See id.* It is unreasonable to suggest that these comments represent any "clear and unmistakable" disavowal of claim scope. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) ("for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."). Vonage's attempt limit the scope of this claim phrase based on the doctrine

---

history arguments do not implicate the proper construction of the phrase "network code." *Id.*

of prosecution disclaimer is untenable, and the claim language should be afforded its plain and ordinary meaning.

### O. "Processing . . . To Select" Means to "Processing . . . to Participate in Selecting"

Claim 1 of the '561 patent, claim 1 of the '429 patent, claim 1 of the '064 patent, claim 38 of the '572 patent, claim 18 of the '932 patent require "processing . . . to select []" or "process . . . to select []". As dictated by the claim language, these phrases should be construed to mean "processing . . . to participate in selecting []" or "process . . . to participate in selecting []." Vonage proposes that the claim phrases be construed to mean "processing . . . **and** making a selection from one or more of the choices." Vonage's proposed construction subtly introduces the "and" requirement. Doc. No. 354 at 7-8. However, none of the claims require that the processing system process signaling **and** select. Instead, each claim generally requires processing signaling to select. The processing and selecting are not independent concepts as Vonage suggests – they are interdependent concepts. Sprint's proposed construction recognizes this proper relationship by generally requiring that the processing system participate in the required selection by processing the identified signaling information.

Vonage argues that the prosecution history of the '605 Patent Family supports its attempt to rewrite the claim language to include the independent act of "making a selection." *Id*. Vonage states, "Sprint distinguished the claim language "processing . . . to select" from the D'Amato prior art by pointing out that D'Amato did not actually make the selection." *Id*. at 7. Vonage has grossly mischaracterized the file history statements. Nowhere in the file history did Sprint distinguish between the action of "processing . . . to select" and the action of "selecting."

Vonage's prosecution arguments are directed to comments made by Sprint regarding the prior art reference D'Amato. *Id*. During prosecution, an issue arose concerning

whether D'Amato's "signaling director 151" performed the action of processing to select a connection or whether such processing to select was performed by a "switch 130." *Id*. at 8. Answering this question, Sprint explained that the "switch 130 must **process** the [message] to **select** a connection." *Id.* (quoting prosecution history) (emphasis added). Sprint further explained that the signaling director 151 did not process any messages or otherwise participate in the selection of a connection. *Id*. Rather, the signaling director 151 merely told the switch 130 "either to (a) proceed, (b) wait, or deny." *Id.* (quoting prosecution history). Importantly, Sprint did not argue that the signaling director 151 performed the action of "processing . . . to select," and it did not distinguish between the action of "processing . . . to select" and the action of "selecting," as Vonage contends. Accordingly, Vonage's attempt to mischaracterize Sprint's prosecution statements as a disavowal of claim scope should be rejected.

Indeed, in order the apply the doctrine of prosecution disclaimer, the prosecution disclaimer must be "clear and unmistakable." *Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327, 1332 (Fed. Cir. 2004); *Cordis Corp. v. Medronic Ave, Inc*., 339 F.3d 1352, 1359 (Fed. Cir. 2003) (finding no disclaimer because "the statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable departure from the ordinary meaning of the term [at issue]"). In light of this authority, it is unreasonable to suggest that the prosecution history statements cited by Vonage serve to limit the claims in any manner. Accordingly, as already suggested by the Court in denying Vonage's Motion for Summary Judgment, the claimed "processing . . . to select []" should be construed in accordance with its plain and ordinary meaning to mean "processing . . . to participate in selecting []." *See* Doc. No. 264 at 48.

### P. The Claim Phrase "Generating a Control Message Indicating the Network Code" Does Not Require Construction

254398v1

Claim 1 of the '561 patent requires "generating a control message indicating the network code." The claim phrase "generating a control message indicating the network code" does not require construction and should be afforded its plain and ordinary meaning. For this claim language, Vonage proposes that the claim term "generating" means "creating for the first time a new control message specifying the logical address of the egress network element." Doc. No. 354 at 14. As discussed *supra* at B, Vonage's proposed claim construction of "generating" is ambiguous and unsupported by the evidence. Sprint already has proposed constructions of "generating" and "network code." *See, supra*, at B and M. The remainder of this phrase requires no further construction.

### Q. The Claim Phrase "First Message" Means a "Signaling Message that is Distinct from the Claimed Second Message"

Claim 18 of the '932 patent requires a "first message" and a "second message." The terms "first" and 'second" are used in the claim for identification to distinguish between the two messages. Accordingly, the term "first message" should be construed to mean "a signaling message that is distinct from the claimed second message."

Vonage, however, attempts to construe the "first message" as "a narrowband signaling message." Doc. No. 354 at 12-13. Vonage seems to find some basis to artificially inject a "narrowband signaling" requirement into Sprint's claims regardless of the terms in question. Whether a "first message" or "set-up signaling," Vonage contends its all "narrowband." Vonage's effort to impact the infringement analysis through claim construction is entirely transparent when viewed in light of Vonage's consistent effort repeatedly to inject the same unwarranted limitations. Here, Vonage contends that the "first message" must be the very first message of the telephone call, which typically is a narrowband signaling message from the phone. *See id.* However, neither the claim language nor the specification supports Vonage's

254398v1

reading of the claim phrase "first message." Notably, the portions of the specification cited by Vonage do not include the phrase "first message," and Vonage fails to identify any claim language supporting its attempt to limit the "first message" to a narrowband signaling message. *See id.*

Vonage also advances prosecution history disclaimer arguments in support of its proposed claim construction. *Id.* at 13. These prosecution history arguments are without merit. Vonage cites an Office Action Response submitted in connection with the '605 application. *Id.* The citations relied upon by Vonage fail to mention a "first message" but discuss a claimed "telecommunications signaling message," as recited by claim 121 of the '605 application. *See id.*, Ex. B at 2 (providing the text of claim 121). Obviously, the phrase "telecommunications signaling message" is different from the instant claim phrase, "first message." Vonage argument fails as a matter of law because Vonage cannot apply purported disclaimers from <u>different</u> applications against <u>different</u> claim terms. The Federal Circuit consistently has held that, "when the purported disclaimers are directed to specific claim terms that have been omitted or materially altered in subsequent applications (rather than to the invention itself), those <u>disclaimers do not apply</u>." *Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326 (Fed. Cir. 2007) (emphasis added); *see Ventana Med. Sys. v. Biogenex Labs.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) ("[T]he doctrine of <u>prosecution disclaimer generally does not apply</u> when the claim term in the descendant patent uses <u>different language</u>."); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1078 (Fed. Cir. 2005) ("[T]he prosecution of one claim term in a parent application will <u>generally not limit different claim language</u> in a continuation application."). Accordingly, under well-established Federal Circuit precedent, the purported disclaimer in the '605 application's file history directed to the "telecommunications signaling message" cannot, as

a matter of law, serve to limit the scope of the "first message" recited claim 18 of the '932 patent. As such, Vonage's attempt to limit the construction of this term is improper and unsupported by the evidence.[3]

### R. The Claim Phrase "Using the Network Code to Route the User Communication Through the Packet Communication System to the Network Element" Does Not Require Construction

Claim 1 of the '561 patent requires "using the network code to route the user communication through the packet communication system to the network element." The proper constructions for "network code" and "route" have been previously discussed. *See, supra*, at M and A. No further explanation is necessary. Nevertheless, Vonage advances the construction "using the logical address identifying the network element to deliver the user communication through the packet communication system to the egress network element." *See* Doc. No. 354 at 14. Vonage's construction impermissibly rewrites claim language that is otherwise clear on its face with an unduly limited and confusing result. The purpose of claim construction is to simplify not to make more confusing. With definitions of "network code" and "route" in place, this limitation is entirely clear and should so remain.

## II. CONCLUSION

For the foregoing reasons, Sprint respectfully requests that the disputed terms/phrases of the claims of the patents-in-suit be construed as set forth above.

---

[3] Though unnecessary to address on the merits, Sprint does not concede the existence of any prosecution disclaimer in connection with the "telecommunications signaling message" recited in the '605 application. Indeed, Vonage has failed to identify any "clear and unmistakable" disavowal of claim scope in connection with the prosecution of the '605 application.

254398v1

                    Respectfully submitted,

Dated: September 8, 2007              /s/ Adam P. Seitz
                                              B. Trent Webb, KS Bar No. 15965
                                              Eric A. Buresh, KS Bar No. 19895
                                              Adam P. Seitz, KS Bar No. 21059
                                              SHOOK, HARDY & BACON L.L.P.
                                              2555 Grand Boulevard
                                              Kansas City, Missouri 64108-2613
                                              (816) 474-6550 Telephone
                                              (816) 421-5547 Facsimile

                                              Attorneys for Plaintiff
                                              SPRINT COMMUNICATIONS COMPANY L.P.

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2007, a true and accurate copy of the above and foregoing **SPRINT'S RESPONSE IN OPPOSITION TO VONAGE'S TRIAL BRIEF REGARDING CLAIM CONSTRUCTION** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Patrick D. McPherson
Patrick C. Muldoon
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608
Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.

  /s/ _____Adam P. Seitz_____
Attorneys for Sprint Communications Company L.P.