## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                          )
               Plaintiff,          )
                                            )
               v.                    )
                                            )
VONAGE HOLDINGS CORP.,        )    Case No. 05-2433-JWL
VONAGE AMERICA, INC.,          )
                                            )
            Defendants.      )
                                            )
                                            )
                                            )

## SPRINT'S RESPONSE IN OPPOSITION TO VONAGE'S TRIAL BRIEF REGARDING THE APPLICATION OF THE DOCTRINE OF EQUIVALENTS

Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits its response to Vonage's allegations that Sprint is barred from asserting infringement under the doctrine of equivalents. For the reasons set forth below, Vonage's allegations are legally unsound and unsupported by the factual record. Accordingly, Vonage's arguments regarding the doctrine of equivalents should be rejected.

### I.    VONAGE'S PROSECUTION HISTORY ARGUMENTS REGARDING THE '301 FAMILY PATENTS FAIL AS A MATTER OF LAW

Vonage attempts to limit the application of the doctrine of equivalents to the '301 Family Patents based on the prosecution history of the '605 Family Patents. *See* Doc. No. 354 at 17-21. Vonage's arguments fail for at least three separate reasons. First, Vonage incorrectly assumes that the '301 Family Patents claim priority to the '605 Family Patents. Though the '301 Family Patents did, at one time, claim priority to the '605 Family Patents, this claim of priority was made in error, and the Patent and Trademark Office ("PTO") issued Certificates of

Correction that conclusively establish that <u>the '301 Family Patents are not related to the '605 Family Patents</u>.  Second, Vonage's prosecution history arguments fail because the purported prosecution disclaimers cited by Vonage relate solely to claim limitations that are <u>not found</u> in the asserted claims of the '301 Family Patents.  The Federal Circuit has expressly rejected attempts, such as Vonage's, to apply the purported prosecution disclaimers against different claim terms that reside in different patents.  Third, Vonage fails to identify any actions or statements in the relevant file histories demonstrating that Sprint disclaimed claim scope during prosecution of the Asserted Patents.  Without any disclaimer of claim scope, Vonage's attempt to apply the doctrine of prosecution history is futile.

### A.    The '301 Family Patents Are Not Related to the '605 Family Patents

Each of Vonage's prosecution history arguments against the '301 Family Patents are explicitly predicated on the notion that the '301 Family Patents are related to the '605 Family Patents.  *See* Doc. No. 354 at 18-20.  Because these patent families are not related, the prosecution history of the '605 Family Patents is irrelevant to the '301 Family Patents.

By way of context, the application that matured into the '301 Patent mistakenly included a cross-reference to the '605 Application.  *See* Ex. A, Excerpt from '301 Patent As-Filed Specification.  This mistake was recognized during prosecution of the application, and the cross-reference was deleted in response to an Office Action dated April 16, 1997.  *See* Ex. B, Excerpt from Patentee's April 16, 1997 Amendment.  Despite this correction, the language "Continuation-in-part of application No. 08/238,605, May 5, 1994, abandoned" erroneously appeared on the face of the issued '301 Patent.  *See* Ex. C, Title Page of the '301 Patent.  Recognizing this mistake, the PTO issued a Certificate of Correction indicating that the '301 Patent's cross-reference to the '605 Application was a typographical error that has been deleted.

*See* Ex. D, '301 Patent Certificate of Correction (removing all references to the '605 Application).

A Certificate of Correction may be used by a patentee to correct "a mistake of a clerical or typographical nature, or of minor character" so long as the correction "does not involve such changes in the patent as would constitute new matter or would require re-examination." *Cent. Admixture Pharm. Serv., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007); *see* 35 U.S.C. § 255. The issued patent, combined with the Certificate of Correction, has the same effect and operation as if the patent had been originally issued in the corrected form. *Id*.; *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1356 (Fed. Cir. 2003). Having corrected the erroneous claim of priority with a Certificate of Correction, the '301 Patent must be treated as if it was originally issued with no such reference to the '605 Application. *Id*. Thus, the '301 Patent is not a continuation-in-part of the '605 Application. Likewise, each of the '301 Family Patents asserted in this action have similar Certificates of Correction removing any claim of priority to the '605 Family Patents. *See* Ex. E, Patent Certificates of Correction for the '294 patent, the '064 patent and the '429 patent. These Certificates of Correction were attached to the Asserted Sprint Patents.

Though Vonage attempts to rely on the file history of the '605 Family Patents to limit the unrelated '301 Family Patents, the Federal Circuit has consistently held that the prosecution history of an unrelated patent cannot be used as a basis for applying prosecution history estoppel. *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1105 (Fed. Cir. 2002) (vacating the district court's order and holding that arguments made during prosecution of a commonly-owned but **unrelated patent** did not create prosecution history estoppel); *Sextant Avionique S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 836 (Fed. Cir. 1999) (Smith J., dissenting) ("We have **never**

based a finding of prosecution history estoppel on a statement made by a **different** applicant during prosecution of an **unrelated application**, nor have we ever hinted that competitors should examine the file histories of applications other than the one in suit in order to determine the scope of equivalents that may be accorded the patent"); *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 862 n.16 (Fed. Cir. 1989) (finding no estoppel between two commonly owned patents); *see Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167-68 (Fed. Cir. 2004) (holding that statements in another patent's prosecution history is irrelevant to claim construction "[a]bsent a formal relationship or incorporation during prosecution" of the patent at issue).  Applying this well settled law, statements made during prosecution of the '605 Family Patents are wholly irrelevant to the unrelated '301 Family Patents.  *Abbott Labs.*, 287 F.3d at 1105.  Accordingly, the Court should reject Vonage's mistaken attempt to limit the scope of U.S. Patent Nos. 6,665,294, 6,473,429, and 6,298,064 (the Asserted '301 Family Patents) because the prosecution history of the '605 Family Patents is irrelevant.

### B. The Purported Prosecution Disclaimers are Directed to Claim Terms that are Not Included in the Asserted Patents

Even assuming the '301 Family Patents were related to the '605 Family Patents—which they are not—Vonage's prosecution history arguments still fail because the purported prosecution disclaimers do not relate to any claims terms present in the asserted claims of the '301 Family Patents.  As the Federal Circuit has repeatedly explained, where an alleged prosecution disclaimer involves certain claim terms in a parent application, and those claim terms are not present in the claims of an asserted patent, any arguments in the parent application are inapplicable to the asserted patent.  *Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326 (Fed. Cir. 2007) (reversing the district court's interpretation and holding that "[w]hen the purported disclaimers are directed to specific claim terms that have been omitted or materially

254602v1

altered in subsequent applications (rather than to the invention itself) those disclaimers do not apply"); *see also Ventana Med. Sys. v. Biogenex Labs.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) ("[T]he doctrine of prosecution disclaimer generally does not apply when the claim term in the descendant patent uses different language"); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1078 (Fed. Cir. 2005) ("[T]he prosecution of one claim term in a parent application will generally not limit different claim language in a continuation application"); *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1305-06 (Fed. Cir. 2001) (holding that a prosecution history disclaimer argument is inapplicable to a child application where the relevant claim term was omitted).

Here, even assuming the '301 Patent was a continuation-in-part of the '605 Application, and even assuming claim scope was disclaimed during prosecution of those applications, Vonage's prosecution history disclaimer argument would be inapplicable to the Asserted '301 Family Patents because disclaimed scope would have been directed to the claim limitations "ATM interworking multiplexer," "virtual connections," and "a network element to provide egress from a packet communication system." See Doc. No. 354 at 18 and 20. <u>These claim elements are not recited in any of the asserted claims from the '301 Family Patents.</u> Thus, any purported disclaimers are irrelevant. *Ventana Med. Sys.*, 473 F.3d at 1182. As dictated by controlling Federal Circuit authority, Vonage's prosecution history estoppel arguments must fail because the alleged prosecution history disclaimer is inapplicable when, as is the case here, the disclaimer is directed to a claim limitation that is different than the limitation-at-issue.

### C.    Vonage Fails to Identify Any Prosecution History Disclaimers

In addition to the above mentioned deficiencies in Vonage's prosecution history arguments, Vonage's arguments also fail because Vonage has not identified any actions or

statements in the relevant file histories demonstrating that Sprint disclaimed claim scope during prosecution of the Asserted Patent Families.

Vonage relies on two portions of the '605 Patent Family prosecution in an attempt to show that Sprint surrendered claim scope that may not be recaptured under the doctrine of equivalents. *See* Doc. No. 354 at 18-19 and 20-21. Vonage first argues that the application that matured into the '301 Patent was filed with narrower claims to avoid a prior art rejection pending against the '605 Application. *Id.* at 18-19. Vonage's argument is misplaced because the application that matured into the '301 Patent never properly claimed priority to the '605 Application. *See* Ex. D. Indeed, Vonage has not and cannot cite any authority supporting the imposition of prosecution history estoppel based on the filing of an unrelated application.

Vonage also quotes statements made in the file history of the '605 Family Patents in an attempt to apply the doctrine prosecution history disclaimer. *See* Doc. No. 354 at 20-21. For prosecution disclaimer to attach, the Federal Circuit requires that "the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). In attempting to meet this high standard, Vonage grossly mischaracterizes the '605 Family Patents' file history.

Contrary to Vonage's allegations, the quoted language from the file history clearly does not draw a fundamental distinction between ATM connections and network elements. *See* Doc. No. 354 at 20. Rather, this language merely distinguishes the disclosure of the prior art reference LaPorta from the claim language. *See id.*[1] These statements fail to reveal

---

[1]     In the portion of the file history relied upon by Vonage, Sprint stated that the prior art reference LaPorta's ATM connections identified "an output VPI/VCI for routing ATM cells out of the ATM switch." Doc. No. 354 at 20. Because the ATM connections were used for routing cells out of the ATM switch, Sprint pointed out that the ATM connections did not identify the claimed "network element to provide egress from the packet communication system." *Id.*

<u>any</u> disclaimer of claim scope, much less the *clear and unmistakable* disavowal of claim scope necessary to apply the doctrine of prosecution disclaimer.  *See Omega Eng'g, Inc. v. Raytek Corp*., 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) ("for prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable."); *Cordis Corp. v. Medronic Ave, Inc*., 339 F.3d 1352, 1359 (Fed. Cir. 2003) (finding no disclaimer because "the statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable departure from the ordinary meaning of the term [at issue]").

## II.   SPRINT IS NOT PRECLUDED FROM ITS CLAIM OF EQUIVALENTS UNDER THE '561 PATENT

In addition to its arguments aimed at the '301 Patent Family, Vonage also alleges that Sprint is precluded from asserting infringement by equivalents for the "to select a network code that identifies a network element to provide egress for user communication from the packet communication system" limitation of the '561 patent.  Doc. No. 354 at 21-25.  Vonage argues that "based on the prosecution of the application for the '052 Patent, Sprint is barred as a matter of law from recapturing surrendered claim scope of the selecting *a network element limitation* in the '561 Patent under the doctrine equivalents to cover the selection of the network code of an RTP relay."  *Id*. at 25.  Vonage's arguments ignore controlling Supreme Court and Federal Circuit precedent, as well as its own statements regarding the equivalents-in-question.

The Federal Circuit has consistently held that courts must engage in a multi-step inquiry when applying the doctrine of prosecution history estoppel.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki, Co*., 344 F.3d 1359, 1366 (Fed. Cir. 2003) ("*Festo IX*").  The "first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office ("PTO") has narrowed the literal scope of a claim."  *Id.*  (citing *Pioneer*

*Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003).  If "the accused infringer establishes that the amendment was a narrowing one, then the second question is whether the reason for that amendment was a substantial one relating to patentability."  *Id*.  In the case that a narrowing amendment has been made for a substantial reason relating to patentability, "then the third question in a prosecution history estoppel analysis addresses the scope of the subject matter surrendered by the narrowing amendment.  *Id*. at 1367 (citing *Pioneer Magnetics*, 330 F.3d at 1357).  At that point, a rebuttable presumption arises that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki, Co*., 535 U.S. 722, 740 (2002) ("*Festo VIII*").  If the patentee successfully rebuts the presumption, then prosecution history estoppel does not apply and the question whether the accused element is in fact equivalent to the limitation at issue is reached on the merits. *Festo IX,* 344 F.3d at 1367.

The Supreme Court has identified various criterion by which a patentee may overcome the presumption that he surrendered claim scope.  *Festo VIII*, 535 U.S. at 740-41.  One of these criterion requires the patentee demonstrate that the alleged equivalent would have been "unforeseeable" at the time of the narrowing amendment.  *Id*.  This criterion presents an objective inquiry, asking whether the alleged equivalent would have been unforeseeable to one of ordinary skill in the art at the time of the amendment.  *Id*. at 738.  As the Federal Circuit has explained, "if the alleged equivalent represents later-developed technology or technology that was not known in the relevant art, then it would not have been foreseeable."  *Festo IX,* 344 F.3d at 1369.  In contrast, "if the alleged equivalent were known in the prior art in the field of the invention, it certainly should have been foreseeable at the time of the amendment."  *Id*. (citing *Pioneer Magnetics*, 330 F.3d at 1357).  By its very nature, "objective unforeseeability depends

on underlying factual issues relating to, for example, the state of the art and the understanding of a hypothetical person of ordinary skill in the art at the time of the amendment." *Id.* Therefore, the Federal Circuit has stated that in "determining whether an alleged equivalent would have been unforeseeable, a district court may hear expert testimony and consider extrinsic evidence relating to the relevant factual inquiries." *Id.*

In this case, the alleged equivalent involves Vonage's use of an RTP Relay to maintain communications with a Vonage customer's TA that is behind a router that employs Network Address Translation (NAT). *See* Doc No. 354 at 24; Doc. No. 264 at 51-54. As explained by the Court:

> For a NAT'd inbound call, the processing system instructs the media gateway to address its user communication packets to the IP address of an RTP relay. The RTP relay then re-addresses the received packets to the TA that the Vonage processing system selected. Packets from the Vonage gateways addressed to a specific IP address of an RTP relay are correspondingly sent to the IP address that identifies the TA. . . . The use of an RTP relay is entirely invisible to the endpoint devices as well as to the end users of the telephone system, as the called and calling parties cannot tell whether a call is NAT'd. The TA and media gateway operate in the same manner regardless of whether RTP relays are involved.

Doc. No. 264 at 18. Vonage's arguments that Sprint is precluded from asserting infringement under the doctrine of equivalents for NAT'd calls ignore Sprint's ability to overcome the *Festo* presumption. *See Festo IX,* 344 F.3d at 1369. In fact, Vonage's own statements demonstrate that the use of a RTP relay for NAT'd calls "would have been unforeseeable at the time of the narrowing amendment." *Id.*

Vonage has consistently stated that the use of an RTP relay for NAT'd calls is propriety technology developed by Vonage. During his deposition, Vonage's CEO, Jeffery Citron, testified that the "SIP-thru-NAT" technology that uses an RTP relay with NAT'd calls was developed by Vonage in 2002. *See* Ex. F, Excerpt from Deposition Transcript of Jeffery

- 9 -

Citron, pp. 51-53.  One of Vonage's founders, Louis Holder, echoed Mr. Citron's testimony and stated that he was one of the developers of the "SIP-thru-NAT" technology.  *See* Ex. G, Excerpt from Deposition Transcript of Louis Holder, pp. 87-88; *see also* Ex. H, Excerpt from Deposition Transcript of Louis Mamakos, pp. 133-134 (confirming that the "SIP-thru-NAT" technology was developed by Vonage).  In fact, Mr. Holder is listed as the inventor on a patent application directed to Vonage's "SIP-thru-NAT" technology.  *See* Ex. I, U.S. Patent Publ. No. 2005/0083908.  In this patent application, Mr. Holder describes problems in the art when a NAT is employed.  *Id*. at paras. 5- 7.  To solve these problems, Mr. Holder discloses a system, such as Vonage's, in which an RTP rely is utilized to maintain communications despite the existence of the NAT.  *Id*. at paras. 16-19; *compare* Figure 2 (depicting a prior art architecture) *with* Figure 3 (depicting Mr. Holder's invention, which adds the RTP Relay 90 to the architecture).  Mr. Holder's patent application was filed on October 15, 2003.  *Id*.

As Vonage's own admissions and patent application demonstrate, the use of an RTP relay to enable NAT'd calls embodies technology developed by Vonage in 2002 or later, and, thus, such technology "would have been unforeseeable to one of ordinary skill in the art at the time of the amendment," i.e., in September of 2001.  *See Festo IX,* 344 F.3d at 1369. Because Vonage did not apply for a patent on its RTP relay technology until October 15, 2003, Vonage certainly cannot now contend that such technology was known in the art in 2001.[2]  As set forth by the Supreme Court, a showing that the alleged equivalent represents unforeseeable, later-developed technology forecloses the application of the doctrine of prosecution history

---

[2]    Though the Federal Circuit has stated that courts may hear expert testimony regarding the unforeseeability of the alleged equivalent, *Festo IX,* 344 F.3d at 1369, Vonage's failure to raise its prosecution history arguments until trial precluded Sprint from offering such expert testimony.  Nevertheless, Vonage's own admissions regarding the development of its "SIP-thru-NAT" technology conclusively demonstrate the unforeseeable nature of the equivalents-in-question.

estoppel.  *Festo VIII,* 535 U.S. at 738-41.  Sprint has made the required showing, and, thus, Vonage's attempt to preclude the application of the doctrine of equivalents must fail.

### III.    THE COURT HAS ALREADY REJECTED VONAGE'S "DISCLOSURE-DEDICATION" ARGUMENTS

In its final attempt to avoid infringement under the doctrine of equivalents, Vonage rehashes "disclosure-dedication" arguments previously presented in its Motion for Summary Judgment.  *See* Doc. No. 354 at 25-28.  In denying Vonage's summary judgment motion, the Court fully considered and rejected Vonage's "disclosure-dedication" arguments. *See* Doc. No. 264 at 43-45.

Under the disclosure-dedication rule, disclosed but unclaimed subject matter is dedicated to the public.  *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002).  To deem subject matter dedicated to the public, however, the disclosure must be "of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed."  *PSC Computer Products, Inc. v. Foxconn International, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004).  In addition, the unclaimed subject matter "must have been identified [in the patent] as an alternative to a claim limitation."  *Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005).

With respect to claim 18 of the '932 patent, Vonage argues that Sprint is precluded from asserting that the claimed step of *selecting a narrowband switch* is met under the doctrine of equivalents by virtue of the "disclosure-dedication" rule.  Doc. No. 354 at 25-28. Vonage's argument suffers from two fatal flaws.  First, "selection of a connection" was, in fact, **claimed**, since the '932 Patent discloses that the selection of a connection is the "same thing" as selection of a narrowband switch.  '932 Patent, at Col. 7, ll. 10-15.  Considering this disclosure by the '932 patent, the Court concluded, "Far from disclosing that this subject matter is

unclaimed, it discloses that this matter is, to the contrary, claimed." Doc. No. 264 at 44. (emphasis added). Accordingly, the "selection of a connection" is not "identified as an alternative to a claim limitation," as required by *Pfizer, Inc.*, 429 F.3d at 1379.

Second, the '932 Patent does not disclose "selection of a connection" (independent of the selection of a network element) at all, much less with the requisite specificity. In considering and rejecting this argument, the Court stated, "The written description of the '932 Patent falls far short of disclosing the "selection of a connection" with the requisite specificity that one of ordinary skill in the art would understand it to be unclaimed subject matter." Doc. No. 264 at 44 (emphasis added). Nevertheless, Vonage continues to advance the same arguments but presents no new evidence justifying reconsideration of the Court's Summary Judgment Order. In fact, Vonage relies on the same two citations from the '932 Patent it identified in its summary judgment briefing to support its argument. *See* Doc. No. 354 at 21-22. In the first, the '932 Patent refers to a selection of *both* the network elements and the connections of the communication path. *See* '932 Patent, at Col. 6, ll. 23-25. In the second, the '932 Patent further refers to a selection of only the network elements, and not the connections. *See* '932 Patent, at Col. 6, ll. 62-63. Considering these citations, the Court explained:

> Vonage relies on two disclosures in the specification. One states that in one embodiment, the processing system "selects the network elements and the connections that comprise the communications path." '932 Patent, col. 6, ll. 23-25. The other states that in another embodiment, the processing system "may select only the network elements and not the connections." *Id*. col. 6, ll. 62-63. Vonage's argument does not account for the clarity of the language in the next paragraph, quoted above, that there are situations "in which the selection of a network element and the selection of a connection signify **the same thing**." *Id*. col. 7, ll. 10-12.

Doc. No. 264 at 44 (emphasis in original). Accordingly, Vonage's continued reliance on these citations to the '932 patent's specification is misplaced and must be rejected.

- 12 -

In addition, Vonage now makes the untenable argument that the terms "signify" and "effectively" in the specification somehow demonstrate an intent to distinguish the action of selecting a network element from the action of selecting a connection. *See* Doc. No. 354 at 27 (quoting the '932 patent at col. 7, ll. 10-19). The Court, however, has already considered the very paragraph in which these terms appear and concluded that the specification "discloses that this matter is, to the contrary, claimed." Doc. No. 264 at 44 (emphasis added). The Court's conclusion that the action of *selecting a connection* is "claimed" forecloses any arguments that this action was dedicated to the public.[3]

In sum, the '932 patent does not disclose the mere "selection of a connection," as suggested by Vonage. Indeed, one of ordinary skill in the art could not "identify the subject matter that had been disclosed and not claimed." *PSC Computer Products, Inc*, 355 F.3d at 1360. Because Sprint did not disclose the "selection of a connection" separate and apart from a selection of a narrowband switch, the disclosure-dedication rule has no impact on the straightforward doctrine of equivalents analysis. Vonage's attempt to limit application of the doctrine of equivalents with respect to the '932 patent should be rejected.

## IV.   CONCLUSION

For the foregoing reasons, Sprint respectfully requests that the Court reject Vonage's arguments attempting to preclude the application of the doctrine of equivalents.

---

[3]    Vonage also cites claim language from the '561 patent in an attempt to support the application of the disclosure-dedication rule to the '932 patent. *See* Doc. No. 354 at 23. Vonage advances no authority in support of its attempt to rely on claims from a different patent to support the application of the disclosure-dedication rule. Nevertheless, the claim language identified by Vonage does not disclose *selection of a connection* that is independent of the selection of a network element, at all, much less with the requisite specificity.

Respectfully submitted,

Dated: September 14, 2007

  /s/  Adam P. Seitz           
B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT COMMUNICATIONS COMPANY
L.P.

- 14 -

254602v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2007, a true and accurate copy of the above and foregoing **SPRINT'S RESPONSE IN OPPOSITION TO VONAGE'S TRIAL BRIEF REGARDING THE APPLICATION OF THE DOCTRINE OF EQUIVALENTS** was e-filed with the Court, which sent notice to the following:

Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Terrence J. Campbell
Catherine Theisen
Barber Emerson, L.C.
1211 Massachusetts Street
P.O. Box 667
Lawrence, KS 66044

Patrick D. McPherson
Patrick C. Muldoon
Donald R. McPhail
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608

L. Norwood Jameson
1180 West Peachtree Street
Atlanta, GA 30309

Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.


 _/s/_____Adam P. Seitz_____
Attorneys for Sprint Communications Company L.P.