

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
 2

 3    SPRINT COMMUNICATIONS
      COMPANY, LP,
 4
                    Plaintiff,
 5    vs.                              Case No. 05-2433

 6    VONAGE HOLDING CORPORATION,

 7                    Defendant.

 8
               TRANSCRIPT OF TELEPHONE PROCEEDINGS
 9                        before
             HONORABLE JOHN W. LUNGSTRUM
10                         on
                    JULY 20, 2007
11

12                     APPEARANCES

13    For the Plaintiff:     Basil Trent Webb
                             Adam P. Seitz
14                           Eric A. Buresh
                             Shook, Hardy & Bacon L.L.P.
15                           2555 Grand Boulevard
                             Kansas City, MO 64108-2616
16

17
      For the Defendant:     Barry Golob
18                           Patrick D. McPherson
                             Don McPhail
19                           Duane Morris L.L.P.
                             1667 K Street N.W.
20                           Washington, DC 20006-1608

21                           Lauren E. DeBruicker
                             Duane Morris L.L.P.
22                           30 S. 17th St.
                             Philadelphia, PA 19103
23

24

25
```

```
 1                          Terrence J. Campbell
                            Barber Emerson, L.C.
 2                          1211 Massachusetts
                            PO Box 667
 3                          Lawrence, KS 66044

 4                          Don R. Lolli
                            Dysart, Taylor, Lay, Cotter &
 5                          McMonigle, P.C.
                            4420 Madison Avenue - 2nd Floor
 6                          Kansas City, MO 64111

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              MR. WEBB:  The court calls Case No.
 2    05-2433, Sprint Communications Company L.P. versus
 3    Vonage Holding Corporation and others.  Would the
 4    parties state their appearances, beginning with
 5    counsel for the plaintiff.
 6              MR. WEBB:  Trent Webb, Eric Buresh, and
 7    Adam Seitz at Shook, Hardy & Bacon for the plaintiff.
 8              THE COURT:  Thank you.  For the defendants?
 9              MR. GOLOB:  Barry Golob, and I have Pat
10    McFerson and Don McPhail here in Washington, and
11    Lauren DeBruicker in Philadelphia, and I believe that
12    we have Mr. Lolli and Mr. Campbell on the phone as
13    well.
14              MR. LOLLI:  Yes, Judge.  Don Lolli in
15    Kansas City.
16              MR. CAMPBELL:  Terry Campbell in Lawrence,
17    your Honor.
18              THE COURT:  Welcome to you all today.  I
19    asked to have this telephone conference really in
20    response to the e-mail communications that I received
21    concerning the defendant's perceptions of some
22    problems in processing this case and readying it for
23    trial.  I would say as a matter of just an aside
24    under all of the circumstances here I really don't
25    have any strong problem with this issue having been
```

1    presented to me this way because it really was going

2    to necessitate a phone conference, so I don't object

3    to your simply notifying me that you had this issue,

4    obviously.  However, where formal relief is sought,

5    the appropriate vehicle is a motion.  This isn't a

6    motion; this is simply a request to talk about this

7    and to see whether there's something that might be

8    done to accommodate people's concerns, but I want to

9    make that clear, that where formal action is

10    requested and where formal rulings are to be expected

11    there probably needs to be a motion of some kind

12    made.

13        In any event, I've reviewed the e-mail traffic

14    I've received, and I'll be happy to hear from counsel

15    at this time.

16        MR. WEBB:  Your Honor, this is Barry Golob

17    for Vonage.  As the court may recall, we had a

18    conference call May 14, and the court inquired about

19    Markman at that time.  Both parties informed the

20    court that Markman would be handled through the

21    vehicle of summary judgment; however, Vonage was

22    concerned about the number of patents and the number

23    of claims in issue and that we could not address all

24    of the claim terms in our summary judgment brief with

25    the page limits that were presently available to us.

1    The court may also recall you gave us ten extra pages

2    to try to do that, but we also informed you that we

3    didn't think that that was going to make it.  Then we

4    went through and had summary judgment briefs filed,

5    and Vonage filed summary judgment addressing some of

6    the claim terms in the page limitations that we had,

7    but Sprint filed with no Markman-type issues

8    contained in their brief.

9        Since that time the parties have been attempting

10    to cooperate in an effort to come up with a way to do

11    this.  As the court may appreciate, we were aware of

12    the timeliness problem, and we were negotiating on

13    trying to work out some process, but as you can see

14    from the letters, Sprint's counsel still believes

15    that this request is premature, but nevertheless,

16    given the situation where we have 61 claims in issue,

17    of which Sprint hasn't reduced their claim numbers

18    yet -- and we have other outstanding issues.  We have

19    claim terms that are going to need to be construed by

20    the court.  In addition to that, we just received,

21    about four weeks ago, some documents that we have

22    been asking for for about six months that we were

23    told don't exist.  These documents actually have

24    Vonage mentioned specifically in them and have a

25    direct bearing on the case.  As the court may recall,

1        those documents are the subject of our 56(g) motion

2        in our summary judgment along with our request that

3        we need reconsideration of Judge Waxse's order

4        denying us the ability to have these extra

5        affirmative defenses or evidence relating thereto.

6        We're going to need additional discovery because

7        those document are not complete.  We're also going to

8        need depositions relating to those documents that

9        were received.

10               THE COURT:  This is all way beyond what

11        you've presented to me in your e-mail.

12               MR. GOLOB:  This little part is, yes, your

13        Honor.

14               THE COURT:  Well, then, why are you raising

15        this to me?

16               MR. GOLOB:  I'm just trying to put it all

17        in context.  I can stick straight to the Markman.

18               THE COURT:  That would be good.

19               MR. GOLOB:  Basically, we need to have a

20        process in place to deal with the terms that were not

21        the subject of the summary judgment motion.  We have

22        exchanged terms; we are in the process of exchanging

23        definitions; and that is basically where we are.

24               MR. WEBB:  Barry, can I jump in here?

25        Briefly, your Honor -- this is Trent Webb at

1       Shook, Hardy.  The Federal Circuit has held that the

2       court is only to construe the terms in controversy to

3       the extent it is necessary to resolve the

4       controversy.  It is fine to move for summary judgment

5       on every claim for noninfringement.  In their motions

6       they addressed the terms they believed were necessary

7       to resolve the controversy.  Under federal law that's

8       all the court needs to do to dispatch its obligations

9       under Markman.  That case, if you want a case cite,

10      that's Vivid Technologies versus American Science &

11      Engineering, 200 F.3d 795; pinpoint cite would be

12      803.

13          The Federal Circuit also has held there is no

14      requirement that you hold a Markman hearing.  As a

15      matter of fact, the court has said, as long as the

16      trial court construes the claims to the extent

17      necessary to determine whether the accused device

18      infringes, the court may approach its claim

19      construction task in any way that it deems best.  And

20      that's the Ballard Medical Products case versus

21      Allegiance Healthcare Corp., and you can find that at

22      268 F.3d 1353; pinpoint cite, 1358.

23          Courts across this country, your Honor, do not

24      hold Markman hearings.  Oftentimes they find it to be

25      unnecessary.  As a matter of fact, we have cases

1      pending in our office where we have cases where there

2      are no Markman hearings and the parties are

3      progressing perfectly fine, which brings me back to

4      this case.

5          In December of '05 the parties got on the phone,

6      agreed that it was not necessary to hold a Markman

7      hearing.  At that time also seven patents were

8      involved in the case.  We told Vonage at the time to

9      assume that every claim would be asserted, and the

10     parties agreed it was not necessary to have a Markman

11     hearing.

12         In December of '06 the parties moved jointly,

13     moved for a three-month extension of discovery.  At

14     that time the possibility of a Markman hearing could

15     have been raised by anyone.  It was not.

16         The pretrial order which was filed in this case,

17     the parties could have raised the possibility of a

18     need for a supplemental claim construction exercise,

19     but no one did.

20         May 14 there was a conference call with your

21     Honor, at which time the parties agreed a Markman

22     procedure was again not necessary.

23         The following day the parties moved for summary

24     judgment.  That was May 15, yet Vonage waited until

25     July 13 to tee this up with your Honor.  In fact,

```
1       this may be a complex case, as is often the case with
2       patent cases.  Your Honor is aware of that.  The fact
3       that the page limitation may have restricted Vonage's
4       ability to address every claim it thought necessary
5       is immaterial.  The day this case was filed, there
6       was a 30-page limitation.  Despite that clear rule,
7       Vonage did not request Markman at the time.  In fact,
8       your Honor gave Vonage an additional ten pages at
9       that time in connection with their request to extend
10      the page limitation.  They didn't mention the need
11      for another Markman hearing.  Sprint's motion covered
12      defenses that Vonage has raised that Sprint believed
13      are not founded in the law.  We're under no
14      obligation to move for claim construction.  The fact
15      that Vonage is disappointed we didn't is not really
16      material.  The fact is, this is an attempt by Vonage
17      to move the trial.  A few months ago they filed a
18      motion to extend trial by six months.  Your Honor
19      rejected that and held fast to the trial setting on
20      September 4.  Vonage moved to add a defense of
21      implied license.  In that motion they suggested that
22      trial would have to be moved.  We obviously opposed
23      that.  What is happening, your Honor, is they want to
24      have a Markman hearing during the week this trial was
25      scheduled and that trial should be postponed until
```

1    four weeks after your Honor makes a ruling on claim

2    construction, and we submit that is just entirely

3    improper.  This court is known for keeping to its

4    trial settings and holding fast to its schedules.

5    Typically in this court cases go to trial within 18

6    to 19 months.  This trial setting is 23 months after

7    the filing of the case.  There's no need to move the

8    trial.  We can handle every one of these claim issues

9    in the context of jury instructions.  We have

10    exchanged terms that the parties believe need

11    construction.  Sprint would suggest, every term you

12    need to construe, you can do that in a summary

13    judgment motions.  At most there may be an additional

14    three or four terms that may require construction.

15    Vonage has submitted 50 terms for construction,

16    including such terms as "generate, external, in

17    response, select, couple, user communication," things

18    that -- your Honor, these don't require construction

19    at all.  The critical issue is not whether Vonage

20    wants them to be construed; the issue is what terms

21    need to be construed for the court to do its job in

22    assessing infringement or for the jury to do its job

23    in ultimately assessing infringement.  The parties

24    agreed from day one that could be done through jury

25    instructions.  This is a patent case.  Your Honor is

```
1     well versed in handling jury instructions.  It's just

2     another instruction.  Our view is, and always has

3     been, that claim construction is not necessary

4     separate and apart from jury instructions.  We can

5     easily do this under the schedule we currently have.

6     If your Honor wants additional time for jury

7     instructions, we're willing to move those up.  What

8     we're willing to do is to move this trial one day.

9     Our client, our witnesses have all made arrangements

10    to be at this trial, and we're ready to go.

11              MR. GOLOB:  May I respond, your Honor?

12              THE COURT:  You may.

13              MR. GOLOB:  I think there's a fundamental

14    disconnect here.  We never agreed not to have a

15    Markman hearing.  We agreed to have Markman done in

16    conjunction with summary judgment, and we never

17    agreed that the terms that were -- there's no

18    possibility that somebody could move for summary

19    judgment and put every term in with a 30-page limit.

20         For Mr. Webb to say we didn't agree to a Markman

21    is really quite disingenuous.  We agreed Markman

22    would be handled through summary judgment.  As the

23    court knows, this court is very familiar with patent

24    cases, as Mr. Webb said, and the court has had many

25    Markman hearings, rulings, and so forth.  And given
```

1    61 claims, it seems that Mr. Webb is saying if the

2    word is a simple word it doesn't need to be

3    construed.  But it's being construed in light of the

4    rest of the words in the claim.  And, you know, if

5    they have an ordinary meaning, tell us what the

6    ordinary meaning is.  If we agree, that will be less

7    terms the court needs to construe.  But just because

8    they think it has an ordinary meaning doesn't mean

9    that it doesn't need to be construed by the court.

10        And also we're a little bit offended by the fact

11   that he says we waited until July 13.  We have been

12   talking to them since the summary judgment to try to

13   work out a process, and they have consistently said,

14   this is premature, as they said in their letter, so

15   the problem is, the reason we wrote the letter was

16   because we need a process to handle the claims that

17   were not part of the summary judgment motion in

18   conjunction with summary judgment so that we can do

19   it all at one time as a Markman process in

20   conjunction with summary judgment.

21             MR. WEBB:  Your Honor, this is Trent Webb.

22             THE COURT:  I've heard all I need to hear.

23             MR. WEBB:  Thank you, your Honor.

24             THE COURT:  We are not moving the trial

25   date.  I think the defendant made a bad decision to

1    have agreed to begin with to the particular procedure

2    that you did.  Frankly, I agree with Mr. Webb that

3    you don't need to have a Markman hearing, and I

4    believe, in fact, we will be able to deal with claim

5    construction during the course of the trial, as

6    cumbersome and time consuming as that might be for

7    me, and for you, and for those reasons, had I been

8    working with you on this case, I might have

9    encouraged you to approach this a different way.  But

10    experienced counsel on both sides decided long ago

11    that the appropriate process was the one that you

12    agreed to here.  That is, to the extent that claim

13    construction issues were going to raised, they would

14    be brought to the court's attention through the

15    summary judgment process.  I did question that on

16    May 14, and you all indicated to me at that time that

17    you felt you could go ahead and take care of it that

18    way.

19        Now, I want to address this page-limit issue.  I

20    think that is a total red herring because I've

21    reviewed, frankly, the defendant's briefs, and

22    probably if you had had 20 more pages you wouldn't

23    have helped yourself much more than you have in what

24    you've already submitted, but you were on notice from

25    the time this case was filed and from the scheduling

1    process in this case that there was a page limitation

2    on summary judgment motions.  That should have been

3    something you factored into your thought process when

4    you decided that you were willing to forego some more

5    traditional approach to claims construction.  When

6    you presented that issue to me on the telephone, I

7    offered you the extra pages.  In fact, quoting from

8    the transcript, I said, "If I gave you 40 pages,

9    would you be able to address it?" meaning the claims

10   issues.

11       Mr. Golob's response was, "I think at this

12   point, your Honor, we would be happy with what we

13   could get."

14       My response was, "That's what you can get."

15       Counsel for the defendant did not say, no, we

16   cannot address those issues with ten more pages.

17   Obviously, you could have said that.  You could have

18   kept my feet to the fire if you thought that was

19   really a problem.  Moreover, those motions were filed

20   the next day.  At that point in time defendants knew

21   that plaintiffs hadn't moved for summary judgment for

22   issues that would invoke some of the claims

23   construction issues that the defendants wanted to

24   come to grips with.  Whether or not you addressed

25   those issues among yourselves, I don't get any

1     communication that there's any difficulty with regard

2     to the defendant's perspective on this case until

3     virtually two months after those motions have been

4     filed, when they are virtually at issue and I'm

5     getting ready to rule on things.  The defendants

6     waited until the last minute to tumble to the

7     problems they thought might exist with regard to the

8     page limit.  They waited until the last minute, until

9     they tumbled to the issue they wanted to raise to the

10    court.  And, frankly, I think this is purely -- the

11    inference I draw is a tactic to delay the trial of

12    this case.  This trial will not be delayed.  If you

13    don't think you're in a position to handle this case

14    based on the schedule we have, perhaps you ought to

15    devote some time to trying to get it settled, but

16    we're not going to move this trial because you

17    perceive that the process has not worked out the way

18    you thought it should based upon the conscious

19    decisions you made, being fully informed from the

20    very beginning of this case.  I've seen nothing

21    presented to me that causes me to have any

22    inclination to do anything further in this case other

23    than to encourage you to try to narrow the scope of

24    the disputes you have with regard to claim terms to

25    facilitate their construction in connection with jury

1    instructions at trial.

2         Are there any further questions?  Hearing none,

3    thank you for your appearances.

4              MR. GOLOB:  Your Honor, is there going to

5    be a procedure in place to handle the claim terms

6    that have not been addressed at summary judgment?

7              THE COURT:  If you have issues to be raised

8    at the instruction conference before the jury is

9    instructed, we will certainly tell you what the

10   answers are going to be.  You're going to have to get

11   them to my attention through proposed instructions so

12   that I am aware that you have an issue you want an

13   instruction on, including a claims construction, and

14   we will take them up in connection with the

15   instructions in the case.

16             MR. CAMPBELL:  Your Honor, would the court

17   be willing to entertain claim construction issues in

18   trial briefs as well?

19             THE COURT:  I would be willing to entertain

20   anything you want to put in a trial brief to be able

21   to support what your rationale is for a particular

22   requested jury instruction.  Anything else?

23             MR. WEBB:  Nothing from plaintiff, your

24   Honor.

25             THE COURT:  All right.  Then we are in

```
 1        recess.

 2                    (Court was adjourned.)

 3                          *  *  *  *  *

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CERTIFICATE

STATE OF KANSAS          |

                         |   ss

COUNTY OF JOHNSON         |


        I, Rebecca Ryder, RMR, CRR, a Certified

Shorthand Reporter and official reporter for the United

States District Court, District of Kansas, do hereby

certify that as such official reporter I was present at

and reported in machine shorthand the above and foregoing

proceedings.

        I further certify that a transcript of my

shorthand notes was prepared and that the foregoing

transcript is a true and correct transcript of my notes in

said case to the best of my knowledge and ability.



                         S/REBECCA S. RYDER
                         REBECCA S. RYDER, RMR, CRR