## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS COMPANY L.P., )
                                                 )
                         Plaintiff,      )
                                                 )
      v.                                )
                                               )   Case No. 05-2433-JWL
VONAGE HOLDINGS CORP.,         )
VONAGE AMERICA, INC.,          )
                                               )
                       Defendants.   )
                                               )
                                               )
                                               )
                                               )

## SPRINT'S RESPONSE IN OPPOSITION TO VONAGE'S TRIAL BRIEF REGARDING ENABLEMENT AND WRITTEN DESCRIPTION

        Plaintiff Sprint Communications Company L.P. ("Sprint") respectfully submits its response in opposition to Vonage's Trial Brief regarding enablement and the written description requirement. In its Trial Brief, Vonage alleges that the claims of Sprint's Asserted Patents are invalid for failing to comply with either the enablement or written description requirements of 35 U.S.C. § 112. Accordingly, Vonage requests the Court remove these issues from the jury's consideration by holding the asserted claims invalid, as a matter of law. Vonage's attempt to invalidate Sprint's patent claims distorts both the factual record and well-established law. Accordingly, Vonage's enablement and the written description arguments must fail.

        Vonage argues that the full scope of the asserted claims are not enabled because the specifications do not describe how to make and use "Vonage's VoIP system." This argument misconstrues the "full scope" standard of enablement and ignores Federal Circuit precedent. Vonage also attacks the Asserted Patents by arguing that Sprint's failure to develop a commercial product in connection with its "JSC2000" project "is strong evidence that the

- 1 -

Asserted Patents lack enabling language to make and use the accused Vonage system." *See* Doc. No. 354, at 28. This argument misapplies the law and is unsupported by the record.

Vonage also seeks to invalidate the asserted claims based on a purported failure to comply with the written description requirement. Specifically, Vonage argues that Sprint's claims are invalid because the patents' specifications do not expressly mention a "VoIP" system. Doc. No. 354 at 35. The Federal Circuit, however, has expressly rejected attempts to invalidate patent claims based on a failure to describe a particular means for practicing the claimed invention. As set forth by well-established Federal Circuit precedent, a proper written description inquiry looks beyond the literal disclosure of the specification and considers the patent's disclosure in the context of what was known in the art. Because the Internet and VoIP technology existed long before Mr. Christie filed his first patent application, which Vonage's witnesses have expressly admitted, the failure to specifically mention this well-known technology does not render the asserted claims invalid.

## I. THE ASSERTED CLAIMS ARE FULLY ENABLED BY THE SPECIFICATIONS OF THE ASSERTED PATENTS

Vonage misconstrues the law of enablement and mischaracterizes the facts of this case in its attempt to invalidate the claims of the asserted patents for lack of enablement. Just last week, the Federal Circuit reiterated that a patent specification must enable those skilled in the art to make and use the "full scope" of the claimed invention without undue experimentation. *Automotive Techs., Int'l v. BMW of North America, Inc.*, Nos. 2006-1013, 2006-1037, 2007 WL 2493281, at *9 (Fed. Cir. Sept. 6, 2007); *see also* Doc. No. 351, at 7. Importantly, the Federal Circuit did not hold, and has never held, that the specification must explicitly describe how to make and use every possible embodiment or variation within the scope of the claimed invention. Vonage, however, misconstrues the law in precisely this manner.

- 2 -

### A.     Vonage Misconstrues the "Full Scope" Standard of Enablement.

In arguing that "the patent specification must enable those skilled in the art to make and use the 'full scope' of the claimed invention without undue experimentation," Vonage implies that the specification itself must explicitly describe how to make and use Vonage's VoIP system, if such a system is within the scope of the patent claims. *See* Doc. No. 354, at 27-28. ("…unless they provide sufficient teachings to allow one of ordinary skill in the art to make and use . . . Vonage's connectionless VoIP system . . . ."); *id.* (". . . Vonage's connectionless VoIP system that is not even discussed in the Asserted Patents."); *id.* ("…[T]he Asserted Patents lack enabling language to make and use the accused Vonage system."). Vonage's argument is misleading in two key respects.

First, Vonage ignores that the law of enablement takes into consideration the knowledge of the prior art at the time of the invention. The Federal Circuit "has <u>repeatedly</u> explained that a patent applicant <u>does not need to include</u> in the specification that which is already known to and available to one of ordinary skill in the art." *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004) (emphasis added); *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326,1337 (Fed. Cir. 2005) ("[T]he specification need only teach those aspects of the invention that one skilled in the art could not figure out without undue experimentation."); *Nat'l Recovery Techs. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999) ("The scope of enablement . . . is that which is disclosed in the specification plus the scope of what would be known to one of ordinary skill in the art without undue experimentation."); *Genentech, Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1366 (Fed. Cir. 1997) ("[A] specification need not disclose what is well known in the art."); *Spectra-Physics,*

*Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, <u>and preferably omits</u>, what is well known in the art.") (emphasis added).

Second, Vonage ignores that the law affords experimentation. The Federal Circuit has held that "a patent specification complies with the statute even if a 'reasonable' amount of routine experimentation is required in order to practice a claimed invention, but that such experimentation must not be 'undue.'" *Enzo Biochem, Inc. v. Calgene*, *Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999); *see also In Re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988) ("The key word is 'undue,' not 'experimentation.'").

By ignoring the knowledge of skill in the art and the degree of experimentation allowed by the law, Vonage distorts the "full scope" enablement standard. That is, Vonage implies that the specification must itself describe how to make and use all embodiments within the scope of the claims to enable their "full scope." The Federal Circuit, however, has already explicitly rejected Vonage's implication:

> . . . [A]s part of the *quid pro quo* of the patent bargain, the applicant's specification must enable one of ordinary skill in the art to practice the full scope of the claimed invention. **That is <u>not</u> to say that the specification itself must necessarily describe how to make and use every possible variant of the claimed invention, for the artisan's knowledge of the prior art and routine experimentation can often fill gaps, interpolate between embodiments, and perhaps even extrapolate beyond the disclosed embodiments, depending upon the predictability of the art.**

*AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) (internal citations omitted).

Misconstruing the "full scope" enablement standard, Vonage argues that, as a matter of law, "[w]here a claim encompasses two embodiments, the enablement of a single embodiment is not sufficient." *See* Doc. No. 354, at 29, n.3 (citing *AK Steel*, 344 F.3d at 1244-45). This statement is incorrect because it implies that the specification must itself teach how to

make and use all embodiments encompassed by a claim.[1]  Vonage's reliance on *AK Steel* is unavailing because it does not stand for such a proposition.  Rather, *AK Steel* requires conducting an inquiry, in light of the predictability of the art and based upon the knowledge of the prior art at the time of the invention, into the degree and type of experimentation that would be required to arrive at the alternative embodiments encompassed by the claims.  344 F.3d at 1244 ("The question more precisely here is whether, with [the] patent specification as an initial guide, the hypothetical skilled artisan's knowledge of the surrounding art and ability to modestly experiment would have been sufficient to enable him to make and use [the claimed invention] at the time of [the patent's] effective filing date.").

In *AK Steel*, the Court had construed the claims at issue to cover either a Type 1 or Type 2 aluminum coating.  344 F.3d at 1244.  The patent specification, however, specifically taught against using Type 1, because it would not achieve the patent's stated purpose of achieving good wetting.  *Id.*  Further, documents and testimony from the patentee showed that it was unable to use Type 1 despite its desire to do so.  *Id.*  Based on these two facts, the district court concluded that the claims were not enabled because undue experimentation would be required to use Type 1, and the Federal Circuit affirmed.  *Id.* at 1244-45.

In contrast, Mr. Christie's specifications do not teach away from or disparage the use of IP networks or other packet networks.  In addition, no evidence exists to suggest Sprint was unable to implement Mr. Christie's inventions using an IP network nor that Sprint attempted to and failed.  In fact, Sprint engineers who worked on the BBIN project testified that Mr. Christie's technology could have been implemented on any packet network, including an IP network, but that Sprint chose to use its existing ATM network for its commercialization efforts.

---

[1]  The Federal Circuit has previously criticized this very argument because "[t]his argument mistakes the purpose of the enablement requirement."  *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1070 (Fed. Cir. 2005).

*See, e.g.*, Ex. I, Rough Trial Transcript of Sept. 5, 2007, Vol. 1, at 211:5-213:13; Ex. J, Rough

Trial Transcript of Sept. 5, 2007, Vol. 2, at 299:1-302:2.  Accordingly, the case law relied upon

by Vonage does not support Vonage's argument.[2]

      In an opinion handed down by the Federal Circuit just last week, the court re-

affirmed its holding from *Liebel-Flarsheim v. Medrad, Inc*. that enablement of one embodiment

does not necessarily enable the full scope of a claim.  *See Automotive Techs., Int'l v. BMW of*

*North America, Inc.*,, 2007 WL 2493281, at *9 (Fed. Cir. Sept. 6, 2007).  *BMW* does not,

however, disturb previous Federal Circuit precedent that disclosure of one embodiment can

enable the full scope of the claims in some cases.  *See Liebel-Flarsheim*, 481 F.3d at 1380

("Indeed, in that case, disclosure of one attachment means permitted one skilled in the art to

make and use the invention as broadly as it was claimed, which included other attachment means

known to one of ordinary skill in the art.") (discussing *Spectra-Physics*, 827 F.2d 1524).

      In *BMW*, the claimed invention related to a device for deploying an airbag.  2007

WL 2493281, at *6.  The claims had been construed to cover both a mechanical side impact

sensor and an electronic side impact sensor.  *Id*.  The specification contained detailed disclosure

of mechanical sensor embodiments, but only a conceptual view of an electronic sensor, with no

structural disclosure as to how this sensor would operate.  *Id*. at *6-7.  Though electronic sensors

for frontal impacts were known in the art, the specification taught that these sensors would not

---

[2] Like *AK Steel*, in *Liebel-Flarsheim Co. v. Medrad, Inc.*, the Federal Circuit found
nonenablement where the specification taught away from the embodiment at issue and the
inventors had admitted that they were unsuccessful in building the embodiment.  481 F.3d
1371, 1378-79 (Fed. Cir. 2007). For the same reasons, this case does not support Vonage's
argument.  The Federal Circuit's opinion acknowledged that in some cases, disclosure of only
one embodiment can enable the full scope of a claim, including other embodiments not
explicitly disclosed.  *Id*. at 1380 (discussing *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d
1524 (Fed. Cir. 1987)).  The court stated that "the specification need not necessarily describe
how to make and use every embodiment of the invention 'because the artisan's knowledge of
the prior art and routine experimentation can often fill in the gaps.'" *Id.* (citing *AK Steel,* 344
F.3d at 1244 (Fed. Cir. 2003)).

work in sensing side impacts. *Id.* at *7. The Court held that the knowledge of one skilled in the art could not supply the missing information, because electronic side impact sensors did not exist in the art at the time of the invention and the novel aspect of the invention was the side impact sensor itself. *Id*. at *8. The Federal Circuit emphasized that "the specification, not the knowledge of one skilled in the art, [] must supply the novel aspects of an invention to constitute enablement." *Id*. at *7.

In the present case, the novel aspect of Mr. Christie's inventions was not the particular type of packet network to be employed. As Vonage has admitted, the ability to transmit voice over packet networks was already well known in the art when Mr. Christie filed his first patent application. *See, e.g.*, Ex. K, Vonage Demonstrative. The ability to interface packet networks with the PSTN was also already known. *See, e.g.*, Ex. A, Rough Trial Transcript of Sept. 5, 2007, Vol. 1, 224:22-226:10; *see also* Ex. K, Vonage Demonstrative. As Vonage itself stated, the Internet Protocol had already been standardized some 13 years before Mr. Christie's inventions. *See* Ex. B, Rough Trial Transcript of September 4, 2007, 47:10-48:5. Further, transferring voice over the internet was also known in the art at the time of the inventions. Accordingly, because packet networks of various flavors, including both IP and ATM, were already well known in the art, "it was [not] especially important" for the specifications to describe how to make and use all of these known aspects of packet networks. *See BMW*, 2007 WL 2493281, at *9.

Under the appropriate enablement inquiry, which considers the knowledge of one skilled in the art, Vonage has not shown, and will be unable to show, by clear and convincing evidence that undue experimentation would have been required to arrive at an embodiment of the claims utilizing an IP network.

**B.  Vonage Misapplies the Law Regarding the Relevance of Failed Attempts to Commercialize a Claimed Invention.**

Vonage's second misleading argument is that a patentee's failure to develop a commercial product from the patented inventions is "strong evidence" of a lack of enablement. *See* Doc. No. 354, at 27-28 (citing *Ormco Corp. v. Align Tech., Inc.*, No. 2006-1240, 2007 WL 2404723, at *10 (Fed. Cir. Aug. 24, 2007)).  As the Court has already noted, however, "the enablement requirement does not mean that a patent disclosure must enable one of ordinary skill in the art to make a commercially viable embodiment."  Doc. No. 351, at 6 (citing *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003)).  Sprint's failure to roll out a commercial embodiment into its nationwide network does not and cannot entitle Vonage to judgment as a matter of law on the issue of enablement.

Vonage's reliance on *Ormco Corporation v. Align Technology* is inapposite and does not support Vonage's request for judgment as a matter of law.  In *Ormco*, the patentee had conceded that it had made and released commercial software packages following the patents' specifications.  2007 WL 2404723, at *9.  The court's claim construction required that the invention be able to automatically determine final tooth positions.  *Id*. at *10.  The inventors in *Ormco*, however, admitted that they had been unable to use their software to automatically determine final tooth positions without human intervention.  *Id*.  One inventor even testified that he was unsure whether their technology could ever accomplish this task in light of variations in human anatomy.  *Id*.  In addition, the defendant introduced evidence that the method taught in the specification of the patents could not determine final tooth positions.  *Id*.  Based on this "[s]ubstantial doubt concerning . . . enablement," the district court found a lack of enablement, as a matter of law, which the Federal Circuit could find no reason to disagree with.  *Id*.

Unlike in *Ormco*, no substantial doubt has been raised as to whether Mr. Christie's underlying technology worked or was operable, as discussed above. Further, Vonage has not and cannot offer any evidence that Sprint followed the teachings of the specifications, that Sprint attempted to develop a commercial embodiment of the claims, or that any such commercial embodiment failed to work or operate as required by the claims. The only evidence Vonage points to is Sprint's decision to discontinue the JCS2000 project, which was Sprint's effort to commercialize voice-over-ATM technology by deploying it into Sprint's nationwide network.

The law of enablement, however, does not require commercialization nor does it require enablement of a perfect, commercially viable product:

> Patents are not production documents, and nothing in the patent law requires that a patentee must disclose data on how to mass-produce the invented product. The law requires that patents disclose inventions, not mass-production data, and that patents enable the practice of inventions, not the organization and operation of factories.

*CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1339 (Fed. Cir. 2003). In *CFMT*, the Federal Circuit held that the district court erred in requiring that the patents enable a particular commercial embodiment. *Id.* at 1338. ("Enablement does not require an inventor to meet lofty standards for success in the commercial marketplace."). In particular, the district court had relied on evidence that the inventors continued experimenting for months, making hundreds of modifications to their system after their patents were filed. *Id*. The accused infringer had based its argument on the problems the patentee faced in setting up a commercial embodiment of the invention. *Id.* at 1336. The Federal Circuit held, however, that these difficulties in commercializing the invention did not establish a lack of enablement. *Id.* at 1339. Similarly, Vonage attempts to argue that Sprint's failure to roll out a commercially viable embodiment of

its voice-over-ATM technology after substantial investment demonstrates a lack of enablement, as a matter of law. As *CFMT* demonstrates, the Federal Circuit has already rejected this argument.[3] Moreover, Sprint's discontinuance of JCS2000 does not demonstrate an unsuccessful attempt to build Mr. Christie's invention.

### C.    Vonage's Assertions Regarding the JCS2000 Project Are Inaccurate and Irrelevant to the Enablement Inquiry.

Vonage argues that the evidence presented at trial will show that "Sprint could not make the inventions claimed in the Asserted Patents," and refers to Sprint's cancellation of the JCS2000 project to support this assertion. *See* Doc. 354, at 28. Vonage's argument is misplaced because the underlying technology worked and the JCS2000 project was merely Sprint's commercialization effort.

The evidence presented at trial has shown that the technology underlying the project did, in fact, work. The three Sprint engineers who worked closely with the inventor, Joe Christie, each testified that Sprint built a prototype of Mr. Christie's technology under the code name BB/IN ("Broadband Intelligent Network). *See* Ex. D, Rough Trial Transcript of September 5, 2007, Vol. 1, at 208-211; Ex. E, Rough Trial Transcript of September 5, 2007, Vol. 2, at 277-281, 294-296. These engineers, Messrs. Gardner, Wiley, and Duree, also testified that the prototype worked. *Id*. Even the document relied upon by Vonage in its brief states that the prototype was successful.[4] *See* Ex. J, Doc. 354, at 3 ("During 1996, a prototype of the JCS2000 was developed in Sprint's Advanced Technology Labs (ATL). The prototype proved the ability

---

[3] Vonage also makes reference to the amount of money and the number of man-years that Sprint expended on the JCS2000 project. *See* Doc. No. 354, at 28. But, the Federal Circuit has also previously dismissed the relevance of time and money spent in developing a commercially successful product. *See Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524,1534 (Fed. Cir. 1987) ("Spectra's efforts . . . were not simply directed to finding a . . . process that would work, but encompassed a whole range of enterprises necessary to making a commercially successful product.").

[4] Further, this document was not even successfully admitted into evidence during trial.

to process Feature Group D (FGD) calls using Voice over ATM technology.") (emphasis added). As a result of the success of the prototype, the project received additional funding from upper management to fund commercialization efforts.  *See* Ex. F, Rough Trial Transcript of Sept. 5, 2007, Vol. 2, 280:1-8, 298:10-16.

After the prototype was built, Sprint launched the JCS2000 project, which was focused on developing a *commercialized* platform that could be implemented into Sprint's nationwide network.  *Id*. at 281:7-282:18.   Understandably, Sprint may have faced technical uncertainties in attempting to commercialize the technology on a nationwide basis while maintaining transparency to its customers.  *See, e.g.*, Ex. L, Rough Trial Transcript of Sept. 13, 2007, Vol. 2, at 7:20-8:10, 12:10-15, 17:14-19.   This new technology had to be integrated into Sprint's "back office" systems, including network management interfaces, alarm monitors, performance monitors, etc.  *Id*.   These efforts were directed towards developing a perfected, commercialized product.  Accordingly, as discussed above, the uncertainties encountered during the JCS2000 project are entirely irrelevant to the issue of enablement because the project does not represent a failed attempt to build Mr. Christie's invention.  Vonage's attempt to invalidate the asserted claims for lack of enablement on this basis, as a matter of law, must fail.

## II.    THE ASSERTED PATENTS FULLY COMPLY WITH THE WRITTEN DESCRIPTION REQUIREMENT

Vonage also argues that the asserted claims are invalid, as a matter of law, for failing to comply with the written description requirement.  Doc. No. 354 at 34-35.  Vonage states, "Neither of the two specifications of the Asserted Patents describe an invention that covers the accused Vonage system."  *Id*. at 35.  The Federal Circuit has expressly rejected attempts, such as Vonage's, to invalidate patent claims based on a failure to describe a particular means for practicing the claimed invention.

Compliance with the written description requirement is a question of fact. *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). The Federal Circuit has explained that, to satisfy the written description requirement, the patentee must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Id.* at 1563- 64. However, the written description requirement does not require the patentee "to describe exactly the subject matter claimed, [instead] the description must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Union Oil Co. of Cal. v. Atl. Richfield Co*., 208 F.3d 989, 997 (Fed. Cir. 2000); *In re GPAC Inc*., 57 F.3d 1573, 1579 (Fed. Cir. 1995). As the Federal Circuit has explained:

> A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language. *See Union Oil Co. v. Atl. Richfield Co*., 208 F.3d 989, 997 (Fed. Cir. 2000). That is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before. *In re GPAC Inc*., 57 F.3d 1573, 1579 (Fed. Cir. 1995). Placed in that context, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation.

*LizardTech, Inc. v Earth Resource Mapping, Inc*., 424 F.3d 1336, 1343 (Fed. Cir. 2005) (emphasis added). As clearly articulated by the Federal Circuit in *LizardTech*, a proper written description inquiry looks beyond the literal disclosure of the specification and necessarily considers the patent's disclosure in the context of what was known in the art. *Id*.

Contrary to this guidance from the Federal Circuit, Vonage argues that Sprint's claims are invalid because the specifications do not expressly mention a "connectionless VoIP system." Doc. No. 354 at 35. Vonage's attempt to limit the patents' disclosures to the literally described embodiments ignores the Federal Circuit's admonition that a person of skill in the art

comes to the patent with knowledge of the existing technology. *Augustine Med., Inc. v. Gaymar Indus*., 181 F.3d 1291, 1303 (Fed. Cir. 1999); *In re GPAC Inc*., 57 F.3d at 1579. Though Vonage argues to the contrary, the asserted claims "will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering" a VoIP embodiment such as Vonage's system. *See LizardTech, Inc.*, 424 F.3d at 1343.

Indeed, though Vonage alleges the failure to specifically mention a "connectionless network such as the Internet" is fatal to the asserted claims, Vonage admits that the Internet and its connection protocols were in known in the art at least 13 years prior to 1994, the year of Sprint's earliest filing date. *See* Ex B, Rough Trial Transcript of September 4, 2007, t 47-49 (discussing the Internet Protocol and the User Datagram Protocol); *see also* Ex. K, Vonage Demonstrative. Vonage's technical expert, Mr. Frank Koperda, confirms that voice over Internet Protocol was known in the art as early as 1994 and admits that many of the VoIP elements used by Vonage were also known in the art at that time. *See* Ex. G, Excerpts from the Deposition Transcript of Frank Koperda, at 164-166. For instance, Mr. Koperda admits that, in 1994, systems for routing voice on an IP network were known in the art, as were interfaces between PSTN and IP networks. Ex. G at 164-166 and 183. Mr. Koperda also admits that the packet protocol used by Vonage, UDP, was known in the art at the time. Ex. G at 165-166. Finally, Mr. Koperda confirms that technology existed in 1994 for transporting of IP packets, such as those used by Vonage, over Asynchronous Transfer Mode (ATM*)* networks, such as those described in Sprint's patents. Ex. H, Excerpt from the Expert Invalidity Report of Frank R. Koperda, p 39. Because Vonage admits that the Internet and VoIP were known in 1994, a person of skill in the art who "comes to the patent with the knowledge of what has come before" would

naturally understand that Mr. Christie's inventions may be utilized with different, known packet networks, including IP networks and the Internet. *See In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995).

Given the availability of VoIP technology in 1994, a reasonable jury could, and likely will, find that Mr. Christie's specifications establish that he possessed the full scope of his claimed inventions, including VoIP embodiments, as of the applications' filing dates. It is unreasonable to suggest that the asserted claims are invalid because the patents' do not specifically mention the Internet or VoIP technology, both which were well known in 1994. Accordingly, Vonage's attempt to invalidate the asserted claims must fail.

## III.    CONCLUSION

For the foregoing reasons, Sprint respectfully submits that Vonage's attempts to invalidate the claims of the Asserted Patents are legally unsound and factually unsupported.

Respectfully submitted,

Dated: September 14, 2007

   /s/   Adam P. Seitz
B. Trent Webb, KS Bar No. 15965
Eric A. Buresh, KS Bar No. 19895
Adam P. Seitz, KS Bar No. 21059
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
(816) 474-6550 Telephone
(816) 421-5547 Facsimile

Attorneys for Plaintiff
SPRINT    COMMUNICATIONS    COMPANY
L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2007, a true and accurate copy of the above and foregoing **SPRINT'S RESPONSE IN OPPOSITION TO VONAGE'S TRIAL BRIEF REGARDING ENABLEMENT AND WRITTEN DESCRIPTION** was e-filed with the Court, which sent notice to the following:


Don R. Lolli
Patrick J. Kaine
Dysart Taylor Lay Cotter & McMonigle P.C.
4420 Madison Avenue
Kansas City, Missouri 64111

Terrence J. Campbell
Catherine Theisen
Barber Emerson, L.C.
1211 Massachusetts Street
P.O. Box 667
Lawrence, KS 66044

Patrick D. McPherson
Patrick C. Muldoon
Donald R. McPhail
Barry Golob
Duane Morris LLP
1667 K. Street N.W.
Washington, DC 20006-1608

L. Norwood Jameson
1180 West Peachtree Street
Atlanta, GA 30309

Attorneys for Defendants
Vonage Holdings Corp. and
Vonage America, Inc.



 /s/      Adam P. Seitz_____
Attorneys for Sprint Communications Company L.P.