# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPRINT COMMUNICATIONS
COMPANY L.P.,

     Plaintiff,

                          Case No.  05-2433-JWL

     v.

VONAGE HOLDINGS CORP. and
VONAGE AMERICA, INC.,

     Defendants.

_____

## JURY INSTRUCTIONS

Dockets.Justia.com

## INSTRUCTION NO. 1

The time has now come for me to explain to you the law that will govern your jury deliberations.

You are duty bound to follow the law as I explain it to you in the instructions that I am about to give you. You as jurors are the sole judges of the facts. This means that you must take the law as I explain it to you and apply the law to the facts revealed by the evidence.

Do not single out any one instruction alone as stating the law. Rather, consider my instructions in their entirety.

Also, do not concern yourselves with the wisdom of the law. Despite any opinion you may have about what the law should be, you would violate your sworn duty if you were to base your verdict upon any view of the law other than that given to you in these instructions.

## INSTRUCTION NO. 2

Counsel's statements and arguments are not evidence unless they are admissions or stipulations. When the attorneys for both parties agree that a particular fact exists, that is referred to as a "stipulation" and the jury must accept that stipulation as true.

You may consider as evidence everything that was admitted during trial such as witness testimony (in person or by deposition), an article or document marked as an exhibit, or any other matter admitted into evidence such as an admission, agreement, or stipulation. You must entirely disregard any evidence with respect to which I sustained an objection or which I ordered stricken.

You are to consider only the evidence, but you are not limited to considering only the bald statements of witnesses. In other words, you are not limited solely to what you see and hear. You are permitted to draw reasonable inferences based on your experience if reason and common sense lead you to draw particular conclusions from the evidence.

INSTRUCTION NO. 3

At times during trial I ruled on the attorneys' objections to admitting certain items into evidence. Questions relating to the admissibility of evidence are solely questions of law for me. You must not concern yourselves with the reasons for my rulings and do not draw any inferences from my rulings. Consider only the evidence admitted.

## INSTRUCTION NO. 4

Some evidence is admitted for a limited purpose only. When I have instructed you that particular evidence is admitted for a limited purpose, you must consider that evidence only for that purpose and for no other.

## INSTRUCTION NO. 5

Counsel's statements, arguments, and remarks are intended to help you understand the evidence and apply the law, but they are not evidence. You should disregard any such comment that has no basis in the evidence.

## INSTRUCTION NO. 6

Some of the exhibits contain redactions. The portions of those exhibits have been redacted either because I have excluded the redacted portions from the evidence or because the parties have agreed that the redacted portions should not be admitted. You should disregard any redactions just as you would disregard any other evidence that I have excluded from the record.

7

## INSTRUCTION NO. 7

You must weigh and consider the evidence without favoritism for or prejudice against either party. Do not be influenced by anything not within the issues stated in my instructions. Sympathy should not affect your deliberations.

## INSTRUCTION NO. 8

In this case, the parties are corporations. This should make no difference to you. You must decide this case as if it were between individuals. All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.

INSTRUCTION NO. 9

I have not intended in anything that I have said or done – not in these instructions, in any ruling, or in any action or remark I may have made during trial – to suggest how I would resolve any of the issues in this case.

INSTRUCTION NO. 10

I will now review for you the parties in this action and their respective positions that you will have to consider in reaching your verdict.

As you know, this is a patent case. It involves U.S. Patent Numbers 6,304,572, 6,633,561, 6,452,932, 6,473,429, 6,298,064, and 6,665,294. Because patents are often referred to by their last three digits, the patents in this case will be referred to as the '572, '561, '932, '429, '064, and '294 patents.

The plaintiff in this case, Sprint Communications Company L.P., contends that Vonage Holdings Corp. and Vonage America, Inc. (collectively referred to as "Vonage") has infringed the following claims of these patents by making, selling, offering for sale, and/or using voice over internet protocol ("VoIP") telephony systems:

| | |
|---|---|
| '572 Patent | Claims 38, 42, and 51 |
| '561 Patent | Claims 1 and 23 |
| '932 Patent | Claim 18 |
| '429 Patent | Claims 1 and 5 |
| '064 Patent | Claims 1, 5, and 7 |
| '294 Patent | Claims 19, 26, and 27 |

Sprint also contends that Vonage's alleged infringement of the asserted patent claims has been and continues to be willful. Sprint claims it is entitled to damages caused by that infringement in the form of a reasonable royalty based on revenue Vonage has received from its VoIP telephony services.

11

Vonage denies Sprint's allegation that it has infringed the asserted patent claims. In addition, Vonage contends that the asserted patent claims are invalid for a number of reasons that I will tell you about shortly. Vonage also denies Sprint's contention that its alleged infringement of the patent claims was willful. Furthermore, Vonage disputes Sprint's calculation of a reasonable royalty.

INSTRUCTION NO. 11

At the beginning of the trial, you saw the video about patents and the patent system.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.

## INSTRUCTION NO. 12

A patent owner has the right to exclude others from making, using, offering for sale, or selling the invention covered by its patent claims during the life of the patent. Whoever makes, uses, offers to sell, or sells what is covered by the patent claims without the patent owner's permission is said to "infringe" the patent.

INSTRUCTION NO. 13

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, systems, or methods for making or using a product or system.

Claims are usually divided into parts or steps, called "limitations."

15

## INSTRUCTION NO. 14

To decide whether or not an accused product, system, or method infringes a patent or whether or not a patent is valid, the first step is to understand the meaning of the words used in the patent claims.

It is my job as judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

I will be giving you a list of the claims of the asserted patents at issue in this case as part of the verdict form when I conclude my instructions.

16

INSTRUCTION NO. 15

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

The following claims at issue in this lawsuit are independent claims:

| | |
|---|---|
| '572 Patent | Claim 38 |
| '561 Patent | Claim 1 |
| '932 Patent | Claim 18 |
| '429 Patent | Claim 1 |
| '064 Patent | Claim 1 |
| '294 Patent | Claim 19 |

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim to which it refers.

For example, claim 42 of the '572 patent is a dependent claim. It refers to claim 38 of the '572 patent. To determine what dependent claim 42 of the '572 patent covers, the words of that claim and the words of claim 38 of the '572 patent must be read together.

17

The following claims at issue in this lawsuit are dependent claims:

| '572 Patent | Claims 42 and 51 |
|-------------|------------------|
| '561 Patent | Claim 23 |
| '429 Patent | Claim 5 |
| '064 Patent | Claims 5 and 7 |
| '294 Patent | Claims 26 and 27 |

The verdict form that I have provided to you indicates which of the asserted patent claims are independent claims and which are dependent claims.

## INSTRUCTION NO. 16

The beginning portion, or preamble, of the claims of the asserted patents use the word "comprising." "Comprising" has a special meaning in patent law, and it means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products, systems, or methods having only the limitations that are recited in the claim, but also covers products, systems, or methods that add additional elements or steps.

All of the asserted claims in this case use the "comprising" language. Thus, if you find that the accused system contains each limitation of an asserted claim, then that claim is infringed even if the accused system contains additional features not found in the claim.

INSTRUCTION NO. 17

I have now instructed you as to the types of claims at issue in this case.  I will next define the meaning of the words used in the patent claims at issue.  You must rely exclusively on the definitions I provide to you in your consideration of infringement and invalidity issues.

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

The '572 Patent

In the '572 patent, the following phrases in claim 38 have the following meanings:

1.) "in-band telecommunications signaling" means *signaling that is sent on the same communications path as that used for voice and/or data*;

2.) "out-of-band telecommunications signaling" means *signaling that is sent on a separate channel from that used for voice and/or data*;

3.) "signaling message" means *a message used to set up or tear down a call*; and

4.) "generate the first control message" means *assembling information to create a first control message*.

20

## The '561 Patent

In the '561 patent, the following phrases in claim 1 have the following meanings:

1.) "signaling message" means *a message used to set up or tear down a call*;

2.) "communication system" means *a plurality of network elements and connections forming a network to transfer information*;

3.) "a network code that identifies a network element to provide egress from the packet communication system" means *a logical address identifying a network element which network element provides an exit from a packet communication system*;

4.) "generating a control message indicating the network code" means *assembling information to create a control message indicating the logical address of a network element*; and

5.) "using the network code to route the user communication through the packet communication system to the network element" means *using the logical address identifying a network element (which network element provides an exit from the packet communication system) to direct the user communication through the packet communication system by a selected route or in a specified direction to the network element that provides an exit from the packet communication system.*

### The '932 Patent

In the '932 patent, the following phrases in claim 18 have the following meanings:

1.) "first message" means *a signaling message that is distinct from the second message*;

2.) "communication system" means *a plurality of network elements and connections forming a network to transfer information*; and

3.) "generate . . . a second message" means *assemble information to create a second message.*

### The '429 Patent

In the '429 patent, the following phrases have the following meanings:

1.) "identifier" in claim 1 means *data for routing user information in a packet network*;

2.) "generating a message" in claim 1 means *assembling information to create a message*;

3.) "interworking unit" in claim 1 means *ATM interworking multiplexer*;

4.) "DS0 connection" in claim 1 means *a channel over which DS0 communication signals (a term of art meaning Digital Signal Level 0) are transmitted or received*; and

5.) "telecommunication switches" in claim 5 means *devices that set up calls and relay voice and/or data information from one connection to another.*

22

## The '064 Patent

In the '064 patent, the following phrases have the following meanings:

1.) "setup signaling" in claim 1 means *a message or messages used to set up calls*;

2.) "generating a message" in claim 1 means *assembling information to create a message*;

3.) "interworking unit" in claim 1 means *ATM interworking multiplexer*;

4.) "DS0 connection" in claim 1 means *a channel over which DS0 communication signals (a term of art meaning Digital Signal Level 0) are transmitted or received*; and

5.) "telecommunication switches" in claim 7 means *devices that set up calls and relay voice and/or data information from one connection to another.*

## The '294 Patent

In the '294 patent, the following phrases have the following meanings:

1.) "identifier" in claim 19 means *data for routing user information in a packet network*;

2.) "routing" in claim 19 means *directing through a communication system by a selected route or in a specified direction*;

3.) "interworking device" in claim 19 means *ATM interworking multiplexer*;

4.) "signaling message" in claim 19 means *a message used to set up or tear down a call*; and

23

5.) "DS0 communication signal" in claim 26 is a term of art meaning *a Digital Signal Level 0.*

INSTRUCTION NO. 18

In order to infringe a patent claim, a system or method must include every limitation of the claim. You must consider each of the asserted claims separately.

A claim limitation may be present in an accused system in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused system just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it. If each limitation in a claim is present in the accused system, it literally infringes.

A claim limitation is present in an accused system under the doctrine of equivalents if the differences between the claim limitation and the substituted component or step of the accused system are insubstantial. One way to determine whether differences are insubstantial is to look at whether or not the substituted component or step of the accused system performs substantially the same function, in substantially the same way, to achieve substantially the same result as the component or step of the claimed invention. Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the structure or step of the accused product and the structure or step recited in the patent claim limitation are interchangeable. A person of ordinary skill is a person with average education and training in the field.

Equivalency is determined by what was known at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed

25

or when the patent issued.  Thus, the inventor need not have foreseen, and the patent need

not describe, all potential equivalents to the invention covered by the claims.  Also, slight

changes in technique or improvements made possible by technology developed after the

patent application is filed may still be equivalent for doctrine of equivalents purposes.

## INSTRUCTION NO. 19

The person of ordinary skill is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

INSTRUCTION NO. 20

Taking each of the asserted claims of the asserted patents separately, if you find that Sprint has proved by the preponderance of the evidence that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in the accused system, then you must find that Vonage infringes that claim. You must determine whether each and every asserted independent claim has been infringed.

## INSTRUCTION NO. 21

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims as I have defined them, to the accused system, and determine whether or not there is infringement. You should not compare the accused system to any specific figure or example set out in the asserted patents, or with any of Sprint's products or services. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

INSTRUCTION NO. 22

Whether or not Vonage knew that what it was doing was an infringement does not matter. A party may be found to be an infringer of a patent even if that party believes in good faith that it is not infringing any patent, and even if that party does not even know of the patent.

## INSTRUCTION NO. 23

The fact that Vonage may have purchased components for its system from other companies does not mean that its system does not infringe the asserted patent claims. The test for infringement remains the same regardless of where Vonage obtained the components for its system.

INSTRUCTION NO. 24

My instructions on infringement so far have related to independent claims. As I told you, the asserted patents also contain dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus the additional elements listed in the dependent claim itself.

If you find that an asserted independent claim of the asserted patents has been infringed, you must separately determine whether each asserted dependent claim that refers to the independent claim has also been infringed. If you find that an asserted independent claim is not infringed, then you must also find that all asserted dependent claims that refer to that independent claim are not infringed. You must determine whether each and every asserted dependent patent claim has been infringed.

32

INSTRUCTION NO. 25

Evidence has been presented from which you might infer that Vonage's accused system represents an improvement of the inventions described in the asserted patent claims. Proof of this fact does not necessarily mean that the accused system does not infringe the asserted patent claims. The tests for infringement remain as I have instructed you. As long as you find that Vonage's accused system includes all of the limitations of any of the asserted patent claims, either literally or under the doctrine of equivalents, then you must find that those asserted patent claims are infringed by Vonage's accused system, despite Vonage's improvements.

## INSTRUCTION NO. 26

Up until now, my instructions have focused on the law you must apply to determine whether Vonage infringes the asserted patent claims. We now turn to the next major issue in the case, which is the validity of the asserted patent claims.

Only a valid patent claim may be infringed. For a patent claim to be valid, the invention claimed in the patent must be new. A patent cannot legally take away the right to use an identical combination of parts or elements which was already known before the invention was made. The term "new" has a special meaning under the patent laws. I will explain this term to you as we discuss Vonage's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling, or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Vonage has challenged the validity of the asserted patent claims on a number of grounds. Because each claim of the asserted patents is presumed to be valid, Vonage must prove that a patent claim is invalid by the clear and convincing standard. I will now explain to you each of Vonage's grounds for invalidity in detail. In making your determination as to invalidity, you must consider each of the asserted patent claims separately.

34

INSTRUCTION NO. 27

A patent must contain a written description of the system or method claimed in the patent. In order to satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention as finally claimed in the patent.

Vonage contends that each of the asserted patent claims is invalid for lack of an adequate written description of the claimed invention. If you find that Vonage has proved by clear and convincing evidence that the asserted patents do not contain a written description of the invention covered by a particular asserted claim, then you must find that claim to be invalid.

35

INSTRUCTION NO. 28

Vonage contends that the asserted patent claims are invalid for lack of enablement. Vonage bears the burden of proving lack of enablement by clear and convincing evidence.

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the claimed invention without undue experimentation. This is referred to as the enablement requirement. If the patent does not enable one of ordinary skill in the art to practice the product or method of a patent claim without undue experimentation, then the claim is invalid.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to already know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. A written description is enabling so long as undue experimentation is not needed to make or use the invention. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

A patent specification must enable those skilled in the art to make and use the full scope of the claimed invention without undue experimentation as of the time of the

36

patent's effective filing date. This does not mean that the specification itself must necessarily describe how to make and use every embodiment of or means for implementing the invention because the artisan's knowledge of the prior art and routine experimentation can often fill gaps, interpolate between embodiments, and perhaps even extrapolate beyond the disclosed embodiments, depending upon the predictability of the art. The test for enablement is whether one of ordinary skill in the art could make or use the invention from disclosures in the patent specification, coupled with information known in the art, without undue experimentation. It is the specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an invention.

The enablement requirement does not require an inventor to meet the standards for success in the commercial marketplace. The standard for enablement remains as stated in this instruction. Consequently, you may consider the evidence concerning whether or not Sprint commercialized the invention or built a working system in deciding the issue of enablement only if you find that the evidence shows that those of ordinary skill in the art following the specification were unable to make and use the claimed invention without undue experimentation.

If you find that Vonage has proved by clear and convincing evidence that the written descriptions of the patents do not enable a skilled person to make and use the invention covered by a particular asserted claim without undue experimentation, then you must find that claim to be invalid. You must make this determination on a claim-by-claim basis for each of the asserted patent claims.

37

INSTRUCTION NO. 29

An invention is patentable if it is new in light of the "prior art." A patent for an invention that is not new is invalid. "Prior art" is a phrase used in patent law to mean documents that existed before an inventor formed a complete idea of how to make and use his or her invention.

Vonage contends that claims 38, 42, and 51 of the '572 patent and claims 1 and 23 of the '561 patent are invalid in view of U.S. Patent No. 5,544,163 to Madonna. Vonage and Sprint agree that this patent existed before Sprint's patents were filed, but they disagree as to whether this prior art affects the validity of those claims.

INSTRUCTION NO. 30

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection and is invalid. A party challenging the validity of a patent must prove anticipation with clear and convincing evidence.

In order for an asserted patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art.

A patent will not be anticipated unless the prior art contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the prior art would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is "inherent" in an item of prior art if it is necessarily present in that piece of prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case. A party claiming inherency must prove it by clear and convincing evidence.

In this case, Vonage contends that claims 38, 42, and 51 of the '572 patent and claims 1 and 23 of the '561 patent are anticipated. If you find that Vonage has proved by clear and convincing evidence that one of these claims is anticipated by an item of prior art, then you must find that particular claim to be invalid.

INSTRUCTION NO. 31

I have now instructed you as to the law governing Sprint's claims of infringement and Vonage's claims of invalidity. If you find that the accused system infringes any valid claim, you must determine the amount of damages to be awarded Sprint for infringement. If, on the other hand, you find that the accused system does not infringe a valid claim, then Sprint is not entitled to any damages, and you should not make any findings about damages.

Sprint has the burden of proving damages by a preponderance of the evidence.

41

## INSTRUCTION NO. 32

If you find that any asserted patent claim is both infringed and not invalid, then Sprint is entitled to damages adequate to compensate for the infringement. In this case, these damages are a reasonable royalty for the use made of the invention by Vonage.

You may not add anything to the amount of damages to punish Vonage, or to set an example.

INSTRUCTION NO. 33

I will now discuss the meaning of "reasonable royalty" in greater detail.  A reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between Sprint and Vonage taking place at the time when the infringing use first began.  In considering the nature of this negotiation, the focus is on what the expectations of Sprint and Vonage would have been had they entered into an agreement at that time and acted reasonably in their negotiations.

For purposes of determining a reasonable royalty, you must assume that both parties believed at the time of the negotiation that the asserted patents were valid and infringed.  In addition, you must assume that Sprint and Vonage were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In deciding what is a reasonable royalty, you may consider the factors that Sprint and Vonage would consider in setting the amount Vonage should pay.

I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

43

1.) Whether Sprint had established a royalty for the asserted patents, for example, by granting other licenses to the asserted patents.

2.) Royalties paid by Vonage or by others for patents comparable to the asserted patents.

3.) Whether or not Sprint had a policy of licensing or not licensing the patents.

4.) Whether or not Sprint and Vonage are competitors.

5.) Whether being able to use the patented invention helps in making sales of other products or services.

6.) The profitability of the product made using the patent, and whether or not it is commercially successful or popular.

7.) The advantages and benefits of using the patented invention over products or methods not claimed in the asserted patents.

8.) The extent of Vonage's use of the patented invention and the value of that use to Vonage.

9.) Whether or not there is a portion or percentage of the profit or selling price that is customarily paid for use of patented inventions comparable to the inventions claimed in the asserted patents.

10.) The portion of the profit that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, business risks, or features or improvements developed by Vonage.

11.) Expert opinions as to what would be a reasonable royalty.

44

12.) The nature and scope of the license as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

13.) The duration of the asserted patents and the term of the license.

14.) The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Sprint; and the benefits to those who have used the invention.

15.) Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

INSTRUCTION NO. 34

Sprint also contends that Vonage has willfully infringed the asserted patent claims. If you find on the basis of the evidence and the law as I have explained it, that Vonage's accused system infringes at least one of the asserted patent claims and that the claim is valid, you must then decide whether or not Vonage's infringement was willful.

Although, as I explained before, Sprint must prove infringement by the preponderance of the evidence standard, the burden of proving that the infringement was willful is the clear and convincing evidence standard.

To establish willful infringement, a patent owner must show by clear and convincing evidence that the infringer acted with objective recklessness. This means that the patent owner must show that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the infringer is not relevant to this objective standard. If you find that this threshold objective standard is satisfied, then the patent owner must also demonstrate that this objectively-defined risk was either known or so obvious that it should have been known to the accused infringer.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which Sprint is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. If you decide that Vonage willfully infringed any of the asserted patent claims, then it is my job to decide whether or not to award increased damages to Sprint.

46

## INSTRUCTION NO. 35

You should not consider the fact that I have instructed you about the proper measure of damages as an indication of my views regarding which party is entitled to your verdict in this case. I am giving you instructions about damages solely to provide you with guidance if you should find in favor of Sprint.

INSTRUCTION NO. 36

You are to determine the weight and credit to give each witness's testimony. You have a right to use common knowledge and experience in evaluating witnesses' testimony.

INSTRUCTION NO. 37

A witness's credibility may be attacked by evidence that on some former occasion he or she made a statement, acted in a manner, or testified in a deposition that was inconsistent with his or her testimony in this case.

You may consider such evidence only insofar as it may impact the witness's credibility – that is, only in deciding the weight and credit to be given to that witness's testimony.

INSTRUCTION NO. 38

Certain testimony has been given in this case by experts; that is, by persons who are specially qualified by experience or training and possess knowledge on matters not common to mankind in general. The law permits such persons to give their opinions regarding such matters. The testimony of experts is to be considered like any other testimony and is to be tried by the same tests, and should receive such weight and credit as you deem it entitled to, when viewed in connection with all the other facts and circumstances, and its weight and value are questions for you.

INSTRUCTION NO. 39

Burden of proof means burden of persuasion.  In a patent case such as this, there are two different burdens of proof.

One is called the preponderance of the evidence.  This burden of proof standard requires that, in order for a party to prevail, you must be persuaded that the party's claim is more probably true than not true.

The second burden of proof standard is a higher one.  It is called clear and convincing evidence.  Clear and convincing evidence is described as evidence which produces in your mind an abiding conviction that the truth of a contention is highly probable.

You must decide essentially four main issues in this case.  The burden of proof on those issues is as follows.

1.) Infringement.  Sprint has the burden of proof on its claim that Vonage's accused system infringes the asserted patent claims.  Sprint must prove this claim by a preponderance of the evidence.

2.) Invalidity.  Vonage has the burden of proving that the claims of the asserted patent claims are invalid.  Vonage must prove this claim by clear and convincing evidence.

3.) Damages.  Sprint has the burden of proving damages by a preponderance of the evidence.  If you find that Sprint has met its burden of proof on its infringement claim as to any one of the asserted patent claims and also that Vonage has not met its burden of

51

proof on the issue of invalidity as to that particular claim, you must then determine the amount, if any, to which Sprint has proven it is entitled, by the preponderance of the evidence, as damages to compensate for the infringement.

4.) <u>Willfulness</u>.  If you find that Sprint has met its burden of proof on its infringement claim as to any one of the asserted patent claims and also that Vonage has not met its burden of proof on invalidity as to that particular claim, you must then determine whether Sprint has proven, by clear and convincing evidence, that Vonage's infringement was willful.  Sprint has the burden of proof on this issue.

In determining whether a party has met its burden, consider all the evidence, whether produced by Sprint or by Vonage.  The weight of the evidence on any issue is not determined by the number of witnesses but rather by how reasonable, persuasive, and satisfying the evidence is to you.

## INSTRUCTION NO. 40

There are two types of evidence. One is direct evidence, such as the testimony of someone who claims to have seen or heard an event. The other is circumstantial evidence, such as evidence from which you can reasonably draw inferences about whether an event did or did not occur.

The law does not distinguish between direct and circumstantial evidence, but rather simply requires the jury to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

INSTRUCTION NO. 41

You are the exclusive judges of the facts proved, the weight of the evidence, and the credibility of the witnesses. In determining the issues in this case you will, of course, rely upon the evidence you heard in the courtroom and will not be swayed by sympathy, passion, or prejudice. You may and should, however, rely on the general information you possess as to matters of common knowledge, observation, and life experience. In weighing the testimony of witnesses, you may consider their appearance, demeanor, means of knowledge, apparent intelligence or ignorance, whether or not they have an interest in the outcome of the case, and all other facts and circumstances evident at trial that will help you determine the truth.

If you believe that any witness testified falsely about any material fact, you may disregard all or any part of his or her testimony, but you are not required to believe or disbelieve the testimony of any witness. You should reconcile any conflicting testimony as truthful if reasonably possible, but if doing so is not possible then use your best judgment in determining what testimony to believe.

When weighing conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. You should keep in mind that making an innocent mistake in memory – like being unable to remember – is not uncommon.

INSTRUCTION NO. 42

Your verdict must represent the considered judgment of each juror. In order to return a verdict, each juror must agree upon the verdict and your verdict must be unanimous.

If you do not reach a verdict, the parties may be put to the expense of another trial and will once again have to endure the mental and emotional strain of a trial. If the case is retried, a future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to a more competent jury. There is no reason to believe that there will be more or clearer evidence produced at a future trial.

As jurors you have a duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after considering the evidence impartially with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you become convinced that it is wrong. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges – judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

## INSTRUCTION NO. 43

In considering the evidence in this case, you should use your good sense, consider the evidence only for those purposes for which it was admitted, and give the evidence a reasonable and fair construction in light of your common knowledge of the natural tendencies and inclinations of human beings.

You are to perform your duty without bias as to any party or person. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion.

INSTRUCTION NO. 44

When you retire to the jury room, you should first select one of you as the foreperson to preside over your deliberations, speak for the jury when in court, and sign the verdict.

Your verdict must be founded entirely upon the evidence admitted and the law that I have given to you in these instructions.

Your verdict must be unanimous. Once you reach a unanimous verdict, the foreperson should fill in, date, and sign the verdict form. The foreperson will carry the completed verdict into the courtroom and, after we have returned to the courtroom, hand it to the clerk when instructed to do so.

INSTRUCTION NO. 45

If it becomes necessary during your deliberations to communicate with me, please do so by giving a note to the bailiff who, in turn, will pass the note along to me. The note must be signed by your foreperson or by one or more of you. None of you should ever attempt to communicate with me about the merits of the case in any way other than by a signed writing. I will not communicate with any of you on any subject involving the merits of the case other than in writing, or orally here in open court.

You will note from the oath about to be taken by the bailiffs that they and all other persons are forbidden from communicating with any of you about any subject involving the merits of the case.

Bear in mind also that you are never to reveal to any person how the jury stands numerically or otherwise on the questions before you until after you have reached a unanimous verdict.


21 September 2007
Date

John W. Lungstrum
United States District Judge